CLEARY GOTTLIEB STEEN & HAMILTON LLP
Luke A. Barefoot
David Z. Schwartz
Richard C. Minott
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999
*Attorneys for Raízen S.A.,*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Raízen S.A., *et al.*[1]<br><br>Debtor in a Foreign Proceeding. | Case No. 26-10528<br><br>Chapter 15<br>(Joint Administration Requested) |

**DECLARATION OF GIULIANO COLOMBO PURSUANT TO 28 U.S.C. § 1746 IN
SUPPORT OF THE DECLARATION OF LORIVAL NOGUEIRA LUZ, JUNIOR,
AND VERIFIED PETITION FOR RECOGNITION OF THE BRAZILIAN
PROCEEDING AND MOTION FOR ORDER GRANTING RELATED RELIEF
PURSUANT TO 11 U.S.C. §§ 105(A), 1515, 1517, 1520, AND 1521**

I, Giuliano Colombo, partner at Pinheiro Neto Advogados, a law firm located in São Paulo,

Brazil ("**PNA**"), and a lawyer admitted to the practice of law in Brazil, pursuant to 28 U.S.C. §

1746, hereby declare under penalty of perjury under the laws of the United States that the following

is true and correct:

---

[1] The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Raízen S.A. (01-23–Brazil); Raízen Energia S.A. (01-78–Brazil); Raízen Centro-Sul Paulista S.A. (18-28–Brazil); Raízen Fuels Finance S.A. (0903–Luxembourg); Blueway Trading Importação e Exportação S.A. (01-57–Brazil); Raízen Caarapó Açúcar e Álcool Ltda. (01-66–Brazil); Raízen North America, Inc. (7198–U.S.); Raízen Centro-Sul S.A. (01-36–Brazil); and Raízen Trading S.A. (3.167–Switzerland).

1.    PNA represents Raízen S.A.; Raízen Energia S.A.; Raízen Centro-Sul Paulista S.A.; Raízen Fuels Finance S.A.; Raízen Caarapó Açúcar e Álcool Ltda.; Raízen North America, Inc.; Raízen Centro-Sul S.A.; Blueway Trading Importação e Exportação S.A.; and Raízen Trading S.A.; (collectively, the "**Debtors**") in the Brazilian court-supervised expedited reorganization proceeding of the Debtors, known as *Recuperação Extrajudicial* (the "**Brazilian Proceeding**"), and was accepted by the Bankruptcy Court (as defined below) on March 12, 2026[2] pursuant to Federal Law No. 11.101 of February 9, 2005 (as modified, the "**Brazilian Bankruptcy Law**") of the laws of the Federative Republic of Brazil ("**Brazil**").  I am familiar with the petition for homologation of the Brazilian Proceeding and the exhibits thereto (the "**Brazilian Petition**") filed in the Bankruptcy Court.  A true and correct copy of the Brazilian Petition is attached hereto as **Exhibit A**, with a certified translation in English attached hereto as **Exhibit B**.

2.    I submit this declaration (the "**Declaration**") in support of the (a) Declaration Of Lorival Nogueira Luiz, Junior, And Verified Petition For Recognition Of The Brazilian Proceeding And Motion For Order Granting Related Relief Pursuant To 11 U.S.C. §§ 105(A), 1515, 1517, 1520, And 1521 (the "**Verified Petition**") filed contemporaneously herewith, which seeks entry of an order (i) granting the Petition[3] in these Chapter 15 cases and recognizing the Brazilian Proceeding as the "foreign main proceeding" for each of the Debtors pursuant to section 1517 of the Bankruptcy Code or, in the alternative, as a "foreign nonmain proceeding," (ii) finding that the Petitioner is the duly appointed "foreign representative" of the Debtors within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of each of the Debtors, and (iii) granting such other and further relief as the Court deems just and proper, and (b) *Motion*

---

[2]    The case number for the Brazilian Proceeding before the Bankruptcy Court is 4037759-13.2026.8.26.0100/SP

[3]    Capitalized terms used but not defined herein have the same meaning ascribed to them in the Verified Petition.

for Provisional Relief Pursuant to 11 U.S.C. §§ 1519, 105(a), and 362 (the "**Provisional Relief**

**Motion**") filed contemporaneously herewith, which seeks entry of an order (i) providing that

section 362 of the Bankruptcy Code applies with respect to each of the Debtors and its property

within the territorial jurisdiction of the United States and (ii) granting such other and further relief

as the Court deems just and proper.

## BACKGROUND AND QUALIFICATIONS

3.      I studied law at the *Pontifícia Universidade Católica de São Paulo* (*PUC-SP*), in

Brazil.  I received my law degree in 2000 and was admitted to the Brazilian bar in January 2001.

In 2003, I received my master's degree from INSPER, a Brazilian higher education institution

focusing on business, economics and engineering.  In 2004, I participated in the Joint Ministerial

Committee to debate the final wording of what became the Brazilian Bankruptcy Law, ultimately

enacted in February 2005.

4.      I am a member of the American College of Bankruptcy, International Insolvency

Institute, INSOL (currently serving as an officer in the Latin America Committee), American

Bankruptcy Institute, and I am a founding member and former board member of the TMA -

Turnaround Management Association (Brazil).  I have organized and spoken at various national

and international insolvency law conferences.  I have written and published articles on a variety of

insolvency law topics.  I have been recognized as a leader in the insolvency and restructuring field

by Chambers Latin America, Who's Who Legal, Legal 500, and other relevant legal directories.  I

was also distinguished with the "*Lawyer of the Year*" award by Legal500 in the Restructuring and

Insolvency area in 2026 and by Best Lawyers in the Insolvency and Reorganization area in 2017

and 2013.

5.      Throughout my practice, I have focused on, among other things, restructuring and

insolvency matters under Brazilian law.  While at PNA, I have advised and represented in and out

of court the interests of debtors, creditors, special and *ad hoc* committees of creditors, investors, boards, and directors in respect to the refinancing, restructuring, and turnaround of businesses and obligations and divestment of distressed companies and assets, including through the use of interim mediation process (*cautelar*), extrajudicial reorganization (*recuperação extrajudicial*), judicial reorganization (*recuperação judicial*) and bankruptcy liquidation proceedings (*falência*) pursuant to applicable provisions of the Brazilian Bankruptcy Law.

6.      In the context of my representation of the Ad Hoc Group of Bondholders in the restructuring of Oi S.A. *et. al.*, I provided a declaration and served as an expert witness in their jointly administered Chapter 15 cases before the United States Bankruptcy Court of the Southern District of New York (Case No. 16-11791 (SHL)).   In the context of my representation of Azul S.A. *et. al.*, I provided a declaration and served as an expert witness in their jointly administered Chapter 11 cases before the United States Bankruptcy Court of the Southern District of New York (Case No. 25-11176 (SHL)).

7.      Over the last few years, I have authored articles published in both Brazilian and international journals and publications specialized in insolvency and restructuring law, including: (i) "*Brazil*," Americas Restructuring Review (2021 ed.), edited by Richard J. Cooper and Lisa M. Schweitzer, Law Business Research; (ii) "*Brazil*," Americas Restructuring Review (2022 ed.), edited by Richard J. Cooper and Lisa M. Schweitzer, Law Business Research; and (iii) "*Weathering a Crisis in Brazil: Fiduciary Duties of Directors and Officers of Brazilian Companies Approaching Insolvenc*y," in Latin Lawyer – The Guide to Corporate Crisis Management (4th ed.), edited by Sergio J. Galvis, Robert J. Giuffra and Warner F. Ahlers, Law Business Research.   I have also spoken at and participated in conferences and events in Brazil and abroad focusing on insolvency and restructuring law.

8.      I am being compensated for my work in this matter at a rate of US$810.00 per hour. My compensation is not contingent upon the outcome of this proceeding, the substance of my opinions, or the conclusions I may reach, and it is not dependent in any way on the result of this case.

9.      My native language is Portuguese, but I am a fluent English speaker and make this Declaration in the English language to assist the Bankruptcy Court.

## OVERVIEW OF BRAZILIAN REORGANIZATION PROCEEDINGS

10.     Insolvency proceedings involving corporate entities in distress in Brazil are governed by the Brazilian Bankruptcy Law. The Brazilian Bankruptcy Law focuses on facilitating faster and more efficient restructuring processes[4] and seeks to foster direct collaboration and participation of creditors and other relevant stakeholders in the company's reorganization. Moreover, the Brazilian Bankruptcy Law encourages a company's successful reorganization, rather than its liquidation. It recognizes that the preservation of the company is not merely a private concern, but a matter of broader economic and social relevance – it aims, therefore, to maintain the productive source, the employment of workers, and the interests of creditors, thereby promoting the company's social function and the stimulation of economic activity as expressly set out in Article 47 of the Brazilian Bankruptcy Law.

11.     The Brazilian Bankruptcy Law provides for two (2) forms of reorganization proceedings that are analogous to chapter 11 proceedings in the United States and serves as a collective mechanism to restructure debts under the control and supervision of a competent Brazilian court (in most cases) specialized in Bankruptcy (a "**Bankruptcy Court**"): (1) a court-

---

[4]      Brazilian Bankruptcy Law also provides for a liquidation proceeding known as *falência*, and since 2020, a transnational insolvency proceeding for recognition of foreign insolvencies. Since the Debtors are first and foremost pursuing a Brazilian EJ, and, alternatively, a Brazilian RJ, the procedures and requirements of both will be discussed herein.

supervised reorganization proceeding known as *recuperação judicial* (*i.e.*, the "**Brazilian RJ**"); and (2) an expedited reorganization proceeding known as *recuperação extrajudicial* (*i.e.*, the "**Brazilian EJ**").

12.     On March 11, 2026, the Debtors commenced the Brazilian Proceeding, which is a Brazilian EJ, in the Bankruptcy Court of Sao Paulo in furtherance of its financial restructuring efforts and in accordance with the Debtors' negotiations with certain key financial creditors.

## ELIGIBILITY REQUIREMENTS FOR DEBTORS UNDER THE BRAZILIAN BANKRUPTCY LAW

13.     The Brazilian Bankruptcy Law provides for certain requirements for companies to be eligible to be debtors in any of the restructuring proceedings, including the Brazilian EJ and the Brazilian RJ (each, a "**Voluntary Proceeding**").

14.     As an initial matter, only the debtor itself may commence a Voluntary Proceeding. Creditors are not permitted to do so, as such proceedings may not commence on an involuntary basis.  A debtor must be a business company or a businessman.  The debtor, at the time that the application is made, is also required to have been doing business regularly for over two (2) years and must meet certain subjective and objective requirements, as described below.

15.     Brazilian case law has evolved to allow foreign companies to file a Voluntary Proceeding.  For example, filing in Brazil has been accepted on a variety of different independent bases, including in cases where the foreign debtor (a) is a subsidiary of a Brazilian holding company that does not develop independent business activities and is jointly filing the petition with such Brazilian holding company, (b) is merely a financial vehicle of the Brazilian holding debtor or constituted for finance or for corporate organizational purposes, (c) is part of a corporate conglomerate having Brazil as its center of main interests (COMI), or (d) has its operations and activities in Brazil.

16.     Moreover, the petition for a Voluntary Proceeding must be filed in the appropriate Bankruptcy Court in the jurisdiction where the Brazilian debtor's (or debtors' group's) principal place of business (*principal estabelecimento*) is located.  The appropriate Bankruptcy Court has exclusive jurisdiction over matters relating to the claims being restructured.

17.     In order to commence a Voluntary Proceeding in Brazil, the following requirements must be met: the debtor shall not (a) already be subject to a bankruptcy liquidation proceeding, and if it has been in the past, the resulting liabilities shall have been discharged by a final court order; (b) have any pending judicial reorganization case, nor have been granted a judicial reorganization within the last five (5) years and, exclusively with respect to the commencement of a Brazilian EJ, have been granted court confirmation of an EJ Plan (as defined below) in the last two (2) years; and (c) have been convicted nor have a senior manager or controlling shareholders who have been convicted for any bankruptcy crime set forth in the Brazilian Bankruptcy Law.

## THE BRAZILIAN EJ PROCEEDING

18.     Chapter VI of the Brazilian Bankruptcy Law establishes Brazilian EJs as one of the proceedings through which companies can reorganize.  A Brazilian EJ is a proceeding before a Bankruptcy Court in which the debtor seeks authorization to implement an agreement negotiated between the debtor and a subset of its creditors (the so-called "**EJ Plan**") and thus binds all creditors subject to the proceeding.  It administers the claims of all creditors whose claims are being restructured in a single proceeding.  It is similar to a scheme of arrangement found in certain jurisdictions (*e.g.*, the U.K., the Cayman Islands, or Bermuda) or a prearranged chapter 11 case under the U.S. Bankruptcy Code.  In a Brazilian EJ, a debtor may negotiate and agree out of court to an EJ Plan with its creditors and then submit that plan to a Bankruptcy Court for consideration and, if deemed acceptable, receive confirmation. Notably, however, the Brazilian EJ does not necessarily affect "all" of the claims against the company that would otherwise be subject to a

Brazilian RJ. In a Brazilian EJ, the debtor has flexibility to decide which classes and/or groups of similarly situated claims will be impaired by the EJ Plan (*e.g.*, secured financial claims, unsecured financial claims, vendor and suppliers claims etc.).

## I.    Requirements for the EJ Plan

19.    The EJ Plan presented with a Brazilian EJ petition must also comply with the following requirements: (a) it cannot accelerate the payment of amounts or contemplate provisions that harm creditors not subject to the proceeding; (b) all similarly situated creditors within the same group of creditors must be treated equally (subject to exceptions, such as where certain creditors are providing new capital or other form of support to the debtor's businesses and operations); (c) only prepetition claims may be subject to the plan; (d) the sale of any asset given as collateral may only occur with the consent of the applicable secured creditor(s) (as prescribed by the relevant financing and/or collateral documentation); and (e) the plan cannot modify currency and the exchange rate variation in the calculation of claims expressed in foreign currency without the express consent of the relevant creditor.

20.    Along with filing the Brazilian EJ petition, the debtor must file an EJ Plan and other ancillary supporting documents such as the description of the causes of its financial distress, its financial statements for the previous year of operations (and the period of the last day covered by the previous year's financial statement through as close as possible to the date of filing), a list of its creditors and claims that are subject to the EJ Plan, and any other pertinent information and documents.

21.    As a general rule, an EJ Plan will become effective only upon confirmation by a competent Bankruptcy Court, as further explained below. Notwithstanding this, the Brazilian Bankruptcy Law does permit an EJ Plan to become effective upon filing of the EJ Plan before confirmation with respect to the payment and restructuring of impaired claims of those creditors

8

that expressly adhere to the EJ Plan; but if the court ultimately does not confirm such EJ Plan, then those impaired claims will be restored to the *status quo ante*, unless the EJ Plan provides otherwise.

22.   Further, according to the recent modifications to the Brazilian Bankruptcy Law, a debtor may seek confirmation of an EJ Plan if it demonstrates that creditors representing more than half (1/2) of the total principal amount of the debt of each class of impaired claims being restructured consented to and executed the EJ Plan.   Alternatively, a debtor may ultimately seek confirmation of an EJ Plan by (a) first demonstrating that creditors representing at least one-third (1/3) of the total principal amount of the funded debt of each class of impaired claims being restructured consented to the EJ Plan and (b) then soliciting and obtaining, within ninety (90) days from the filing, consent from as many additional impaired creditors as are necessary to achieve the confirmation quorum of creditors representing more than half (1/2) of the total principal amount of the funded debt of each class of impaired claims being restructured.   In the event a debtor files for a Brazilian EJ with the support of creditors representing at least one-third (1/3) of the total principal amount of the impaired claims, such debtor may amend and modify the EJ Plan throughout the ninety (90)-day period until the requisite majority for the EJ Plan confirmation is obtained, provided that the supporting creditors agree and support such amended and modified version of the EJ Plan.

23.   When calculating the aforementioned consent thresholds, the Brazilian Bankruptcy Law provides that (a) claims expressed in foreign currencies will be converted into the local currency as of the day before the EJ Plan was executed and filed; and (b) claims held by related parties will not be considered in any such calculation.

## II.   A Debtor's Operations During the Brazilian EJ Proceeding

24.   Similar to a Chapter 11 case, the debtor is a debtor in possession and retains the right to manage its assets and affairs and to operate its business.   The officers and directors of the

debtor continue to be fully authorized to act on the debtor's behalf. In general, the Bankruptcy Court is not required to appoint a trustee or professional to oversee the debtor's operations during the Brazilian EJ, but it may appoint one if deemed necessary or at the request of the debtor or its creditors.

25.     Again, similar to a Chapter 11 proceeding in the U.S., recent modifications to the Brazilian Bankruptcy Law provide for a one hundred eighty (180) day [5] automatic stay of all actions and enforcement proceedings against the debtor related to claims being restructured pursuant to the EJ Plan, irrespective of whether such claims are held by creditors that executed the EJ Plan.[6] Such stay suspends, *inter alia*, the enforceability of the claims being restructured under the EJ Plan. As a result, while the stay remains in effect, creditors may not pursue collection of their claims outside the Brazilian EJ and therefore may not exercise set-off rights against the debtor, subject to a limited exception for Permitted Setoffs (as defined below). However, in order to receive the benefit of this stay, the debtor must demonstrate, *prima facie,* that creditors representing at least one-third (1/3) of the total principal amount of the funded debt of each class or group of impaired claims being restructured consented to and executed the EJ Plan. In other words, obtaining the stay only depends on a debtor evidencing to the Bankruptcy Court that it has sufficient creditor support in favor of its proposed EJ Plan (*i.e.*, filing an EJ Plan with at least one-third (1/3) creditor support).[7] The stay commences when the debtor files an EJ Plan meeting these requirements with the Bankruptcy Court. The Bankruptcy Court also subsequently ratifies the stay pursuant to its order accepting the Brazilian EJ.

---

[5]     In accordance with Article 189, §1, I, such 180-day stay is counted in calendar days.
[6]     Although formally in force only after Law 14,112/20 was enacted, courts had been granting the stay period for all subject claims during the Brazilian EJ Proceeding.
[7]     *See* Paragraph 7 of Article 163 of the Brazilian Bankruptcy Law.

26.    Some claims are by nature not subject to the Brazilian EJ, meaning that they cannot be restructured in a Brazilian EJ proceeding.  The following claims (the "**EJ Exempt Claims**") are not subject to the EJ: (i) labor claims; (ii) taxes; (iii) credits secured by "fiduciary liens" (*i.e.*, a fiduciary assignment of contract rights (*cessão fiduciária*) or fiduciary assignment of assets (*alienação fiduciária*); [8] (iv) credits deriving from leasing transactions; (v) owner or committed seller of real estate; (vi) sellers whose contracts contain "reservation of title" provisions; (vii) amounts delivered to a debtor, in domestic currency, resulting from advances of monies due in export exchange agreements (in forms termed "Advances on Foreign Exchange Contracts" or "Advances on Export Credit Instruments," and abbreviated "ACC" or "ACE," respectively).

27.    As noted, EJ Exempt Claims may not be restructured in the Brazilian EJ Plan, and rights in collateral supporting EJ Exempt Claims are preserved.  Further, absent special order of the Bankruptcy Court, creditors holding EJ Exempt Claims may generally enforce their claims even during the Brazilian EJ and despite the stay period.

28.    The Brazilian Bankruptcy Law provides that obligations undertaken within clearing houses or financial settlement systems shall not be affected by any Voluntary Proceeding and must be completed and settled by the relevant clearing institution in accordance with its own rules and regulations.

29.    In addition, the Brazilian Bankruptcy Law provides that the filing of a Brazilian RJ, the Acceptance Order (as defined below), or the confirmation of an RJ Plan (as defined below) does not affect or stay the exercise of contractual early termination and set-off rights in connection

---

[8]    Fiduciary lien is a particular type of lien defined statutorily by Brazilian law and explicitly exempted from restructuring under the Brazilian Bankruptcy Law.  Through a fiduciary lien, the debtor and owner of an asset temporarily transfers the property rights in such asset to the creditor as guarantee of an obligation.  If the debtor defaults, the creditor, as the owner of the asset, may initiate a proceeding to publicly auction the asset and satisfy its obligation, with the remainder of the proceeds thereof directed toward the debtor.  This allows parties to negotiate for stronger lien packages when desirable.

with derivatives transactions. This rule shall be applied, *mutatis mutandis*, to a Brazilian EJ. Accordingly, where contractually provided or established under applicable regulations, such transactions may be accelerated and terminated notwithstanding the commencement of a Brazilian EJ. Upon such early termination, the parties may calculate and set off their respective obligations arising from the relevant transactions, with mutual obligations being extinguished to the extent they are netted ("**Permitted Setoff**"). Any resulting net balance owed by the debtor constitutes a claim subject to the Brazilian EJ, except where the claim is an EJ Exempt Claim.

## III.    Confirmation of the Plan in a Brazilian EJ

### A.    Requirements to Confirm the Plan

30.    Under Article 163 of the Brazilian Bankruptcy Law, any claims against a debtor (other than the EJ Exempt Claims, which are not relevant to this case) that exist on the date of the Brazilian EJ filing, whether matured or unmatured, may be impaired by an EJ Plan. An EJ Plan may impair multiple classes of claims or be limited to a single class or group of similarly situated claims against a debtor. The debtor may classify claims in a single class or group if those claims are of the same nature and subject to similar payment terms and conditions.

31.    Under Article 164 of the Brazilian Bankruptcy Law, following the acceptance of a petition for confirmation of an EJ Plan, the Bankruptcy Court must order the publication of an electronic notice in the official publication of the judiciary branch (the "**Court Official Gazette**"). This notice is intended to give notice to all affected creditors of their right to challenge or object to the proposed EJ Plan on various grounds within a statutory 30-day objection period, including objecting on the basis that the EJ Plan does not have the requisite majority consent for confirmation.

32.    After the expiration of the thirty (30)-day objection period, a debtor has five (5) days to answer any timely-filed objections to the proposed EJ Plan. Afterwards, the Bankruptcy

Court is required to decide on the proposed EJ Plan and any objections filed by creditors.  The EJ Plan will be confirmed so long as (a) it has been executed by creditors representing more than half (1/2) of the total amount of the debt of each class or group of impaired claims being restructured and (b) certain other specific requirements have been met (as further explained below).  The Bankruptcy Court will then determine whether notice of the EJ Plan was properly published, whether all other related administrative requirements were properly completed, and whether the EJ Plan has no illegal clauses, was not the result of (and will not result in) any fraudulent conduct, and is not a harmful action to creditors.  A Bankruptcy Court's decision on approval and confirmation of a plan (in any Voluntary Proceeding) is subject to appeal, but any appeals that are filed do not automatically stay the proceeding or the confirmation order of an EJ Plan.

33.    Creditors are given notice of every decision in the Brazilian EJ, and generally creditors have fifteen (15) business days to file an appeal.  This timeline starts running from the date creditors are directly notified of the applicable decision or the date of publication of each decision in the Court Official Gazette, depending on which method of notification the court will use.  The Bankruptcy Court supervises the entire Brazilian EJ proceeding and assesses whether all the parties in interest were given proper notice and proper means of defending their rights pursuant to the due process requirements of Brazil's Federal Constitution.

**B.    Effects of the Confirmation of the EJ Plan**

34.    If the EJ Plan is confirmed as described above, the debtor will continue its ordinary-course activities without further supervision by the Bankruptcy Court.  Upon confirmation, the claims subject to impairment under the EJ Plan will be discharged and novated in accordance with its terms, such that the pre-petition obligations of the debtor with respect to those claims will be extinguished and replaced by the new rights and obligations established under the EJ Plan.  Pursuant to Article 161 of the Brazilian Bankruptcy Law, the EJ Plan's confirmation order is

considered a judicially enforceable instrument. Therefore, if the debtor or any other implicated party fails to perform any obligation provided thereunder, a creditor may judicially seek the enforcement of the terms of the EJ Plan, including by seeking specific performance pursuant to Articles 536 to 538 of the Brazilian Civil Procedure Code.

35.    If the EJ Plan is not confirmed, the original terms and conditions of the debt instruments pertaining to the creditors remain in force and the debtor is not prevented from seeking a Brazilian RJ upon the rejection order, subject to the provisions of the Brazilian Bankruptcy Law. The Brazilian EJ is not converted into liquidation by means of Law if the debtor violates the terms of the confirmed EJ Plan, as happens in a Brazilian RJ proceeding.

## THE BRAZILIAN RJ PROCEEDING

36.    The other option for the Debtors is to file a Brazilian RJ after the Brazilian EJ. Once the Brazilian RJ petition is filed (if the debtor does not file with an EJ Plan, *see supra* ¶¶ 18-35), the Bankruptcy Court will review the petition and determine whether it is appropriate to admit the debtor into a Brazilian RJ. If a debtor entity satisfies all the requirements mentioned above and certain other additional eligibility requirements, the Bankruptcy Court will issue a decision commencing the Brazilian RJ (the "**Acceptance Order**"). In addition, the Bankruptcy Court also appoints a judicial administrator (the "**Judicial Administrator**"). The Judicial Administrator monitors the Brazilian RJ, provides reports on the debtor's activities, promptly provides all information requested by interested creditors, assists in the verification of claims, and complies with other mandates. Creditors receive notice of the Acceptance Order and the debtor's list of creditors through a publication in the Court Official Gazette. The Judicial Administrator also notifies all creditors listed alongside the Brazilian RJ petition about the Acceptance Order.

37.    Upon entry of the Acceptance Order and similar to a Brazilian EJ, all collection actions or enforcement proceedings commenced against the debtor or any jointly liable shareholder

before or after the Brazilian RJ filing are stayed for 180 days (the "**RJ Stay**").  The RJ Stay is subject to extension by  the Bankruptcy Court order for one (1) additional term of 180 days.  Accordingly, upon entry of the Acceptance Order, creditors become barred from seeking payment of their prepetition claims.  Any preferential payment on account of prepetition claims that are subject to the Brazilian RJ and to the detriment of other creditors is deemed a criminal offense, and the Bankruptcy Court has authority to claw back any such payments.

I.     **Claims Subject to a Brazilian RJ**

38.     The debtor is required to file a list of liabilities and creditors together with its Brazilian RJ petition.  The creditors have fifteen (15) days from the publication of proper notice in the Court Official Gazette to file proofs of claims with the Judicial Administrator.  The Judicial Administrator is then responsible for compiling and submitting a revised list of liabilities and creditors subject to the Brazilian RJ classifying them according to their statutory priorities.  Creditors receive notice of the revised list of creditors through a publication in the Court Official Gazette and then have another ten (10) days to file proofs of claims directly with the Bankruptcy Court in case of any objections to the revised list of liabilities and creditors.  Any and all allowed claims admitted to the list of liabilities and creditors before confirmation of the Brazilian RJ Plan are considered for purposes of calculating the plan approval thresholds under the Brazilian Bankruptcy Law (as described below).

39.     While, as a general rule, claims existing at the date of the Brazilian RJ petition (*i.e.*, prepetition claims) are subject to the Brazilian RJ, there are certain exceptions and safe harbors under the Brazilian Bankruptcy Law.  In addition to post-petition claims, there are claims (collectively, the "**RJ Exempt Claims**") that are not subject to the Brazilian RJ.  For example (i) taxes, (ii) claims secured by "fiduciary liens" granted by the debtors (*i.e.*, a fiduciary assignment

of contract rights (*cessão fiduciária*) or fiduciary sale of assets (*alienação fiduciária*),[9] (iii) claims deriving from leasing transactions (*arrendamento mercantil*), (iv) claims held by an owner or committed seller of real estate, and (v) claims deriving from advances in export or currency exchange agreements.

40.    RJ Exempt Claims are not subject to and cannot be involuntarily impaired by the Brazilian RJ.  Further, absent a special order of the Bankruptcy Court, creditors holding RJ Exempt Claims technically may enforce their claims against the debtor in parallel with the Brazilian RJ notwithstanding the RJ Stay.   For the duration of the RJ Stay, however, creditors holding RJ Exempt Claims (except for holders of tax claims) may not seize or dispose of any of the debtor's assets that are essential to its business operations, regardless of whether such RJ Exempt Claims are secured by liens over any of those assets.   Accordingly, the Bankruptcy Court has exclusive jurisdiction to determine which assets may be attached and seized by creditors to satisfy RJ Exempt Claims while the RJ Stay is effective.

## II.    A Debtor's Operations Throughout the Brazilian RJ Proceeding

41.    Similar to a Brazilian EJ, the assets of the debtor are also subject to the control and supervision of the Bankruptcy Court in a Brazilian RJ.  Once the Acceptance Order is entered, the debtor is subject to oversight by the Judicial Administrator and is prevented from disposing or encumbering hard assets without prior authority by either the Bankruptcy Court or under the terms of a confirmed Brazilian RJ Plan.  And while the Judicial Administrator is responsible for, among other things, monitoring and providing reports on the debtor's management of its day-to-day

---

[9]    A fiduciary lien is a particular type of security interest defined by Brazilian law and, unlike regular liens that are subject to the Bankruptcy Court's authority, is explicitly exempted from restructuring under the Brazilian Bankruptcy Law.  Through a fiduciary lien, the ownership of an asset is temporarily transferred to the creditor as a guarantee of an obligation, while the debtor (original owner) keeps immediate possession of such asset.  Upon the debtor's default, the creditor is entitled to immediately foreclose the asset and sell it to satisfy its obligation, with the remainder of the sale proceeds being directed toward the debtor.  This allows parties to negotiate for stronger lien packages when desirable.

affairs, the Judicial Administrator does not interfere with the debtor's ongoing operations and business decisions.  Accordingly, the officers and directors of a debtor remain duly authorized to act on the debtor's behalf in the Brazilian RJ, in a manner I understand to be similar to the authorities of officers, directors, or authorized representatives of a debtor in possession under the Bankruptcy Code in the United States.  Furthermore, a debtor (or its agents) is authorized under the Brazilian Bankruptcy Law and other applicable laws to act as a foreign representative in a foreign proceeding in support of a Brazilian RJ, irrespective of whether a court order appointing such foreign representative has been obtained. [10]

42.    The Brazilian Bankruptcy Law also allows creditors to form a committee composed of one (1) representative from each of the determined class of creditors (as explained below).  The creditors' committee serves as an overseeing body that ensures the interests of the creditors are represented throughout the proceeding. [11]  The main responsibilities of the creditors' committee are to inspect and monitor compliance with the Brazilian Bankruptcy Law, to inform the judge of any violation of legal provisions by the debtor, to request that the judge call a General Creditors' Meeting (as defined below), and to issue opinions on proofs of claims.  The Brazilian Bankruptcy Law provides that members of the committee may be liable for losses caused to the estate, the debtor or the creditors due to willful misconduct or negligence.  In practice, creditors rarely seek the formation of a creditors' committee.

---

[10]    *See* Article 167-E of the Brazilian Bankruptcy Law ("The following are authorized to act in other countries, regardless of a court order, as a representative of the Brazilian proceeding, so long as such act is permitted under the law of the country in which the foreign proceedings are pending: (I) the debtor, in a judicial and extrajudicial reorganization proceeding . . . .").

[11]    The Judicial Administrator and Public Prosecutor provide additional oversight over a debtor's operations and affairs as well as their restructuring efforts and conduct in the judicial reorganization, thereby ensuring accurate information is disseminated to the creditors.

III.   **Confirmation of the Plan in a Brazilian RJ**

A.    **Requirements to Confirm the Plan**

43.    After filing the Brazilian RJ petition and following entry of an Acceptance Order, the debtor must submit a plan of reorganization within sixty (60) days of the publication of the Acceptance Order in the Court Official Gazette (the so-called "**RJ Plan**"). This 60-day period, as a general rule, is not extendable. If a debtor does not comply with this obligation, the Brazilian RJ may be converted into a liquidation (*falência*) unless creditors vote to allow the submission of an alternative RJ Plan, as explained below.

44.    Upon filing of a Brazilian RJ by the debtor, the Brazilian Bankruptcy Law requires that notice be given to all impaired creditors and parties in interest, through a publication in the Court Official Gazette. Thereafter, creditors have 30 days to object to such plan before the Bankruptcy Court. Should any creditor object to the RJ Plan proposed by the debtor, the Bankruptcy Court is required to call a general meeting of creditors (the "**General Meeting of Creditors" or "GMC"**) to vote on the RJ Plan.[12] Creditors receive notice of the GMC through a publication in the Court Official Gazette, which shall occur at least fifteen (15) days in advance of such meeting.

45.    The Bankruptcy Court, however, may analyze and approve a proposed RJ Plan *without* requiring a GMC if certain conditions are present. Specifically, the GMC shall not be required if the debtor is able to obtain sufficient creditor support via adhesion terms, *i.e.*, a written confirmation from creditors that they support the RJ Plan (each, an "**Adhesion Term**"), to meet the plan approval thresholds under the Brazilian Bankruptcy Law, up to five (5) days before the

---

[12]    At the General Creditors' Meeting, the debtor and the creditors in attendance are allowed to discuss the terms of the RJ Plan and may negotiate modifications. As described below, if these negotiations require additional time, the debtor and its creditors can agree to adjourn the General Creditors' Meeting for further continued discussions. The RJ Plan may be submitted for voting in its modified form at the General Creditors' Meeting.

scheduled date of the GMC.  As a result thereof, the Bankruptcy Court will immediately cancel

the GMC (if one has been scheduled) and issue a notice to all creditors of the presentation of the

Adhesion Terms.  Creditors may challenge the Adhesion Terms within ten (10) days on the

following grounds: (a) insufficient support to meet the legal thresholds for RJ Plan approval; (b)

nonfulfillment of procedural requirements; (c) that the Adhesion Terms violate the law; or (d) that

the terms and conditions of the RJ Plan are illegal.

46.    If (a) no objections to the RJ Plan are raised by any creditor or (b) the RJ Plan is

approved by the requisite majority of creditors (i) at the GMC or (ii) through Adhesion Terms, the

Bankruptcy Court may confirm the RJ Plan and grant the Brazilian RJ of the debtor.

47.    Alternatively, at a GMC the debtor and creditors representing more than a simple

majority (more than fifty percent (50%)) of creditors present and voting at such meeting may agree

to adjourn the meeting to allow negotiations to continue with the debtor towards a consensual RJ

Plan, as is customary in many complex Brazilian RJ cases.  In such an instance, the debtor may

adapt or modify a RJ Plan to meet the creditors' expectations.  Creditors will vote on the amended

RJ Plan in a following GMC.

48.    Creditors may also agree to propose an alternative RJ Plan under certain

circumstances.  If a debtor (a) fails to submit a RJ Plan within the statutory period or any extensions

thereof granted by the Bankruptcy Court or (b) presents a RJ Plan that is rejected by the majority

of creditors present and voting at a GMC.  In this case, creditors may still decide on whether to

allow a competing RJ Plan to be formulated by creditors (an "**Alternative Plan**").  If, however,

creditors decide not to allow for an Alternative Plan to be proposed, or if such Alternative Plan

fails to obtain sufficient support to meet the statutory approval thresholds, the Bankruptcy Court may convert the Brazilian RJ into a liquidation proceeding. [13]

49.     A RJ Plan must contain the following: (a) a thorough description of the measures to be taken to successfully reorganize the debtor's business; (b) a demonstration of the economic feasibility of the RJ Plan; (c) a financial expert's valuation of the debtor's assets; and (d) a proposed treatment of claims subject to the Brazilian RJ.  In general, claims of the same class must be treated equally absent an economic and legal justification for treating a subgroup of claims differently.

50.     For purposes of voting on a RJ Plan, claims are divided into the following four classes: (a) labor-related claims (Class I); (b) secured claims, up to the value of the respective collateral (Class II); (c) unsecured claims, claims entitled to general and special privilege, and subordinated claims (Class III); and (d) claims held by "small business companies" (Class IV). Equity holders' acceptance of the RJ Plan is not required for its approval.  In fact, shareholders, subsidiaries, affiliates, and certain other parties related to the debtor may attend the GMC  but are not allowed to vote on RJ Plans.  Furthermore, RJ Exempt Claims are not affected by the RJ Plan and are not entitled to vote on the RJ Plan.  In addition, holders of unimpaired claims are also not entitled to vote on the RJ Plan.  Each impaired creditor holds the right to vote on the RJ Plan *pro rata* to the value (dollar amount) of its claim, unless such creditor is a partner or shareholder of the debtor company, or of a party related to the debtor company.

51.     Approval of a RJ Plan may be obtained in one of two ways: (a) through a "regular creditor majorities" procedure; or (b) through a "cramdown" procedure.

---

[13]     Once a Brazilian RJ is converted into liquidation, the officers and directors of the debtor are no longer allowed to manage its affairs, and the assets of the debtor are collected and sold by the Judicial Administrator.

Approval of a RJ Plan through the regular creditor majorities procedure at the GMC or through

Adhesion Terms requires the RJ Plan to be approved by the majority of each class of claims.

Specifically, in Classes I and IV, the requirement for approval of the RJ Plan is a simple majority,

*i.e.*, more than fifty percent (50%) of the number of creditors within each respective class who are

present and voting at the GMC, regardless of the amount of the claims held.  In Classes II and III,

however, the RJ Plan must be approved by both (a) more than fifty percent (50%) of the number

of creditors within each respective class who are present and voting at the GMC and, cumulatively

(b) creditors holding more than fifty percent (50%) in principal amount of the allowed claims in

each respective class who are present and voting at the GMC.

52.     If the required majorities are not met in a class of claims, the RJ Plan may still be

approved via *cramdown* (cross-class cramdown).  Approval of a RJ Plan through *cramdown*

requires the Bankruptcy Court to approve the RJ Plan if all of the following criteria are met:

(a)     holders of a simple majority (more than 50%) of the total allowed claims
        present at the GMC vote to approve the RJ Plan;

(b)     the required majorities are met in three of the four voting classes of claims
        (if there are four voting classes of claims), or the required majorities are met
        in two of the three voting classes of claims (if there are three voting classes
        of claims), or in one voting class of claims (if there are only two voting
        classes of claims);

(c)     for the creditors' class voting to reject the RJ Plan, more than 1/3 (one third)
        of creditors present and voting at the GMC in such class vote to approve the
        RJ Plan (following the voting thresholds for each class set forth above); and

(d)     the RJ Plan does not discriminate against creditors of the class that rejected
        it – claims of the same class must be treated equally absent proper
        justification for treating a subgroup of claims differently.

53.     If a RJ Plan has been approved by the requisite majority of creditors, the

Bankruptcy Court must confirm the RJ Plan, unless the approved RJ Plan – or part of it – violates

Brazilian law, in which case the Bankruptcy Court is afforded discretion to deem such illegal

provisions void or order a revised version thereof to be submitted ("**Confirmation Order**").  The Brazilian Bankruptcy Law provides that a judicially confirmed RJ Plan novates and discharges all affected prepetition claims and binds the debtor as well as all the impaired creditors to the RJ Plan.

54.      Brazilian law provides for a robust appeal process to dispute the Confirmation Order.  Upon entry of the plan Confirmation Order, any dissenting creditor (including creditors that have not submitted an Adhesion Term) affected by the RJ Plan as well as the office of the public prosecutor (the "**Public Prosecutor**") may (a) file a motion for clarification with the Bankruptcy Court within five (5) days of publication of the RJ Plan Confirmation Order and/or (b) file an interlocutory appeal with the State Court of Appeals (the "**Court of Appeals**") within fifteen (15) days of publication of the RJ Plan Confirmation Order (or the decision on a motion for clarification, if one is filed).  After the Court of Appeals renders its decision, the parties may appeal such decision within fifteen (15) days to the Brazilian Superior Court of Justice (the "**Superior Court of Justice**"), the highest court with jurisdiction over matters related to the Brazilian Bankruptcy Law, if the challenged issue is not a matter of fact, but any aspect related to the effectiveness of a statutory rule.

55.      Throughout the entire process, creditors and other parties in interest are given proper notice through electronic publication in the Court Official Gazette of every order and notice entered by the Bankruptcy Court, the Court of Appeals, and the Superior Court of Justice. Accordingly, the deadline to file appeals against any court orders only begins after the parties have received proper notice of such order, including through the Bankruptcy Court's official website, which is available for public consultation.

## B.      Supervision Period After Plan Confirmation

56.      Under the Brazilian Bankruptcy Law, once a Bankruptcy Court confirms a RJ Plan, the debtor remains in Brazilian RJ until such time as the debtor's Brazilian RJ or liquidation is

complete or up to two (2) years from the entry of the RJ Plan Confirmation Order, which period the Bankruptcy Court has discretion to decrease or extend (the "**Supervision Period**").  During the Supervision Period, the Bankruptcy Court and the Judicial Administrator continue to monitor and supervise the debtor's performance and compliance with all obligations provided under the RJ Plan as they become due.

57.     If, at the end of the Supervision Period, the debtor has complied with all obligations under the RJ Plan that became due until that point, the Bankruptcy Court may issue an order formally closing the debtor's Brazilian RJ.  By contrast, if the debtor fails to comply with any of its obligations under the RJ Plan during the Supervision Period, the Bankruptcy Court must either (a) convert the Brazilian RJ into a liquidation; or (b) at its discretion and absent an order closing a debtor's Brazilian RJ, grant the debtor the opportunity to propose amendments or revisions to the RJ Plan.

58.     During the Supervision Period, the restrictions imposed on the debtor due to the commencement of the Brazilian RJ persist, unless authorized in the RJ Plan, such as the prohibition on the disposal of assets without prior approval from the Bankruptcy Court or the creditors subject to the Brazilian RJ as well as the obligation to present monthly reports on the debtor's activities and financial results.  Similarly, the Judicial Administrator continues to supervise the operations and financial and legal affairs of the debtor for the duration of the Supervision Period and submit reports in connection therewith.  In addition, the Bankruptcy Court retains its jurisdiction over all assets of the debtor until the Brazilian RJ is formally closed.

**BRAZILIAN BANKRUPTCY LAW:**
**RELEVANT FACTORS FOR GRANTING ADDITIONAL RELIEF SET FORTH IN**
**SECTIONS 1507 AND 1521 OF THE BANKRUPTCY CODE**

I.    **Brazilian Bankruptcy Law Provides Just Treatment to All Holders of Claims Against**
      **or Interests in the Debtors' Property**

59.    As outlined above, the procedural safeguards for creditors under the Brazilian

Bankruptcy Law are robust. For example, with respect to Brazilian EJs, the requisite majority

consents discussed above help ensure that creditors are treated fairly. *See supra* ¶¶ 22-23. More

specifically, consent thresholds help ensure just treatment to all impaired creditors because in order

for a debtor to obtain the significant level of consensus needed to be able to submit an EJ Plan

executed by a majority of creditors in each class of claims impaired under the EJ Plan, the debtors

must have actively negotiated an EJ Plan with creditors of each class of claims impaired under the

EJ Plan before such plan is even submitted to the Bankruptcy Court. Moreover, as noted above,

creditors may challenge or object to a debtor's proposed EJ Plan or RJ Plan. *See supra* ¶¶ 31-33,

44-48, 54.

60.    Brazilian RJs also have requisite majority consents for the approval of an RJ Plan,

which ensure the fair treatment of all impaired creditors. *See supra* ¶¶ 44-48. The Brazilian

Bankruptcy Law also provides additional protection to creditors in a Brazilian RJ through the

possible appointment of a committee of creditors or a Judicial Administrator, each of which carries

out an oversight role in the proceeding that ensures a fair and orderly resolution of the claims

against the debtor's estate. *See supra* ¶ 36, 42.

61.    Although the Brazilian Bankruptcy Law does not govern avoidance actions in the

context of any Voluntary Proceeding, creditors are generally permitted to bring actions to avoid

transfers made by the debtor under the Brazilian Civil Code, which provides that the following

actions be considered fraud against creditors, as stated above.

62.    In any of the Voluntary Proceedings, creditors may seek reversal of a confirmation order with respect to an EJ or RJ Plan.  Within five (5) business days after notice that the Bankruptcy Court has confirmed a plan, creditors may present to the Bankruptcy Court a motion for clarification, seeking the correction of any material errors, or clarification of omitted or contradictory points in the confirmation order, eventually leading to the amendment of the confirmation order by a supplemental order from the Bankruptcy Court ("**Supplemental Order**"). In addition, within fifteen (15) business days after notice of the plan confirmation, or after notice of such Supplemental Order, creditors may file an appeal with the relevant Court of Appeals, seeking the reversal of the confirmation order (as supplemented by the Supplemental Order, if applicable).  The filing of such appeal does not automatically stay the effects of the confirmation order, however, that appeal may request that the Court of Appeals order stay the effects of the confirmation order until the appeal is ruled on a final basis by the Court of Appeals.  Likewise, a debtor may appeal an order that did not confirm a plan within fifteen (15) business days after notice, addressed to the Court of Appeals, and that appeal will not automatically stay the order (same as described above).  *See supra* ¶¶ 33, 54.  Finally, after the Court of Appeals hears any such appeal, the creditors and the debtor will be afforded the chance to file new appeals, within fifteen (15) business days from notice of such decision, addressed to the Brazilian Superior Court of Justice (for any violation of federal law) and an extraordinary appeal to the Brazilian Supreme Court (for any violation of Brazil's Federal Constitution).  As reported above, creditors receive notice of court decisions through an electronic notice issued by the state court's website or a publication in the Court Official Gazette, which is publicly available.  The deadlines for filing appeals run from the date of the receipt of the electronic notice or of the publication in the Court Official Gazette, as applicable.

## II.  Interests of Creditors and Other Interested Parties Are Sufficiently Protected by the Brazilian Bankruptcy Law

63.    As discussed throughout this Declaration, Brazilian Bankruptcy Law sufficiently protects the interests of creditors and other interested parties through a variety of means. Specifically, the Brazilian Bankruptcy Law maintains a robust set of procedural safeguards that must be provided for within any Voluntary Proceeding.

### A.  United States Claimholders Will Not Be Prejudiced or Inconvenienced in Processing Claims

64.    Foreign creditors, including creditors organized or located in the United States, have the same status as local creditors under the Brazilian Bankruptcy Law.  Accordingly, foreign creditors enjoy the same procedural safeguards and substantive rights as Brazilian creditors, including the right to participate fully and on equal footing in any Brazilian EJ or Brazilian RJ, to engage in negotiations concerning the treatment of their claims, and to benefit from (or be bound by) any relief granted in the proceeding on the same terms as similarly situated domestic creditors. Reinforcing this principle of equal treatment, Article 167-G of the Brazilian Bankruptcy Law, which was introduced by Law 14,112/20, expressly provides that "*foreign creditors are afforded the same rights that are afforded to national creditors in judicial reorganization, extrajudicial reorganization, or bankruptcy liquidation proceedings*."

65.    The Brazilian Bankruptcy Law provides creditors with adequate notice of timing and procedures for any Voluntary Proceeding.  As a general rule, all orders entered by the Bankruptcy Court are published in the Court Official Gazette.  In addition, except for voting purposes, an EJ or RJ Plan may not convert claims denominated in foreign currency to Brazilian *reais* without the specific consent of each affected creditor.  As such, no significant burdens are placed upon U.S. creditors that are inconsistent with those placed upon domestic creditors.

26

66.    In a Brazilian EJ or Brazilian RJ, as mentioned above, upon confirming the debtor's eligibility and accepting the Brazilian EJ or Brazilian RJ petition, as part of the acceptance order, the Bankruptcy Court will also determine that notice of the proceeding, addressed to all impaired creditors, be sent via letter and published in the Court Official Gazette.  Accordingly, all of the debtor's creditors are given notice of the proceeding, of the EJ Plan or RJ Plan presented therewith, and the deadline for any eventual objections.

67.    The Brazilian EJ does not require filing proofs of claim in order to receive any payment; instead, all creditors with obligations being restructured under the EJ Plan will be paid pursuant thereto.

68.    For Brazilian RJs, the Brazilian Bankruptcy Law gives creditors adequate notice of timing and procedures for filing claims, and such procedures do not impose any additional burdens for foreign creditors to file a claim.  Upon accepting the debtor into a Brazilian RJ, the Bankruptcy Court orders the publication of the list of creditors presented by the debtor.  Creditors receive notice of the list of creditors submitted by the debtor once the Brazilian RJ is commenced and have the opportunity to file proofs of claims with the Judicial Administrator to include or correct their claims affected by the proceeding.  The Judicial Administrator then files its own list of creditors, which is again published, and creditors receive another opportunity to file proofs of claims, this time with the Bankruptcy Court.

**B.    Prevention of Preferential or Fraudulent Dispositions of a Debtors' Property**

69.    Any creditor, the Brazilian Public Attorney's Office, or the Judicial Administrator appointed by the Bankruptcy Court within the Brazilian EJ, Brazilian RJ or bankruptcy liquidation proceedings may bring actions to avoid transfers made to third parties by the debtor with the intent of defrauding creditors or damaging the debtor's estate if such debtor is declared bankrupt and goes into liquidation.  In this instance, a plaintiff would be required to show that the following

elements of fraud under Brazilian law are satisfied: (a) a claim already existed when the transfer was made; (b) the transfer left the debtor without sufficient assets to cover such claim; and (c) the debtor and the third-party transferee acted in bad faith.  A transfer is presumed to have been made in bad faith where the debtor made gratuitous transfers, forgave debts, paid unsecured creditors before maturity date to the detriment of senior creditors, granted collateral to creditors when the debtor was already insolvent, or where the transferee already knew that the debtor was insolvent when the transfer was made.  The Bankruptcy Court may also declare those transfers void *sua sponte* if the intent to defraud is not a disputed question of fact.

70.    In addition, any creditor may bring a fraudulent conveyance action to avoid a transfer made by a debtor under Brazilian EJ or Brazilian RJ to third parties.  In such action, the creditor is required to show similar elements to those mentioned above with respect to transfers that result in the insolvency of the debtor.

71.    Moreover, some transfers are subject to avoidance as a matter of Brazilian Bankruptcy Law if they were made during the "legal term," a period set by the Bankruptcy Court and beginning not more than ninety (90) days before the liquidation petition or the date of the first protest (official declaration of default) by a creditor, and ending on the petition date, during which such transfers by the debtor are subject to scrutiny.  Such transfers include payments of debts not yet due, payments of debts that were due but were enforceable in any way not provided for in the agreement memorializing the debt, and the creation of liens or any other *in rem* property interest in connection with a previously incurred debt.

## C.    Distribution of Proceeds of a Debtor's Property Is Substantially in Accordance with the Bankruptcy Code

72.    I understand that, in substance, the distribution scheme prescribed under the Brazilian Bankruptcy Law is substantially similar to the one prescribed in the United States

Bankruptcy Code, as priority is granted to certain administrative claims and, importantly, secured claims rank senior to unsecured claims.

73.    First, under the Brazilian Bankruptcy Law, administrative claims are given superpriority over the claims of the other creditors.   Those administrative claims include the following: (a) expenses that are essential to the management of the estate; (b) labor-related claims of a strict salary nature, as opposed to other labor benefits due to workers (e.g., social security contributions), arising during the three (3) months prior to the date the petition for the Voluntary Proceeding is filed, up to an amount equal to five (5) months of the Brazilian monthly minimum wage per relevant employee; (c) labor-related claims or claims related to occupational accidents arising post-petition; (d) any financing of the debtor provided during a Brazilian RJ proceeding, pursuant to Section IV-A of the Brazilian Bankruptcy Law; (e) specific claims requiring restitution pursuant to Article 86 of the Brazilian Bankruptcy Law, such as claims related to foreign exchange advancement agreements for exports; (f) fees of the judicial administrator and labor-related claims or claims related to occupational accidents arising after the liquidation was initiated; (g) any sums provided to the debtors or obligations performed during a Brazilian RJ proceeding; (h) sums provided to the estate by creditors during the liquidation; (i) expenses related to the disbursement of proceeds of the estate and the costs related to the bankruptcy proceeding; (j) Bankruptcy Court costs for actions brought against the estate in which the estate was defeated; (k) taxes incurred after the liquidation was initiated; and (l) other obligations arising from valid transactions performed during the Brazilian RJ and taxes arising post-petition.

74.    Following the payment of the above-referenced claims, the various classes of claims are paid, within a bankruptcy liquidation proceeding, in the following order: First, each holder of a labor-related claim is entitled to a priority claim capped at an amount equal to one

hundred fifty (150) months of the Brazilian national monthly minimum wage (any portion of a labor-related claim exceeding that amount is a deficiency claim and is classified within the unsecured creditors' class). Second, secured claims up to the value of the assets securing such claims. Third, tax claims exclusive of tax fines. Fourth, unsecured claims, which include deficiency labor claims and fines arising from contracts and applied as a result of criminal or administrative enforcement actions, including tax fines or penalties. Fifth, claims subordinated by law or contract, and those claims held by shareholders and by directors that have no employment relationship with the debtor, provided that those claims do not derive from an arm's-length transaction and reflect market practice. Sixth, interest due after the liquidation has been initiated.

75. In a Brazilian EJ, creditors' impaired claims under the plan (and only such claims) are paid pursuant to the provisions of a confirmed EJ Plan, and other claims are generally not affected by the EJ Plan. However, as previously mentioned, an EJ Plan (a) shall not provide for early repayment of claims subject to the EJ Plan and cannot provide treatment that harms creditors not impaired by the EJ Plan; (b) shall not suppress the exchange rate variation in the calculation of claims denominated in foreign currency without the express consent of the relevant creditor; (c) shall not provide for the sale of any asset given as collateral without the consent of the applicable secured creditors (as prescribed by the relevant financing and/or collateral documentation); and (d) all similarly situated creditors within the same class must be treated equally (subject to narrow exceptions).

76. One of the exceptions under Brazilian Bankruptcy Law to the equal treatment of similarly situated creditors within the same class applies to so-called "*supporting creditors*" who shoulder additional burdens to assist the debtor in its restructuring, such as by providing additional credit, capital investment or critical supplies, thereby increasing their exposure to the debtor.

Brazilian case law has been consistent in ratifying the different treatment of supporting creditors by an interpretation of the underlying principles of Article 67 of the Brazilian Bankruptcy Law, which now expressly provides for such a possibility.

77.     In a Brazilian RJ, the claims of affected creditors are paid pursuant to the confirmed RJ Plan.  The RJ Plan has similar protections as the EJ Plan.  In addition, the RJ Plan, may not provide (a) a period longer than two (2) years for the payment of labor-related claims upon approval (the payment of labor-related claims of a strictly salary nature, up to the limit of five (5) monthly minimum wages per worker, must be paid within 30 days and there are further assurances to be presented to the courts for payment periods longer than one (1) year); and (b) for the suppression or the replacement of any security interest, when the asset covered by such security interest is disposed of, without the express approval of the relevant secured creditor.

## THE DEBTORS' BRAZILIAN EJ PROCEEDING

78.     On March 11, 2026, the day that the Brazilian Proceeding was commenced, the Debtors published a material fact notice to the market announcing the filing, in accordance with applicable corporate and securities rules (the "**Press Release**"). A true and correct copy of the Press Release is attached hereto as **Exhibit C**.

79.     On March 12, 2026, the Bankruptcy Court entered an interlocutory order confirming the Debtors' eligibility to file for the Brazilian Proceeding, accepting the filing of the Brazilian Proceeding, ratifying the requested preliminary stay of all collection and enforcement proceedings commenced by creditors of claims subject to the Brazilian Proceeding against the Debtors, ordering the publication of a public notice informing affected creditors of the filing of the Brazilian Proceeding and granting a ninety (90)-day period for the Debtors to obtain and submit the consent from additional creditors with the EJ Plan and appointing Lourival Nogueira Luiz Junior as the foreign representative of the Debtors in the Brazilian Proceeding (the "**Initial Court**

Order"). A true and correct copy of the Initial Court Order is attached hereto as **Exhibit D**, with

a certified translation in English attached hereto as **Exhibit E**. The officers and directors of the

Debtors continue to be duly authorized to act on the Debtors' behalf throughout the Brazilian

Proceeding without the need for court authorization.

80.     Under the terms of the Initial Court Order, the stay was ratified and all of the

Debtors' creditors that are impaired under the Brazilian Proceeding are now barred from

commencing or continuing any action, and may not exercise set-off rights against the debtor,

subject to a limited exception for Permitted Setoffs, against the Debtors or the Debtors' assets in

Brazil or elsewhere, similar to the automatic stay imposed in the United States upon a chapter 11

bankruptcy filing, including compulsory execution, provisional seizure, provisional disposition, or

execution of pledges based on a claim subject to the Brazilian Proceeding.

81.     The Initial Court Order also provided for publication of a notice to all creditors

subject to the Brazilian Proceeding, informing them of the filing of the Brazilian Proceeding and

of the period during which they could approve (and thus adhere to) the Brazilian Proceeding. Once

the Debtors obtain and submit to the Bankruptcy Court the additional required support from

impaired creditors with the Brazilian Proceeding, the Bankruptcy Court is expected to publish a

notice (the "**Public Notice**") in the Court Official Gazette, providing notice of the Brazilian

Proceeding to all creditors subject thereto and informing them of the opportunity to object during

the objection period (*i.e.*, thirty days as from the date on which such notice has been published).

## CHAPTER 15 CASES

82.     To ensure the Brazilian Proceeding is fully implemented and enforceable in the

United States, the Debtors commenced these Chapter 15 Cases. In particular, as more fully

described in the Verified Petition, each of the Debtors is an obligor under one or more debt

instruments governed by New York law. Given these and other contacts in the United States

(described in the Verified Petition), the Debtors and their supporting stakeholders determined the restructuring is more efficiently and effectively accomplished with recognition of the Brazilian Proceeding and recognition and enforcement of the Brazilian Proceeding in the United States through these Chapter 15 Cases.

## I.    Brazilian Proceeding Is A Foreign Main Proceeding

83.    As previously discussed, the Brazilian Proceeding is a collective judicial proceeding under Brazilian law relating to the adjustment of debts, the purpose of which is a corporate reorganization that allows the Debtors to restructure their obligations and continue operating as a going concern.  The Brazilian Proceeding allow for participation by all affected creditors.  Each creditor whose interests is affected by the applicable EJ Plan (the "**Affected Parties**") is entitled to support, object to, and be heard with respect to such EJ Plan.  If approved, the EJ Plan is enforceable against covered creditors.  Accordingly, the Brazilian Proceeding considers the rights of all of the Affected Parties.

84.    The Brazilian Proceeding is judicial in nature.  Pursuant to the Brazilian Bankruptcy Law, the Bankruptcy Court has jurisdiction over the Brazilian Proceeding.  The Bankruptcy Court is instrumental to the implementation of the Brazilian Proceeding.  Absent the Bankruptcy Court's approval and oversight, the Debtors cannot implement or enforce the Brazilian Proceeding.

85.    Commencement of these Chapter 15 Cases was authorized by the Bankruptcy Court pursuant to its approval of the Brazilian Proceeding, which explicitly contemplate and require recognition through these Chapter 15 Cases.

86.    I have reviewed and been informed of the "foreign main proceeding" and "foreign representative" requirements necessary to recognize a proceeding under Chapter 15 of the United States Bankruptcy Code.  Based upon my experience and understanding of Brazil's relevant laws, and upon advice of  U.S. counsel, I believe the Brazilian Proceeding qualify as a foreign main

33

proceeding pursuant to sections 101(23) and 1502(4) of the United States Bankruptcy Code because the Brazilian Proceeding is a collective judicial proceeding in Brazil under Brazilian Bankruptcy Law, in which the assets and affairs of the Debtors are subject to supervision by the Bankruptcy Court for the purpose of reorganization, and such proceedings are pending in the country where the Debtors have their centers of main interests.

## II.    The Debtors' Foreign Representative Satisfies Section 101(24)

87.    Each of the Debtors also appointed Raízen S.A. as the Debtors' foreign representative in these Chapter 15 Cases (the "**Foreign Representative**"). Based on my experience and understanding of the relevant laws of Brazil, I believe that Raízen S.A. qualifies as a Foreign Representative under section 101(24) of the United States Bankruptcy Code and has full authority to commence the Chapter 15 Cases and seek the relief requested.

## CONCLUSION

88.    The issuance by the Court of an order recognizing and enforcing the Brazilian Proceeding in the United States under chapter 15 of the United States Bankruptcy Code is necessary to ensure that the Brazilian Proceeding is given full effect in the United States and to protect the Debtors and their assets from any actions in contravention of the Brazilian Proceeding, including potential actions brought by holders of debts governed by U.S. law. Accordingly, the relief requested by the Foreign Representative will help secure an economical, expeditious, fair, and efficient administration of the Brazilian Proceeding that protects the interests of the Debtors and their creditors. This Court should therefore grant the relief requested in the Verified Petition and the Provisional Relief Motion.

*    *    *

*[Signature Page Follows]*

*[Signature Page to Declaration of Giuliano Colombo]*

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States that the foregoing is true and correct.

Executed on March 12, 2026, São Paulo.

Respectfully submitted,

_____
Giuliano Colombo,

## EXHIBIT A

**As-filed Version of Brazilian Petition Commencing EJ**

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, INIC1, Página 1

X G I V S

XAVIER GAGLIARDI INGLEZ SCHAFFER

P I N H E I R O N E T O
A D V O G A D O S





EXCELENTÍSSIMO(A) SENHOR(A) DOUTOR(A) JUIZ(A) DE DIREITO DA _ VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS DO FORO CENTRAL DA COMARCA DE SÃO PAULO

**(1) RAÍZEN S.A.**, sociedade por ações de capital aberto Categoria A, inscrita no Cadastro Nacional de Pessoa Jurídica do Ministério da Fazenda ("**CNPJ/MF**") sob o nº 33.453.598/0001-23; **(2) RAÍZEN ENERGIA S.A.**, sociedade por ações de capital aberto Categoria B, inscrita no CNPJ/MF sob o nº 08.070.508/0001-78; **(3) RAÍZEN FUELS FINANCE S.A.**, sociedade empresária constituída de acordo com as leis de Luxemburgo, registrada sob o nº B184033; **(4) RAÍZEN TRADING S.A.**, sociedade empresária constituída de acordo com as leis da Suíça, registrada sob o nº CHE-143.573.167; **(5) RAÍZEN NORTH AMERICA INC.,** sociedade empresária constituída de acordo com as leis dos Estados Unidos da América, Estado de Delaware, registrada sob o nº 34-2027198; **(6) RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA.**, sociedade por ações, inscrita no CNPJ/MF sob o nº 09.538.989/0001-66; **(7) RAÍZEN CENTRO-SUL PAULISTA S.A.**, sociedade por ações, inscrita no CNPJ/MF sob o nº 49.213.747/0118-28; **(8) RAÍZEN CENTRO-SUL S.A.**, sociedade por ações, inscrita no CNPJ/MF sob o nº 15.527.906/0001-36; **(9) BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A.**, sociedade por ações, inscrita no CNPJ/MF sob o nº 04.958.554/0001-57 (em conjunto, "**GRUPO RAÍZEN**" ou "**REQUERENTES**" – **Doc. 2.1**), vêm, por seus advogados (**Doc. 2.2**), requerer o processamento do presente **PEDIDO DE RECUPERAÇÃO EXTRAJUDICIAL** ("**Plano**" – **Doc. 1**) e a **SUSPENSÃO DE AÇÕES E EXECUÇÕES** (*stay period*) contra as Requerentes, nos termos do arts. 6º e 163, § 8º, da Lei nº 11.101/2005 ("**LFR**"), pelas razões expostas a seguir.

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, INIC1, Página 2

X G I V S   PINHEIRO NETO      
XAVIER GAGLIARDI INGLEZ SCHAFFER   A D V O G A D O S

## I.    GRUPO RAÍZEN: HISTÓRIA, ESTRUTURA E RELEVÂNCIA SOCIAL

1.      O Grupo Raízen surgiu em 2011, oriundo da junção de ativos da Cosan S.A. ("**Cosan**") e da Shell Brasil Holding B.V. ("**Shell**"),[1] que deu origem a uma *joint-venture* integrada na cadeia de distribuição de combustíveis e produção de açúcar e etanol. A operação uniu a tradição centenária da Shell no Brasil (que aqui opera desde 1913[2]) aos ativos industriais e logísticos da Cosan – incluindo usinas e ativos oriundos da Esso/ExxonMobil – dando origem a um grupo econômico de grande escala, composto por dezenas de subsidiárias e empresas operacionais, com atuação complementar e integrada.

2.      Desde sua constituição, o Grupo Raízen estruturou suas atividades em dois grandes eixos: **(i)** produção e comercialização de etanol, açúcar e bioenergia ("**EAB**"); e **(ii)** distribuição, comercialização e revenda de combustíveis, biocombustíveis e lubrificantes ("**Distribuição de Combustíveis**").

3.      Após consolidar sua posição no mercado doméstico, em 2018 o Grupo Raízen iniciou seu movimento de expansão internacional, incluindo a Argentina, onde passou a figurar como segundo maior *player* de Distribuição de Combustíveis no país,[3] operando refinaria, planta de lubrificantes, terminais e bases aeroportuárias, além de abastecer aproximadamente 900 postos de combustível na Safra 2024/2025.

4.      Em 2021, como parte da estratégia de expansão e fortalecimento de capital,[4] a Raízen S.A. obteve registro de companhia aberta "*Categoria A*" perante a Comissão de Valores

---

[1]   Como se denota do Formulário de Referência de 05/12/2025 da Raízen S.A., disponível em: https://ri.raizen.com.br/divulgacoes-e-documentos/formulario-de-referencia-e-cadastral/, acesso em 09/03/2026.

[2]   Inicialmente constituída sob a denominação The Anglo Mexican Petroleum Products Company (que operava no Brasil desde 1913), a Shell reestruturou suas operações no país em 1961 (com a criação da Shell Brasil S.A. (Petróleo), posteriormente alterando sua razão social para Shell Brasil S.A. no ano de 1991.

[3]   Para mais informações: https://braziljournal.com/raizen-paga-us-950-milhoes-pela-shell-argentina/, acesso em 09/03/2026.

[4]   Em resumo, o Grupo Raízen fez diversas aquisições estratégicas de companhias, ampliando seu portfólio de investidas e frentes de negócio ao longo dos anos, mencionando-se exemplificativamente: **(i)** a incorporação do acervo da Cosan Combustíveis e Lubrificantes S.A. pela Raízen Combustíveis S.A.; **(ii)** a aquisição da Biosev S.A.; **(iii)** a aquisição de participação societária relevante na Companhia Barcos Y Rodados S.A., no Paraguai;





Mobiliários, abrindo seu capital e passando a ser listada na B3,[5] captando mais de R$ 6,7 bilhões. A companhia passou a ser listada sob o *ticker* RAIZ4, mantendo como bloco de controle Shell (44%) e Cosan (44%), com cerca de 12% de *free float*.[6] De forma mais detalhada, em representação visual:



5.        Abaixo da Raízen S.A., há uma série de outras unidades de negócio, *tradings* e quase uma centena de companhias operacionais, com atividades e dívidas interligadas. Em termos práticos, essas entidades podem ser agrupadas em dois grandes negócios:

(i)        o núcleo de empresas imediatamente subordinadas à Raízen S.A., que inclui empresas que gerenciam todos os aspectos relacionados ao segmento de Distribuição de Combustíveis, incluindo relacionamento com postos Shell, lojas de conveniência Shell Select e empresas de logística; e

---

(iv) a aquisição da integralidade das quotas da Sociedade Neolubes Indústria e Lubrificantes Ltda.; (v) a aquisição de participação societária da Posto Mime S.A., que atua no comércio a varejo de combustíveis, entre outras. Informações extraídas do Formulário de Referência de 05/12/2025 da Raízen S.A., disponível em: https://ri.raizen.com.br/divulgacoes-e-documentos/formulario-de-referencia-e-cadastral/, acesso em 09/03/2026.

5        B3 S.A. – Brasil, Bolsa, Balcão ("**B3**"), a bolsa de valores brasileira com sede em São Paulo.

6        *Free float* nada mais é do que o percentual efetivo de ações disponíveis para negociação de determinada companhia de capital aberto, excluídos os títulos dos controladores, administradores e tesouraria.

XGIVS   PINHEIRO NETO      
XAVIER GAGLIARDI INGLEZ SCHAFFER   ADVOGADOS

(ii) o núcleo subordinado à Raízen Energia S.A., que abrange diversas empresas de bioenergia e energias renováveis, bem como empresas comercializadoras de energia elétrica no ambiente regulado, as frentes internacionais de negócios de Distribuição de Combustíveis do Grupo Raízen (Argentina e Paraguai), o núcleo de comercialização de açúcar e *tradings* de *commodities*, e empresas focadas em biotecnologia e Pesquisa & Desenvolvimento.[7]

6.      A sua operação é integrada: abrange desde a produção agrícola e o tratamento de insumos necessários à produção de açúcar e etanol, até o aproveitamento dos subprodutos da cadeia produtiva para a geração de energia elétrica de biomassa. Também inclui diversas etapas logísticas para escoamento da produção, a distribuição de etanol e outros combustíveis, bem como a exportação de etanol e açúcar.

7.      Tal posicionamento consolida o modelo de negócios do Grupo Raízen como um dos mais abrangentes e amplos do setor, com atividades em todos os estados do território nacional, bem como em mais de 40 países, alcançando mais de 15 mil parceiros de negócios. Isso faz com que a Raízen S.A. seja a terceira maior empresa do Brasil em receita líquida (excluídas instituições financeiras).

8.      Dentro de cada uma das atividades desenvolvidas, o Grupo Raízen possui elevada relevância. **Atualmente, o Grupo Raízen é o maior processador de cana-de-açúcar do mundo**. Na Distribuição de Combustíveis, **é o segundo maior distribuidor no Brasil e na Argentina**, atendendo postos, transportadoras, aeroportos, termoelétricas, hospitais, dentre outros clientes estratégicos para o mercado brasileiro.[8] O Grupo Raízen também é um dos maiores comercializadores globais de etanol e açúcar. Dessa forma, o Grupo Raízen possui intrínseca conexão com setores-chave da economia não apenas brasileira, como, também, mundial.

---

[7]     A estrutura societária completa do Grupo Raízen está disponível em: https://ri.raizen.com.br/sobre-a-raizen/estrutura-societaria/, acesso em 09/03/2026.

[8]     Disponível em: https://conteudos.xpi.com.br/renda-fixa/relatorios/analise-raizen/, acesso em 09/03/2026.

**XGIVS** **PINHEIRONETO**  
XAVIER GAGLIARDI INGLEZ SCHAFFER   A D V O G A D O S

9.　Como se denota do seu último Relatório Integrado,[9] durante a Safra 2024/2025[10] o Grupo Raízen **(i)** empregou diretamente mais de 34 mil colaboradores, para além de 2 mil aprendizes, estagiários e prestadores de serviço; **(ii)** comercializou mais de 3,4 bilhões de litros de combustível; **(iii)** produziu mais de 5 milhões de toneladas de açúcar; **(iv)** produziu mais de 3 bilhões de litros de etanol; e **(v)** gerou mais de 1,9 GWH de energia renovável.

10.　Também **(i)** operou vasto portfólio de usinas de produção de açúcar, etanol e bioenergia; **(ii)** forneceu combustíveis para 8 mil postos Shell no Brasil, Argentina e Paraguai; **(iii)** operou **(iii.a)** 68 bases de abastecimento em aeroportos; **(iii.b)** mais de 70 bases de distribuição de combustíveis; **(iii.c)** 2 plantas de lubrificantes (no Brasil e Argentina); **(iii.d)** 1 refinaria de petróleo, na Argentina; **(iii.e)** 6 escritórios comerciais no exterior (nos Estados Unidos da América, nos Países Baixos, na Suíça, em Dubai, nas Filipinas e em Singapura)[11]; e **(iv)** disponibilizou seu sistema de franquia Shell Select para mais de 1.200 lojas de conveniência.

11.　Tais operações são viabilizadas com o suporte de mais de **5.940 fornecedores de suprimentos**, **2.600 arrendadores de terras** e **1.100 fornecedores de cana-de-açúcar**, em mais de **416 municípios**.[12] Essa robusta estrutura empresarial gerou mais de **R$ 255 bilhões** de receita operacional líquida na Safra 2024/2025.

---

[9]　Publicado em 13/05/2025. Disponível em: https://www.raizen.com.br/relatorio-anual-2425-pt, acesso em 09/03/2026.

[10]　O exercício social do Grupo Raízen é determinado pelo ciclo de produção de cana-de-açúcar, operando em safras com início em 1º de abril e término em 31 de março: "*O plantio de cana-de-açúcar (principal fonte de matéria-prima para a produção de etanol, açúcar e bioenergia), requer um período de 12 a 18 meses para maturação e o período de colheita inicia-se, geralmente, entre os meses de abril e maio de cada ano e termina, em geral, entre os meses de novembro e dezembro, período em que também ocorre a produção de etanol, açúcar e bioenergia nos parques de bioenergia do Grupo Raízen. A comercialização da produção ocorre durante todo o ano e está sujeita a tendências sazonais baseadas no ciclo de crescimento da cana-de-açúcar em sua região de atuação, bem como condições de demanda nos mercados-alvo, gerando certas flutuações nos estoques e no suprimento desta matéria-prima por impacto de condições climáticas adversas. Em função de seu ciclo de produção, o exercício social das empresas que compõem o Grupo Raízen tem início em 1º de abril e termina em 31 de março de cada ano*". Como se denota das informações contábeis intermediárias de 30/09/2025, disponível em: https://ri.raizen.com.br/informacoes-financeiras/central-de-resultados/, acesso em 09/03/2026.

[11]　Disponível em: https://www.raizen.com.br/sobre-a-raizen/numeros, acesso em 09/03/2026.

[12]　Idem.

12.     Nessa mesma Safra 2024/2025, por meio de sua operação de atividade agrícola, industrial e logística, o Grupo Raízen gerou uma folha salarial superior a **R$ 4,9 bilhões** e recolheu cerca de **R$ 1,6 bilhões** em tributos federais, **R$ 3 bilhões** em tributos estaduais e **R$ 120 milhões** em tributos municipais.

13.     No segmento de EAB, atua de forma verticalizada em toda a cadeia da cana-de-açúcar — do cultivo à comercialização internacional de *commodities* — respondendo por cerca de 25% da sua receita operacional líquida. No segmento de Distribuição de Combustíveis — responsável por aproximadamente 75% da receita — opera uma ampla rede logística integrada, com fornecimento majoritário de derivados de petróleo produzidos pela Petrobrás e distribuição logística por modais dutoviário, rodoviário, ferroviário, fluvial e cabotagem.

14.     A complexidade e a escala de suas operações submetem o Grupo Raízen a intensa regulação setorial, com interação permanente com a ANEEL (Agência Nacional de Energia Elétrica), Ministério de Minas e Energia, ONS (Operador Nacional do Sistema Elétrico), CCEE (Câmara de Comercialização de Energia Elétrica), ANP (Agência Nacional do Petróleo, Gás Natural e Biocombustíveis), ANTAQ (Agência Nacional de Transportes Aquaviários), ANTT (Agência Nacional de Transportes Terrestres ) e outros órgãos reguladores.

15.     Além da dimensão econômica, a atuação do Grupo Raízen possui impacto socioambiental expressivo. Na Safra 2024/2025, mais de **1,3 milhão de hectares** foram cultivados de forma sustentável, evitando a emissão de mais de **5 milhões de toneladas** de $CO_2$ por meio da produção de energia e combustíveis renováveis — contribuição concreta para a transição energética e a segurança energética nacional.

16.     Em síntese, o Grupo Raízen constitui um dos pilares estruturais do setor energético brasileiro e sul-americano, combinando escala industrial, integração vertical, inovação tecnológica e compromisso ambiental. Sua relevância transcende o setor sucroenergético, projetando-o como agente central para o abastecimento, a geração de empregos, a arrecadação tributária e o desenvolvimento econômico do país.

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, INIC1, Página 7

XGIVS    PINHEIRO NETO    TWK 
XAVIER GAGLIARDI INGLEZ SCHAFFER    A D V O G A D O S    ADVOGADOS

## II.    AS PRINCIPAIS RAZÕES DA CRISE QUE AFETA O GRUPO RAÍZEN

17.    Ao longo dos últimos anos, o Grupo Raízen implementou sua estratégia de expansão para se consolidar como produtor global de combustíveis renováveis, com investimentos expressivos em aquisições estratégicas e na implantação de plantas de biocombustíveis avançados, com forte apelo sustentável (*i.e.*, Etanol de Segunda Geração – E2G).

18.    Nesse contexto, destacam-se: **(i)** aquisição do negócio de Distribuição de Combustíveis na Argentina; **(ii)** aquisição da Biosev, à época o segundo maior *player* do segmento de EAB, atrás somente da própria Raízen; **(iii)** aquisição de planta de lubrificantes da Shell no Brasil; **(iv)** aquisição de participação no *business* de Distribuição de Combustíveis no Paraguai; **(v)** formação de *joint-venture* com a FEMSA para explorar o segmento de lojas de proximidade e conveniência; e **(vi)** expansões das atividades no setor de energia elétrica. Toda essa estratégia de expansão exigiu investimentos substanciais em *Capex*[13] e elevou os níveis de endividamento e alavancagem.

19.    Tais decisões e estratégias adotadas durante o ciclo *pré-turnaround* pautaram-se em uma estratégia de crescimento acelerado do Grupo Raízen e resultaram no aumento do endividamento e consequente elevação da alavancagem do Grupo, tendo sido, contudo, tomadas em contexto macroeconômico substancialmente mais favorável do que o atual. Desde então, verificou-se relevante deterioração das condições econômicas no Brasil e em outros países em que o Grupo Raízen atua, notadamente na Argentina, em meio à escalada nacional e global das taxas de juros e ao agravamento dos indicadores macroeconômicos.

20.    Nesse novo cenário, a manutenção da taxa básica de juros em patamares superiores a 12% a.a. há pelo menos 20 meses[14], alcançando 15% a.a. nos últimos 8 meses, elevou de forma

---

[13]    CAPEX é o acrônimo de *capital expenditure*, despesa de capital, abrangendo gastos para aquisição, melhora e manutenção de ativos da atividade de uma determinada empresa. Despesas qualificadas como CAPEX têm por finalidade ampliar capacidade produtiva, incrementar crescimento a longo prazo e fortalecer operações. Trata-se de conceito elementar das finanças corporativas, cuja descrição mais detalhada pode ser obtida em: https://borainvestir.b3.com.br/glossario/capex-capital-expenditure/, acesso em 09/03/2026.

[14]    Para mais informações sobre o histórico da taxa de juros nacional, e sua escalada numérica nos últimos anos: https://www.bcb.gov.br/controleinflacao/historicotaxasjuros, acesso em 09/03/2026.

significativa o custo financeiro da dívida, comprometendo a geração de caixa e impedindo, ao menos temporariamente, a redução orgânica do nível de endividamento.

21.     Referida deterioração das condições macroeconômicas ocorreu antes da maturação natural dos investimentos realizados pelo Grupo Raízen. Não se discute que todas as novas frentes de negócios implementadas tendem a se consolidar como relevantes fontes adicionais de receita para o Grupo Raízen. Ocorre que o descompasso temporal entre a geração dessas novas receitas e o aumento das despesas financeiras, circunstância absolutamente alheia à esfera de gestão do Grupo Raízen, acabou por produzir efeitos significativamente adversos.

22.     Em âmbito regional, particularmente na Argentina,[15] a inflação persistentemente elevada (superior a 40% a.a.) e a volatilidade macroeconômica resultaram em desafios severos, pressionando custos operacionais e toda a dinâmica de precificação dos produtos. Em particular, a inflação em dólares (composição da inflação local e da evolução do câmbio) pressionou despesas com vendas e despesas administrativas, incluindo custos com ajustes estruturais e organizacionais.[16]

23.     Como consequência, na Safra 2024/2025 o Grupo Raízen divulgou prejuízo acumulado na ordem de **R$ 4,2 bilhões**. Esse impacto se tornou ainda mais pronunciado na Safra 2025/2026, com prejuízo acumulado até o momento da ordem de **R$ 18,4 bilhões, esclarecendo-se que parte significativa desse prejuízo decorreu exclusivamente de ajustes em provisões contábeis (Doc. 9)**.

24.     **Em 10/03/2026, data de apresentação deste pedido de recuperação extrajudicial, a dívida bruta consolidada do Grupo Raízen é da ordem de R$ 65,14 bilhões.** Embora o perfil de vencimento das obrigações financeiras do Grupo Raízen seja majoritariamente de longo prazo (com prazo médio de 7,6 anos em dezembro/2025), o elevado nível de endividamento impõe

---

[15] https://g1.globo.com/economia/noticia/2026/01/13/argentina-de-milei-encerra-2025-com-inflacao-de-315percent-em-ano-de-eleicao-legislativa-e-apoio-de-trump.ghtml, acesso em 09/03/2026.

[16] Como consta do Relatório Integrado do Grupo Raízen, Safra 2024/2025, publicado em 13/05/2025. Disponível em: https://www.raizen.com.br/relatorio-anual-2425-pt, acesso em 09/03/2026.



pressão relevante de juros e amortização, estimando-se desembolso de aproximadamente **R$ 13 bilhões** já nos próximos 24 meses, apenas para amortização da dívida bancária/financeira.

25.      A crise enfrentada pelo Grupo Raízen, entretanto, não decorre somente do aumento das despesas associadas ao custo financeiro da dívida. Também houve redução relevante de suas margens (EBITDA) em decorrência de fatores alheios ao seu controle.

26.      No agregado, verificou-se uma retração de 12% no EBITDA da Safra 2025/2026 em relação à Safra 2024/2025, principalmente em razão de **(i)** eventos climáticos severos no Centro-Sul — redução de chuvas, estresse hídrico,[17] temperaturas elevadas e queimadas sem precedente[18] — provocaram quebra de safra; e **(ii)** redução da produção de cana (−4,4% no Sudeste e −3,9% no Centro-Oeste) e queda do ATR.[19] Paralelamente, a retração dos preços globais de *commodities*, o aumento da produção asiática de açúcar e o crescimento do etanol de milho no Brasil pressionaram adicionalmente as margens, reforçando um viés baixista predominante no mercado.[20]

27.      A convergência desses fatores aprofundou a crítica situação de liquidez, de modo que a redução dos resultados e o aumento substancial da despesa financeira comprometeram a geração de caixa. Para fins de perspectiva, entre abril de 2025 e dezembro de 2025 a companhia consumiu **R$ 7,2 bilhões de caixa** para manter o curso normal de suas operações. Isso ocasionou um aumento da alavancagem do Grupo Raízen ao maior patamar histórico (com um múltiplo de alavancagem da ordem de 5,3x).[21] O enfrentamento do endividamento do Grupo Raízen, considerando a sua atual situação de caixa, tornou-se extremamente desafiador.

---

[17]   https://g1.globo.com/sp/piracicaba-regiao/noticia/2025/12/08/estresse-hidrico-entenda-como-clima-afeta-safra-de-cana-em-2025-e-ameaca-produtividade-no-interior-de-sao-paulo.ghtml, acesso em 09/03/2026.

[18]   https://globorural.globo.com/agricultura/cana/noticia/2025/01/incendios-que-destruiram-canaviais-em-2024-impactam-a-proxima-safra-de-cana.ghtml, acesso em 09/03/2026.

[19]   ATR é o Açúcar Total Recuperável, indicador de qualidade da cana-de-açúcar.

[20]   https://www.noticiasagricolas.com.br/noticias/sucroenergetico/413869-mercado-global-do-acucar-em-2025-queda-de-precos-desafios-climaticos-e-volatilidade-marcam-o-ano.html, acesso em 09/03/2026.

[21]   Múltiplo de alavancagem obtido pela divisão da Dívida Líquida pelo EBITDA Ajustado.



XGIVS   PINHEIRONETO   TWK   THOMAZ BASTOS WAISBERG KURZWEIL   MUNHOZ
XAVIER GAGLIARDI INGLEZ SCHAFFER   ADVOGADOS   ADVOGADOS   ADVOGADOS

28.     Não fosse o bastante, os credores e parceiros do Grupo Raízen – tanto financeiros quanto operacionais –, cientes da sua atual situação econômico-financeira, já começaram a adotar medidas de corte, restrição e/ou encarecimento das respectivas linhas de crédito e financiamento originalmente concedidas, levando o Grupo Raízen à utilização de ainda mais caixa para manter o curso regular de seus negócios, ampliando seus prejuízos operacionais, deteriorando sua liquidez e aprofundando o seu fluxo de caixa negativo.

29.     Trata-se de círculo vicioso que compromete irremediavelmente sua capacidade de manter recursos financeiros em quantidade suficiente para garantir a continuidade saudável de suas operações e a manutenção do volume de suas receitas e que, consequentemente, impacta negativamente sua capacidade de honrar suas obrigações.

30.     Tais fatos não passaram despercebidos pelo mercado. As agências de *rating* (a Moody's[22], a S&P[23] e a Fitch[24]) rebaixaram suas classificações de risco de crédito dos títulos de emissão do Grupo Raízen (seu *rating* corporativo e dos diversos títulos emitidos, como debêntures) no final do ano de 2025. Além disso, mantiveram os títulos do Grupo Raízen sob monitoramento especial (*Credit Watch*), indicando que revisitariam o *rating* caso houvesse qualquer alteração nos resultados.

31.     O cenário, que já era desafiador, tornou-se crítico após a divulgação das demonstrações financeiras do último trimestre (**Doc. 9**), que indicou prejuízo e endividamento recordes. O mercado reagiu de modo negativo, especulando acerca da capacidade do Grupo Raízen de fazer frente ao seu endividamento financeiro[25], consequentemente gerando novas oscilações na cotação dos seus títulos de dívida[26]. Essa movimentação culminou no envio de ofício pela Comissão de Valores Mobiliários à Raízen S.A. (**Doc. 10**), questionando o posicionamento do

---

[22]    Disponíveis em:  https://moodyslocal.com.br/setores/empresas-nao-financeiras/agronegocio/raizen-s-a/, acesso em 09/03/2026.

[23]    Disponíveis          em:          https://brazil.ratings.spglobal.com/ratings/pt/regulatory/org-details/sectorCode/CORP/entityId/1001149, acesso em 09/03/2026.

[24]    Disponíveis em: https://www.fitchratings.com/entity/raizen-energia-s-a-91390896, acesso em 09/03/2026. Disponível     em:     https://www.infomoney.com.br/mercados/raizen-questoes-sobre-divida-aumentam-e-investidores-se-apressam-para-vender-titulos/, acesso em 09/03/2026.



Grupo sobre estratégias de redução de alavancagem e equacionamento da sua estrutura de capital.

32.    Em 06/02/2026, o Grupo Raízen emitiu Comunicado ao Mercado em resposta ao Ofício reafirmando o compromisso de seus controladores e administradores de avaliar alternativas e cenários voltados à redução de sua alavancagem financeira, readequação de sua estrutura de capital e fortalecimento da sua posição de liquidez[27]. Entretanto, o mercado novamente reagiu de forma negativa, e novas especulações se seguiram, ligadas a potenciais novos rebaixamentos de *rating*[28] e contratação de assessores financeiros[29].

33.    No dia 09/02/2026, o Grupo Raízen publicou Fato Relevante indicando a contratação de assessores para o diagnóstico de opções estratégicas sobre sua liquidez e estrutura de capital[30]. Nesta mesma data, as agências de *rating* (Moody's, Fitch e Standard & Poor's) rebaixaram novamente o *rating* dos títulos do Grupo Raízen a um patamar já considerado de nível "especulativo" (**Doc. 11**).

34.    Este novo rebaixamento de *rating* se projeta como ameaça grave, imediata e palpável ao Grupo Raízen: sob tal pretexto, já há credores que se movimentam para declarar o vencimento antecipado de uma série de instrumentos financeiros.

35.    O eventual vencimento antecipado dessas obrigações pode, de forma concreta, dar gatilho à decretação de vencimento antecipado de diversos outros instrumentos financeiros (o chamado *cross-default*, que pode acarretar a aceleração de mais de R$ 60 bilhões de dívidas), o que, por sua vez, ocasionará uma infinidade de ataques de credores contra o patrimônio do

---

27    Disponível      em:      https://filemanager-cdn.mziq.com/published/c016735f-1711-48ce-919f-a8c701b83c19/61575eba-a6bf-488e-895f-6e66ccecb9a8_comunicado_ao_mercado_port.pdf, acesso em 09/03/2026.

28    Disponível em: https://pipelinevalor.globo.com/negocios/noticia/raizen-corre-contra-o-tempo-para-nao-perder-o-grau-de-investimento.ghtml, acesso em 09/03/2026.

29    Disponível em: https://oglobo.globo.com/blogs/lauro-jardim/post/2026/02/a-raizen-se-prepara-para-reestruturar-sua-divida.ghtml, acesso em 09/03/2026.

30    Disponível      em:      https://api.mziq.com/mzfilemanager/v2/d/c016735f-1711-48ce-919f-a8c701b83c19/d44a8b01-2824-f6ac-d7d3-27922347ec05?origin=2, acesso em 09/03/2026.



Grupo Raízen, agravando a delicada situação atualmente enfrentada e potencialmente levando-a a um ponto de não-retorno.

36.     Toda essa instabilidade tem reflexos diretos sobre outros aspectos relevantes do Grupo Raízen. Observa-se, a título exemplificativo, que as ações da Raízen S.A. (RAIZ4) sofreram sobremaneira tais impactos. Hoje, são cotadas a R$ 0,52, acumulando uma desvalorização de mais de 59,06% no período de 6 (seis) meses. Adicionalmente, a Raízen S.A. tem sido alvo de movimentações especulativas sob a forma de *short squeezing*, o que intensifica a volatilidade dos ativos e contribui para uma deterioração acentuada no valor de mercado das ações.

37.     Por serem negociadas a menos de R$ 1 (um real) por mais de 30 pregões seguidos, as ações de Raízen passaram a ser consideradas *penny stock*,[31] de modo que a B3 notificou o Grupo Raízen do desenquadramento do valor de cotação mínimo de suas ações. Assim, a B3 solicitou que o Grupo Raízen adotasse medidas para reenquadramento da cotação ao valor mínimo exigido até 29/05/2026, conforme Comunicado ao Mercado de 09/12/2025.[32]

38.     Para além disso tudo, observa-se, nos mercados de crédito doméstico e externo, uma acentuada pressão vendedora sobre os títulos de dívida do Grupo Raízen. Esse movimento de liquidação (*sell-off*) de *bonds* tem fomentado um cenário de elevada volatilidade,[33] resultando em uma precificação que reflete o aumento vertiginoso das incertezas quanto ao perfil de crédito e percepção de risco do Grupo Raízen no curto prazo.

39.     Apesar das dificuldades acima descritas, as operações do Grupo Raízen são plenamente sustentáveis, rentáveis e viáveis. Há uma série de iniciativas estratégicas em curso e planejadas

---

[31]   A terminologia *penny stock* nada mais é do que a nomenclatura dada às ações listadas cujo valor nominal é de menos de R$ 1, atraindo alta volatilidade na cotação, permitindo distorções de mercado e manipulação por agentes maliciosos. Disponível em: https://exame.com/invest/mercados/entenda-o-que-e-penny-stock/, acesso em 09/03/2026.

[32]   Disponível em: https://ri.raizen.com.br/divulgacoes-e-documentos/avisos-comunicados-e-fatos-relevantes/, acesso em 09/03/2026.

[33]   Disponível em: https://valor.globo.com/financas/intraday/post/2026/02/sell-off-nos-bonds-da-raizen-ganha-forca-com-receio-de-recuperacao-judicial.ghtml, acesso em 09/03/2026.

para o futuro que comprovam e asseguram sua viabilidade financeira e operacional, com perspectivas concretas e palpáveis de soerguimento.

40.        A título de exemplo, o Grupo Raízen vem implementando gestão disciplinada de custos e despesas, bem como revisão de estruturas corporativas e operacionais, o que gerou ganhos relevantes de eficiência. Tais iniciativas representaram melhoria de R$ 600 milhões nos resultados dos nove meses do ano Safra 2025/2026, superando as premissas iniciais de seu plano para a safra, mesmo em contexto macroeconômico adverso. Adicionalmente, o Grupo Raízen reduziu o nível de investimentos em cerca de R$ 3 bilhões para este ano safra em comparação com o anterior, em linha com o seu plano de investimentos para 2025/2026 e com a gestão do seu caixa[34].

41.        Mesmo diante de um cenário desafiador, o Grupo Raízen detinha, em 31/12/2025, R$ 17,3 bilhões em caixa e aplicações, sendo 90% com liquidez imediata[35], o que reforça a sua plena viabilidade econômico-financeira para implementar a reestruturação ora pretendida.

42.        Com o equacionamento de sua dívida financeira e com o ambiente de proteção judicial assegurado por esta recuperação extrajudicial, o Grupo Raízen certamente retomará a rota de crescimento e geração de valor que o levou ao topo de todos os setores em que atua, como visto anteriormente.

43.        Não há dúvidas sobre o potencial de soerguimento do Grupo Raízen – para tanto, contudo, será imprescindível a colaboração dos credores e, mais do que isso, que o Poder Judiciário assegure ordem, estabilidade e segurança jurídica ao ambiente negocial, criando o ambiente e condições necessários para uma solução consensual, equilibrada, eficiente e definitiva.

---

[34]    Disponível            em:        https://api.mziq.com/mzfilemanager/v2/d/c016735f-1711-48ce-919f-a8c701b83c19/1d03ac65-2db0-e060-95d0-7666a76d0182?origin=2 , acesso em 09/03/2026.
[35]    Disponível            em:        https://api.mziq.com/mzfilemanager/v2/d/c016735f-1711-48ce-919f-a8c701b83c19/1d03ac65-2db0-e060-95d0-7666a76d0182?origin=2 , acesso em 09/03/2026.



## III.    LITISCONSÓRCIO ATIVO FACULTATIVO

44.    Este pedido é formulado por diversas sociedades do Grupo Raízen, reunidas em litisconsórcio ativo facultativo – ou seja, em consolidação processual – em razão da existência de controle societário comum e da evidente inter-relação econômica e operacional entre as Requerentes.

45.    O art. 69-G da LFR estabelece que "*devedores que atendam aos requisitos previstos nesta Lei e que integrem grupo sob controle societário comum poderão requerer recuperação judicial sob consolidação processual*". Embora mencione apenas recuperação judicial, o art. 69-G da LFR é amplamente aplicado em recuperações extrajudiciais[36], para permitir que sociedades sob controle comum formulem seu pedido de forma conjunta e, com isso, evitem o custo do ajuizar diversos procedimentos.

46.    No caso, todas as Requerentes integram o Grupo Raízen, sob controle societário comum da Raízen, compondo estrutura empresarial integrada e economicamente interdependente. Por isso, este pedido de recuperação extrajudicial pode e deve ser processado em litisconsórcio ativo facultativo, nos termos do art. 69-G da LFR.

47.    A apresentação do pedido revela-se, ademais, a solução mais adequada sob a perspectiva da eficiência e da coerência do procedimento, permitindo tratamento uniforme das relações obrigacionais envolvidas, coordenação das medidas de reestruturação e maior transparência perante credores e demais *stakeholders*. A doutrina especializada tem reconhecido que, em situações envolvendo grupos empresariais com estrutura integrada, essa é a forma mais eficiente e transparente para assegurar a efetividade e a racionalidade da reestruturação[37].

---

[36]    Cf. casos recentes dos grupos **Sigma** (processo nº 1001703-42.2023.8.26.0260), **Flytour** (processo nº 1000679-47.2021.8.26.0260) e **TPA** (processo nº 1104901-56.2024.8.26.0100).

[37]    "*A luz das relações ambientadas no grupo societário, pode-se imaginar que o fenômeno processual do litisconsórcio ativo bem se encaixa nas necessidades que o instrumento processual de solução da crise empresarial busca atender. [...] Estão presentes, para além da legitimidade ad causam, razões de economia*



48.     Também não há dúvidas de que as sociedades estrangeiras[38] do Grupo Raízen podem integrar o polo ativo deste pedido.

49.     É pacífico o entendimento de que sociedades estrangeiras integrantes de um grupo econômico cujo centro decisório (ou *center of main interest*) é localizado no Brasil podem requerer o processamento de recuperação extrajudicial no Brasil, em conjunto com as demais sociedades de seu grupo econômico[39]. Conforme detalhado no **Capítulo IV** a seguir, o centro decisório do Grupo Raízen é no Brasil – especificamente, na cidade de São Paulo. Assim, não há qualquer óbice ao processamento deste pedido em relação às Requerentes Estrangeiras.

50.     Por fim, mesmo que o centro decisório de cada Requerente fosse analisado sob uma perspectiva individual, igualmente não haveria óbice à participação das Requerentes Estrangeiras nesta recuperação extrajudicial. Embora sejam formalmente constituídas no exterior, tais sociedades integram estrutura societária voltada ao financiamento e à viabilização das operações do Grupo Raízen no Brasil[40]. Por isso mesmo, os centros decisórios de todas essas sociedades estão situados na cidade de São Paulo.

---

processual e, principalmente, o temor de que o processamento separado das lides ocasione decisões conflitantes entre si, as quais, dada a matéria em discussão, têm grave potencial destrutivo sobre direitos de devedores, credores e terceiros interessados na reestruturação da empresa. Há conveniência em se permitir que o juiz e os credores formem convicção sobre um contexto jurídico e de fato que envolve a crise da empresa plurissocietária e a busca de possível solução a ela. Com efeito, um dos principais motivos para que se aceite o processamento conjunto dos pedidos de recuperação judicial de diferentes devedoras é garantir que o iter percorrido na busca da solução para a crise que atinge mais de um agente empresarial encaminhe as partes para resultado concomitante e, se possível, harmônico". (CEREZETTI, Sheila Christina Neder. Grupos de sociedade e recuperação judicial: o indispensável encontro entre os direitos societário, processual e concursal. In: YARSHEL, Flávio; et al. J. Processo Societário II. São Paulo: Quartier Latin, 2015, pp. 751-754).

[38]   Raízen Trading S.A., Raízen North America Inc. e Raízen Fuels Finance S.A. (em conjunto, "**Requerentes Estrangeiras**").

[39]   Vide, no TJSP, o caso do **Grupo Unigel** (processo nº 1174558-22.2023.8.26.0100) e, no TJRJ, os casos do **Grupo OOG** (processo nº 0121854-60.2017.8.19.0001) e ODN (processo nº 0334340-20.2022.8.19.0001). No mesmo sentido, "*se o foro é determinado seguindo a realidade econômica, então o juiz do local do estabelecimento principal da sociedade devedora, onde quer que ela esteja constituída, seja no Brasil ou no exterior, deve ser o competente para a abertura do processo de insolvência*" (FELSBERG, Thomas; et al. A recuperação judicial de sociedades sediadas no exterior: as lições da experiência estrangeira e os desenvolvimentos no Brasil. In: CEREZETTI, Sheila C. Neder et al. Dez anos da Lei n 11.101/2005: Estudos sobre a Lei de recuperação. São Paulo: Almedina, 2015, pp. 485-488).

[40]   Exemplificativamente: TJSP, Agravo de Instrumento nº 2094999-86.2015.8.26.0000, Des. Relator Carlos Alberto Garbi, 2ª Câmara Reservada de Direito Empresarial, j. 31.8.2015; TJSP, Agravo de Instrumento nº



## IV.    COMPETÊNCIA DESTE D. JUÍZO

51.    A competência para homologar plano de recuperação extrajudicial deve ser definida à luz do art. 3º da LFR,[41] que estabelece como foro competente aquele do principal estabelecimento do devedor, assim entendido pelo c. Superior Tribunal de Justiça como "*o local mais importante para suas atividades empresariais, ou seja, onde se encontra o maior volume de negócios e o centro de governança dos negócios*",[42] ou, ainda, "*aquele de onde partem as decisões empresariais, e não necessariamente a sede indicada no registro público*"[43].

52.    Em relação ao Grupo Raízen, é em São Paulo que várias das Requerentes foram fundadas, construíram sua história nacional e internacionalmente reconhecida e concentram, de há muito, o núcleo administrativo e decisório de suas atividades.

53.    É em São Paulo, com efeito, onde **(i)** está situado o principal estabelecimento e escritório do grupo, localizado na Av. Brigadeiro Faria Lima, nº 4.100, 11º andar, Parte V, São Paulo/SP, CEP 04538-132, de onde emanam as principais e mais relevantes decisões estratégicas; **(ii)** os principais executivos do Grupo Raízen exercem suas atividades regularmente; **(iii)** reúnem-se os principais órgãos de administração e deliberativos do Grupo Raízen; e **(iv)** são negociados e firmados os principais contratos necessários para o desenvolvimento de suas atividades.

54.    Reforçam tal afirmativa os seguintes dados: **(i)** é na capital de São Paulo que são publicados todos os Fatos Relevantes, Comunicados ao Mercado e demais comunicações

---

2106998-36.2015.8.26.0000, Des. Relator Caio Marcelo Mendes, 2ª Câmara Reservada de Direito Empresarial, j. 13.3.2017.

[41]    "*Art. 3º É competente para homologar o plano de recuperação extrajudicial, deferir a recuperação judicial ou decretar a falência o juízo do local do principal estabelecimento do devedor ou da filial de empresa que tenha sede fora do Brasil*".

[42]    STJ, CC nº 213.738/TO, Min. Rel. Humberto Martins, Segunda Seção, j. 4/12/2025; STJ, CC n. 189.267/SP, Min. Rel. Raul Araújo, Segunda Seção, j. 28/9/2022.

[43]    Enunciado 466 da V Jornada de Direito Civil do CJF.

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, INIC1, Página 17



societárias da Raízen S.A., devidamente assinados por seu Diretores[44]; **(ii)** é no Estado de São Paulo em que tramitam mais de 75% dos litígios ativos do Grupo Raízen, como se depreende da relação de processos judiciais e arbitrais ativos (**Doc. 12**); **(iii)** é na cidade de São Paulo que são publicadas e auditadas as demonstrações financeiras do Grupo Raízen (**Doc. 5.2**).

55.    Independentemente do critério que se pretenda utilizar, portanto, impõe-se o reconhecimento da competência de uma das Varas de Recuperações Judiciais e Falências da Comarca da Capital de São Paulo para processar o presente pedido de recuperação extrajudicial.

## V.    PREENCHIMENTO DO QUÓRUM LEGAL: APROVAÇÃO DE MAIS DE 1/3 DOS CRÉDITOS SUJEITOS

56.    De acordo com o art. 163, § 1º, da LFR, planos de recuperação extrajudicial podem reestruturar um "*grupo de credores de mesma natureza e sujeito a semelhantes condições de pagamento*". Para que haja a reestruturação do grupo de credores sujeitos, é necessária a obtenção de consentimento de "*credores que representem mais da metade dos créditos abrangidos pelo plano de recuperação extrajudicial*" (art. 163, *caput*, da LFR).

57.    Nada obstante, o art. 163, § 7º, da LFR autoriza o devedor a iniciar a recuperação extrajudicial mesmo antes da obtenção desse quórum definitivo. De acordo com o referido dispositivo legal, é possível apresentar o pedido de recuperação extrajudicial desde que comprovada a "*anuência de credores que representem pelo menos 1/3 (um terço) de todos os créditos de cada espécie por ele abrangidos e com o compromisso de, no prazo improrrogável de 90 (noventa) dias, contado da data do pedido, atingir o quórum previsto no caput deste artigo, por meio de adesão expressa*".

58.    No caso concreto, o Grupo Raízen pretende reestruturar apenas seus créditos financeiros de natureza quirografária ("**Créditos Sujeitos**"), sem qualquer implicação para as

---

[44] Cf. https://ri.raizen.com.br/divulgacoes-e-documentos/avisos-comunicados-e-fatos-relevantes/, acesso em 09/03/2026.



demais dívidas e obrigações das Requerentes contratadas perante clientes, fornecedores, revendedores e demais parceiros comerciais, as quais seguirão sendo cumpridas pelas Requerentes nos termos dos respectivos contratos. Em outras palavras, o plano de recuperação extrajudicial abrange dívidas que possuem a mesma *natureza* e *condições semelhantes de pagamento*, conforme estabelece o art. 163, § 1º, LFR.

59.     Para facilidade de referência, as Requerentes apresentam anexa uma relação integral dos Créditos Sujeitos e dos Credores Signatários, todos detalhados no **Doc. 3.**

60.     O passivo total a ser reestruturado corresponde a R$ 98,63 bilhões, dos quais R$ 65,14 bilhões correspondem a Créditos Sujeitos, e R$ 33,49 bilhões são decorrentes de obrigações existentes entre Requerentes, ou seja, créditos *intercompany*.

61.     O consentimento já obtido de determinados credores abrangidos ("**Credores Signatários**") é suficiente para a apresentação deste pedido. Seus créditos equivalem a cerca de **47%** do valor total dos Créditos Sujeitos, desconsideradas as obrigações entre Requerentes – que, apesar de também serem reestruturadas, não podem ser consideradas no cálculo do quórum, por força do art. 163, § 3º, II, da LFR[45].

62.     Ou seja, os Credores Signatários são titulares de mais de 1/3 dos Créditos Sujeitos, conforme o art. 163, § 7º, da LFR. A anuência desses credores pode ser atestada pelas assinaturas dos termos de adesão e respectivos documentos de comprovação de poderes (**Docs. 4**), como exige o art. 163, § 6º, III, da LFR[46].

63.     As Requerentes têm convicção de que chegarão a bom termo nas negociações com seus demais credores, que já estão bastante avançadas, de modo a atingir o quórum legal de

---

[45] *"Art. 163 – § 3º Para fins exclusivos de apuração do percentual previsto no caput deste artigo: [...] II – não serão computados os créditos detidos pelas pessoas relacionadas no art. 43 deste artigo."*

[46] *"Art. 163 – § 6º Para a homologação do plano de que trata este artigo, além dos documentos previstos no caput do art. 162 desta Lei, o devedor deverá juntar: [...] III – os documentos que comprovem os poderes dos subscritores para novar ou transigir, relação nominal completa dos credores, com a indicação do endereço de cada um, a natureza, a classificação e o valor atualizado do crédito, discriminando sua origem, o regime dos respectivos vencimentos e a indicação dos registros contábeis de cada transação pendente".*



aprovação do plano de recuperação extrajudicial no prazo de 90 dias. Nesse cenário, é fundamental a proteção das Requerentes, durante o processamento da recuperação extrajudicial, com a suspensão de ações e execuções que pudessem ser movidas por Credores Sujeitos (ainda) não aderentes ao Plano.

## VI.    APRESENTAÇÃO DA DOCUMENTAÇÃO OBRIGATÓRIA

64.    As Requerentes apresentam, neste ato, todos os documentos necessários ao processamento desta recuperação extrajudicial e oportuna homologação do plano de recuperação extrajudicial, nos termos dos arts. 48 e 163 da LFR. São eles:

 i) atas das deliberações dos órgãos societários competentes autorizando o ajuizamento do presente pedido de recuperação extrajudicial (**Doc. 2.3**);

 ii) lista dos Créditos Sujeitos, indicando os Credores Signatários e o quórum de adesão (art. 163, § 6º, inc. III, da LFR) (**Doc. 3**);

 i) documentos que comprovam a adesão de credores com o quórum de um terço de todos os Créditos Sujeitos, bem como documentos comprobatórios dos poderes dos subscritores do plano de recuperação extrajudicial para novar ou transigir (art. 163, *caput* e § 6º, inc. III, da LFR) (**Doc. 4**);

 ii) balancetes das Requerentes (**Doc. 5.1**), demonstrações contábeis relativas ao último exercício social, demonstrações levantadas especialmente para instrução do presente pedido[47] (**Doc. 5.2**) e projeção de fluxo de caixa das Requerentes (**Doc. 5.3**) (art. 163, § 6º, incs. I e II, da LFR);

---

[47] As demonstrações contábeis referentes à sociedade Raízen North America Inc. estão refletidas nas demonstrações contábeis consolidadas.

**iii)**  cópia dos atos constitutivos das Requerentes (art. 48, *caput*, da LFR) e atos de nomeação de administradores das Requerentes (art. 48, inc. IV, da LFR) (**Doc. 2.1**);

**iv)**  certidões de regularidade emitidas pelas juntas comerciais comprovando o exercício regular das atividades das Requerentes há mais de 2 anos (art. 48, *caput*, da LFR) (**Doc. 6**);

**v)**  certidões de distribuição de procedimentos de insolvência e homologação de plano de recuperação extrajudicial em nome das Requerentes (art. 48, incs. I, II e III e art. 161, § 3º, da LFR) (**Doc. 7**); e

**vi)**  certidões de distribuição criminal em nome das Requerentes (**Doc. 8.1**), dos seus administradores (**Doc. 8.2**) e acionistas controladores (**Doc. 8.3**) (art. 48, inc. IV, da LFR).

## VII.   *STAY PERIOD* COM RELAÇÃO AOS CRÉDITOS SUJEITOS

65.   Nos termos do art. 163, § 8º, da LFR, o prazo de suspensão estabelecido no art. 6º da LFR se aplica de forma automática aos Créditos Sujeitos a partir do momento em que o pedido de recuperação extrajudicial é protocolado.

66.   Considerando a adesão ao Plano por mais de 1/3 dos Credores Sujeitos, conforme comprovado no **Capítulo V** acima, todas as ações, execuções e/ou constrições de patrimônio das Requerentes deverão ser automaticamente suspensas, assim como a exigibilidade dos Créditos Sujeitos, pelo prazo de 180 dias.

67.   Com a suspensão, as Requerentes poderão manter o ambiente estável de suas negociações sobre o plano com os Credores Sujeitos que ainda não o subscreveram, sem o risco de sofrer ataques ao seu patrimônio em uma verdadeira corrida por seus ativos.

XGIVS   PINHEIRO NETO   TWK   MUNHOZ
XAVIER GAGLIARDI INGLEZ SCHAFFER   A D V O G A D O S   THOMAZ BASTOS WAISBERG KURZWEIL   A D V O G A D O S

68.     Neste ponto, cumpre ressaltar que, diante deste pedido de recuperação extrajudicial, determinadas instituições financeiras credoras do Grupo Raízen poderiam alegar a incidência de cláusulas contratuais que autorizam a apropriação de valores depositados em contas bancárias pertencentes às Requerentes para amortização de Créditos Sujeitos[48].

69.     No total, a incidência das referidas cláusulas poderia resultar na **apropriação de aproximadamente até R$ 8,3 bilhões depositados em contas de titularidade das Requerentes**. Nessa hipótese, os esforços de reestruturação empreendidos pelo Grupo Raízen seriam comprometidos de forma irreversível, na medida em que a compensação **(i)** privaria as Requerentes de recursos essenciais ao desenvolvimento de suas operações, usados para arcar com o pagamento de trabalhadores (mais de 34 mil funcionários, com folha de pagamento superior a R$ 4,9 bilhões), fornecedores e outras despesas essenciais às atividades do Grupo Raízen; e **(ii)** implicaria, ainda, a satisfação integral dos créditos de determinados Credores Sujeitos de forma distinta daquela prevista no plano de recuperação extrajudicial, o que, na prática, significaria tratamento privilegiado de tais credores em detrimento dos demais.

70.     Ocorre que, como se sabe, um Crédito Sujeito jamais pode ser satisfeito em condições diversas daquelas previstas no plano de recuperação, sob pena de conferir tratamento privilegiado a determinado Credor Sujeito em detrimento dos demais, em violação flagrante ao princípio da *par conditio creditorum* (arts. 49 e 59 da LFR).

71.     Em outras palavras, como já decidido pelo E. TJSP, permitir a compensação de um Crédito Sujeito "*implicaria o pagamento imediato de parte dos credores de determinada classe, enquanto o restante se submeteria aos termos do plano, levando, no caso dos quirografários, por exemplo, 13 anos para receber todo seu crédito. A compensação outrossim poderia até mesmo levar à* **hipótese absurda de que aqueles que estão em mora frente ao grupo empresarial**

---

[48] A título de exemplo, confira-se a seguinte cláusula constante de determinado contrato celebrado com instituição financeira: "*Confiro/Conferimos ao Itaú Unibanco a faculdade de resgatar qualquer investimento seu para creditar em sua conta de depósito o valor necessário para a quitação de qualquer débito que recaia sobre sua conta corrente para o qual não haja saldo suficiente nessa mesma conta, assim como que proceda à compensação, nos termos do disposto do artigo 368 e seguintes do código civil, de quaisquer débitos que tenha perante o Itaú Unibanco com quaisquer créditos disponíveis em sua conta corrente.*"

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, INIC1, Página 22

*em recuperação (e, portanto, ainda tem um débito) recebam indiretamente seu crédito por meio da compensação, ao passo que outros credores, em dia com suas obrigações frente às recuperandas, ostentado apenas o status de credores, devam aguardar todo o trâmite recuperacional para receber seu crédito, o qual ademais será submetido a reduções oriundas do deságio previsto no plano*"[49].

72.     É evidente, portanto, que o *stay period* previsto no art. 6º da LFR também impede a compensação de Créditos Sujeitos após o pedido de recuperação judicial ou extrajudicial, por se tratar de meio de satisfação do crédito, equivalente ao pagamento, cuja exigibilidade está suspensa por força do *stay*. E, no caso concreto, o reconhecimento expresso da vedação à apropriação de recursos para satisfação de Créditos Sujeitos é essencial para preservar o caixa das Requerentes – já comprometido por sua atual situação econômico-financeira – e, assim, assegurar a continuidade de suas atividades produtivas e resguardar o resultado útil deste pedido de recuperação extrajudicial.

73.     A esse respeito, entretanto, importante considerar e ressalvar duas situações específicas de obrigações que, excepcionalmente, poderão ser liquidadas e/ou compensadas (conforme aplicável) mesmo durante o *stay* period, por expressa previsão legal.

74.     **Em primeiro lugar**, nos termos do art. 193 da LFR, "[o] *disposto nesta Lei não afeta as obrigações assumidas no âmbito das câmaras ou prestadoras de serviços de compensação e de liquidação financeira, que serão ultimadas e liquidadas pela câmara ou prestador de serviços, na forma de seus regulamentos*". Assim, o *stay period* não deverá impedir a liquidação de obrigações assumidas pelas Requerentes com suas contrapartes no âmbito das câmaras e prestadoras de serviços de compensação e de liquidação financeira.

75.     **Em segundo lugar**, os créditos decorrentes de operações compromissadas e/ou de derivativos possuem certos direitos especiais assegurados pelo art. 193-A da LFR. Em particular, assegura-se à contraparte o direito de promover o vencimento antecipado das operações de

---

[49]     TJSP, AI nº 2260720-90.2015.8.26.0000, Rel. Des. Fabio Tabosa, 2ª Câmara Reservada de Direito Empresarial, j. em 12.05.2016.

derivativos e a compensar "*os créditos e débitos delas decorrentes*", se assim previsto em contrato ou regulamento (art. 193-A, § 1º, da LFR).

76.     No curso normal de suas operações, o Grupo Raízen contratou com determinadas instituições financeiras diversas operações de derivativos de *commodities, juros e câmbio* para se proteger dos riscos inerentes à variação de preços, juros e cambial aplicáveis na comercialização de seus produtos e contratação de dívidas em moeda estrangeira ("**Operações de Derivativos**").

77.     Como todos os contratos que regem as Operações de Derivativos estabelecem o vencimento antecipado automático ou facultativo das respectivas operações em caso de distribuição de pedido de recuperação extrajudicial, e considerando que as instituições financeiras contratam operações espelhos no mercado para "*zerar*" o seu risco em relação às Operações de Derivativos, as Requerentes **não se opõem** a que tais instituições financeiras, se assim desejarem:

i)      promovam a declaração de vencimento antecipado das Operações de Derivativos;

ii)     em caso de vencimento antecipado, promovam o *close out* e realizem os cálculos para apuração dos créditos e débitos recíprocos para cada Operação de Derivativos;

iii)    promovam a compensação *(netting)* dos créditos e débitos recíprocos de cada Operação de Derivativo, até onde se compensarem, utilizando eventuais depósitos de margem para garantia da respectiva Operação de Derivativo para a satisfação de eventual crédito remanescente em seu favor, apurando-se eventual saldo de crédito em favor da contraparte contra o Grupo Raízen (os "**Saldos de Créditos Derivativos**"). Para fins de clareza, a compensação em questão deverá se dar entre Operações de Derivativos e eventuais depósitos de margem para garantia da respectiva Operação de Derivativo exclusivamente,



sendo vedada a apropriação de recursos e utilização de saldos de outras contas bancárias ou créditos de outras naturezas para efetuar a compensação; e

iv) os Saldos de Créditos Derivativos apurados após o *close out* (item (ii) acima) e compensação (*netting*) (item (iii) acima) das Operações de Derivativos constituem dívidas financeiras quirografárias das Requerentes, são consideradas Créditos Sujeitos à Recuperação Extrajudicial e deverão ser reestruturados nos termos do Plano e, portanto, não poderão ser executados nem compensados durante o *stay period*, com o que concordam os Credores Signatários do Plano que são partes em Operações de Derivativos.

78.     Assim, como decorrência do ajuizamento desta recuperação extrajudicial, deve-se reconhecer a suspensão de todas as ações, execuções, constrições patrimoniais e/ou compensações de Créditos Sujeitos das Requerentes pelo prazo de 180 dias, excetuados(as) **(i)** as obrigações assumidas no âmbito das câmaras ou prestadoras de serviços de compensação e de liquidação financeira, que serão ultimadas e liquidadas pela câmara ou prestador de serviços, na forma de seus regulamentos, nos termos do art. 193 da LFR; e **(ii)** os créditos e débitos recíprocos decorrentes de Operações de Derivativos, que, em atenção ao art. 193-A da LFR, poderão ser compensados entre si mesmo durante o *stay period*.

VIII.   PEDIDOS

79.     Por todo o exposto, uma vez comprovado que as Requerentes preenchem todos os requisitos necessários ao deferimento de seu pedido e apresentaram todos os documentos exigidos pela LFR, requer-se:

i) o recebimento e processamento desta recuperação extrajudicial nos termos do art. 164 da LFR, conferindo-se às Requerentes o prazo de 90 (noventa) dias para a obtenção do expresso consentimento e adesão da maioria dos Créditos Sujeitos, na forma do art. 163, § 7º, da LFR;

ii)     a ratificação da imediata suspensão, pelo prazo de 180 (cento e oitenta) dias, da exigibilidade de todos os Créditos Sujeitos e de todas as ações, execuções, atos de constrição contra as Requerentes que tenham por objeto os Créditos Sujeitos, bem como a vedação à compensação de Créditos Sujeitos, conforme determina o art. 163, § 8º, da LFR, exceptuados(as) **(ii.a)** as obrigações assumidas no âmbito das câmaras ou prestadoras de serviços de compensação e de liquidação financeira, que serão ultimadas e liquidadas pela câmara ou prestador de serviços, na forma de seus regulamentos e respectivos contratos, nos termos do art. 193 da LFR; e **(ii.b)** os créditos e débitos recíprocos decorrentes de Operações de Derivativos, que, em atenção ao art. 193-A da LFR, poderão ser compensados entre si mesmo durante o *stay period* após a eventual declaração de vencimento antecipado e os cálculos de créditos e débitos recíprocos para cada Operação de Derivativos, vedada a apropriação de recursos e utilização de saldos de outras contas bancárias ou créditos de outras naturezas para efetuar a compensação; e

iii)    após a obtenção do consentimento e adesão expressa da maioria dos Créditos Sujeitos ao plano de recuperação extrajudicial, a determinação da publicação do edital de convocação dos credores, nos termos do art. 164 da LFR, para que, caso queiram, apresentem impugnação ao respectivo plano de recuperação extrajudicial, nos termos do art. 164, § 3º, da LFR, o qual deverá ser oportunamente homologado por sentença, para que produza seus efeitos jurídicos e vincule a totalidade dos Credores Sujeitos, nos termos do art. 165 da LFR.

80.     Além disso, para atendimento ao art. 167-B, inciso IV, da LFR – inserido no "CAPÍTULO VI-A – DA INSOLVÊNCIA TRANSNACIONAL", que versa sobre mecanismos de cooperação entre juízes e autoridades de outros países – requer-se que o Sr. **LORIVAL NOGUEIRA LUZ JUNIOR**, brasileiro, casado, administrador de empresas, portador da cédula de identidade RG nº 22.580.434-7 SSP/SP, inscrito no CPF sob n° 678.741.266-53, com endereço comercial na Avenida Brigadeiro Faria Lima, 4100, Itaim Bibi, na cidade de São Paulo, Estado de São Paulo

ou, conforme aplicável, a própria **Raízen S.A.**, sejam nomeados como **representantes estrangeiros** ("*Foreign Representative*") do Grupo Raízen, autorizando-os a **(i)** atuar em nome do Grupo Raízen e representar seus interesses no âmbito de quaisquer processos, jurisdições e autoridades estrangeiras ("**Processo Ancilares**"), especialmente nas hipóteses em que os bens e as atividades de qualquer uma das sociedades requerentes estejam sujeitos a uma autoridade estrangeira; **(ii)** administrar os bens e as atividades do Grupo Raízen no âmbito de quaisquer Processos Ancilares, com poderes para tomar todas as medidas necessárias para preservar ou recuperar ativos das Requerentes localizados em outras jurisdições; e **(iii)** buscar o reconhecimento deste pedido de recuperação extrajudicial e de eventuais desdobramentos desta medida como processo principal estrangeiro, bem como o reconhecimento, a aplicação e a eficácia de plano de recuperação extrajudicial que venha a ser homologado por este d. Juízo nas jurisdições estrangeiras aplicáveis.

81.    Requer-se também que todas as intimações e publicações relativas ao presente feito sejam realizadas exclusivamente em nome dos advogados **(i) CELSO CALDAS MARTINS XAVIER** (OAB/SP 172.708), e-mail celso@xgivs.com.br; **(ii) GIULIANO COLOMBO** (OAB/SP 184.987), e-mail gcolombo@pn.com.br; **(iii) JOEL LUIS THOMAZ BASTOS** (OAB/SP 122.443), e-mail joel@twk.com.br; e **(iv) EDUARDO SECCHI MUNHOZ** (OAB/SP 126.764), e-mail eduardo@emunhoz.com.br, **sob pena de nulidade do ato de comunicação**, nos termos do art. 272, §§ 2º e 5º do CPC.

82.    Ademais, o Grupo Raízen respeitosamente protesta pela juntada da tradução juramentada em língua portuguesa dos documentos apresentados em língua estrangeira, em prazo não inferior a 15 dias úteis contados desta data.

83.    Dá-se à causa o valor de R$ 98,63 bilhões, em decorrência da soma **(i)** do valor de R$ 65,14 bilhões relativo aos Créditos Sujeitos; e **(ii)** do valor de R$ 33,49 bilhões relativo às dívidas *intercompany*. Após devidamente gerada a guia de pagamento pelo sistema EPROC, o Grupo Raízen realizará o pagamento das custas iniciais considerando o teto de custas do E. TJSP. De

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, INIC1, Página 27

**X G I V S**
XAVIER GAGLIARDI INGLEZ SCHAFFER

**PINHEIRO NETO**
A D V O G A D O S

**TWK**
ADVOGADOS


**MUNHOZ**
A D V O G A D O S
THOMAZ BASTOS
WAISBERG
KURZWEIL

qualquer modo, protesta-se desde já pela juntada da guia de custas iniciais e do respectivo comprovante de quitação.

Termos em que pedem deferimento.

São Paulo, 11 de março de 2026.

| | | | |
|---|---|---|---|
| Celso Caldas Martins Xavier<br>OAB/SP 172.708 | Giuliano Colombo<br>OAB/SP 184.987 | Joel Luís Thomaz Bastos<br>OAB/SP 122.443 | Eduardo Secchi Munhoz<br>OAB/SP 126.764 |
| Rafael Villar Gagliardi<br>OAB/SP 195.112 | Thiago Braga Junqueira<br>OAB/SP 286.786 | Ivo Waisberg<br>OAB/SP 146.176 | Ana Elisa Laquimia de Souza<br>OAB/SP 373.757 |
| Marcelo J. Inglez de Souza<br>OAB/SP 182.514 | João Guilherme Thiesi da Silva<br>OAB/SP 410.293 | Bruno Kurzweil de Oliveira<br>OAB/SP 248.704 | Gabriela Matta Ristow<br>OAB/SP 412.463 |
| Rafael Vicente Reicher Soares<br>OAB/SP 315.420 | Octavio Ferraz Pedroso<br>OAB/SP 443.683 | Gilberto Gornati<br>OAB/SP 296.778 | Danilo Domingues Guimarães<br>OAB/SP 422.993 |
| Hércules M. Kastanópoulos<br>OAB/SP 356.702 | Sophia Weinschenker Bollmann<br>OAB/SP 519.960 | Lucas Rodrigues do Carmo<br>OAB/SP 299.667 | Raphael Maldi Mendes<br>OAB/SP 439.913 |
| João Pedro Marques<br>OAB/SP 454.862 | | Patricia F. Gardelli Franco<br>OAB/SP 391.729 | Lucas Pereira Calmon<br>OAB/SP 508.290 |
| Isabella Dias Grassia<br>OAB/SP 508.614 | | Lucas H. Bulcão Mendes<br>OAB/SP 429.409 | |
| Sophia Franco Pasquini<br>OAB/SP 526.759 | | | |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, INIC1, Página 28

X G I V S  **PINHEIRO NETO** ADVOGADOS    
XAVIER GAGLIARDI INGLEZ SCHAFFER

### ANEXO I

### DOCS. ANEXOS AO PEDIDO DE RECUPERAÇÃO EXTRAJUDICIAL

| Nº DO DOCUMENTO | DESCRIÇÃO |
|---|---|
| Doc. 1 | Plano de Recuperação Extrajudicial |
| Doc. 2.1 | Atos constitutivos e atas de eleição de administradores das Requerentes |
| Doc. 2.2 | Procurações das Requerentes |
| Doc. 2.3 | Atas das deliberações autorizando o ajuizamento deste pedido de recuperação extrajudicial |
| Doc. 3 | Relação de Credores Sujeitos e Relação de Credores Signatários |
| Doc. 4 | Termos de adesão assinados pelos Credores Signatários e Documentos comprobatórios dos poderes dos subscritores do Plano de Recuperação Extrajudicial para novar ou transigir |
| Doc. 5.1 | Balancetes das Requerentes |
| Doc. 5.2 | Demonstrações contábeis das Requerentes |
| Doc. 5.3 | Projeção de fluxo de caixa pelas Requerentes |
| Doc. 6 | Certidões de regularidade emitidas pelas juntas comerciais |
| Doc. 7 | Certidões de distribuição de procedimentos de insolvência das Requerentes |
| Doc. 8.1 | Certidões de distribuição criminal das Requerentes |
| Doc. 8.2 | Certidões de distribuição criminal dos administradores das Requerentes |
| Doc. 8.3 | Certidões de distribuição criminal dos acionistas controladores das Requerentes |
| Doc. 9 | Demonstrações Financeiras ref. ao 3º Tri. da Safra 2025/2026 |
| Doc. 10 | Ofício CVM nº 18/2026/CVM/SEP/GEA-2 |
| Doc. 11 | Rebaixamento do *rating* do Grupo Raízen em 2026 |

XGIVS
XAVIER GAGLIARDI INGLEZ SCHAFFER

PINHEIRO NETO
ADVOGADOS

TWK
ADVOGADOS

THOMAZ BASTOS
WAISBERG
KURZWEIL

 MUNHOZ
ADVOGADOS

| Doc. 12 | Relação das ações judiciais e procedimentos arbitrais em que as Requerentes figuram como parte |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| **PLANO DE RECUPERAÇÃO EXTRAJUDICIAL** | **EXTRAJUDICIAL RESTRUCTURING PLAN** |
| celebrado por e entre, de um lado, conjuntamente como Devedoras, | executed by and between, on the one hand, jointly as Debtors, |
| **RAÍZEN S.A.** <br> **RAÍZEN ENERGIA S.A.** <br> **RAÍZEN FUELS FINANCE S.A.** <br> **RAÍZEN TRADING S.A.** <br> **RAÍZEN NORTH AMERICA INC** <br> **RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA** <br> **RAÍZEN CENTRO-SUL PAULISTA S.A.** <br> **RAÍZEN CENTRO-SUL S.A.** <br> **BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A.** | **RAÍZEN S.A.** <br> **RAÍZEN ENERGIA S.A.** <br> **RAÍZEN FUELS FINANCE S.A.** <br> **RAÍZEN TRADING S.A.** <br> **RAÍZEN NORTH AMERICA INC** <br> **RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA** <br> **RAÍZEN CENTRO-SUL PAULISTA S.A.** <br> **RAÍZEN CENTRO-SUL S.A.** <br> **BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A.** |
| de outro lado, conforme definido a seguir | on the other hand, as defined below |
| **CREDORES SIGNATÁRIOS** | **SIGNATORY CREDITORS** |
| São Paulo, 10 de março de 2026 | São Paulo, March 10th, 2026 |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 2

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| **PLANO DE RECUPERAÇÃO EXTRAJUDICIAL** | **EXTRAJUDICIAL RESTRUCTURING PLAN** |
|---|---|
| Este Plano de Recuperação Extrajudicial ("Plano"), datado de 10 de março de 2026 ("Data de Assinatura"), é celebrado, de um lado, conjuntamente por: | This Extrajudicial Restructuring Plan ("Plan"), dated March 10th, 2026 ("Signing Date") is executed, on the one hand, jointly by: |
| **RAÍZEN S.A.**, sociedade por ações de capital aberto, inscrita no CNPJ/MF sob o nº 33.453.598/0001-23 ("Raízen"); | **RAÍZEN S.A.**, a corporation, enrolled with the Brazilian Corporate Taxpayer's Registry of the Ministry of Finance (CNPJ/MF) under No. 33.453.598/0001-23 ("Raízen"); |
| **RAÍZEN ENERGIA S.A.**, sociedade por ações de capital aberto, inscrita no CNPJ/MF sob o nº 08.070.508/0001-78 ("Raízen Energia"); | **RAÍZEN ENERGIA S.A.**, a corporation, enrolled with the Brazilian Corporate Taxpayer's Registry of the Ministry of Finance (CNPJ/MF) under No. 08.070.508/0001-78 ("Raízen Energia"); |
| **RAÍZEN FUELS FINANCE S.A.**, sociedade constituída e estabelecida ao abrigo das leis do Grão-Ducado do Luxemburgo, registada no Registo Comercial e de Sociedades do Luxemburgo (R.C.S. Luxemburgo) sob o nº B 184.033 ("Raízen Finance"); | **RAÍZEN FUELS FINANCE S.A.**, a public limited liability company (*société anonyme*) organized and established under the laws of the Grand Duchy of Luxembourg, registered with the Luxembourg Register of Commerce and Companies (R.C.S. Luxembourg) under number B 184.033 ("Raízen Finance"); |
| **RAÍZEN TRADING S.A.**, sociedade empresária constituída de acordo com as leis da Suíça, registrada sob o nº CHE-143.573.167 ("Raízen Trading"); | **RAÍZEN TRADING S.A.**, a corporation organized and established under the law of Switzerland, registered under No. CHE-143.573.167 ("Raízen Trading"); |
| **RAÍZEN NORTH AMERICA INC.**, sociedade empresária constituída de acordo com as leis dos Estados Unidos da América ("Raízen Inc."); | **RAÍZEN NORTH AMERICA INC.**, a corporation organized and established under the law of the United States of America ("Raízen Inc."); |
| **RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA.**, sociedade por ações, inscrita no CNPJ/MF sob o nº 09.538.989/0001-66 ("Raízen Caarapo"); | **RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA.**, a corporation enrolled with the Brazilian Corporate Taxpayer's Registry of the Ministry of Finance (CNPJ/MF) under No. 09.538.989/0001-66 ("Raízen Caarapo"); |
| **RAÍZEN CENTRO-SUL PAULISTA S.A.**, sociedade por ações, inscrita no CNPJ/MF sob o nº 49.213.747/0118-28 ("Raízen Centro-Sul Paulista"); | **RAÍZEN CENTRO-SUL PAULISTA S.A.**, a corporation enrolled with the Brazilian Corporate Taxpayer's Registry of the Ministry of Finance (CNPJ/MF) under No. 49.213.747/0118-28 ("Raízen Centro-Sul Paulista"); |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 3

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| **RAÍZEN CENTRO-SUL S.A.**, sociedade por ações, inscrita no CNPJ/MF sob o nº 15.527.906/0001-36 ("Raízen Centro-Sul"); | **RAÍZEN CENTRO-SUL S.A.**, a corporation enrolled with the Brazilian Corporate Taxpayer's Registry of the Ministry of Finance (CNPJ/MF) under No. 15.527.906/0001-36 ("Raízen Centro-Sul"); |
| **BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A.,** sociedade por ações, inscrita no CNPJ/MF sob o nº 04.958.554/0001-57 ("Blueway") e, quando em conjunto com a Raízen, Raízen Energia, Raízen Finance, Raízen Trading, Raízen Inc., Raízen Caarapo, Raízen Centro-Sul Paulista, Raízen Centro-Sul, as "Devedoras", todas com principal estabelecimento na Av. Brigadeiro Faria Lima, nº 4.100, 12º andar, Parte VII, São Paulo/SP, CEP 04538-132). | **BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A.,** a corporation enrolled with the Brazilian Corporate Taxpayer's Registry of the Ministry of Finance (CNPJ/MF) under No. 04.958.554/0001-57 ("Blueway" and when together with Raízen, Raízen Energia, Raízen Finance, Raízen Trading, Raízen Inc., Raízen Caarapo, Raízen Centro-Sul Paulista e Raízen Centro-Sul, the "Debtors", all with their main place of business at Av. Brigadeiro Faria Lima, nº 4.100, 12th floor, Part VII, São Paulo/SP, ZIP 04538-132). |
| De outro lado, pelos **CREDORES SIGNATÁRIOS**, conforme listados e descritos no **Anexo A** deste Plano ("Credores Signatários"); | On the other hand, by the **SIGNATORY CREDITORS**, as listed and described in **Schedule A** to this Plan (the "Signatory Creditors"). |
| **CONSIDERANDOS** | **RECITALS** |
| A. Considerando que as Devedoras são parte do Grupo Raízen (conforme definido abaixo), composto por sociedades *holding* e sociedades operacionais atuantes no segmento de produção de etanol e açúcar e distribuição de combustíveis, produtos e serviços, em todo território nacional e em outros países; | A. Whereas the Debtors are part of Raízen Group (as defined below), composed of holding companies and operational companies operating in the ethanol and sugar production segment and distribution of fuels, products, and services throughout Brazil and abroad; |
| B. Considerando que, dentre outros fatores, a alteração do cenário macroeconômico e setorial – decorrentes de ciclos de colheita de menor produtividade, queda das margens e alto custo do endividamento financeiro – prejudicou a atividade das companhias operacionais e, por consequência, toda a operação estruturada pelas Devedoras ao longo de anos de atuação no segmento; | B. Whereas, among other issues, the changes in the macroeconomic and sectoral market – resulting from harvest cycles with lower productivity, falling margins and high financial debt costs – have adversely affected the activities of operating companies and, consequently, the entire operation structured by the Debtors over years of activity in the sector; |
| C. Considerando que nesse período houve alta expressiva da taxa básica de juros no mercado doméstico, tendo a Selic saltado do patamar de 2%, em 2020, para 15%, em 2026, afetando de forma | C. Whereas during this period there was a significant increase in the Brazilian market's basic interest rate, with the Selic rate (*taxa Selic*) jumping from 2% in 2020 to 15% in 2026, |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 4

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| significativa o endividamento financeiro das Devedoras; | significantly affecting the Debtors' financial indebtedness; |
| **D.**    Considerando que as Devedoras emitiram ou garantiram as dívidas financeiras quirografárias listadas no **Anexo D** ("<u>Títulos Existentes</u>"). | **D.**    Whereas the Debtors issued or were guarantors of the financial unsecured debt described in **Schedule D** ("<u>Existing Titles</u>") |
| **E.**    Considerando que as Devedoras no curso ordinário de suas operações, realizaram diversos contratos de financiamento e transferência de recursos financeiros entre si, reciprocamente na qualidade de credoras e devedoras, conforme também indicado no **Anexo D** ("<u>Créditos Intercompany</u>"); | **E.**    Whereas the Debtors in the ordinary course of business, executed various financing agreements and transfer of funds amongst themselves, reciprocally as debtors and creditors, as also indicated in **Schedule D** ("<u>Intercompany Claims</u>"); |
| **F.**    Considerando que as Devedoras vêm mantendo tratativas para a renegociação do seu passivo financeiro quirografário, buscando *(i)* a continuidade dos esforços de redução da alavancagem do Grupo Raízen; e *(ii)* as alternativas possíveis para readequação da estrutura de capital das Devedoras, incluindo, mas não se limitando, à renegociação e a repactuação do seu endividamento financeiro quirografário e outras alternativas estruturais; | **F.**    Whereas the Debtors have been negotiating to restructure their unsecured financial liabilities, seeking *(i)* to continue efforts to reduce the leverage of Raízen Group, through the sale of non-essential assets; and *(ii)* possible alternatives for restructuring the capital structure of the Debtors, including, but not limited to, renegotiation and rescheduling of its unsecured financial indebtedness and other structural alternatives; |
| **G.**    Considerando que, com o objetivo de superar a crise econômico-financeira enfrentada, as Devedoras, nesta data, ajuízam o presente pedido de homologação de plano de recuperação extrajudicial com o objetivo de criar as condições e a estrutura necessários para as Devedoras e os Credores Sujeitos negociarem, estabelecerem e implementarem os termos da restruturação do endividamento financeiro quirografário das Devedoras, com o objetivo de manter a estabilidade das atividades operacionais das Devedoras, que têm sido exercidas de forma saudável e rentável; | **G.**    Whereas, with the objective of overcoming the economic and financial crisis being faced, the Debtors, on this date, file the present request for confirmation of an extrajudicial restructuring plan, with the objective to create the conditions and the framework necessary for the Debtors and the Subject Creditors to negotiate, establish, and implement the terms of the restructuring of the unsecured financial debt of the Debtors, and with the objective of maintaining the operational activities of the Debtors that have been exercised in a healthy and profitable form; |
| **H.**    Considerando os princípios do processo de recuperação extrajudicial, o Plano visa a *(i)* garantir a preservação da atividade empresarial das Devedoras; *(ii)* possibilitar o estabelecimento dos termos para a reestruturação dos créditos sujeitos ao processo; *(iii)* manter a posição das | **H.**    Whereas, considering the principles of the out-of-court recovery process, the Plan aims to *(i)* enable the preservation of the business activity of the Debtors; *(ii)* permit establishing the terms for the restructuring of the credits subject to the process; *(iii)*  maintain of Debtors' position in the |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 5

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Devedoras no mercado, sendo uma fonte de geração de tributos, empregos e riquezas para a economia; e *(iv)* garantir condições isonômicas e vantajosas a todos os credores; | market, being a source of generating taxes, jobs, and wealth for the economy; and *(iv)* ensure equitable and advantageous conditions to all creditors; |
| **I.** Considerando que o montante total devido por cada uma das Devedoras, na Data do Protocolo da RE, incluindo o saldo devedor de principal, juros e penalidades contratuais, encontra-se descrito no **Anexo D,** e que as Devedoras pretendem reestruturar, nos termos do art. 43, do art. 163, § 1º, e do art. 163, § 3º, inciso II, da LFR, os Créditos Intercompany e todos os créditos financeiros quirografários contra as Devedoras relacionados ou resultantes dos Títulos Existentes, incluindo principal, juros, juros de mora e quaisquer outras obrigações das Devedoras que sejam regidas ou estabelecidas nos Títulos Existentes, excluindo-se eventuais Créditos Decorrentes de Operações em Câmaras de Compensação ou Liquidação e outras obrigações excluídas nos termos deste Plano e da LFR ("Créditos Sujeitos"); | **I.** Whereas the total amounts due from each of the Debtors as of the EJ Filing Date, including amounts outstanding for principal, interest and contractual penalties, are described in **Schedule D**, and the Debtors intend to restructure, pursuant to Article 163, paragraph 1, Article 43 and Article 163, paragraph 3, inc. II, of the Brazilian Bankruptcy Law, the Intercompany Claims and all unsecured financial claims against the Debtors related to or arising from Existing Titles, including principal, interest, default interest and other obligations of the Debtors that are governed, established in the Existing Titles, excluding any Claims Arising from Clearing  or Settlement Operations and other exempted obligations under this Plan and the Brazilian Bankruptcy Law("Subject Claims"); |
| **J.** Os Credores Signatários, indicados no **Anexo A,** subscrevem o presente Plano sob a premissa fundamental e motivo determinante de que, na Data da Sentença de Homologação, terá sido negociado, elaborado e apresentado nos autos, nos termos deste Plano, um Plano Atualizado e que este Plano Atualizado terá sido assinado por Credores Sujeitos titulares de mais da metade dos Créditos Sujeitos, observando os requisitos para apuração de quórum previstos na LFR (art. 163, §§ 2º e 3º); e | **J.** The Signatory Creditors, as listed under **Schedule A**, execute this Plan based on the fundamental premise and determining reason that, on the Confirmation Order Date, an Updated Plan will have been negotiated, prepared, and filed in the case records, pursuant to the terms of this Plan, and that the Updated Plan shall have been executed by Subject Creditors that hold more than half of the Subject Claims, following the requirements for quorum determination set forth in the Brazilian Bankruptcy Law (Article 163, paragraphs 2 and 3); and |
| **K.** Os Credores Signatários assinam o presente Plano sob a premissa fundamental e motivo determinante de que, observadas as previsões contidas neste Plano, incluindo, mas não se limitando, às obrigações contidas nas Cláusulas 4.1, 7.2 e 7.3 do Plano, bem como a disposição contida no art. 163, § 8º, da LFR, seus Créditos Sujeitos somente serão novados e substituídos se e quando for proferida a Sentença de Homologação | **K.** The Signatory Creditors sign this Plan based on the fundamental premise and determining reason that, subject to the provisions contained in this Plan, including, but not limited to, the obligations contained in Sections 4.1, 7.2 and 7.3 of the Plan, as well as the provision contained in Article 163, paragraph 8, of the Brazilian Bankruptcy Law, their Subject Claims will only be novated, replaced, or otherwise affected if and |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| do Plano Atualizado, a qual, por sua vez, somente ocorrerá com a assinatura do Plano Atualizado (e não do Plano) por Credores Sujeitos titulares de mais da metade dos Créditos Sujeitos, observando os requisitos para apuração de quórum previstos na LFR (art. 163, §§ 2º e 3º). | when the Confirmation Order of the Updated Plan is issued, which, in turn, will only occur upon the execution of the Updated Plan (and not this Plan) by Subject Creditors holding more than one-half of the Subject Claims, subject to the quorum calculation requirements set forth in the Brazilian Bankruptcy Law (Article 163, §§ 2 and 3). |
| **L.**    Nesta data, o Plano conta com a assinatura dos Credores Signatários que, em conjunto, representam mais de 1/3 (um terço) dos Créditos Sujeitos, observado o previsto nos arts. 43 e 163, § 3º, inciso II, da LFR, e as Devedoras firmam o compromisso de, no prazo de 90 (noventa) Dias Corridos contados da Data do Protocolo da RE, atingir o quórum previsto no caput do art. 163, por meio de nova adesão expressa da maioria dos Créditos Sujeitos ao Plano Atualizado (art. 163, § 7º da LFR). | **L.**    On this date, the Plan is executed by the Signatory Creditors that, collectively, hold more than a third (1/3) of the Subject Claims, observed the provided in art. 43 and 163, paragraph 3, inc. II, of the Brazilian Bankruptcy Law, and the Debtors undertake, within ninety (90) Calendar Days from the Filing Date, to reach the quorum provided for in Article 163, *caput*, by means of new express adhesion to the Updated Plan by the majority of the Subject Claims (Article 163, paragraph 7, of the Brazilian Bankruptcy Law). |
| **1. DEFINIÇÕES E REGRAS DE INTERPRETAÇÃO** | **1. DEFINITIONS AND RULES OF CONSTRUCTION** |
| **1.1.    Definições**. As seguintes palavras, expressões e abreviaturas iniciadas em letra maiúscula, no singular ou no plural, masculino ou feminino, utilizadas neste Plano, terão os significados atribuídos abaixo. | **1.1.    Definitions**. The following capitalized words, expressions, and abbreviations, either in singular or plural, masculine or feminine, in this Plan, shall have the meanings attributed below. |
| 1.1.1. "<u>Afiliada</u>" significa com relação à Pessoa especificada, qualquer outra Pessoa que seja direta ou indiretamente, uma Controlada ou sociedade sob Controle comum; | 1.1.1. "<u>Affiliate</u>" means, with respect to the specified Person, any other Person that is directly or indirectly a Subsidiary or a company under common Control; |
| 1.1.2. "<u>*Bankruptcy Code* dos EUA</u>" significa o título 11 do United States Code, 11 U.S.C. §§ 101 e seguintes; | 1.1.2. "<u>U.S. Bankruptcy Code</u>" means title 11 of the United States Code. 11 U.S.C. §§ 101 et seq; |
| 1.1.3. "<u>Blueway</u>" tem o significado estabelecido no Preâmbulo; | 1.1.3. "<u>Blueway</u>" has the meaning established in the Preamble; |
| 1.1.4. "<u>*Chapter* 15</u>" significa o procedimento do *Chapter* 15 do Bankruptcy Code dos EUA; | 1.1.4. "<u>Chapter 15</u>" means chapter 15 of the U.S. Bankruptcy Code; |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 7

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| 1.1.5.  "Clearings" significa as câmaras de ou prestadoras de serviços de compensação e de liquidação financeira no Brasil ou exterior. | 1.1.5.  "Clearings" means clearing houses or providers of clearing and financial settlement services in Brazil or abroad. |
| 1.1.6.  "Código Civil Brasileiro" significa a Lei nº 10.406, de 10 de janeiro de 2002; | 1.1.6.  "Brazilian Civil Code" means Law No. 10,406 of January 10, 2002; |
| 1.1.7.  "Código de Processo Civil Brasileiro" significa a Lei nº 13.105, de 16 de março de 2015; | 1.1.7.  "Brazilian Code of Civil Procedure" means Law No. 13,105 of March 16, 2015; |
| 1.1.8.  "Controle": significa, conforme previsto no art. 116 da Lei das S.A. ou em disposição equivalente em outra jurisdição, em relação a uma determinada pessoa, ou a pessoas que em conjunto, conforme aplicável, detenham *(i)* o poder de eleger a maioria da administração de forma permanente, bem como de determinar e conduzir as políticas e administração dessa pessoa; ou *(ii)* a propriedade direta ou indireta de pelo menos 50% (cinquenta por cento) mais 1 (uma) ação/quota do capital votante total dessa pessoa; em qualquer desses casos, por uma pessoa ou conjunto de pessoas vinculadas por acordo de voto ou sob Controle comum. Os termos relacionados à palavra Controle, tais como "Controlada", "Controladora" e "sob Controle comum" utilizadas neste Plano seguirão a definição de Controle. | 1.1.8.  "Control" means, as provided for in Article 116 of the Brazilian Corporation Law, with respect to a given Person, *(i)* the power to elect the majority of the administration of such Person on a continuous basis, as well as to determine and conduct the policies and administration of such Person; or *(ii)* the direct or indirect ownership of at least fifty percent (50%) plus 1 (one) share/quota of the total voting capital of such Person; in any of such cases, by a Person or group of Persons bound by a voting agreement or under common Control. The terms related to the word Control, such as "Controlled Party", "Controlling Party" and "under common Control", shall have similar meanings to Control; |
| 1.1.9.  "Corte Norte-Americana de Falências" tem o significado atribuído na Cláusula 2.8; | 1.1.9.  "U.S. Bankruptcy Court" has the meaning established in Section 2.8; |
| 1.1.10.  "Créditos Aderentes" significa os Créditos Sujeitos detidos pelos Credores Aderentes; | 1.1.10.  "Adhering Claims" means the Subject Claims held by the Adhering Creditors; |
| 1.1.11.  Créditos Decorrentes de Operações em Câmaras de Compensação ou Liquidação" significa quaisquer créditos, que estão expressamente excluídos e não serão considerados Créditos Sujeitos para fins deste Plano, decorrentes exclusivamente da liquidação, compensação, vencimento antecipado, liquidação voluntária ou rescisão de Operações de Clearing (excluindo-se, para que não haja dúvidas, quaisquer operações semelhantes contratadas pelas Devedoras em mercado de balcão e não sujeitas à compensação, garantia ou liquidação de uma Clearing, incluindo | 1.1.11.  "Claims Arising from Clearing or Settlement Operations" means any claims, which are expressly excluded and shall not be considered Subject Claims for the purposes of this Plan, arising exclusively from the settlement, close-out netting, acceleration, voluntary termination, or termination of Clearing Transactions (it being understood, for the avoidance of doubt, that any similar transactions entered into by the Debtors in the over-the-counter market and not subject to the clearing, guarantee, or settlement of a Clearing are excluded from this definition, including, without |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 8

| | |
|---|---|
| sem limitação as operações contratadas, cursadas e/ou registradas perante o Segmento de Balcão Sem Garantia da B3 (referente à antiga Central de Custódia e de Liquidação Financeira de Títulos Privados (CETIP)), NoMe ou qualquer instituição assemelhada), inclusive o saldo remanescente após compensação (netting), independentemente se tais créditos resultaram de uma liquidação, compensação, vencimento antecipado, liquidação voluntária ou rescisão realizada antes ou depois da Data do Protocolo da RE, bem como quaisquer créditos ou obrigações decorrentes de quaisquer acordos, confirmações, arranjos de suporte de crédito, contratos de compensação, contratos de corretagem, empréstimos para manter ou comprar valores mobiliários ou títulos de crédito ou documentação relacionada exclusivamente no âmbito e no ambiente das Clearings, em qualquer das hipóteses independentemente se regidos pela legislação brasileira, pela legislação de Nova York ou por qualquer outra legislação aplicável. | limitation, transactions entered into, processed and/or registered with B3's Unsecured OTC Segment (formerly the Central de Custódia e de Liquidação Financeira de Títulos Privados (CETIP)), NoMe, or any similar institution), including any remaining balance after netting, regardless of whether such claims arise from a settlement, close-out netting, acceleration, voluntary termination, or termination carried out before or after the ER Filing Date, as well as any claims or obligations arising from any agreements, confirmations, credit support arrangements, netting agreements, brokerage agreements, loans to maintain or purchase securities or debt instruments, or related documentation exclusively within the scope and environment of the Clearings, in each case regardless of whether governed by Brazilian law, New York law, or any other applicable law. |
| 1.1.12. "Créditos Intercompany" tem o significado atribuído no Considerando E; | 1.1.12. "Intercompany Claims" has the meaning established in Recital E; |
| 1.1.13. "Créditos Signatários" significa os Créditos Sujeitos detidos pelos Credores Signatários; | 1.1.13. "Signatory Claims" means the Subject Claims held by the Signatory Creditors; |
| 1.1.14. "Créditos Sujeitos" tem o significado atribuído no Considerando I; | 1.1.14. "Subject Claims" has the meaning established in Recital I; |
| 1.1.15. "Credores Aderentes" tem o significado estabelecido no Preâmbulo; | 1.1.15. "Adhering Creditors" has the meaning established in the Preamble; |
| 1.1.16. "Credores Signatários" tem o significado estabelecido no Preâmbulo; | 1.1.16. "Signatory Creditors" has the meaning established in the Preamble; |
| 1.1.17. "Credores Sujeitos" significa os titulares de Créditos Sujeitos; | 1.1.17. "Subject Creditors" means the holders of Subject Claims; |
| 1.1.18. "Data da Sentença de Homologação" significa a data em que for publicada, no Diário de Justiça Eletrônico do Estado de São Paulo (DJE), a decisão de homologação do Plano Atualizado proferida pelo Juízo da RE; | 1.1.18. "Confirmation Order Date" means the date on which the order providing for the judicial confirmation of the Updated Plan by the EJ Court is published in the São Paulo State Court's Official Gazette (DJE); |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 9

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| 1.1.19. "<u>Data de Assinatura</u>" tem o significado estabelecido no Preâmbulo; | 1.1.19. "<u>Signing Date</u>" has the meaning established in the Preamble; |
| 1.1.20. "<u>Data de Resolução do Plano</u>" tem o significado estabelecido na Cláusula 6.1; | 1.1.20. "<u>Plan Termination Date</u>" has the meaning established in Section 6.1; |
| 1.1.21. "<u>Data do Protocolo da RE</u>" significa a data em que a Recuperação Extrajudicial for protocolada perante o Juízo da RE; | 1.1.21. "<u>EJ Filing Date</u>" means the date on which the Extrajudicial Restructuring is filed before the EJ Court; |
| 1.1.22. "<u>Decisões Chapter 15</u>" significa a Decisão Norte-Americana de Reconhecimento da RE e a Decisão de Confirmação Chapter 15. Para que não restem dúvidas, as Decisões Chapter 15 podem constituir uma decisão só; | 1.1.22. "<u>Chapter 15 Orders</u>" means the U.S Recognition Order and the U.S Enforcement Order. For the avoidance of doubt, the Chapter 15 Orders may constitute a single order; |
| 1.1.23. "<u>Decisão Norte-Americana de Reconhecimento da RE</u>" tem o significado estabelecido na Cláusula 2.8; | 1.1.23. "<u>U.S. Recognition Order</u>" has the meaning established in Section 2.8; |
| 1.1.24. "<u>Decisão de Confirmação Chapter 15</u>" tem o significado atribuído na Cláusula 2.8; | 1.1.24. "<u>U.S. Enforcement Order</u>" has the meaning established in Section 2.8; |
| 1.1.25. "<u>Devedoras</u>" tem o significado estabelecido no Preâmbulo; | 1.1.25. "<u>Debtors</u>" has the meaning established in the Preamble; |
| 1.1.26. "<u>Dias Corridos</u>" significa qualquer dia, incluindo dias que não sejam Dias Úteis; | 1.1.26. "<u>Calendar Days</u>" means any day, including days that are not Business Days; |
| 1.1.27. "<u>Dias Úteis</u>" significa qualquer Dia Corrido, exceto dias em que os bancos comerciais estejam obrigados ou autorizados por lei a fechar na cidade de São Paulo, Estado de São Paulo; na cidade de Nova Iorque, Estado de Nova Iorque; ou na cidade de Londres, no Reino Unido; | 1.1.27. "<u>Business Day</u>" means any Calendar Day, except for any day on which commercial banks are required or authorized by Law to close in the City of São Paulo, State of São Paulo; in the City of New York, State of New York; or in the city of London, in the United Kingdom; |
| 1.1.28. "<u>Dólares</u>" ou "<u>US$</u>" significa dólares dos Estados Unidos da América; | 1.1.28. "<u>Dollars</u>" or "<u>US$</u>" shall each mean United States dollars; |
| 1.1.29. "<u>Euros</u>" ou "EUR" ou "€" significa a moeda oficial da Zona do Euro; | 1.1.29. "<u>Euros</u>" or "EUR" or "€" shall each mean Eurozone official currency; |
| 1.1.30. "<u>Evento de Resolução</u>" tem o significado estabelecido na Cláusula 6.1; | 1.1.30. "<u>Termination Event</u>" has the meaning established in Section 6.1; |
| 1.1.31. "<u>Grupo Raízen</u>" significa coletivamente a Raízen e todas as sociedade direta e indiretamente controladas pela Raízen; | 1.1.31. "<u>Raízen Group</u>" means collectively Raízen and all the entities directly and indirectly controlled by Raízen; |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 10

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| 1.1.32. "Juízo da RE" significa o juízo perante o qual a Recuperação Extrajudicial será processada, qual seja, o qual seja, o juízo de uma das Varas de Falências e Recuperações Judiciais da Comarca do Estado São Paulo, Estado de São Paulo, Brasil, observada a Cláusula 7.13; | 1.1.32. "EJ Court" means the court before which this Extrajudicial Restructuring shall be pending, namely the Bankruptcy State Courts of the District of São Paulo, State of São Paulo, Brazil, as established in Clause 7.13; |
| 1.1.33. "Lei" ou "Lei Aplicável" significa qualquer lei federal, estadual ou municipal brasileira ou qualquer lei estrangeira (neste caso, lei escrita, a common law ou qualquer outra lei), constituição, tratado, convenção, portaria, código, regra, estatuto, decreto, regulamento, decisão, deliberação, instrução ou qualquer outra exigência editada, emitida, adotada, promulgada, posta em vigor ou aplicada por uma autoridade governamental brasileira ou estrangeira; | 1.1.33. "Law" or "Applicable Law" means any Brazilian federal, state or municipal law or any foreign law (in this case, statutory, common or any other law), constitution, treaty, convention, ordinance, code, rule, statute, decree, regulation, ruling, deliberation, instruction or any other requirement edited, issued adopted, enacted, placed or applied by a Brazilian or foreign governmental entity; |
| 1.1.34. "Lei das S.A." significa a Lei nº 6.404, de 15 de dezembro de 1976; | 1.1.34. "Brazilian Corporations Law" means Law no. 6,404 of December 15, 1976; |
| 1.1.35. "LFR" significa a Lei nº 11.101, de 9 de fevereiro de 2005; | 1.1.35. "Brazilian Bankruptcy Law" means Law no. 11,101 of February 9, 2005; |
| 1.1.36. "Operações de Clearings" significa quaisquer operações contratadas e obrigações assumidas pelas Devedoras liquidadas, compensadas ou garantidas no ambiente das Clearings, incluindo, sem limitação, operações de derivativos, swaps, futuros, contratos de hedge, compensação, liquidação, margem, custódia, intermediação ou serviços correlatos e operações similares, nos termos dos respectivos contratos. | 1.1.36. "Clearing Transactions" means any transactions entered into and obligations assumed by the Debtors that are settled, netted, or guaranteed within the Clearings environment, including, without limitation, derivatives transactions, swaps, futures, hedge agreements, netting, settlement, margin, custody, brokerage or related services, and similar transactions, pursuant to the respective agreements. |
| 1.1.37. "Partes" ou "Parte" têm o significado estabelecido no Preâmbulo; | 1.1.37. "Parties" or "Party" have the meaning established in the Preamble; |
| 1.1.38. "Pessoa" significa qualquer indivíduo, sociedade, incluindo sociedades anônimas e de responsabilidade limitada, sociedades em parceria, joint venture, trust, associação, fundação, organização, entidade governamental ou outra entidade de qualquer tipo ou natureza; | 1.1.38. "Person" means any individual, corporation, including joint-stock and limited companies, partnership, joint venture, trust, association, foundation, organization, governmental entity or another entity of any kind or nature; |
| | |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 11

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| 1.1.39. "<u>Plano</u>" tem o significado estabelecido no Preâmbulo; | 1.1.39. "<u>Plan</u>" has the meaning established in the Preamble; |
| 1.1.40. "<u>Plano Atualizado</u>" tem o significado estabelecido na Cláusula 3.1.1; | 1.1.40. "<u>Updated Plan</u>" has the meaning established in Section 3.1.1; |
| 1.1.41. "<u>Raízen</u>" tem o significado estabelecido no Preâmbulo; | 1.1.41. "<u>Raízen</u>" has the meaning established in the Preamble; |
| 1.1.42. "<u>Raízen Caarpo</u>" tem o significado estabelecido no Preâmbulo; | 1.1.42. "<u>Raízen Caarpo</u>" has the meaning established in the Preamble; |
| 1.1.43. "<u>Raízen Centro-Sul</u>" tem o significado estabelecido no Preâmbulo; | 1.1.43. "<u>Raízen Centro-Sul</u>" has the meaning established in the Preamble; |
| 1.1.44. "<u>Raízen Centro-Sul Paulista</u>" tem o significado estabelecido no Preâmbulo; | 1.1.44. "<u>Raízen Centro-Sul Paulista</u>" has the meaning established in the Preamble; |
| 1.1.45. "<u>Raízen Energia</u>" tem o significado estabelecido no Preâmbulo; | 1.1.45. "<u>Raízen Energia</u>" has the meaning established in the Preamble; |
| 1.1.46. "<u>Raízen Finance</u>" tem o significado estabelecido no Preâmbulo; | 1.1.46. "<u>Raízen Finance</u>" has the meaning established in the Preamble; |
| 1.1.47. "<u>Raízen Inc.</u>" tem o significado estabelecido no Preâmbulo; | 1.1.47. "<u>Raízen Inc.</u>" has the meaning established in the Preamble; |
| 1.1.48. "<u>Raízen Trading</u>" tem o significado estabelecido no Preâmbulo; | 1.1.48. "<u>Raízen Trading</u>" has the meaning established in the Preamble; |
| | |
| 1.1.49. "<u>Real</u>", "<u>Reais</u>" ou "<u>R$</u>" significa a moeda oficial do Brasil; | 1.1.49. "<u>Real</u>", "<u>Reais</u>" or "<u>R$</u>" means the legal currency of Brazil; |
| 1.1.50. "<u>Recuperação Extrajudicial</u>" tem o significado estabelecido no Preâmbulo; | 1.1.50. "<u>Extrajudicial Restructuring</u>" has the meaning established in the Preamble; |
| 1.1.51. "<u>Sentença de Homologação</u>" significa a decisão de homologação do Plano Atualizado; | 1.1.51. "<u>Confirmation Order</u>" means the judicial confirmation of the Updated Plan by the EJ Court; |
| 1.1.52. "<u>Termo de Adesão</u>" tem o significado atribuído na Cláusula 2.5; | 1.1.52. "<u>Adhesion Form</u>" has the meaning established in Section 2.5; |
| 1.1.53. "<u>Títulos Existentes</u>" tem o significado atribuído no Considerando D. | 1.1.53. "<u>Existing Titles</u>" has the meaning established in Recital D. |
| **1.2.    Regras de Interpretação.** | **1.2.    Rules of Construction.** |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| 1.2.1. <u>Títulos e Cabeçalhos</u>. Os títulos e cabeçalhos das Cláusulas deste Plano existem simplesmente para fins de referência, e não devem ser utilizados para interpretação ou análise das disposições deste instrumento. | 1.2.1. <u>Titles and Headings</u>. The titles and headings of the Sections set forth in this Plan are for reference purposes only and shall not be used to construe or interpret the provisions hereof. |
| 1.2.2. <u>Seções, Cláusulas e Anexos</u>. Todas as referências neste Plano a capítulos, cláusulas, itens, preâmbulo e anexos devem ser consideradas referências aos capítulos, cláusulas, itens, preâmbulo e anexos deste Plano, a menos que o contexto exija de outro modo. | 1.2.2. <u>Sections, Sections and Schedules</u>. All references in this Plan to chapters, sections, items, preamble and schedules shall be considered references to the chapters, Sections, items, preamble and schedules of this Plan, unless the context requires otherwise. |
| 1.2.3. <u>Inclusive</u>. Os termos "incluindo", "inclusive" e "incluído", bem como termos semelhantes, devem ser interpretados como se estivessem acompanhados das expressões "mas não limitados a" e "entre outros". | 1.2.3. <u>Inclusive</u>. The terms "including", "inclusive" and "included", as well as similar terms, shall be construed as if accompanied by the expressions "but not limited to" and "among others". |
| 1.2.4. <u>Alterações</u>. Quaisquer referências a documentos ou instrumentos devem ser consideradas como incluindo todas as respectivas alterações ou substituições, a menos que de outro modo expressamente previsto ou de outra forma requerida pelo contexto. | 1.2.4. <u>Amendments</u>. Any references to any documents or instruments shall be considered to include all of the respective amendments or replacements, unless otherwise expressly set forth or required by the context. |
| 1.2.5. <u>Disposições legais</u>. Todas as referências a disposições legais e a Leis devem ser interpretadas como referências a essas disposições legais e Leis tais como vigentes nesta data em um data que seja especificamente determinada pelo contexto; | 1.2.5. <u>Legal Provisions</u>. All references to legal provisions and Laws must be interpreted as references to these legal provisions and Laws as in effect on the date hereof or on the date specifically determined by the context. |
| 1.2.6. <u>Sucessores</u>. Todas as referências a qualquer Pessoa devem incluir seus respectivos sucessores e cessionários autorizados, independentemente do tipo de sucessão envolvida. | 1.2.6. <u>Successors</u>. All references to any Person shall include its respective successors and permitted assignees, regardless of the type of succession involved. |
| 1.2.7. <u>Prazos</u>. Todos os termos e prazos previstos neste Plano serão contados na forma prevista no Código Civil Brasileiro, desconsiderando-se o dia de início e incluindo-se o dia em que o prazo é alcançado. Quaisquer termos e prazos referidos neste Plano (contados em Dias Úteis ou não), cujo termo final caia em um dia em que não seja Dia Útil, serão automaticamente prorrogados para o primeiro Dia Útil imediatamente posterior. | 1.2.7. <u>Deadlines</u>. All terms and deadlines set forth in this Plan shall be counted as provided for in the Brazilian Civil Code, disregarding the immediate first day and including the day on which the deadline is reached. All terms and deadlines referred to in this Plan (whether counted in Business Days or not), in which the final day of the deadline corresponds to a day that is not a Business |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 13

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

|  |  |
|---|---|
|  | Day shall be automatically extended to the first following Business Day. |
| 1.2.8. <u>Conflito</u>. Em caso de conflito entre este Plano e os seus Anexos, o Plano prevalecerá. | 1.2.8. <u>Conflict</u>. In case of conflict between this Plan and its Schedules, the Plan shall prevail. |

**2. CONDIÇÕES GERAIS DA RECUPERAÇÃO EXTRAJUDICIAL**

**2. GENERAL TERMS OF THE EXTRAJUDICIAL RESTRUCTURING**

| | |
|---|---|
| **2.1. Objetivo do Plano**. Este Plano tem como objetivo criar as condições e a estrutura necessários para as Devedoras e os Credores Sujeitos negociarem, estabelecerem e implementarem os termos da restruturação dos Créditos Sujeitos, mediante apresentação de um Plano Atualizado para homologação pelo Juízo da RE, em benefício dos Credores Sujeitos, das Devedoras e de todos os *stakeholders* das Devedoras. | **2.1.** Purpose of the Plan. This Plan is intended to create the conditions and framework necessary for the Debtors and the Subject Creditors to negotiate, establish and implement the terms of the restructuring of the Subject Claims, through the submission of an Updated Plan for confirmation by the EJ Court, for the benefit of the Subject Creditors, the Debtors, and all of the Debtor's stakeholders. |
| 2.1.1. Os Credores Signatários e/ou Credores Aderentes poderão rejeitar qualquer Plano Atualizado, a seu exclusivo e absoluto critério, sendo certo, contudo, que os respectivos Créditos Sujeitos restarão vinculados e serão reestruturados, novados e substituídos nos termos do Plano Atualizado (e não do Plano) aprovado por Credores Sujeitos titulares de mais da metade dos Créditos Sujeitos, observando os requisitos para apuração de quórum especificamente quanto ao Plano Atualizado, previstos na LFR (art. 163, §§ 2º e 3º), conforme **Anexo A**, nos termos da Sentença de Homologação do Plano Atualizado. | 2.1.1. The Signatory Creditors and/or Adhering Creditors may reject any Updated Plan, at their sole and absolute discretion. However, it is understood that the respective Subject Claims will remain bound and will be restructured, novated, and replaced under the terms of the Updated Plan (and not the Plan) approved by Subject Creditors holding more than half of the Subject Claims, specifically in relation to the Updated Plan, provided that quorum requirements established in the Bankruptcy Law (art. 163, §§ 2 and 3) is met, as per **Schedule A**, in accordance with the Confirmation Order. |
| **2.2. Créditos Sujeitos**. Os termos e condições deste Plano aplicam-se ao montante total dos Créditos Sujeitos, assim considerados em virtude de sua espécie, natureza e condições de pagamento e amortização semelhantes, cujos montantes agregados correspondem ao valor total descrito no **Anexo D,** conforme atualizado até a Data do Protocolo da RE. Para que não restem dúvidas, observadas as previsões contidas neste Plano, incluindo, mas não se limitando às, obrigações contidas nas Cláusulas 4.1, 7.2 e 7.3 do Plano, bem como a disposição contida no art. 163, § 8º, da | **2.2. Subject Claims**. The terms and conditions of this Plan apply to the total amount of Subject Claims, so characterized by virtue of their similar type, nature, and payment and amortization conditions, the aggregate amounts of which correspond to the total amounts described in **Schedule D**, as updated up to the EJ Filing Date. For the avoidance of doubt, subject to the provisions contained in this Plan, including, but not limited to, the obligations contained in Sections 4.1, 7.2 and 7.3 of the Plan, as well as the provision contained in Article 163, paragraph 8, of the |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 14

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

LFR, os Créditos Sujeitos somente serão novados ou substituídos se e quando houver a Sentença de Homologação do Plano Atualizado, a qual, por sua vez, somente ocorrerá com a assinatura do Plano Atualizado (e não do Plano) por Credores Sujeitos titulares de mais da metade dos Créditos Sujeitos, observando os requisitos para apuração de quórum previstos na LFR (art. 163, §§ 2º e 3º). Estão expressamente excluídos dos Créditos Sujeitos, sem prejuízo de quaisquer outros créditos que não sejam abrangidos como Créditos Sujeitos (i) créditos excluídos da Recuperação Extrajudicial pela LFR; (ii) créditos decorrentes de contratos de adiantamento a contrato de câmbio para exportação (ACC) ou garantidos por alienação / cessão fiduciária, nos termos do art. 49 §3º da LFR; (iii) Operações de Clearings, nos termos da Cláusula 2.2.2; em qualquer das hipóteses de (i) a (iii), independentemente se regidos pela legislação brasileira, pela Lei de Nova York ou por qualquer outra Lei Aplicável.

Brazilian Bankruptcy Law, the Subject Claims will only be novated or replaced if and when the Confirmation Order of the Updated Plan is issued, which, in turn, will only occur upon the execution of the Updated Plan (and not this Plan) by Subject Creditors holding more than one-half of the Subject Claims, subject to the quorum calculation requirements set forth in the Brazilian Bankruptcy Law (Article 163, §§ 2 and 3). The following claims are expressly excluded from the Subject Claims, without prejudice to any other that are not included as Subject Claims: (i) claims excluded under the Brazilian Bankruptcy Law; (ii) claims arising from advance on exchange contracts (ACC) or secured by fiduciary liens or fiduciary assignments, as provided for in Article 49, §3 of the Brazilian Bankruptcy Law; and (iii) any Clearing Transactions, pursuant to Clause 2.2.2; in each (i) through (iii), regardless of whether governed by Brazilian law, New York Law or any other Applicable Law.

2.2.1.  Para que não restem dúvidas, nos termos do art. 193-A da LFR, nada neste Plano afeta ou suspende, o exercício dos direitos de vencimento antecipado e de compensação no âmbito de operações compromissadas e/ou de derivativos conforme previstos nos respectivos contratos, de modo que essas operações poderão ser vencidas antecipadamente e os respectivos créditos e débitos recíprocos serem extintos por compensação até onde se compensarem, desde que assim previsto nos contratos celebrados entre as partes ou em regulamento, sendo certo que eventual crédito residual decorrentes de tais operações compromissadas e/ou de derivativos, após eventuais compensações, são considerados Créditos Sujeitos à presente Recuperação Extrajudicial; sendo certo, ainda, que as Devedoras poderão continuar cumprindo regularmente, nos termos e condições estabelecidos nos respectivos contratos, as operações compromissadas e/ou de derivativos que não forem vencidas

2.2.1.  For avoidance of doubt, pursuant to article 193-A of the Brazilian Bankruptcy Law, nothing in this Plan affects or stays the exercise of acceleration (early termination) and set-off rights in connection with repurchase and/or derivatives transactions as established in the respective contracts, such that those transactions may be early terminated and the respective reciprocal credits and debts off-set against one another to the maximum extent, provided that these rights are established in the respective agreements entered into between the parties or in applicable regulations; provided further that any residual credit related to the repurchase and/or derivatives transactions after taking into account any set-offs are considered Subject Claims to this Extrajudicial Reorganization, except if not terminated, in which case they shall continue to be performed in the ordinary course by the Debtors as contractually agreed, without being affected by the Extrajudicial Reorganization.

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| antecipadamente pelas contrapartes, as quais não serão afetadas pela Recuperação Extrajudicial | |
| 2.2.2.   Para que não restem dúvidas, nos termos do art. 193 da LFR, nada neste Plano afeta ou suspende, o exercício dos direitos, faculdades, proteções, prerrogativas, remédios e garantias de qualquer contraparte, corretora, membro ou agente de compensação, participante de liquidação, intermediário atuando em nome das Devedoras exclusivamente em relação à qualquer Operação de Clearings, incluindo, sem limitação, observados os termos, condições e limitações dos respectivos contratos: (i) o direito de exigir, ajustar, chamar, gerir ou liquidar margens, prêmios de margem e quaisquer outras garantias; (ii) o direito de limitar posições, recusar ordens, ajustar exposições ou impor requisitos operacionais; (iii) os direitos de declarar eventos de inadimplemento; (iv) os direitos de terminar, acelerar, close-out, liquidar, net, set-off, excutir garantias e exercer quaisquer remédios contratuais ou legais previstos nos respectivos contratos ou regulamentos das Clearings, observado que as compensações legais ou contratuais, excussão de garantias e utilização de margens estarão limitadas às Operações de Clearing e apenas para a satisfação dos respectivos Créditos Decorrentes de Operações em Câmaras de Compensação ou Liquidação; (v) o direito de exercer quaisquer mecanismos de netting, set-off, close-out netting, payment netting e quaisquer outros procedimentos de mitigação ou redução de risco, limitadas às Operações de Clearing e apenas para a satisfação dos respectivos Créditos Decorrentes de Operações em Câmaras de Compensação ou Liquidação; e (vi) todas as prerrogativas decorrentes de qualquer relação de clearing, brokerage, agency ou intermediação. Nenhuma disposição deste Plano opera como stay, suspensão, limitação ou qualquer forma de restrição ao exercício de tais direitos, os quais não se submetem a novação, permanecendo plenamente válidos, exigíveis e oponíveis nos termos dos instrumentos que os regem, exclusivamente para Operações de Clearings. | 2.2.2.   For the avoidance of doubt, pursuant to article 193 of the Brazilian Bankruptcy Law, nothing in this Plan affects or stays the exercise of the rights, powers, protections, prerogatives, remedies, and guarantees of any counterparty, broker, clearing member or agent, settlement participant, or intermediary acting on behalf of the Debtors exclusively in connection with any Clearing Transaction, including, without limitation, subject to the terms, conditions, and limitations of the relevant agreements: (i) the right to require, adjust, call, manage, or liquidate margins, margin premiums, and any other collateral; (ii) the right to limit positions, reject orders, adjust exposures, or impose operational requirements; (iii) the rights to declare events of default; (iv) the rights to terminate, accelerate, close out, liquidate, net, set off, enforce collateral, and exercise any contractual or legal remedies provided for in the relevant agreements or Clearing regulations, provided that statutory or contractual set-off, enforcement of collateral, and use of margins shall be limited to the Clearing Transactions and solely for satisfaction of the respective Claims Arising from Clearing or Settlement Operations; (v) the right to exercise any netting, set-off, close-out netting, payment netting, and any other risk mitigation or risk reduction procedures, limited to the Clearing Transactions and solely for satisfaction of the respective Claims Arising from Clearing or Settlement Operations; and (vi) all prerogatives arising from any clearing, brokerage, agency, or intermediation relationship. No provision of this Plan shall operate as a stay, suspension, limitation, or restriction of any kind on the exercise of such rights, which shall not be subject to novation and shall remain fully valid, enforceable, and opposable pursuant to the instruments governing them, exclusively with respect to Clearing Transactions. |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 16

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| 2.2.3.  Ficam proibidas medidas que impliquem em amortização, compensação, redução e/ou qualquer forma de apropriação de recursos das Devedoras em posse dos Credores Sujeitos para satisfação de qualquer Crédito Sujeito, inclusive dos créditos residuais decorrentes de operações compromissadas e/ou de derivativos, exceto pelas garantias e margens especificamente vinculadas às respectivas operações compromissadas e/ou de derivativos, nos termos dos respectivos contratos, conforme aplicável. | 2.2.3.  It is expressly prohibited any measures or actions implying or resulting in the amortization, set-off, netting or compensation, reduction and/or any form of appropriation of Debtor funds held by Subject Creditors to satisfy any Subject Claim, including residual credits arising from repurchase agreements and/or derivatives, except for guarantees and margins specifically linked to the respective repurchase and/or derivatives agreements, pursuant to the terms of the respective contracts, as applicable. |
| **2.3.    Manutenção das Obrigações Excluídas e Curso Normal dos Negócios.** Nada neste Plano deverá ser interpretado para afetar, restringir ou de qualquer forma obstar (i) obrigações assumidas pelas Devedoras com seus fornecedores e prestadores de serviços operacionais e correntes; (ii) obrigações assumidas no âmbito das câmaras ou prestadoras de serviços de compensação e de liquidação financeira, nos termos do art. 193 da LFR; (iii) as obrigações assumidas no contexto de operação de adiantamento a contrato de câmbio para exportação (ACCs) e demais operações não sujeitas à recuperação extrajudicial, na forma do art. 49, §3º e art. 161, §1º da LFR; (iv) as obrigações assumidas no contexto dos financiamentos estruturados envolvendo sociedades de proposito específico (SPE), que não Devedoras, incluindo Ethos Ergon Global Holdings Pte. Ltd., e Ethos Sustainable Solutions Pte. Ltd., bem como direitos e privilégios contra coobrigados, fiadores e obrigados de regresso, na forma do art. 49, §1º da LFR; ou (v) as obrigações de reembolso de honorários de assessores assumidas no contexto dos instrumentos originais de Créditos Sujeitos. | **2.3.    Maintenance of Excluded Obligations and Ordinary Course of Business.** Nothing in this Plan shall be interpreted as to affect, restrain or in any form prohibit (i) obligations undertaken by the Debtors with its suppliers and current operational service providers; (ii) obligations incurred in connection with clearing houses or providers of clearing and financial settlement services, pursuant to art. 193 of the Brazilian Bankruptcy Law; (iii) obligations incurred in connection with export foreign exchange advance transactions (ACCs) and other transactions not impaired by the extrajudicial reorganization pursuant to art. 49 §3rd and 161, §1st of the Brazilian Bankruptcy Law; (iv) the obligations incurred in connection with the structured financing arrangements involving specific purpose vehicles (SPV) that are not Debtors, including Ethos Ergon Global Holdings Pte. Ltd., and Ethos Sustainable Solutions Pte. Ltd., as well as rights and privileges against co-obligors, guarantors and parties liable in recourse, in accordance with Article 49 §3 of the Brazilian Bankruptcy Law; or (v) reimbursement obligations involving fees of advisors provided in the original instruments of Subject Claims. |
| **2.4.    Credores Signatários**. O presente Plano, desde a Data de Assinatura, conta com a adesão expressa dos Credores Signatários  que detêm mais de 1/3 (um terço) dos Créditos Sujeitos, observado o previsto no art. 43 e 163, § 3º, inciso II, da LFR, atingindo montante superior a 1/3 (um terço) do | **2.4.    Signatory Creditors**. This Plan, as from the Signing Date, has the express adherence by Signatory Creditors who hold more than a third (1/3) of the Subject Claims, pursuant to Articles 43 and 163, paragraph 3, inc. II, of the Brazilian Bankruptcy Law, as listed in **Schedules A and D**, |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 17

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

valor total dos Créditos Sujeitos, conforme listados nos **Anexos A** e **D**, nos termos do art. 163, § 7º, da LFR. Não obstante qualquer disposição em contrário neste Plano, nenhum Credor Signatário será considerado como tendo concordado ou aderido aos termos e condições do Plano no que se refere a quaisquer Créditos Sujeitos garantidos pela SACE, sem o consentimento expresso do respectivo Credor Signatário em relação ao respectivo Crédito Sujeito garantido pela SACE.

pursuant to Article 163, paragraph 7, of the Brazilian Bankruptcy Law. Notwithstanding anything to the contrary herein, no Signatory Creditor shall be deemed to have agreed to or adhered to the terms and conditions of the Plan with respect to any Subject Claims guaranteed by SACE, absent the express consent of such Signatory Creditor or Adhering Creditor specifically in relation to such SACE-guaranteed Subject Claim.

**2.5. Credores Aderentes**. Todos os Credores Sujeitos que não são Credores Signatários poderão aderir aos termos e condições estabelecidos neste Plano e no Plano Atualizado para os respectivos Créditos Sujeitos, de forma expressa, por sua livre manifestação de vontade, até a Data da Sentença de Homologação ou a Data de Resolução do Plano, o que ocorrer primeiro, desde que manifestem sua intenção de aderir ao Plano por escrito, na forma do modelo de termo de adesão e de declaração de propriedade constantes dos **Anexos 2.5** e **2.5.1** (o "Termo de Adesão") ou outra correspondência escrita de conteúdo substancialmente similar (um "Credor Aderente" e, coletivamente, os "Credores Aderentes").

**2.5. Adhesion**. All Subject Creditors that are not Signatory Creditors may adhere to the terms and conditions set forth in this Plan and the Updated Plan for their respective Subject Claims, expressly, by their free expression of shall, until the Confirmation Order Date or the Plan Termination Date, whichever occurs first, provided that they expressly confirm their intention to adhere to the Plan in writing, in accordance with the adhesion form and the form of certificate of holder attached hereto in **Schedule 2.5** and **2.5.1** (the "Adhesion Form") or another written correspondence of substantially similar content (each an "Adhering Creditor" and, collectively, the "Adhering Creditors").

2.5.1. Os Credores Sujeitos que não são Credores Signatários, mas que desejarem aderir aos seus termos e condições, deverão apresentar: *(i)* o Termo de Adesão e declarar que não possuem qualquer posição acionária, direta ou indireta, que seja representativa de mais de 10% do capital social das Devedoras ou de suas acionistas Controladoras; *(ii)* documentos que comprovem a titularidade de seus Créditos Sujeitos; e *(iii)* qualquer outro documento que possa ser exigido pelo Juízo da RE, conforme definido abaixo, na análise da adesão dos Detentores de Notas.

2.5.1. The Subject Creditors that are not Signatory Creditors, but wish to adhere to its terms and conditions, must submit: *(i)* the Adhesion Form, and declare that they are not directly holders of equity directly or indirectly representing more than 10% of the equity interests of the Debtors or of its Controlling shareholders; *(ii)* documents that certify the property of their Subject Claims; and *(iii)* any other document that may be required by the one of the ER Court, as defined below, in the analysis of the adhesion of Noteholders.

2.5.2. Não obstante qualquer disposição em contrário neste Plano, nenhum Credor Aderente será considerado como tendo concordado ou aderido aos termos e condições do Plano no que se refere a quaisquer Créditos Sujeitos garantidos pela SACE, sem o consentimento expresso do

2.5.2. Notwithstanding anything to the contrary herein, no Adhering Creditor shall be deemed to have agreed to or adhered to the terms and conditions of the Plan with respect to any Subject Claims guaranteed by SACE, absent the express consent of such Signatory Creditor or Adhering

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 18

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

respectivo Credor Signatário ou Credor Aderente em relação ao respectivo Crédito Sujeito garantido pela SACE.

**2.6.    Vinculação ao Plano**. Este Plano, seus Anexos, e todos os termos e condições, bem como todos os atos praticados pelas Partes, será válido e vinculante a partir *(i)* da Data da Assinatura, para as Devedoras e todos os Credores Signatários; e *(ii)* da data em que cada Credor Aderente apresentar seu respectivo Termo de Adesão ou outra correspondência escrita de conteúdo similar ao Juízo da RE nos termos da Cláusula 2.5 para os Credores Aderentes, sendo certo que todos os Credores Sujeitos, independentemente de terem subscrito o Plano ou não, estarão sujeitos ao disposto nos arts. 6º e 163, §§ 7º e 8º, da LFR.

Não obstante qualquer disposição em contrário contida neste Plano, a assinatura deste Plano e/ou a entrega de um Termo de Adesão pelos Credores Signatários ou Credores Aderentes não será considerada como consentimento ou aceitação de qualquer Plano Atualizado. Cada Credor Sujeito mantém o direito de aceitar ou rejeitar qualquer Plano Atualizado, a seu exclusivo critério, observado o disposto na Cláusula 2.1.1.

**2.7.    Meios de Reestruturação**. As atividades e obrigações das Devedoras serão reestruturadas, mediante assinatura e homologação do Plano Atualizado, conforme previsto neste Plano, dentre outras por meio de quaisquer das medidas descritas abaixo:

(i)    **Emissão de Novas Dívidas**. O Plano Atualizado poderá estabelecer que os Créditos Sujeitos sejam substituídos por novos instrumentos de dívidas, a serem emitidos nos termos da Cláusula 4.2 deste Plano;

(ii)    **Capitalização**. No contexto da otimização da estrutura de capital do Grupo Raízen, o Plano Atualizado poderá estabelecer estratégias de capitalização, contemplando

Creditor specifically in relation to such SACE-guaranteed Subject Claim.

**2.6.    Enforceability of the Plan**. This Plan, its Schedules, and all of its terms and conditions, as well as all acts performed by the Parties hereto, shall be valid and binding as of *(i)* the Signing Date, for the Debtors and all Signatory Creditors; and *(ii)* for each Adhering Creditor, the date it submits its respective Adhesion Form or another written correspondence of substantially similar content before the ER Court in accordance with Section 2.5, being understood that all Subject Creditors, regardless of having adhered to the Plan or not, shall be subject to the Articles 6 and 163, paragraphs 7 and 8, of the Brazilian Bankruptcy Law. Notwithstanding anything in this Plan to the contrary, the execution and entry of this Plan and/or the delivery of an Accession Term by the Signatory Creditors or Adhering Creditors shall not be deemed to constitute consent to or acceptance of any Updated Plan. Each Subject Creditor retains the right to accept or reject any Updated Plan at its sole discretion, subject to Section 2.1.1.

**2.7.    Restructuring Means**. The activities and obligations of the Debtors will be restructured, upon execution and confirmation of the Updated Plan, as provided in this Plan, among others through any of the measures described below:

(i) **Issuance of New Debt**. The Updated Plan may establish that the Subject Claims shall be replaced by new debt instruments, which shall be issued pursuant to Section 4.2 of this Plan and in accordance with the Updated Plan;

(ii) **Capitalization**. Within the context of the restructuring of the Raízen Group's capital structure, the Updated Plan may establish capitalization strategies, including an option to convert Subject Claims into equity at Raízen, as well as cash capital increases of the

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

opção de conversão de Créditos Sujeitos em capital social da Raízen, bem como eventuais capitalizações com novos recursos financeiros dos acionistas e/ou terceiros nos termos da Cláusula 4.3 deste Plano;

**(iii) Reorganizações societárias**. O Plano Atualizado poderá prever que as atividades das Devedoras sejam reestruturadas por meio de reorganizações societárias, incluindo cisões, fusões, incorporações, incorporações de ações, *drop downs* ou quaisquer outras formas de reorganização societária, nos termos da Cláusula 4.4 deste Plano.

**2.8.    Implementação do Plano no Exterior**. Após a submissão deste Plano perante o Juízo da RE, independentemente de qualquer ato ou autorização dos Credores Sujeitos, as Devedoras deverão, de boa-fé e de maneira consistente com este Plano, adotar todas as medidas necessárias para obter decisão fazendo-se cumprir o Plano (e qualquer Plano Atualizado sue conceder assistência adicional para continuidade do Procedimento de *Chapter 15*, estando autorizadas a adotar todas as medidas necessárias, por meio do qual deverão buscar uma ou mais decisões do Tribunal de Falências dos Estados Unidos do Distrito Sul de Nova York (a "Corte Norte-Americana de Falências"), incluindo, entre outros remédios, *(i)* reconhecimento da Recuperação Extrajudicial como processo estrangeiro principal ou não principal para sociedades, nos termos do *Bankruptcy Code* dos EUA (a "Decisão Norte-Americana de Reconhecimento da RE"); *(ii)* reconhecimento, aplicação e concessão de pleno vigor e eficácia ao Plano Atualizado dentro da jurisdição dos Estados Unidos da América (a "Decisão de Confirmação *Chapter 15*"); e *(iii)* autorização e direcionamento das respectivas partes a tomarem todas e quaisquer medidas necessárias para dar eficácia aos termos do Plano

shareholders and/or third parties, pursuant to Section 4.3 of this Plan;

**(iii) Corporate reorganizations**. The Updated Plan may provide that the activities of the Debtors may be restructured through corporate reorganizations, including spin-offs, merger, incorporation, equity incorporation, drop downs or any other corporate reorganization structure, pursuant to Section 4.4. of this Plan.

**2.8.    Implementation of the Plan Abroad**. Following submission of this Plan before the EJ Court, regardless of any act or authorization of the Subject Creditors, the Debtors shall, in good faith and consistent with this Plan, adopt all necessary measures to obtain orders enforcing the Plan (and any subsequent Updated Plan) and granting additional assistance through the continuation of the Chapter 15 Proceeding, being authorized to adopt all necessary measures to seek the entry of one or more orders from the United States Bankruptcy Court for the Southern District of New York (the "U.S. Bankruptcy Court"), including, among other relief, *(i)* recognizing the Extrajudicial Restructuring as a foreign main or nonmain proceeding of entities under the U.S. Bankruptcy Code (the "U.S. Recognition Order"); *(ii)* recognizing, enforcing and giving full force and effect to the Updated Plan within the territorial jurisdiction of the United States of America (the "U.S. Enforcement Order"); and *(iii)* authorizing and directing the relevant parties to take any and all actions necessary to give effect to the terms of the Updated Plan, as confirmed by the EJ Court. The Debtors may also initiate and/or proceed with other judicial procedures, extrajudicial or administrative proceedings, whether related to

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

Atualizado, conforme homologado pelo Juízo da RE. As Devedoras também poderão iniciar e/ou dar prosseguimento a outros procedimentos judiciais, extrajudiciais ou administrativos, relacionados ou não à insolvência, em quaisquer outras jurisdições que não a República Federativa do Brasil e os Estados Unidos da América em apoio de e/ou conforme necessário para a implementação do processo de Recuperação Extrajudicial, e desde que os procedimentos iniciados no exterior não alterem os termos e condições deste Plano e/ou limitem a sua execução, direta ou indiretamente, que seguirá independentemente do processo de reconhecimento em trâmite perante outra jurisdição que não o Brasil. Os Credores Signatários e Credores Aderentes concordam em adotar os atos necessários para e não praticar atos contrários à implementação deste Plano no exterior, incluindo opor-se ou auxiliar qualquer parte a opor-se às medidas requeridas nos procedimentos de reconhecimento nos Estados Unidos da América ou em qualquer outra jurisdição; conforme necessário e desde que as medidas pleiteadas e atos de implementação se limitem à implementação das operações previstas neste Plano e em qualquer Plano Atualizado subsequente.

insolvency or otherwise, in any other jurisdictions other than the Federative Republic of Brazil or the United States of America in support of and/or in furtherance of the implementation of the Extrajudicial Reorganization proceedings; provided that the proceedings initiated abroad shall not change the terms and conditions of this Plan and/or limit its execution, directly or indirectly, which shall follow regardless of the recognition process in progress before a jurisdiction other than Brazil. The Signatory Creditors and the Adhering Creditors agree to adopt the necessary acts to and abstain from promoting any actions contrary to or inconsistent with the implementation of this Plan abroad, including objecting to or assisting any party in objecting to relief sought in the recognition proceedings in the United States of America or any other jurisdiction; as necessary and provided that the relief sought and implementation measures are limited to implementing the transactions provided for in this Plan and in any subsequent Updated Plan.

**2.9.    Reserva de Direitos.** Até a integral implementação do Plano Atualizado ou verificação da Data de Resolução do Plano, se aplicável, as Partes concordam irrevogavelmente que nada neste Plano deverá impedir os Credores Signatários (ou Credores Aderentes, conforme aplicável) de protegerem e preservarem seus direitos, prerrogativas e interesses, em qualquer jurisdição, por qualquer meio apropriado e razoável que se fizer necessário, inclusive pelo comparecimento ou pela defesa em qualquer procedimento judicial, bem como pela contestação ou resposta no âmbito de impugnações apresentadas por quaisquer partes, na medida em que tais atos não sejam incompatíveis ou inconsistentes com este Plano.

**2.9.    Reservation of Rights.** Until the full implementation of the Updated Plan or the occurrence of the Plan Termination Date, if applicable, the Parties irrevocably agree that nothing in this Plan shall prevent any Signatory Creditor (or Adhering Creditor as the case may be) from protecting and preserving its rights, remedies, and interests, in any jurisdiction, by any reasonable and appropriate means necessary, including by appearing in, or defending against, any judicial proceedings, as well as objecting and/or responding to any challenges by any parties, to the extent not incompatible or inconsistent with this Plan.

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 21

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

## 3. PROCEDIMENTO PARA ESTABELECIMENTO DOS TERMOS DA REESTRUTURAÇÃO

**3.1.    Reuniões de Negociação**. As Devedoras e os Credores Sujeitos que assim desejarem deverão se reunir, conforme Cláusula 3.1.1, para *(i.1)* analisar os índices de alavancagem e necessidades operacionais do Grupo Raízen com o objetivo de estabelecer, de comum acordo com as Devedoras, os parâmetros gerais para solucionar o endividamento e necessidade de capitalização do Grupo Raízen; e *(i.2)* a partir do diagnóstico obtido pelas Devedoras e Credores Sujeitos, nos termos do item (i.1) acima, negociar os termos da reestruturação dos Créditos Sujeitos, incluindo novos montantes, juros, vencimentos e demais condições e encargos que respeitem a capacidade de geração de receita das Devedoras, nos termos do item (i.1) supra, observados os meios de reestruturação elencados na Cláusula 2.7.

3.1.1.    Reuniões entre Devedoras e Credores Sujeitos. As Devedoras e os Credores Sujeitos, de forma individual ou coletiva, se reunirão na forma e no modo combinado entre as partes, com o objetivo de negociar os termos da reestruturação dos Créditos Sujeitos, que será refletido em uma nova versão atualizada do Plano ("Plano Atualizado"). As reuniões deverão ser agendadas com razoável antecedência, bem como deverá ser concedida a oportunidade de participação a todos os Credores Sujeitos.

3.1.2.    Resultado das Negociações. Nas reuniões de negociação serão estabelecidos, entre outros termos: *(i)* os termos e condições das Novas Dívidas que venham eventualmente a ser emitidas, se houver, nos termos da Cláusula 4.2.1; *(ii)* os termos e condições de eventual Capitalização dos Créditos Sujeitos, se houver, nos termos da Cláusula 4.3.1; *(iii)* os termos e condições de eventuais alienações de ativo, de operações de financiamento ou de segregação de ativos, nos termos da Cláusula 4.4; e *(iv)* os termos finais do

## 3. RESTRUCTURING TERMS' DEFINITION PROCEEDING

**3.1.    Negotiation Meetings.** The Debtors and the Subject Creditors, at their discretion, shall meet, as set forth in Section 3.1.1, to *(i.1)* analyze Raízen Group's leverage ratios and operational needs in order to establish, in agreement with the Debtors, the general parameters for addressing Raízen Group's indebtedness and capitalization needs; and *(i.2)* based on the diagnosis obtained by the Debtors and Subject Creditors, as set forth in Section (i.1) above, establish the terms of the restructuring of the Subject Claims, including new amounts, interest, maturities, and other conditions and charges that respect the Debtors' revenue generation capacity, pursuant to item (i.1) above, observing the restructuring means set forth in Section 2.7.

3.1.1.    Meetings between Debtors and Subject Creditors. The Debtors and the Subject Creditors, individually or jointly, shall meet in the manner and form agreed upon by the parties, with the objective of finalizing the terms of the restructuring of the Subject Claims, which shall be reflected in a new updated version of the Plan ("Updated Plan"). The meetings shall be scheduled with reasonable advance notice, and all Subject Creditors should be given opportunity to participate.

3.1.2.    Outcome of the Negotiations. The following terms, among others, will be established during the negotiation meetings: *(i)* the terms and conditions of the New Debts that may eventually be issued, if any, in accordance with Section 4.2.1; *(ii)* the terms and conditions of the possible Capitalization of Subject Claims, if any, in accordance with Section 4.3.1; *(iii)* the terms and conditions of the possible operation of sale of assets, of financing or segregation of assets, pursuant to Section 4.4; and *(iv)* the final terms of

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 22

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

Plano Atualizado, bem como eventuais matérias que sejam necessárias para implementar a Recuperação Extrajudicial e o Plano Atualizado.

the Updated Plan, as well as any matters that may be necessary to implement the Extrajudicial Reorganization and the Updated Plan.

3.1.3.   Monitoramento dos Termos de Adesão**.** As Devedoras assumem o compromisso de disponibilizar, mediante solicitação escrita de qualquer Credor Sujeito, a cada 15 Dias Corridos após a Data De Protocolo da RE, relatório circunstanciado acerca da evolução dos Termos de Adesão ao Plano ou ao Plano Atualizado, o qual deverá conter, no mínimo: (i) a identificação individualizada de cada Credor Aderente; (ii) o valor do Crédito Sujeito de cada Credor Aderente; (iii) o percentual de quórum atingido em relação ao total de Créditos Sujeitos; e (iv) a documentação comprobatória pertinente, incluindo, mas não se limitando a, cópia dos Termos de Adesão devidamente firmados pelos respectivos Credores Aderentes, acompanhados de prova de poderes dos signatários, quando aplicável

3.1.3.   Monitoring of the Adhesion Forms. The Debtors undertake to periodically submit, in the records of the Extrajudicial Reorganization proceeding, every 15 Calendar Days following the ER Filing Date, a detailed report regarding the progress of the Adhesion Forms to the Plan or the Updated Plan, which report shall contain, at a minimum: (i) the individual identification of each Adhering Creditor; (ii) the amount of the Subject Claim held by each Adhering Creditor; (iii) the percentage of quorum achieved in relation to the total Subject Claims; and (iv) the relevant supporting documentation, including, but not limited to, copies of the Adhesion Forms duly executed by the respective Adhering Creditors, together with evidence of the signatories' authority, where applicable.

3.1.4.   <u>Apoio ao Plano Atualizado e Direito de Recusa.</u> Uma vez apresentado o Plano Atualizado, cada Credor Sujeito deverá, de forma independente, analisar as disposições e, caso esteja de acordo com todos os seus termos, apresentar novo termo de adesão ao Plano Atualizado, independentemente de já terem assinado ou aderido ao Plano e, para evitar dúvidas, nenhum Credor Sujeito (incluindo qualquer Credor Signatário ou Credor Aderente) será considerado como tendo aceitado, nem estará obrigado a aceitar, o Plano Atualizado na ausência de manifestação expressa de aceitação nesse sentido, mantendo o direito de não apoiar qualquer Plano Atualizado, sem qualquer obrigação de apresentar justificativa para tanto, observado o disposto na Cláusula 2.1.1. Ao final do prazo previsto no art. 163, §7º da LFR, o Plano Atualizado deverá contar com subscrição e adesão expressa de Credores Sujeitos titulares de Créditos Sujeitos que, em conjunto, representem no mínimo, a maioria dos Créditos Sujeitos, nos termos do caput do art. 163

3.1.4.   <u>Updated Plan Support and Right to Refuse.</u> Once the Updated Plan has been presented, each Subject Creditors shall independently analyze the terms and conditions and, if such Subject Creditor agrees to all its terms, submit their acceptance of the Updated Plan by means of a new adhesion term, regardless of whether they have already executed or adhered to this Plan, and for the avoidance of doubt, no Subject Creditor (including no Signatory or Adherent Creditor) shall be deemed or required to accept the Updated Plan absent an express manifestation of acceptance therefore, and each Signatory Creditor and Adhering Creditor retains the absolute right not to support any Updated Plan, without any obligation to provide justification, subject to Section 2.1.1. By the end of the period set forth in Article 163, paragraph 7, of the Brazilian Bankruptcy Law, the Updated Plan shall have the express subscription and acceptance of Subject Creditors holding Subject Claims that, together, represent at least the majority of the Subject Claims, as provided for in the caput of

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 23

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

da LFR. Para que não restem dúvidas, a adesão dos Credores Signatários e/ou Credores Aderentes a este Plano não implica qualquer tipo de anuência, aprovação ou consentimento prévio por parte dos Credores Signatários e/ou Credores Aderentes com relação ao Plano Atualizado, de modo que a homologação do Plano Atualizado dependerá de aprovação expressa do Plano Atualizado pela maioria dos Credores Sujeitos, nos termos do caput do art. 163 da LFR, podendo cada Credor Signatário e Credor Aderente, individualmente e a seu exclusivo critério, aprovar ou não o Plano Atualizado, observado o disposto na Cláusula 2.1.1.

Article 163 of the Brazilian Bankruptcy Law. For the avoidance of doubt, adherence by the Signatory Creditors and/or Adhering Creditors to this Plan does not imply any type of agreement, approval, or prior consent on the part of the Signatory Creditors and/or Adhering Creditors with respect to the Updated Plan, such that the confirmation of the Updated Plan will depend on the express approval of the Updated Plan by the majority of the Subject Creditors, pursuant to the head provision of Article 163 of the Brazilian Bankruptcy Law, and each Signatory Creditor and Adhering Creditor may, individually, at its sole discretion, approve or not the Updated Plan, subject to Section 2.1.1.

3.1.5. Caso as Devedoras não obtenham adesões suficientes ao Plano Atualizado da maioria dos Créditos Sujeitos em até 90 (noventa) Dias Corridos contados da Data do Protocolo da RE, o presente Plano será rescindido bem como será cancelada a adesão dos Credores Aderentes. As Devedoras deverão apresentar manifestação notificando o Juízo da RE para resolução do Plano e encerramento do processo em curso ou conversão em um pedido de recuperação judicial, nos termos do art. 163, §7º, da LFR. Todos os direitos das Devedoras, dos Credores Signatários e dos Credores Aderentes são preservados e/ou reestabelecidos, conforme aplicável, com um Evento de Resolução e extinção deste procedimento.

3.1.5. If the Debtors do not obtain sufficient adhesions in an Updated Plan from the majority of the Subject Claims within 90 (ninety) Calendar Days from the Filing Date, this Plan will be terminated and the adherence of Adhering Creditors shall be cancelled. The Debtors shall submit a statement notifying the EJ Court to terminate the Plan and ongoing proceedings or convert them into a request for judicial reorganization, pursuant to Article 163, paragraph 7, of the Brazilian Bankruptcy Law. All of the rights of the Debtors, Signatory Creditors and Adherent Creditors shall be preserved and/or reinstated as applicable upon a Termination Event and termination of the ongoing proceedings.

**3.2.**   As Devedoras negociarão de boa-fé com os Credores Sujeitos os termos e condições do Plano Atualizado.

**3.2.**   The Debtors will negotiate in good faith with the Subject Creditors the terms and conditions of the Updated Plan.

**3.3.**   As Devedoras continuarão operando regularmente no curso normal dos negócios, devendo as Devedoras abster-se de onerar seus ativos e/ou incorrer em novas dívidas, salvo (i) se realizado no curso normal dos negócios do Grupo Raízen, ou (ii) mediante autorização por escrito de Credores Sujeitos representando ao menos a maioria dos Créditos Sujeitos.

**3.3.**   The Debtors will continue operating regularly in the normal course of business, and shall not encumber their assets nor incur new debts, except (i) in the ordinary course of the Raízen Group's business; or (ii) with the written authorization of Subject Creditors representing at least the majority of Subject Claims.

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| 4. REESTRUTURAÇÃO DO GRUPO RAÍZEN E SEUS CRÉDITOS SUJEITOS | 4. RESTRUCTURING OF THE RAÍZEN GROUP AND ITS SUBJECT CLAIMS |
|---|---|
| **4.1.    Suspensão dos Pagamentos dos Créditos Sujeitos**. Nos termos dos arts. 6º e 163, §§ 7º e 8º, da LFR, os Credores Sujeitos não poderão promover qualquer medida para satisfação de Créditos Sujeitos após a Data do Protocolo da RE, e até a Data da Sentença de Homologação do Plano Atualizado ou a Data de Resolução do Plano, o que ocorrer primeiro, devendo se abster, seja no Brasil ou em outra jurisdição, de ajuizar ou prosseguir execuções, bem como praticar atos que alterem sua posição creditória existente na Data do Protocolo da RE, qualquer ato de cobrança, exercício de direito de compensação de crédito, previsto em lei ou em contrato, retenção, arresto, penhora, sequestro, busca e apreensão e/ou constrição judicial ou extrajudicial sobre os bens das Devedoras, de suas investidas ou de suas Controladas, observado o quanto disposto na Cláusula 2.3. | **4.1.    Suspensions of Payment of Subject Claims**. Pursuant to articles 6 and 163, paragraphs 7 and 8, of the Brazilian Bankruptcy Law, the Subject Creditors shall not promote any enforcement actions seeking the satisfaction of their respective Subject Claims after the EJ Filing Date and until the EJ Plan Termination Date, having to refrain from, whether in Brazil or in any other jurisdiction, filing or continuing enforcement actions, as well as any form of collection, set-off or compensation of claims, retention, seizure, attachment, search and seizure, and/or judicial or extrajudicial constraint on the  assets of the Debtors, their investees, or their Subsidiaries, subject to the provisions of Clause 2.3. |
| **4.2.    Emissão de Novas Dívidas**. As Devedoras emitirão novos instrumentos de dívidas e/ou aditarão os instrumentos de dívida existentes, em termos a serem estabelecidos durante as negociações e refletidos no Plano Atualizado, os quais, caso emitidos ou aditados, serão de titularidade dos Credores Sujeitos, em substituição aos termos originais contratados para os respectivos Créditos Sujeitos, em proporções a serem estabelecidas no âmbito do Plano Atualizado, após a Data da Sentença de Homologação do Plano ("Novas Dívidas"). | **4.2.    Issuance of New Debt.** The Debtors shall issue new debt instruments and/or arrange for the amendment of existing debt instruments, under terms to be established during the negotiations, which shall be held by the Subject Creditors, replacing the original terms contracted for the respective Subject Claims, in proportions to be negotiated in the context of the Updated Plan, following the ER Confirmation Order Date ("New Debts"). |
| 4.2.1.    Termos e Condições das Novas Dívidas. Os termos e condições das Novas Dívidas a serem apresentados no Plano Atualizado deverão refletir, no mínimo: | 4.2.1.    Terms and Conditions of the New Debts. The terms and conditions of the New Debts shall include, at a minimum: |
| *(i)* o valor total das emissões de Novas Dívidas; | *(i)* the total value of the New Debts issuances; |
| *(ii)* as regras de subscrição por Créditos Sujeitos; | *(ii)* subscription rules for Subject Claims; |
| | *(iii)* the payment dates and the respective schedules; |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 25

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

*(iii)* as datas de pagamento e o regime completo de vencimentos;

*(iv)* índices de correção e/ou remuneração;

*(v)* obrigações não-financeiras, declarações, autorizações, *convenants* e demais condições relevantes para os instrumentos;

*(vi)* quaisquer garantias reais ou pessoais atreladas às Novas Dívidas; e

*(vii)* a natureza dos instrumentos a serem oferecidos, incluindo eventuais opções alternativas.

4.2.2. <u>Moeda</u>. As Novas Dívidas poderão ser emitidas em Real, Dólares ou Euros de modo que cada Credor Sujeito poderá conservar a variação cambial dos Títulos Existentes, nos termos do art. 163, §5º, da LFR.

**4.3.    Capitalização.** As Devedoras e os Credores Sujeitos deverão avaliar alternativas para otimização da estrutura de capital do Grupo Raízen, considerando (i) as projeções de fluxo de caixa e capacidade de geração de receita operacional; (ii) as condições de mercado e rentabilidade do setor; (iii) as demais obrigações prioritárias, líquidas e ilíquidas de pagamento; e (iv) oportunidades de investimentos em novos recursos e conversão de créditos em capital, com o objetivo de readequar a estrutura de capital do Grupo Raízen ("<u>Capitalização</u>"), o que deverá ser objeto de discussão em reunião a ser realizada nos termos da Cláusula 3.1.1 acima. Para fins de clareza, nenhum Credor Sujeito será obrigado a aportar novos recursos ou qualquer outra forma de financiamento sem o seu consentimento expresso.

4.3.1. <u>Termos e Condições da Eventual Capitalização</u>. O Plano Atualizado deverá, no mínimo, conter *(i)* forma do aumento de capital; *(ii)* tratamento do direito de preferência; *(iii)* quantidade e natureza das ações da Raízen que

---

*(iv)* indexation and/or interest rates;

*(v)* non-financial obligation, representations, authorizations, covenants and additional relevant conditions for the instruments;

*(vi)* any guarantees or collateral to support the New Debt; and

*(vii)* the nature of the instruments to be offered, including alternative options, if applicable.

4.2.2. <u>Currency</u>. The New Debts may be issued in Reais, Dollars or Euros, so each Subject Creditor may preserve the exchange rate variation of the Existing Titles, as set forth in Article 163, paragraph 5, of the Brazilian Bankruptcy Law.

**4.3.    Contribution.** The Debtors and the Subject Creditors shall evaluate alternatives to optimize the capital structure of the Raízen Group, considering (i) the cash flow projections and the operational revenue generation capacity; (ii) the market conditions and industry indexes; (iii) other priority liquid and illiquid payment obligations; and (iv) investment opportunities with new money and conversion of claims into equity, to allow the restructuring of Raízen Group's capital structure ("<u>Contribution</u>"), which should be discussed within the meetings referred in Section 3.1.1 above. For avoidance of doubt, no Subject Creditor shall be required to provide any new money or other financing without the express consent of such Subject Creditor.

4.3.1. <u>Terms and Conditions for Possible Capitalization</u>. The Updated Plan shall, at a minimum, contain *(i)* the form of capital increase; *(ii)* the treatment of preemptive rights; *(iii)* the number and nature of the Raízen shares to be

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 26

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

serão emitidas; *(iv)* proposta de regramento para estabelecimento de preço de emissão; *(v)* indicação das anuências necessárias, o que deverá ser objeto de discussão em reunião a ser realizada nos termos da Cláusula 3.1.1 acima.

issued; and *(iv)* a proposed rule for establishing the issuance price; *(v)* indication of the necessary authorizations, which should be discussed within the meetings referred in Section 3.1.1 above.

**4.4.    Reorganizações Societárias.** Durante as negociações, serão avaliadas operações de reorganização societária, incluindo cisões, fusões, incorporações, incorporações de ações, *drop downs* ou quaisquer outras formas de reorganização societária, bem como alienações ou disposições de ativos com o objetivo de fortalecer a atratividade de investimentos nas Devedoras, devendo ser especificado no Plano Atualizado.

**4.4.    Corporate Reorganizations.** During the negotiation, the operations related to corporate reorganizations, including spin-offs, merger, consolidation, merger of shares, drop downs or any other corporate reorganization, as well as the transfer or disposition of assets shall be evaluated with the purpose to increase the attractiveness of investments in the Debtors, which shall be detailed under the Updated Plan.

4.4.1. Governança e Processo de Aprovação de Reorganizações Societárias. A avaliação, negociação e implementação de operações de reorganizações societárias no Plano Atualizado: (i) serão discutidas nas reuniões previstas na Cláusula 3.1.1 acima, com apresentação às Partes das informações necessárias, incluindo análises econômico-financeiras, laudos de avaliação existentes, pareceres e minutas contratuais relevantes; e (ii) deverão ser incluídas no Plano Atualizado para aprovação pelos Credores Sujeitos, observado o quórum previsto no art. 163, caput, da LFR, excluídos os Créditos Intercompany para fins de cálculo de quórum.

4.4.1. Governance and Approval Process of Corporate Reorganizations. The evaluation, negotiation, and implementation of corporate reorganizations in the Updated Plan: (i) shall be discussed in the meetings provided for in Clause 3.1.1 above, with the presentation to the Parties of the necessary information, including financial and economic analyses, existing valuation reports, opinions, and relevant draft agreements; (ii) shall be included in the Updated Plan for approval by the Subject Creditors, respected the quorum provided under Article 163, caput, of the Brazilian Bankruptcy Law, excluding Intercompany Claims for quorum calculation purposes.

4.4.2. Compatibilidade. Nenhum evento posterior a este Plano poderá (i) alterar os direitos dos Credores Sujeitos previstos na versão vigente do Plano, salvo mediante aprovação em novo Plano Atualizado; (ii) conferir tratamento privilegiado a qualquer credor que não seja titular de Crédito Sujeito, salvo se permitido por este Plano ou pelo Plano Atualizado, ou que viole as previsões da LFR; e (iii) afetar a continuidade das atividades essenciais das Devedoras sem a aprovação prevista na Cláusula 4.4.1.

4.4.2. Consistency. No event subsequent to this Plan shall (i) modify the rights of the Subject Creditors provided for in the then-current version of the Plan, unless approved under a new Updated Plan; (ii) grant preferential treatment to any creditor that is not the holder of a Subject Claim, unless allowed in this Plan or in the Updated Plan, or in form that violates the provisions set forth in the Brazilian Bankruptcy Law; or (iii) affect the continuity of the Debtors' essential activities without the approval required under Clause 4.4.1.

**4.5.    Pagamento de Créditos Intercompany.** Os Créditos Intercompany serão reestruturados,

**4.5.    Payment of Intercompany Claims.** The Intercompany Claims shall be restructured, being

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 27

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

não podendo ser cobrados, executados ou de qualquer forma demandados ou tratados com qualquer tipo de privilégio. O pagamento dos Créditos Intercompany ficará subordinado integralmente ao pagamento integral dos demais Créditos Sujeitos, assegurando-se a prioridade destes últimos na ordem de pagamento.

certain that those claims shall not be charged, executed or in any form collected or treated with any type of privilege. Payment of the Intercompany Claims shall be fully subordinated to the full payment of all other Subject Claims, ensuring that the latter have priority in the payment hierarchy.

**4.6. Proibição da Distribuição de Dividendos**. Desde a Data de Protocolo da RE até a Data da Sentença de Homologação do Plano, as Devedoras não deverão distribuir, pagar ou declarar quaisquer lucros, juros sobre capital próprio, dividendos ou distribuições sobre quaisquer participações societárias, a sócios ou acionistas, seja em dinheiro, bens ou de outra forma, em aplicação análoga do artigo 6-A da LFR.

**4.6. Prohibition on the Distribution of Dividends**. From the ER Filing Date until the date of the ER Confirmation Order Date, the Debtors shall not distribute, pay, or declare any profits, interest on equity, dividends, or other distributions in respect of any equity interests to partners or shareholders, whether in cash, in kind, or otherwise, by analogy to Article 6-A of the Brazilian Bankruptcy Law.

## 5. DECLARAÇÕES E GARANTIAS

## 5. REPRESENTATIONS AND WARRANTIES

**5.1. Declarações dos Credores Signatários e Aderentes**. Cada um dos Credores Signatários e Aderentes declara e garante às Devedoras, isoladamente e não solidariamente, que:

**5.1. Representations of the Signatory or Adherent Creditors**. Each of the Signatory or Adherent Creditors hereby represents and warrants to the Debtors, severally, and not jointly, that:

5.1.1. Tal Credor Signatário ou Aderente, na medida aplicável, tem pleno poder e autoridade para aderir a este Plano;

5.1.1. Such Signatory or Adherent Creditor, to the extent applicable, has the full power and authority to adhere to this Plan;

5.1.2. Tal Credor Signatário ou Aderente foi assessorado por profissionais que reputou capazes para avaliar os termos e condições deste Plano e seus anexos.

5.1.2. Such Signatory Creditor or Adherent Creditor acknowledges that it was advised by professionals that were reputed capable of evaluating the terms and conditions of this Plan and its schedules.

**5.2. Declarações e Garantias das Devedoras.** As Devedoras declaram e garantem aos Credores Sujeitos que:

**5.2. Debtors Representations, and Warranties**. The Debtors represent and warrant to the Subject Creditors, that:

5.2.1. Todas as Devedoras são sociedades devidamente constituídas e existentes nos termos das respectivas Leis e as Devedoras são sociedades devidamente autorizadas a conduzir os seus negócios e manter os seus ativos;

5.2.1. All Debtors are companies duly organized and existing under the respective governing Laws and the Debtors are companies duly authorized to conduct their business and maintain their assets;

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 28

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

5.2.2. Todas as Devedoras possuem todas as autorizações necessárias para assumir suas respectivas obrigações conforme previstas neste Plano, e cumpriram todas as obrigações legais e outras obrigações necessárias para implementação deste Plano e, exceto conforme aqui descrito, nenhuma autorização governamental ou de terceiros é necessária para a celebração deste Plano;

5.2.2. All Debtors possess all necessary authorizations to undertake their respective obligations as provided for in this Plan, and have carried out all legal and other obligations necessary for the implementation of this Plan, and, except as described herein, no governmental or third-party authorizations are necessary for this Plan;

5.2.3. Todas as Devedoras estão cumprindo as Leis Aplicáveis aos seus negócios e ativos e não estão em violação de qualquer decisão de qualquer tribunal judicial ou arbitral ou qualquer regulamento ou ordem emitida por qualquer agência governamental aplicável aos seus negócios e ativos, e que tenha ou que provavelmente teria um efeito material adverso sobre esta Recuperação Extrajudicial; e

5.2.3. All Debtors are in compliance with the Applicable Laws to their businesses and assets and are not in violation of any decision of any court or arbitral tribunal or of any regulation or order issued by any governmental agency applicable to their businesses and assets, and which has or is reasonably likely to have a material adverse effect on this Extrajudicial Restructuring; and

5.2.4. A celebração deste Plano está em conformidade com as Leis aplicáveis aos negócios e ativos das Devedoras e não viola qualquer decisão de qualquer tribunal judicial ou arbitral ou qualquer regulamento ou ordem emitida por qualquer órgão governamental aplicável aos negócios e bens das Devedoras, e que tenha um efeito material adverso sobre esta Recuperação Extrajudicial.

5.2.4. The execution of this Plan complies with the relevant Laws applicable to the Debtors' business and assets and does not violate any decision of any court or arbitral tribunal or any regulation or order issued by any governmental agency applicable to the Debtors' businesses and assets, and which has a material adverse effect on this Extrajudicial Restructuring.

5.2.5. Não há outros créditos devidos pelas Devedoras que, em razão de sua natureza e semelhantes condições de pagamento, devessem ser consideradas Créditos Sujeitos, nos termos do art. 163, da LFR, conforme definição da Cláusula 2.2 deste Plano.

5.2.5. There are no other claims due by the Debtors that, because of its nature and similar payment conditions, should be considered Subject Claims, pursuant to Article 163, of the Brazilian Bankruptcy Law, in accordance with the definition provided in Section 2.2 of this Plan.

**5.3.    Reconhecimento**. As Partes reconhecem e concordam que este Plano não modifica, prejudica ou afeta, sob qualquer aspecto, todas e quaisquer obrigações, compromissos ou acordos relativos a outros créditos que não os Créditos Sujeitos, bem como quaisquer obrigações, compromissos ou acordos assumidos pelas Devedoras com seus fornecedores, parceiros comerciais, clientes e quaisquer outros credores que não sejam

**5.3.    Acknowledgement**. The Parties acknowledge and agree that this Plan does not modify, impair or affect, in any way, any and all obligations, covenants or agreements related to claims other than the Subject Claims, as well as any and all obligations, covenants or agreements undertaken by the Debtors towards its suppliers, business partners, customers and any other creditors that are not holders of the Subject Claims

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| detentores dos Créditos Sujeitos no presente instrumento, ainda que tais outros credores também sejam Credores Sujeitos ou Credores Aderentes em razão de também serem titulares de Créditos Sujeitos. | restructured hereto, even if such other creditors are also Subject Creditors or Adhering Creditors by virtue of also holding Subject Claims. |

| | |
|---|---|
| **6.   RESOLUÇÃO DO PLANO** | **6.   PLAN TERMINATION** |
| **6.1.**    O Plano será resolvido de pleno direito, perdendo integral e imediatamente qualquer efeito, no momento em que se verificar, *ipso facto*, qualquer um dos seguintes eventos (cada um, um "Evento de Resolução"), momento este que será considerado a "Data de Resolução do Plano": | **6.1.**    The Plan shall be automatically terminated by operation of law, and will entirely and immediately miss any effect, at the moment when it is verified, *ipso facto,* any of the following events (each, a "Termination Event"), which moment shall be deemed the "Plan Termination Date": |
| *(i)* a Data do Protocolo da RE não ocorrer em até 2 (dois) Dias Corridos contados da Data de Assinatura; | *(i)* the EJ Filing Date does not occur within 2 (two) Calendar Days counted from the Signing Date; |
| *(ii)* a data em que o Juízo da RE profira decisão decidindo por não conceder o período de suspensão de que trata os arts. 6º e 163, §§ 7º e 8º, da LFR, salvo se tal decisão for suspensa, revertida ou de qualquer forma obstada em até 10 (dez) Dias Úteis contados da referida decisão; | *(ii)* the date in which the EJ Court issues an order deciding not to grant the stay period provided for in Articles 6 and 163, paragraphs 7 and 8, of the Brazilian Bankruptcy Law, unless such order is suspended, reversed or otherwise stayed within 10 (ten) Business Days as from the issuance of the order; |
| *(iii)* qualquer uma das Devedoras e/ou Raízen Argentina (a) declarar-se falida ou apresentar pedido de autofalência; ou (b) ser objeto de um pedido de falência e tal procedimento de falência não tiver sido contestado, elidido ou evitado no prazo legal; ou (c) apresentar pedido de recuperação judicial ou outro pedido semelhante, sendo certo que esta Cláusula não se aplicará a qualquer procedimento de reestruturação apresentado de acordo com os termos deste Plano; | *(iii)* any of the Debtors and/or Raizen Argentina (a) declares itself bankrupt or voluntarily files for bankruptcy liquidation (falência); or (b) is subject to a request for bankruptcy, and the bankruptcy procedure has not been contested, avoided, delayed, or released within the relevant legal term; or (c) file for a judicial reorganization proceeding (recuperação judicial) or other similar procedure; provided that this Section does not apply to the commencement of any restructuring proceeding in accordance with terms hereof; |
| *(iv)* ocorrer o decurso do prazo improrrogável de 90 (noventa) Dias Corridos contados da Data do Protocolo da RE sem que seja obtida a adesão ao Plano Atualizado de | *(iv)* the lapse of the non-extendable period of 90 (ninety) Calendar Days counted from the EJ Filing Date without consent to the |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 30

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

Créditos Sujeitos no quórum previsto no art. 163 da LFR;

*(v)* Credores Signatários titulares de mais de 60% (sessenta por cento) dos Créditos Signatários manifestarem-se pela resolução deste Plano, mediante envio de notificação às Devedoras, observado que a resolução do Plano somente terá efeitos após 3 (três) Dias Úteis contados da entrega da respectiva notificação;

*(vi)* qualquer das declarações e garantias prestadas pelas Devedoras nos termos da Cláusula 5.2 deste Plano revelar-se falsa, incorreta ou enganosa, mediante envio de notificação subscrita por Credores Signatários titulares de ao menos 20% (vinte por cento) dos Créditos Signatários;

*(vii)* as Devedoras descumprirem qualquer obrigação prevista neste Plano, mediante envio de notificação subscrita por Credores Signatários titulares de ao menos 20% (vinte por cento) dos Créditos Signatários;

*(viii)* as Devedoras ajuízem qualquer medida arbitral, judicial ou administrativa que tenha por objeto contestar, direta ou indiretamente, a validade, existência ou exigibilidade de Créditos Sujeitos;

*(ix)* a realização de reorganizações societárias, alienações de ativos relevantes ou mudança de Controle das Devedoras que comprometam de forma substancial a capacidade das Devedores de cumprir com as obrigações previstas neste Plano ou no Plano Atualizado;

*(x)* seja ajuizada ação judicial com o objetivo de promover a constrição de bens das Devedoras, inclusive dinheiro, em valor superior a US$ 25.000.000,00 (vinte e

Updated Plan of Subject Creditors in the quorum provided under Article 163 of the Brazilian Bankruptcy Law;

*(v)* Signatory Creditors holding more than sixty percent (60%) of the Signatory Claims express to terminate the Plan, upon the delivery of a notice to the Debtors, provided that such termination will only produce its legal effects after 3 (three) Business Days following the delivery of the notice;

*(vi)* any of the representations and warranties made by the Debtors pursuant to Section 5.2 of this Plan proves to be false, inaccurate, or misleading, upon the delivery of a notice executed by Signatory Creditors representing at least 20% (twenty percent) of the Signatory Claims;

*(vii)* the Debtors breach any obligation set forth in this Plan, upon the delivery of a notice executed by Signatory Creditors representing at least 20% (twenty percent) of the Signatory Claims;

*(viii)* the Debtors commence any arbitral, judicial or administrative proceeding seeking to challenge, directly or indirectly, the validity, existence, or enforceability of the Subject Claims;

*(ix)* the implementation of any corporate reorganization, disposition of material assets, or change of Control of the Debtors that materially compromises the Debtors' ability to perform the obligations set forth in this Plan or the Updated Plan;

*(x)* any legal proceeding with the purpose to attach or otherwise seize assets of the Debtors, including cash, in an amount exceeding twenty five million dollars (USD 25,000,000.00) is filed, unless such

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 31

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

cinco milhões de Dólares), que não seja revertida, suspensa ou de qualquer forma obstada em até 10 (dez) Dias Úteis, mediante envio de notificação subscrita por Credores Signatários titulares de ao menos 20% (vinte por cento) dos Créditos Signatários; ou

*(xi)* caso as Devedoras contraiam qualquer financiamento debtor-in-possession (DIP) superior em classificação ou que seja garantido por ônus que tenham prioridade sobre os Credores Sujeitos, sem o consentimento prévio por escrito de Credores Sujeitos representando pelo menos 33% (trinta e três por cento) dos Créditos Sujeitos.

proceeding is reversed, suspended, or otherwise stayed within 10 (ten) Business Days, upon the delivery of a notice executed by Signatory Creditors representing at least 20% (twenty percent) of the Signatory Claims; or

*(xi)* in the event that Debtors incur in any debtor-in-possession (DIP) financing ranking senior to, or that is secured by liens that have priority over the Subject Creditors without the prior written consent of Subject Creditors representing at least 33% (thirty-three percent) of the Subject Claims.

**6.2.** As Devedoras comprometem-se a peticionar imediatamente ao Juízo da RE requerendo a extinção da Recuperação Extrajudicial caso se verifique qualquer um dos Eventos de Resolução, podendo os Credores Signatários ou Credores Aderentes fazê-lo caso as Devedoras deixem de peticionar neste sentido.

**6.2.** The Debtors undertake to immediate file a petition with the EJ Court requesting the termination of the Extrajudicial Restructuring in the event that any of the Termination Events occurs, provided that the Signatory Creditors or Adherent Creditors may do so if the Debtors fail to file such petition.

**6.3.** Não obstante qualquer disposição em contrário aqui prevista, no momento do protocolo do Plano Atualizado perante o Juízo da RE pelas Devedoras, o presente Plano será automaticamente resilido, independentemente de aviso prévio (tornando-se imediatamente sem quaisquer efeitos) exclusivamente em relação a qualquer Credor Signatário ou Credor Aderente que não tenha previamente fornecido, por escrito, seu consentimento, aprovação, apoio ou adesão ao Plano Atualizado.

**6.3.** Notwithstanding anything to the contrary provided herein, upon the filing of the Updated Plan before the ER Court by the Debtors, this Plan shall terminate automatically without notice (and immediately be voided of any effect) solely with respect to the Signatory Creditor and Adhering Creditor who did not provide its prior written consent, approval, support or adhesion to the Updated Plan.

## 7.   DISPOSIÇÕES DIVERSAS

## 7.   MISCELLANEOUS

**7.1.   Implementação**. De forma consistente com os termos e condições deste Plano, mas sujeito à aprovação de qualquer Plano Atualizado pelos Credores Sujeitos, as Devedoras deverão tomar

**7.1.   Implementation**. Consistent with the terms and conditions of this Plan, but subject to the approval any Updated Plan by the Subject Creditors, the Debtors may take any actions and

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 32

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| quaisquer medidas e celebrar quaisquer acordos e outros documentos que, em forma e substância, possam ser necessários ou adequados para dar eficácia aos termos e condições deste Plano. | execute any agreements and other documents that, in form and substance, may be necessary or appropriate to effectuate the terms and conditions of this Plan. |
| **7.2.    Suspensão dos Direitos de Execução.** Observada a Cláusula 6ª deste Plano, os titulares de Créditos Sujeitos não poderão, enquanto vigente este Plano e até a Data de Resolução do Plano, se aplicável, executar ou causar a execução, excutir ou causar a excussão de qualquer garantia ou valor em relação aos Créditos Sujeitos, ressalvadas as garantias fidejussórias e fiduciárias que permanecem preservadas nos termos do art. 49, §1º da LFR, bem como de qualquer forma compensar os Créditos Sujeitos com eventuais valores de titularidade das Devedoras | **7.2.    Suspension of Enforcement Rights.** Subject to Clause 6 of this Plan, the holders of Subject Claims shall not, while this Plan is in effect and until the Plan Termination Date, if applicable, enforce or cause the enforcement, foreclose or cause the foreclosure of any collateral or amount related to the Subject Claims, exempting the fiduciary liens and guarantees that are preserved pursuant to Article 49, §1st of the Brazilian Bankruptcy Law, as well as the set-off of the Subject Claims with eventual amounts that are held by the Debtors. |
| **7.3.    Compromisso de Não Declaração de Vencimento Antecipado ou de Resilição de Contratos.** Enquanto vigente este Plano, os Credores Signatários e os Credores Aderentes se obrigam a não exercer quaisquer prerrogativas contratuais que afetem a execução ordinária de demais contratos celebrados com as Devedoras em função do ajuizamento da Recuperação Extrajudicial, devendo se abster de exercer, dentre outras, as prerrogativas de declaração de vencimento antecipado, de aceleração, de rescisão, de interrupção ou redução das prestações, de limitação de direitos contratuais e de cancelamento de convênios de renovação. Para fins de clareza, o compromisso assumido não se aplica às Operações de Clearing, as quais poderão ser aceleradas ou vencidas antecipadamente ou quaisquer outros direitos e prerrogativas exercidos, conforme aplicável, nos termos previstos nos contratos e regulamentos que regem as Operações de Clearing ou ainda nas hipóteses de resolução do Plano previstas na Cláusula 6 a seu exclusivo critério. | **7.3.    Commitment Not to Accelerate or Terminate Contracts.** While this Plan is in effect, the Signatory Creditors and Adherent Creditors undertake not to exercise any contractual prerogatives that affect the ordinary performance of other contracts entered into with the Debtors as a result of the filing of the Extrajudicial Reorganization and shall refrain from exercising, among others, the prerogatives of declaring early maturity, acceleration, termination, interruption or reduction of installments, limitation of contractual rights and cancellation of renewal agreements. For the avoidance of doubt, the commitment undertaken does not apply to the Clearing Transactions, which may be accelerated or declared immediately due and payable, or in relation to which any other rights and prerogatives may be exercised, as applicable, in accordance with the agreements and regulations governing the Clearing Transactions or in the events of termination of the Plan set forth in Clause 6, at their sole discretion. |
| **7.4.    Divisibilidade**. Qualquer invalidade ou anulação de qualquer disposição deste Plano não causará a anulação ou invalidade das demais disposições válidas do Plano, cada uma das quais permanecerá em pleno vigor e efeito na forma | **7.4.    Severability.** Any invalidity or annulment of any provision of this Plan shall not cause the annulment or invalidity of the valid provisions of the Plan, each of which shall remain in full force and effect as agreed**.** The exclusion of any Debtor |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| convencionada. A exclusão de qualquer Devedora da Recuperação Extrajudicial, por qualquer motivo, não causará a anulação ou invalidade das demais disposições válidas do Plano para as demais Devedoras. | from the Extrajudicial Restructuring shall not cause the annulment or invalidity of the valid provisions of the Plan towards the other Debtors. |
| **7.5. Cessão e Negociação de Créditos Sujeitos.** Este Plano não altera as disposições a respeito de cessão ou transferência de créditos originalmente constantes em contrato ou em lei com relação aos Créditos Sujeitos, sendo certo que eventual cessão de Créditos Signatários ou Créditos Aderentes não tornará sem efeito a adesão ao Plano na Data de Protocolo da RE ou na data de entrega do Termo de Adesão, nos termos da Cláusula 7.11. | **7.5. Assignment and Trading of Subject Claims.** This Plan does not alter the legal or contractual provisions related to credit assignment or transfer with respect to Subject Claims, being certain that the assignment of Signatory Claims or Adhering Claims will not void the respective adhesion to the Plan in the ER Filing Date or in the date in which the Adhesion Term was executed, pursuant to Cláusula 7.11. |
| **7.6. Cessão de Créditos Intercompany.** Os Créditos Intercompany, ainda que transferidos a terceiros não integrantes do mesmo grupo econômico das Devedoras, não integram e não podem integrar o quórum de deliberação e aprovação do Plano, eventuais aditivos, conforme art. 43 e 163, § 3º, inciso II da LFR. | **7.6. Assignment of Intercompany Claims.** The Intercompany Claims, even if transferred to third parties that are not a part of the same economic group of the Debtors, are not a part and cannot be a part of the deliberation and approval of the Plan, eventual amendments, pursuant to art. 43 and 163, paragraph 3rd, item II, of the Brazilian Bankruptcy Law. |
| **7.7. Reservas.** A adesão a este Plano por parte dos Credores Signatários e/ou Credores Aderentes não implica qualquer tipo de renúncia por parte dos Credores Signatários e/ou Credores Aderentes com relação a matérias não expressamente reguladas por este Plano, tampouco concordância em novar os termos originais dos instrumentos que consubstanciam os Créditos Sujeitos. | **7.7. Reservations.** Adherence to this Plan by the Signatory Creditors and/or Adherent Creditors does not imply any type of waiver by the Signatory Creditors and/or Adherent Creditors with respect to matters not expressly regulated by this Plan, nor acceptance to novate the original terms of the securities underlying their Subject Claims. |
| **7.8. Tributos e Outras Despesas.** Observado o previsto neste Plano, cada Parte é responsável por suas obrigações tributárias, regulatórias e administrativas, e deve arcar com todos os custos e despesas relacionados aos seus respectivos atos previstos neste Plano. | **7.8. Taxes and Other Expenses**. Observed the provided in this Plan, each Party is responsible for their own tax, regulatory and administrative assessments and shall bear all the costs and expenses related to its corresponding acts set forth in this Plan. |
| **7.9. Notificações.** Todas as notificações, requerimentos, pedidos e outras comunicações às Devedoras, para serem consideradas eficazes, | **7.9. Notices**. All notices, requests, orders and other communications to the Debtors, in order to be considered effective, must be made in writing |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 34

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| deverão ser feitas por escrito e serão consideradas realizadas quando enviadas *(i)* por carta registada, com aviso de recebimento ou *courier*; ou *(ii)* por e-mail quando efetivamente entregues, sendo o aviso de leitura válido como prova de entrega e recebimento da mensagem, obrigando-se as Devedoras a verificar as suas mensagens periodicamente. Todas as comunicações devem ser enviadas para os seguintes endereços, salvo se houver alterações, nos termos da Cláusula 7.9.1 abaixo:<br><br>Se às **Devedoras**:<br><br>E-mail: recuperacaoextrajudicial@raizen.com<br>Endereço: Av. Brigadeiro Faria Lima, nº 4.100, 12º andar, Parte VII, São Paulo/SP, CEP 04538-132<br><br>**Att.:** Departamento de Tesouraria / Departamento Jurídico | and shall be deemed to have been made when sent *(i)* by registered correspondence, with notice of receipt, or courier; or *(ii)* by e-mail when actually delivered, the reading notice being valid as proof of delivery and receipt of the message, requiring the Debtors to check their messages periodically. All communications must be sent to the following addresses, unless there are changes under the terms of Section 7.9.1 below:<br><br>If to the **Debtors**:<br><br>E-mail: recuperacaoextrajudicial@raizen.com<br>Address: Av. Brigadeiro Faria Lima, nº 4.100, 12th floor, Part VII, São Paulo/SP, ZIP 04538-132<br><br>**Att.:** Departamento de Tesouraria / Departamento Jurídico |
| 7.9.1.   Caso qualquer das Devedoras deseje alterar as informações de contato contidas nos itens da Cláusula 7.9 a respectiva Parte comunicará imediatamente o novo endereço a todas as demais Partes. | 7.9.1.   In the event that any of the Debtors wishes to change its contact information contained in the items of Section 7.9, the respective Party shall immediately communicate the new address to all other Parties. |
| 7.9.2.   Até que, de acordo com a Cláusula 7.9.1 seja comunicada a mudança de endereço, as comunicações e notificações enviadas para o endereço indicado na Cláusula 7.9, ou para o último informado de acordo com a Cláusula 7.9.1, serão consideradas plenamente válidas e eficazes. | 7.9.2.   Until, in accordance with Section 7.9.1 notice is given regarding the change of address, communications and notifications sent to the address in Section 7.9, or to the last one informed in accordance with Section 7.9.1, shall be considered fully valid and effective. |
| **7.10.   Legitimidade.** As Partes reconhecem e concordam de forma irrevogável que as Devedoras e os Credores Sujeitos possuem legitimidade para exercer e executar todos os direitos, obrigações e remédios estabelecidos e contratados neste Plano. | **7.10.   Standing.** The Parties irrevocably acknowledge and agree that the Debtors and the Subject Creditors shall have standing to exercise and enforce all rights, obligations and remedies set forth under this Plan. |
| **7.11.   Irrevogabilidade ou Irretratabilidade**. Observados os Eventos de Resolução, este Plano é celebrado pelas Devedoras, pelos Credores Signatários e pelos Credores Aderentes de forma | **7.11.   Irrevocability or Irreversibility**. Subject to the Termination Events, this Plan is entered into by the Debtors, Signatory Creditors and Adhering Creditors in an irrevocable and irreversible |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| irrevogável e irretratável, representando um instrumento válido e vinculante em relação às Partes e seus respectivos sucessores, a qualquer título. | manner, representing a valid and binding instrument in relation to the Parties and their respective successors in any capacity. |
| **7.12.  Lei Aplicável**. Os direitos, deveres e obrigações decorrentes deste Plano deverão ser regidos, interpretados e executados de acordo com as Leis do Brasil. | **7.12.  Applicable Law**. The rights, duties and obligations arising from this Plan shall be governed by, construed and enforced in accordance with, the Laws of Brazil. |
| **7.13.  Jurisdição e Foro.** Todas as controvérsias decorrentes e/ou relacionadas ao presente Plano, sua celebração, interpretação ou execução, assim como a sua validade, eficácia e disposições vinculativas correlatas serão resolvidos pelo Juízo da RE (uma das Varas de Falências e Recuperações Judiciais da Comarca do Estado São Paulo, Estado de São Paulo ) até a Data de Resolução do Plano. Após a Data da Sentença de Homologação do Plano, as Partes elegem o foro da cidade de São Paulo, estado de São Paulo, como autoridade exclusiva para resolver quaisquer disputas ou conflitos surgidos entre as Partes em decorrência deste Plano. | **7.13.  Jurisdiction and Forum**. All disputes arising from and/or related to this Plan, its conclusion, interpretation or execution, as well as its validity, effectiveness and binding related provisions, shall be settled by the EJ Court (Bankruptcy State Courts of the District of São Paulo, State of São Paulo) until the Plan Termination Date. A fter the EJ Confirmation Order Date, the Parties elect the jurisdiction of the City of São Paulo, State of São Paulo, as sole authority to resolve any disputes or conflicts arising between the Parties as a result of this Plan. |
| **7.14.  Conflito**. Este Plano é celebrado em versões em inglês e português. Em caso de conflito de redação entre as versões em português e em inglês, prevalecerá a versão em português. | **7.14.  Conflict.** This Plan is executed in both English and Portuguese versions. In the event of any conflict between the wordings of the Portuguese and the English versions, the Portuguese version shall prevail. |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| **7.15.  Assinaturas**. Todos os signatários reconhecem que este Plano tem plena validade em formato eletrônico, sendo equiparado a documento físico para todos os efeitos legais, reconhecendo e declarando os signatários que a assinatura deste Plano em meio eletrônico, sem aposição de rubricas, é o meio escolhido de mútuo acordo por todas as Partes como apto a comprovar autoria e integridade do instrumento, e conferir-lhe pleno efeito legal, como se documento físico fosse. Caso as assinaturas sejam realizadas em datas diferentes, será considerada como data da assinatura a data indicada neste Plano. A adesão expressa dos Credores Signatários e dos Credores Aderentes por meio dos Termos de Adesão poderá ser realizada tanto por assinaturas eletrônicas quanto por assinaturas físicas, as quais as Partes reconhecem como válidas para todos os fins legais. | **7.15.  Signatures**. All the parties that execute this Plan recognize the validity of the electronic format, equivalent to the physical document for legal purposes, recognizing and declaring the executors that the signatures through electronic means, without adding initials to each page, is mutually elected by all parties as a way to prove the author and the integrity of the instrument, conferring to it full legal effect as a physical document. If the signatures are executed in different dates, the date indicated in this Plan shall be considered the signature date. The express adherence of the Signatory Creditors and Adhering Creditors through the Adhesion Forms may be effected either by electronic signatures or by wet-ink signatures, both of which the Parties acknowledge as valid for all legal purposes. |
| E, por estarem justas e contratadas, as Partes celebram este Plano na presença de 2 (duas) testemunhas. | And, in witness whereof, the Parties execute this Plan in the presence of two (2) witnesses. |

*(restante da página intencionalmente deixado em branco / remainder of the page intentionally left in blanc)*

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 37

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |

**RAÍZEN S.A.**

Assinado por:

*Nelson Roseira Gomes Neto*
5254DA8DF1D9458...

Nome: Nelson Roseira Gomes Neto
Cargo: Diretor Presidente

Assinado por:

*Lorival Nogueira Luz Junior*
C6D6594537A64BB...

Nome: Lorival Nogueira Luz Junior
Cargo: Diretor Financeiro e de Relações com Investidores

**RAÍZEN S.A.**

Assinado por:

*Nelson Roseira Gomes Neto*
5254DA8DF1D9458...

Name: Nelson Roseira Gomes Neto
Position: Chief Executive Officer

Assinado por:

*Lorival Nogueira Luz Junior*
C6D6594537A64BB...

Name: Lorival Nogueira Luz Junior
Position: Chief Financial Officer and Head of Investor Relations

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |

**RAÍZEN ENERGIA S.A.**

Assinado por:

*Geovane Dilkin Consul*

3636DB8FC1AF495...

Nome: Geovane Dilkin Consul
Cargo: Diretor Presidente

Assinado por:

*Lorival Nogueira Luz Junior*

C6D6594537A64BB...

Nome: Lorival Nogueira Luz Junior
Cargo: Diretor Financeiro e de Relações com Investidores

**RAÍZEN ENERGIA S.A.**

Assinado por:

*Geovane Dilkin Consul*

3636DB8FC1AF495...

Name: Geovane Dilkin Consul
Position: Chief Executive Officer

Assinado por:

*Lorival Nogueira Luz Junior*

C6D6594537A64BB...

Name: Lorival Nogueira Luz Junior
Position: Chief Financial Officer and Head of Investor Relations

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 39

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |
| **RAÍZEN FUELS FINANCE S.A.** | **RAÍZEN FUELS FINANCE S.A.** |
| DocuSigned by: *Marina Dalben* 4257B36CC3F14CF... | DocuSigned by: *Marina Dalben* 4257B36CC3F14CF... |
| Nome: Marina Dalben Cargo: Diretora | Name: Marina Dalben Position: Officer |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 40

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |

**RAÍZEN TRADING S.A.**

Assinado por:

*Celso Henrique Martins Silva*

15EEF4563F9C41D...

Nome: Celso Martins
Cargo: Diretor

DocuSigned by:

987D9E0298DC4A5...

Nome: Juliano Tamaso
Cargo: Diretor

---

**RAÍZEN TRADING S.A.**

Assinado por:

*Celso Henrique Martins Silva*

15EEF4563F9C41D...

Name: Celso Martins
Position: Officer

DocuSigned by:

987D9E0298DC4A5...

Name: Juliano Tamaso
Position: Officer

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 41

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |

**RAÍZEN NORTH AMERICA INC.**

Assinado por:
*Celso Henrique Martins Silva*
15EEF4563F9C41D...

Nome: Celso Martins
Cargo: Diretor

DocuSigned by:
987D9E0298DC4A5...

Nome: Juliano Tamaso
Cargo: Diretor

**RAÍZEN NORTH AMERICA INC.**

Assinado por:
*Celso Henrique Martins Silva*
15EEF4563F9C41D...

Name: Celso Martins
Position: Officer

DocuSigned by:
987D9E0298DC4A5...

Name: Juliano Tamaso
Position: Officer

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |
| **RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA.** | **RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA.** |
| DocuSigned by:<br>*FERNANDO BARBANO*<br>E0137D422A844DA... | DocuSigned by:<br>*FERNANDO BARBANO*<br>E0137D422A844DA... |
| Nome: Fernando Barbano<br>Cargo: Diretor Executivo | Name: Fernando Barbano<br>Position: Executive Officer |
| Assinado por:<br>*Eduardo Atsushi Takeiti*<br>59FE199E79F84F1... | Assinado por:<br>*Eduardo Atsushi Takeiti*<br>59FE199E79F84F1... |
| Nome: Eduardo Atsushi Takeiti<br>Cargo: Diretor Executivo | Name: Eduardo Atsushi Takeiti<br>Position: Executive Officer |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 42

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 43

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |

**RAÍZEN CENTRO-SUL PAULISTA S.A.**

DocuSigned by:

*FERNANDO BARBANO*

E0137D422A844DA...

Nome: Fernando Barbano
Cargo: Diretor Executivo

Assinado por:

*Eduardo Atsushi Takeiti*

59FE199E79F84F1...

Nome: Eduardo Atsushi Takeiti
Cargo: Diretor Executivo

**RAÍZEN CENTRO-SUL PAULISTA S.A.**

DocuSigned by:

*FERNANDO BARBANO*

E0137D422A844DA...

Name: Fernando Barbano
Position: Executive Officer

Assinado por:

*Eduardo Atsushi Takeiti*

59FE199E79F84F1...

Name: Eduardo Atsushi Takeiti
Position: Executive Officer

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |

**RAÍZEN CENTRO-SUL S.A.**

*DocuSigned by:*

*FERNANDO BARBANO*

E0137D422A844DA...

Nome: Fernando Barbano
Cargo: Diretor Executivo

*Assinado por:*

*Eduardo Atsushi Takeiti*

59FE199E79F84F1...

Nome: Eduardo Atsushi Takeiti
Cargo: Diretor Executivo

**RAÍZEN CENTRO-SUL S.A.**

*DocuSigned by:*

*FERNANDO BARBANO*

E0137D422A844DA...

Name: Fernando Barbano
Position: Executive Officer

*Assinado por:*

*Eduardo Atsushi Takeiti*

59FE199E79F84F1...

Name: Eduardo Atsushi Takeiti
Position: Executive Officer

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |

**BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A.**

Assinado por:
*Celso Henrique Martins Silva*
15EEF4563F9C41D...

Nome: Celso Martins
Cargo: Diretor Executivo

DocuSigned by:
987D9E0298DC4A5...

Nome: Juliano Tamaso
Cargo: Diretor Presidente

**BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A.**

Assinado por:
*Celso Henrique Martins Silva*
15EEF4563F9C41D...

Name: Celso Martins
Position: Executive Officer

DocuSigned by:
987D9E0298DC4A5...

Name: Juliano Tamaso
Position: Chief Executive Officer

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 46

Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras

**TESTEMUNHAS:**

Júlio Alves Ribeiro Neto
08552A5A605D461...

Nome: Júlio Alves Ribeiro Neto
CPF: 002.062.813-74

Isaac Aragão do Nascimento
9595185C52F44BB...

Nome: Isaac Aragão do Nascimento
CPF: 048.363.653-33

---

Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others

**WITNESSES:**

Júlio Alves Ribeiro Neto
08552A5A605D461...

Name: Júlio Alves Ribeiro Neto
ID: 002.062.813-74

Isaac Aragão do Nascimento
9595185C52F44BB...

Name: Isaac Aragão do Nascimento
ID: 048.363.653-33

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| LISTA DE ANEXOS | | LIST OF SCHEDULES | |
|---|---|---|---|

| Referência | Documento | Reference | Document |
|---|---|---|---|
| Anexo A | Lista de Credores Signatários | Schedule A | List of Signatory Creditors |
| Anexo D | Lista de Credores Sujeitos | Schedule D | List of Subject Creditors |
| Anexo 2.4 | Termo de Adesão | Schedule 2.4 | Adhesion Term |
| Anexo 2.4.1 | Modelo de Declaração de Propriedade de Crédito Sujeito | Schedule 2.4.1 | Certificate of Holder Form |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 48

**Docusign**

## Certificado de Conclusão

Identificação de envelope: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

Assunto: Complete o Docusign: 2026.03.10 - ROOTS - PRE (V. ASSINATURA - 19h45).pdf

Envelope fonte:

Documentar páginas: 47

Certificar páginas: 9

Assinatura guiada: Ativado

Selo com EnvelopeId (ID do envelope): Ativado

Fuso horário: (UTC-08:00) Hora do Pacífico (EUA e Canadá)

Assinaturas: 38

Rubrica: 0

Status: Concluído

Remetente do envelope:

Caio Brega

AV PRESIDENTE JUSCELINO KUBITSCHEK,1600,
CONJ 21

SAO PAULO, SP  04543-000

cbrega@emunhoz.com.br

Endereço IP: 200.236.218.146

## Rastreamento de registros

Status: Original

10/03/2026 16:00:37

Portador: Caio Brega

cbrega@emunhoz.com.br

Local: DocuSign

| Eventos do signatário | Assinatura | Registro de hora e data |
|---|---|---|
| Celso Henrique Martins Silva<br>Celso.H.Martins@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma) | Assinado por:<br>*Celso Henrique Martins Silva*<br>15EEF4563F9C41D... <br>Adoção de assinatura: Estilo pré-selecionado<br>Usando endereço IP: 177.32.76.78 | Enviado: 10/03/2026 16:26:57<br>Visualizado: 10/03/2026 16:31:43<br>Assinado: 10/03/2026 16:46:44 |

Termos de Assinatura e Registro Eletrônico:

Aceito: 10/03/2026 16:31:43

ID: eaade1a2-744b-4e7d-a040-7471eaf40b78

| | | |
|---|---|---|
| Eduardo Atsushi Takeiti<br>Eduardo.Takeiti@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | Assinado por:<br>*Eduardo Atsushi Takeiti*<br>59FE199E79F84F1... <br>Adoção de assinatura: Estilo pré-selecionado<br>Usando endereço IP: 177.102.205.210 | Enviado: 10/03/2026 16:27:01<br>Visualizado: 10/03/2026 16:34:39<br>Assinado: 10/03/2026 16:36:20 |

Termos de Assinatura e Registro Eletrônico:

Aceito: 10/03/2026 16:34:39

ID: ee471b3b-e046-451d-b219-957464d19076

| | | |
|---|---|---|
| FERNANDO BARBANO<br>Fernando.Barbano@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | DocuSigned by:<br>*FERNANDO BARBANO*<br>E0137D422A844DA... <br>Adoção de assinatura: Estilo pré-selecionado<br>Usando endereço IP: 181.233.114.223 | Enviado: 10/03/2026 16:26:58<br>Visualizado: 10/03/2026 16:28:19<br>Assinado: 10/03/2026 16:34:32 |

Termos de Assinatura e Registro Eletrônico:

Aceito: 10/03/2026 16:28:19

ID: 1bbe1000-0887-48f5-be4c-9c2ccd921747

| | | |
|---|---|---|
| Geovane Dilkin Consul<br>Geovane.Consul@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | Assinado por:<br>*Geovane Dilkin Consul*<br>3636D56FC1AF493... <br>Adoção de assinatura: Estilo pré-selecionado<br>Usando endereço IP: 177.50.37.237 | Enviado: 10/03/2026 16:26:58<br>Visualizado: 10/03/2026 18:19:17<br>Assinado: 10/03/2026 18:19:31 |

Termos de Assinatura e Registro Eletrônico:

Aceito: 10/03/2026 18:19:17

ID: bef35e50-7b3d-4b66-a399-cc5ed033f4b1

| Eventos do signatário | Assinatura | Registro de hora e data |
|---|---|---|
| Isaac Aragão do Nascimento<br>Isaac.Nascimento@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | *Isaac Aragão do Nascimento*<br>—9595185C52F44BB...<br><br>Adoção de assinatura: Estilo pré-selecionado<br>Usando endereço IP: 187.91.75.120 | Enviado: 10/03/2026 16:27:02<br>Visualizado: 10/03/2026 16:49:39<br>Assinado: 10/03/2026 16:49:50 |
| **Termos de Assinatura e Registro Eletrônico:**<br>Aceito: 10/03/2026 16:49:39<br>ID: 057fde15-16d5-47ac-943e-a55dd3a37e84 | | |
| Juliano Tamaso<br>Juliano.Tamaso@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | *J.L*<br>—957D9EC298DC4A5...<br><br>Adoção de assinatura: Desenhado no dispositivo<br>Usando endereço IP: 189.62.205.36<br>Assinado com o uso do celular | Enviado: 10/03/2026 16:26:59<br>Visualizado: 10/03/2026 16:40:04<br>Assinado: 10/03/2026 16:42:17 |
| **Termos de Assinatura e Registro Eletrônico:**<br>Aceito: 10/03/2026 16:40:04<br>ID: 519ad43b-dd7d-4376-9eb9-ab77f239842d | | |
| Júlio Alves Ribeiro Neto<br>Julio.Alves@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | *Júlio Alves Ribeiro Neto*<br>—08552A5A605D461...<br><br>Adoção de assinatura: Estilo pré-selecionado<br>Usando endereço IP: 177.67.63.45 | Enviado: 10/03/2026 16:27:03<br>Visualizado: 10/03/2026 16:45:18<br>Assinado: 10/03/2026 16:46:18 |
| **Termos de Assinatura e Registro Eletrônico:**<br>Aceito: 10/03/2026 16:45:18<br>ID: 59ef1f04-ab90-4090-b5d0-a707e2e6a308 | | |
| Lorival Nogueira Luz Junior<br>Lorival.Luz@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | *Lorival Nogueira Luz Junior*<br>—C6D6594537A840B...<br><br>Adoção de assinatura: Estilo pré-selecionado<br>Usando endereço IP: 191.254.25.36 | Enviado: 10/03/2026 16:26:59<br>Visualizado: 10/03/2026 17:24:20<br>Assinado: 10/03/2026 17:24:38 |
| **Termos de Assinatura e Registro Eletrônico:**<br>Aceito: 10/03/2026 17:24:20<br>ID: b24af188-f69c-4e47-b5dd-5567f4c4c8a9 | | |
| Marina Dalben<br>Marina.Dalben@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | *Marina Dalben*<br>—4257B36CC3F14CF...<br><br>Adoção de assinatura: Imagem de assinatura carregada<br>Usando endereço IP: 189.100.70.86 | Enviado: 10/03/2026 16:27:00<br>Visualizado: 10/03/2026 16:52:12<br>Assinado: 10/03/2026 16:52:30 |
| **Termos de Assinatura e Registro Eletrônico:**<br>Aceito: 10/03/2026 16:52:12<br>ID: 93ea2158-8675-49f0-bd17-e78bbd627cc6 | | |
| Nelson Roseira Gomes Neto<br>Nelson.Gomes@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | *Nelson Roseira Gomes Neto*<br>—5254DA80F1D9458...<br><br>Adoção de assinatura: Estilo pré-selecionado<br>Usando endereço IP: 177.26.248.194<br>Assinado com o uso do celular | Enviado: 10/03/2026 16:27:00<br>Visualizado: 10/03/2026 16:39:29<br>Assinado: 10/03/2026 16:39:52 |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 50

| Eventos do signatário | Assinatura | Registro de hora e data |
|---|---|---|
| Termos de Assinatura e Registro Eletrônico:<br>Aceito: 10/03/2026 16:39:29<br>ID: 21b07850-c4d1-4622-9f0e-8f9d412df56f | | |

| Eventos do signatário presencial | Assinatura | Registro de hora e data |
|---|---|---|

| Eventos de entrega do editor | Status | Registro de hora e data |
|---|---|---|

| Evento de entrega do agente | Status | Registro de hora e data |
|---|---|---|

| Eventos de entrega intermediários | Status | Registro de hora e data |
|---|---|---|

| Eventos de entrega certificados | Status | Registro de hora e data |
|---|---|---|

| Eventos de cópia | Status | Registro de hora e data |
|---|---|---|
| Lilian Helena Costa Moura<br>Lilian.Moura@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO<br>Termos de Assinatura e Registro Eletrônico:<br>Não oferecido através da Docusign | **Copiado** | Enviado: 10/03/2026 16:27:01<br>Visualizado: 10/03/2026 16:28:28 |
| Lucas Pereira Calmon<br>lucas@emunhoz.com.br<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma)<br>Termos de Assinatura e Registro Eletrônico:<br>Aceito: 22/02/2024 11:07:11<br>ID: 2d6afe29-6bf4-43e2-9c99-52d45d19a4e1 | **Copiado** | Enviado: 10/03/2026 16:27:02<br>Visualizado: 10/03/2026 16:55:10 |

| Eventos com testemunhas | Assinatura | Registro de hora e data |
|---|---|---|

| Eventos do tabelião | Assinatura | Registro de hora e data |
|---|---|---|

| Eventos de resumo do envelope | Status | Carimbo de data/hora |
|---|---|---|
| Envelope enviado | Com hash/criptografado | 10/03/2026 16:27:03 |
| Entrega certificada | Segurança verificada | 10/03/2026 16:39:29 |
| Assinatura concluída | Segurança verificada | 10/03/2026 16:39:52 |
| Concluído | Segurança verificada | 10/03/2026 18:19:31 |

| Eventos de pagamento | Status | Carimbo de data/hora |
|---|---|---|

**Termos de Assinatura e Registro Eletrônico**

Termos de Assinatura e Registro Eletrônico criado em: 20/09/2022 13:27:51

Partes concordam em: Celso Henrique Martins Silva, Eduardo Atsushi Takeiti, Geovane Dilkin Consul, Isaac Aragão do Nascimento, Júlio Alves Ribeiro Neto, Lorival

### ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, E. Munhoz - Sociedade de Advogados (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 52

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact E. Munhoz - Sociedade de Advogados:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:

**To advise E. Munhoz - Sociedade de Advogados of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at  and in the body of such request you must state: your previous email address, your new email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from E. Munhoz - Sociedade de Advogados**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to  and in the body of such request you must state your email address, full name, mailing address, and telephone number.

**To withdraw your consent with E. Munhoz - Sociedade de Advogados**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to  and in the body of such request you must state your email, full name, mailing address, and telephone number. .  .

### Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

### Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify E. Munhoz - Sociedade de Advogados as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by E. Munhoz - Sociedade de Advogados during the course of your relationship with E. Munhoz - Sociedade de Advogados.

Termos de Assinatura e Registro Eletrônico criado em: 08/11/2021 12:09:10
Partes concordam em: FERNANDO BARBANO, Juliano Tamaso

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, E. Munhoz - Sociedade de Advogados (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

### How to contact E. Munhoz - Sociedade de Advogados:

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: jaime@emunhoz.com.br

### To advise E. Munhoz - Sociedade de Advogados of your new email address

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at jaime@emunhoz.com.br and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

### To request paper copies from E. Munhoz - Sociedade de Advogados

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to jaime@emunhoz.com.br and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

### To withdraw your consent with E. Munhoz - Sociedade de Advogados

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to jaime@emunhoz.com.br and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

### Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

### Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify E. Munhoz - Sociedade de Advogados as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by E. Munhoz - Sociedade de Advogados during the course of your relationship with E. Munhoz - Sociedade de Advogados.

**Anexo A**

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 58

Consolidado

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.300% Notes due 2027 | Sim | US BOND 229MM 20.01.2027 | USD | - | 16,200,026.19 | - | 84,455,688.86 | 0,1% | 0,1% |
| RAIZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.200% Notes due 2032 | Sim | BOND 2032 | USD | - | 206,588,498.28 | - | 1,060,854,128.32 | 2,4% | 2,5% |
| RAIZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.450% Green Notes due 2034 | Sim | BOND 2034 | USD | - | 206,325,850.78 | - | 1,513,093,757.92 | 2,3% | 4,8% |
| RAIZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.700% Green Notes due 2035 | Sim | BOND 2035 | USD | - | 283,228,858.60 | - | 1,478,549,591.94 | 2,3% | 7,1% |
| RAIZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.700% Green Notes due 2054 | Sim | BOND 2054 | USD | - | 93,271,140.74 | - | 486,235,484.08 | 0,7% | 7,9% |
| RAIZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.950% Green Notes due 2054 | Sim | RETAP BOND 2054 | USD | - | 139,808,719.81 | - | 729,075,688.15 | 1,1% | 9,0% |
| RAIZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.700% Notes due 2037 | Sim | BOND 2037 | USD | - | 313,712,179.86 | - | 1,635,480,915.52 | 2,5% | 11,5% |
| RAIZEN FUELS FINANCE S.A. | ITAÚ UNIBANCO S.A. | Sim | DEBENTURE INCENTIVADA 4ª SERIE ÚNICA RESH H | BRL | 286,432,582.93 | - | - | 286,432,582.93 | 0,4% | 11,9% |
| RAIZEN FUELS FINANCE S.A. | BNP PARIBAS | Sim | LOAN SACE 308MM | EUR | - | - | 305,279,433.33 | 1,944,889,196.14 | 2,9% | 14,8% |
| RAIZEN FUELS FINANCE S.A. | BNP PARIBAS | Sim | LOAN SACE II 208MM | EUR | - | - | 200,913,686.87 | 1,214,182,770.45 | 1,9% | 16,8% |
| RAIZEN ENERGIA S.A. | BANK OF AMERICA S.A. | Sim | PPE BOFA - LT - JAN2026 - RCF TE163006 - 8SV1 | USD | 100,560,473.87 | - | - | 524,423,946.84 | 0,8% | 17,4% |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CPR-F 700MM | BRL | 700,229,482.92 | - | - | 700,229,482.92 | 1,2% | 18,6% |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CPR-F 202MM | BRL | 201,175,737.00 | - | - | 201,175,737.00 | 0,4% | 19,0% |
| RAIZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | CPRF 0884 - LF - ABR2030 | BRL | 203,233,547.08 | - | - | 203,233,547.08 | 0,3% | 19,3% |
| RAIZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | CPRF 0884 - LF - JUN2030 | BRL | 310,857,530.70 | - | - | 310,857,530.70 | 0,5% | 19,8% |
| RAIZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | CPRF 0884 - LF - JUN2027 | BRL | 722,710,137.56 | - | - | 722,710,137.56 | 1,1% | 20,9% |
| RAIZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) S.A | Sim | CPRF SANTANDER - LF - JUN2028 | BRL | 667,177,032.00 | - | - | 667,177,032.00 | 1,0% | 22,0% |
| RAIZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) S.A | Sim | CPRF SANTANDER - LF - AGO2028 | BRL | 267,803,049.00 | - | - | 267,803,049.00 | 0,4% | 22,4% |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CPRF BRADESCO - LF - JUL2030 | BRL | 766,904,947.00 | - | - | 766,904,947.00 | 1,2% | 23,5% |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CREDITO RURAL LIVRE BRL 269MM - LF JUL28 | BRL | 273,848,901.00 | - | - | 273,848,901.00 | 0,4% | 24,0% |
| RAIZEN ENERGIA S.A. | BANCO DO BRASIL S.A. | Sim | NCE BB NR 200010502 | BRL | 1,033,537,058.00 | - | - | 1,033,537,058.00 | 1,6% | 25,6% |
| RAIZEN ENERGIA S.A. | BNP PARIBAS | Sim | PPE_BNP_USD125MLN - RCF TB159571 | USD | 75,104,761.47 | - | - | 391,904,317.67 | 0,6% | 26,2% |
| RAIZEN ENERGIA S.A. | COOPERATIVE RABOBANK U.A. | Sim | PPE LF RABOBANK USD 100M 09.05.22 RCF TB159491 | USD | 102,965,666.67 | - | - | 536,043,513.53 | 0,8% | 27,0% |
| RAIZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE LF RABOBANK USD 200M 13.05.22 (ATÓ 11.05.27) RCF TB104920 | USD | 206,733,569.00 | - | - | 1,046,483,955.26 | 1,6% | 28,6% |
| RAIZEN ENERGIA S.A. | BANK OF AMERICA S.A. | Sim | PPE LF BOFA USD 50M MAI.22 (VNCTO 25.05.27) RCF TB160654 | USD | 50,061,384.11 | - | - | 260,964,596.72 | 0,4% | 29,0% |
| RAIZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | PPE LF SMBC USD 200M JUN.23 (VNCTO 14.06.27) RCF TB157846 | USD | 202,200,166.68 | - | - | 1,054,130,128.05 | 1,6% | 30,6% |
| RAIZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | PPE SMBC - ST - MAR25 - RCF TB169313 | USD | 102,598,116.89 | - | - | 534,874,762.78 | 0,8% | 31,4% |
| RAIZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE LF BSV1 RABOBANK USD44M 10.04.25 - RCF TE167284 | USD | 45,036,382.02 | - | - | 234,795,222.33 | 0,4% | 31,8% |
| RAIZEN CENTRO-SUL PAULISTA S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | PPE SMBC - LT - FEV2028 - RCF TB164631 | USD | 70,188,790.14 | - | - | 365,820,302.65 | 0,6% | 32,3% |
| RAIZEN CENTRO-SUL PAULISTA S.A. | THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED | Sim | PPE HSBC - LT - FEV2028 - RCF TB163624 | USD | 85,849,555.41 | - | - | 447,559,487.22 | 0,7% | 33,0% |
| RAIZEN S.A. | JPMORGAN CHASE BANK, N.A. | Sim | PPE LF JPMORGAN USD30M 28.04.25 - RCF TB168066 | USD | 51,006,804.33 | - | - | 265,914,032.73 | 0,4% | 33,4% |
| RAIZEN S.A. | MUFG BANK, LTD. | Sim | PPE LF MUFG USD100M 29.04.25 - RCF TB168146 | USD | 100,618,527.78 | - | - | 524,934,823.00 | 0,8% | 34,2% |
| RAIZEN S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE LF RABOBANK USD29M 29.04.25 - RCF TB168055 | USD | 30,617,542.10 | - | - | 159,610,942.14 | 0,2% | 34,5% |
| RAIZEN S.A. | MUFG BANK, LTD. | Sim | PPE LF MUFG USD75M 30.12.25 | USD | 75,444,180.75 | - | - | 393,312,147.20 | 0,6% | 35,1% |
| RAIZEN S.A. | THE BANK OF NOVA SCOTIA | Sim | PPE LF SCOTIABANK USD300M 30.10.25 | USD | 305,185,416.67 | - | - | 1,591,022,132.71 | 2,4% | 37,5% |
| RAIZEN CENTRO-SUL PAULISTA S.A. | JPMORGAN CHASE BANK, N.A. | Sim | PPE JPM - LT - FEV2030 - RCF TB164631 | USD | 100,260,222.78 | - | - | 523,856,525.32 | 0,8% | 38,3% |
| RAIZEN ENERGIA S.A. | BANCO CITIBANK S.A. | Sim | NCE CIT - LT - FEV28 - 8SV1 | USD | 83,122,948.30 | - | - | 433,344,887.40 | 0,7% | 39,0% |
| RAIZEN S.A. | BANCO BILBAO VIZCAYA ARGENTARIA, S.A. NEW YORK BRANCH | Sim | PPE BBVA - LT - JAN2030 - RCF TB162934 | USD | 201,741,563.00 | - | - | 1,051,739,300.28 | 1,6% | 40,6% |
| RAIZEN S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE RABOBANK USD 50MM 2026 - RCF TB091059 | USD | 50,308,611.11 | - | - | 262,524,120.75 | 0,4% | 41,0% |
| RAIZEN S.A. | BANK OF AMERICA S.A. | Sim | PPE BBDF II BOFA 76MM - RCF TB131089 | USD | 70,826,921.33 | - | - | 369,241,987.41 | 0,6% | 41,6% |
| RAIZEN S.A. | CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK | Sim | PPE_CREDIT_USD50MM - RCF TB130806 | USD | 50,503,125.00 | - | - | 263,367,941.57 | 0,4% | 42,0% |
| RAIZEN S.A. | MUFG BANK, LTD. | Sim | PPE LF MUFG USD30M 12.06.25 | USD | 50,168,416.17 | - | - | 261,688,002.04 | 0,4% | 42,4% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | 20,000,000.00 | - | - | 104,266,000.00 | 0,2% | 42,6% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | 20,000,000.00 | - | - | 104,266,000.00 | 0,2% | 42,7% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | 10,000,000.00 | - | - | 52,133,000.00 | 0,1% | 42,9% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | 15,000,000.00 | - | - | 78,199,500.00 | 0,1% | 42,9% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BNP PARIBAS S.A. | Sim | AVAL ECA | USD | 30,006,637.97 | - | - | 156,433,600.73 | 0,2% | 43,2% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 32643267 | BRL | 292,209,664.00 | - | - | 292,209,664.00 | 0,4% | 43,6% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO N°806458062003 E 36406174202) | BRL | 300,521,410.00 | - | - | 300,521,410.00 | 0,5% | 44,1% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 32610123 | BRL | 385,658,828.00 | - | - | 385,658,828.00 | 0,6% | 44,7% |
| RAIZEN FUELS FINANCE S.A. | CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK | Sim | REVOLVING LOAN FACILITY AGREEMENT | USD | 1,396,793.00 | - | - | 7,256,970.38 | 0,0% | 44,7% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | - | - | Nos termos do artigo 155-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,7% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | Banco Morgan Stanley S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | 594,080,402.00 | - | - | 594,080,402.00 | 0,9% | 45,6% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | Banco BNP Paribas Brasil S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | 605,914,015.06 | - | - | 605,914,015.06 | 0,9% | 46,5% |
| RAIZEN S.A. | Banco BNP Paribas Brasil S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | - | - | Nos termos do artigo 155-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 46,5% |
| RAIZEN S.A. | BANK OF AMERICA MERRILL LYNCH BANCO MÚLTIPLO S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | 368,645,346.41 | - | - | 368,645,346.41 | 0,6% | 47,1% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BANCO CREDIT AGRICOLE BRASIL S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | - | - | Nos termos do artigo 155-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 47,1% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BANCO DO BRASIL S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | - | - | Nos termos do artigo 155-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 47,1% |
| RAIZEN S.A. | Scotiabank Brasil S.A. Banco Múltiplo | Sim | OPERAÇÕES DERIVATIVOS | BRL | - | - | Nos termos do artigo 155-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 47,1% |
| RAIZEN S.A. | Banco MUFG Brasil S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | - | - | Nos termos do artigo 155-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 47,1% |
| RAIZEN S.A. / IBLUEWAY TRADING IMPORTAÇÃO E EXPORT / RAIZEN CENTRO-SUL S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | 38,948,198.02 | - | - | 38,948,198.02 | 0,1% | 47,2% |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN ENERGIA S.A / RAÍZEN CENTRO-SUL S.A. | COOPERATIEVE RABOBANK U.A. | 5m | OPERAÇÕES DERIVATIVOS | BRL | 11.410.678,17 | - | - | 11.410.678,17 | 0,0% | 47,2% |
| RAÍZEN S.A. | BANCO HSBC S.A. | 5m | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 100-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 47,2% |
| RAÍZEN ENERGIA S.A. | JP Morgan Chase Bank, NA | 5m | OPERAÇÕES DERIVATIVOS | USD | 9.883.076,79 | - | - | 10.403.946,70 | 0,1% | 47,2% |
| RAÍZEN TRADING S.A. | CITIBANK N.A. | 5m | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 100-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 47,2% |
| **Subtotal Créditos Aderentes** | - | - | | | **9.162.405.998,07** | **3.747.478.970,42** | **899.192.300,09** | **30.770.206.027,06** | **47,2%** | **47,2%** |
| | | | | | | | | | | |
| RAÍZEN FUELS FINANCE S.A. | U.S. BANK NATIONAL ASSOCIATION | Não | US BOND (220MN.03.01.2027 | USD | 172.939.542,59 | - | - | 901.562.207,07 | 1,4% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2032 | USD | 409.674.432,39 | - | - | 2.391.207.467,96 | 3,7% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2034 | USD | 710.999.662,54 | - | - | 3.704.414.468,98 | 5,7% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2035 | USD | 725.164.858,07 | - | - | 3.780.501.683,01 | 5,8% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2054 | USD | 407.311.460,15 | - | - | 2.122.819.077,34 | 3,3% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA VII 228.190_IPE RAÍZEN 1 PE_CRA01600002 | BRL | 232.762.862,92 | - | - | 232.762.862,92 | 0,4% | - |
| RAÍZEN ENERGIA S.A. | OPEA SECURITIZADORA S.A. | Não | CRA VI IPCA 600MM CRA.2.CA.2.CRA01800027 | BRL | 905.715.403,49 | - | - | 905.715.403,49 | 1,4% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA IX 1.060.000.000_IP E RAÍZEN 1 PE_CRA02200060 | BRL | 1.282.945.117,90 | - | - | 1.282.945.117,90 | 2,0% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA IX 940.000.000_IPE RAÍZEN 2 PE_CRA02200060 | BRL | 1.139.608.159,36 | - | - | 1.139.608.159,36 | 1,7% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA VII 767.658_IPE RAÍZEN 1 PE_CRA01600034 | BRL | 1.153.262.672,56 | - | - | 1.153.262.672,56 | 1,8% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA VIII 352.428_1IPE RAÍZEN 1 PE_CRA02000077 | BRL | 501.233.718,45 | - | - | 501.233.718,45 | 0,8% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA VII 728.059_1IPE RAÍZEN 2 PE_CRA02200079 | BRL | 1.036.284.376,25 | - | - | 1.036.284.376,25 | 1,6% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA DOCTOR X - 3ª SÉRIE - 10/2033_CRA02300URT | BRL | 567.943.998,38 | - | - | 567.943.998,38 | 0,9% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA DOCTOR X - 1ª SÉRIE - 10/2030_CRA02300URU | BRL | 218.430.087,03 | - | - | 218.430.087,03 | 0,3% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA DOCTOR X - 2ª SÉRIE - 10/2033_CRA02300URV | BRL | 301.264.390,88 | - | - | 301.264.390,88 | 0,5% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA 4ª SÉRIE ÚNICA RESA14 | BRL | 1.008.259.999,87 | - | - | 1.008.259.999,87 | 1,5% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA 4ª EMISSÃO - RESA15 | BRL | 241.287.166,87 | - | - | 241.287.166,87 | 0,4% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA - RESA17 | BRL | 536.888.542,23 | - | - | 536.888.542,23 | 0,8% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA - RESA17 | BRL | 861.796.942,95 | - | - | 861.796.942,95 | 1,3% | - |
| RAÍZEN ENERGIA S.A. | BANK OF CHINA LIMITED, GRAND CAYMAN BRANCH | Não | PPE BANK OF CHINA USD 150 MILHÕES ROF TB123957 | USD | 152.475.933,25 | - | - | 794.902.261,48 | 1,2% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURES INCENTIVADA - 9ª EMISSÃO - 1ª SÉRIE RAIZ13 | BRL | 908.673.055,34 | - | - | 908.673.055,34 | 1,5% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA - 7ª EMISSÃO RESA - 2ª SÉRIE RAIZ23 | BRL | 682.287.301,95 | - | - | 682.287.301,95 | 1,1% | - |
| RAÍZEN S.A./ RAÍZEN ENERGIA S.A. | CITIBANK N.A. | Não | AVAL FIDEIMPO | USD | 6.270.786,16 | - | - | 32.661.932,05 | 0,1% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | RETAP BOND 2054 | USD | 615.817.239,72 | - | - | 3.194.373.015,83 | 4,9% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2037 | USD | 689.078.467,01 | - | - | 3.592.372.876,35 | 5,5% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURES - 3ª EMISSÃO RSA RAIZ12 | BRL | 1.061.100.766,73 | - | - | 1.061.100.766,73 | 1,7% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURES - 8ª EMISSÃO RSA RAIZ14 | BRL | 806.635.172,63 | - | - | 806.635.172,63 | 1,3% | - |
| RAÍZEN S.A./ RAÍZEN ENERGIA S.A. | XP COMERCIALIZADORA DE ENERGIA S.A. | Não | AVAL CONTRATO DE COMPRA E VENDA DE ENERGIA ELÉTRICA LF 35.2023 | BRL | 170.000.000,00 | - | - | 170.000.000,00 | 0,3% | - |
| RAÍZEN S.A./ RAÍZEN ENERGIA S.A. | XP INVESTIMENTOS CORRETORA DE CÂMBIO, TÍTULOS E VALORES MOBILIÁRIOS S.A. | Não | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 100-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. | Deutsche Bank S.A | Não | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 100-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. | Banco Mizuho do Brasil S.A. | Não | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 100-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. | STG FACTUAL SA | Não | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 100-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. | Macquarie Bank LTD | Não | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 100-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. / BLUEWAY TRADING IMPORTAÇÃO E EXPORT / RAÍZEN ENERGIA S.A. | Goldman Sachs do Brasil Banco Múltiplo S.A. | Não | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 100-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| **Subtotal Créditos Não Aderentes** | - | - | | | **13.897.390.635,22** | **3.933.190.114,79** | **-** | **34.382.318.552,05** | **52,8%** | **-** |
| | | | | | | | | | | |
| **Total** | - | - | | | **23.039.774.693,29** | **7.680.678.985,21** | **899.192.300,09** | **65.145.520.578,65** | **100,0%** | **47,2%** |

RAÍZEN S.A.

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.300% Notes due 2027 | Sim | US BOND 2250MM 20.01.2027 | USD | - | 16.200.038,19 | - | 84.455.606,96 | 0,1% | 0,1% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.350% Notes due 2022 | Sim | BOND 2032 | USD | - | 299.398.486,28 | - | 1.560.954.128,52 | 2,5% | 2,6% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.450% Green Notes due 2034 | Sim | BOND 2034 | USD | - | 290.220.850,79 | - | 1.513.055.757,92 | 2,4% | 5,1% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.700% Green Notes due 2035 | Sim | BOND 2035 | USD | - | 280.238.898,60 | - | 1.478.346.581,94 | 2,4% | 7,4% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.950% Green Notes due 2054 | Sim | BOND 2054 | USD | - | 93.271.145,74 | - | 486.250.464,09 | 0,8% | 8,2% |
| RAÍZEN S.A. | THE BANK OF NEW YORK MELLON | Sim | AVAL RETAP BOND 2054 | USD | - | 139.508.718,61 | - | 729.375.696,13 | 1,2% | 9,4% |
| RAÍZEN ENERGIA S.A. | Grupo Ad Hoc de Bondholders das 6.700% Notes due 2037 | Sim | BOND 2037 | USD | - | 313.713.178,66 | - | 1.635.480.919,52 | 2,6% | 12,0% |
| RAÍZEN ENERGIA S.A. | ITAÚ UNIBANCO S.A. | Sim | DEBENTURE INCENTIVADA 4ª SERIE ÚNICA RESA14 | BRL | 266.432.592,93 | - | - | 266.432.592,93 | 0,5% | 12,5% |
| RAÍZEN S.A. | BNP PARIBAS | Sim | AVAL LOAN 5ACE 300MM | EUR | - | - | 305.278.433,33 | 1.844.889.106,14 | 3,0% | 15,4% |
| RAÍZEN S.A. | BNP PARIBAS | Sim | AVAL LOAN 5ACE II 200MM | EUR | - | - | 200.913.866,67 | 1.214.162.770,45 | 1,9% | 17,4% |
| RAÍZEN S.A. | BANK OF AMERICA S.A. | Sim | AVAL PPE BOFA - LT - JAN2028 - RCF TB100598 - BSV1 | USD | - | 100.563.471,67 | - | 524.423.945,64 | 0,8% | 18,2% |
| RAÍZEN S.A. | BANCO BRADESCO S.A. | Sim | AVAL CPR-F 750MM | BRL | 760.226.402,50 | - | - | 760.226.402,50 | 1,3% | 19,5% |
| RAÍZEN S.A. | BANCO BRADESCO S.A. | Sim | AVAL CPR-F 250MM | BRL | 261.175.737,50 | - | - | 261.175.737,50 | 0,4% | 19,9% |
| RAÍZEN S.A. | BANCO SANTANDER (BRASIL) S/A | Sim | AVAL CPRF SANTANDER - LP - JUN2028 | BRL | 807.177.032,00 | - | - | 807.177.032,00 | 1,1% | 21,0% |
| RAÍZEN S.A. | BANCO SANTANDER (BRASIL) S/A | Sim | AVAL CPRF SANTANDER - LP - AGO2028 | BRL | 207.803.048,00 | - | - | 207.803.048,00 | 0,4% | 21,4% |
| RAÍZEN S.A. | BANCO DO BRASIL S.A. | Sim | AVAL NCE BB NR 20/00100-2 | BRL | 1.033.507.056,00 | - | - | 1.033.507.056,00 | 1,7% | 23,1% |
| RAÍZEN S.A. | BNP PARIBAS | Sim | AVAL PPE_BNP_USD125MLN - RCF TB130571 | USD | - | 70.154.791,47 | - | 361.804.317,97 | 0,6% | 23,7% |
| RAÍZEN S.A. | COOPERATIEVE RABOBANK U.A. | Sim | AVAL PPE CP RABOBANK USD 100M 09.05.22 RCF TB130491 | USD | - | 102.860.988,57 | - | 536.243.513,53 | 0,9% | 24,5% |
| RAÍZEN S.A. | COOPERATIEVE RABOBANK U.A. | Sim | AVAL PPE LP RABOBANK USD 200M 12.05.22 (VCTO 11.05.27) RCF TB164630 | USD | - | 200.733.500,00 | - | 1.046.483.955,55 | 1,7% | 26,2% |
| RAÍZEN S.A. | BANK OF AMERICA, N.A. | Sim | AVAL PPE LP BOFA USD 50M MAL23 (VENCTO 26.06.27) RCF TB106559 | USD | - | 50.061.304,11 | - | 260.984.596,72 | 0,4% | 26,6% |
| RAÍZEN S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | AVAL PPE LP SMBC USD 200M JUN.22 (VENCTO 14.06.27) RCF TB107946 | USD | - | 200.220.166,66 | - | 1.004.130.126,95 | 1,7% | 28,3% |
| RAÍZEN S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | AVAL PPE SMBC - ST - MAR25 - RCF TB160313 | USD | - | 102.598.116,85 | - | 534.874.762,78 | 0,9% | 29,2% |
| RAÍZEN S.A. | COOPERATIEVE RABOBANK U.A. | Sim | AVAL PPE LP BSV1 RABOBANK USD44M 10.04.25 - RCF TB167264 | USD | - | 45.035.392,02 | - | 234.788.222,53 | 0,4% | 29,6% |
| RAÍZEN S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | AVAL PPE SMBC - LT - FEV2026 - RCF TB164651 | USD | - | 70.169.765,14 | - | 365.920.302,60 | 0,6% | 30,2% |
| RAÍZEN S.A. | THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED | Sim | PPE HSBC - LT - FEV.2028 - RCF TB163924 | USD | - | 85.849.955,41 | - | 447.559.487,22 | 0,7% | 30,9% |
| RAÍZEN S.A. | JPMORGAN CHASE BANK, N.A. | Sim | PPE LP JPMORGAN USD50M 28.04.25 - RCF TB168066 | USD | - | 51.006.854,33 | - | 265.914.033,70 | 0,4% | 31,3% |
| RAÍZEN S.A. | MUFG BANK, LTD. | Sim | PPE LP MUFG USD100M 29.04.25 - RCF TB168146 | USD | - | 100.618.537,78 | - | 524.554.623,00 | 0,8% | 32,1% |
| RAÍZEN S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE LP RABOBANK USD30M 29.04.25 - RCF TB168055 | USD | - | 30.617.840,10 | - | 159.619.943,14 | 0,3% | 32,4% |
| RAÍZEN S.A. | MUFG BANK, LTD. | Sim | PPE LP MUFG USD75M 30.10.25 | USD | - | 75.444.180,75 | - | 393.313.147,50 | 0,6% | 33,0% |
| RAÍZEN S.A. | THE BANK OF NOVA SCOTIA | Sim | PPE LP SCOTIABANK USD300M 30.10.25 | USD | - | 305.185.419,67 | - | 1.591.023.132,71 | 2,6% | 35,6% |
| RAÍZEN S.A. | JPMORGAN CHASE BANK, N.A. | Sim | AVAL PPE JPM - LT - FEV/2030 - RCF TB164509 | USD | - | 100.283.222,79 | - | 522.806.525,32 | 0,8% | 36,4% |
| RAÍZEN S.A. | BANCO CITIBANK S.A. | Sim | AVAL NCE CITI - LT - FEV/26 - BSV1 | USD | - | 83.122.948,50 | - | 433.344.887,40 | 0,7% | 37,1% |
| RAÍZEN S.A. | BANCO BILBAO VIZCAYA ARGENTARA, S.A. NEW YORK BRANCH | Sim | PPE BBVA - LT - JAN2030 - RCF TB163304 | USD | - | 201.741.563,55 | - | 1.051.739.293,26 | 1,7% | 39,8% |
| RAÍZEN S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE RABOBANK USD 50MM 2026 - RCF TB091059 | USD | - | 50.356.811,11 | - | 262.524.120,70 | 0,4% | 39,2% |
| RAÍZEN S.A. | BANK OF AMERICA, N.A. | Sim | PPE SBOF.II BOFA 70MM - RCF TB131086 | USD | - | 70.826.921,00 | - | 369.241.987,41 | 0,6% | 39,8% |
| RAÍZEN S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | Sim | PPE_CREDIT_USD50MM - RCF TB130986 | USD | - | 50.503.125,00 | - | 263.287.941,57 | 0,4% | 40,2% |
| RAÍZEN S.A. | MUFG BANK, LTD. | Sim | PPE LP MUFG USD50M 12.08.25 | USD | - | 50.196.419,17 | - | 261.688.992,04 | 0,4% | 40,7% |
| RAÍZEN S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 20.000.000,00 | - | 104.266.000,00 | 0,2% | 40,8% |
| RAÍZEN S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 20.000.000,00 | - | 104.266.000,00 | 0,2% | 41,0% |
| RAÍZEN S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 10.000.000,00 | - | 52.133.000,00 | 0,1% | 41,1% |
| RAÍZEN S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 15.000.000,00 | - | 78.199.500,00 | 0,1% | 41,2% |
| RAÍZEN S.A. | BNP PARIBAS S.A. | Sim | AVAL ECA | USD | - | 30.008.637,97 | - | 156.433.605,73 | 0,3% | 41,5% |
| RAÍZEN S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 32843267 | BRL | 260.239.664,00 | - | - | 260.239.664,00 | 0,4% | 41,9% |
| RAÍZEN S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO Nº364040952023 E 364041742023 | BRL | 300.521.410,00 | - | - | 300.521.410,00 | 0,5% | 42,4% |
| RAÍZEN S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 32810121 | BRL | 385.656.626,00 | - | - | 385.656.626,00 | 0,6% | 43,0% |
| RAÍZEN S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | Sim | AVAL REVOLVING LOAN FACILITY AGREEMENT | USD | - | 1.388.750,00 | - | 7.239.970,38 | 0,0% | 43,0% |
| RAÍZEN S.A. | BANCO BRADESCO S.A. | Sim | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 43,0% |
| RAÍZEN S.A. | Banco Morgan Stanley S.A. | Sim | Operações Derivativas | BRL | 194.215.153,81 | - | - | 194.215.153,81 | 0,3% | 43,3% |
| RAÍZEN S.A. | Banco BNP Paribas Brasil S.A. | Sim | Operações Derivativas | BRL | 632.993.716,37 | - | - | 632.993.716,37 | 0,9% | 44,2% |
| RAÍZEN S.A. | BANCO CITIBANK S.A. | Sim | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,2% |
| RAÍZEN S.A. | BANK OF AMERICA MERRILL LYNCH BANCO MÚLTIPLO S.A. | Sim | Operações Derivativas | BRL | 388.945.345,41 | - | - | 388.945.345,41 | 0,6% | 44,8% |

| Credor | Banco | Tipo | Operação | Moeda | V1 | V2 | V3 | V4 | % | % |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN S.A. | BANCO CRÉDIT AGRICOLE BRASIL S.A. | Sim | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,9% |
| RAÍZEN S.A. | BANCO DO BRASIL S.A. | Sim | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,9% |
| RAÍZEN S.A. | Scotiabank Brasil S.A. Banco Múltiplo | Sim | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,9% |
| RAÍZEN S.A. | Banco MUFG Brasil S.A. | Sim | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,9% |
| RAÍZEN S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | Operações Derivativas | BRL | 31.804.945,02 | - | - | 31.804.945,02 | 0,1% | 44,9% |
| RAÍZEN S.A. | BANCO HSBC S.A. | Sim | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,9% |
| **Subtotal Créditos Aderentes** | **-** | | **-** | **-** | **5.413.491.940,34** | **3.737.810.756,64** | **806.192.300,00** | **27.959.807.939,43** | **44,9%** | **44,9%** |

| Credor | Banco | Tipo | Operação | Moeda | V1 | V2 | V3 | V4 | % | % |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN S.A. | U.S. BANK NATIONAL ASSOCIATION | Não | AVAL US BOND 2256M 20.01.2027 | USD | - | 172.935.042,50 | - | 901.962.257,07 | 1,4% | - |
| RAÍZEN S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2032 | USD | - | 458.674.430,39 | - | 2.391.207.407,95 | 3,8% | - |
| RAÍZEN S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2054 | USD | - | 710.599.982,54 | - | 3.704.414.489,98 | 5,9% | - |
| RAÍZEN S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2035 | USD | - | 726.194.608,07 | - | 3.780.501.683,91 | 6,1% | - |
| RAÍZEN S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2034 | USD | - | 407.211.460,15 | - | 2.122.915.677,24 | 3,4% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA VII 228.19E_1PE RAÍZEN 1°PS_CRA01900002 | BRL | 232.762.892,92 | - | - | 232.762.892,92 | 0,4% | - |
| RAÍZEN S.A. | OPEA SECURITIZADORA S.A. | Não | AVAL CRA VI IPCA 600MM CRA 2.CIA 2.CRA01900037 | BRL | 905.715.403,49 | - | - | 905.715.403,49 | 1,5% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA IX 1.560.000.000_3PE RAÍZEN 1°PS_CRA02200NNB | BRL | 1.282.945.117,90 | - | - | 1.282.945.117,90 | 2,1% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA IX 940.000.000_5PE RAÍZEN 2°PS_CRA02200NND | BRL | 1.138.606.159,36 | - | - | 1.138.606.159,36 | 1,8% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA VII 787.00E_1PE RAÍZEN 1°PS_CRA01900013 | BRL | 1.153.262.972,56 | - | - | 1.153.262.972,56 | 1,9% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA VIII 302.42E_1PE RAÍZEN 1°PS_CRA02000197 | BRL | 501.203.718,45 | - | - | 501.203.718,45 | 0,8% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA VII 728.05E_1PE RAÍZEN 1°PS_CRA02000198 | BRL | 1.036.294.576,25 | - | - | 1.036.294.576,25 | 1,7% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA DOCTOR X - 3° SÉRIE - 10/2033_CRA02300JR7 | BRL | 567.943.906,36 | - | - | 567.943.906,36 | 0,9% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA DOCTOR X - 1° SÉRIE - 10/2030_CRA02300JR5 | BRL | 218.430.087,03 | - | - | 218.430.087,03 | 0,4% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA DOCTOR X - 2° SÉRIE - 10/2033_CRA02300JR6 | BRL | 301.264.360,68 | - | - | 301.264.360,68 | 0,5% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURE INCENTIVADA 4° SERIE ÚNICA RESA14 | BRL | 1.008.259.859,87 | - | - | 1.008.259.859,87 | 1,6% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURE INCENTIVADA 5° EMISSÃO - RESA15 | BRL | 241.287.186,67 | - | - | 241.287.186,67 | 0,4% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURE INCENTIVADA - RESA17 | BRL | 536.888.542,23 | - | - | 536.888.542,23 | 0,9% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURE INCENTIVADA - RESA17 | BRL | 861.798.942,95 | - | - | 861.798.942,95 | 1,3% | - |
| RAÍZEN S.A. | BANK OF CHINA LIMITED, GRAND CAYMAN BRANCH | Não | AVAL PPE BANK OF CHINA USD 150 MILHÕES ROF TB103957 | USD | - | 162.475.603,35 | - | 794.802.261,48 | 1,3% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURES INCENTIVADA - 3° EMISSÃO - 1° SÉRIE RAIZ13 | BRL | 958.673.055,24 | - | - | 958.673.055,24 | 1,5% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA - 3° EMISSÃO - 2° SÉRIE RAIZ23 | BRL | 662.287.301,90 | - | - | 662.287.301,90 | 1,1% | - |
| RAÍZEN S.A. | CITIBANK N.A. | Não | AVAL FIDEMPO | USD | - | 6.270.756,16 | - | 32.691.932,05 | 0,1% | - |
| RAÍZEN S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL RETAP BOND 2054 | USD | - | 610.817.239,72 | - | 3.184.373.015,83 | 5,1% | - |
| RAÍZEN S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2037 | USD | - | 686.078.487,01 | - | 3.582.372.876,33 | 5,8% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURES - 2° EMISSÃO RSA RAIZ12 | BRL | 1.081.109.760,73 | - | - | 1.081.109.760,73 | 1,7% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURES - 4° EMISSÃO RSA RAIZ14 | BRL | 868.635.172,83 | - | - | 868.635.172,83 | 1,4% | - |
| RAÍZEN S.A. | XP COMERCIALIZADORA DE ENERGIA S.A. | Não | AVAL CONTRATO DE COMPRA E VENDA DE ENERGIA ELÉTRICA LP 35.2023 | BRL | 170.000.000,00 | - | - | 170.000.000,00 | 0,3% | - |
| RAÍZEN S.A. | XP INVESTIMENTOS CORRETORA DE CÂMBIO, TÍTULOS E VALORES MOBILIÁRIOS S.A. | Não | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. | Deutsche Bank S.A. | Não | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. | Banco Mizuho do Brasil S.A. | Não | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. | BTG PACTUAL S.A. | Não | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. | Macquarie Bank LTD | Não | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. | Goldman Sachs do Brasil Banco Múltiplo S.A. | Não | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| **Subtotal Créditos Não Aderentes** | **-** | | **-** | **-** | **13.807.368.626,22** | **3.932.198.114,79** | **-** | **34.362.316.502,06** | **55,1%** | **-** |

| **Total** | **-** | | **-** | **-** | **19.272.770.760,56** | **7.870.810.911,43** | **806.192.300,00** | **62.332.112.491,50** | **100,0%** | **44,9%** |

RAÍZEN ENERGIA S.A.

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.300% Notes due 2027 | Sim | US BOND 2294M 20.01.3027 | USD | - | 16.200.028,19 | - | 84.455.606,96 | 0,1% | 0,1% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.200% Notes due 2032 | Sim | BOND 2032 | USD | - | 299.388.486,28 | - | 1.560.854.128,52 | 2,5% | 2,6% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.450% Green Notes due 2054 | Sim | BOND 2054 | USD | - | 290.125.593,79 | - | 1.513.555.757,92 | 2,4% | 5,0% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.700% Green Notes due 2035 | Sim | BOND 2035 | USD | - | 283.226.898,60 | - | 1.476.546.581,54 | 2,3% | 7,4% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.500% Green Notes due 2054 | Sim | BOND 2054 | USD | - | 93.271.145,74 | - | 486.250.464,09 | 0,8% | 8,1% |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | Sim | AVAL RETIAF BOND 2054 | USD | - | 138.906.718,61 | - | 729.373.696,13 | 1,2% | 9,3% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.700% Notes due 2037 | Sim | BOND 2037 | USD | - | 313.713.175,68 | - | 1.635.480.919,52 | 2,6% | 11,9% |
| RAÍZEN ENERGIA S.A. | ITAÚ UNIBANCO S.A. | Sim | DEBENTURE INCENTIVADA 4ª SERIE ÚNICA RESA14 | BRL | 298.432.582,93 | - | - | 298.432.582,93 | 0,5% | 12,3% |
| RAÍZEN ENERGIA S.A. | BNP PARIBAS | Sim | AVAL LOAN SACE 300MM | EUR | - | - | 305.279.433,33 | 1.844.869.156,14 | 2,9% | 15,3% |
| RAÍZEN ENERGIA S.A. | BNP PARIBAS | Sim | AVAL LOAN SACE 200MM | EUR | - | - | 200.913.866,67 | 1.214.192.770,48 | 1,9% | 17,2% |
| RAÍZEN ENERGIA S.A. | BANK OF AMERICA, N.A. | Sim | PPE BOFA - LT - JAN/2026 - ROF TB160586 - BSV1 | USD | - | 100.563.471,67 | - | 524.423.945,84 | 0,8% | 18,0% |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CPR-F 750MM | BRL | 783.226.402,50 | - | - | 783.226.402,50 | 1,2% | 19,3% |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CPR-F 250MM | BRL | 261.175.737,50 | - | - | 261.175.737,50 | 0,4% | 19,7% |
| RAÍZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | CPRF 8BA - LP - ABR/2030 | BRL | 203.233.347,05 | - | - | 203.233.347,05 | 0,3% | 20,0% |
| RAÍZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | CPRF 8BA - LP - JUN/2030 | BRL | 310.057.330,70 | - | - | 310.057.330,70 | 0,5% | 20,5% |
| RAÍZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | CPRF 8BA - LP - JUN/2027 | BRL | 722.710.137,56 | - | - | 722.710.137,56 | 1,1% | 21,7% |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) S/A | Sim | CPRF SANTANDER - LP - JUN/2028 | BRL | 667.177.032,00 | - | - | 667.177.032,00 | 1,1% | 22,7% |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) S/A | Sim | CPRF SANTANDER - LP - AGO/2028 | BRL | 267.803.348,00 | - | - | 267.803.348,00 | 0,4% | 23,2% |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CPRF BRADESCO - LP - JUL/2030 | BRL | 766.904.647,50 | - | - | 766.904.647,50 | 1,2% | 24,4% |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CREDITO RURAL LIVRE BRL 293MM - LT JUL/28 | BRL | 273.848.581,00 | - | - | 273.848.581,00 | 0,4% | 24,8% |
| RAÍZEN ENERGIA S.A. | BANCO DO BRASIL S.A. | Sim | NCE BB NR.20/00100-2 | BRL | 1.033.507.558,00 | - | - | 1.033.507.558,00 | 1,6% | 26,4% |
| RAÍZEN ENERGIA S.A. | BNP PARIBAS | Sim | PPE_BNP_USD125MLN - ROF TB15057I | USD | - | 75.154.781,47 | - | 391.854.317,87 | 0,6% | 27,1% |
| RAÍZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE CP RABOBANK USD 100M 06.05.22 ROF TB130481 | USD | - | 102.980.690,57 | - | 536.243.513,53 | 0,9% | 27,9% |
| RAÍZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE LP RABOBANK USD 200M 12.05.22 (VCTO 11.05.27) ROF TB104500 | USD | - | 200.733.505,00 | - | 1.046.483.955,55 | 1,7% | 29,6% |
| RAÍZEN ENERGIA S.A. | BANK OF AMERICA, N.A. | Sim | PPE LP BOFA USD 50M MAJ.22 (VENCTO 28.05.27) ROF TB106559 | USD | - | 50.901.304,11 | - | 260.964.596,72 | 0,4% | 30,0% |
| RAÍZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | PPE LP SMBC USD 200M JUN.22 (VENCTO 14.06.27) ROF TB107646 | USD | - | 202.200.166,66 | - | 1.054.130.126,85 | 1,7% | 31,7% |
| RAÍZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | PPE SMBC - ST - MAR/26 - ROF TB165513 | USD | - | 102.598.116,86 | - | 534.874.762,78 | 0,8% | 32,5% |
| RAÍZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE LP BSV1 RABOBANK USD240M 10.04.25 - ROF TB167264 | USD | - | 45.036.392,02 | - | 234.788.203,20 | 0,4% | 32,9% |
| RAÍZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | AVAL PPE SMBC - LT - FEV/2026 - ROF TB164631 | USD | - | 70.189.765,14 | - | 365.920.302,60 | 0,6% | 33,5% |
| RAÍZEN ENERGIA S.A. | THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED | Sim | AVAL PPE HSBC - LT - FEV/2026 - ROF TB163624 | USD | - | 85.849.550,41 | - | 447.559.487,22 | 0,7% | 34,2% |
| RAÍZEN ENERGIA S.A. | JPMORGAN CHASE BANK, N.A. | Sim | AVAL PPE LP JPMORGAN USD50M 28.04.25 - ROF TB166066 | USD | - | 51.006.854,33 | - | 265.914.033,70 | 0,4% | 34,6% |
| RAÍZEN ENERGIA S.A. | MUFG BANK, LTD | Sim | AVAL PPE LP MUFG USD100M 28.04.25 - ROF TB166146 | USD | - | 100.618.537,78 | - | 524.554.823,00 | 0,8% | 35,4% |
| RAÍZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | AVAL PPE LP RABOBANK USD30M 28.04.25 - ROF TB166055 | USD | - | 30.617.840,10 | - | 159.618.943,14 | 0,3% | 35,7% |
| RAÍZEN ENERGIA S.A. | MUFG BANK, LTD | Sim | AVAL PPE LP MUFG USD75M 30.10.25 | USD | - | 75.444.180,75 | - | 393.312.147,30 | 0,6% | 36,3% |
| RAÍZEN ENERGIA S.A. | THE BANK OF NOVA SCOTIA | Sim | AVAL PPE LP SCOTIABANK USD300M 30.10.25 | USD | - | 305.185.416,67 | - | 1.591.023.132,71 | 2,5% | 38,8% |
| RAÍZEN ENERGIA S.A. | JPMORGAN CHASE BANK, N.A. | Sim | AVAL PPE JPM - LT - FEV/2030 - ROF TB164589 | USD | - | 100.283.222,78 | - | 522.856.526,32 | 0,8% | 39,7% |
| RAÍZEN ENERGIA S.A. | BANCO CITIBANK S.A. | Sim | NCE CITI - LT - FEV/26 - BSV1 | USD | - | 83.122.648,50 | - | 433.344.867,40 | 0,7% | 40,4% |
| RAÍZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | AVAL PPE RABOBANK USD 50MM 2026 - ROF TB00101601 | USD | - | 50.358.611,11 | - | 262.524.120,70 | 0,4% | 40,8% |
| RAÍZEN ENERGIA S.A. | BANK OF AMERICA, N.A. | Sim | AVAL PPE SBOP II BOFA 70MM - ROF TB131086 | USD | - | 70.826.921,03 | - | 369.241.987,41 | 0,6% | 41,4% |
| RAÍZEN ENERGIA S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | Sim | AVAL PPE_CREDIT_USD30MM - ROF TB130866 | USD | - | 50.503.125,00 | - | 263.267.941,57 | 0,4% | 41,8% |
| RAÍZEN ENERGIA S.A. | MUFG BANK, LTD | Sim | AVAL PPE LP MUFG USD50M 12.08.25 | USD | - | 50.196.419,17 | - | 261.688.992,04 | 0,4% | 42,2% |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER S.A | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 20.000.000,00 | - | 104.266.000,00 | 0,2% | 42,4% |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER S.A | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 20.000.000,00 | - | 104.266.000,00 | 0,2% | 42,5% |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER S.A | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 10.000.000,00 | - | 52.133.000,00 | 0,1% | 42,6% |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER S.A | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 15.000.000,00 | - | 78.199.500,00 | 0,1% | 42,7% |
| RAÍZEN ENERGIA S.A. | BNP PARIBAS S.A | Sim | AVAL ECA | USD | - | 30.008.637,97 | - | 156.433.805,73 | 0,2% | 43,0% |
| RAÍZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVICOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 32942697 | BRL | 262.239.864,00 | - | - | 262.239.864,00 | 0,5% | 43,5% |
| RAÍZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVICOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO Nº36404860/3021 E 36404174/2022) | BRL | 300.521.410,00 | - | - | 300.521.410,00 | 0,5% | 43,9% |
| RAÍZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVICOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 32810123 | BRL | 385.658.828,00 | - | - | 385.658.828,00 | 0,6% | 44,5% |
| RAÍZEN ENERGIA S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | Sim | AVAL REVOLVING LOAN FACILITY AGREEMENT | USD | - | 1.386.750,00 | - | 7.229.970,38 | 0,0% | 44,6% |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 163-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,6% |
| RAÍZEN ENERGIA S.A. | Banco Morgan Stanley S.A. | Sim | Operações Derivativas | BRL | 399.874.329,47 | - | - | - | 399.874.329,47 | 0,6% | 45,2% |
| RAÍZEN ENERGIA S.A. | Banco BNP Paribas Brasil S.A | Sim | Operações Derivativas | BRL | 72.920.287,19 | - | - | - | 72.920.287,19 | 0,1% | 45,3% |
| RAÍZEN ENERGIA S.A. | BANCO CITIBANK S.A. | Sim | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 163-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 45,3% |
| RAÍZEN ENERGIA S.A. | BANCO CRÉDIT AGRICOLE BRASIL S.A. | Sim | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 163-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 45,3% |
| RAÍZEN ENERGIA S.A. | BANCO DO BRASIL S.A. | Sim | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 163-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 45,3% |
| RAÍZEN ENERGIA S.A. | COOPERATIVE RABOBANK U.A. | Sim | Operações Derivativas | BRL | 10.350.878,17 | - | - | - | 10.350.878,17 | 0,0% | 45,3% |
| Raízen Energia S.A. | JP Morgan Chase Bank, NA | Sim | Operações Derivativas | USD | 9.860.079,78 | - | - | - | 51.403.546,70 | 0,1% | 45,4% |
| **Subtotal Créditos Aderentes** | | **-** | | **-** | **7.027.442.602,66** | **3.543.737.311,87** | **566.162.300,00** | | **28.591.566.897,21** | **45,4%** | **45,4%** |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN ENERGIA S.A. | U.S. BANK NATIONAL ASSOCIATION | Não | AVAL US BOND 22SMM 20.01.2027 | USD | - | 172.055.542,50 | - | - | 951.562.357,07 | 1,4% | - |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2032 | USD | - | 458.674.430,39 | - | - | 2.591.207.407,95 | 3,8% | - |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2034 | USD | - | 710.909.982,54 | - | - | 3.784.414.488,98 | 5,9% | - |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2035 | USD | - | 725.164.808,07 | - | - | 3.780.501.893,91 | 6,0% | - |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2054 | USD | - | 407.211.493,15 | - | - | 2.122.915.077,34 | 3,4% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA VII 226.190_1PE RAÍZEN 1°PS_CRA01890I3V2 | BRL | 232.782.860,92 | - | - | - | 232.782.860,92 | 0,4% | - |
| RAÍZEN ENERGIA S.A. | OPEA SECURITIZADORA S.A. | Não | CRA VI PCA 600MM CRA.2.CRA.2.CRA01900GT | BRL | 905.715.403,49 | - | - | - | 905.715.403,49 | 1,4% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA IX 1.060.000.000_1P.E RAÍZEN 1°PS_CRA022008N8 | BRL | 1.262.945.117,90 | - | - | - | 1.262.945.117,90 | 2,0% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA IX 940.000.000_1PE RAÍZEN 2°PS_CRA022008N0 | BRL | 1.138.606.159,36 | - | - | - | 1.138.606.159,36 | 1,8% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA VII 787.658_1PE RAÍZEN 1°PS_CRA01900I3V3 | BRL | 1.153.262.672,99 | - | - | - | 1.153.262.672,99 | 1,8% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA VIII 392.420_1PE RAÍZEN 1°PS_CRA02000I3P7 | BRL | 501.203.718,45 | - | - | - | 501.203.718,45 | 0,8% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA VIII 728.056_10°E RAÍZEN 2°PS_CRA02000I1P8 | BRL | 1.036.294.576,25 | - | - | - | 1.036.294.576,25 | 1,6% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA DOCTOR X - 3° SÉRIE - 10/2033_CRA02000LIR7 | BRL | 567.943.999,36 | - | - | - | 567.943.999,36 | 0,9% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA DOCTOR X - 1° SÉRIE - 10/2033_CRA02000LIR5 | BRL | 218.430.067,03 | - | - | - | 218.430.067,03 | 0,3% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA DOCTOR X - 2° SÉRIE - 10/2033_CRA02000LIR6 | BRL | 301.264.360,68 | - | - | - | 301.264.360,68 | 0,5% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA 4° SÉRIE ÚNICA RES414 | BRL | 1.008.259.859,87 | - | - | - | 1.008.259.859,87 | 1,6% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA 6° EMISSÃO - RES415 | BRL | 241.287.166,67 | - | - | - | 241.287.166,67 | 0,4% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA - RES417 | BRL | 536.888.542,23 | - | - | - | 536.888.542,23 | 0,8% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA - RES417 | BRL | 961.798.942,95 | - | - | - | 961.798.942,95 | 1,5% | - |
| RAÍZEN ENERGIA S.A. | BANK OF CHINA LIMITED, GRAND CAYMAN BRANCH | Não | PPE BANK OF CHINA USD 150 MILHÕES ROF TB133967 | USD | - | 152.475.833,25 | - | - | 794.902.261,46 | 1,3% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURES INCENTIVADA - 3° EMISSÃO - 1° SÉRIE RAIZ13 | BRL | 958.673.055,24 | - | - | - | 958.673.055,24 | 1,5% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURE INCENTIVADA - 3° EMISSÃO R3A - 2° SÉRIE RAIZ23 | BRL | 652.287.301,90 | - | - | - | 652.287.301,90 | 1,1% | - |
| RAÍZEN ENERGIA S.A. | CITIBANK N.A | Não | AVAL FIDEIMPO | USD | - | 6.270.788,16 | - | - | 32.691.532,05 | 0,1% | - |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL RETAP BOND 2054 | USD | - | 610.817.236,72 | - | - | 3.184.373.515,85 | 5,0% | - |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2037 | USD | - | 689.078.467,01 | - | - | 3.592.372.878,33 | 5,7% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURES - 2° EMISSÃO R3A RAIZ12 | BRL | 1.061.109.790,73 | - | - | - | 1.061.109.790,73 | 1,7% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURES - 4° EMISSÃO R3A RAIZ14 | BRL | 868.635.172,63 | - | - | - | 868.635.172,63 | 1,4% | - |
| RAÍZEN ENERGIA S.A. | XP COMERCIALIZADORA DE ENERGIA S.A. | Não | AVAL CONTRATO DE COMPRA E VENDA DE ENERGIA ELÉTRICA LP.20.2023 | BRL | 170.000.000,00 | - | - | - | 170.000.000,00 | 0,3% | - |
| RAÍZEN ENERGIA S.A. | XP INVESTIMENTOS CORRETORA DE CÂMBIO, TÍTULOS E VALORES MOBILIÁRIOS S.A | Não | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 163-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN ENERGIA S.A. | Goldman Sachs do Brasil Banco Múltiplo S.A | Não | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 163-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| **Subtotal Créditos Não Aderentes** | | **-** | | **-** | **13.957.369.820,22** | **3.933.100.114,79** | **-** | | **34.362.319.882,55** | **54,6%** | **-** |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Total** | | **-** | | **-** | **20.984.811.422,88** | **7.476.835.426,66** | **566.162.300,00** | | **62.943.917.409,37** | **100,0%** | **45,4%** |

**RAÍZEN CENTRO-SUL PAULISTA S.A.**

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN CENTRO-SUL PAULISTA S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | PPE SMBC - LT - FEV/2028 - ROF TB164631 | USD | - | 70.199.765,14 | - | 365.920.302,60 | 41,2% | 41,2% |
| RAÍZEN CENTRO-SUL PAULISTA S.A. | JPMORGAN CHASE BANK, N.A. | Sim | PPE JPM - LT - FEV/2030 - ROF TB164589 | USD | - | 100.283.222,78 | - | 522.806.525,32 | 58,8% | 100,0% |
| Subtotal Créditos Aderentes | - | | - | - | - | 170.472.987,92 | - | 888.726.827,92 | 100,0% | 100,0% |
| Total | - | - | - | - | - | 170.472.987,92 | - | 888.726.827,92 | 100,0% | 100,0% |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 65

**RAÍZEN CENTRO-SUL S.A.**

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN CENTRO-SUL S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | Operações Derivativos | BRL | 3.500.000,00 | - | - | 3.500.000,00 | 76,8% | 76,8% |
| RAÍZEN CENTRO-SUL S.A. | COOPERATIEVE RABOBANK U.A. | Sim | Operações Derivativos | BRL | 1.060.000,00 | - | - | 1.060.000,00 | 23,2% | 100,0% |
| Subtotal Créditos Aderentes | - | | - | - | 4.560.000,00 | - | - | 4.560.000,00 | 100,0% | 100,0% |
| Total | - | - | - | - | 4.560.000,00 | - | - | 4.560.000,00 | 100,0% | 100,0% |

**BLUEWAY TRADING IMPORTACAO E EXPORTACAO S.A.**

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| BLUEWAY TRADING IMPORTACAO E EXPORT | BANCO ITAÚ UNIBANCO S.A. | Sim | Operações Derivativas | BRL | 2.744.211,48 | - | - | 2.744.211,48 | 100,0% | 100,0% |
| Subtotal Créditos Aderentes | - | | - | | 2.744.211,48 | - | - | 2.744.211,48 | 100,0% | 100,0% |
| BLUEWAY TRADING IMPORTACAO E EXPORT | Goldman Sachs do Brasil Banco Múltiplo S.A | Não | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 0,0% |
| Subtotal Créditos Não Aderentes | - | | - | - | - | - | - | | 0,0% | 0,0% |
| Total | - | | - | - | 2.744.211,48 | - | - | 2.744.211,48 | 100,0% | 100,0% |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 67

**RAÍZEN TRADING S.A.**

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN TRADING S.A. | CITIBANK N.A. | Sim | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 100,0% | 100,0% |
| Subtotal Créditos Aderentes | - | | - | - | - | - | - | - | 100,0% | 100,0% |
| Total | - | - | - | - | - | - | - | - | 100,0% | 100,0% |

**RAÍZEN FUELS FINANCE S.A.**

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.300% Notes due 2027 | Sim | US BOND 225MM 20.01.2027 | USD | - | 16.200.028,19 | - | 84.455.606,96 | 0,3% | 0,3% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.250% Notes due 2032 | Sim | BOND 2032 | USD | - | 299.398.486,28 | - | 1.560.854.128,52 | 5,2% | 5,4% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.450% Green Notes due 2034 | Sim | BOND 2034 | USD | - | 290.325.850,79 | - | 1.513.555.757,92 | 5,0% | 10,4% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.700% Green Notes due 2035 | Sim | BOND 2035 | USD | - | 283.226.858,60 | - | 1.476.546.581,94 | 4,9% | 15,3% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.950% Green Notes due 2054 | Sim | BOND 2054 | USD | - | 93.271.145,74 | - | 486.250.464,09 | 1,6% | 16,9% |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Sim | RETAP BOND 2054 | USD | - | 139.906.718,61 | - | 729.375.696,13 | 2,4% | 19,4% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.700% Notes due 2037 | Sim | BOND 2037 | USD | - | 313.713.179,66 | - | 1.635.480.919,52 | 5,4% | 24,8% |
| RAÍZEN FUELS FINANCE S.A. | BNP PARIBAS | Sim | LOAN SACE 300MM | EUR | - | - | 305.278.433,33 | 1.844.889.156,14 | 6,1% | 30,9% |
| RAÍZEN FUELS FINANCE S.A. | BNP PARIBAS | Sim | LOAN SACE II 200MM | EUR | - | - | 200.913.866,67 | 1.214.182.770,45 | 4,0% | 34,9% |
| RAÍZEN FUELS FINANCE S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | Sim | REVOLVING LOAN FACILITY AGREEMENT | USD | - | 1.388.750,00 | - | 7.239.970,38 | 0,0% | 34,9% |
| **Subtotal Créditos Aderentes** | **-** | **-** | **-** | | **-** | **1.437.431.017,87** | **506.192.300,00** | **10.552.831.052,05** | **34,9%** | **34,9%** |
| | | | | | | | | | | |
| RAÍZEN FUELS FINANCE S.A. | U.S. BANK NATIONAL ASSOCIATION | Não | US BOND 225MM 20.01.2027 | USD | - | 172.935.042,50 | - | 901.562.257,07 | 3,0% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2032 | USD | - | 458.674.430,39 | - | 2.391.207.407,95 | 7,9% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2034 | USD | - | 710.569.982,54 | - | 3.704.414.489,98 | 12,3% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2035 | USD | - | 725.164.808,07 | - | 3.780.501.693,91 | 12,5% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2054 | USD | - | 407.211.493,15 | - | 2.123.915.677,24 | 7,0% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | RETAP BOND 2054 | USD | - | 610.817.239,72 | - | 3.184.373.515,83 | 10,5% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2037 | USD | - | 699.078.487,01 | - | 3.592.372.676,33 | 11,9% | - |
| **Subtotal Créditos Não Aderentes** | **-** | **-** | **-** | | **-** | **3.774.451.483,38** | **-** | **19.677.347.918,31** | **65,1%** | **-** |
| | | | | | | | | | | |
| **Total** | **-** | **-** | **-** | | **-** | **5.211.882.501,25** | **506.192.300,00** | **30.230.178.970,36** | **100,0%** | **34,9%** |

RAIZEN CAARAPO ACUCAR E ALCOOL LTDA

| Devedora Principal ou Garantidora | Credor | Tipo Credor | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN CAARAPO ACUCAR E ALCOOL LTDA | BANK OF AMERICA MERRILL LYNCH BANCO MÚLTIPLO S.A. | Sim | Aval Operações Derivativos | BRL | 388.645.349,41 | - | - | 388.645.349,41 | 100,0% | 100,0% |
| Subtotal Créditos Aderentes | - | - | - | | 388.645.349,41 | - | - | 388.645.349,41 | 100,0% | 100,0% |
| Total | - | - | - | | 388.645.349,41 | - | - | 388.645.349,41 | 100,0% | 100,0% |

**RAÍZEN NORTH AMERICA INC**

| Devedora Principal ou Garantidora | Credor | Tipo Credor | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN NORTH AMERICA INC | RAIZEN TRADING S.A. | Não | - | USD | - | 68.178.597,27 | - | 355.435.481,15 | N/A | N/A |
| Total | - | - | - | | - | 68.178.597,27 | - | 355.435.481,15 | N/A | N/A |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 71

**Anexo D**

USD Ptax Compra (09/03/26)    5,2125
EUR Ptax Compra (09/03/26)    6,0423

Consolidado

| Devedora Principal ou Garantidora | Creditor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN FUELS FINANCE S.A. | U.S. BANK NATIONAL ASSOCIATION | NÃO APLICÁVEL | US BOND 235MM 20.01.2027 | 20/01/2027 | 100 WALL STREET, 16TH FLOOR, NEW YORK, NEW YORK 10005, USA | PIERRE.DESAULNIERS@USBANK.COM; LOGAN.GIESEKE@USBANK.COM; TUAN.PHAN1@USBANK.COM; MICHELLE.MENA@USBANK.COM | USD | - | 189.135.070,69 | - | 986.017.994,03 |
| RAIZEN FUELS FINANCE S.A. | BNP PARIBAS | NÃO APLICÁVEL | LOAN SACE 300MM | 21/09/2035 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MANI@BR.BNPPARIBAS.COM; FELIPE.IRANI@BR.BNPPARIBAS.COM | EUR | - | - | 305.278.433,33 | 1.844.889.156,14 |
| RAIZEN FUELS FINANCE S.A. | BNP PARIBAS | NÃO APLICÁVEL | LOAN SACE II 200MM | 23/07/2036 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MANI@BR.BNPPARIBAS.COM; FELIPE.IRANI@BR.BNPPARIBAS.COM | EUR | - | - | 200.913.866,67 | 1.214.182.770,45 |
| RAIZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2032 | 08/07/2032 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITTO@BNY.COM; CENTRAL.CEDBILLINGTEAM@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | - | 758.072.916,67 | - | 3.952.361.536,46 |
| RAIZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITTO@BNY.COM; CENTRAL.CEDBILLINGTEAM@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.000.895.833,33 | - | 5.217.070.347,50 |
| RAIZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2035 | 17/01/2035 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITTO@BNY.COM; CENTRAL.CEDBILLINGTEAM@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.008.301.666,67 | - | 5.257.048.275,85 |
| RAIZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITTO@BNY.COM; CENTRAL.CEDBILLINGTEAM@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | - | 500.482.638,89 | - | 2.609.166.141,33 |
| RAIZEN ENERGIA S.A. | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | PPE BOFA – LT – JAN2028 - ROF TB18308I - B0V1 | 27/01/2028 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG.CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | - | 100.503.471,67 | - | 524.423.945,84 |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CPR-F 750MM | 26/11/2029 | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANSO@BRADESCO.COM.BR; RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | 760.229.402,50 | - | - | 760.229.402,50 |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CPR-F 250MM | 26/11/2029 | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANSO@BRADESCO.COM.BR; RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | 261.175.737,50 | - | - | 261.175.737,50 |
| RAIZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/4916-59 | CPRF IBBA – LP – ABR2030 | 28/04/2030 | AVENIDA BRIGADEIRO FARIA LIMA 3500, 1 2 3 PARTE, 4 E 5 ANDARES, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538102 | ITAUJUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 203.233.347,05 | - | - | 203.233.347,05 |
| RAIZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/4916-59 | CPRF IBBA – LP – JUN2030 | 13/06/2030 | AVENIDA BRIGADEIRO FARIA LIMA 3500, 1 2 3 PARTE, 4 E 5 ANDARES, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538102 | ITAUJUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 310.057.530,79 | - | - | 310.057.530,79 |
| RAIZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/4916-59 | CPRF IBBA – LP – JUN2027 | 14/06/2027 | AVENIDA BRIGADEIRO FARIA LIMA 3500, 1 2 3 PARTE, 4 E 5 ANDARES, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538102 | ITAUJUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 722.710.137,56 | - | - | 722.710.137,56 |
| RAIZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) S.A. | 90.400.888/0001-42 | CPRF SANTANDER – LP – JUN2028 | 20/06/2028 | AV PRES JUSCELINO KUBITSCHEK 2041, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543011 | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | BRL | 667.177.032,00 | - | - | 667.177.032,00 |
| RAIZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) S.A. | 90.400.888/0001-42 | CPRF SANTANDER – LP – AGO2028 | 21/08/2028 | AV PRES JUSCELINO KUBITSCHEK 2041, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543011 | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | BRL | 267.803.040,00 | - | - | 267.803.040,00 |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CPRF BRADESCO – LP – JUL2030 | 10/07/2030 | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANSO@BRADESCO.COM.BR; RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | 766.904.947,50 | - | - | 766.904.947,50 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VII 228, 190, 9PE RAIZEN I 1PS_CRA0190030V2 | 16/07/2029 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 232.782.892,92 | - | - | 232.782.892,92 |
| RAIZEN ENERGIA S.A. | OPEA SECURITIZADORA S.A. | 02.773.542/0001-22 | CRA VI IPCA 600MM CRA.2.CIA.2 CRA01900DG7 | 16/03/2026 | R GERASCO, 555, ANEXO TORRE C PARTE - VILA MADALENA, SÃO PAULO - SP - 05 453-001 | FINANCEIRO@OPEA.COM.BR | BRL | 909.715.403,49 | - | - | 909.715.403,49 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA IX 1.060.000.000, 9PE RAIZEN 1PS_CRA02200B4B | 17/09/2032 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.282.945.117,00 | - | - | 1.282.945.117,00 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA IX 940.000.000, 9PE RAIZEN 2PS_CRA02200ND | 17/09/2037 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.138.606.159,36 | - | - | 1.138.606.159,36 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VII 787.050, 9PE RAIZEN 2PS_CRA01900CV3 | 16/07/2029 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.153.262.672,58 | - | - | 1.153.262.672,58 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VIII 302.420, 9PE RAIZEN 1PS_CRA02200FP7 | 15/06/2027 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 501.203.718,45 | - | - | 501.203.718,45 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VIII 726.556, 9PE RAIZEN 2PS_CRA02200FR3 | 15/06/2032 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.036.294.576,25 | - | - | 1.036.294.576,25 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA DOCTTOR A - 3ª SÉRIE – 102033_CRA02300JR7 | 17/10/2033 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 567.943.998,36 | - | - | 567.943.998,36 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA DOCTTOR X - 4ª SÉRIE – 102033_CRA02300LR5 | 15/10/2030 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 218.430.567,03 | - | - | 218.430.567,03 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA DOCTTOR X - 2ª SÉRIE – 102033_CRA02300JR7 | 17/10/2033 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 301.264.360,88 | - | - | 301.264.360,88 |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CREDITO RURAL LIVRE BRL 250MM – LT JUL230 | 11/07/2026 | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANSO@BRADESCO.COM.BR; RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | 273.648.561,20 | - | - | 273.648.561,20 |
| RAIZEN ENERGIA S.A. | PENTAGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA 4ª SÉRIE UNICA RESI414 | 16/11/2026 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 E 303 E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 1.294.692.432,80 | - | - | 1.294.692.432,80 |
| RAIZEN ENERGIA S.A. | PENTAGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA 4ª EMISSÃO - RESI415 | 15/06/2030 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 E 303 E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 241.267.166,07 | - | - | 241.267.166,07 |
| RAIZEN ENERGIA S.A. | PENTAGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA - RESI417 | 15/03/2032 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 E 303 E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 536.888.542,23 | - | - | 536.888.542,23 |
| RAIZEN ENERGIA S.A. | PENTAGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA - RESI417 | 15/03/2029 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 E 303 E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 861.798.942,95 | - | - | 861.798.942,95 |
| RAIZEN ENERGIA S.A. | BANCO DO BRASIL S.A. | 00.000.000/0001-91 | NCE BB NR_200010S-2 | 20/12/2029 | QUADRA SCS QUADRA 5 BLOCO B TORRE I, II, III, IV ANDARES 1, 8L 5101 A 51502 A 51L, C101 A C1602 TR 5L, N101 A N1502, ASA NORTE, BRASILIA, DF, BRASIL, 70040912 | SECEX@BB.COM.BR | BRL | 1.033.507.006,00 | - | - | 1.033.507.006,00 |

| Entidade | Contraparte | Aplicável | Tipo / Ref | Data | Endereço | Contato | Moeda | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN ENERGIA S.A. | BNP PARIBAS | NÃO APLICÁVEL | PPE_BNP_USD129MLN - ROF T8130571 | 27/03/2029 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BNPPARIBAS.COM; JULIANA.MAM@BR.BNPPARIBAS.COM; FELIPE.IRANI@BR.BNPPARIBAS.COM | USD | - | 75.154.781,47 | - | 351.804.317,37 |
| RAÍZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE CP RABOBANK USD 100M 06.05.22 ROF T8130461 | 23/03/2029 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, Nº E 15º ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SÃO FRANCISCO, SÃO PAULO, SP. BRASIL | L.BR.SAOPAULO.ASSISTANTBR.MGCORAZL@RABOBANK.COM | USD | - | 102.965.668,67 | - | 536.243.513,53 |
| RAÍZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE LP RABOBANK USD 200M 12.05.22 (VCTO 11.05.27) ROF T8194800 | 11/05/2027 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, Nº E 15º ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SÃO FRANCISCO, SÃO PAULO, SP. BRASIL | L.BR.SAOPAULO.ASSISTANTBR.MGCORAZL@RABOBANK.COM | USD | - | 208.733.500,00 | - | 1.046.460.955,55 |
| RAÍZEN ENERGIA S.A. | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | PPE LP BOFA USD 50M MAI.22 (VENCTO 28.05.27) ROF T8100509 | 28/05/2027 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | - | 50.061.304,11 | - | 290.984.596,72 |
| RAÍZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | PPE LP SMBC USD 200M JUN.22 (VENCTO 14.06.27) ROF T8107846 | 14/06/2027 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIANA.COUTINHO@SMBCGROUP.COM; JOAQUIM_MARQUES@SMBCGROUP.COM; RODRIGO_TORRES@SMBCGROUP.COM;BR_CAO_OLIVEIRA@SMBCGROUP.COM;BR | USD | - | 202.200.195,55 | - | 1.054.130.128,85 |
| RAÍZEN ENERGIA S.A. | BANK OF CHINA LIMITED, GRAND CAYMAN BRANCH | NÃO APLICÁVEL | PPE BANK OF CHINA USD 150 MILHÕES ROF T8133557 | 09/05/2029 | GRAND PAVILION COMMERCIAL CENTER 802 WEST BAY ROAD – P.O.BOX 30985, GRAND CAYMAN KY1-1204 – CAYMAN ISLANDS / AVENIDA PAULISTA, 901, 14TH FLOOR - ZIP CODE, 01311-100, SÃO PAULO, SP. BRASIL | XU.LEI@BOC.BRAZIL.COM; RICARDO.MANGIONE@BOCBRASIL.COM;BR_BAI.YUN@BOC.BRAZIL.COM; AUGUSTO.PASSONI@BOCBRASIL.COM;BR_BRITO@BOCBRASIL.COM;BR_VICTOR.GUEDES@BOC-BRAZIL.COM_FREDERICO.LIMA@BOCBRASIL.COM;BR_DANIEL.BAUMANN@BOC-BRAZIL.COM | USD | - | 152.475.603,25 | - | 794.302.261,40 |
| RAÍZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | PPE SMBC - ST - MAR/25 - ROF T8165013 | 14/03/2028 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIANA.COUTINHO@SMBCGROUP.COM; JOAQUIM_MARQUES@SMBCGROUP.COM; RODRIGO_TORRES@SMBCGROUP.COM;BR_CAO_OLIVEIRA@SMBCGROUP.COM;BR | USD | - | 102.598.116,89 | - | 534.674.782,78 |
| RAÍZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE LP 355V1 RABOBANK USD24M 10.04.25 - ROF T8167294 | 10/04/2030 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, Nº E 15º ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SÃO FRANCISCO, SÃO PAULO, SP. BRASIL | L.BR.SAOPAULO.ASSISTANTBR.MGCORAZL@RABOBANK.COM | USD | - | 45.036.392,02 | - | 234.788.222,53 |
| RAÍZEN S.A. | PENTAGONO S.A. DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | NÃO APLICÁVEL (17.343.682/0001-38) | DEBENTURES INCENTIVADA - 3ª EMISSÃO - 1ª SÉRIE RAIZ13 | 15/09/2034 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 E 303 E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 958.673.055,24 | - | 958.673.055,24 | - |
| RAÍZEN S.A. | PENTAGONO S.A. DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | NÃO APLICÁVEL (17.343.682/0001-38) | DEBENTURE INCENTIVADA - 3ª EMISSÃO RDA - 2ª SÉRIE RAIZ23 | 15/09/2039 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 E 303 E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 662.287.301,90 | - | 662.287.301,90 | - |
| RAÍZEN CENTRO-SUL PAULISTA S.A. | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | PPE SMBC - LT - FEV/2028 - ROF T8164631 | 18/02/2028 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIANA.COUTINHO@SMBCGROUP.COM; JOAQUIM_MARQUES@SMBCGROUP.COM; RODRIGO_TORRES@SMBCGROUP.COM;BR_CAO_OLIVEIRA@SMBCGROUP.COM;BR | USD | - | 70.189.760,14 | - | 365.650.302,60 |
| RAÍZEN S.A. | THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED | NÃO APLICÁVEL | PPE HSBC - LT - FEV/2028 - ROF T8163924 | 04/02/2028 | LEVEL 3, HSBC BUILDING MONGKOK, 673 NATHAN ROAD, KOWLOON, HONG KONG | SPECIAL.TS.BNKI.STS.ASIA@HSBC.COM.HK | USD | - | 85.849.555,41 | - | 447.559.487,23 |
| RAÍZEN S.A. | JPMORGAN CHASE BANK, N.A. | NÃO APLICÁVEL | PPE LP JPMORGAN USD50M 28.04.25 - ROF T8168066 | 28/04/2030 | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM; NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | - | 51.006.954,33 | - | 265.914.032,70 |
| RAÍZEN S.A. | MUFG BANK, LTD | NÃO APLICÁVEL | PPE LP MUFG USD100M 29.04.25 - ROF T8168146 | 29/04/2030 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | RARIALIN@US.MUFG.JP | USD | - | 100.618.537,78 | - | 524.554.623,55 |
| RAÍZEN S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE LP RABOBANK USD30M 29.04.25 - ROF T8168055 | 29/04/2030 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, Nº E 15º ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SÃO FRANCISCO, SÃO PAULO, SP. BRASIL | L.BR.SAOPAULO.ASSISTANTBR.MGCORAZL@RABOBANK.COM | USD | - | 30.617.840,10 | - | 159.619.943,14 |
| RAÍZEN S.A. | MUFG BANK, LTD. | NÃO APLICÁVEL | PPE LP MUFG USD75M 30.10.25 | 30/10/2029 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | RARIALIN@US.MUFG.JP | USD | - | 75.444.180,75 | - | 393.313.147,50 |
| RAÍZEN S.A. | THE BANK OF NOVA SCOTIA | NÃO APLICÁVEL | PPE LP SCOTIABANK USD300M 30.10.25 | 30/10/2029 | 720 KING STREET WEST, 2ND FLOOR, TORONTO, ONTARIO, CANADA, M5V 2T3 | GWSLOANOPS.INTL@SCOTIABANK.COM | USD | - | 305.189.416,67 | - | 1.591.023.132,71 |
| RAÍZEN CENTRO-SUL PAULISTA S.A. | JPMORGAN CHASE BANK, N.A. | NÃO APLICÁVEL | PPE JPM - LT - FEV/2030 - ROF T8164589 | 18/02/2028 | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM; NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | - | 100.280.222,78 | - | 522.806.526,32 |
| RAÍZEN ENERGIA S.A. | BANCO CITIBANK S.A. | NÃO APLICÁVEL (33.479.023/0001-90) | NCE CITI - LT - FEV/30 - B5V1 | 15/02/2030 | AVENIDA PAULISTA 1111, ANDAR 2 PARTE, BELA VISTA, SÃO PAULO, SP, BRASIL, 01311928 | CONTATOCNP@CITI.COM | USD | - | 83.122.948,50 | - | 433.344.867,40 |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | RETAP BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITTO@BNY.COM; CENTRAL2E208LLIN02E440@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | - | 760.723.958,33 | - | 3.913.749.211,96 |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2037 | 23/02/2037 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITTO@BNY.COM; CENTRAL2E208LLIN02E440@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.002.791.666,67 | - | 5.227.803.795,85 |
| RAÍZEN S.A. | BANCO BILBAO VIZCAYA ARGENTARIA S.A. NEW YORK BRANCH | NÃO APLICÁVEL | PPE BBVA - LT - JAN/2030 - ROF T8163264 | 17/01/2030 | BANCO BILBAO VIZCAYA ARGENTARIA, S.A. NEW YORK BRANCH - TWO, MANHATTAN WEST - 375 9TH AVE. - 6TH FLOOR, NEW YORK 10001 | ANDRE.FERRARI@BBVA.COM; CARINA.ZAPPAROLI@BBVA.COM | USD | - | 201.741.562,55 | - | 1.051.739.283,26 |
| RAÍZEN S.A. | PENTAGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | NÃO APLICÁVEL (17.343.682/0001-38) | DEBÊNTURES - 2ª EMISSÃO RSA RAIZ12 | 24/06/2031 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 E 303 E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 1.081.109.790,73 | - | 1.081.109.790,73 | - |
| RAÍZEN S.A. | PENTAGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | NÃO APLICÁVEL (17.343.682/0001-38) | DEBÊNTURES - 4ª EMISSÃO RSA RAIZ14 | 15/07/2030 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 E 303 E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 868.635.172,63 | - | 868.635.172,63 | - |
| RAÍZEN S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE RABOBANK USD 50MM 2025 - ROF T8091059 | 02/12/2026 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, Nº E 15º ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SÃO FRANCISCO, SÃO PAULO, SP. BRASIL | L.BR.SAOPAULO.ASSISTANTBR.MGCORAZL@RABOBANK.COM | USD | - | 50.356.611,11 | - | 262.524.133,70 |
| RAÍZEN S.A. | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | PPE 5BOF II BOFA 70MM - ROF T8131086 | 28/09/2028 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | - | 70.826.521,03 | - | 369.241.967,41 |
| RAÍZEN S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | NÃO APLICÁVEL | PPE_CREDIT_USD50MM - ROF T8130886 | 29/03/2030 | 1301 AVENUE OF THE AMERICAS, 8TH FLOOR, NEW YORK, NY 10019-6022, UNITED STATES OF AMERICA | JEAN.GOETHALS@CA-CIB.COM; FERNANDO.SALAZAR@CA-CIB.COM | USD | - | 50.503.125,00 | - | 263.287.941,57 |
| RAÍZEN S.A. | MUFG BANK, LTD. | NÃO APLICÁVEL | PPE LP MUFG USD50M 12.08.25 | 10/08/2029 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | RARIALIN@US.MUFG.JP | USD | - | 50.196.418,17 | - | 261.689.982,94 |
| RAÍZEN S.A. / RAÍZEN ENERGIA S.A. | CITIBANK N.A | NÃO APLICÁVEL | AVAL FIDEIMPO | 12/03/2026 | AV. PAULISTA, Nº 1.111, (LOJA 1, 3 E SOBRELOJA) | JORGE.LIMA@CITI.COM; ROBERTO.GAATAU@CITI.COM; ALEXANDRE.CASTANHEIRA@CITI.COM | USD | - | 6.270.796,16 | - | 32.691.552,05 |
| RAÍZEN S.A. / RAÍZEN ENERGIA S.A. | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 21/09/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2041, VILA OLÍMPIA, SÃO PAULO/SP. | GVIALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | - | 20.000.000,00 | - | 104.266.000,00 |
| RAÍZEN S.A. / RAÍZEN ENERGIA S.A. | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 09/07/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2041, VILA OLÍMPIA, SÃO PAULO/SP. | GVIALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | - | 20.000.000,00 | - | 104.266.000,00 |
| RAÍZEN S.A. / RAÍZEN ENERGIA S.A. | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 08/06/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2041, VILA OLÍMPIA, SÃO PAULO/SP. | GVIALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | - | 10.000.000,00 | - | 52.133.000,00 |
| RAÍZEN S.A. / RAÍZEN ENERGIA S.A. | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 17/09/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2041, VILA OLÍMPIA, SÃO PAULO/SP. | GVIALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | - | 15.000.000,00 | - | 78.199.500,00 |
| RAÍZEN S.A. / RAÍZEN ENERGIA S.A. | BNP PARIBAS S.A. | NÃO APLICÁVEL | AVAL ECA | 31/10/2030 | 16 BOULEVARD DES ITALIENS, 75009 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MAM@BR.BNPPARIBAS.COM; FELIPE_IRANI@BR.BNPPARIBAS.COM | USD | - | 30.006.637,97 | - | 156.433.605,73 |

| Devedor Principal ou Garantidor | Credor | CNPJ | Contrato | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | 04.270.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 3284G267 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEIÇAO, SAO PAULO - SP - 04543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 292.239.664,00 | - | - | 292.239.664,00 |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | 04.270.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO N°364040652022 E 364041742023 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEIÇAO, SAO PAULO - SP - 04543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 300.521.410,00 | - | - | 300.521.410,00 |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | 04.270.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 3261Y20 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEIÇAO, SAO PAULO - SP - 04543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 385.658.626,00 | - | - | 385.658.626,00 |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | IP COMERCIALIZADORA DE ENERGIA S.A. | 04.475.373/0001-30 | AVAL CONTRATO DE COMPRA E VENDA DE ENERGIA ELÉTRICA LP.35.2023 | AV PRES JUSCELINO KUBITSCHEK, 1909 - VILA NOVA CONCEIÇAO, SAO PAULO - SP - 04543607 | CAROLINA.MONTENEGRO@IPI.COM.BR; ENERGIA.ESTRUTURADAS@IPI.COM.BR | BRL | 170.000.000,00 | - | - | 170.000.000,00 |
| RAIZEN FUELS FINANCE S.A. | CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK | NÃO APLICÁVEL | REVOLVING LOAN FACILITY AGREEMENT | 1301 AVENUE OF THE AMERICAS, NEW YORK CITY, NY 10019 | DANIELA.ALVARADO@CA-CIB.COM / JAIME.FRONTERA@CA-CIB.COM | USD | - | 1.398.750,00 | - | 7.238.970,38 |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | OPERAÇÕES DERIVATIVOS | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MARIO@BRADESCO.COM.BR; RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | Banco Morgan Stanley S.A. | 02.801.938/0001-36 | OPERAÇÕES DERIVATIVOS | AVENIDA BRIGADEIRO FARIA LIMA, 3600, 7 ANDAR, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538102 | FERNANDO.MELLO@MORGANSTANLEY.COM; GUSTAVO.SIQUEIRA@MORGANSTANLEY.COM; JOAO.CAMAROTTA@MORGANSTANLEY.COM; CRISTIANE.QUITERIO@MORGANSTANLEY.COM | BRL | 584.069.463,00 | | | 584.069.463,00 |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | Banco BNP Paribas Brasil S.A. | 01.522.368/0001-82 | OPERAÇÕES DERIVATIVOS | AVENIDA PRESIDENTE JUSCELINO KUBITSCHEK 1909, CONJ 81 - 101 - 111, VILA NOVA CONCEIÇAO, SAO PAULO, SP, BRASIL, 04543011 | FINANCE@BNPPARIBAS.COM | BRL | 605.914.315,56 | | | 605.914.315,56 |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BANCO CITIBANK S.A. | 33.479.023/0001-80 | OPERAÇÕES DERIVATIVOS | AVENIDA PAULISTA 1111, ANDAR 2 PARTE, BELA VISTA, SAO PAULO, SP, BRASIL, 01311920 | CONTATODW@CITI.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A. | BANK OF AMERICA MERRILL LYNCH BANCO MULTIPLO S.A. | 62.073.200/0001-21 | OPERAÇÕES DERIVATIVOS | AV. BRIGADEIRO FARIA LIMA, 3400, 18O ANDAR 04538-132, SAO PAULO, SP, BRASIL | DG.TAX_LITIGATION@BOFA.COM | BRL | 398.645.346,41 | | | 398.645.346,41 |
| RAIZEN S.A. | BANCO CREDIT AGRICOLE BRASIL S.A. | 75.647.891/0001-71 | OPERAÇÕES DERIVATIVOS | AV BRIG FARIA LIMA, 3900 - ITAIM BIBI, SAO PAULO - 04538102 | CONTABIL.FINANCE@CA-CIB.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BANCO DO BRASIL S.A. | 00.000.000/0001-91 | OPERAÇÕES DERIVATIVOS | QUADRA SAUN QUADRA 5 BLOCO B TORRE I, II E III, ANDAR 7 I SL 5101 A 5102 T II SL C101 A C1602 TII SL N101 A N1602, ASA NORTE, BRASILIA, DF, BRASIL, 70040912 | DECEX@BB.COM.BR | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BP INVESTIMENTOS CORRETORA DE CAMBIO, TITULOS E VALORES MOBILIÁRIOS S.A. | 02.332.886/0001-04 | OPERAÇÕES DERIVATIVOS | PRAIA BOTAFOGO 00501, BLC I SAL 601, BOTAFOGO, RIO DE JANEIRO, RJ, BRASIL, 22250011 | CONTROLADORIA@BPI.COM.BR | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A. | Scotiabank Brasil S.A. Banco Múltiplo | 29.030.467/0001-66 | OPERAÇÕES DERIVATIVOS | AVENIDA BRIGADEIRO FARIA LIMA 3371, 7 ANDAR, JARDIM PAULISTANO, SAO PAULO, SP, BRASIL, 01452000 | ADMINISTRATION.SP@BR.SCOTIABANK.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A. | Banco MUFG Brasil S.A. | 60.498.557/0001-26 | OPERAÇÕES DERIVATIVOS | AVENIDA PAULISTA 1274, BELA VISTA, SAO PAULO, SP, BRASIL, 01310925 | ProcessamentodeOperacoes@jus.mufg.jp; br-3-Sales@br.mufg.jp; S-MiddleOffice@br.mufg.jp | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A. | Deutsche Bank S.A. | 62.331.228/0001-11 | OPERAÇÕES DERIVATIVOS | AVENIDA BRIG FARIA LIMA 3900, ANDAR 13, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538102 | BRTAX@LIST.DB.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A. | Banco Mizuho do Brasil S.A. | 61.088.183/0001-33 | OPERAÇÕES DERIVATIVOS | AVENIDA PRESIDENTE JUSCELINO KUBITSCHEK 2041, ANDAR 7 TORRE E, VILA NOVA CONCEIÇAO, SAO PAULO, SP, BRASIL, 04543011 | ROBERTO.VERANO@MIZUHOGROUP.COM; KATIA.HEYDENREICH@MIZUHOGROUP.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A. / BLUEWAY TRADING IMPORTAÇAO E EXPORT / RAIZEN CENTRO-SUL S.A. | BANCO ITAU UNIBANCO S.A. | 60.701.190/4916-09 | OPERAÇÕES DERIVATIVOS | AVENIDA BRIGADEIRO FARIA LIMA 3500, 1 2 3 PARTE, 4 E 5 ANDARES, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | ITAULIDICIAL@ITAUUNIBANCO.COM.BR | BRL | 38.049.156,02 | | | 38.049.156,02 |
| RAIZEN S.A. | BTG PACTUAL S.A. | 30.306.294/0001-45 | OPERAÇÕES DERIVATIVOS | PRAIA BOTAFOGO 00501, BLOCOI SALAO 501 BLC II SAL 601, BOTAFOGO, RIO DE JANEIRO, RJ, BRASIL, 22250911 | JOFFRE.SALES@BTGPACTUAL.COM; DANIEL.VAZ@BTGPACTUAL.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN ENERGIA S.A. / RAIZEN CENTRO-SUL S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | OPERAÇÕES DERIVATIVOS | CROESELAAN 18, UTRECHT, PAISES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSISTANTBMGCOBRAZIL@RABOBANK.COM | BRL | 11.410.978,17 | | | 11.410.978,17 |
| RAIZEN S.A. | BANCO HSBC S.A. | 53.518.684/0001-94 | OPERAÇÕES DERIVATIVOS | AVENIDA PRES JUSCELINO KUBITSCHEK 1909, BLOCO NORTE ANDAR 19, VILA NOVA CONCEIÇAO, SAO PAULO, SP, BRASIL, 04543607 | SPECIAL.TS.SKM.GTS.AMH@HSBC.COM.HK | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A. | Macquarie Bank LTD | NÃO APLICÁVEL | OPERAÇÕES DERIVATIVOS | 50 MARTIN PLACE, SYDNEY, NSW 2000, AUSTRALIA | FEEDBACK@MACQUARIE.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A. / BLUEWAY TRADING IMPORTAÇAO E EXPORT / RAIZEN ENERGIA S.A. | Goldman Sachs do Brasil Banco Múltiplo S.A. | 04.332.281/0001-30 | OPERAÇÕES DERIVATIVOS | R LEOPOLDO COUTO DE MAGALHAES JUNIOR, 700 - ITAIM BIBI, SAO PAULO - 04542000 | GS-TAX-BRAZIL@GS.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN ENERGIA S.A. | JP Morgan Chase Bank, NA | NÃO APLICÁVEL | OPERAÇÕES DERIVATIVOS | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM; NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | - | 9.860.070,78 | - | 51.453.546,70 |
| RAIZEN TRADING S.A. | CITIBANK N.A | NÃO APLICÁVEL | OPERAÇÕES DERIVATIVOS | AV. PAULISTA, N° 1.111, (LOJA 1, 2 E SOBRELOJA) | JORGE.LIMA@CITI.COM; ROBERTO.GASTAUD@CITI.COM; ALEXANDRE.CASTANHEIRA@CITI.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| **Total** | | - | - | - | - | | 32.039.774.600,29 | 7.865.576.990,22 | 906.102.306,00 | 60.145.928.078,93 |

Intercompany

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BSV2-BARC1 X 2017 SACE 3 - ROF TB164465 | 23/07/2036 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 209.910.877,78 | 1.214.213.658,42 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BSV2-BARC X 2017 1BI USD - ROF TB159734 | 17/01/2035 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 1.006.393.130,89 | - | 5.257.050.900,96 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 01 - ROF TB165397 | 22/09/2026 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 16.784.285,59 | 99.448.606,05 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 01 - ROF TB165397 | 22/03/2027 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.773.060,44 | 93.321.535,57 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 01 - ROF TB165397 | 22/09/2027 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.772.259,39 | 95.316.495,15 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 04 - ROF TB165397 | 22/03/2026 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.762.700,44 | 95.258.737,57 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 05 - ROF TB160307 | 22/09/2029 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.762.701,21 | 95.259.034,37 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 06 - ROF TB160307 | 22/03/2029 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.758.165,83 | 95.219.236,98 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 07 - ROF TB160307 | 24/09/2029 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.758.746,04 | 95.222.743,36 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 08 - ROF TB160307 | 22/03/2030 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.751.669,21 | 95.162.952,55 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 09 - ROF TB160307 | 22/09/2030 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.752.510,51 | 95.197.146,79 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 10 - ROF TB160307 | 24/03/2031 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.749.378,02 | 95.172.163,85 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 11 - ROF TB160307 | 22/09/2031 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.749.348,37 | 95.178.037,03 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 12 - ROF TB160307 | 22/03/2032 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.745.874,37 | 95.157.042,59 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 13 - ROF TB160307 | 22/09/2032 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.746.975,23 | 95.163.091,09 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 14 - ROF TB160307 | 22/03/2033 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.743.916,17 | 95.145.208,56 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 15 - ROF TB160307 | 22/09/2033 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.744.924,28 | 95.151.300,90 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 16 - ROF TB160307 | 22/03/2034 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.742.348,60 | 95.135.741,34 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 17 - ROF TB160307 | 22/09/2034 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.743.335,96 | 95.141.702,18 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 18 - ROF TB160307 | 22/03/2035 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.741.059,64 | 95.127.939,65 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X CCLF SACE - TRANCHE 19 - ROF TB160307 | 21/09/2035 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.742.023,23 | 95.133.769,00 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BSV1- BARIZ X 2017 109 USD 2037 - ROF TB160163 | 25/02/2037 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 1.002.792.593,33 | - | 5.237.855.966,04 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BSV1-BARIZ X 2017 750MM USD 2054 - ROF TB160170 | 05/03/2054 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 758.579.250,00 | - | 3.912.904.904,03 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARIZ X 2017 233MM 20.01.27 - ROF TB160404 | 20/01/2027 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 163.687.620,96 | - | 957.618.674,38 |
| RAIZEN S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBCIF X 2017 466MM - ROF TB160489 | 05/03/2054 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 489.005.286,36 | - | 2.549.331.259,38 |
| RAIZEN S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBCIF X 2017 639MM - 2054 - ROF TB160487 | 05/03/2054 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 640.119.362,55 | - | 3.337.133.751,44 |
| RAIZEN S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBCIF X 2017 750MM - 2032 - ROF TB170609 | 09/07/2032 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 758.074.208,33 | - | 3.952.566.270,30 |
| RAIZEN S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBCIF X CCLF 350MM 2054 - ROF TB160494 | 05/03/2054 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 300.271.327,79 | - | 1.926.069.513,10 |
| RAIZEN ENERGIA S.A. | RAIZEN TRADING S.A. | NÃO APLICÁVEL | - | - | RUE DE JARGONNANT 2, 1207 GENÈVE | DIVIDA@RAIZEN.COM | BRL | 3.448.595.041,13 | - | - | 3.448.595.041,13 |
| **Total** | | | | | | - | | 3.448.595.041,13 | 6.162.932.778,31 | 869.349.241,01 | 33.491.879.478,77 |

USD Ptax Compra (09/01,2133
EUR Ptax Compra (09/00,9433

RAIZEN S.A

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN S.A | U.S. BANK NATIONAL ASSOCIATION | NÃO APLICÁVEL | AVAL US BOND 2228WM 20,01,2027 | 20/01/2027 | 100 WALL STREET, 16TH FLOOR, NEW YORK, NEW YORK 10005, USA | PIERRE.DESAULNIERS@USBANK.COM, LOGAN.GIESEKE@USBANK.COM, TUAN.PHAN1@USBANK.COM, MICHELLE.MENA@USBANK.COM | USD | - | 189,135,070,69 | - | 986,017,864,03 |
| RAIZEN S.A | BNP PARIBAS | NÃO APLICÁVEL | AVAL LOAN SACE 300MM | 21/06/2030 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM, JULIANA.MANA@BR.BNPPARIBAS.COM, FELIPE.IRAN@BR.BNPPARIBAS.COM | EUR | - | - | 305,278,433,33 | 1,844,889,156,14 |
| RAIZEN S.A | BNP PARIBAS | NÃO APLICÁVEL | AVAL LOAN SACE X 200MM | 23/07/2030 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM, JULIANA.MANA@BR.BNPPARIBAS.COM, FELIPE.IRAN@BR.BNPPARIBAS.COM | EUR | - | - | 200,913,866,87 | 1,214,162,770,45 |
| RAIZEN S.A | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2032 | 08/07/2032 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLUTT2@BNY.COM, CENTRAL2EDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 758,072,910,67 | - | 3,952,381,536,48 |
| RAIZEN S.A | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2034 | 05/03/2034 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLUTT2@BNY.COM, CENTRAL2EDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 1,000,895,833,33 | - | 5,217,970,347,90 |
| RAIZEN S.A | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2035 | 17/01/2035 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLUTT2@BNY.COM, CENTRAL2EDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 1,008,391,666,67 | - | 5,257,049,275,85 |
| RAIZEN S.A | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLUTT2@BNY.COM, CENTRAL2EDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 500,482,636,89 | - | 2,608,169,141,33 |
| RAIZEN S.A | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | AVAL PPE BOFA - LT - JAN2028 - ROF TB10388 - BSV1 | 27/01/2028 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28200, ESTADOS UNIDOS | DG.CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | - | 100,560,471,67 | - | 524,423,945,84 |
| RAIZEN S.A | BANCO BRADESCO S.A. | 60.746.948/0001-12 | AVAL CPR-F 750MM | 26/11/2026 | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029000 | JOAO.MANSO@BRADESCO.COM.BR, RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | 760,229,402,50 | - | - | 760,229,402,50 |
| RAIZEN S.A | BANCO BRADESCO S.A. | 60.746.948/0001-12 | AVAL CPR-F 250MM | 26/11/2026 | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029000 | JOAO.MANSO@BRADESCO.COM.BR, RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | 261,175,737,50 | - | - | 261,175,737,50 |
| RAIZEN S.A | BANCO SANTANDER (BRASIL) S/A | 90.400.888/0001-42 | AVAL CPRF SANTANDER - LP - JUN2028 | 20/06/2028 | AV. PRES JUSCELINO KUBITSCHEK 2041, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543011 | GVIALLONE@SANTANDER.COM.BR, KOSILVA@SANTANDER.COM.BR | BRL | 667,177,032,00 | - | - | 667,177,032,00 |
| RAIZEN S.A | BANCO SANTANDER (BRASIL) S/A | 90.400.888/0001-42 | AVAL CPRF SANTANDER - LP - AGO2028 | 21/08/2028 | AV. PRES JUSCELINO KUBITSCHEK 2041, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543011 | GVIALLONE@SANTANDER.COM.BR, KOSILVA@SANTANDER.COM.BR | BRL | 267,903,049,00 | - | - | 267,903,049,00 |
| RAIZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA VII 220 150_1PE RAIZEN 1°S_CRA01800243 | 16/07/2029 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 232,762,892,92 | - | - | 232,762,892,92 |
| RAIZEN S.A | OPEA SECURITIZADORA S.A. | 02.773.542/0001-22 | AVAL CRA VI (PCA 600MM CRA 2,CIA 2_CRA01800OGT | 16/03/2026 | R GRASSOL, 550, ANDO0 TORRE C-PARTE - VILA MADALENA, SÃO PAULO - SP - 05.433-001 | FINANCEIRO@OPEA.COM.BR | BRL | 905,715,403,49 | - | - | 905,715,403,49 |
| RAIZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA IX 1.060.000.000_1PE RAIZEN 1°S_CRA02200MN5 | 17/08/2032 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1,262,945,117,60 | - | - | 1,262,945,117,60 |
| RAIZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA IX 540.000.000_1PE RAIZEN 2°S_CRA02200MN0 | 17/08/2037 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1,138,606,156,36 | - | - | 1,138,606,156,36 |
| RAIZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA VII 787.658_1PE RAIZEN 2°S_CRA01800OG1 | 16/07/2029 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1,153,282,672,36 | - | - | 1,153,282,672,36 |
| RAIZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA VIII 352.426_1PE RAIZEN 1°S_CRA02000VP7 | 15/06/2027 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 501,203,718,45 | - | - | 501,203,718,45 |
| RAIZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA VIII 728.590_1PE RAIZEN 2°S_CRA02000VP6 | 17/06/2030 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1,036,294,576,25 | - | - | 1,036,294,576,25 |
| RAIZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA DOCTOR X - 2° SÉRIE - 102203_CRA02300JR7 | 17/10/2033 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 567,943,999,36 | - | - | 567,943,999,36 |
| RAIZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA DOCTOR X - 1° SÉRIE - 102203_CRA02300JR5 | 15/10/2030 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 218,430,067,03 | - | - | 218,430,067,03 |
| RAIZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA DOCTOR X - 2° SÉRIE - 102203_CRA02300JR6 | 17/10/2033 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 301,264,360,68 | - | - | 301,264,360,68 |
| RAIZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | AVAL DEBENTURE INCENTIVADA 4° SÉRIE UNICA RESI414 | 16/11/2039 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 1,294,692,402,80 | - | - | 1,294,692,402,80 |
| RAIZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | AVAL DEBENTURE INCENTIVADA 5° EMISSÃO - RESI415 | 16/06/2030 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 241,287,186,67 | - | - | 241,287,186,67 |
| RAIZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | AVAL DEBENTURE INCENTIVADA - RESI427 | 15/03/2032 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 538,888,942,23 | - | - | 538,888,942,23 |
| RAIZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | AVAL DEBENTURE INCENTIVADA - RESI417 | 15/03/2029 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 961,798,942,95 | - | - | 961,798,942,95 |
| RAIZEN S.A | BANCO DO BRASIL S.A. | 00.000.000/0001-91 | AVAL NCE BB NR.20001050-2 | 20/12/2029 | QUADRA SAUN QUADRA 5,BLOCO B TORRE I, II, III, ANDAR T I SL 0101 A S1822 T II SL C101 A C1822 T III SL N101 A N1822, ASA NORTE, BRASILIA, DF, BRASIL, 70040912 | SECEX@BB.COM.BR | BRL | 1,033,507,056,00 | - | - | 1,033,507,056,00 |
| RAIZEN S.A | BNP PARIBAS | NÃO APLICÁVEL | AVAL PPE_BNP_USD125MLN - ROF TB13057-1 | 27/03/2029 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM, JULIANA.MANA@BR.BNPPARIBAS.COM, FELIPE.IRAN@BR.BNPPARIBAS.COM | USD | - | 75,154,761,47 | - | 391,854,317,97 |
| RAIZEN S.A | COOPERATIEVE RABOBANK U.A | NÃO APLICÁVEL | AVAL PPE CP RABOBANK USD 100M 06.03.23 ROF TB1 30491 | 23/03/2029 | CROESELAAN 18, UTRECHT, PAISES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BARRIO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | LBR.SAOPAULO.ASSISTANTSRMGCCOBRAZIL@RABOBANK.COM | USD | - | 102,860,698,67 | - | 536,343,513,53 |
| RAIZEN S.A | COOPERATIEVE RABOBANK U.A | NÃO APLICÁVEL | AVAL PPE LP RABOBANK USD 250M 12.05.22 (VCTO 11.05.27) ROF TB134003 | 11/05/2027 | CROESELAAN 18, UTRECHT, PAISES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BARRIO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | LBR.SAOPAULO.ASSISTANTSRMGCCOBRAZIL@RABOBANK.COM | USD | - | 200,733,500,00 | - | 1,046,483,955,55 |

| Empresa | Credor | Garantia | Descrição | Data | Endereço | E-mail | Moeda | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN S.A | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | AVAL PPE LP BOFA USD 50M MAA.22 (VENCTO 28.05.27) ROF TB106555 | 28/05/2027 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG.CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | 50.091.304,11 | - | 260.984.586,72 |
| RAIZEN S.A | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | AVAL PPE LP SMBC USD 200M JUN.22 (VENCTO 14.06.27) ROF TB107946 | 14/06/2027 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIAN.COUTINHO@SMBCGROUP.COM; JOAQUIM_MARQUES@SMBCGROUP.COM.BR; RODRIGO_TORRES@SMBCGROUP.COM.BR; CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | 202.200.188,66 | - | 1.054.100.120,85 |
| RAIZEN S.A | BANK OF CHINA LIMITED, GRAND CAYMAN BRANCH | NÃO APLICÁVEL | AVAL PPE BANK OF CHINA USD 150 MILHÕES ROF TB133957 | 08/05/2029 | GRAND PAVILION COMMERCIAL CENTER 802 WEST BAY ROAD - P.O BOX 30986, GRAND CAYMAN KY1-1204 - CAYMAN ISLANDS / AVENIDA PAULISTA, 901, 14TH FLOOR - ZIP CODE: 01311-100, SÃO PAULO, SP, BRASIL | KLI.LD@BOC-BRAZIL.COM; RICARDO.MANGONE@BOCBRASIL.COM.BR; BAI.YUN@BOC-BRAZIL.COM; AUGUSTO.PASSONI@BOCBRASIL.COM.BR; JOW.BRITO@BOCBRASIL.COM.BR; VICTOR.GUEDES@BOC-BRAZIL.COM; FRED.RODRIGUES@BOCBRASIL.COM.BR; DANIEL.BAUMANN@BOC-BRAZIL.COM | USD | 152.475.833,25 | - | 794.902.261,48 |
| RAIZEN S.A | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | AVAL PPE SMBC - ST - MAR25 - ROF TB183513 | 14/03/2029 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIAN.COUTINHO@SMBCGROUP.COM; JOAQUIM_MARQUES@SMBCGROUP.COM.BR; RODRIGO_TORRES@SMBCGROUP.COM.BR; CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | 102.596.116,89 | - | 534.874.762,78 |
| RAIZEN S.A | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | AVAL LP BSV1 RABOBANK USD404M 10.04.25 - ROF TB197294 | 10/04/2030 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SÃO PAULO, SP, BRASIL | LBR.SAOPAULO.ASSISTANTSRMGCCORD@RABOBANK.COM | USD | 45.036.392,02 | - | 234.788.222,53 |
| RAIZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURES INCENTIVADA - 2ª EMISSÃO - 1ª SÉRIE RAIZ13 | 15/09/2034 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 E 303 E 304 E. BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 958.873.055,24 | - | 958.873.055,24 |
| RAIZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTUR INCENTIVADA - 2ª EMISSÃO RSA - 2ª SÉRIE RAIZ23 | 15/09/2039 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 E 303 E 304 E. BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 682.397.301,90 | - | 682.397.301,90 |
| RAIZEN S.A | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | AVAL PPE SMBC - LT - FEV/2028 - ROF TB184631 | 18/02/2028 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIAN.COUTINHO@SMBCGROUP.COM; JOAQUIM_MARQUES@SMBCGROUP.COM.BR; RODRIGO_TORRES@SMBCGROUP.COM.BR; CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | 70.189.766,14 | - | 365.920.302,60 |
| RAIZEN S.A | THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED | NÃO APLICÁVEL | PPE HSBC - LT - FEV/2028 - ROF TB183504 | 04/02/2028 | LEVEL 5, HSBC BUILDING MONGKOK, 673 NATHAN ROAD, KOWLOON, HONG KONG | SPECIAL.TS.SKM@HSBC.COM.HK | USD | 85.845.555,41 | - | 447.359.687,22 |
| RAIZEN S.A | JPMORGAN CHASE BANK, N.A. | NÃO APLICÁVEL | PPE LP JPMORGAN USD50M 28.04.25- ROF TB196998 | 28/04/2030 | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM; NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | 51.008.854,33 | - | 265.914.033,70 |
| RAIZEN S.A | MUFG BANK, LTD. | NÃO APLICÁVEL | PPE LP MUFG USM 30M 29.04.25 - ROF TB188140 | 30/04/2030 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | INRRALM@US.MUFG.JP | USD | 100.618.537,78 | - | 524.554.622,00 |
| RAIZEN S.A | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE LP RABOBANK USD30M 29.04.25 - ROF TB168555 | 29/04/2030 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SÃO PAULO, SP, BRASIL | LBR.SAOPAULO.ASSISTANTSRMGCCORD@RABOBANK.COM | USD | 30.817.840,10 | - | 159.818.943,14 |
| RAIZEN S.A | MUFG BANK, LTD. | NÃO APLICÁVEL | PPE LP MUFG USD70M 30.10.25 - ROF TB188140 | 30/10/2029 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | INRRALM@US.MUFG.JP | USD | 75.444.180,75 | - | 393.313.147,50 |
| RAIZEN S.A | THE BANK OF NOVA SCOTIA | NÃO APLICÁVEL | PPE LP SCOTIABANK USD300M 30.10.25 | 30/10/2030 | 720 KING STREET WEST, 2ND FLOOR, TORONTO, ONTARIO, CANADA, M5V 2T3 | GWIS.OAKOPS.INTL@SCOTIABANK.COM | USD | 305.185.418,67 | - | 1.591.023.132,71 |
| RAIZEN S.A | JPMORGAN CHASE BANK, N.A. | NÃO APLICÁVEL | AVAL PPE JPM - LT - FEV/2030 - ROF TB184569 | 14/02/2030 | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM; NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | 100.283.222,78 | - | 522.806.525,32 |
| RAIZEN S.A | BANCO CITIBANK S.A | 33.479.023/0001-80 | AVAL NCE CITI - LT - FEV/30 - BSV1 | 15/02/2030 | AVENIDA PAULISTA 1111, ANDAR 2 PARTE, BELA VISTA, SAO PAULO, SP, BRASIL, 01311920 | CONTATOATOAP@CITI.COM | USD | 83.122.940,50 | - | 433.344.867,40 |
| RAIZEN S.A | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL RETAP BOND 2054 | 05/03/2054 | 240 GREENWICH STREET - 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITT2@BNY.COM; CENTRALIZEDINLLINGTEAM@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | 759.723.598,33 | - | 3.913.749.211,98 |
| RAIZEN S.A | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2037 | 25/02/2037 | 240 GREENWICH STREET - 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITT2@BNY.COM; CENTRALIZEDINLLINGTEAM@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | 1.002.791.666,67 | - | 5.227.853.795,85 |
| RAIZEN S.A | BANCO BILBAO VIZCAYA ARGENTARIA, S.A. NEW YORK BRANCH | NÃO APLICÁVEL | PPE BBVA - LT - JAN/2030 - ROF TB183504 | 17/01/2030 | BANCO BILBAO VIZCAYA ARGENTARIA, S.A. NEW YORK BRANCH - TWO, MANHATTAN WEST - 375 9TH AVE - 8TH FLOOR, NEW YORK 10001 | ANDRE.FERRARI@BBVA.COM; CARINA.ZAPPAROLI@BBVA.COM | USD | 201.741.563,55 | - | 1.051.736.265,26 |
| RAIZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBÊNTURES - 2ª EMISSÃO RSA RAIZ12 | 24/06/2031 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 E 303 E 304 E. BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 1.081.109.760,73 | - | 1.081.109.760,73 |
| RAIZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBÊNTURES - 4ª EMISSÃO RSA RAIZ22 | 15/07/2030 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 E 303 E 304 E. BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 868.635.172,63 | - | 868.635.172,63 |
| RAIZEN S.A | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE RABOBANK USD 55MM 2026 - ROF TB091050 | 02/12/2026 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SÃO PAULO, SP, BRASIL | LBR.SAOPAULO.ASSISTANTSRMGCCORD@RABOBANK.COM | USD | 50.356.611,11 | - | 262.524.120,70 |
| RAIZEN S.A | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | PPE BBOF X BOFA 70MM - ROF TB131086 | 29/09/2029 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG.CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | 70.636.921,03 | - | 368.241.867,41 |
| RAIZEN S.A | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | NÃO APLICÁVEL | PPE_CREDIT_USD50MM - ROF TB131086 | 29/03/2030 | 1301 AVENUE OF THE AMERICAS, 8TH FLOOR, NEW YORK, NY 10019-6022, UNITED STATES OF AMERICA | JEAN.GOETHALS@CA-CIB.COM; FERNANDO.SALAZAR@CA-CIB.COM | USD | 50.923.125,00 | - | 263.287.841,57 |
| RAIZEN S.A | MUFG BANK, LTD. | NÃO APLICÁVEL | PPE LP MUFG USD50M 12.08.25 | 10/08/2029 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | INRRALM@US.MUFG.JP | USD | 50.196.419,17 | - | 261.888.982,04 |
| RAIZEN S.A | CITIBANK N.A | NÃO APLICÁVEL | AVAL FIDEIMPO | 12/03/2026 | AV. PAULISTA, N° 1.111, (LOJA-1, 3 E SOBRELOJA) | JORGE.LIMA@CITI.COM; ROBERTO.GASTALDI@CITI.COM; ALEXANDRE.CASTANHEIRA@CITI.COM | USD | 6.270.796,16 | - | 32.691.552,05 |
| RAIZEN S.A | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 21/06/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLIMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | 20.000.000,00 | - | 104.266.000,00 |
| RAIZEN S.A | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 06/07/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLIMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | 20.000.000,00 | - | 104.266.000,00 |
| RAIZEN S.A | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 08/09/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLIMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | 10.000.000,00 | - | 52.133.000,00 |
| RAIZEN S.A | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 17/09/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLIMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | 15.000.000,00 | - | 78.199.500,00 |
| RAIZEN S.A | BNP PARIBAS S.A | NÃO APLICÁVEL | AVAL ECA | 31/10/2030 | 16 BOULEVARD DES ITALIENS PARIS, 75009 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MANA@BR.BNPPARIBAS.COM; FELIPE.IRANI@BR.BNPPARIBAS.COM | USD | 30.006.837,97 | - | 156.433.605,73 |
| RAIZEN S.A | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | 04.270.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 3264307 | 31/01/2030 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEIÇÃO, SAO PAULO - SP - 34543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 292.239.664,00 | - | 292.239.664,00 |
| RAIZEN S.A | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | 04.270.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO N°364040/6025251 E 364041/4263523 | 31/01/2031 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEIÇÃO, SAO PAULO - SP - 34543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 300.521.410,00 | - | 300.521.410,00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| RAIZEN S.A | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A | 04.270.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 32610123 | 31/01/2028 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543311 | HOMEBROKER@SANTANDER.COM.BR | BRL | 385.656.629,00 | - | - | 385.656.629,00 |
| RAIZEN S.A | XP COMERCIALIZADORA DE ENERGIA S.A. | 34.476.313/0001-30 | AVAL CONTRATO DE COMPRA E VENDA DE ENERGIA ELÉTRICA LP.35.2023 | 31/01/2031 | AV PRES JUSCELINO KUBITSCHEK, 1909 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543907 | CAROLINA.MONTENEGRO@XPI.COM.BR, ENERGIA.ESTRUTURADA02@XPI.COM.BR | BRL | 170.000.000,00 | - | - | 170.000.000,00 |
| RAIZEN S.A | CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK | NÃO APLICÁVEL | AVAL REVOLVING LOAN FACILITY AGREEMENT | 07/11/2030 | 1301 AVENUE OF THE AMERICAS, NEW YORK CITY, NY 10019 | DANIELA.ALVARADO@CA-CIB.COM / JAIME.FRONTERA@CA-CIB.COM | USD | - | 1.386.750,00 | - | 7.230.970,39 |
| RAIZEN S.A | BANCO BRADESCO S.A. | 60.746.948/0001-12 | Operações Derivativas | - | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANIO@BRADESCO.COM.BR; RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | Banco Morgan Stanley S.A. | 02.801.938/0001-36 | Operações Derivativas | - | AVENIDA BRIGADEIRO FARIA LIMA, 3600, 7 ANDAR, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | FERNANDO.MELLO@MORGANSTANLEY.COM; GUSTAVO.SIQUEIRA@MORGANSTANLEY.COM; JOAO.CAMAROTA@MORGANSTANLEY.COM; CRISTIANE.GUTERIO@MORGANSTANLEY.COM | BRL | 194.215.153,61 | - | - | 194.215.153,61 |
| RAIZEN S.A | Banco BNP Paribas Brasil S.A. | 01.522.368/0001-82 | Operações Derivativas | - | AVENIDA PRESIDENTE JUSCELINO KUBITSCHEK 1909, CONJ 91 - 101 - 111, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL | FINANCEIRO@BR.BNPPARIBAS.COM | BRL | 532.983.718,37 | - | - | 532.983.718,37 |
| RAIZEN S.A | BANCO CITIBANK S.A. | 33.479.023/0001-80 | Operações Derivativas | - | AVENIDA PAULISTA 1111, ANDAR 2 PARTE, BELA VISTA, SAO PAULO, SP, BRASIL, 01311920 | CONTATOCONT@CITI.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | BANK OF AMERICA MERRILL LYNCH BANCO MULTIPLO S.A. | 62.073.200/0001-21 | Operações Derivativas | - | AV. BRIGADEIRO FARIA LIMA, 3400, 18O ANDAR 04538-132, SÃO PAULO, SP, BRAZIL | DG.TAX_LITIGATION@BOFA.COM | BRL | 388.645.349,41 | - | - | 388.645.349,41 |
| RAIZEN S.A | BANCO CREDIT AGRICOLE BRASIL S.A. | 75.647.891/0001-71 | Operações Derivativas | - | AV BRIG FARIA LIMA, 3900 – ITAIM BIBI, SAO PAULO – 04538132 | CONTABIL.FINANCE@CA-CIB.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | BANCO J.D BRASIL, S.A. | 33.172.537/0001-98 | Operações Derivativas | - | QUADRA SAUN QUADRA 5,BLOCO B TORRE I, II, III 9N, ANDAR T I 5L 5101 A 5160Z T II 5L C131 A C160Z TM 5L N101 A N160Z, ASA NORTE, BRASILIA, DF, BRASIL, 70040912 | SECDI2@BR.COM.BR | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | XP INVESTIMENTOS CORRETORA DE CÂMBIO, TÍTULOS E VALORES MOBILIÁRIOS S.A. | 02.332.886/0001-04 | Operações Derivativas | - | PRAIA BOTAFOGO 00501, BLC I 5AL 501, BOTAFOGO, RIO DE JANEIRO, RJ, BRASIL, 22250911 | CONTROLADORA@XPI.COM.BR | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | Scotiabank Brasil S.A. Banco Múltiplo | 29.030.467/0001-66 | Operações Derivativas | - | AVENIDA BRIGADEIRO FARIA LIMA 3277, 7 ANDAR, JARDIM PAULISTANO, SAO PAULO, SP, BRASIL, 01452000 | ADMINISTRATION.SP@BR.SCOTIABANK.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | Banco MUFG Brasil S.A. | 60.498.557/0001-26 | Operações Derivativas | - | AVENIDA PAULISTA 1274, BELA VISTA, SAO PAULO, SP, BRASIL, 01310925 | ProcessamentodeOperacoes@us.mufg.jp; br-3-Sales@br.mufg.jp; 3-MiddleOffice@br.mufg.jp | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | Deutsche Bank S.A. | 62.331.228/0001-11 | Operações Derivativas | - | AVENIDA BRIG FARIA LIMA 3900, ANDAR 13, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | BRTAX@LIST.DB.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | Banco Mizuho do Brasil S.A. | 61.088.183/0001-33 | Operações Derivativas | - | AVENIDA PRESIDENTE JUSCELINO KUBITSCHEK 2041, ANDAR 7 TORRE E, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543011 | ROBERTO.VERANO@MIZUHOGROUP.COM; KATIA.HEYDENRECH@MIZUHOGROUP.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/4816-59 | Operações Derivativas | - | AVENIDA BRIGADEIRO FARIA LIMA 2900, 1 2 3 PARTE; 4 E 5 ANDARES, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | ITAUJUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 31.804.945,02 | - | - | 31.804.945,02 |
| RAIZEN S.A | BTG PACTUAL S.A. | 30.306.294/0001-45 | Operações Derivativas | - | PRAIA BOTAFOGO 00501, BLOCO3 5AL401 501 BLC II 5AL 601, BOTAFOGO, RIO DE JANEIRO, RJ, BRASIL, 22250911 | JOFFRE.SALES@BTGPACTUAL.COM; DANIEL.VAZ@BTGPACTUAL.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | BANCO HSBC S.A. | 53.518.684/0001-84 | Operações Derivativas | - | AVENIDA PRES JUSCELINO KUBITSCHEK 1909, BLOCO NORTE ANDAR 19, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543907 | SPECIAL.TS.9AM.GTS.AMH@HSBC.COM.HK | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | Macquarie Bank LTD | NÃO APLICÁVEL | Operações Derivativas | - | 50 MARTIN PLACE, SYDNEY, NSW 2000, AUSTRALIA | FEEDBACK@MACQUARIE.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | Goldman Sachs do Brasil Banco Múltiplo S.A. | 04.332.281/0001-30 | Operações Derivativas | - | R LEOPOLDO COUTO DE MAGALHAES JUNIOR, 700 - ITAIM BIBI, SAO PAULO - 04542000 | GS-TAX-BRAZIL@GS.COM | BRL | | | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| **Total** | | | | | | | | **19.272.776.760,56** | **7.678.016.911,43** | **556.192.308,99** | **82.323.112.491,59** |

**Intercompany**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN S.A | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBOP X 2517 488MM - RDF TB165499 | 05/03/2024 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 489.003.286,36 | - | 2.549.331.259,38 |
| RAIZEN S.A | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBOP X 2517 639MM - 2004 - RDF TB165497 | 05/03/2024 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 640.119.262,55 | - | 3.337.120.751,44 |
| RAIZEN S.A | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBOP X 2517 750MM - 2002 - RDF TB170809 | 08/07/2032 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 759.074.206,33 | - | 3.952.088.270,30 |
| RAIZEN S.A | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBOP X CCLF 350MM 2004 - RDF TB165494 | 05/03/2024 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 350.271.327,78 | - | 1.826.069.513,10 |
| **Total** | - | - | - | - | - | - | - | - | **2.237.470.869,82** | - | **11.664.602.784,24** |

USD Ptax Compra (09/01) 2133
EUR Ptax Compra (09/01) 0433

**RAÍZEN ENERGIA S.A.**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN ENERGIA S.A. | U.S. BANK NATIONAL ASSOCIATION | NÃO APLICÁVEL | AVAL US BOND 2025MM | 20/01/2027 | 100 WALL STREET, 16TH FLOOR, NEW YORK, NEW YORK 10005, USA | PIERRE.DESAULNIERS@USBANK.COM, LOGAN.DIESKE@USBANK.COM, TUAN.PHAN1@USBANK.COM, MICHELLE.MENA@USBANK.COM | USD | - | 185.135.070,89 | - | 986.317.884,03 |
| RAÍZEN ENERGIA S.A. | BNP PARIBAS | NÃO APLICÁVEL | AVAL LOAN SACE 300MM | 21/06/2030 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM, JULIANA.MANI@BR.BNPPARIBAS.COM, FELIPE.IRANI@BR.BNPPARIBAS.COM | EUR | - | 305.270.433,33 | 1.944.889.156,14 | |
| RAÍZEN ENERGIA S.A. | BNP PARIBAS | NÃO APLICÁVEL | AVAL LOAN SACE II 200MM | 23/07/2030 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM, JULIANA.MANI@BR.BNPPARIBAS.COM, FELIPE.IRANI@BR.BNPPARIBAS.COM | EUR | - | 200.913.888,61 | 1.214.192.770,45 | |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2032 | 08/07/2032 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 750.072.916,67 | - | 3.902.061.536,48 |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2034 | 05/03/2034 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.000.895.833,33 | - | 5.217.973.247,90 |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2035 | 17/01/2035 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.008.391.666,67 | - | 5.257.048.275,85 |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 500.482.638,89 | - | 2.609.166.141,33 |
| RAÍZEN ENERGIA S.A. | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | PPE BOFA – L7 – JAN2028 – ROF TB163599 – BSV1 | 27/01/2028 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG.CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | - | 100.583.471,67 | - | 524.423.945,84 |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CPR-F 750MM | 26/11/2029 | NÚCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029000 | JOAO.MANSO@BRADESCO.COM.BR, RODRIGO.PAVELI@BRADESCO.COM.BR | BRL | 783.226.402,50 | - | - | 783.226.402,50 |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CPR-F 250MM | 26/11/2029 | NÚCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029000 | JOAO.MANSO@BRADESCO.COM.BR, RODRIGO.PAVELI@BRADESCO.COM.BR | BRL | 261.175.737,50 | - | - | 261.175.737,50 |
| RAÍZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/4816-09 | CPRF IBBA – LP – ABR2030 | 29/04/2030 | AVENIDA BRIGADEIRO FARIA LIMA 3500, / 1,2,3 PARTE, / 4 E 5 ANDARES, ITAIM BIBI, SÃO PAULO, SP, BRASIL, 04538132 | ITAULUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 205.233.347,05 | - | - | 205.233.347,05 |
| RAÍZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/4816-09 | CPRF IBBA – LP – JUN2030 | 13/06/2030 | AVENIDA BRIGADEIRO FARIA LIMA 3500, / 1,2,3 PARTE, / 4 E 5 ANDARES, ITAIM BIBI, SÃO PAULO, SP, BRASIL, 04538132 | ITAULUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 310.057.530,79 | - | - | 310.057.530,79 |
| RAÍZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/4816-09 | CPRF IBBA – LP – JUN2027 | 14/06/2027 | AVENIDA BRIGADEIRO FARIA LIMA 3500, / 1,2,3 PARTE, / 4 E 5 ANDARES, ITAIM BIBI, SÃO PAULO, SP, BRASIL, 04538132 | ITAULUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 722.710.107,56 | - | - | 722.710.107,56 |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) S.A. | 90.400.888/0001-42 | CPRF SANTANDER – LP – JUN2028 | 20/06/2028 | AV. PRES JUSCELINO KUBITSCHEK 2041, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL,04543011 | GVALLONE@SANTANDER.COM.BR, KOSILVA@SANTANDER.COM.BR | BRL | 667.177.032,00 | - | - | 667.177.032,00 |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) S.A. | 90.400.888/0001-42 | CPRF SANTANDER – LP – AGO2028 | 21/08/2028 | AV. PRES JUSCELINO KUBITSCHEK 2041, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL,04543011 | GVALLONE@SANTANDER.COM.BR, KOSILVA@SANTANDER.COM.BR | BRL | 257.803.046,00 | - | - | 257.803.046,00 |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CPRF BRADESCO – LP – JUL2030 | 10/07/2030 | NÚCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029000 | JOAO.MANSO@BRADESCO.COM.BR, RODRIGO.PAVELI@BRADESCO.COM.BR | BRL | 766.904.647,50 | - | - | 766.904.647,50 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VII 226.193_1ºE RAÍZEN 1ºS_CRA01000012 | 16/07/2029 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 232.792.892,92 | - | - | 232.792.892,92 |
| RAÍZEN ENERGIA S.A. | OPEA SECURITIZADORA S.A. | 02.773.542/0001-22 | CRA VI IPCA 600MM CRA 2.CIA.2 CRA01900057 | 16/03/2026 | R. GRASSO, 550, ANEXO TORRE C-PARTE - VILA MADALENA, SÃO PAULO - SP - 05.433-001 | FINANCEIRO@OPEA.COM.BR | BRL | 905.715.403,49 | - | - | 905.715.403,49 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA IX 1.060.000.000_8ºE RAÍZEN 1ºS_CRA02200M8 | 17/06/2032 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.282.940.117,90 | - | - | 1.282.940.117,90 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA IX 940.000.000_7ºE RAÍZEN 2ºS_CRA02200M8 | 17/06/2037 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.138.600.158,36 | - | - | 1.138.600.158,36 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA IX 787.658_6ºE RAÍZEN 1ºS_CRA01900013 | 16/07/2029 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.153.263.672,58 | - | - | 1.153.263.672,58 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VII 362.426_10ºE RAÍZEN 1ºS_CRA02200YP7 | 15/09/2027 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 501.203.718,45 | - | - | 501.203.718,45 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VII 729.056_10ºE RAÍZEN 2ºS_CRA02200YP8 | 17/06/2030 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.036.294.578,25 | - | - | 1.036.294.578,25 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA DOCTOR X - 3ºSÉRIE - 102033_CRA02300JR7 | 17/10/2033 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 567.943.999,36 | - | - | 567.943.999,36 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA DOCTOR X - 1ºSÉRIE - 102033_CRA02300JR5 | 15/10/2030 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 218.430.987,03 | - | - | 218.430.987,03 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA DOCTOR X - 2ºSÉRIE - 102033_CRA02300JR6 | 17/10/2033 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 301.284.380,68 | - | - | 301.284.380,68 |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CREDITO RURAL LIVRE BRL 250MM - LT JUL28 | 11/07/2029 | NÚCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029000 | JOAO.MANSO@BRADESCO.COM.BR, RODRIGO.PAVELI@BRADESCO.COM.BR | BRL | 273.648.581,00 | - | - | 273.648.581,00 |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA 4ª SÉRIE ÚNICA RESA14 | 16/11/2029 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 1.264.692.452,80 | - | - | 1.264.692.452,80 |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA 5ª EMISSÃO - RESA15 | 15/06/2030 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 241.287.186,67 | - | - | 241.287.186,67 |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA - RESA27 | 15/03/2032 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 536.888.542,23 | - | - | 536.888.542,23 |

| Entity | Counterparty | Type | Instrument | Date | Address | Contact | Ccy | | | | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN ENERGIA S.A. | PENTÁGONO S A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | DEBENTURE INCENTIVADA - RESA17 | | 15/03/2029 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 E 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 951.798.942,95 | - | - | 951.798.942,95 |
| RAIZEN ENERGIA S.A. | BANCO DO BRASIL S.A. | NÃO APLICÁVEL | NCE BB NR 2000100-2 | 20/12/2029 | QUADRA SAUN QUADRA 5 BLOCO B TORRE I, II, III BN, ANDAR T I SL S101 A S1602 T II SL C101 A C1602 TIII SL N101 A N1602, ASA NORTE, BRASILIA, DF, BRASIL, 70040912 | SECEX@BB.COM.BR | BRL | 1.033.507.058,00 | - | - | 1.033.507.058,00 |
| RAIZEN ENERGIA S.A. | BNP PARIBAS | NÃO APLICÁVEL | PPE_BNP_USD120MLN - RDF TB130571 | 27/03/2029 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM, JULIANA.MAN@BR.BNPPARIBAS.COM FELIPE.IRAN@BR.BNPPARIBAS.COM | USD | 76.154.781,47 | - | - | 391.804.317,87 |
| RAIZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE OP RABOBANK USD 100M 09.05.22 RDF TB130491 | 23/03/2029 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSISTANTSRMGCOBRAZIL@RABOBANK.COM | USD | 102.960.666,67 | - | - | 528.242.510,53 |
| RAIZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE LP RABOBANK USD 200M 12.05.22 (VCTO 11.05.27) RDF TB104920 | 11/05/2027 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSISTANTSRMGCOBRAZIL@RABOBANK.COM | USD | 200.733.500,00 | - | - | 1.046.480.950,05 |
| RAIZEN ENERGIA S.A. | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | PPE LP BOFA USD 50M MAI.22 (VENCTO 28.05.27) RDF TB108359 | 28/05/2027 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG.CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | 50.061.304,11 | - | - | 260.884.596,72 |
| RAIZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | PPE LP SMBC USD 200M JUN.22 (VENCTO 14.06.27) RDF TB107846 | 14/06/2027 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIAN.COUTINHO@SMBCGROUP.COM, JOAQUIM_MARQUES@SMBCGROUP.COM.BR, RODRIGO_TORRES@SMBCGROUP.COM.BR, CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | 202.200.166,66 | - | - | 1.054.132.138,85 |
| RAIZEN ENERGIA S.A. | BANK OF CHINA LIMITED, GRAND CAYMAN BRANCH | NÃO APLICÁVEL | PPE BANK OF CHINA USD 150 MLN/DES RDF TB133957 | 08/05/2029 | GRAND PAVILION COMMERCIAL CENTER 802 WEST BAY ROAD - P.O BOX 30980, GRAND CAYMAN KY1-1204 - CAYMAN ISLANDS / AVENIDA PAULISTA, 901, 14TH FLOOR - ZIP CODE: 01311-100, SAO PAULO, SP, BRASIL | XU.LEI@BOC-BRAZIL.COM, RICARDO.MANGIONE@BOCBRASIL.COM.BR, BAI.YUN@BOC-BRAZIL.COM, AUGUSTO.PAIXAO@BOCBRASIL.COM.BR, JONY.BRITO@BOCBRASIL.COM.BR, VICTOR.GUEDES@BOC-BRAZIL.COM, FREDERICO.LIMA@BOCBRASIL.COM.BR, DANIEL.BAUMANN@BOC-BRAZIL.COM | USD | 152.475.833,25 | - | - | 794.902.281,46 |
| RAIZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | PPE SMBC - BT - MAR/25 - RDF TB103151 | 14/03/2028 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIAN.COUTINHO@SMBCGROUP.COM, JOAQUIM_MARQUES@SMBCGROUP.COM.BR, RODRIGO_TORRES@SMBCGROUP.COM.BR, CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | 102.586.116,89 | - | - | 534.674.762,70 |
| RAIZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE LP BS01 RABOBANK USD44M 10.04.23 - RDF TB107284 | 10/04/2030 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSISTANTSRMGCOBRAZIL@RABOBANK.COM | USD | 45.036.382,02 | - | - | 234.798.222,53 |
| RAIZEN ENERGIA S.A. | PENTÁGONO S A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | NÃO APLICÁVEL | AVAL DEBENTURES INCENTIVADA - 3ª EMISSÃO - 1ª SÉRIE RAIZ13 | 15/09/2034 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 E 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 958.673.055,24 | - | - | 958.673.055,24 |
| RAIZEN ENERGIA S.A. | PENTÁGONO S A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | NÃO APLICÁVEL | AVAL DEBENTURE INCENTIVADA - 2ª EMISSÃO RSA - 2ª SÉRIE RAIZ23 | 15/09/2039 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 E 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 692.287.301,90 | - | - | 692.287.301,90 |
| RAIZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | AVAL PPE SMBC - LT - FEV/2028 - RDF TB104931 | 18/02/2028 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIAN.COUTINHO@SMBCGROUP.COM, JOAQUIM_MARQUES@SMBCGROUP.COM.BR, RODRIGO_TORRES@SMBCGROUP.COM.BR, CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | 70.180.785,14 | - | - | 365.500.302,60 |
| RAIZEN ENERGIA S.A. | THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED | NÃO APLICÁVEL | AVAL PPE HSBC - LT - FEV/2028 - RDF TB105024 | 04/02/2028 | LEVEL 3, HSBC BUILDING MONGKOK, 673 NATHAN ROAD, KOWLOON, HONG KONG | SPECIAL.TS.SRM.GTS.AMH@HSBC.COM.HK | USD | 85.849.555,41 | - | - | 447.559.487,22 |
| RAIZEN ENERGIA S.A. | JPMORGAN CHASE BANK, N.A. | NÃO APLICÁVEL | AVAL PPE LP JPMORGAN USD50M 29.04.25 - RDF TB108368 | 29/04/2030 | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM, NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | 51.058.854,33 | - | - | 265.914.033,70 |
| RAIZEN ENERGIA S.A. | MUFG BANK, LTD. | NÃO APLICÁVEL | AVAL PPE LP MUFG USD100M 29.04.25 - RDF TB108146 | 29/04/2030 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | PARRA.M@US.MUFG.JP | USD | 100.619.527,78 | - | - | 524.554.623,00 |
| RAIZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | AVAL PPE LP RABOBANK USD30M 29.04.25 - RDF TB108055 | 29/04/2030 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSISTANTSRMGCOBRAZIL@RABOBANK.COM | USD | 30.617.640,10 | - | - | 159.618.943,14 |
| RAIZEN ENERGIA S.A. | MUFG BANK, LTD. | NÃO APLICÁVEL | AVAL PPE LP MUFG USD75M 30.10.25 | 30/10/2029 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | PARRA.M@US.MUFG.JP | USD | 75.444.180,75 | - | - | 393.313.147,50 |
| RAIZEN ENERGIA S.A. | THE BANK OF NOVA SCOTIA | NÃO APLICÁVEL | AVAL PPE LP SCOTIABANK USD300M 30.10.25 | 30/10/2030 | 720 KING STREET WEST, 2ND FLOOR, TORONTO, ONTARIO, CANADA, M5V 2T3 | GWS.DXAOPS.INTL@SCOTIABANK.COM | USD | 305.185.416,67 | - | - | 1.591.023.132,71 |
| RAIZEN ENERGIA S.A. | JPMORGAN CHASE BANK, N.A. | NÃO APLICÁVEL | AVAL PPE JPM - LT - FEV/2030 - RDF TB105007 | 14/02/2030 | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM, NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | 100.285.222,78 | - | - | 522.858.535,32 |
| RAIZEN ENERGIA S.A. | BANCO CITIBANK S.A. | 33.479.023/0001-80 | NCE CITI - LT - FEV/030 - BISV1 | 15/02/2030 | AVENIDA PAULISTA 1111, ANDAR 2 PARTE, BELA VISTA, SAO PAULO, SP, BRASIL, 01311920 | CONTATOCORP@CITI.COM | USD | 83.122.946,50 | - | - | 433.244.967,40 |
| RAIZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL RETRIP BOND 2054 | 05/03/2054 | 240 GREENWICH STREET - 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLUTTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | 750.723.958,33 | - | - | 3.913.749.211,96 |
| RAIZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2037 | 25/02/2037 | 240 GREENWICH STREET - 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLUTTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | 1.002.781.669,87 | - | - | 5.227.953.736,85 |
| RAIZEN ENERGIA S.A. | PENTÁGONO S A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | AVAL DEBÊNTURES - 2ª EMISSÃO RSA RAIZ12 | 24/06/2031 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 E 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 1.081.109.760,73 | - | - | 1.081.109.760,73 |
| RAIZEN ENERGIA S.A. | PENTÁGONO S A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | AVAL DEBÊNTURES - 4ª EMISSÃO RSA RAIZ14 | 15/07/2030 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 E 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 868.635.172,63 | - | - | 868.635.172,63 |
| RAIZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | AVAL PPE RABOBANK USD 30MM 2026 - RDF TB091059 | 02/12/2026 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSISTANTSRMGCOBRAZIL@RABOBANK.COM | USD | 50.356.811,11 | - | - | 262.524.120,70 |
| RAIZEN ENERGIA S.A. | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | AVAL PPE SBOP X BOFA 70MM - RDF TB103480 | 28/09/2028 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG.CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | 70.836.921,03 | - | - | 369.241.987,41 |
| RAIZEN ENERGIA S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | NÃO APLICÁVEL | AVAL PPE_CREDIT_USD50MM - RDF TB100986 | 29/03/2030 | 1301 AVENUE OF THE AMERICAS, 8TH FLOOR, NEW YORK, NY 10019-6022, UNITED STATES OF AMERICA | JEAN.GOETHALS@CA-CIB.COM, FERNANDO.SALADF@CA-CIB.COM | USD | 50.933.125,00 | - | - | 265.287.941,57 |
| RAIZEN ENERGIA S.A. | MUFG BANK, LTD. | NÃO APLICÁVEL | AVAL PPE LP MUFG USD50M 12.09.25 | 10/09/2029 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | PARRA.M@US.MUFG.JP | USD | 50.196.419,17 | - | - | 261.688.892,34 |
| RAIZEN ENERGIA S.A. | CITIBANK, N.A. | NÃO APLICÁVEL | AVAL FIDEIMPO | 12/03/2026 | AV. PAULISTA, Nº 1.111, (LOJA 1, 3 E SOBRELOJA) | JORGE.LIMA@CITI.COM, ROBERTO.GASTAUD@CITI.COM, ALEXANDRE.CASTANHEIRA@CITI.COM | USD | 6.270.798,16 | - | - | 32.691.582,20 |
| RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A. | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 21/06/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLÍMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR, KOSILVA@SANTANDER.COM.BR | USD | 20.000.000,00 | - | - | 104.286.000,00 |
| RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A. | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 06/07/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLÍMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR, KOSILVA@SANTANDER.COM.BR | USD | 20.000.000,00 | - | - | 104.286.000,00 |
| RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A. | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 08/06/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLÍMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR, KOSILVA@SANTANDER.COM.BR | USD | 10.000.000,00 | - | - | 52.133.000,00 |

| Devedor | Credor | CNPJ | Contrato | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A. | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 17/08/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLIMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | - | 15.000.000,00 | 78.199.500,00 |
| RAIZEN ENERGIA S.A. | BNP PARIBAS S.A | NÃO APLICÁVEL | AVAL ECA | 31/10/2030 | 16 BOULEVARD DES ITALIENS PARIS, 75009 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MAIA@BR.BNPPARIBAS.COM; FELIPE.IRAN@BR.BNPPARIBAS.COM | USD | 30.008.637,97 | | 196.432.805,73 |
| RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVICOS S.A. | 04.270.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELETRICA CONTRATO 3264/2007 | 31/01/2033 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 292.239.664,30 | | 292.239.664,30 |
| RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVICOS S.A. | 04.270.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELETRICA CONTRATO 9F0645AB0022D E 36404174/2033 | 31/01/2031 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 300.521.410,00 | | 300.521.410,00 |
| RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVICOS S.A. | 04.270.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELETRICA CONTRATO 3261/2125 | 31/01/2028 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 385.656.628,00 | | 385.656.628,00 |
| RAIZEN ENERGIA S.A. | XP COMERCIALIZADORA DE ENERGIA | 34.475.373/0001-30 | AVAL CONTRATO DE COMPRA E VENDA DE ENERGIA ELETRICA LP.35.2023 | 31/01/2031 | AV PRES JUSCELINO KUBITSCHEK, 1909 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543567 | CAROLINA.MONTENEGRO@XPI.COM.BR; ENERGIA.ESTRUTURADAS@XPI.COM.BR | BRL | 170.000.000,00 | | 170.000.000,00 |
| RAIZEN ENERGIA S.A. | CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK | NÃO APLICÁVEL | AVAL REVOLVING LOAN FACILITY AGREEMENT | 07/11/2030 | 1301 AVENUE OF THE AMERICAS, NEW YORK CITY, NY 10019 | DANIELA.ALVARADO@CA-CIB.COM / JAIME.FRONTERA@CA-CIB.COM | USD | 1.388.750,00 | | 7.239.970,38 |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | Operações Derivativas | - | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MARGO@BRADESCO.COM.BR; RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | - | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN ENERGIA S.A. | Banco Morgan Stanley S.A. | 02.801.938/0001-36 | Operações Derivativas | - | AVENIDA BRIGADEIRO FARIA LIMA, 3600, 7 ANDAR, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | FERNANDO.MELLO@MORGANSTANLEY.COM; GUSTAVO.SIQUEIRA@MORGANSTANLEY.COM; JOAO.CAVAROTTA@MORGANSTANLEY.COM; CRISTIANE.OUTERO@MORGANSTANLEY.COM | BRL | 399.874.329,47 | | 399.874.329,47 |
| RAIZEN ENERGIA S.A. | Banco BNP Paribas Brasil S.A | 01.522.368/0001-82 | Operações Derivativas | - | AVENIDA PRESIDENTE JUSCELINO KUBITSCHEK, 1909, CONJ 91 - 101 - 111, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543011 | FINANCEIRO@BR.BNPPARIBAS.COM | BRL | 72.920.297,19 | | 72.920.297,19 |
| RAIZEN ENERGIA S.A. | BANCO CITIBANK S.A. | 33.479.023/0001-80 | Operações Derivativas | - | AVENIDA PAULISTA 1111, ANDAR 2 PARTE, BELA VISTA, SAO PAULO, SP, BRASIL, 01311920 | CONTATOICNP@CITI.COM | BRL | - | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN ENERGIA S.A. | BANCO CRÉDIT AGRICOLE BRASIL S.A. | 75.647.891/0001-71 | Operações Derivativas | - | AV BRIG FARIA LIMA, 3900 - ITAIM BIBI, SAO PAULO - 04538132 | CONTABIL.FINANCE@CA-CIB.COM | BRL | - | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN ENERGIA S.A. | BANCO DO BRASIL S.A. | 00.000.000/0001-91 | Operações Derivativas | - | QUADRA SAUN QUADRA 5 BLOCO B TORRE I, II, III SN, ANDAR T I SL S101 A S1602 T II SL C101 A C1602 TIII SL N101 A N1602, ASA NORTE, BRASILIA, DF, BRASIL, 70040912 | SECEX@BB.COM.BR | BRL | - | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN ENERGIA S.A. | XP INVESTIMENTOS CORRETORA DE CÂMBIO, TÍTULOS E VALORES MOBILIÁRIOS S.A. | 02.332.886/0001-04 | Operações Derivativas | - | PRAIA BOTAFOGO 000001, BLC I SAL 501, BOTAFOGO, RIO DE JANEIRO, RJ, BRASIL, 22250911 | CONTROLADORIA@XPI.COM.BR | BRL | - | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN ENERGIA S.A. | COOPERATIVE RABOBANK U.A | NÃO APLICÁVEL | Operações Derivativas | - | CROESELAAN 18, UTRECHT, PAISES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | L.BR.SACPAULO.ASSISTANTSRMGCCBRAZIL@RABOBANK.COM | BRL | 10.350.978,17 | | 10.350.978,17 |
| RAIZEN ENERGIA S.A. | Goldman Sachs do Brasil Banco Múltiplo S.A. | 04.332.281/0001-30 | Operações Derivativas | - | R.LEOPOLDO COUTO DE MAGALHAES JUNIOR, 700 - ITAIM BIBI, SAO PAULO - 04542000 | GS-TAX-BRAZIL@GS.COM | BRL | - | | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| Raizen Energia S.A. | JP Morgan Chase Bank, NA | NÃO APLICÁVEL | Operações Derivativas | - | 1042 HIGHLAND MEADOW DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM; NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | 9.860.076,78 | | 51.423.546,70 |
| **Total** | | | | | | | **20.094.011.432,88** | **7.474.935.426,66** | **600.182.300,89** | **62.043.977.409,27** |

Intercompany

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BSV.G.BAR2.X 2X17 SACE 2 - ROF T8154408 | 23/07/2036 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | | 200.918.977,78 | 1.214.212.658,42 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BSV.G.BAR2.X 2X17 108 USD - ROF T8195734 | 17/01/2035 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 1.008.393.139,89 | | 5.257.055.992,68 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2. X CCLF SACE - TRANCHE 01 - ROF T8165367 | 22/09/2026 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | | 15.794.285,58 | 95.449.606,09 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2. X CCLF SACE - TRANCHE 02 - ROF T8165367 | 22/03/2027 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | | 15.773.093,44 | 95.321.535,57 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2. X CCLF SACE - TRANCHE 03 - ROF T8165367 | 22/09/2027 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | | 15.772.258,38 | 95.316.495,15 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2. X CCLF SACE - TRANCHE 04 - ROF T8165367 | 22/03/2028 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | | 15.762.700,44 | 95.258.727,57 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2. X CCLF SACE - TRANCHE 05 - ROF T8165367 | 22/09/2028 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | | 15.762.751,21 | 95.259.034,37 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2. X CCLF SACE - TRANCHE 06 - ROF T8165367 | 22/03/2029 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | | 15.796.165,83 | 95.219.236,98 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2. X CCLF SACE - TRANCHE 07 - ROF T8165367 | 24/09/2029 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | | 15.746.746,04 | 95.222.743,36 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2. X CCLF SACE - TRANCHE 08 - ROF T8165367 | 22/03/2030 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | | 15.761.869,21 | 95.160.062,55 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2. X CCLF SACE - TRANCHE 09 - ROF T8165367 | 22/09/2030 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | | 15.762.510,51 | 95.167.148,70 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2. X CCLF SACE - TRANCHE 10 - ROF T8165367 | 24/03/2031 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | | 15.748.378,52 | 95.172.163,85 |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 82

| Entidade | Credor | Tipo | Descrição | Data | Endereço | Email | Moeda | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 11 - RCF TB160367 | 22/09/2031 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.749.548,37 | 95.178.037,03 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 12 - RCF TB160367 | 22/03/2032 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.749.674,37 | 95.157.042,56 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 13 - RCF TB160367 | 22/09/2032 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.746.875,23 | 95.163.091,09 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 14 - RCF TB160367 | 22/03/2033 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.743.916,17 | 95.145.208,56 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 15 - RCF TB160367 | 22/09/2033 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.744.624,28 | 95.151.300,90 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 16 - RCF TB160367 | 22/03/2034 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.742.346,60 | 95.135.741,34 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 17 - RCF TB160367 | 22/09/2034 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.743.335,06 | 95.141.702,18 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 18 - RCF TB160367 | 22/03/2035 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.741.058,64 | 95.127.939,85 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 19 - RCF TB160367 | 21/09/2035 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.742.523,23 | 95.133.769,00 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BSV1-BAR2 X 2017 1BI USD 2037 - RCF TB160163 | 25/02/2037 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 1.002.792.083,33 | - | 5.227.893.968,04 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BSV1-BAR2 X 2017 750MM USD 2054 - RCF TB160170 | 05/03/2054 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 750.579.250,00 | - | 3.912.094.864,23 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X 2017 233MM 2031 27 - RCF TB165404 | 23/01/2027 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 183.887.620,96 | - | 957.618.874,36 |
| RAIZEN ENERGIA S.A. | RAIZEN TRADING S.A. | NÃO APLICÁVEL | - | - | RUE DE JARGONNANT 2, 1207 GENÈVE | DIVIDA@RAIZEN.COM | BRL | 3.448.595.041,13 | - | - | 3.448.595.041,13 |
| Total | - | - | - | - | - | - | | 3.448.595.041,13 | 2.945.492.093,18 | 500.249.241,81 | 21.827.276.691,54 |

USD Ptax Compra (09/15,2133)
EUR Ptax Compra (09/16,0433)

**RAÍZEN FUELS FINANCE S.A.**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN FUELS FINANCE S.A. | U.S. BANK NATIONAL ASSOCIATION | NÃO APLICÁVEL | US BOND 225MM 20.01.2027 | 20/01/2027 | 100 WALL STREET, 16TH FLOOR, NEW YORK, NEW YORK 10005, USA | PIERRE.DESAULNIERS@USBANK.COM; LOGAN.GIESEKE@USBANK.COM, TUAN.PHAN@USBANK.COM, MICHELLE.MENA@USBANK.COM | USD | - | 189.135.070,69 | - | 986.017.864,03 |
| RAÍZEN FUELS FINANCE S.A. | BNP PARIBAS | NÃO APLICÁVEL | LOAN SACE 300MM | 21/09/2035 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MAN@BR.BNPPARIBAS.COM; FELIPE.IRAN@BR.BNPPARIBAS.COM | EUR | - | - | 305.278.433,33 | 1.844.889.156,14 |
| RAÍZEN FUELS FINANCE S.A. | BNP PARIBAS | NÃO APLICÁVEL | LOAN SACE II 200MM | 23/07/2036 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MAN@BR.BNPPARIBAS.COM; FELIPE.IRAN@BR.BNPPARIBAS.COM | EUR | - | - | 200.913.866,67 | 1.214.182.770,45 |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2032 | 08/07/2032 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 758.072.916,67 | - | 3.952.061.536,48 |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2034 | 05/03/2034 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.000.895.833,33 | - | 5.217.970.247,90 |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2035 | 17/01/2035 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.008.391.666,67 | - | 5.257.048.275,85 |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 500.482.638,89 | - | 2.609.166.141,33 |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | RETAP BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 750.723.958,33 | - | 3.913.749.211,96 |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2037 | 25/02/2037 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.002.791.666,67 | - | 5.227.853.795,85 |
| RAÍZEN FUELS FINANCE S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | NÃO APLICÁVEL | REVOLVING LOAN FACILITY AGREEMENT | 07/11/2030 | 1301 AVENUE OF THE AMERICAS, NEW YORK CITY, NY 10019 | DANIELA.ALVARADO@CA-CIB.COM / JAIME.FRONTERA@CA-CIB.COM | USD | - | 1.388.750,00 | - | 7.239.970,38 |
| Total | - | - | - | - | - | - | | - | 5.211.882.501,25 | 506.192.300,00 | 30.230.178.970,36 |

USD Ptax Compra (09/C5,2133
EUR Ptax Compra (09/C6,0433

**RAÍZEN TRADING S.A.**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN TRADING S.A. | CITIBANK N.A | NÃO APLICÁVEL | Operações Derivativos | - | AV. PAULISTA, Nº 1.111, (LOJA 1, 3 E SOBRELOJA) | JORGE.LIMA@CITI.COM; ROBERTO.GASTAUD@CITI.COM; ALEXANDRE.CASTANHEIRA@CITI.COM | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| Total | - | - | - | - | - | - | | - | - | - | - |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 85

USD Ptax Compra (09/03/26)   5,2133
EUR Ptax Compra (09/03/26)   6,0433

**RAÍZEN NORTH AMERICA INC**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN NORTH AMERICA INC | RAIZEN TRADING S.A. | NÃO APLICÁVEL | - | - | RUE DE JARGONNANT 2, 1207 GENÈVE | DIVIDA@RAIZEN.COM | BRL | - | 68.178.597,27 | - | 355.435.481,15 |
| Total | - | - | - | - | - | - | | - | 68.178.597,27 | - | 355.435.481,15 |

USD Ptax Compra (09/03/26)    5,2133
EUR Ptax Compra (09/03/26)    6,0433

**RAIZEN CAARAPO ACUCAR E ALCOOL LTDA**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN CAARAPO ACUCAR E ALCOOL LTDA | BANK OF AMERICA MERRILL LYNCH BANCO MÚLTIPLO S.A. | 62.073.200/0001-21 | Aval Operações Derivativos | - | AV. BRIGADEIRO FARIA LIMA, 3400, 18O ANDAR 04538-132, SÃO PAULO, SP, BRAZIL | DG.TAX_LITIGATION@BOFA.COM | BRL | 388.645.349,41 | - | - | 388.645.349,41 |
| Total | - | - | - | - | - | | | 388.645.349,41 | - | - | 388.645.349,41 |

USD Ptax Compra (09/15,2133)
EUR Ptax Compra (09/16,0433)

**RAÍZEN CENTRO-SUL PAULISTA S.A.**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN CENTRO-SUL PAULISTA S.A. | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | PPE SMBC - LT - FEV/2028 - ROF TB164631 | 18/02/2028 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIAN.COUTINHO@SMBCGROUP.COM; JOAQUIM_MARQUES@SMBCGROUP.COM.BR; RODRIGO_TORRES@SMBCGROUP.COM.BR, CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | - | 70.189.765,14 | - | 365.920.302,60 |
| RAÍZEN CENTRO-SUL PAULISTA S.A. | JPMORGAN CHASE BANK, N.A. | NÃO APLICÁVEL | PPE JPM - LT - FEV/2030 - ROF TB164589 | 14/02/2030 | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM; NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | - | 100.283.222,78 | - | 522.806.525,32 |
| Total | - | - | - | - | | - | - | - | 170.472.987,92 | - | 888.726.827,92 |

USD Ptax Compra (0§ 5,2133
EUR Ptax Compra (0§ 6,0433

**RAÍZEN CENTRO-SUL S.A.**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN CENTRO-SUL S.A. | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/4 816-09 | Operações Derivativos | - | AVENIDA BRIGADEIRO FARIA LIMA 3500, : 1 2 3 PARTE; : 4 E 5 ANDARES,, ITAIM BIBI, SAO PAULO, SP, BRASIL, 0453B132 | ITAU.JUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 3.500.000,00 | - | - | 3.500.000,00 |
| RAÍZEN CENTRO-SUL S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | Operações Derivativos | - | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSIS TANTSRMGCCBRAZIL@ RABOBANK.COM | BRL | 1.060.000,00 | - | - | 1.060.000,00 |
| Total | - | - | - | - | - | - | - | 4.560.000,00 | - | - | 4.560.000,00 |

USD Ptax Compra (09/0(5,2133
EUR Ptax Compra (09/0(6,0433

**BLUEWAY TRADING IMPORTACAO E EXPORT**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BLUEWAY TRADING IMPORTACAO E EXPORT | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/4 816-09 | Operações Derivativos | - | AVENIDA BRIGADEIRO FARIA LIMA 3500, : 1 2 3 PARTE; : 4 E 5 ANDARES; ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | ITAUJUDICIAL@ITAU-UNIBANCO.COM.BR. | BRL | 2.744.211,48 | - | - | 2.744.211,48 |
| BLUEWAY TRADING IMPORTACAO E EXPORT | Goldman Sachs do Brasil Banco Múltiplo S.A | 04.332.281/0 001-30 | Operações Derivativos | - | R LEOPOLDO COUTO DE MAGALHAES JUNIOR, 700 - ITAIM BIBI, SAO PAULO - 04542000 | GS-TAX-BRAZIL@GS.COM | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| **Total** | - | - | - | - | - | - | - | **2.744.211,48** | - | - | **2.744.211,48** |

**ANEXO 2.4 | SCHEDULE 2.4**

| | |
|---|---|
| **TERMO DE ADESÃO AO PLANO DE RECUPERAÇÃO EXTRAJUDICIAL DO GRUPO RAÍZEN** | **ADHESION FORM TO THE EXTRAJUDICIAL REORGANIZATION PLAN OF THE RAÍZEN GROUP** |

| | |
|---|---|
| São Paulo, [●] de março de 2026 | São Paulo, March [●], 2026 |

| | |
|---|---|
| **Credor ou Grupo de Credores:** | **Creditor or Group of Creditors:** |
| [●] | [●] |
| **Valor do Crédito:**  [●] | **Claim Amount:**  [●] |

O Credor ou Grupo de Credor, acima indicado, vem, por seu representante autorizado, por meio do presente termo de adesão, no âmbito da recuperação extrajudicial do Grupo Raízen, na qualidade de titular de Créditos Sujeitos, **manifestar sua expressa adesão ao plano de recuperação extrajudicial datado de 10/03/2026 ("Plano"), nos termos e para todos os fins do artigo 161 e seguintes da LFR**. Para que não restem dúvidas, a adesão manifestada pelo Credor ou Grupo de Credores ao Plano está sujeita aos termos e condições dispostos no Plano, inclusive aos Eventos de Resolução nele dispostos

The Creditor, identified above, hereby represented by its authorized representative, by means of this adhesion form, in the context of the extrajudicial reorganization of the Raízen Group, in its capacity as beneficial owner of Subject Claims, hereby **expresses its adhesion to the extrajudicial reorganization plan dated March 10th, 2026 ("Plan"), pursuant to, and for all purposes of, Section 161 *et. seq.* of the Brazilian Bankruptcy Law.** For the avoidance of doubts, the adherence by the Creditor or Group of Creditors is subject to the terms and conditions of the Plan, including the Termination Events thereof.

O presente termo de adesão foi assinado por subscritor devidamente autorizado e com poderes para tanto, conforme documentação a ele anexada.

This adhesion form was signed by a signatory duly authorized and with powers to perform such act, pursuant to the documents attached hereto.

O Credor autoriza e concorda, neste ato, com a juntada deste termo de adesão nos autos da Recuperação Extrajudicial.

The Creditor hereby authorizes and agrees that this adhesion form be filed in the Extrajudicial Reorganization.

Os termos iniciados em letra maiúscula e não definidos neste termo estão definidos no Plano.

The terms initiated in capital letters not defined hereto are defined in the Plan.

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 91

[Denominação social do Credor ou referência ao Grupo de Credores / Legal name of the Creditor or reference to the Group of Creditors]

[Nome por extenso do signatário/ Print name of the signatory]

**ANEXO 2.4.1 | SCHEDULE 2.4.1**

**DECLARAÇÃO DE PROPRIEDADE | CERTIFICATE OF HOLDER**

| DECLARAÇÃO DE CREDOR INVESTIDOR | INVESTOR CREDITOR STATEMENT |
|---|---|
| O subscritor declara e garante, conforme aplicável, que é **(i)** proprietário/beneficiário dos títulos de dívida abaixo *e/ou* **(ii)** gestor, agente, corretor, representante ou consultor de credor(es) investidor(es) proprietário(s)/beneficiário(s) de títulos de dívida abaixo descritos, de acordo com screenshot(s) ou certificado(s)/declarações de custodiante(s), refletindo a propriedade de tais títulos, bem como declara estar devidamente autorizado a entregar esta declaração. | The undersigned declares and warrants, as applicable, that I am **(i)** the holder of debt securities described below *and/or* **(ii)** manager, agent, broker, adviser representative or consultant of the investor creditor indicated below, which holds the debt securities described below, in accordance with the screenshot(s) or broker(s)/custodian(s) certificate(s)/declaration(s), which indicates the proof of ownership of said securities, and that I am duly authorized to deliver this Statement. |
| **Nome completo do Credor Investidor ou do Gestor, Agente, Corretor, Representante ou Consultor**: | **Holder's full name or Manager's, broker's, agent's or consultant's full name:** |
| _____ | _____ |
| **Endereço:** | **Address:** |
| _____ | _____ |
| **E-mail:** | **E-mail:** |
| _____ | _____ |
| **Natureza do Título:** | **Nature of the Security:** |
| _____ | _____ |
| **ISIN (caso aplicável):** | **ISIN (if applicable):** |
| _____ | _____ |
| **Escritura(s) de Emissão:** | **Indenture(s):** |
| _____ | _____ |
| **Trustee(s):** | **Trustee(s):** |
| _____ | _____ |
| **Valor histórico/principal total dos títulos detidos:** (informar o valor de face dos títulos, ao tempo da emissão. Para os fins desta declaração, não será levado em conta o valor de compra, nem o valor de mercado do título): | **Aggregate face value of bonds held by investor(s):** (state the value of the securities at the time of issuance. For the purposes of this statement, neither the purchasing price nor the market value of the security will be taken into account): |
| _____ | _____ |

| | |
|---|---|
| **Nome da(s) corretora(s)/custodiante(s) do título:** <br><br> _____ <br><br><br> **Assinatura:** <br><br> _____ <br><br><br> **Local/Data:**_____ | **Name of the security broker(s)/custodian(s):** <br><br> _____ <br><br><br> **Signature:** <br><br> _____ <br><br><br> **Place/Date:** _____ |

## <u>EXHIBIT B</u>

**Certified Translation of Brazilian Petition Commencing the EJ**

*CERTIFICATION*

*This is to certify that the foregoing translation is, to the best of my knowledge and belief, a true and accurate rendition into English of the original document entitled "Raízen Inicial - RE" which was written in Portuguese.*

*I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

*Executed on March 11, 2026.*

Documento assinado digitalmente
**gov.br** ANA CECILIA WERNECK DE ALBUQUERQUE MAR
Data: 11/03/2026 13:33:07-0300
Verifique em https://validar.iti.gov.br

_____

*Ana Cecilia Maranhão*
*Email: anaceciliamaranhao@gmail.com*

[Case 4037759-13.2026.8.26.0100/SP, Event 1, INIC1, Pages 1 through 29]
[Letterheads of:
XGIVS Xavier Gagliardi Inglez Schaffer
Pinheiro Neto Advogados
TWK Advogados Thomaz Bastos Waisberg Kurzweil
eMunhoz Advogados]

Honorable Judge of the __ Bankruptcy and Judicial Recovery Court of the Central District of São Paulo

(1) RAÍZEN S.A., a publicly traded corporation, Category A, registered with the National Registry of Legal Entities of the Ministry of Finance ("CNPJ/MF") under number 33.453.598/0001-23; (2) RAÍZEN ENERGIA S.A., a publicly traded corporation, Category B, registered under CNPJ/MF No. 08.070.508/0001-78; (3) RAÍZEN FUELS FINANCE S.A., a business entity organized under the laws of Luxembourg, registration No. B184033; (4) RAÍZEN TRADING S.A., a business entity established under Swiss law, registration No. CHE-143.573.167; (5) RAÍZEN NORTH AMERICA INC., a business entity established under the laws of the United States of America, State of Delaware, registered under No. 34-2027198; (6) RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA., a corporation registered under CNPJ/MF No. 09.538.989/0001-66; (7) RAÍZEN CENTRO-SUL PAULISTA S.A., a corporation registered under CNPJ/MF No. 49.213.747/0118-28; (8) RAÍZEN CENTRO-SUL S.A., a corporation registered under CNPJ/MF No. 15.527.906/0001-36; (9) BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A., a corporation registered under CNPJ/MF No. 04.958.554/0001-57 (collectively, "RAÍZEN GROUP" or "APPLICANTS" – Schedule 2.1), through their legal counsel (Schedule 2.2), hereby request the initiation of the present OUT-OF-COURT REORGANIZATION PETITION ("Plan"

– Schedule 1) and the SUSPENSION OF LAWSUITS AND ENFORCEMENT PROCEEDINGS (*stay period*) against the Applicants, in accordance with Articles 6 and 163, § 8, of Law No. 11.101/2005 ("LFR"), for the reasons set forth below.

I.      RAÍZEN GROUP: HISTORY, STRUCTURE, AND SOCIAL IMPACT

1. Raízen Group was established in 2011, born from the merger of assets from Cosan S.A. ( "Cosan") and Shell Brasil Holding B.V. ("Shell"),[1] creating an integrated joint venture in fuel distribution and the production of sugar and ethanol. This operation combined Shell's century-long presence in Brazil (operating here since 1913[2]) with Cosan's industrial and logistical assets—including plants and resources inherited from Esso/ExxonMobil—forming a large-scale business group made up of dozens of subsidiaries and operating companies, all working together seamlessly.

2. Since its founding, Raízen Group has focused its operations around two main pillars: (i) the production and sale of ethanol, sugar, and bioenergy ("EAB"); and (ii) the distribution, marketing, and retail of fuels, biofuels, and lubricants ("Fuel Distribution").

3. After establishing its position in the domestic market, Raízen Group began expanding internationally in 2018, including entering Argentina, where it became the country's second largest *player* in Fuel Distribution[3], operating a refinery, lubricant plant, terminals, and airport bases, in addition to supplying about 900 gas stations during the 2024/2025 harvest.

4. In 2021, as part of its capital strengthening and expansion strategy[4], Raízen

---

[1] As shown in the Reference Form dated 12/05/2025 from Raízen S.A., available at: https://ri.raizen.com.br/divulgacoes-e-documentos/formulario-de-referencia-e-cadastral/, accessed on 03/09/2026.

[2] Originally established as The Anglo Mexican Petroleum Products Company, which began operations in Brazil in 1913, Shell reorganized its Brazilian business in 1961 by founding Shell Brasil S.A. (Petróleo). Later, in 1991, the company officially changed its name to Shell Brasil S.A.

[3] For additional details: https://braziljournal.com/raizen-paga-us-950-milhoes-pela-shell-argentina/, accessed on 03/09/2026.

[4] In brief, Raízen Group has made several key strategic acquisitions over the years, expanding its portfolio and business operations. For instance: (i) the consolidation of Cosan Combustíveis e Lubrificantes S.A. into Raízen Combustíveis S.A.; (ii) the acquisition of Biosev S.A.; and (iii) acquiring a significant stake in Companhia Barcos Y Rodados S.A. in Paraguay. iv) the purchase of all shares in Sociedade Neolubes Indústria e Lubrificantes Ltda.; (v) the acquisition of an equity stake in Posto Mime S.A., which operates in fuel retail, among others. Information taken from Raízen S.A.'s Reference Form dated 12/05/2025, available at: https://ri.raizen.com.br/divulgacoes-e-documentos/formulario-de-referencia-e-cadastral/, accessed on 03/09/2026.

S.A. was registered as a public company in "*Category A*" with the Securities Commission. By going public and being listed on B3[5], the company raised over R$ 6.7 billion. It began trading under the ticker *RAIZ4*, with Shell (44%) and Cosan (44%) as controlling shareholders, and about 12% free float[6]. More details are shown in the visual representation below:



Beneath Raízen S.A., there are a variety of other business units, *trading companies* and nearly a hundred operational subsidiaries, whose activities and debts are interconnected. From a practical standpoint, these entities can be grouped into two main business categories:

(i)                              the core group of companies directly under Raízen S.A., which includes businesses managing all aspects of the Fuel Distribution segment, such as relationships with Shell gas stations, Shell Select convenience stores, and logistics companies; and

(ii)                              The division under Raízen Energia S.A. includes a range of bioenergy and renewable energy companies, electric power trading firms operating in regulated markets, Raízen Group's international fuel distribution businesses (in Argentina and Paraguay), the sugar trading and commodities division, and companies dedicated to biotechnology and Research

---

[5] (5 B3 S.A. – Brasil, Bolsa, Balcão ("B3"), the Brazilian stock exchange headquartered in São Paulo.

[6] *Free float* simply refers to the actual percentage of shares available for public trading in a listed company, excluding those held by controlling shareholders, management, and treasury.

& Development[7].

6. Its operations are fully integrated: they cover everything from agricultural production and processing of inputs needed for sugar and ethanol manufacturing, to using the byproducts of this process for biomass power generation. The company also manages multiple logistics stages to move its products, distributes ethanol and other fuels, and exports both ethanol and sugar.

7. This approach strengthens Raízen Group's business model, making it one of the most comprehensive in the industry, with operations spanning every state in the country and more than 40 countries, connecting with over 15,000 business partners. As a result, Raízen S.A. ranks as the third-largest company in Brazil by net revenue (excluding financial institutions).

8. Across all its operations, the Raízen Group holds significant influence. Today, Raízen is the world's largest sugarcane processor. In fuel distribution, it stands as the second-biggest distributor in Brazil and Argentina, serving gas stations, transport companies, airports, thermal power plants, hospitals, and other strategic clients in the Brazilian market[8]. The Group is also among the leading global traders of ethanol and sugar. In this way, Raízen is deeply connected to key sectors of both the Brazilian and global economy.

9. As shown in the latest Integrated Report[9], 9 during the 2024/2025 Harvest[10], the Raízen Group (i) directly employed over 34 thousand team members, in addition to 2 thousand apprentices, interns, and service providers; (ii) sold more than 3.4 billion liters of fuel; (iii) produced over 5 million tons of sugar; (iv) generated more than 3 billion liters of ethanol; and (v) delivered over 1.9 GWH of renewable energy.

---

[7]   The complete corporate structure of the Raízen Group can be found at: https://ri.raizen.com.br/sobre-a-raizen/estrutura-societaria/, accessed on 09/03/2026.

[8]   Available at: https://conteudos.xpi.com.br/renda-fixa/relatorios/analise-raizen/, accessed on 09/03/2026.

[9]   Published on 05/13/2025. Available at: https://www.raizen.com.br/relatorio-anual-2425-pt, accessed on 03/09/2026.

[10]   10 Raízen Group's fiscal year is determined by the sugarcane production cycle, operating in harvests that start on April 1 and end on March 31: "Sugarcane planting (the main source of raw material for ethanol, sugar, and bioenergy production) requires a maturation period of *12 to 18 months, and harvesting usually begins between April and May each year and typically ends between November and December, which is also when the Group's bioenergy parks produce ethanol, sugar, and bioenergy.*
*It takes between 12 and 18 months for the sugarcane to mature. Typically, harvesting kicks off between April and May each year and wraps up between November and December. This is also when Raízen's bioenergy plants produce ethanol, sugar, and bioenergy. Production is marketed year-round, but is impacted by seasonal trends tied to sugarcane growth in the region, as well as demand in target markets. This can cause some shifts in inventory and supply, especially when the weather doesn't cooperate. Given this production cycle, Raízen Group companies' fiscal year starts on April 1 and ends on March 31 each year.*" As indicated by the interim accounting information dated 09/30/2025, available at: https://ri.raizen.com.br/informacoes-financeiras/central-de-resultados/, accessed on 03/09/2026.

10. The company also (i) managed an extensive portfolio of sugar, ethanol, and bioenergy production plants; (ii) supplied fuel to 8,000 Shell stations across Brazil, Argentina, and Paraguay; (iii) operated (iii.a) 68 airport supply bases; (iii.b) more than 70 fuel distribution centers; (iii.c) 2 lubricant plants (in Brazil and Argentina); (iii.d) 1 oil refinery in Argentina; (iii.e) and 6 international sales offices (in the United States, Netherlands, Switzerland, Dubai, the Philippines, and Singapore)[11]; and (iv) expanded its Shell Select franchise system to over 1,200 convenience stores.

11. The  se operations are made possible thanks to the support of over 5,940 supply vendors, 2,600 land lessors, and 1,100 sugarcane suppliers, spanning more than 416 municipalities[12].12 This strong business structure generated over R$ 255 billion in net operating revenue during the 2024/2025 harvest season.

12. During the 2024/2025 harvest, through its agricultural, industrial, and logistics operations, Grupo Raízen generated a payroll exceeding R$ 4.9 billion and contributed approximately R$ 1.6 billion in federal taxes, R$ 3 billion in state taxes, and R$ 120 million in municipal taxes.

13. In the EAB sector, the company maintains a fully integrated approach throughout the entire sugarcane supply chain—from cultivation to international *commodities* trading—accounting for about 25% of its net operating revenue. In the Fuel Distribution segment—which represents roughly 75% of its revenue—it operates a vast, integrated logistics network, supplying mainly petroleum derivatives produced by Petrobrás and distributing them via pipelines, highways, railways, waterways, and coastal shipping.

14. The scale and complexity of Raízen Group's operations mean it is subject to rigorous sector oversight, maintaining ongoing interactions with regulatory bodies such as ANEEL (National Electric Energy Agency), the Ministry of Mines and Energy, ONS (National Electric System Operator), CCEE (Chamber for the Commercialization of Electric Energy), ANP (National Agency of Petroleum, Natural Gas and Biofuels), ANTAQ (National Waterway Transport Agency), ANTT (National Land Transport Agency), and other regulatory agencies.

15. Beyond its economic contributions, Raízen Group's operations also deliver significant social and environmental benefits. In the 2024/2025 harvest, over 1.3 million hectares were sustainably farmed, preventing the release of more than 5

---

[11] Available at: https://www.raizen.com.br/sobre-a-raizen/numeros, accessed on 03/09/2026
[12] Same source.

million tons of $CO_2$ through the production of renewable energy and fuels—a tangible step toward energy transition and national energy security.

16. 1n summary, Grupo Raízen stands as a cornerstone of the Brazilian and South American energy sector, blending industrial scale, vertical integration, technological innovation, and environmental responsibility. Its influence goes beyond the sugar-energy industry, positioning it as a key player in supply, job creation, tax revenue, and the economic development of the country.

II.                    Key Reasons Behind the Crisis Affecting the Raízen Group

17. In recent years, Raízen Group has pursued an ambitious growth strategy to establish itself as a global leader in renewable fuels, investing heavily in strategic acquisitions and in launching advanced biofuel production facilities with a strong focus on sustainability (*i.e.*, Second Generation Ethanol – E2G).

18. In this context, the following stand out: (i) acquisition of the Fuel Distribution business in Argentina; (ii) acquisition of Biosev, which at the time was the second largest player in the EAB sector, surpassed only by Raízen itself; (iii) purchase of Shell's lubricant plant in Brazil; (iv) acquisition of a stake in the Fuel Distribution business in Paraguay; (v) creation of a joint venture with FEMSA to develop the proximity and convenience store segment; and (vi) expansion of operations in the electric energy sector. This entire expansion strategy required significant Capex[13] investments and led to higher levels of debt and leverage.

19. These decisions and strategies adopted during the pre-turnaround phase were based on an accelerated growth approach for the Raízen Group, which resulted in increased debt and consequently higher leverage. However, these choices were made in a macroeconomic environment far more favorable than the current one. Since then, there has been a significant decline in economic conditions in Brazil and other countries where the Raízen Group operates, especially in Argentina, amidst rising national and global interest rates and worsening macroeconomic indicators.

20. In this new environment, with the base interest rate staying above 12% per

---

[13] CAPEX stands for *capital expenditure*, which refers to the costs for acquiring, upgrading, and maintaining assets needed for a company's operations. CAPEX spending is aimed at boosting production capacity, supporting long-term growth, and strengthening business operations. This is a fundamental concept in corporate finance. For a detailed explanation, visit: https://borainvestir.b3.com.br/glossario/capex-capital-expenditure/, accessed on 03/09/2026.

year for at least 20 months[14]  — reaching as high as 15% per year over the last 8 months — the impact has been significant the financial cost of the debt has become significant, impacting cash flow and, at least for now, preventing the company from naturally reducing its debt levels.

21. This deterioration in macroeconomic conditions happened before the investments made by Grupo Raízen could fully mature. There's no question that all the new business avenues launched are set to become important new sources of revenue for the group. However, the timing mismatch between when these revenues materialize and the increase in financial expenses—something completely outside Grupo Raízen's control—ended up having a notably negative impact.

22 On a regional level, especially in Argentina[15], persistently high inflation (exceeding 40% per year) and ongoing macroeconomic volatility created serious challenges, driving up operational costs and impacting the entire pricing process for products. More specifically, inflation measured in dollars—reflecting both local price increases and currency fluctuations—put pressure on selling and administrative expenses, including costs associated with structural and organizational adjustments.[16]

23. As a result, in the 2024/2025 harvest season, Grupo Raízen reported an accumulated loss of approximately R$ 4.2 billion. This impact became even more significant in the 2025/2026 season, with total losses so far reaching R$ 18.4 billion, noting that a substantial portion of this loss was due solely to accounting provision adjustments (Schedule 9).

24. On 03/10/2026, the date this request for out-of-court recovery was filed, Raízen Group's total consolidated debt stood at R$ 65.14 billion. Although most of Raízen Group's financial obligations are long-term (with an average maturity of 7.6 years as of December/2025), the high level of indebtedness brings significant pressure from interest and amortization is anticipated, with estimated outflows of about R$ 13 billion over the next 24 months, exclusively for paying down bank and financial debt.

25. The. crisis faced by Grupo Raízen, however, isn't just due to rising expenses

---

[14] For further details on the history of the national interest rate and its increase in recent years: https://www.bcb.gov.br/controleinflacao/historicotaxasjuros, accessed on 03/09/2026

[15] https://g1.globo.com/economia/noticia/2026/01/13/argentina-de-milei-encerra-2025-com-inflacao-de- 315percent-em-ano-de-eleicao-legislativa-e-apoio-de-trump.ghtml, accessed on 03/09/2026.

[16]  As per *Relatório Integrado do Grupo Raízen, Safra 2024/2025,* published on 05/13/2025. Available at: https://www.raizen.com.br/relatorio-anual-2425-pt, accessed on 03/09/2026

tied to the financial cost of debt. There was also a significant decline in its margins (EBITDA), caused by factors beyond its control.

26. Overall, there was a 12% drop in EBITDA for the 2025/2026 harvest compared to the 2024/2025 season, mainly due to (i) severe weather events in the Central-South region—less rainfall, water stress[17], high temperatures, and unprecedented fires[18] — which led to crop failure; and (ii) a decline in sugarcane production (–4.4% in the Southeast and –3.9% in the Central-West) and a decrease in pipeline ATR[19]. At the same time, falling global *commodity* prices, increased sugar output from Asia, and the growth of corn ethanol production in Brazil further squeezed margins, reinforcing a prevailing downward trend in the market[20].

27. The combination of these factors has made the liquidity crisis even more severe, with lower results and a sharp rise in financial expenses putting significant pressure on cash generation. For perspective, between April 2025 and December 2025, the company used R$ 7.2 billion in cash just to keep its normal operations running. This pushed Grupo Raízen's leverage to an all-time high (with a leverage multiple around 5.3x)[21]. Given the current cash position, addressing Grupo Raízen's debt burden has become an extremely tough challenge.

28. To make matters worse, Raízen Group's creditors and partners—both financial and operational —aware of its current economic and financial situation, have begun implementing measures that include cutting, restricting, or raising the costs of previously granted credit and financing lines. This is forcing Raízen Group to draw even more from its cash reserves to keep its business operations running, increasing operational losses, weakening liquidity, and deepening its negative cash flow.

29. This creates a vicious cycle that severely undermines its ability to maintain sufficient financial resources for healthy business continuity and steady revenues, which in turn negatively impacts its capacity to meet obligations.

---

[17] https://g1.globo.com/sp/piracicaba-regiao/noticia/2025/12/08/estresse-hidrico-entenda-como-clima-afeta-safra-de-cana-em-2025-e-ameaca-produtividade-no-interior-de-sao-paulo.ghtml, accessed on 03/09/2026

[18] https://globorural.globo.com/agricultura/cana/noticia/2025/01/incendios-que-destruiram-canaviais-em- 2024-impactam-a-proxima-safra-de-cana.ghtml, accessed on 03/09/2026

[19] ATR means Total Recoverable Sugar ("*Açúcar Total Recuperável*") a sugar cane quality indicator

[20] https://www.noticiasagricolas.com.br/noticias/sucroenergetico/413869-mercado-global-do-acucar-em- 2025-queda-de-precos-desafios-climaticos-e-volatilidade-marcam-o-ano.html, accessed on 03/09/2026

[21] Leverage multiple obtained by dividing Net Debt by Adjusted EBITDA.

30. The  se events did not go unnoticed by the market. Credit rating agencies — Moody's[22], S&P[23] and Fitch[24] 24— downgraded the credit ratings for Raízen Group's issued securities (including both its corporate rating and various instruments like debentures) at the end of 2025. Additionally, Raízen's securities were placed under special monitoring *(Credit Watch)*, signaling that ratings would be reviewed if there were any changes in performance.

31. The  situation, already difficult, became critical after the publication of the latest quarterly financial statements (Schedule 9), which revealed record losses and debt levels. The market responded unfavorably, speculating about Raízen Group's ability to handle its financial liabilities[25], leading to further fluctuations in the pricing of its debt securities[26]. This activity resulted in the Securities Commission sending an official letter to Raízen S.A. (Doc.10), requesting clarification on the stance of the Group on strategies to reduce leverage and optimize capital structure.

32. On 02/06/2026, Raízen Group released a Market Announcement responding to the Official Letter and reaffirming that its controlling shareholders and management remain committed to exploring alternatives and scenarios aimed at lowering financial leverage, restructuring its capital framework, and strengthening its liquidity position[27]. Nevertheless, the market once again reacted negatively, triggering fresh speculation about possible further *rating* downgrades[28] and the appointment of financial advisors[29].

33. On 02/09/2026, Raízen Group issued a Material Fact announcing the hiring of advisors to assess strategic options for its liquidity and capital structure[30]. On the same day, rating agencies (Moody's, Fitch, and Standard & Poor's) once

---

[22] Available at: https://moodyslocal.com.br/setores/empresas-nao-financeiras/agronegocio/raizen-s-a/, accessed on 03/09/2026.

[23] Available at: https://brazil.ratings.spglobal.com/ratings/pt/regulatory/org-details/sectorCode/CORP/entityId/1001149, accessed on 03/09/2026.

[24] Available at: https://www.fitchratings.com/entity/raizen-energia-s-a-91300896, accessed on 03/09/2026. Available at: https://www.infomoney.com.br/mercados/raizen-questoes-sobre-divida-aumentam-e-investidores-se-apressam-para-vender-titulos/, accessed on 03/09/2026

[25]

[26]

[27] Available at: https://filemanager-cdn.mziq.com/published/c016735f-1711-48ce-919f-a8c701b83c19/61575eba-a6bf-488e-895f-6e66ccecb9a8_comunicado_ao_mercado_port.pdf, accessed on 03/09/2026

[28] Available at: https://pipelinevalor.globo.com/negocios/noticia/raizen-corre-contra-o-tempo-para-nao-perder-o-grau-de-investimento.ghtml, accessed on 03/09/2026

[29] Available at: https://oglobo.globo.com/blogs/lauro-jardim/post/2026/02/a-raizen-se-prepara-para-reestruturar-sua-divida.ghtml, accessed on 03/09/2026

[30] Available at: https://api.mziq.com/mzfilemanager/v2/d/c016735f-1711-48ce-919f-a8c701b83c19/d44a8b01-2824-f6ac-d7d3-27922347ec05?origin=2, accessed on 03/09/2026

again downgraded the company's debt ratings to a level already considered "speculative" (Doc.11).

34. This latest downgrade in *rating* poses an immediate and serious threat to Grupo Raízen: as a result, some creditors are already moving to demand early payment on several financial instruments.

35. If these obligations are called for early repayment, it could, in turn, trigger early maturity on a range of other financial instruments (known as *cross-default*, potentially accelerating over R$ 60 billion in debt), which would likely lead to a flood of creditor actions against the assets of the Raízen Group, further worsening the fragile situation it currently faces and risking a point where recovery may no longer be possible.

36. This instability has immediate effects on other important aspects of the Raízen Group. For example, Raízen S.A. (RAIZ4) shares have been hit especially hard. Currently, they're trading at R$ 0.52, with a drop in value of over 59.06% in the past six months. On top of that, Raízen S.A. has been the target of speculative trading, including *short squeezing*, which increases asset volatility and causes a sharp decline in the market value of its shares.

33. Because the shares were trading below R$ 1 for over 30 consecutive sessions, Raízen's stock was classified as a *penny stock*[31], leading B3 to notify the Raízen Group that its share price no longer met the minimum listing requirement. As a result, B3 requested the Raízen Group take steps to restore the share price to the required minimum by 05/29/2026, as outlined in the Market Announcement dated 12/09/2025[32].

38. In addition to all this, the domestic and international credit markets have seen strong selling pressure on Raízen Group's debt securities. This *sell-off* in *bonds* has fueled a highly volatile environment[33], resulting in pricing that reflects a sharp rise in uncertainty about the Raízen Group's credit profile and risk perception in the short term.

39. Despite the challenges described above, Grupo Raízen's operations remain

---

[31] The term *penny stock* simply refers to stocks listed with a nominal value of less than R$ 1, which tend to be highly volatile, making them susceptible to price swings and to manipulation by bad actors. Available at: https://exame.com/invest/mercados/entenda-o-que-e-penny-stock/, accessed on 03/09/2026.

[32] Available at: https://ri.raizen.com.br/divulgacoes-e-documentos/avisos-comunicados-e-fatos-relevantes/, accessed on 03/09/2026.

[33] Available at: https://valor.globo.com/financas/intraday/post/2026/02/sell-off-nos-bonds-da-raizen-ganha-forca-com-receio-de-recuperacao-judicia accessed on 03/09/2026.

fully sustainable and profitable, as well as viable. A number of strategic initiatives are currently underway and planned for the future, demonstrating and guaranteeing financial and operational viability, with clear and tangible prospects for recovery.

40. As an example, Raízen Group has been adopting disciplined cost and expense management, along with a review of corporate and operational structures, resulting in significant efficiency gains. These efforts led to an improvement of R$ 600 million in results over the nine months of the 2025/2026 harvest year, surpassing the initial assumptions of the harvest plan, even amid a challenging macroeconomic environment. Additionally, Raízen Group reduced its investment level by approximately R$ 3 billion for this harvest year compared to the previous one, in line with its investment strategy for 2025/2026 and its cash management[34].

41. Even in the face of challenging circumstances, as of 12/31/2025, Grupo Raízen had R$ 17.3 billion in cash and investments, with 90% available immediately[35], underscoring its strong financial position to move forward with the proposed restructuring.

42. By. Resolving its financial obligations and ensuring legal protection through this out-of-court restructuring, Grupo Raízen is set to get back on track for growth and value creation, reaffirming its leadership across all its sectors, as previously mentioned.

43. There is no question about Grupo Raízen's ability to recover—however, achieving this will depend on the cooperation of creditors and, even more importantly, on the Judiciary ensuring order, stability, and legal certainty in the business environment. Only then will the necessary conditions be in place for a balanced, efficient, and lasting resolution through consensus.

III.                              OPTIONAL JOINT PLAINTIFFS

44. This request is submitted by several companies within the Raízen Group, who have joined together as optional joint plaintiffs—that is, through procedural consolidation—due to their common corporate control and the clear economic and operational interdependence among the Applicants.

---

[34] Available at: https://api.mziq.com/mzfilemanager/v2/d/c016735f-1711-48ce-919f-a8c701b83c19/1d03ac65-2db0-e060-95d0-7666a76d0182?origin=2 , accessed on 03/09/2026.
[35] Available at: https://api.mziq.com/mzfilemanager/v2/d/c016735f-1711-48ce-919f-a8c701b83c19/1d03ac65-2db0-e060-95d0-7666a76d0182?origin=2 , accessed on 03/09/2026

45. Article 69-G of the LFR provides that "*debtors who meet the requirements set forth in this Law and are part of a group under common corporate control may request judicial recovery through procedural consolidation*." While the article only refers to judicial recovery, Article 69-G of the LFR is also widely applied to out-of-court recoveries[36], allowing companies under common control to file their requests jointly and thereby avoid the costs of initiating multiple proceedings.

46. In this case, all Applicants are part of the Raízen Group, which is under the common corporate control of Raízen, forming an integrated and economically interdependent business structure. Therefore, this request for out-of-court recovery can and should proceed as a permissive joinder of parties, in accordance with Article 69-G of the LFR.

47. Submitting this request, therefore, stands out as the most suitable solution from both an efficiency and procedural consistency standpoint. It allows for a unified approach to obligations, streamlines the coordination of restructuring measures, and promotes greater transparency for creditors and other *stakeholders*. Leading legal scholars have recognized that, in cases involving integrated business groups, this method is the most effective and transparent way to ensure restructuring is both rational and successful[37]

48. There is also no doubt that the foreign companies[38] within the Raízen Group are eligible to join as petitioners in this proceeding.

49. It is well established that foreign companies forming part of an economic group whose main decision-making center (or *center of main interest*) is located in Brazil may, alongside other companies in their group, apply for extrajudicial

---

[36] See also recent cases involving the Sigma group (case no. 1001703-42.2023.8.26.0260), Flytour (case no. 1000679-47.2021.8.26.0260), and TPA (case no. 1104901-56.2024.8.26.0100).

[37] "*Given the dynamics within a corporate group, it is clear that the procedural mechanism of permissive joinder is well suited to address the challenges faced in navigating business crises. [...] Beyond the issue of standing, considerations of Procedural concerns and, above all, the risk that handling disputes separately could lead to conflicting decisions—which, given the issues at stake, could seriously harm the rights of debtors, creditors, and third parties involved in the company's restructuring. It is therefore practical to allow the judge and creditors to form a clear understanding of the legal and factual context surrounding the crisis within a multi-company group and to efficiency are also present explore potential solutions. Indeed, one of the main reasons for permitting joint processing of judicial recovery requests from different debtors is that the path taken toward resolving a crisis affecting more than one business entity leads to outcomes that are simultaneous and, hopefully, harmonious.*" (CEREZETTI, Sheila Christina Neder. Groups of companies and judicial recovery: the essential meeting of corporate, procedural, and insolvency law. In: YARSHEL, Flávio; et al. J. Processo Societário II. São Paulo: Quartier Latin, 2015, pp. 751-754).

[38] Raízen Trading S.A., Raízen North America Inc., and Raízen Fuels Finance S.A. (collectively referred to as the "Foreign Applicants").

reorganization proceedings in Brazil[39]39 . As detailed in Chapter IV below, the decision-making center for the Raízen Group is in Brazil—specifically, in São Paulo. Therefore, there is no obstacle to processing this request as it relates to the Foreign Applicants.

50. Lastly, even if each Applicant's main decision-making center were assessed individually, there would still be no obstacle to the inclusion of Foreign Applicants in this out-of-court recovery process. Although these entities are formally established abroad, they are part of a corporate structure designed to finance and enable Raízen Group's operations in Brazil[40] . For this reason, the decision-making centers for all these companies are located in São Paulo.

IV.                    JURISDICTION OF THIS COURT

51. The authority to approve an out-of-court restructuring plan should be determined in accordance with Article 3 of the LFR,[41]41 which designates as competent the court of the debtor's main place of business. According to the Superior Court of Justice, this refers to "*the location most central to the company's business operations—that is, where its largest volume of business and its core governance functions are based*,"[42] 42 or, alternatively, "*the place from which business decisions are made, not necessarily the address listed in the public registry*."[43].

52. Regarding the Raízen Group, it is in São Paulo that several of the Applicants were established, built their nationally and internationally recognized legacy, and have long maintained the administrative and decision-making core of their operations.

---

[39] See, for example, the Unigel Group case at TJSP (case no. 1174558-22.2023.8.26.0100), and at TJRJ, the OOG Group (case no. 0121854-60.2017.8.19.0001) and ODN (case no. 0334340-20.2022.8.19.0001). In the same vein, "*if jurisdiction is determined according to economic reality, then the judge at the location of the principal establishment of the debtor company—regardless of whether it is based in Brazil or abroad—should have authority to open insolvency proceedings*" (FELSBERG, Thomas; et al. Judicial recovery of companies headquartered abroad: lessons from international experience and developments in Brazil. In: CEREZETTI, Sheila C. Neder et al. Ten Years of Law No. 11.101/2005: Studies on the Recovery Law. São Paulo: Almedina, 2015, pp. 485-488).

[40] For example: TJSP, Instrument Appeal No. 2094999-86.2015.8.26.0000, Reporting Judge Carlos Alberto Garbi, 2nd Reserved Chamber of Business Law, decision dated 8/31/2015; TJSP, Instrument Appeal No Case No. 2106998-36.2015.8.26.0000, Reporting Judge: Caio Marcelo Mendes, 2nd Reserved Chamber of Business Law, session held on 03/13/2017.

[41] "*Article 3: The court with jurisdiction to approve an out-of-court reorganization plan, grant judicial recovery, or declare bankruptcy is the one where the debtor's main place of business is located, or, in the case of a foreign company, the branch based in Brazil*."

[42] STJ, Conflict of Jurisdiction No. 213.738/TO, Reporting Justice Humberto Martins, Second Section, session 12/04/2025; STJ, Conflict of Jurisdiction No. 189.267/SP, Reporting Justice Raul Araújo, Second Section, session 09/28/2022

[43] Statement 466 from the Fifth Civil Law Conference of the CJF.

53. Indeed, São Paulo is where (i) the group's main headquarters and office are located—at Av. Brigadeiro Faria Lima, No. 4,100, 11th floor, Part V, São Paulo/SP, ZIP 04538-132—which serves as the source of the most significant and strategic decisions; (ii) the key executives of Raízen Group routinely conduct their business; (iii) the primary management and decision-making bodies of the group convene; and (iv) the main contracts essential for business development are negotiated and signed.

54. This assertion is supported by the following facts: (i) it is in the city of São Paulo that all Material Facts, Market Announcements, and other communications are published Raízen S.A. corporate documents, properly signed by its Directors[44]; (ii) Over 75% of the Raízen Group's ongoing legal cases are processed in the State of São Paulo, as shown by the list of active judicial and arbitration proceedings (Schedule 12); (iii) The city of São Paulo is where the Raízen Group's financial statements are published and audited (Schedule 5.2).

55. No matter which criteria are applied, it is necessary to recognize the jurisdiction of one of the Judicial Reorganization and Bankruptcy Courts of the Capital District of São Paulo to handle this extrajudicial recovery request.

V.          MEETING THE LEGAL QUORUM: APPROVAL OF MORE THAN ONE-THIRD OF THE ELIGIBLE CLAIMS

56. According to Article 163, § 1, of the LFR, out-of-court restructuring plans may reorganize a "*group of creditors of the same nature and subject to similar payment terms.*" To restructure such a group, it is necessary to obtain the consent of "*creditors representing more than half the claims covered by the out-of-court restructuring plan*" (Article 163, *caput*, of the LFR).

57. Nevertheless, Article 163, § 7 of the LFR allows the debtor to initiate extrajudicial recovery proceedings even before reaching the final required quorum. As per this legal provision, it is possible to file for extrajudicial recovery as long as there is proof of the *consent of creditors representing at least one-third (1/3) of each class of claims covered by the plan, along with a commitment to achieve, within a non-extendable period of 90 (ninety) days from the filing date, the quorum set forth in the main section of this article, through express*

---

[44]  See  https://ri.raizen.com.br/divulgacoes-e-documentos/avisos-comunicados-e-fatos-relevantes/, accessed on 03/09/2026.

*adherence*."

58. In this particular case, Grupo Raízen seeks to restructure only its unsecured financial claims ("Subject Claims"), without any impact on all other debts and obligations of the Applicants contracted with customers, suppliers, distributors, and other business partners, which will continue to be honored by the Applicants according to their respective agreements. Put simply, the out-of-court recovery plan covers debts of the same *nature* and *similar payment terms*, as stipulated by art. 163, § 1, LFR.

59. For ease of reference, the Applicants have attached a complete list of Subject Credits and Signatory Creditors, all detailed in Schedule 3.

60. The  total liabilities to be restructured amount to R$ 98.63 billion, of which R$ 65.14 billion correspond to Subject Credits, and R$ 33.49 billion stem from obligations between the Applicants themselves, that is, *intercompany* credits.

61. The consent already obtained from certain covered creditors ("Signatory Creditors") is sufficient for submitting this request. Their credits represent approximately 47% of the total value of Subject Credits, excluding obligations between the Applicants—which, although also being restructured, cannot be considered when calculating the quorum, pursuant to Article 163, § 3, II of the LFR[45].

62. In other words, the Signatory Creditors hold more than one-third of the Subject Credits, as established by Article 163, § 7, of the LFR. Their agreement can be confirmed through the signed accession terms and supporting documents proving authority (Docs. 4), as required by Article 163, § 6, III of the LFR[46]

63. The  Applicants are confident that negotiations with the remaining creditors, which are already well underway, will soon reach a favorable conclusion and meet the legal quorum required for approval of the out-of-court recovery plan within 90 days. In this context, it is crucial to protect the Applicants throughout the processing of the out-of-court recovery, including the suspension of any legal actions or enforcement proceedings that could be initiated by Creditors Subject to the Plan who have not yet joined.

---

[45] *Arti§cl3e 1F6o3r t–he sole purpose of determining the percentage referred to in the main section of this article: [...] II – credits held by persons listed in Article 43 of this law shall not be counted.*"

[46] "*Article 163 – § 6 For the approval of the plan as provided for in this article, in addition to the documents required under the main section of Article 162 of this Law, the debtor must submit: [...] III – documents proving the authority of signatories to settle or renegotiate, a full list of creditors including the address of each, the nature, classification, and updated value of the credit, specifying its origin, the maturity terms, and the accounting records for each pending transaction*".

VI.                    SUBMISSION OF REQUIRED DOCUMENTATION

64. The. Applicants hereby submit all documents required for the processing of this out-of-court reorganization and subsequent approval of the recovery plan, in accordance with Articles 48 and 163 of the LFR. The documents include:

i)                              minutes from the relevant corporate bodies authorizing the filing of this out-of-court recovery request (Schedule 2.3);

ii)                             List of Subject Credits, identifying the Signing Creditors and the percentage of adherence (art. 163, § 6, item III, LFR) (Schedule 3);

i)                              Documents confirming creditor adherence representing at least one-third of all Subject Credits, along with evidence of the authority granted to the signatories of the out-of-court recovery plan to renegotiate or settle (art. 163, *caput* and § 6, item III, LFR) (Schedule 4);

ii)                             Balance sheets for the Applicants (Schedule 5.1), financial statements for the latest fiscal year, specially prepared statements for this filing[47] (Schedule 5.2), and projected cash flow for the Applicants (Schedule 5.3) (art. 163, § 6, items I and II, LFR);

iii)                            copies of the constitutive documents of the Applicants (art. 48, *caput*, of the LFR) and documents appointing administrators of the Applicants (art. 48, item IV, of the LFR) (Schedule 2.1);

iv)                            certificates of compliance issued by commercial registries confirming the regular operation of the Applicants' business activities for over 2 years (art. 48, *caput*, of the LFR) (Schedule 6);

v)                             certificates of distribution regarding insolvency proceedings and ratification of the out-of-court recovery plan in the name of the Applicants (art. 48, items I, II, and III, and art. 161, § 3, of the LFR) (Schedule 7); and

vi)                            criminal record certificates for the Applicants (Schedule 8.1), their administrators (Schedule 8.2), and controlling shareholders

---

[47] Financial statements related to Raízen North America Inc. are included in the consolidated financial statements.

(Schedule 8.3) (Art. 48, item IV, LFR).

VII.                    *STAY PERIOD* REGARDING ELIGIBLE CLAIMS

65. According to Article 163, § 8, of the LFR, the suspension period provided in Article 6 of the LFR applies automatically to Eligible Claims from the moment the out-of-court recovery request is filed.

66. Given that more than one-third of the Eligible Creditors have agreed to the Plan, as shown in Chapter V above, all actions, enforcement measures, and/or asset restraints against the Applicants must be automatically paused, as well as the enforceability of the Eligible Credits, for a period of 180 days.

67. During this suspension, the Applicants can preserve a stable environment for ongoing negotiations with those Eligible Creditors who have not yet signed the Plan, without facing the risk of asset grabs or a rush to seize their assets.

68. At this stage, it's important to note that, in light of this request for out-of-court restructuring, certain financial institutions holding claims against the Raízen Group could argue that contract terms allow them to seize funds held in the Applicants' bank accounts to pay down Subject Credits[48].

69. Altogether, the activation of these clauses could lead to the seizure of up to R$ 8.3 billion held in accounts belonging to the Applicants. Should this occur, Raízen Group's restructuring efforts would face irreversible setbacks, since such compensation would (i) deprive the Applicants of crucial resources needed to sustain their operations, including payments for employees (over 34,000 staff, with a payroll exceeding R$ 4.9 billion), suppliers, and other essential expenses for Raízen Group's activities; and (ii) result in certain Subject Creditors receiving full satisfaction of their credits in a manner different from what is outlined in the extrajudicial recovery plan, which would, in effect, grant these creditors preferential treatment at the expense of the others.

70. It is. important to note that a Subject Credit cannot, under any circumstances, be fulfilled in ways other than those set forth in the recovery plan, as doing so

---

[48] As an example, see the following clause from a specific contract with a financial institution: "*I/we grant Itaú Unibanco the authority to redeem any of your investments in order to credit your deposit account with the amount needed to settle any debt owed on your checking account when there is not enough balance in that account, and to carry out compensation, according to Article 368 and following of the Civil Code, for any debts you have with Itaú Unibanco using any available credits in your checking account.*"

would unfairly favor a particular Subject Creditor over the others, directly violating the principle of *par conditio creditorum* (articles 49 and 59 of the LFR).

*71.* In other words, as previously determined by the Honorable TJSP, allowing compensation for a Subject Credit *"would mean that some creditors in a certain class would be paid immediately, while the rest would have to follow the terms of the plan—resulting, for example, in unsecured creditors waiting up to 13 years to receive their full amount. Moreover, compensation could even lead to the absurd scenario in which those who are in default to the business group undergoing recovery (and, as such, still have outstanding debts) receive their credits indirectly through set-off, while other creditors who are current with their obligations to the companies in recovery, holding only the status of creditors, must wait for the entire recovery process to receive their credits, which will also be subject to reductions resulting from the discount outlined in the plan"*[49].

72. It is therefore clear that the *stay period* established in Article 6 of the LFR also prevents the set-off of Subject Credits after the request for judicial or extrajudicial recovery, since it is a means of satisfying the credit, equivalent to payment, whose enforceability is suspended due to the *stay*. In this specific case, explicitly recognizing the prohibition on appropriating resources to satisfy Subject Credits is crucial to safeguarding the applicants' cash flow—which is already strained by their current financial situation—and, consequently, to ensuring the continuation of their productive activities and protecting the useful outcome of this extrajudicial recovery request.

73. In this regard, however, it is important to highlight two specific situations where, by express provision of law, certain obligations may exceptionally be settled and/or offset—even during the *stay* period, as applicable.

74. First, under Article 193 of the LFR, "[t]he provisions of this Law do not affect obligations undertaken within clearinghouses or financial settlement service providers, which shall be completed and settled by the clearinghouse or service provider, in accordance with their regulations." Therefore, the *stay period* does not prevent the settlement of obligations undertaken by the Applicants with their counterparties within clearinghouses or financial settlement service providers.

75. Secondly, credits arising from repurchase agreements and derivatives are granted certain special rights under Article 193-A of the LFR. In particular, the counterparty is entitled to accelerate the maturity of these transactions

---

[49] TJSP, AI No. 2260720-90.2015.8.26.0000, Rapporteur: Justice Fabio Tabosa, 2nd Reserved Chamber of Business Law, ruling on 05/12/2016.

derivatives and the offsetting of "*credits and debits arising from them*," if so provided in the contract or regulations (Art. 193-A, § 1, of the LFR).

76. In the ordinary course of its business, the Raízen Group entered into various derivative transactions with select financial institutions, covering *commodities, interest rates, and currency exchange* to protect itself against risks associated with price, interest rate, and currency fluctuations affecting the sale of its products and the contracting of foreign currency debt ("Derivative Transactions").

77. Since all contracts governing the Derivatives Transactions provide for either automatic or optional early termination in the event a request for out-of-court reorganization is filed—and given that financial institutions enter into mirror transactions in the market to "*offset*" their risk exposure related to the Derivatives Transactions—the Applicants do not object to such financial institutions, should they so choose:

i)                 declare the early termination of any Derivatives Transactions;

ii)                if early maturity occurs, initiate the *close out* process and perform calculations to determine the mutual credits and debits for each Derivatives Transaction;

iii)               carry out the netting of reciprocal credits and debits for each Derivatives Transaction to the extent possible, using any margin deposits as collateral for the relevant Derivatives Transaction to settle any remaining credit in their favor, and calculate any credit balance owed to the counterparty against Grupo Raízen (the "Derivative Credit Balances"). For clarity, this netting should be conducted exclusively between Derivatives Transactions and any margin deposits serving as collateral for those specific Derivatives Transactions, the appropriation of funds and use of balances from other bank accounts or credits of any other nature for set-off purposes is strictly prohibited; and

iv)               derivative Credit Balances determined after close out (item (ii) above) and netting (item (iii) above) of Derivative Transactions are considered unsecured financial debts of the Applicants, classified as Subject Credits for Out-of-Court Reorganization and must be restructured according to the Plan. Therefore, they cannot be enforced or set off during the stay period, as agreed by the Plan's Signatory Creditors who are parties to Derivative Transactions.

78. Therefore, as a result of filing this out-of-court recovery, all lawsuits, executions, asset restrictions, and/or compensations of the Applicants' Subject Credits should be suspended for 180 days, except for (i) obligations established within clearinghouses or financial settlement service providers, which will be finalized and settled by the respective clearinghouse or service provider according to their regulations, in compliance with Article 193 of the LFR; and (ii) reciprocal credits and debits arising from Derivatives Transactions, which, as stated in Article 193-A of the LFR, may be offset against each other even during the *stay period*.

VIII.                    REQUESTS

79. In light of the above, given that the Applicants have met all requirements for approval of their request and submitted all documentation required under the LFR, we hereby request the following:

i)                          the acceptance and processing of this out-of-court reorganization in accordance with Article 164 of the LFR, granting the Applicants a period of 90 (ninety) days to secure the express consent and adherence of the majority of Subject Credits, as set forth in Article 163, § 7 of the LFR;

ii)                         the confirmation of the immediate suspension, for a period of 180 (one hundred and eighty) days, of the enforceability of all Subject Credits and of any actions, proceedings, or enforcement measures against the Applicants relating to such Subject Credits, as well as the prohibition of offsetting these credits, as stipulated in art. 163, § 8 of the LFR, except for (ii.a) obligations undertaken within clearinghouses or financial settlement service providers, which shall be finalized and settled by the respective clearinghouse or service provider according to their regulations and contracts, per art. 193 of the LFR; and (ii.b) mutual credits and debits arising from Derivative Operations, which, in accordance with art. 193-A of the LFR, may be offset against each other even during the *stay period* following any declaration of early maturity, and the calculation of mutual credits and debits for each Derivative Operation, while prohibiting the appropriation of funds or the use of balances from other bank accounts or credits of other types for offset purposes; and 25 / 29

iii)                        iii) Once the majority of Subject Credits have given their consent and formally agreed to the out-of-court recovery plan, the publication of the creditors' meeting notice shall be ordered, as provided in Article

164 of the LFR. This will give creditors the opportunity, if they wish, to file objections to the proposed plan in accordance with Article 164, § 3 of the LFR. The plan will then be duly ratified by court ruling, so that it becomes legally effective and binds all Subject Creditors, as established in Article 165 of the LFR.

80. Furthermore, to comply with Article 167-B, item IV, of the LFR – introduced in "CHAPTER VI-A – ON CROSS-BORDER INSOLVENCY," which deals with cooperation mechanisms between judges and authorities from different countries – it is requested that Mr. LORIVAL NOGUEIRA LUZ JUNIOR, a Brazilian citizen, married, business administrator, holder of identity card RG No. 22.580.434-7 SSP/SP, registered under CPF No. 678.741.266-53, with business address at Avenida Brigadeiro Faria Lima, 4100, Itaim Bibi, São Paulo city, State of São Paulo or, as applicable, Raízen S.A. itself, may be appointed as Foreign Representatives ("*Foreign Representative*") of the Raízen Group, granting them authority to (i) act on behalf of the Raízen Group and represent its interests in any proceedings, jurisdictions, or foreign authorities ( "Ancillary Proceedings"), especially in situations where the assets or business activities of any of the applicant companies are subject to a foreign authority; (ii) manage the assets and operations of the Raízen Group in any Ancillary Proceedings, with full powers to take all necessary steps to preserve or recover assets of the Applicants located in other jurisdictions; and (iii) seek recognition of this out-of-court reorganization request and any resulting measures as the main foreign proceeding, as well as the recognition, enforcement, and effectiveness of any out-of-court reorganization plan that may be approved by this Honorable Court in the relevant foreign jurisdictions.

81. It is also requested that all notifications and publications regarding this matter be addressed exclusively to the following attorneys: (i) CELSO CALDAS MARTINS XAVIER (OAB/SP 172.708), email celso@xgivs.com.br; (ii) GIULIANO COLOMBO (OAB/SP 184.987), email gcolombo@pn.com.br; (iii) JOEL LUIS THOMAZ BASTOS (OAB/SP 122.443), email joel@twk.com.br; and (iv) EDUARDO SECCHI MUNHOZ (OAB/SP 126.764), email eduardo@emunhoz.com.br. Failure to do so may result in the nullification of the communication act, in accordance with Article 272, §§ 2 and 5 of the Civil Procedure Code.

82. Furthermore, Grupo Raízen respectfully requests that a certified translation into Portuguese be attached for all documents submitted in a foreign language, within a period no shorter than 15 business days from this date.

83. The case is valued at R$ 98.63 billion, which consists of (i) R$ 65.14 billion

for the Subject Credits and (ii) R$ 33.49 billion for intercompany debts. Once the payment form is properly generated through the EPROC system, Raízen Group will proceed with the payment of the initial court fees, considering the fee cap set by the E. TJSP.  In any event, we hereby request the submittal of the payment slip for the initial court fees and the corresponding proof of payment.

Respectfully submitted for your consideration.

São Paulo, March 11, 2026

Celso Caldas Martins Xavier
OAB/SP 172.708

Rafael Villar Gagliardi
OAB/SP 195.112

Marcelo J. Inglez de Souza
OAB/SP 182.514

Rafael Vicente Reicher Soares
OAB/SP 315.420

Hércules M. Kastanópoulos
OAB/SP 356.702

João Pedro Marques
OAB/SP 454.862

Isabella Dias Grassia
OAB/SP 508.614

Sophia Franco Pasquini
OAB/SP 526.759

Giuliano Colombo
OAB/SP 184.987

Thiago Braga Junqueira
OAB/SP 286.786

João Guilherme Thiesi da Silva
OAB/SP 410.293

Octavio Ferraz Pedroso
OAB/SP 443.683

Sophia Weinschenker Bollmann
OAB/SP 519.960

Joel Luís Thomaz Bastos
OAB/SP 122.443

Ivo Waisberg
OAB/SP 146.176

Bruno Kurzweil de Oliveira
OAB/SP 248.704

Gilberto Gornati
OAB/SP 296.778

Lucas Rodrigues do Carmo
OAB/SP 299.667

Patricia F. Gardelli Franco
OAB/SP 391.729

Lucas H. Bulcão Mendes
OAB/SP 429.409

Eduardo Secchi Munhoz
OAB/SP 126.764

Ana Elisa Laquimia de Souza
OAB/SP 373.757

Gabriela Matta Ristow
OAB/SP 412.463

Danilo Domingues Guimarães
OAB/SP 422.993

Raphael Maldi Mendes
OAB/SP 439.913

Lucas Pereira Calmon
OAB/SP 508.290

<u>ANNEX I</u>

DOCUMENTS ATTACHED TO THE PETITION FOR OUT-OF-COURT REORGANIZATION

| Document Number | Description |
| --- | --- |
| Schedule 1 | Out-of-Court Reorganization Plan |
| Schedule 2.1 | Articles of Incorporation and Minutes of Election of the Applicants' officers |
| Schedule 2.2 | Applicants' Powers of Attorney |
| Schedule 2.3 | Minutes of Decisions Authorizing the Filing of this Out-of-Court Reorganization Petition |
| Schedule 3 | List of Subject Creditors and List of Signatory Creditors |
| Schedule 4 | Adhesion Agreements signed by Signatory Creditors and Documents demonstrating authority of those signing the Out-of-Court Restructuring Plan to renegotiate or settle |
| Schedule 5.1 | Balance Sheets of the Applicants |
| Schedule 5.2 | Financial Statements of the Applicants |
| Schedule 5.3 | Cash Flow Projections by the Applicants |
| Schedule 6 | Certificates of Good Standing issued by the Commercial Registries |
| Schedule 7 | Certificates of insolvency proceedings distribution for the Applicants |
| Schedule 8.1 | Criminal record distribution certificates for the Applicants |
| Schedule 8.2 | Criminal record distribution certificates for the administrators for the Applicants |
| Schedule 8.3 | Criminal record distribution certificates for the controlling shareholders of the Applicants |
| Schedule 9 | Financial Statements for Q3 of the 2025/2026 Harvest |
| Schedule 10 | CVM Official Letter No. 18/2026/CVM/SEP/GEA-2 |
| Schedule 11 | Group Raízen's credit rating downgrade in 2026 |
| Schedule 12 | List of legal actions and arbitration proceedings involving the Applicants |

as named parties

[Original material follows below:]

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 1

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| **PLANO DE RECUPERAÇÃO EXTRAJUDICIAL** | **EXTRAJUDICIAL RESTRUCTURING PLAN** |
| celebrado por e entre, de um lado, conjuntamente como Devedoras, | executed by and between, on the one hand, jointly as Debtors, |
| **RAÍZEN S.A.**<br>**RAÍZEN ENERGIA S.A.**<br>**RAÍZEN FUELS FINANCE S.A.**<br>**RAÍZEN TRADING S.A.**<br>**RAÍZEN NORTH AMERICA INC**<br>**RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA**<br>**RAÍZEN CENTRO-SUL PAULISTA S.A.**<br>**RAÍZEN CENTRO-SUL S.A.**<br>**BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A.** | **RAÍZEN S.A.**<br>**RAÍZEN ENERGIA S.A.**<br>**RAÍZEN FUELS FINANCE S.A.**<br>**RAÍZEN TRADING S.A.**<br>**RAÍZEN NORTH AMERICA INC**<br>**RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA**<br>**RAÍZEN CENTRO-SUL PAULISTA S.A.**<br>**RAÍZEN CENTRO-SUL S.A.**<br>**BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A.** |
| de outro lado, conforme definido a seguir | on the other hand, as defined below |
| **CREDORES SIGNATÁRIOS** | **SIGNATORY CREDITORS** |
| São Paulo, 10 de março de 2026 | São Paulo, March 10th, 2026 |

JUR_SP - 57245586v6 - 13389004.551306

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 2

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| PLANO DE RECUPERAÇÃO EXTRAJUDICIAL | EXTRAJUDICIAL RESTRUCTURING PLAN |
|---|---|
| Este Plano de Recuperação Extrajudicial ("Plano"), datado de 10 de março de 2026 ("Data de Assinatura"), é celebrado, de um lado, conjuntamente por: | This Extrajudicial Restructuring Plan ("Plan"), dated March 10th, 2026 ("Signing Date") is executed, on the one hand, jointly by: |
| **RAÍZEN S.A.**, sociedade por ações de capital aberto, inscrita no CNPJ/MF sob o nº 33.453.598/0001-23 ("Raízen"); | **RAÍZEN S.A.**, a corporation, enrolled with the Brazilian Corporate Taxpayer's Registry of the Ministry of Finance (CNPJ/MF) under No. 33.453.598/0001-23 ("Raízen"); |
| **RAÍZEN ENERGIA S.A.**, sociedade por ações de capital aberto, inscrita no CNPJ/MF sob o nº 08.070.508/0001-78 ("Raízen Energia"); | **RAÍZEN ENERGIA S.A.**, a corporation, enrolled with the Brazilian Corporate Taxpayer's Registry of the Ministry of Finance (CNPJ/MF) under No. 08.070.508/0001-78 ("Raízen Energia"); |
| **RAÍZEN FUELS FINANCE S.A.**, sociedade constituída e estabelecida ao abrigo das leis do Grão-Ducado do Luxemburgo, registada no Registo Comercial e de Sociedades do Luxemburgo (R.C.S. Luxemburgo) sob o nº B 184.033 ("Raízen Finance"); | **RAÍZEN FUELS FINANCE S.A.**, a public limited liability company (*société anonyme*) organized and established under the laws of the Grand Duchy of Luxembourg, registered with the Luxembourg Register of Commerce and Companies (R.C.S. Luxembourg) under number B 184.033 ("Raízen Finance"); |
| **RAÍZEN TRADING S.A.**, sociedade empresária constituída de acordo com as leis da Suíça, registada sob o nº CHE-143.573.167 ("Raízen Trading"); | **RAÍZEN TRADING S.A.**, a corporation organized and established under the law of Switzerland, registered under No. CHE-143.573.167 ("Raízen Trading"); |
| **RAÍZEN NORTH AMERICA INC.**, sociedade empresária constituída de acordo com as leis dos Estados Unidos da América ("Raízen Inc."); | **RAÍZEN NORTH AMERICA INC.**, a corporation organized and established under the law of the United States of America ("Raízen Inc."); |
| **RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA.**, sociedade por ações, inscrita no CNPJ/MF sob o nº 09.538.989/0001-66 ("Raízen Caarapo"); | **RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA.**, a corporation enrolled with the Brazilian Corporate Taxpayer's Registry of the Ministry of Finance (CNPJ/MF) under No. 09.538.989/0001-66 ("Raízen Caarapo"); |
| **RAÍZEN CENTRO-SUL PAULISTA S.A.**, sociedade por ações, inscrita no CNPJ/MF sob o nº 49.213.747/0118-28 ("Raízen Centro-Sul Paulista"); | **RAÍZEN CENTRO-SUL PAULISTA S.A.**, a corporation enrolled with the Brazilian Corporate Taxpayer's Registry of the Ministry of Finance (CNPJ/MF) under No. 49.213.747/0118-28 ("Raízen Centro-Sul Paulista"); |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| **RAÍZEN CENTRO-SUL S.A.**, sociedade por ações, inscrita no CNPJ/MF sob o nº 15.527.906/0001-36 ("<u>Raízen Centro-Sul</u>"); | **RAÍZEN CENTRO-SUL S.A.**, a corporation enrolled with the Brazilian Corporate Taxpayer's Registry of the Ministry of Finance (CNPJ/MF) under No. 15.527.906/0001-36 ("<u>Raízen Centro-Sul</u>"); |
| **BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A.,** sociedade por ações, inscrita no CNPJ/MF sob o nº 04.958.554/0001-57 ("Blueway" e, quando em conjunto com a Raízen, Raízen Energia, Raízen Finance, Raízen Trading, Raízen Inc., Raízen Caarapo, Raízen Centro-Sul Paulista, Raízen Centro-Sul, as "<u>Devedoras</u>", todas com principal estabelecimento na Av. Brigadeiro Faria Lima, nº 4.100, 12º andar, Parte VII, São Paulo/SP, CEP 04538-132). | **BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A.,** a corporation enrolled with the Brazilian Corporate Taxpayer's Registry of the Ministry of Finance (CNPJ/MF) under No. 04.958.554/0001-57 ("<u>Blueway</u>" and when together with Raízen, Raízen Energia, Raízen Finance, Raízen Trading, Raízen Inc., Raízen Caarapo, Raízen Centro-Sul Paulista e Raízen Centro-Sul, the "<u>Debtors</u>", all with their main place of business at Av. Brigadeiro Faria Lima, nº 4.100, 12th floor, Part VII, São Paulo/SP, ZIP 04538-132). |
| De outro lado, pelos **CREDORES SIGNATÁRIOS**, conforme listados e descritos no **Anexo A** deste Plano ("<u>Credores Signatários</u>"); | On the other hand, by the **SIGNATORY CREDITORS**, as listed and described in **Schedule A** to this Plan (the "<u>Signatory Creditors</u>"). |
| **CONSIDERANDOS** | **RECITALS** |
| A.     Considerando que as Devedoras são parte do Grupo Raízen (conforme definido abaixo), composto por sociedades *holding* e sociedades operacionais atuantes no segmento de produção de etanol e açúcar e distribuição de combustíveis, produtos e serviços, em todo território nacional e em outros países; | A.     Whereas the Debtors are part of Raízen Group (as defined below), composed of holding companies and operational companies operating in the ethanol and sugar production segment and distribution of fuels, products, and services throughout Brazil and abroad; |
| B.     Considerando que, dentre outros fatores, a alteração do cenário macroeconômico e setorial – decorrentes de ciclos de colheita de menor produtividade, queda das margens e alto custo do endividamento financeiro – prejudicou a atividade das companhias operacionais e, por consequência, toda a operação estruturada pelas Devedoras ao longo de anos de atuação no segmento; | B.     Whereas, among other issues, the changes in the macroeconomic and sectoral market – resulting from harvest cycles with lower productivity, falling margins and high financial debt costs – have adversely affected the activities of operating companies and, consequently, the entire operation structured by the Debtors over years of activity in the sector; |
| C.     Considerando que nesse período houve alta expressiva da taxa básica de juros no mercado doméstico, tendo a Selic saltado do patamar de 2%, em 2020, para 15%, em 2026, afetando de forma | C.     Whereas during this period there was a significant increase in the Brazilian market's basic interest rate, with the Selic rate (*taxa Selic*) jumping from 2% in 2020 to 15% in 2026, |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

significativa o endividamento financeiro das Devedoras;

significantly affecting the Debtors' financial indebtedness;

**D.**    Considerando que as Devedoras emitiram ou garantiram as dívidas financeiras quirografárias listadas no **Anexo D** ("<u>Títulos Existentes</u>").

**D.**    Whereas the Debtors issued or were guarantors of the financial unsecured debt described in **Schedule D** ("<u>Existing Titles</u>")

**E.**    Considerando que as Devedoras no curso ordinário de suas operações, realizaram diversos contratos de financiamento e transferência de recursos financeiros entre si, reciprocamente na qualidade de credoras e devedoras, conforme também indicado no **Anexo D** ("<u>Créditos Intercompany</u>");

**E.**    Whereas the Debtors in the ordinary course of business, executed various financing agreements and transfer of funds amongst themselves, reciprocally as debtors and creditors, as also indicated in **Schedule D** ("<u>Intercompany Claims</u>");

**F.**    Considerando que as Devedoras vêm mantendo tratativas para a renegociação do seu passivo financeiro quirografário, buscando *(i)* a continuidade dos esforços de redução da alavancagem do Grupo Raízen; e *(ii)* as alternativas possíveis para readequação da estrutura de capital das Devedoras, incluindo, mas não se limitando, à renegociação e a repactuação do seu endividamento financeiro quirografário e outras alternativas estruturais;

**F.**    Whereas the Debtors have been negotiating to restructure their unsecured financial liabilities, seeking *(i)* to continue efforts to reduce the leverage of Raízen Group, through the sale of non-essential assets; and *(ii)* possible alternatives for restructuring the capital structure of the Debtors, including, but not limited to, renegotiation and rescheduling of its unsecured financial indebtedness and other structural alternatives;

**G.**    Considerando que, com o objetivo de superar a crise econômico-financeira enfrentada, as Devedoras, nesta data, ajuízam o presente pedido de homologação de plano de recuperação extrajudicial com o objetivo de criar as condições e a estrutura necessários para as Devedoras e os Credores Sujeitos negociarem, estabelecerem e implementarem os termos da restruturação do endividamento financeiro quirografário das Devedoras, com o objetivo de manter a estabilidade das atividades operacionais das Devedoras, que têm sido exercidas de forma saudável e rentável;

**G.**    Whereas, with the objective of overcoming the economic and financial crisis being faced, the Debtors, on this date, file the present request for confirmation of an extrajudicial restructuring plan, with the objective to create the conditions and the framework necessary for the Debtors and the Subject Creditors to negotiate, establish, and implement the terms of the restructuring of the unsecured financial debt of the Debtors, and with the objective of maintaining the operational activities of the Debtors that have been exercised in a healthy and profitable form;

**H.**    Considerando os princípios do processo de recuperação extrajudicial, o Plano visa a *(i)* garantir a preservação da atividade empresarial das Devedoras; *(ii)* possibilitar o estabelecimento dos termos para a reestruturação dos créditos sujeitos ao processo; *(iii)* manter a posição das

**H.**    Whereas, considering the principles of the out-of-court recovery process, the Plan aims to *(i)* enable the preservation of the business activity of the Debtors; *(ii)* permit establishing the terms for the restructuring of the credits subject to the process; *(iii)* maintain of Debtors' position in the

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 5

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Devedoras no mercado, sendo uma fonte de geração de tributos, empregos e riquezas para a economia; e *(iv)* garantir condições isonômicas e vantajosas a todos os credores; | market, being a source of generating taxes, jobs, and wealth for the economy; and *(iv)* ensure equitable and advantageous conditions to all creditors; |
| **I.**      Considerando que o montante total devido por cada uma das Devedoras, na Data do Protocolo da RE, incluindo o saldo devedor de principal, juros e penalidades contratuais, encontra-se descrito no **Anexo D,** e que as Devedoras pretendem reestruturar, nos termos do art. 43, do art. 163, § 1º, e do art. 163, § 3º, inciso II, da LFR, os Créditos Intercompany e todos os créditos financeiros quirografários contra as Devedoras relacionados ou resultantes dos Títulos Existentes, incluindo principal, juros, juros de mora e quaisquer outras obrigações das Devedoras que sejam regidas ou estabelecidas nos Títulos Existentes, excluindo-se eventuais Créditos Decorrentes de Operações em Câmaras de Compensação ou Liquidação e outras obrigações excluídas nos termos deste Plano e da LFR ("Créditos Sujeitos"); | **I.**      Whereas the total amounts due from each of the Debtors as of the EJ Filing Date, including amounts outstanding for principal, interest and contractual penalties, are described in **Schedule D**, and the Debtors intend to restructure, pursuant to Article 163, paragraph 1, Article 43 and Article 163, paragraph 3, inc. II, of the Brazilian Bankruptcy Law, the Intercompany Claims and all unsecured financial claims against the Debtors related to or arising from Existing Titles, including principal, interest, default interest and other obligations of the Debtors that are governed, established in the Existing Titles, excluding any Claims Arising from Clearing  or Settlement Operations and other exempted obligations under this Plan and the Brazilian Bankruptcy Law("Subject Claims"); |
| **J.**      Os Credores Signatários, indicados no **Anexo A,** subscrevem o presente Plano sob a premissa fundamental e motivo determinante de que, na Data da Sentença de Homologação, terá sido negociado, elaborado e apresentado nos autos, nos termos deste Plano, um Plano Atualizado e que este Plano Atualizado terá sido assinado por Credores Sujeitos titulares de mais da metade dos Créditos Sujeitos, observando os requisitos para apuração de quórum previstos na LFR (art. 163, §§ 2º e 3º); e | **J.**      The Signatory Creditors, as listed under **Schedule A**, execute this Plan based on the fundamental premise and determining reason that, on the Confirmation Order Date, an Updated Plan will have been negotiated, prepared, and filed in the case records, pursuant to the terms of this Plan, and that the Updated Plan shall have been executed by Subject Creditors that hold more than half of the Subject Claims, following the requirements for quorum determination set forth in the Brazilian Bankruptcy Law (Article 163, paragraphs 2 and 3); and |
| **K.**      Os Credores Signatários assinam o presente Plano sob a premissa fundamental e motivo determinante de que, observadas as previsões contidas neste Plano, incluindo, mas não se limitando, às obrigações contidas nas Cláusulas 4.1, 7.2 e 7.3 do Plano, bem como a disposição contida no art. 163, § 8º, da LFR, seus Créditos Sujeitos somente serão novados e substituídos se e quando for proferida a Sentença de Homologação | **K.**      The Signatory Creditors sign this Plan based on the fundamental premise and determining reason that, subject to the provisions contained in this Plan, including, but not limited to, the obligations contained in Sections 4.1, 7.2 and 7.3 of the Plan, as well as the provision contained in Article 163, paragraph 8, of the Brazilian Bankruptcy Law, their Subject Claims will only be novated, replaced, or otherwise affected if and |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| do Plano Atualizado, a qual, por sua vez, somente ocorrerá com a assinatura do Plano Atualizado (e não do Plano) por Credores Sujeitos titulares de mais da metade dos Créditos Sujeitos, observando os requisitos para apuração de quórum previstos na LFR (art. 163, §§ 2º e 3º). | when the Confirmation Order of the Updated Plan is issued, which, in turn, will only occur upon the execution of the Updated Plan (and not this Plan) by Subject Creditors holding more than one-half of the Subject Claims, subject to the quorum calculation requirements set forth in the Brazilian Bankruptcy Law (Article 163, §§ 2 and 3). |
| **L.** Nesta data, o Plano conta com a assinatura dos Credores Signatários que, em conjunto, representam mais de 1/3 (um terço) dos Créditos Sujeitos, observado o previsto nos arts. 43 e 163, § 3º, inciso II, da LFR, e as Devedoras firmam o compromisso de, no prazo de 90 (noventa) Dias Corridos contados da Data do Protocolo da RE, atingir o quórum previsto no caput do art. 163, por meio de nova adesão expressa da maioria dos Créditos Sujeitos ao Plano Atualizado (art. 163, § 7º da LFR). | **L.** On this date, the Plan is executed by the Signatory Creditors that, collectively, hold more than a third (1/3) of the Subject Claims, observed the provided in art. 43 and 163, paragraph 3, inc. II, of the Brazilian Bankruptcy Law, and the Debtors undertake, within ninety (90) Calendar Days from the Filing Date, to reach the quorum provided for in Article 163, *caput*, by means of new express adhesion to the Updated Plan by the majority of the Subject Claims (Article 163, paragraph 7, of the Brazilian Bankruptcy Law). |
| **1. DEFINIÇÕES E REGRAS DE INTERPRETAÇÃO** | **1. DEFINITIONS AND RULES OF CONSTRUCTION** |
| **1.1. Definições**. As seguintes palavras, expressões e abreviaturas iniciadas em letra maiúscula, no singular ou no plural, masculino ou feminino, utilizadas neste Plano, terão os significados atribuídos abaixo. | **1.1. Definitions**. The following capitalized words, expressions, and abbreviations, either in singular or plural, masculine or feminine, in this Plan, shall have the meanings attributed below. |
| 1.1.1. "Afiliada" significa com relação à Pessoa especificada, qualquer outra Pessoa que seja direta ou indiretamente, uma Controlada ou sociedade sob Controle comum; | 1.1.1. "Affiliate" means, with respect to the specified Person, any other Person that is directly or indirectly a Subsidiary or a company under common Control; |
| 1.1.2. "*Bankruptcy Code* dos EUA" significa o título 11 do United States Code, 11 U.S.C. §§ 101 e seguintes; | 1.1.2. "U.S. Bankruptcy Code" means title 11 of the United States Code. 11 U.S.C. §§ 101 et seq; |
| 1.1.3. "Blueway" tem o significado estabelecido no Preâmbulo; | 1.1.3. "Blueway" has the meaning established in the Preamble; |
| 1.1.4. "*Chapter* 15" significa o procedimento do *Chapter* 15 do Bankruptcy Code dos EUA; | 1.1.4. "Chapter 15" means chapter 15 of the U.S. Bankruptcy Code; |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 7

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| 1.1.5. "Clearings" significa as câmaras de ou prestadoras de serviços de compensação e de liquidação financeira no Brasil ou exterior. | 1.1.5. "Clearings" means clearing houses or providers of clearing and financial settlement services in Brazil or abroad. |
| 1.1.6. "Código Civil Brasileiro" significa a Lei nº 10.406, de 10 de janeiro de 2002; | 1.1.6. "Brazilian Civil Code" means Law No. 10,406 of January 10, 2002; |
| 1.1.7. "Código de Processo Civil Brasileiro" significa a Lei nº 13.105, de 16 de março de 2015; | 1.1.7. "Brazilian Code of Civil Procedure" means Law No. 13,105 of March 16, 2015; |
| 1.1.8. "Controle": significa, conforme previsto no art. 116 da Lei das S.A. ou em disposição equivalente em outra jurisdição, em relação a uma determinada pessoa, ou a pessoas que em conjunto, conforme aplicável, detenham *(i)* o poder de eleger a maioria da administração de forma permanente, bem como de determinar e conduzir as políticas e administração dessa pessoa; ou *(ii)* a propriedade direta ou indireta de pelo menos 50% (cinquenta por cento) mais 1 (uma) ação/quota do capital votante total dessa pessoa; em qualquer desses casos, por uma pessoa ou conjunto de pessoas vinculadas por acordo de voto ou sob Controle comum. Os termos relacionados à palavra Controle, tais como "Controlada", "Controladora" e "sob Controle comum" utilizadas neste Plano seguirão a definição de Controle. | 1.1.8. "Control" means, as provided for in Article 116 of the Brazilian Corporation Law, with respect to a given Person, *(i)* the power to elect the majority of the administration of such Person on a continuous basis, as well as to determine and conduct the policies and administration of such Person; or *(ii)* the direct or indirect ownership of at least fifty percent (50%) plus 1 (one) share/quota of the total voting capital of such Person; in any of such cases, by a Person or group of Persons bound by a voting agreement or under common Control. The terms related to the word Control, such as "Controlled Party", "Controlling Party" and "under common Control", shall have similar meanings to Control; |
| 1.1.9. "Corte Norte-Americana de Falências" tem o significado atribuído na Cláusula 2.8; | 1.1.9. "U.S. Bankruptcy Court" has the meaning established in Section 2.8; |
| 1.1.10. "Créditos Aderentes" significa os Créditos Sujeitos detidos pelos Credores Aderentes; | 1.1.10. "Adhering Claims" means the Subject Claims held by the Adhering Creditors; |
| 1.1.11. Créditos Decorrentes de Operações em Câmaras de Compensação ou Liquidação" significa quaisquer créditos, que estão expressamente excluídos e não serão considerados Créditos Sujeitos para fins deste Plano, decorrentes exclusivamente da liquidação, compensação, vencimento antecipado, liquidação voluntária ou rescisão de Operações de Clearing (excluindo-se, para que não haja dúvidas, quaisquer operações semelhantes contratadas pelas Devedoras em mercado de balcão e não sujeitas à compensação, garantia ou liquidação de uma Clearing, incluindo | 1.1.11. "Claims Arising from Clearing or Settlement Operations" means any claims, which are expressly excluded and shall not be considered Subject Claims for the purposes of this Plan, arising exclusively from the settlement, close-out netting, acceleration, voluntary termination, or termination of Clearing Transactions (it being understood, for the avoidance of doubt, that any similar transactions entered into by the Debtors in the over-the-counter market and not subject to the clearing, guarantee, or settlement of a Clearing are excluded from this definition, including, without |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| sem limitação as operações contratadas, cursadas e/ou registradas perante o Segmento de Balcão Sem Garantia da B3 (referente à antiga Central de Custódia e de Liquidação Financeira de Títulos Privados (CETIP)), NoMe ou qualquer instituição assemelhada), inclusive o saldo remanescente após compensação (netting), independentemente se tais créditos resultaram de uma liquidação, compensação, vencimento antecipado, liquidação voluntária ou rescisão realizada antes ou depois da Data do Protocolo da RE, bem como quaisquer créditos ou obrigações decorrentes de quaisquer acordos, confirmações, arranjos de suporte de crédito, contratos de compensação, contratos de corretagem, empréstimos para manter ou comprar valores mobiliários ou títulos de crédito ou documentação relacionada exclusivamente no âmbito e no ambiente das Clearings, em qualquer das hipóteses independentemente se regidos pela legislação brasileira, pela legislação de Nova York ou por qualquer outra legislação aplicável. | limitation, transactions entered into, processed and/or registered with B3's Unsecured OTC Segment (formerly the Central de Custódia e de Liquidação Financeira de Títulos Privados (CETIP)), NoMe, or any similar institution), including any remaining balance after netting, regardless of whether such claims arise from a settlement, close-out netting, acceleration, voluntary termination, or termination carried out before or after the ER Filing Date, as well as any claims or obligations arising from any agreements, confirmations, credit support arrangements, netting agreements, brokerage agreements, loans to maintain or purchase securities or debt instruments, or related documentation exclusively within the scope and environment of the Clearings, in each case regardless of whether governed by Brazilian law, New York law, or any other applicable law. |
| 1.1.12. "<u>Créditos Intercompany</u>" tem o significado atribuído no Considerando E; | 1.1.12. "<u>Intercompany Claims</u>" has the meaning established in Recital E; |
| 1.1.13. "<u>Créditos Signatários</u>" significa os Créditos Sujeitos detidos pelos Credores Signatários; | 1.1.13. "<u>Signatory Claims</u>" means the Subject Claims held by the Signatory Creditors; |
| 1.1.14. "<u>Créditos Sujeitos</u>" tem o significado atribuído no Considerando I; | 1.1.14. "<u>Subject Claims</u>" has the meaning established in Recital I; |
| 1.1.15. "<u>Credores Aderentes</u>" tem o significado estabelecido no Preâmbulo; | 1.1.15. "<u>Adhering Creditors</u>" has the meaning established in the Preamble; |
| 1.1.16. "<u>Credores Signatários</u>" tem o significado estabelecido no Preâmbulo; | 1.1.16. "<u>Signatory Creditors</u>" has the meaning established in the Preamble; |
| 1.1.17. "<u>Credores Sujeitos</u>" significa os titulares de Créditos Sujeitos; | 1.1.17. "<u>Subject Creditors</u>" means the holders of Subject Claims; |
| 1.1.18. "<u>Data da Sentença de Homologação</u>" significa a data em que for publicada, no Diário de Justiça Eletrônico do Estado de São Paulo (DJE), a decisão de homologação do Plano Atualizado proferida pelo Juízo da RE; | 1.1.18. "<u>Confirmation Order Date</u>" means the date on which the order providing for the judicial confirmation of the Updated Plan by the EJ Court is published in the São Paulo State Court's Official Gazette (DJE); |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 9

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| 1.1.19. "Data de Assinatura" tem o significado estabelecido no Preâmbulo; | 1.1.19. "Signing Date" has the meaning established in the Preamble; |
| 1.1.20. "Data de Resolução do Plano" tem o significado estabelecido na Cláusula 6.1; | 1.1.20. "Plan Termination Date" has the meaning established in Section 6.1; |
| 1.1.21. "Data do Protocolo da RE" significa a data em que a Recuperação Extrajudicial for protocolada perante o Juízo da RE; | 1.1.21. "EJ Filing Date" means the date on which the Extrajudicial Restructuring is filed before the EJ Court; |
| 1.1.22. "Decisões Chapter 15" significa a Decisão Norte-Americana de Reconhecimento da RE e a Decisão de Confirmação Chapter 15. Para que não restem dúvidas, as Decisões Chapter 15 podem constituir uma decisão só; | 1.1.22. "Chapter 15 Orders" means the U.S Recognition Order and the U.S Enforcement Order. For the avoidance of doubt, the Chapter 15 Orders may constitute a single order; |
| 1.1.23. "Decisão Norte-Americana de Reconhecimento da RE" tem o significado estabelecido na Cláusula 2.8; | 1.1.23. "U.S. Recognition Order" has the meaning established in Section 2.8; |
| 1.1.24. "Decisão de Confirmação Chapter 15" tem o significado atribuído na Cláusula 2.8; | 1.1.24. "U.S. Enforcement Order" has the meaning established in Section 2.8; |
| 1.1.25. "Devedoras" tem o significado estabelecido no Preâmbulo; | 1.1.25. "Debtors" has the meaning established in the Preamble; |
| 1.1.26. "Dias Corridos" significa qualquer dia, incluindo dias que não sejam Dias Úteis; | 1.1.26. "Calendar Days" means any day, including days that are not Business Days; |
| 1.1.27. "Dias Úteis" significa qualquer Dia Corrido, exceto dias em que os bancos comerciais estejam obrigados ou autorizados por lei a fechar na cidade de São Paulo, Estado de São Paulo; na cidade de Nova Iorque, Estado de Nova Iorque; ou na cidade de Londres, no Reino Unido; | 1.1.27. "Business Day" means any Calendar Day, except for any day on which commercial banks are required or authorized by Law to close in the City of São Paulo, State of São Paulo; in the City of New York, State of New York; or in the city of London, in the United Kingdom; |
| 1.1.28. "Dólares" ou "US$" significa dólares dos Estados Unidos da América; | 1.1.28. "Dollars" or "US$" shall each mean United States dollars; |
| 1.1.29. "Euros" ou "EUR" ou "€" significa a moeda oficial da Zona do Euro; | 1.1.29. "Euros" or "EUR" or "€" shall each mean Eurozone official currency; |
| 1.1.30. "Evento de Resolução" tem o significado estabelecido na Cláusula 6.1; | 1.1.30. "Termination Event" has the meaning established in Section 6.1; |
| 1.1.31. "Grupo Raízen" significa coletivamente a Raízen e todas as sociedade direta e indiretamente controladas pela Raízen; | 1.1.31. "Raízen Group" means collectively Raízen and all the entities directly and indirectly controlled by Raízen; |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 10

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| 1.1.32. "Juízo da RE" significa o juízo perante o qual a Recuperação Extrajudicial será processada, qual seja, o qual seja, o juízo de uma das Varas de Falências e Recuperações Judiciais da Comarca do Estado São Paulo, Estado de São Paulo, Brasil, observada a Cláusula 7.13; | 1.1.32. "EJ Court" means the court before which this Extrajudicial Restructuring shall be pending, namely the Bankruptcy State Courts of the District of São Paulo, State of São Paulo, Brazil, as established in Clause7.13; |
| 1.1.33. "Lei" ou "Lei Aplicável" significa qualquer lei federal, estadual ou municipal brasileira ou qualquer lei estrangeira (neste caso, lei escrita, a common law ou qualquer outra lei), constituição, tratado, convenção, portaria, código, regra, estatuto, decreto, regulamento, decisão, deliberação, instrução ou qualquer outra exigência editada, emitida, adotada, promulgada, posta em vigor ou aplicada por uma autoridade governamental brasileira ou estrangeira; | 1.1.33. "Law" or "Applicable Law" means any Brazilian federal, state or municipal law or any foreign law (in this case, statutory, common or any other law), constitution, treaty, convention, ordinance, code, rule, statute, decree, regulation, ruling, deliberation, instruction or any other requirement edited, issued adopted, enacted, placed or applied by a Brazilian or foreign governmental entity; |
| 1.1.34. "Lei das S.A." significa a Lei nº 6.404, de 15 de dezembro de 1976; | 1.1.34. "Brazilian Corporations Law" means Law no. 6,404 of December 15, 1976; |
| 1.1.35. "LFR" significa a Lei nº 11.101, de 9 de fevereiro de 2005; | 1.1.35. "Brazilian Bankruptcy Law" means Law no. 11,101 of February 9, 2005; |
| 1.1.36. "Operações de Clearings" significa quaisquer operações contratadas e obrigações assumidas pelas Devedoras liquidadas, compensadas ou garantidas no ambiente das Clearings, incluindo, sem limitação, operações de derivativos, swaps, futuros, contratos de hedge, compensação, liquidação, margem, custódia, intermediação ou serviços correlatos e operações similares, nos termos dos respectivos contratos. | 1.1.36. "Clearing Transactions" means any transactions entered into and obligations assumed by the Debtors that are settled, netted, or guaranteed within the Clearings environment, including, without limitation, derivatives transactions, swaps, futures, hedge agreements, netting, settlement, margin, custody, brokerage or related services, and similar transactions, pursuant to the respective agreements. |
| 1.1.37. "Partes" ou "Parte" têm o significado estabelecido no Preâmbulo; | 1.1.37. "Parties" or "Party" have the meaning established in the Preamble; |
| 1.1.38. "Pessoa" significa qualquer indivíduo, sociedade, incluindo sociedades anônimas e de responsabilidade limitada, sociedades em parceria, joint venture, trust, associação, fundação, organização, entidade governamental ou outra entidade de qualquer tipo ou natureza; | 1.1.38. "Person" means any individual, corporation, including joint-stock and limited companies, partnership, joint venture, trust, association, foundation, organization, governmental entity or another entity of any kind or nature; |
| | |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 11

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| 1.1.39. "Plano" tem o significado estabelecido no Preâmbulo; | 1.1.39. "Plan" has the meaning established in the Preamble; |
| 1.1.40. "Plano Atualizado" tem o significado estabelecido na Cláusula 3.1.1; | 1.1.40. "Updated Plan" has the meaning established in Section 3.1.1; |
| 1.1.41. "Raízen" tem o significado estabelecido no Preâmbulo; | 1.1.41. "Raízen" has the meaning established in the Preamble; |
| 1.1.42. "Raízen Caarpo" tem o significado estabelecido no Preâmbulo; | 1.1.42. "Raízen Caarpo" has the meaning established in the Preamble; |
| 1.1.43. "Raízen Centro-Sul" tem o significado estabelecido no Preâmbulo; | 1.1.43. "Raízen Centro-Sul" has the meaning established in the Preamble; |
| 1.1.44. "Raízen Centro-Sul Paulista" tem o significado estabelecido no Preâmbulo; | 1.1.44. "Raízen Centro-Sul Paulista" has the meaning established in the Preamble; |
| 1.1.45. "Raízen Energia" tem o significado estabelecido no Preâmbulo; | 1.1.45. "Raízen Energia" has the meaning established in the Preamble; |
| 1.1.46. "Raízen Finance" tem o significado estabelecido no Preâmbulo; | 1.1.46. "Raízen Finance" has the meaning established in the Preamble; |
| 1.1.47. "Raízen Inc." tem o significado estabelecido no Preâmbulo; | 1.1.47. "Raízen Inc." has the meaning established in the Preamble; |
| 1.1.48. "Raízen Trading" tem o significado estabelecido no Preâmbulo; | 1.1.48. "Raízen Trading" has the meaning established in the Preamble; |
| | |
| 1.1.49. "Real", "Reais" ou "R$" significa a moeda oficial do Brasil; | 1.1.49. "Real", "Reais" or "R$" means the legal currency of Brazil; |
| 1.1.50. "Recuperação Extrajudicial" tem o significado estabelecido no Preâmbulo; | 1.1.50. "Extrajudicial Restructuring" has the meaning established in the Preamble; |
| 1.1.51. "Sentença de Homologação" significa a decisão de homologação do Plano Atualizado; | 1.1.51. "Confirmation Order" means the judicial confirmation of the Updated Plan by the EJ Court; |
| 1.1.52. "Termo de Adesão" tem o significado atribuído na Cláusula 2.5; | 1.1.52. "Adhesion Form" has the meaning established in Section 2.5; |
| 1.1.53. "Títulos Existentes" tem o significado atribuído no Considerando D. | 1.1.53. "Existing Titles" has the meaning established in Recital D. |
| **1.2.    Regras de Interpretação.** | **1.2.    Rules of Construction.** |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 12

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| 1.2.1. <u>Títulos e Cabeçalhos</u>. Os títulos e cabeçalhos das Cláusulas deste Plano existem simplesmente para fins de referência, e não devem ser utilizados para interpretação ou análise das disposições deste instrumento. | 1.2.1. <u>Titles and Headings</u>. The titles and headings of the Sections set forth in this Plan are for reference purposes only and shall not be used to construe or interpret the provisions hereof. |
| 1.2.2. <u>Seções, Cláusulas e Anexos</u>. Todas as referências neste Plano a capítulos, cláusulas, itens, preâmbulo e anexos devem ser consideradas referências aos capítulos, cláusulas, itens, preâmbulo e anexos deste Plano, a menos que o contexto exija de outro modo. | 1.2.2. <u>Sections, Sections and Schedules</u>. All references in this Plan to chapters, sections, items, preamble and schedules shall be considered references to the chapters, Sections, items, preamble and schedules of this Plan, unless the context requires otherwise. |
| 1.2.3. <u>Inclusive</u>. Os termos "incluindo", "inclusive" e "incluído", bem como termos semelhantes, devem ser interpretados como se estivessem acompanhados das expressões "mas não limitados a" e "entre outros". | 1.2.3. <u>Inclusive</u>. The terms "including", "inclusive" and "included", as well as similar terms, shall be construed as if accompanied by the expressions "but not limited to" and "among others". |
| 1.2.4. <u>Alterações</u>. Quaisquer referências a documentos ou instrumentos devem ser consideradas como incluindo todas as respectivas alterações ou substituições, a menos que de outro modo expressamente previsto ou de outra forma requerida pelo contexto. | 1.2.4. <u>Amendments</u>. Any references to any documents or instruments shall be considered to include all of the respective amendments or replacements, unless otherwise expressly set forth or required by the context. |
| 1.2.5. <u>Disposições legais</u>. Todas as referências a disposições legais e a Leis devem ser interpretadas como referências a essas disposições legais e Leis tais como vigentes nesta data em um data que seja especificamente determinada pelo contexto; | 1.2.5. <u>Legal Provisions</u>. All references to legal provisions and Laws must be interpreted as references to these legal provisions and Laws as in effect on the date hereof or on the date specifically determined by the context. |
| 1.2.6. <u>Sucessores</u>. Todas as referências a qualquer Pessoa devem incluir seus respectivos sucessores e cessionários autorizados, independentemente do tipo de sucessão envolvida. | 1.2.6. <u>Successors</u>. All references to any Person shall include its respective successors and permitted assignees, regardless of the type of succession involved. |
| 1.2.7. <u>Prazos</u>. Todos os termos e prazos previstos neste Plano serão contados na forma prevista no Código Civil Brasileiro, desconsiderando-se o dia de início e incluindo-se o dia em que o prazo é alcançado. Quaisquer termos e prazos referidos neste Plano (contados em Dias Úteis ou não), cujo termo final caia em um dia em que não seja Dia Útil, serão automaticamente prorrogados para o primeiro Dia Útil imediatamente posterior. | 1.2.7. <u>Deadlines</u>. All terms and deadlines set forth in this Plan shall be counted as provided for in the Brazilian Civil Code, disregarding the immediate first day and including the day on which the deadline is reached. All terms and deadlines referred to in this Plan (whether counted in Business Days or not), in which the final day of the deadline corresponds to a day that is not a Business |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 13

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | Day shall be automatically extended to the first following Business Day. |
|---|---|
| 1.2.8. <u>Conflito</u>. Em caso de conflito entre este Plano e os seus Anexos, o Plano prevalecerá. | 1.2.8. <u>Conflict</u>. In case of conflict between this Plan and its Schedules, the Plan shall prevail. |

## 2. CONDIÇÕES GERAIS DA RECUPERAÇÃO EXTRAJUDICIAL

## 2. GENERAL TERMS OF THE EXTRAJUDICIAL RESTRUCTURING

**2.1. Objetivo do Plano**. Este Plano tem como objetivo criar as condições e a estrutura necessários para as Devedoras e os Credores Sujeitos negociarem, estabelecerem e implementarem os termos da restruturação dos Créditos Sujeitos, mediante apresentação de um Plano Atualizado para homologação pelo Juízo da RE, em benefício dos Credores Sujeitos, das Devedoras e de todos os *stakeholders* das Devedoras.

**2.1. Purpose of the Plan**. This Plan is intended to create the conditions and framework necessary for the Debtors and the Subject Creditors to negotiate, establish and implement the terms of the restructuring of the Subject Claims, through the submission of an Updated Plan for confirmation by the EJ Court, for the benefit of the Subject Creditors, the Debtors, and all of the Debtor's stakeholders.

2.1.1. Os Credores Signatários e/ou Credores Aderentes poderão rejeitar qualquer Plano Atualizado, a seu exclusivo e absoluto critério, sendo certo, contudo, que os respectivos Créditos Sujeitos restarão vinculados e serão reestruturados, novados e substituídos nos termos do Plano Atualizado (e não do Plano) aprovado por Credores Sujeitos titulares de mais da metade dos Créditos Sujeitos, observando os requisitos para apuração de quórum especificamente quanto ao Plano Atualizado, previstos na LFR (art. 163, §§ 2º e 3º), conforme **Anexo A**, nos termos da Sentença de Homologação do Plano Atualizado.

2.1.1. The Signatory Creditors and/or Adhering Creditors may reject any Updated Plan, at their sole and absolute discretion. However, it is understood that the respective Subject Claims will remain bound and will be restructured, novated, and replaced under the terms of the Updated Plan (and not the Plan) approved by Subject Creditors holding more than half of the Subject Claims, specifically in relation to the Updated Plan, provided that quorum requirements established in the Bankruptcy Law (art. 163, §§ 2 and 3) is met, as per **Schedule A**, in accordance with the Confirmation Order.

**2.2. Créditos Sujeitos**. Os termos e condições deste Plano aplicam-se ao montante total dos Créditos Sujeitos, assim considerados em virtude de sua espécie, natureza e condições de pagamento e amortização semelhantes, cujos montantes agregados correspondem ao valor total descrito no **Anexo D,** conforme atualizado até a Data do Protocolo da RE. Para que não restem dúvidas, observadas as previsões contidas neste Plano, incluindo, mas não se limitando às, obrigações contidas nas Cláusulas 4.1, 7.2 e 7.3 do Plano, bem como a disposição contida no art. 163, § 8º, da

**2.2. Subject Claims**. The terms and conditions of this Plan apply to the total amount of Subject Claims, so characterized by virtue of their similar type, nature, and payment and amortization conditions, the aggregate amounts of which correspond to the total amounts described in **Schedule D**, as updated up to the EJ Filing Date. For the avoidance of doubt, subject to the provisions contained in this Plan, including, but not limited to, the obligations contained in Sections 4.1, 7.2 and 7.3 of the Plan, as well as the provision contained in Article 163, paragraph 8, of the

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 14

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

LFR, os Créditos Sujeitos somente serão novados ou substituídos se e quando houver a Sentença de Homologação do Plano Atualizado, a qual, por sua vez, somente ocorrerá com a assinatura do Plano Atualizado (e não do Plano) por Credores Sujeitos titulares de mais da metade dos Créditos Sujeitos, observando os requisitos para apuração de quórum previstos na LFR (art. 163, §§ 2º e 3º). Estão expressamente excluídos dos Créditos Sujeitos, sem prejuízo de quaisquer outros créditos que não sejam abrangidos como Créditos Sujeitos (i) créditos excluídos da Recuperação Extrajudicial pela LFR; (ii) créditos decorrentes de contratos de adiantamento a contrato de câmbio para exportação (ACC) ou garantidos por alienação / cessão fiduciária, nos termos do art. 49 §3º da LFR; (iii) Operações de Clearings, nos termos da Cláusula 2.2.2; em qualquer das hipóteses de (i) a (iii), independentemente se regidos pela legislação brasileira, pela Lei de Nova York ou por qualquer outra Lei Aplicável.

Brazilian Bankruptcy Law, the Subject Claims will only be novated or replaced if and when the Confirmation Order of the Updated Plan is issued, which, in turn, will only occur upon the execution of the Updated Plan (and not this Plan) by Subject Creditors holding more than one-half of the Subject Claims, subject to the quorum calculation requirements set forth in the Brazilian Bankruptcy Law (Article 163, §§ 2 and 3). The following claims are expressly excluded from the Subject Claims, without prejudice to any other that are not included as Subject Claims: (i) claims excluded under the Brazilian Bankruptcy Law; (ii) claims arising from advance on exchange contracts (ACC) or secured by fiduciary liens or fiduciary assignments, as provided for in Article 49, §3 of the Brazilian Bankruptcy Law; and (iii) any Clearing Transactions, pursuant to Clause 2.2.2; in each (i) through (iii), regardless of whether governed by Brazilian law, New York Law or any other Applicable Law.

2.2.1.  Para que não restem dúvidas, nos termos do art. 193-A da LFR, nada neste Plano afeta ou suspende, o exercício dos direitos de vencimento antecipado e de compensação no âmbito de operações compromissadas e/ou de derivativos conforme previstos nos respectivos contratos, de modo que essas operações poderão ser vencidas antecipadamente e os respectivos créditos e débitos recíprocos serem extintos por compensação até onde se compensarem, desde que assim previsto nos contratos celebrados entre as partes ou em regulamento, sendo certo que eventual crédito residual decorrentes de tais operações compromissadas e/ou de derivativos, após eventuais compensações, são considerados Créditos Sujeitos à presente Recuperação Extrajudicial; sendo certo, ainda, que as Devedoras poderão continuar cumprindo regularmente, nos termos e condições estabelecidos nos respectivos contratos, as operações compromissadas e/ou de derivativos que não forem vencidas

2.2.1.  For avoidance of doubt, pursuant to article 193-A of the Brazilian Bankruptcy Law, nothing in this Plan affects or stays the exercise of acceleration (early termination) and set-off rights in connection with repurchase and/or derivatives transactions as established in the respective contracts, such that those transactions may be early terminated and the respective reciprocal credits and debts off-set against one another to the maximum extent, provided that these rights are established in the respective agreements entered into between the parties or in applicable regulations; provided further that any residual credit related to the repurchase and/or derivatives transactions after taking into account any set-offs are considered Subject Claims to this Extrajudicial Reorganization, except if not terminated, in which case they shall continue to be performed in the ordinary course by the Debtors as contractually agreed, without being affected by the Extrajudicial Reorganization.

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 15

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| antecipadamente pelas contrapartes, as quais não serão afetadas pela Recuperação Extrajudicial | |
| 2.2.2.   Para que não restem dúvidas, nos termos do art. 193 da LFR, nada neste Plano afeta ou suspende, o exercício dos direitos, faculdades, proteções, prerrogativas, remédios e garantias de qualquer contraparte, corretora, membro ou agente de compensação, participante de liquidação, intermediário atuando em nome das Devedoras exclusivamente em relação à qualquer Operação de Clearings, incluindo, sem limitação, observados os termos, condições e limitações dos respectivos contratos: (i) o direito de exigir, ajustar, chamar, gerir ou liquidar margens, prêmios de margem e quaisquer outras garantias; (ii) o direito de limitar posições, recusar ordens, ajustar exposições ou impor requisitos operacionais; (iii) os direitos de declarar eventos de inadimplemento; (iv) os direitos de terminar, acelerar, close-out, liquidar, net, set-off, excutir garantias e exercer quaisquer remédios contratuais ou legais previstos nos respectivos contratos ou regulamentos das Clearings, observado que as compensações legais ou contratuais, excussão de garantias e utilização de margens estarão limitadas às Operações de Clearing e apenas para a satisfação dos respectivos Créditos Decorrentes de Operações em Câmaras de Compensação ou Liquidação; (v) o direito de exercer quaisquer mecanismos de netting, set-off, close-out netting, payment netting e quaisquer outros procedimentos de mitigação ou redução de risco, limitadas às Operações de Clearing e apenas para a satisfação dos respectivos Créditos Decorrentes de Operações em Câmaras de Compensação ou Liquidação; e (vi) todas as prerrogativas decorrentes de qualquer relação de clearing, brokerage, agency ou intermediação. Nenhuma disposição deste Plano opera como stay, suspensão, limitação ou qualquer forma de restrição ao exercício de tais direitos, os quais não se submetem a novação, permanecendo plenamente válidos, exigíveis e oponíveis nos termos dos instrumentos que os regem, exclusivamente para Operações de Clearings. | 2.2.2.   For the avoidance of doubt, pursuant to article 193 of the Brazilian Bankruptcy Law, nothing in this Plan affects or stays the exercise of the rights, powers, protections, prerogatives, remedies, and guarantees of any counterparty, broker, clearing member or agent, settlement participant, or intermediary acting on behalf of the Debtors exclusively in connection with any Clearing Transaction, including, without limitation, subject to the terms, conditions, and limitations of the relevant agreements: (i) the right to require, adjust, call, manage, or liquidate margins, margin premiums, and any other collateral; (ii) the right to limit positions, reject orders, adjust exposures, or impose operational requirements; (iii) the rights to declare events of default; (iv) the rights to terminate, accelerate, close out, liquidate, net, set off, enforce collateral, and exercise any contractual or legal remedies provided for in the relevant agreements or Clearing regulations, provided that statutory or contractual set-off, enforcement of collateral, and use of margins shall be limited to the Clearing Transactions and solely for satisfaction of the respective Claims Arising from Clearing or Settlement Operations; (v) the right to exercise any netting, set-off, close-out netting, payment netting, and any other risk mitigation or risk reduction procedures, limited to the Clearing Transactions and solely for satisfaction of the respective Claims Arising from Clearing or Settlement Operations; and (vi) all prerogatives arising from any clearing, brokerage, agency, or intermediation relationship. No provision of this Plan shall operate as a stay, suspension, limitation, or restriction of any kind on the exercise of such rights, which shall not be subject to novation and shall remain fully valid, enforceable, and opposable pursuant to the instruments governing them, exclusively with respect to Clearing Transactions. |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 16

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

2.2.3.   Ficam proibidas medidas que impliquem em amortização, compensação, redução e/ou qualquer forma de apropriação de recursos das Devedoras em posse dos Credores Sujeitos para satisfação de qualquer Crédito Sujeito, inclusive dos créditos residuais decorrentes de operações compromissadas e/ou de derivativos, exceto pelas garantias e margens especificamente vinculadas às respectivas operações compromissadas e/ou de derivativos, nos termos dos respectivos contratos, conforme aplicável.

2.2.3.   It is expressly prohibited any measures or actions implying or resulting in the amortization, set-off, netting or compensation, reduction and/or any form of appropriation of Debtor funds held by Subject Creditors to satisfy any Subject Claim, including residual credits arising from repurchase agreements and/or derivatives, except for guarantees and margins specifically linked to the respective repurchase and/or derivatives agreements, pursuant to the terms of the respective contracts, as applicable.

**2.3.   Manutenção das Obrigações Excluídas e Curso Normal dos Negócios.** Nada neste Plano deverá ser interpretado para afetar, restringir ou de qualquer forma obstar (i) obrigações assumidas pelas Devedoras com seus fornecedores e prestadores de serviços operacionais e correntes; (ii) obrigações assumidas no âmbito das câmaras ou prestadoras de serviços de compensação e de liquidação financeira, nos termos do art. 193 da LFR; (iii) as obrigações assumidas no contexto de operação de adiantamento a contrato de câmbio para exportação (ACCs) e demais operações não sujeitas à recuperação extrajudicial, na forma do art. 49, §3º e art. 161, §1º da LFR; (iv) as obrigações assumidas no contexto dos financiamentos estruturados envolvendo sociedades de proposito específico (SPE), que não Devedoras, incluindo Ethos Ergon Global Holdings Pte. Ltd., e Ethos Sustainable Solutions Pte. Ltd., bem como direitos e privilégios contra coobrigados, fiadores e obrigados de regresso, na forma do art. 49, §1º da LFR; ou (v) as obrigações de reembolso de honorários de assessores assumidas no contexto dos instrumentos originais de Créditos Sujeitos.

**2.3.   Maintenance of Excluded Obligations and Ordinary Course of Business.** Nothing in this Plan shall be interpreted as to affect, restrain or in any form prohibit (i) obligations undertaken by the Debtors with its suppliers and current operational service providers; (ii) obligations incurred in connection with clearing houses or providers of clearing and financial settlement services, pursuant to art. 193 of the Brazilian Bankruptcy Law; (iii) obligations incurred in connection with export foreign exchange advance transactions (ACCs) and other transactions not impaired by the extrajudicial reorganization pursuant to art. 49 §3rd and 161, §1st of the Brazilian Bankruptcy Law; (iv) the obligations incurred in connection with the structured financing arrangements involving specific purpose vehicles (SPV) that are not Debtors, including Ethos Ergon Global Holdings Pte. Ltd., and Ethos Sustainable Solutions Pte. Ltd., as well as rights and privileges against co-obligors, guarantors and parties liable in recourse, in accordance with Article 49 §3 of the Brazilian Bankruptcy Law; or (v) reimbursement obligations involving fees of advisors provided in the original instruments of Subject Claims.

**2.4.   Credores Signatários.** O presente Plano, desde a Data de Assinatura, conta com a adesão expressa dos Credores Signatários que detêm mais de 1/3 (um terço) dos Créditos Sujeitos, observado o previsto no art. 43 e 163, § 3º, inciso II, da LFR, atingindo montante superior a 1/3 (um terço) do

**2.4.   Signatory Creditors.** This Plan, as from the Signing Date, has the express adherence by Signatory Creditors who hold more than a third (1/3) of the Subject Claims, pursuant to Articles 43 and 163, paragraph 3, inc. II, of the Brazilian Bankruptcy Law, as listed in **Schedules A and D,**

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 17

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| valor total dos Créditos Sujeitos, conforme listados nos **Anexos A** e **D**, nos termos do art. 163, § 7º, da LFR. Não obstante qualquer disposição em contrário neste Plano, nenhum Credor Signatário será considerado como tendo concordado ou aderido aos termos e condições do Plano no que se refere a quaisquer Créditos Sujeitos garantidos pela SACE, sem o consentimento expresso do respectivo Credor Signatário em relação ao respectivo Crédito Sujeito garantido pela SACE. | pursuant to Article 163, paragraph 7, of the Brazilian Bankruptcy Law. Notwithstanding anything to the contrary herein, no Signatory Creditor shall be deemed to have agreed to or adhered to the terms and conditions of the Plan with respect to any Subject Claims guaranteed by SACE, absent the express consent of such Signatory Creditor or Adhering Creditor specifically in relation to such SACE-guaranteed Subject Claim. |
| **2.5.    Credores Aderentes**. Todos os Credores Sujeitos que não são Credores Signatários poderão aderir aos termos e condições estabelecidos neste Plano e no Plano Atualizado para os respectivos Créditos Sujeitos, de forma expressa, por sua livre manifestação de vontade, até a Data da Sentença de Homologação ou a Data de Resolução do Plano, o que ocorrer primeiro, desde que manifestem sua intenção de aderir ao Plano por escrito, na forma do modelo de termo de adesão e de declaração de propriedade constantes dos **Anexos 2.5** e **2.5.1** (o "<u>Termo de Adesão</u>") ou outra correspondência escrita de conteúdo substancialmente similar (um "<u>Credor Aderente</u>" e, coletivamente, os "<u>Credores Aderentes</u>"). | **2.5.    Adhesion**. All Subject Creditors that are not Signatory Creditors may adhere to the terms and conditions set forth in this Plan and the Updated Plan for their respective Subject Claims, expressly, by their free expression of shall, until the Confirmation Order Date or the Plan Termination Date, whichever occurs first, provided that  they expressly confirm their intention to adhere to the Plan in writing, in accordance with the adhesion form and the form of certificate of holder attached hereto in **Schedule 2.5** and **2.5.1** (the "<u>Adhesion Form</u>") or another written correspondence of substantially similar content (each an "<u>Adhering Creditor</u>" and, collectively, the "<u>Adhering Creditors</u>"). |
| 2.5.1.  Os Credores Sujeitos que não são Credores Signatários, mas que desejarem aderir aos seus termos e condições, deverão apresentar: *(i)* o Termo de Adesão e declarar que não possuem qualquer posição acionária, direta ou indireta, que seja representativa de mais de 10% do capital social das Devedoras ou de suas acionistas Controladoras; *(ii)* documentos que comprovem a titularidade de seus Créditos Sujeitos; e *(iii)* qualquer outro documento que possa ser exigido pelo Juízo da RE, conforme definido abaixo, na análise da adesão dos Detentores de Notas. | 2.5.1. The Subject Creditors that are not Signatory Creditors, but wish to adhere to its terms and conditions, must submit: *(i)* the Adhesion Form, and declare that they are not directly holders of equity directly or indirectly representing more than 10% of the equity interests of the Debtors or of its Controlling shareholders; *(ii)* documents that certify the property of their Subject Claims; and *(iii)* any other document that may be required by the one of the ER Court, as defined below, in the analysis of the adhesion of Noteholders. |
| 2.5.2. Não obstante qualquer disposição em contrário neste Plano, nenhum Credor Aderente será considerado como tendo concordado ou aderido aos termos e condições do Plano no que se refere a quaisquer Créditos Sujeitos garantidos pela SACE, sem o consentimento expresso do | 2.5.2. Notwithstanding anything to the contrary herein, no Adhering Creditor shall be deemed to have agreed to or adhered to the terms and conditions of the Plan with respect to any Subject Claims guaranteed by SACE, absent the express consent of such Signatory Creditor or Adhering |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 18

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

respectivo Credor Signatário ou Credor Aderente em relação ao respectivo Crédito Sujeito garantido pela SACE.

**2.6.    Vinculação ao Plano**. Este Plano, seus Anexos, e todos os termos e condições, bem como todos os atos praticados pelas Partes, será válido e vinculante a partir *(i)* da Data da Assinatura, para as Devedoras e todos os Credores Signatários; e *(ii)* da data em que cada Credor Aderente apresentar seu respectivo Termo de Adesão ou outra correspondência escrita de conteúdo similar ao Juízo da RE nos termos da Cláusula 2.5 para os Credores Aderentes, sendo certo que todos os Credores Sujeitos, independentemente de terem subscrito o Plano ou não, estarão sujeitos ao disposto nos arts. 6º e 163, §§ 7º e 8º, da LFR.
Não obstante qualquer disposição em contrário contida neste Plano, a assinatura deste Plano e/ou a entrega de um Termo de Adesão pelos Credores Signatários ou Credores Aderentes não será considerada como consentimento ou aceitação de qualquer Plano Atualizado. Cada Credor Sujeito mantém o direito de aceitar ou rejeitar qualquer Plano Atualizado, a seu exclusivo critério, observado o disposto na Cláusula 2.1.1.

**2.7.    Meios de Reestruturação**. As atividades e obrigações das Devedoras serão reestruturadas, mediante assinatura e homologação do Plano Atualizado, conforme previsto neste Plano, dentre outras por meio de quaisquer das medidas descritas abaixo:

(i)    **Emissão de Novas Dívidas**. O Plano Atualizado poderá estabelecer que os Créditos Sujeitos sejam substituídos por novos instrumentos de dívidas, a serem emitidos nos termos da Cláusula 4.2 deste Plano;

(ii)    **Capitalização**. No contexto da otimização da estrutura de capital do Grupo Raízen, o Plano Atualizado poderá estabelecer estratégias de capitalização, contemplando

Creditor specifically in relation to such SACE-guaranteed Subject Claim.

**2.6.    Enforceability of the Plan**. This Plan, its Schedules, and all of its terms and conditions, as well as all acts performed by the Parties hereto, shall be valid and binding as of *(i)* the Signing Date, for the Debtors and all Signatory Creditors; and *(ii)* for each Adhering Creditor, the date it submits its respective Adhesion Form or another written correspondence of substantially similar content before the ER Court in accordance with Section 2.5, being understood that all Subject Creditors, regardless of having adhered to the Plan or not, shall be subject to the Articles 6 and 163, paragraphs 7 and 8, of the Brazilian Bankruptcy Law. Notwithstanding anything in this Plan to the contrary, the execution and entry of this Plan and/or the delivery of an Accession Term by the Signatory Creditors or Adhering Creditors shall not be deemed to constitute consent to or acceptance of any Updated Plan. Each Subject Creditor retains the right to accept or reject any Updated Plan at its sole discretion, subject to Section 2.1.1.

**2.7.    Restructuring Means**. The activities and obligations of the Debtors will be restructured, upon execution and confirmation of the Updated Plan, as provided in this Plan, among others through any of the measures described below:

(i)    **Issuance of New Debt**. The Updated Plan may establish that the Subject Claims shall be replaced by new debt instruments, which shall be issued pursuant to Section 4.2 of this Plan and in accordance with the Updated Plan;

(ii)    **Capitalization**. Within the context of the restructuring of the Raízen Group's capital structure, the Updated Plan may establish capitalization strategies, including an option to convert Subject Claims into equity at Raízen, as well as cash capital increases of the

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

opção de conversão de Créditos Sujeitos em capital social da Raízen, bem como eventuais capitalizações com novos recursos financeiros dos acionistas e/ou terceiros nos termos da Cláusula 4.3 deste Plano;

**(iii) Reorganizações societárias**. O Plano Atualizado poderá prever que as atividades das Devedoras sejam reestruturadas por meio de reorganizações societárias, incluindo cisões, fusões, incorporações, incorporações de ações, *drop downs* ou quaisquer outras formas de reorganização societária, nos termos da Cláusula 4.4 deste Plano.

**2.8.    Implementação do Plano no Exterior**. Após a submissão deste Plano perante o Juízo da RE, independentemente de qualquer ato ou autorização dos Credores Sujeitos, as Devedoras deverão, de boa-fé e de maneira consistente com este Plano, adotar todas as medidas necessárias para obter decisão fazendo-se cumprir o Plano (e qualquer Plano Atualizado sue conceder assistência adicional para continuidade do Procedimento de *Chapter 15*, estando autorizadas a adotar todas as medidas necessárias, por meio do qual deverão buscar uma ou mais decisões do Tribunal de Falências dos Estados Unidos do Distrito Sul de Nova York (a "Corte Norte-Americana de Falências"), incluindo, entre outros remédios, *(i)* reconhecimento da Recuperação Extrajudicial como processo estrangeiro principal ou não principal para sociedades, nos termos do *Bankruptcy Code* dos EUA (a "Decisão Norte-Americana de Reconhecimento da RE"); *(ii)* reconhecimento, aplicação e concessão de pleno vigor e eficácia ao Plano Atualizado dentro da jurisdição dos Estados Unidos da América (a "Decisão de Confirmação *Chapter 15*"); e *(iii)* autorização e direcionamento das respectivas partes a tomarem todas e quaisquer medidas necessárias para dar eficácia aos termos do Plano

shareholders and/or third parties, pursuant to Section 4.3 of this Plan;

**(iii) Corporate reorganizations**. The Updated Plan may provide that the activities of the Debtors may be restructured through corporate reorganizations, including spin-offs, merger, incorporation, equity incorporation, drop downs or any other corporate reorganization structure, pursuant to Section 4.4. of this Plan.

**2.8.    Implementation of the Plan Abroad**. Following submission of this Plan before the EJ Court, regardless of any act or authorization of the Subject Creditors, the Debtors shall, in good faith and consistent with this Plan, adopt all necessary measures to obtain orders enforcing the Plan (and any subsequent Updated Plan) and granting additional assistance through the continuation of the Chapter 15 Proceeding, being authorized to adopt all necessary measures to seek the entry of one or more orders from the United States Bankruptcy Court for the Southern District of New York (the "U.S. Bankruptcy Court"), including, among other relief, *(i)* recognizing the Extrajudicial Restructuring as a foreign main or nonmain proceeding of entities under the U.S. Bankruptcy Code (the "U.S. Recognition Order"); *(ii)* recognizing, enforcing and giving full force and effect to the Updated Plan within the territorial jurisdiction of the United States of America (the "U.S. Enforcement Order"); and *(iii)* authorizing and directing the relevant parties to take any and all actions necessary to give effect to the terms of the Updated Plan, as confirmed by the EJ Court. The Debtors may also initiate and/or proceed with other judicial procedures, extrajudicial or administrative proceedings, whether related to

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 20

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

Atualizado, conforme homologado pelo Juízo da RE. As Devedoras também poderão iniciar e/ou dar prosseguimento a outros procedimentos judiciais, extrajudiciais ou administrativos, relacionados ou não à insolvência, em quaisquer outras jurisdições que não a República Federativa do Brasil e os Estados Unidos da América em apoio de e/ou conforme necessário para a implementação do processo de Recuperação Extrajudicial, e desde que os procedimentos iniciados no exterior não alterem os termos e condições deste Plano e/ou limitem a sua execução, direta ou indiretamente, que seguirá independentemente do processo de reconhecimento em trâmite perante outra jurisdição que não o Brasil. Os Credores Signatários e Credores Aderentes concordam em adotar os atos necessários para e não praticar atos contrários à implementação deste Plano no exterior, incluindo opor-se ou auxiliar qualquer parte a opor-se às medidas requeridas nos procedimentos de reconhecimento nos Estados Unidos da América ou em qualquer outra jurisdição; conforme necessário e desde que as medidas pleiteadas e atos de implementação se limitem à implementação das operações previstas neste Plano e em qualquer Plano Atualizado subsequente.

insolvency or otherwise, in any other jurisdictions other than the Federative Republic of Brazil or the United States of America in support of and/or in furtherance of the implementation of the Extrajudicial Reorganization proceedings; provided that the proceedings initiated abroad shall not change the terms and conditions of this Plan and/or limit its execution, directly or indirectly, which shall follow regardless of the recognition process in progress before a jurisdiction other than Brazil. The Signatory Creditors and the Adhering Creditors agree to adopt the necessary acts to and abstain from promoting any actions contrary to or inconsistent with the implementation of this Plan abroad, including objecting to or assisting any party in objecting to relief sought in the recognition proceedings in the United States of America or any other jurisdiction; as necessary and provided that the relief sought and implementation measures are limited to implementing the transactions provided for in this Plan and in any subsequent Updated Plan.

**2.9. Reserva de Direitos.** Até a integral implementação do Plano Atualizado ou verificação da Data de Resolução do Plano, se aplicável, as Partes concordam irrevogavelmente que nada neste Plano deverá impedir os Credores Signatários (ou Credores Aderentes, conforme aplicável) de protegerem e preservarem seus direitos, prerrogativas e interesses, em qualquer jurisdição, por qualquer meio apropriado e razoável que se fizer necessário, inclusive pelo comparecimento ou pela defesa em qualquer procedimento judicial, bem como pela contestação ou resposta no âmbito de impugnações apresentadas por quaisquer partes, na medida em que tais atos não sejam incompatíveis ou inconsistentes com este Plano.

**2.9. Reservation of Rights.** Until the full implementation of the Updated Plan or the occurrence of the Plan Termination Date, if applicable, the Parties irrevocably agree that nothing in this Plan shall prevent any Signatory Creditor (or Adhering Creditor as the case may be) from protecting and preserving its rights, remedies, and interests, in any jurisdiction, by any reasonable and appropriate means necessary, including by appearing in, or defending against, any judicial proceedings, as well as objecting and/or responding to any challenges by any parties, to the extent not incompatible or inconsistent with this Plan.

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 21

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| **3.  PROCEDIMENTO PARA ESTABELECIMENTO DOS TERMOS DA REESTRUTURAÇÃO** | **3.  RESTRUCTURING TERMS' DEFINITION PROCEEDING** |

**3.1.    Reuniões de Negociação.** As Devedoras e os Credores Sujeitos que assim desejarem deverão se reunir, conforme Cláusula 3.1.1, para *(i.1)* analisar os índices de alavancagem e necessidades operacionais do Grupo Raízen com o objetivo de estabelecer, de comum acordo com as Devedoras, os parâmetros gerais para solucionar o endividamento e necessidade de capitalização do Grupo Raízen; e *(i.2)* a partir do diagnóstico obtido pelas Devedoras e Credores Sujeitos, nos termos do item (i.1) acima, negociar os termos da reestruturação dos Créditos Sujeitos, incluindo novos montantes, juros, vencimentos e demais condições e encargos que respeitem a capacidade de geração de receita das Devedoras, nos termos do item (i.1) supra, observados os meios de reestruturação elencados na Cláusula 2.7.

**3.1.    Negotiation Meetings.** The Debtors and the Subject Creditors, at their discretion, shall meet, as set forth in Section 3.1.1, to *(i.1)* analyze Raízen Group's leverage ratios and operational needs in order to establish, in agreement with the Debtors, the general parameters for addressing Raízen Group's indebtedness and capitalization needs; and *(i.2)* based on the diagnosis obtained by the Debtors and Subject Creditors, as set forth in Section (i.1) above, negotiate the terms of the restructuring of the Subject Claims, including new amounts, interest, maturities, and other conditions and charges that respect the Debtors' revenue generation capacity, pursuant to item (i.1) above, observing the restructuring means set forth in Section 2.7.

3.1.1.  <u>Reuniões entre Devedoras e Credores Sujeitos</u>. As Devedoras e os Credores Sujeitos, de forma individual ou coletiva, se reunirão na forma e no modo combinado entre as partes, com o objetivo de negociar os termos da reestruturação dos Créditos Sujeitos, que será refletido em uma nova versão atualizada do Plano ("<u>Plano Atualizado</u>"). As reuniões deverão ser agendadas com razoável antecedência, bem como deverá ser concedida a oportunidade de participação a todos os Credores Sujeitos.

3.1.1.  <u>Meetings between Debtors and Subject Creditors</u>. The Debtors and the Subject Creditors, individually or jointly, shall meet in the manner and form agreed upon by the parties, with the objective of finalizing the terms of the restructuring of the Subject Claims, which shall be reflected in a new updated version of the Plan ("<u>Updated Plan</u>"). The meetings shall be scheduled with reasonable advance notice, and all Subject Creditors should be given opportunity to participate.

3.1.2.  <u>Resultado das Negociações</u>. Nas reuniões de negociação serão estabelecidos, entre outros termos: *(i)* os termos e condições das Novas Dívidas que venham eventualmente a ser emitidas, se houver, nos termos da Cláusula 4.2.1; *(ii)* os termos e condições de eventual Capitalização dos Créditos Sujeitos, se houver, nos termos da Cláusula 4.3.1; *(iii)* os termos e condições de eventuais alienações de ativo, de operações de financiamento ou de segregação de ativos, nos termos da Cláusula 4.4; e *(iv)* os termos finais do

3.1.2.  <u>Outcome of the Negotiations</u>. The following terms, among others, will be established during the negotiation meetings: *(i)* the terms and conditions of the New Debts that may eventually be issued, if any, in accordance with Section 4.2.1; *(ii)* the terms and conditions of the possible Capitalization of Subject Claims, if any, in accordance with Section 4.3.1; *(iii)* the terms and conditions of the possible operation of sale of assets, of financing or segregation of assets, pursuant to Section 4.4; and *(iv)* the final terms of

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 22

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Plano Atualizado, bem como eventuais matérias que sejam necessárias para implementar a Recuperação Extrajudicial e o Plano Atualizado. | the Updated Plan, as well as any matters that may be necessary to implement the Extrajudicial Reorganization and the Updated Plan. |
| 3.1.3.  Monitoramento dos Termos de Adesão**.** As Devedoras assumem o compromisso de disponibilizar, mediante solicitação escrita de qualquer Credor Sujeito, a cada 15 Dias Corridos após a Data de Protocolo da RE, relatório circunstanciado acerca da evolução dos Termos de Adesão ao Plano ou ao Plano Atualizado, o qual deverá conter, no mínimo: (i) a identificação individualizada de cada Credor Aderente; (ii) o valor do Crédito Sujeito de cada Credor Aderente; (iii) o percentual de quórum atingido em relação ao total de Créditos Sujeitos; e (iv) a documentação comprobatória pertinente, incluindo, mas não se limitando a, cópia dos Termos de Adesão devidamente firmados pelos respectivos Credores Aderentes, acompanhados de prova de poderes dos signatários, quando aplicável | 3.1.3.  Monitoring of the Adhesion Forms. The Debtors undertake to periodically submit, in the records of the Extrajudicial Reorganization proceeding, every 15 Calendar Days following the ER Filing Date, a detailed report regarding the progress of the Adhesion Forms to the Plan or the Updated Plan, which report shall contain, at a minimum: (i) the individual identification of each Adhering Creditor; (ii) the amount of the Subject Claim held by each Adhering Creditor; (iii) the percentage of quorum achieved in relation to the total Subject Claims; and (iv) the relevant supporting documentation, including, but not limited to, copies of the Adhesion Forms duly executed by the respective Adhering Creditors, together with evidence of the signatories' authority, where applicable. |
| 3.1.4.  <u>Apoio ao Plano Atualizado e Direito de Recusa.</u> Uma vez apresentado o Plano Atualizado, cada Credor Sujeito deverá, de forma independente, analisar as disposições e, caso esteja de acordo com todos os seus termos, apresentar novo termo de adesão ao Plano Atualizado, independentemente de já terem assinado ou aderido ao Plano e, para evitar dúvidas, nenhum Credor Sujeito (incluindo qualquer Credor Signatário ou Credor Aderente) será considerado como tendo aceitado, nem estará obrigado a aceitar, o Plano Atualizado na ausência de manifestação expressa de aceitação nesse sentido, mantendo o direito de não apoiar qualquer Plano Atualizado, sem qualquer obrigação de apresentar justificativa para tanto, observado o disposto na Cláusula 2.1.1. Ao final do prazo previsto no art. 163, §7º da LFR, o Plano Atualizado deverá contar com subscrição e adesão expressa de Credores Sujeitos titulares de Créditos Sujeitos que, em conjunto, representem no mínimo, a maioria dos Créditos Sujeitos, nos termos do caput do art. 163 | 3.1.4.  <u>Updated Plan Support and Right to Refuse.</u> Once the Updated Plan has been presented, each Subject Creditors shall independently analyze the terms and conditions and, if such Subject Creditor agrees to all its terms, submit their acceptance of the Updated Plan by means of a new adhesion term, regardless of whether they have already executed or adhered to this Plan, and for the avoidance of doubt, no Subject Creditor (including no Signatory or Adherent Creditor) shall be deemed or required to accept the Updated Plan absent an express manifestation of acceptance therefore, and each Signatory Creditor and Adhering Creditor retains the absolute right not to support any Updated Plan, without any obligation to provide justification, subject to Section 2.1.1. By the end of the period set forth in Article 163, paragraph 7, of the Brazilian Bankruptcy Law, the Updated Plan shall have the express subscription and acceptance of Subject Creditors holding Subject Claims that, together, represent at least the majority of the Subject Claims, as provided for in the caput of |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 23

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

da LFR. Para que não restem dúvidas, a adesão dos Credores Signatários e/ou Credores Aderentes a este Plano não implica qualquer tipo de anuência, aprovação ou consentimento prévio por parte dos Credores Signatários e/ou Credores Aderentes com relação ao Plano Atualizado, de modo que a homologação do Plano Atualizado dependerá de aprovação expressa do Plano Atualizado pela maioria dos Credores Sujeitos, nos termos do caput do art. 163 da LFR, podendo cada Credor Signatário e Credor Aderente, individualmente e a seu exclusivo critério, aprovar ou não o Plano Atualizado, observado o disposto na Cláusula 2.1.1.

Article 163 of the Brazilian Bankruptcy Law. For the avoidance of doubt, adherence by the Signatory Creditors and/or Adhering Creditors to this Plan does not imply any type of agreement, approval, or prior consent on the part of the Signatory Creditors and/or Adhering Creditors with respect to the Updated Plan, such that the confirmation of the Updated Plan will depend on the express approval of the Updated Plan by the majority of the Subject Creditors, pursuant to the head provision of Article 163 of the Brazilian Bankruptcy Law, and each Signatory Creditor and Adhering Creditor may, individually, at its sole discretion, approve or not the Updated Plan, subject to Section 2.1.1.

3.1.5. Caso as Devedoras não obtenham adesões suficientes ao Plano Atualizado da maioria dos Créditos Sujeitos em até 90 (noventa) Dias Corridos contados da Data do Protocolo da RE, o presente Plano será rescindido bem como será cancelada a adesão dos Credores Aderentes. As Devedoras deverão apresentar manifestação notificando o Juízo da RE para resolução do Plano e encerramento do processo em curso ou conversão em um pedido de recuperação judicial, nos termos do art. 163, §7º, da LFR. Todos os direitos das Devedoras, dos Credores Signatários e dos Credores Aderentes são preservados e/ou reestabelecidos, conforme aplicável, com um Evento de Resolução e extinção deste procedimento.

3.1.5. If the Debtors do not obtain sufficient adhesions in an Updated Plan from the majority of the Subject Claims within 90 (ninety) Calendar Days from the Filing Date, this Plan will be terminated and the adherence of Adhering Creditors shall be cancelled. The Debtors shall submit a statement notifying the EJ Court to terminate the Plan and ongoing proceedings or convert them into a request for judicial reorganization, pursuant to Article 163, paragraph 7, of the Brazilian Bankruptcy Law. All of the rights of the Debtors, Signatory Creditors and Adherent Creditors shall be preserved and/or reinstated as applicable upon a Termination Event and termination of the ongoing proceedings.

**3.2.** As Devedoras negociarão de boa-fé com os Credores Sujeitos os termos e condições do Plano Atualizado.

**3.2.** The Debtors will negotiate in good faith with the Subject Creditors the terms and conditions of the Updated Plan.

**3.3.** As Devedoras continuarão operando regularmente no curso normal dos negócios, devendo as Devedoras abster-se de onerar seus ativos e/ou incorrer em novas dívidas, salvo (i) se realizado no curso normal dos negócios do Grupo Raízen, ou (ii) mediante autorização por escrito de Credores Sujeitos representando ao menos a maioria dos Créditos Sujeitos.

**3.3.** The Debtors will continue operating regularly in the normal course of business, and shall not encumber their assets nor incur new debts, except (i) in the ordinary course of the Raízen Group's business; or (ii) with the written authorization of Subject Creditors representing at least the majority of Subject Claims.

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 24

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| **4. REESTRUTURAÇÃO DO GRUPO RAÍZEN E SEUS CRÉDITOS SUJEITOS** | **4. RESTRUCTURING OF THE RAÍZEN GROUP AND ITS SUBJECT CLAIMS** |
| **4.1. Suspensão dos Pagamentos dos Créditos Sujeitos**. Nos termos dos arts. 6º e 163, §§ 7º e 8º, da LFR, os Credores Sujeitos não poderão promover qualquer medida para satisfação de Créditos Sujeitos após a Data do Protocolo da RE, e até a Data da Sentença de Homologação do Plano Atualizado ou a Data de Resolução do Plano, o que ocorrer primeiro, devendo se abster, seja no Brasil ou em outra jurisdição, de ajuizar ou prosseguir execuções, bem como praticar atos que alterem sua posição creditória existente na Data do Protocolo da RE, qualquer ato de cobrança, exercício de direito de compensação de crédito, previsto em lei ou em contrato, retenção, arresto, penhora, sequestro, busca e apreensão e/ou constrição judicial ou extrajudicial sobre os bens das Devedoras, de suas investidas ou de suas Controladas, observado o quanto disposto na Cláusula 2.3. | **4.1. Suspensions of Payment of Subject Claims**. Pursuant to articles 6 and 163, paragraphs 7 and 8, of the Brazilian Bankruptcy Law, the Subject Creditors shall not promote any enforcement actions seeking the satisfaction of their respective Subject Claims after the EJ Filing Date and until the EJ Plan Termination Date, having to refrain from, whether in Brazil or in any other jurisdiction, filing or continuing enforcement actions, as well as any form of collection, set-off or compensation of claims, retention, seizure, attachment, search and seizure, and/or judicial or extrajudicial constraint on the assets of the Debtors, their investees, or their Subsidiaries, subject to the provisions of Clause 2.3. |
| **4.2. Emissão de Novas Dívidas**. As Devedoras emitirão novos instrumentos de dívidas e/ou aditarão os instrumentos de dívida existentes, em termos a serem estabelecidos durante as negociações e refletidos no Plano Atualizado, os quais, caso emitidos ou aditados, serão de titularidade dos Credores Sujeitos, em substituição aos termos originais contratados para os respectivos Créditos Sujeitos, em proporções a serem estabelecidas no âmbito do Plano Atualizado, após a Data da Sentença de Homologação do Plano ("Novas Dívidas"). | **4.2. Issuance of New Debt.** The Debtors shall issue new debt instruments and/or arrange for the amendment of existing debt instruments, under terms to be established during the negotiations, which shall be held by the Subject Creditors, replacing the original terms contracted for the respective Subject Claims, in proportions to be negotiated in the context of the Updated Plan, following the ER Confirmation Order Date ("New Debts"). |
| 4.2.1. Termos e Condições das Novas Dívidas. Os termos e condições das Novas Dívidas a serem apresentados no Plano Atualizado deverão refletir, no mínimo: | 4.2.1. Terms and Conditions of the New Debts. The terms and conditions of the New Debts shall include, at a minimum: |
| *(i)* o valor total das emissões de Novas Dívidas; | *(i)* the total value of the New Debts issuances; |
| *(ii)* as regras de subscrição por Créditos Sujeitos; | *(ii)* subscription rules for Subject Claims; |
| | *(iii)* the payment dates and the respective schedules; |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 25

*(iii)* as datas de pagamento e o regime completo de vencimentos;

*(iv)* índices de correção e/ou remuneração;

*(v)* obrigações não-financeiras, declarações, autorizações, *convenants* e demais condições relevantes para os instrumentos;

*(vi)* quaisquer garantias reais ou pessoais atreladas às Novas Dívidas; e

*(vii)*     a natureza dos instrumentos a serem oferecidos, incluindo eventuais opções alternativas.

4.2.2.   <u>Moeda</u>. As Novas Dívidas poderão ser emitidas em Real, Dólares ou Euros de modo que cada Credor Sujeito poderá conservar a variação cambial dos Títulos Existentes, nos termos do art. 163, §5º, da LFR.

**4.3.    Capitalização.** As Devedoras e os Credores Sujeitos deverão avaliar alternativas para otimização da estrutura de capital do Grupo Raízen, considerando (i) as projeções de fluxo de caixa e capacidade de geração de receita operacional; (ii) as condições de mercado e rentabilidade do setor; (iii) as demais obrigações prioritárias, líquidas e ilíquidas de pagamento; e (iv) oportunidades de investimentos em novos recursos e conversão de créditos em capital, com o objetivo de readequar a estrutura de capital do Grupo Raízen ("<u>Capitalização</u>"), o que deverá ser objeto de discussão em reunião a ser realizada nos termos da Cláusula 3.1.1 acima. Para fins de clareza, nenhum Credor Sujeito será obrigado a aportar novos recursos ou qualquer outra forma de financiamento sem o seu consentimento expresso.

4.3.1.   <u>Termos e Condições da Eventual Capitalização</u>. O Plano Atualizado deverá, no mínimo, conter *(i)* forma do aumento de capital; *(ii)* tratamento do direito de preferência; *(iii)* quantidade e natureza das ações da Raízen que

---

*(iv)* indexation and/or interest rates;

*(v)* non-financial obligation, representations, authorizations, covenants and additional relevant conditions for the instruments;

*(vi)* any guarantees or collateral to support the New Debt; and

*(vii)*     the nature of the instruments to be offered, including alternative options, if applicable.

4.2.2.   <u>Currency</u>. The New Debts may be issued in Reais, Dollars or Euros, so each Subject Creditor may preserve the exchange rate variation of the Existing Titles, as set forth in Article 163, paragraph 5, of the Brazilian Bankruptcy Law.

**4.3.    Contribution.** The Debtors and the Subject Creditors shall evaluate alternatives to optimize the capital structure of the Raízen Group, considering (i) the cash flow projections and the operational revenue generation capacity; (ii) the market conditions and industry indexes; (iii) other priority liquid and illiquid payment obligations; and (iv) investment opportunities with new money and conversion of claims into equity, to allow the restructuring of Raízen Group's capital structure ("<u>Contribution</u>"), which should be discussed within the meetings referred in Section 3.1.1 above. For avoidance of doubt, no Subject Creditor shall be required to provide any new money or other financing without the express consent of such Subject Creditor.

4.3.1.   <u>Terms and Conditions for Possible Capitalization</u>. The Updated Plan shall, at a minimum, contain *(i)* the form of capital increase; *(ii)* the treatment of preemptive rights; *(iii)* the number and nature of the Raízen shares to be

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 26

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

serão emitidas; *(iv)* proposta de regramento para estabelecimento de preço de emissão; *(v)* indicação das anuências necessárias, o que deverá ser objeto de discussão em reunião a ser realizada nos termos da Cláusula 3.1.1 acima.

**4.4.    Reorganizações Societárias.** Durante as negociações, serão avaliadas operações de reorganização societária, incluindo cisões, fusões, incorporações, incorporações de ações, *drop downs* ou quaisquer outras formas de reorganização societária, bem como alienações ou disposições de ativos com o objetivo de fortalecer a atratividade de investimentos nas Devedoras, devendo ser especificados no Plano Atualizado.

4.4.1. Governança e Processo de Aprovação de Reorganizações Societárias. A avaliação, negociação e implementação de operações de reorganização societárias no Plano Atualizado: (i) serão discutidas nas reuniões previstas na Cláusula 3.1.1 acima, com apresentação às Partes das informações necessárias, incluindo análises econômico-financeiras, laudos de avaliação existentes, pareceres e minutas contratuais relevantes; e (ii) deverão ser incluídas no Plano Atualizado para aprovação pelos Credores Sujeitos, observado o quórum previsto no art. 163, caput, da LFR, excluídos os Créditos Intercompany para fins de cálculo de quórum.

4.4.2.    Compatibilidade. Nenhum evento posterior a este Plano poderá (i) alterar os direitos dos Credores Sujeitos previstos na versão vigente do Plano, salvo mediante aprovação em novo Plano Atualizado; (ii) conferir tratamento privilegiado a qualquer credor que não seja titular de Crédito Sujeito, salvo se permitido por este Plano ou pelo Plano Atualizado, ou que viole as previsões da LFR; e (iii) afetar a continuidade das atividades essenciais das Devedoras sem a aprovação prevista na Cláusula 4.4.1.

**4.5.    Pagamento de Créditos Intercompany**. Os Créditos Intercompany serão reestruturados,

issued; and *(iv)* a proposed rule for establishing the issuance price; *(v)* indication of the necessary authorizations, which should be discussed within the meetings referred in Section 3.1.1 above.

**4.4.    Corporate Reorganizations.** During the negotiation, the operations related to corporate reorganizations, including spin-offs, merger, consolidation, merger of shares, drop downs or any other corporate reorganization, as well as the transfer or disposition of assets shall be evaluated with the purpose to increase the attractiveness of investments in the Debtors, which shall be detailed under the Updated Plan.

4.4.1. Governance and Approval Process of Corporate Reorganizations. The evaluation, negotiation, and implementation of corporate reorganizations in the Updated Plan: (i) shall be discussed in the meetings provided for in Clause 3.1.1 above, with the presentation to the Parties of the necessary information, including financial and economic analyses, existing valuation reports, opinions, and relevant draft agreements; (ii) shall be included in the Updated Plan for approval by the Subject Creditors, respected the quorum provided under Article 163, caput, of the Brazilian Bankruptcy Law, excluding Intercompany Claims for quorum calculation purposes.

4.4.2. Consistency. No event subsequent to this Plan shall (i) modify the rights of the Subject Creditors provided for in the then-current version of the Plan, unless approved under a new Updated Plan; (ii) grant preferential treatment to any creditor that is not the holder of a Subject Claim, unless allowed in this Plan or in the Updated Plan, or in form that violates the provisions set forth in the Brazilian Bankruptcy Law; or (iii) affect the continuity of the Debtors' essential activities without the approval required under Clause 4.4.1.

**4.5.    Payment of Intercompany Claims**. The Intercompany Claims shall be restructured, being

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 27

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

não podendo ser cobrados, executados ou de qualquer forma demandados ou tratados com qualquer tipo de privilégio. O pagamento dos Créditos Intercompany ficará subordinado integralmente ao pagamento integral dos demais Créditos Sujeitos, assegurando-se a prioridade destes últimos na ordem de pagamento.

certain that those claims shall not be charged, executed or in any form collected or treated with any type of privilege. Payment of the Intercompany Claims shall be fully subordinated to the full payment of all other Subject Claims, ensuring that the latter have priority in the payment hierarchy.

**4.6. Proibição da Distribuição de Dividendos**. Desde a Data de Protocolo da RE até a Data da Sentença de Homologação do Plano, as Devedoras não deverão distribuir, pagar ou declarar quaisquer lucros, juros sobre capital próprio, dividendos ou distribuições sobre quaisquer participações societárias, a sócios ou acionistas, seja em dinheiro, bens ou de outra forma, em aplicação análoga do artigo 6-A da LFR.

**4.6. Prohibition on the Distribution of Dividends**. From the ER Filing Date until the date of the ER Confirmation Order Date, the Debtors shall not distribute, pay, or declare any profits, interest on equity, dividends, or other distributions in respect of any equity interests to partners or shareholders, whether in cash, in kind, or otherwise, by analogy to Article 6-A of the Brazilian Bankruptcy Law.

## 5. DECLARAÇÕES E GARANTIAS

## 5. REPRESENTATIONS AND WARRANTIES

**5.1. Declarações dos Credores Signatários e Aderentes**. Cada um dos Credores Signatários e Aderentes declara e garante às Devedoras, isoladamente e não solidariamente, que:

**5.1. Representations of the Signatory or Adherent Creditors**. Each of the Signatory or Adherent Creditors hereby represents and warrants to the Debtors, severally, and not jointly, that:

5.1.1. Tal Credor Signatário ou Aderente, na medida aplicável, tem pleno poder e autoridade para aderir a este Plano;

5.1.1. Such Signatory or Adherent Creditor, to the extent applicable, has the full power and authority to adhere to this Plan;

5.1.2. Tal Credor Signatário ou Aderente foi assessorado por profissionais que reputou capazes para avaliar os termos e condições deste Plano e seus anexos.

5.1.2. Such Signatory Creditor or Adherent Creditor acknowledges that it was advised by professionals that were reputed capable of evaluating the terms and conditions of this Plan and its schedules.

**5.2. Declarações e Garantias das Devedoras.** As Devedoras declaram e garantem aos Credores Sujeitos que:

**5.2. Debtors Representations, and Warranties**. The Debtors represent and warrant to the Subject Creditors, that:

5.2.1. Todas as Devedoras são sociedades devidamente constituídas e existentes nos termos das respectivas Leis e as Devedoras são sociedades devidamente autorizadas a conduzir os seus negócios e manter os seus ativos;

5.2.1. All Debtors are companies duly organized and existing under the respective governing Laws and the Debtors are companies duly authorized to conduct their business and maintain their assets;

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 28

5.2.2. Todas as Devedoras possuem todas as autorizações necessárias para assumir suas respectivas obrigações conforme previstas neste Plano, e cumpriram todas as obrigações legais e outras obrigações necessárias para implementação deste Plano e, exceto conforme aqui descrito, nenhuma autorização governamental ou de terceiros é necessária para a celebração deste Plano;

5.2.2. All Debtors possess all necessary authorizations to undertake their respective obligations as provided for in this Plan, and have carried out all legal and other obligations necessary for the implementation of this Plan, and, except as described herein, no governmental or third-party authorizations are necessary for this Plan;

5.2.3. Todas as Devedoras estão cumprindo as Leis Aplicáveis aos seus negócios e ativos e não estão em violação de qualquer decisão de qualquer tribunal judicial ou arbitral ou qualquer regulamento ou ordem emitida por qualquer agência governamental aplicável aos seus negócios e ativos, e que tenha ou que provavelmente teria um efeito material adverso sobre esta Recuperação Extrajudicial; e

5.2.3. All Debtors are in compliance with the Applicable Laws to their businesses and assets and are not in violation of any decision of any court or arbitral tribunal or of any regulation or order issued by any governmental agency applicable to their businesses and assets, and which has or is reasonably likely to have a material adverse effect on this Extrajudicial Restructuring; and

5.2.4. A celebração deste Plano está em conformidade com as Leis aplicáveis aos negócios e ativos das Devedoras e não viola qualquer decisão de qualquer tribunal judicial ou arbitral ou qualquer regulamento ou ordem emitida por qualquer órgão governamental aplicável aos negócios e bens das Devedoras, e que tenha um efeito material adverso sobre esta Recuperação Extrajudicial.

5.2.4. The execution of this Plan complies with the relevant Laws applicable to the Debtors' business and assets and does not violate any decision of any court or arbitral tribunal or any regulation or order issued by any governmental agency applicable to the Debtors' businesses and assets, and which has a material adverse effect on this Extrajudicial Restructuring.

5.2.5. Não há outros créditos devidos pelas Devedoras que, em razão de sua natureza e semelhantes condições de pagamento, devessem ser considerados Créditos Sujeitos, nos termos do art. 163, da LFR, conforme definição da Cláusula 2.2 deste Plano.

5.2.5. There are no other claims due by the Debtors that, because of its nature and similar payment conditions, should be considered Subject Claims, pursuant to Article 163, of the Brazilian Bankruptcy Law, in accordance with the definition provided in Section 2.2 of this Plan.

**5.3.    Reconhecimento**. As Partes reconhecem e concordam que este Plano não modifica, prejudica ou afeta, sob qualquer aspecto, todas e quaisquer obrigações, compromissos ou acordos relativos a outros créditos que não os Créditos Sujeitos, bem como quaisquer obrigações, compromissos ou acordos assumidos pelas Devedoras com seus fornecedores, parceiros comerciais, clientes e quaisquer outros credores que não sejam

**5.3.    Acknowledgement**. The Parties acknowledge and agree that this Plan does not modify, impair or affect, in any way, any and all obligations, covenants or agreements related to claims other than the Subject Claims, as well as any and all obligations, covenants or agreements undertaken by the Debtors towards its suppliers, business partners, customers and any other creditors that are not holders of the Subject Claims

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| detentores dos Créditos Sujeitos no presente instrumento, ainda que tais outros credores também sejam Credores Sujeitos ou Credores Aderentes em razão de também serem titulares de Créditos Sujeitos. | restructured hereto, even if such other creditors are also Subject Creditors or Adhering Creditors by virtue of also holding Subject Claims. |

| | |
|---|---|
| **6.    RESOLUÇÃO DO PLANO** | **6.    PLAN TERMINATION** |
| **6.1.**    O Plano será resolvido de pleno direito, perdendo integral e imediatamente qualquer efeito, no momento em que se verificar, *ipso facto*, qualquer um dos seguintes eventos (cada um, um "Evento de Resolução"), momento este que será considerada a "Data de Resolução do Plano": | **6.1.**    The Plan shall be automatically terminated by operation of law, and will entirely and immediately miss any effect, at the moment when it is verified, *ipso facto,* any of the following events (each, a "Termination Event"), which moment shall be deemed the "Plan Termination Date": |
| *(i)* a Data do Protocolo da RE não ocorrer em até 2 (dois) Dias Corridos contados da Data de Assinatura; | *(i)* the EJ Filing Date does not occur within 2 (two) Calendar Days counted from the Signing Date; |
| *(ii)* a data em que o Juízo da RE profira decisão decidindo por não conceder o período de suspensão de que trata os arts. 6º e 163, §§ 7º e 8º, da LFR, salvo se tal decisão for suspensa, revertida ou de qualquer forma obstada em até 10 (dez) Dias Úteis contados da referida decisão; | *(ii)* the date in which the EJ Court issues an order deciding not to grant the stay period provided for in Articles 6 and 163, paragraphs 7 and 8, of the Brazilian Bankruptcy Law, unless such order is suspended, reversed or otherwise stayed within 10 (ten) Business Days as from the issuance of the order; |
| *(iii)* qualquer uma das Devedoras e/ou Raízen Argentina (a) declarar-se falida ou apresentar pedido de autofalência; ou (b) ser objeto de um pedido de falência e tal procedimento de falência não tiver sido contestado, elidido ou evitado no prazo legal; ou (c) apresentar pedido de recuperação judicial ou outro pedido semelhante, sendo certo que esta Cláusula não se aplicará a qualquer procedimento de reestruturação apresentado de acordo com os termos deste Plano; | *(iii)* any of the Debtors and/or Raizen Argentina (a) declares itself bankrupt or voluntarily files for bankruptcy liquidation (falência); or (b) is subject to a request for bankruptcy, and the bankruptcy procedure has not been contested, avoided, delayed, or released within the relevant legal term; or (c) file for a judicial reorganization proceeding (recuperação judicial) or other similar procedure; provided that this Section does not apply to the commencement of any restructuring proceeding in accordance with terms hereof; |
| *(iv)* ocorrer o decurso do prazo improrrogável de 90 (noventa) Dias Corridos contados da Data do Protocolo da RE sem que seja obtida a adesão ao Plano Atualizado de | *(iv)* the lapse of the non-extendable period of 90 (ninety) Calendar Days counted from the EJ Filing Date without consent to the |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 30

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

Créditos Sujeitos no quórum previsto no art. 163 da LFR;

*(v)* Credores Signatários titulares de mais de 60% (sessenta por cento) dos Créditos Signatários manifestarem-se pela resolução deste Plano, mediante envio de notificação às Devedoras, observado que a resolução do Plano somente terá efeitos após 3 (três) Dias Úteis contados da entrega da respectiva notificação;

*(vi)* qualquer das declarações e garantias prestadas pelas Devedoras nos termos da Cláusula 5.2 deste Plano revelar-se falsa, incorreta ou enganosa, mediante envio de notificação subscrita por Credores Signatários titulares de ao menos 20% (vinte por cento) dos Créditos Signatários;

*(vii)* as Devedoras descumprirem qualquer obrigação prevista neste Plano, mediante envio de notificação subscrita por Credores Signatários titulares de ao menos 20% (vinte por cento) dos Créditos Signatários;

*(viii)* as Devedoras ajuízem qualquer medida arbitral, judicial ou administrativa que tenha por objeto contestar, direta ou indiretamente, a validade, existência ou exigibilidade de Créditos Sujeitos;

*(ix)* a realização de reorganizações societárias, alienações de ativos relevantes ou mudança de Controle das Devedoras que comprometam de forma substancial a capacidade das Devedores de cumprir com as obrigações previstas neste Plano ou no Plano Atualizado;

*(x)* seja ajuizada ação judicial com o objetivo de promover a constrição de bens das Devedoras, inclusive dinheiro, em valor superior a US$ 25.000.000,00 (vinte e

Updated Plan of Subject Creditors in the quorum provided under Article 163 of the Brazilian Bankruptcy Law;

*(v)* Signatory Creditors holding more than sixty percent (60%) of the Signatory Claims express to terminate the Plan, upon the delivery of a notice to the Debtors, provided that such termination will only produce its legal effects after 3 (three) Business Days following the delivery of the notice;

*(vi)* any of the representations and warranties made by the Debtors pursuant to Section 5.2 of this Plan proves to be false, inaccurate, or misleading, upon the delivery of a notice executed by Signatory Creditors representing at least 20% (twenty percent) of the Signatory Claims;

*(vii)* the Debtors breach any obligation set forth in this Plan, upon the delivery of a notice executed by Signatory Creditors representing at least 20% (twenty percent) of the Signatory Claims;

*(viii)* the Debtors commence any arbitral, judicial or administrative proceeding seeking to challenge, directly or indirectly, the validity, existence, or enforceability of the Subject Claims;

*(ix)* the implementation of any corporate reorganization, disposition of material assets, or change of Control of the Debtors that materially compromises the Debtors' ability to perform the obligations set forth in this Plan or the Updated Plan;

*(x)* any legal proceeding with the purpose to attach or otherwise seize assets of the Debtors, including cash, in an amount exceeding twenty five million dollars (USD 25,000,000.00) is filed, unless such

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 31

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

cinco milhões de Dólares), que não seja revertida, suspensa ou de qualquer forma obstada em até 10 (dez) Dias Úteis, mediante envio de notificação subscrita por Credores Signatários titulares de ao menos 20% (vinte por cento) dos Créditos Signatários; ou

*(xi)* caso as Devedoras contraiam qualquer financiamento debtor-in-posession (DIP) superior em classificação ou que seja garantido por ônus que tenham prioridade sobre os Credores Sujeitos, sem o consentimento prévio por escrito de Credores Sujeitos representando pelo menos 33% (trinta e três por cento) dos Créditos Sujeitos.

proceeding is reversed, suspended, or otherwise stayed within 10 (ten) Business Days, upon the delivery of a notice executed by Signatory Creditors representing at least 20% (twenty percent) of the Signatory Claims; or

*(xi)* in the event that Debtors incur in any debtor-in-possession (DIP) financing ranking senior to, or that is secured by liens that have priority over the Subject Creditors without the prior written consent of Subject Creditors representing at least 33% (thirty-three percent) of the Subject Claims.

**6.2.** As Devedoras comprometem-se a peticionar imediatamente ao Juízo da RE requerendo a extinção da Recuperação Extrajudicial caso se verifique qualquer um dos Eventos de Resolução, podendo os Credores Signatários ou Credores Aderentes fazê-lo caso as Devedoras deixem de peticionar neste sentido.

**6.2.** The Debtors undertake to immediate file a petition with the EJ Court requesting the termination of the Extrajudicial Restructuring in the event that any of the Termination Events occurs, provided that the Signatory Creditors or Adherent Creditors may do so if the Debtors fail to file such petition.

**6.3.** Não obstante qualquer disposição em contrário aqui prevista, no momento do protocolo do Plano Atualizado perante o Juízo da RE pelas Devedoras, o presente Plano será automaticamente resilido, independentemente de aviso prévio (tornando-se imediatamente sem quaisquer efeitos) exclusivamente em relação a qualquer Credor Signatário ou Credor Aderente que não tenha previamente fornecido, por escrito, seu consentimento, aprovação, apoio ou adesão ao Plano Atualizado.

**6.3.** Notwithstanding anything to the contrary provided herein, upon the filing of the Updated Plan before the ER Court by the Debtors, this Plan shall terminate automatically without notice (and immediately be voided of any effect) solely with respect to the Signatory Creditor and Adhering Creditor who did not provide its prior written consent, approval, support or adhesion to the Updated Plan.

## 7.  DISPOSIÇÕES DIVERSAS

## 7.  MISCELLANEOUS

**7.1.    Implementação**. De forma consistente com os termos e condições deste Plano, mas sujeito à aprovação de qualquer Plano Atualizado pelos Credores Sujeitos, as Devedoras deverão tomar

**7.1.    Implementation**. Consistent with the terms and conditions of this Plan, but subject to the approval any Updated Plan by the Subject Creditors, the Debtors may take any actions and

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| quaisquer medidas e celebrar quaisquer acordos e outros documentos que, em forma e substância, possam ser necessários ou adequados para dar eficácia aos termos e condições deste Plano. | execute any agreements and other documents that, in form and substance, may be necessary or appropriate to effectuate the terms and conditions of this Plan. |
| **7.2. Suspensão dos Direitos de Execução.** Observada a Cláusula 6ª deste Plano, os titulares de Créditos Sujeitos não poderão, enquanto vigente este Plano e até a Data de Resolução do Plano, se aplicável, executar ou causar a execução, excutir ou causar a excussão de qualquer garantia ou valor em relação aos Créditos Sujeitos, ressalvadas as garantias fidejussórias e fiduciárias que permanecem preservadas nos termos do art. 49, §1º da LFR, bem como de qualquer forma compensar os Créditos Sujeitos com eventuais valores de titularidade das Devedoras | **7.2. Suspension of Enforcement Rights.** Subject to Clause 6 of this Plan, the holders of Subject Claims shall not, while this Plan is in effect and until the Plan Termination Date, if applicable, enforce or cause the enforcement, foreclose or cause the foreclosure of any collateral or amount related to the Subject Claims, exempting the fiduciary liens and guarantees that are preserved pursuant to Article 49, §1st of the Brazilian Bankruptcy Law, as well as the set-off of the Subject Claims with eventual amounts that are held by the Debtors. |
| **7.3. Compromisso de Não Declaração de Vencimento Antecipado ou de Resilição de Contratos.** Enquanto vigente este Plano, os Credores Signatários e os Credores Aderentes se obrigam a não exercer quaisquer prerrogativas contratuais que afetem a execução ordinária de demais contratos celebrados com as Devedoras em função do ajuizamento da Recuperação Extrajudicial, devendo se abster de exercer, dentre outras, as prerrogativas de declaração de vencimento antecipado, de aceleração, de rescisão, de interrupção ou redução das prestações, de limitação de direitos contratuais e de cancelamento de convênios de renovação. Para fins de clareza, o compromisso assumido não se aplica às Operações de Clearing, as quais poderão ser aceleradas ou vencidas antecipadamente ou quaisquer outros direitos e prerrogativas exercidos, conforme aplicável, nos termos previstos nos contratos e regulamentos que regem as Operações de Clearing ou ainda nas hipóteses de resolução do Plano previstas na Cláusula 6 a seu exclusivo critério. | **7.3. Commitment Not to Accelerate or Terminate Contracts.** While this Plan is in effect, the Signatory Creditors and Adherent Creditors undertake not to exercise any contractual prerogatives that affect the ordinary performance of other contracts entered into with the Debtors as a result of the filing of the Extrajudicial Reorganization and shall refrain from exercising, among others, the prerogatives of declaring early maturity, acceleration, termination, interruption or reduction of installments, limitation of contractual rights and cancellation of renewal agreements. For the avoidance of doubt, the commitment undertaken does not apply to the Clearing Transactions, which may be accelerated or declared immediately due and payable, or in relation to which any other rights and prerogatives may be exercised, as applicable, in accordance with the agreements and regulations governing the Clearing Transactions or in the events of termination of the Plan set forth in Clause 6, at their sole discretion. |
| **7.4. Divisibilidade**. Qualquer invalidade ou anulação de qualquer disposição deste Plano não causará a anulação ou invalidade das demais disposições válidas do Plano, cada uma das quais permanecerá em pleno vigor e efeito na forma | **7.4. Severability.** Any invalidity or annulment of any provision of this Plan shall not cause the annulment or invalidity of the valid provisions of the Plan, each of which shall remain in full force and effect as agreed**.** The exclusion of any Debtor |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 33

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| convencionada. A exclusão de qualquer Devedora da Recuperação Extrajudicial, por qualquer motivo, não causará a anulação ou invalidade das demais disposições válidas do Plano para as demais Devedoras. | from the Extrajudicial Restructuring shall not cause the annulment or invalidity of the valid provisions of the Plan towards the other Debtors. |
| **7.5. Cessão e Negociação de Créditos Sujeitos.** Este Plano não altera as disposições a respeito de cessão ou transferência de créditos originalmente constantes em contrato ou em lei com relação aos Créditos Sujeitos, sendo certo que eventual cessão de Créditos Signatários ou Créditos Aderentes não tornará sem efeito a adesão ao Plano na Data de Protocolo da RE ou na data de entrega do Termo de Adesão, nos termos da Cláusula 7.11. | **7.5. Assignment and Trading of Subject Claims**. This Plan does not alter the legal or contractual provisions related to credit assignment or transfer with respect to Subject Claims, being certain that the assignment of Signatory Claims or Adhering Claims will not void the respective adhesion to the Plan in the ER Filing Date or in the date in which the Adhesion Term was executed, pursuant to Cláusula 7.11. |
| **7.6. Cessão de Créditos Intercompany.** Os Créditos Intercompany, ainda que transferidos a terceiros não integrantes do mesmo grupo econômico das Devedoras, não integram e não podem integrar o quórum de deliberação e aprovação do Plano, eventuais aditivos, conforme art. 43 e 163, § 3º, inciso II da LFR. | **7.6. Assignment of Intercompany Claims**. The Intercompany Claims, even if transferred to third parties that are not a part of the same economic group of the Debtors, are not a part and cannot be a part of the deliberation and approval of the Plan, eventual amendments, pursuant to art. 43 and 163, paragraph 3rd, item II, of the Brazilian Bankruptcy Law. |
| **7.7. Reservas.** A adesão a este Plano por parte dos Credores Signatários e/ou Credores Aderentes não implica qualquer tipo de renúncia por parte dos Credores Signatários e/ou Credores Aderentes com relação a matérias não expressamente reguladas por este Plano, tampouco concordância em novar os termos originais dos instrumentos que consubstanciam os Créditos Sujeitos. | **7.7. Reservations.** Adherence to this Plan by the Signatory Creditors and/or Adherent Creditors does not imply any type of waiver by the Signatory Creditors and/or Adherent Creditors with respect to matters not expressly regulated by this Plan, nor acceptance to novate the original terms of the securities underlying their Subject Claims. |
| **7.8. Tributos e Outras Despesas.** Observado o previsto neste Plano, cada Parte é responsável por suas obrigações tributárias, regulatórias e administrativas, e deve arcar com todos os custos e despesas relacionados aos seus respectivos atos previstos neste Plano. | **7.8. Taxes and Other Expenses**. Observed the provided in this Plan, each Party is responsible for their own tax, regulatory and administrative assessments and shall bear all the costs and expenses related to its corresponding acts set forth in this Plan. |
| **7.9. Notificações.** Todas as notificações, requerimentos, pedidos e outras comunicações às Devedoras, para serem consideradas eficazes, | **7.9. Notices**. All notices, requests, orders and other communications to the Debtors, in order to be considered effective, must be made in writing |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| deverão ser feitas por escrito e serão consideradas realizadas quando enviadas *(i)* por carta registada, com aviso de recebimento ou *courier*; ou *(ii)* por e-mail quando efetivamente entregues, sendo o aviso de leitura válido como prova de entrega e recebimento da mensagem, obrigando-se as Devedoras a verificar as suas mensagens periodicamente. Todas as comunicações devem ser enviadas para os seguintes endereços, salvo se houver alterações, nos termos da Cláusula 7.9.1 abaixo: | and shall be deemed to have been made when sent *(i)* by registered correspondence, with notice of receipt, or courier; or *(ii)* by e-mail when actually delivered, the reading notice being valid as proof of delivery and receipt of the message, requiring the Debtors to check their messages periodically. All communications must be sent to the following addresses, unless there are changes under the terms of Section 7.9.1 below: |
| Se às **Devedoras**: | If to the **Debtors**: |
| E-mail: recuperacaoextrajudicial@raizen.com | E-mail: recuperacaoextrajudicial@raizen.com |
| Endereço: Av. Brigadeiro Faria Lima, nº 4.100, 12º andar, Parte VII, São Paulo/SP, CEP 04538-132 | Address: Av. Brigadeiro Faria Lima, nº 4.100, 12th floor, Part VII, São Paulo/SP, ZIP 04538-132 |
| **Att.:** Departamento de Tesouraria / Departamento Jurídico | **Att.:** Departamento de Tesouraria / Departamento Jurídico |
| 7.9.1.   Caso qualquer das Devedoras deseje alterar as informações de contato contidas nos itens da Cláusula 7.9 a respectiva Parte comunicará imediatamente o novo endereço a todas as demais Partes. | 7.9.1.   In the event that any of the Debtors wishes to change its contact information contained in the items of Section 7.9, the respective Party shall immediately communicate the new address to all other Parties. |
| 7.9.2.   Até que, de acordo com a Cláusula 7.9.1 seja comunicada a mudança de endereço, as comunicações e notificações enviadas para o endereço indicado na Cláusula 7.9, ou para o último informado de acordo com a Cláusula 7.9.1, serão consideradas plenamente válidas e eficazes. | 7.9.2.   Until, in accordance with Section 7.9.1 notice is given regarding the change of address, communications and notifications sent to the address in Section 7.9, or to the last one informed in accordance with Section 7.9.1, shall be considered fully valid and effective. |
| **7.10.   Legitimidade.** As Partes reconhecem e concordam de forma irrevogável que as Devedoras e os Credores Sujeitos possuem legitimidade para exercer e executar todos os direitos, obrigações e remédios estabelecidos e contratados neste Plano. | **7.10.   Standing.** The Parties irrevocably acknowledge and agree that the Debtors and the Subject Creditors shall have standing to exercise and enforce all rights, obligations and remedies set forth under this Plan. |
| **7.11.   Irrevogabilidade ou Irretratabilidade**. Observados os Eventos de Resolução, este Plano é celebrado pelas Devedoras, pelos Credores Signatários e pelos Credores Aderentes de forma | **7.11.   Irrevocability or Irreversibility**. Subject to the Termination Events, this Plan is entered into by the Debtors, Signatory Creditors and Adhering Creditors in an irrevocable and irreversible |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 35

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| irrevogável e irretratável, representando um instrumento válido e vinculante em relação às Partes e seus respectivos sucessores, a qualquer título. | manner, representing a valid and binding instrument in relation to the Parties and their respective successors in any capacity. |
| **7.12. Lei Aplicável**. Os direitos, deveres e obrigações decorrentes deste Plano deverão ser regidos, interpretados e executados de acordo com as Leis do Brasil. | **7.12. Applicable Law**. The rights, duties and obligations arising from this Plan shall be governed by, construed and enforced in accordance with, the Laws of Brazil. |
| **7.13. Jurisdição e Foro.** Todas as controvérsias decorrentes e/ou relacionadas ao presente Plano, sua celebração, interpretação ou execução, assim como a sua validade, eficácia e disposições vinculativas correlatas serão resolvidos pelo Juízo da RE (uma das Varas de Falências e Recuperações Judiciais da Comarca do Estado São Paulo, Estado de São Paulo ) até a Data de Resolução do Plano. Após a Data da Sentença de Homologação do Plano, as Partes elegem o foro da cidade de São Paulo, estado de São Paulo, como autoridade exclusiva para resolver quaisquer disputas ou conflitos surgidos entre as Partes em decorrência deste Plano. | **7.13. Jurisdiction and Forum**. All disputes arising from and/or related to this Plan, its conclusion, interpretation or execution, as well as its validity, effectiveness and binding related provisions, shall be settled by the EJ Court (Bankruptcy State Courts of the District of São Paulo, State of São Paulo) until the Plan Termination Date. A fter the EJ Confirmation Order Date, the Parties elect the jurisdiction of the City of São Paulo, State of São Paulo, as sole authority to resolve any disputes or conflicts arising between the Parties as a result of this Plan. |
| **7.14. Conflito**. Este Plano é celebrado em versões em inglês e português. Em caso de conflito de redação entre as versões em português e em inglês, prevalecerá a versão em português. | **7.14. Conflict.** This Plan is executed in both English and Portuguese versions. In the event of any conflict between the wordings of the Portuguese and the English versions, the Portuguese version shall prevail. |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | | |
|---|---|---|
| **7.15. Assinaturas**. Todos os signatários reconhecem que este Plano tem plena validade em formato eletrônico, sendo equiparado a documento físico para todos os efeitos legais, reconhecendo e declarando os signatários que a assinatura deste Plano em meio eletrônico, sem aposição de rubricas, é o meio escolhido de mútuo acordo por todas as Partes como apto a comprovar autoria e integridade do instrumento, e conferir-lhe pleno efeito legal, como se documento físico fosse. Caso as assinaturas sejam realizadas em datas diferentes, será considerada como data da assinatura a data indicada neste Plano. A adesão expressa dos Credores Signatários e dos Credores Aderentes por meio dos Termos de Adesão poderá ser realizada tanto por assinaturas eletrônicas quanto por assinaturas físicas, as quais as Partes reconhecem como válidas para todos os fins legais. | | **7.15. Signatures**. All the parties that execute this Plan recognize the validity of the electronic format, equivalent to the physical document for legal purposes, recognizing and declaring the executors that the signatures through electronic means, without adding initials to each page, is mutually elected by all parties as a way to prove the author and the integrity of the instrument, conferring to it full legal effect as a physical document. If the signatures are executed in different dates, the date indicated in this Plan shall be considered the signature date. The express adherence of the Signatory Creditors and Adhering Creditors through the Adhesion Forms may be effected either by electronic signatures or by wet-ink signatures, both of which the Parties acknowledge as valid for all legal purposes. |
| E, por estarem justas e contratadas, as Partes celebram este Plano na presença de 2 (duas) testemunhas. | | And, in witness whereof, the Parties execute this Plan in the presence of two (2) witnesses. |

*(restante da página intencionalmente deixado em branco / remainder of the page
intentionally left in blanc)*

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 37

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |
|---|---|
| **RAÍZEN S.A.** | **RAÍZEN S.A.** |
| Assinado por: *Nelson Roseira Gomes Neto* 5254DA8DF1D9458... | Assinado por: *Nelson Roseira Gomes Neto* 5254DA8DF1D9458... |
| Nome: Nelson Roseira Gomes Neto Cargo: Diretor Presidente | Name: Nelson Roseira Gomes Neto Position: Chief Executive Officer |
| Assinado por: *Lorival Nogueira Luz Junior* C6D6594537A64BB... | Assinado por: *Lorival Nogueira Luz Junior* C6D6594537A64BB... |
| Nome: Lorival Nogueira Luz Junior Cargo: Diretor Financeiro e de Relações com Investidores | Name: Lorival Nogueira Luz Junior Position: Chief Financial Officer and Head of Investor Relations |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 38

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |

**RAÍZEN ENERGIA S.A.**

Assinado por:
*Geovane Dilkin Consul*
3636DB8FC1AF495...

Nome: Geovane Dilkin Consul
Cargo: Diretor Presidente

Assinado por:
*Lorival Nogueira Luz Junior*
C6D6594537A64BB...

Nome: Lorival Nogueira Luz Junior
Cargo: Diretor Financeiro e de Relações com Investidores

**RAÍZEN ENERGIA S.A.**

Assinado por:
*Geovane Dilkin Consul*
3636DB8FC1AF495...

Name: Geovane Dilkin Consul
Position: Chief Executive Officer

Assinado por:
*Lorival Nogueira Luz Junior*
C6D6594537A64BB...

Name: Lorival Nogueira Luz Junior
Position: Chief Financial Officer and Head of Investor Relations

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 39

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras

**RAÍZEN FUELS FINANCE S.A.**

DocuSigned by:

*Marina Dalben*

4257B36CC3F14CF...

Nome: Marina Dalben
Cargo: Diretora

Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others

**RAÍZEN FUELS FINANCE S.A.**

DocuSigned by:

*Marina Dalben*

4257B36CC3F14CF...

Name: Marina Dalben
Position: Officer

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 40

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |
| **RAÍZEN TRADING S.A.** | **RAÍZEN TRADING S.A.** |
| Assinado por:<br>*Celso Henrique Martins Silva*<br>15EEF4563F9C41D... | Assinado por:<br>*Celso Henrique Martins Silva*<br>15EEF4563F9C41D... |
| Nome: Celso Martins<br>Cargo: Diretor | Name: Celso Martins<br>Position: Officer |
| DocuSigned by:<br>987D9E0298DC4A5... | DocuSigned by:<br>987D9E0298DC4A5... |
| Nome: Juliano Tamaso<br>Cargo: Diretor | Name: Juliano Tamaso<br>Position: Officer |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |

**RAÍZEN NORTH AMERICA INC.**

Assinado por:
*Celso Henrique Martins Silva*
15EEF4563F9C41D...

Nome: Celso Martins
Cargo: Diretor

DocuSigned by:
987D9E0298DC4A5...

Nome: Juliano Tamaso
Cargo: Diretor

**RAÍZEN NORTH AMERICA INC.**

Assinado por:
*Celso Henrique Martins Silva*
15EEF4563F9C41D...

Name: Celso Martins
Position: Officer

DocuSigned by:
987D9E0298DC4A5...

Name: Juliano Tamaso
Position: Officer

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |

**RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA.**

DocuSigned by:

*FERNANDO BARBANO*

E0137D422A844DA...

Nome: Fernando Barbano
Cargo: Diretor Executivo

Assinado por:

*Eduardo Atsushi Takeiti*

59FE199E79F84F1...

Nome: Eduardo Atsushi Takeiti
Cargo: Diretor Executivo

---

**RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA.**

DocuSigned by:

*FERNANDO BARBANO*

E0137D422A844DA...

Name: Fernando Barbano
Position: Executive Officer

Assinado por:

*Eduardo Atsushi Takeiti*

59FE199E79F84F1...

Name: Eduardo Atsushi Takeiti
Position: Executive Officer

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 42

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |

**RAÍZEN CENTRO-SUL PAULISTA S.A.**

DocuSigned by:

*FERNANDO BARBANO*

E0137D422A844DA...

Nome: Fernando Barbano
Cargo: Diretor Executivo

Assinado por:

*Eduardo Atsushi Takeiti*

59FE199E79F84F1...

Nome: Eduardo Atsushi Takeiti
Cargo: Diretor Executivo

**RAÍZEN CENTRO-SUL PAULISTA S.A.**

DocuSigned by:

*FERNANDO BARBANO*

E0137D422A844DA...

Name: Fernando Barbano
Position: Executive Officer

Assinado por:

*Eduardo Atsushi Takeiti*

59FE199E79F84F1...

Name: Eduardo Atsushi Takeiti
Position: Executive Officer

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |
| **RAÍZEN CENTRO-SUL S.A.** | **RAÍZEN CENTRO-SUL S.A.** |
| DocuSigned by: *FERNANDO BARBANO* E0137D422A844DA... | DocuSigned by: *FERNANDO BARBANO* E0137D422A844DA... |
| Nome: Fernando Barbano Cargo: Diretor Executivo | Name: Fernando Barbano Position: Executive Officer |
| Assinado por: *Eduardo Atsushi Takeiti* 59FE199E79F84F1... | Assinado por: *Eduardo Atsushi Takeiti* 59FE199E79F84F1... |
| Nome: Eduardo Atsushi Takeiti Cargo: Diretor Executivo | Name: Eduardo Atsushi Takeiti Position: Executive Officer |

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |

**BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A.**

Assinado por:

*Celso Henrique Martins Silva*
15EEF4563F9C41D...

Nome: Celso Martins
Cargo: Diretor Executivo

DocuSigned by:

987D9E0298DC4A5...

Nome: Juliano Tamaso
Cargo: Diretor Presidente

**BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A.**

Assinado por:

*Celso Henrique Martins Silva*
15EEF4563F9C41D...

Name: Celso Martins
Position: Executive Officer

DocuSigned by:

987D9E0298DC4A5...

Name: Juliano Tamaso
Position: Chief Executive Officer

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| | |
|---|---|
| Página de Assinatura do Plano de Recuperação Extrajudicial datado de 10 de março de 2026, protocolado pela Raízen S.A. e Outras | Signature Page of the Extrajudicial Reestructuring Plan dated as of March 10, 2026, filed by Raízen S.A. and Others |
| **TESTEMUNHAS:** | **WITNESSES:** |

*DocuSigned by:*
*Júlio Alves Ribeiro Neto*
08552A5A605D461...

Nome: Júlio Alves Ribeiro Neto
CPF: 002.062.813-74

*DocuSigned by:*
*Júlio Alves Ribeiro Neto*
08552A5A605D461...

Name: Júlio Alves Ribeiro Neto
ID: 002.062.813-74

*DocuSigned by:*
*Isaac Aragão do Nascimento*
9595185C52F44BB...

Nome: Isaac Aragão do Nascimento
CPF: 048.363.653-33

*DocuSigned by:*
*Isaac Aragão do Nascimento*
9595185C52F44BB...

Name: Isaac Aragão do Nascimento
ID: 048.363.653-33

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 47

Docusign Envelope ID: 7D2C6F80-09E5-8A1C-8295-379E50FD8399

| LISTA DE ANEXOS | | LIST OF SCHEDULES | |
|---|---|---|---|

| Referência | Documento | Reference | Document |
|---|---|---|---|
| **Anexo A** | Lista de Credores Signatários | **Schedule A** | List of Signatory Creditors |
| **Anexo D** | Lista de Credores Sujeitos | **Schedule D** | List of Subject Creditors |
| **Anexo 2.4** | Termo de Adesão | **Schedule 2.4** | Adhesion Term |
| **Anexo 2.4.1** | Modelo de Declaração de Propriedade de Crédito Sujeito | **Schedule 2.4.1** | Certificate of Holder Form |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 48

**Docusign**

## Certificado de Conclusão

Identificação de envelope: 7D2C6F80-09E5-8A1C-8295-379E50FD8399
Assunto: Complete o Docusign: 2026.03.10 - ROOTS - PRE (V. ASSINATURA - 19h45).pdf
Envelope fonte:
Documentar páginas: 47                    Assinaturas: 38
Certificar páginas: 9                       Rubrica: 0
Assinatura guiada: Ativado
Selo com EnvelopeId (ID do envelope): Ativado
Fuso horário: (UTC-08:00) Hora do Pacífico (EUA e Canadá)

Status: Concluído

Remetente do envelope:
Caio Brega
AV PRESIDENTE JUSCELINO KUBITSCHEK,1600,
CONJ 21
SAO PAULO, SP  04543-000
cbrega@emunhoz.com.br
Endereço IP: 200.236.218.146

## Rastreamento de registros

Status: Original
        10/03/2026 16:00:37

Portador: Caio Brega
         cbrega@emunhoz.com.br

Local: DocuSign

## Eventos do signatário

### Assinatura

### Registro de hora e data

Celso Henrique Martins Silva
Celso.H.Martins@raizen.com
Nível de segurança: E-mail, Autenticação da conta
(Nenhuma)

*Celso Henrique Martins Silva*
15EEF4563F9C41D

Adoção de assinatura: Estilo pré-selecionado
Usando endereço IP: 177.32.76.78

Enviado: 10/03/2026 16:26:57
Visualizado: 10/03/2026 16:31:43
Assinado: 10/03/2026 16:46:44

**Termos de Assinatura e Registro Eletrônico:**
Aceito: 10/03/2026 16:31:43
ID: eaade1a2-744b-4e7d-a040-7471eaf40b78

Eduardo Atsushi Takeiti
Eduardo.Takeiti@raizen.com
Nível de segurança: E-mail, Autenticação da conta
(Nenhuma), Entrar com SSO

Assinado por:
*Eduardo Atsushi Takeiti*
59FE199E79F84F1

Adoção de assinatura: Estilo pré-selecionado
Usando endereço IP: 177.102.205.210

Enviado: 10/03/2026 16:27:01
Visualizado: 10/03/2026 16:34:39
Assinado: 10/03/2026 16:36:20

**Termos de Assinatura e Registro Eletrônico:**
Aceito: 10/03/2026 16:34:39
ID: ee471b3b-e046-451d-b219-957464d19076

FERNANDO BARBANO
Fernando.Barbano@raizen.com
Nível de segurança: E-mail, Autenticação da conta
(Nenhuma), Entrar com SSO

DocuSigned by:
*FERNANDO BARBANO*
E0137D422A844DA

Adoção de assinatura: Estilo pré-selecionado
Usando endereço IP: 181.233.114.223

Enviado: 10/03/2026 16:26:58
Visualizado: 10/03/2026 16:28:19
Assinado: 10/03/2026 16:34:32

**Termos de Assinatura e Registro Eletrônico:**
Aceito: 10/03/2026 16:28:19
ID: 1bbe1000-0887-48f5-be4c-9c2ccd921747

Geovane Dilkin Consul
Geovane.Consul@raizen.com
Nível de segurança: E-mail, Autenticação da conta
(Nenhuma), Entrar com SSO

Assinado por:
*Geovane Dilkin Consul*
3636D56FC1AF493

Adoção de assinatura: Estilo pré-selecionado
Usando endereço IP: 177.50.37.237

Enviado: 10/03/2026 16:26:58
Visualizado: 10/03/2026 18:19:17
Assinado: 10/03/2026 18:19:31

**Termos de Assinatura e Registro Eletrônico:**
Aceito: 10/03/2026 18:19:17
ID: bef35e50-7b3d-4b66-a399-cc5ed033f4b1

| Eventos do signatário | Assinatura | Registro de hora e data |
|---|---|---|
| Isaac Aragão do Nascimento<br>Isaac.Nascimento@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | *Isaac Aragão do Nascimento*<br>9595185C52F4BB...<br><br>Adoção de assinatura: Estilo pré-selecionado<br>Usando endereço IP: 187.91.75.120 | Enviado: 10/03/2026 16:27:02<br>Visualizado: 10/03/2026 16:49:39<br>Assinado: 10/03/2026 16:49:50 |
| **Termos de Assinatura e Registro Eletrônico:**<br>Aceito: 10/03/2026 16:49:39<br>ID: 057fde15-16d5-47ac-943e-a55dd3a37e84 | | |
| Juliano Tamaso<br>Juliano.Tamaso@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | *J...*<br>987D9EO29BDC4A5...<br><br>Adoção de assinatura: Desenhado no dispositivo<br>Usando endereço IP: 189.62.205.36<br>Assinado com o uso do celular | Enviado: 10/03/2026 16:26:59<br>Visualizado: 10/03/2026 16:40:04<br>Assinado: 10/03/2026 16:42:17 |
| **Termos de Assinatura e Registro Eletrônico:**<br>Aceito: 10/03/2026 16:40:04<br>ID: 519ad43b-dd7d-4376-9eb9-ab77f239842d | | |
| Júlio Alves Ribeiro Neto<br>Julio.Alves@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | *Júlio Alves Ribeiro Neto*<br>08552A5A605D461...<br><br>Adoção de assinatura: Estilo pré-selecionado<br>Usando endereço IP: 177.67.63.45 | Enviado: 10/03/2026 16:27:03<br>Visualizado: 10/03/2026 16:45:18<br>Assinado: 10/03/2026 16:46:18 |
| **Termos de Assinatura e Registro Eletrônico:**<br>Aceito: 10/03/2026 16:45:18<br>ID: 59ef1f04-ab90-4090-b5d0-a707e2e6a308 | | |
| Lorival Nogueira Luz Junior<br>Lorival.Luz@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | *Lorival Nogueira Luz Junior*<br>C6D6594537A640B...<br><br>Adoção de assinatura: Estilo pré-selecionado<br>Usando endereço IP: 191.254.25.36 | Enviado: 10/03/2026 16:26:59<br>Visualizado: 10/03/2026 17:24:20<br>Assinado: 10/03/2026 17:24:38 |
| **Termos de Assinatura e Registro Eletrônico:**<br>Aceito: 10/03/2026 17:24:20<br>ID: b24af188-f69c-4e47-b5dd-5567f4c4c8a9 | | |
| Marina Dalben<br>Marina.Dalben@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | *Marina Dalben*<br>4257B36CC3F14CF...<br><br>Adoção de assinatura: Imagem de assinatura carregada<br>Usando endereço IP: 189.100.70.86 | Enviado: 10/03/2026 16:27:00<br>Visualizado: 10/03/2026 16:52:12<br>Assinado: 10/03/2026 16:52:30 |
| **Termos de Assinatura e Registro Eletrônico:**<br>Aceito: 10/03/2026 16:52:12<br>ID: 93ea2158-8675-49f0-bd17-e78bbd627cc6 | | |
| Nelson Roseira Gomes Neto<br>Nelson.Gomes@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO | *Nelson Roseira Gomes Neto*<br>5254DA8DF1D9458...<br><br>Adoção de assinatura: Estilo pré-selecionado<br>Usando endereço IP: 177.26.248.194<br>Assinado com o uso do celular | Enviado: 10/03/2026 16:27:00<br>Visualizado: 10/03/2026 16:39:29<br>Assinado: 10/03/2026 16:39:52 |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 50

| Eventos do signatário | Assinatura | Registro de hora e data |
|---|---|---|
| Termos de Assinatura e Registro Eletrônico:<br>Aceito: 10/03/2026 16:39:29<br>ID: 21b07850-c4d1-4622-9f0e-8f9d412df56f | | |

| Eventos do signatário presencial | Assinatura | Registro de hora e data |
|---|---|---|

| Eventos de entrega do editor | Status | Registro de hora e data |
|---|---|---|

| Evento de entrega do agente | Status | Registro de hora e data |
|---|---|---|

| Eventos de entrega intermediários | Status | Registro de hora e data |
|---|---|---|

| Eventos de entrega certificados | Status | Registro de hora e data |
|---|---|---|

| Eventos de cópia | Status | Registro de hora e data |
|---|---|---|
| Lilian Helena Costa Moura<br>Lilian.Moura@raizen.com<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma), Entrar com SSO<br>Termos de Assinatura e Registro Eletrônico:<br>Não oferecido através da Docusign | **Copiado** | Enviado: 10/03/2026 16:27:01<br>Visualizado: 10/03/2026 16:28:28 |
| Lucas Pereira Calmon<br>lucas@emunhoz.com.br<br>Nível de segurança: E-mail, Autenticação da conta (Nenhuma)<br>Termos de Assinatura e Registro Eletrônico:<br>Aceito: 22/02/2024 11:07:11<br>ID: 2d6afe29-6bf4-43e2-9c99-52d45d19a4e1 | **Copiado** | Enviado: 10/03/2026 16:27:02<br>Visualizado: 10/03/2026 16:55:10 |

| Eventos com testemunhas | Assinatura | Registro de hora e data |
|---|---|---|

| Eventos do tabelião | Assinatura | Registro de hora e data |
|---|---|---|

| Eventos de resumo do envelope | Status | Carimbo de data/hora |
|---|---|---|
| Envelope enviado | Com hash/criptografado | 10/03/2026 16:27:03 |
| Entrega certificada | Segurança verificada | 10/03/2026 16:39:29 |
| Assinatura concluída | Segurança verificada | 10/03/2026 16:39:52 |
| Concluído | Segurança verificada | 10/03/2026 18:19:31 |

| Eventos de pagamento | Status | Carimbo de data/hora |
|---|---|---|

| Termos de Assinatura e Registro Eletrônico | | |
|---|---|---|

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 51

Termos de Assinatura e Registro Eletrônico criado em: 20/09/2022 13:27:51

Partes concordam em: Celso Henrique Martins Silva, Eduardo Atsushi Takeiti, Geovane Dilkin Consul, Isaac Aragão do Nascimento, Júlio Alves Ribeiro Neto, Lorival

### ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, E. Munhoz - Sociedade de Advogados (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact E. Munhoz - Sociedade de Advogados:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:

**To advise E. Munhoz - Sociedade de Advogados of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at  and in the body of such request you must state: your previous email address, your new email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from E. Munhoz - Sociedade de Advogados**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to  and in the body of such request you must state your email address, full name, mailing address, and telephone number.

**To withdraw your consent with E. Munhoz - Sociedade de Advogados**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to  and in the body of such request you must state your email, full name, mailing address, and telephone number. .  .

### Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

### Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify E. Munhoz - Sociedade de Advogados as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by E. Munhoz - Sociedade de Advogados during the course of your relationship with E. Munhoz - Sociedade de Advogados.

Termos de Assinatura e Registro Eletrônico criado em: 08/11/2021 12:09:10
Partes concordam em: FERNANDO BARBANO, Juliano Tamaso

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, E. Munhoz - Sociedade de Advogados (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

### How to contact E. Munhoz - Sociedade de Advogados:

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: jaime@emunhoz.com.br

### To advise E. Munhoz - Sociedade de Advogados of your new email address

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at jaime@emunhoz.com.br and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

### To request paper copies from E. Munhoz - Sociedade de Advogados

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to jaime@emunhoz.com.br and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

### To withdraw your consent with E. Munhoz - Sociedade de Advogados

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 56

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to jaime@emunhoz.com.br and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify E. Munhoz - Sociedade de Advogados as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by E. Munhoz - Sociedade de Advogados during the course of your relationship with E. Munhoz - Sociedade de Advogados.

# Anexo A

Consolidado

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5,300% Notes due 2027 | Sim | US BOND 1294M 20.01.2027 | USD | - | 16,200,028.19 | - | 84,409,668.06 | 0,1% | 0,1% |
| RAIZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6,200% Notes due 2032 | Sim | BOND 2032 | USD | - | 299,398,496.28 | - | 1,560,804,129.32 | 2,4% | 2,5% |
| RAIZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6,450% Green Notes due 2034 | Sim | BOND 2034 | USD | - | 290,325,850.79 | - | 1,513,050,757.92 | 2,3% | 4,8% |
| RAIZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5,700% Green Notes due 2035 | Sim | BOND 2035 | USD | - | 283,228,058.60 | - | 1,476,546,501.94 | 2,3% | 7,1% |
| RAIZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6,550% Green Notes due 2034 | Sim | BOND 2034 | USD | - | 93,211,142.74 | - | 486,250,464.08 | 0,7% | 7,9% |
| RAIZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6,950% Green Notes due 2054 | Sim | RETAP BOND 2054 | USD | - | 139,909,718.61 | - | 729,375,688.15 | 1,1% | 9,0% |
| RAIZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6,700% Notes due 2037 | Sim | BOND 2037 | USD | - | 313,712,175.66 | - | 1,635,488,916.52 | 2,5% | 11,5% |
| RAIZEN FUELS FINANCE S.A. | ITAÚ UNIBANCO S.A. | Sim | DEBENTURE INCENTIVADA 4ª SÉRIE ÚNICA RESH H | BRL | 296,432,502.93 | - | - | 296,432,502.93 | 0,4% | 11,9% |
| RAIZEN FUELS FINANCE S.A. | BNP PARIBAS | Sim | LOAN SACE 305MM | EUR | - | - | 305,279,432.33 | 1,864,989,196.14 | 2,9% | 14,8% |
| RAIZEN FUELS FINANCE S.A. | BNP PARIBAS | Sim | LOAN SACE II 209MM | EUR | - | - | 200,913,866.87 | 1,214,162,770.45 | 1,9% | 16,8% |
| RAIZEN ENERGIA S.A. | BANK OF AMERICA N.A. | Sim | PPE BOFA – LT – JAN2028 – ROF TE103696 – B5V1 | USD | 100,560,471.97 | - | - | 524,423,946.84 | 0,8% | 17,4% |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CPR-F 750MM | BRL | 750,229,402.93 | - | - | 750,229,402.93 | 1,2% | 18,6% |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CPR-F 260MM | BRL | 261,175,737.93 | - | - | 261,175,737.93 | 0,4% | 19,0% |
| RAIZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | CPRF BBA – LF – ABR2030 | BRL | 203,223,547.28 | - | - | 203,223,547.28 | 0,3% | 19,3% |
| RAIZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | CPRF BBA – LF – JUN2030 | BRL | 310,807,530.70 | - | - | 310,807,530.70 | 0,5% | 19,8% |
| RAIZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | CPRF BBA – LF – JUN2027 | BRL | 722,710,137.56 | - | - | 722,710,137.56 | 1,1% | 20,9% |
| RAIZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) S.A. | Sim | CPRF SANTANDER – LF – JUN2028 | BRL | 667,177,032.00 | - | - | 667,177,032.00 | 1,0% | 22,0% |
| RAIZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) S.A. | Sim | CPRF SANTANDER – LF – AGO2028 | BRL | 287,903,049.00 | - | - | 287,903,049.00 | 0,4% | 22,4% |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CPRF BRADESCO – LF – JUL2030 | BRL | 766,904,647.00 | - | - | 766,904,647.00 | 1,2% | 23,5% |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CRÉDITO RURAL LIVRE BRL 256MM – LT JUL28 | BRL | 273,648,581.00 | - | - | 273,648,581.00 | 0,4% | 24,0% |
| RAIZEN ENERGIA S.A. | BANCO DO BRASIL S.A. | Sim | NCE BB NR 2000150-2 | BRL | 1,033,937,098.00 | - | - | 1,033,937,098.00 | 1,6% | 25,6% |
| RAIZEN ENERGIA S.A. | BNP PARIBAS | Sim | PPE_BNP_USD1294A – ROF TE110071 | USD | 75,154,761.47 | - | - | 391,654,317.97 | 0,6% | 26,2% |
| RAIZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE CP RABOBANK USD 100M 09.05.22 ROF TE105481 | USD | 102,985,668.07 | - | - | 536,243,315.53 | 0,8% | 27,0% |
| RAIZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE LF RABOBANK USD 200M 12.05.22 (VCTO 11.05.27) ROF TE104020 | USD | 205,772,500.00 | - | - | 1,046,483,930.35 | 1,6% | 28,6% |
| RAIZEN ENERGIA S.A. | BANK OF AMERICA N.A. | Sim | PPE LF BOFA USD 50M MAI 22 (VINCTO 20.05.27) ROF TE104936 | USD | 50,961,384.11 | - | - | 260,964,598.72 | 0,4% | 29,0% |
| RAIZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | PPE LF SMBC USD 200M JUN.23 (VINCTO 14.06.27) ROF TE107846 | USD | 202,200,199.66 | - | - | 1,054,130,128.85 | 1,6% | 30,6% |
| RAIZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | PPE SMBC – ST – MAR28 – ROF TE108313 | USD | 102,588,119.89 | - | - | 534,674,762.78 | 0,8% | 31,4% |
| RAIZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE LF B5V1 RABOBANK USD44M 10.04.25 - ROF TE107234 | USD | 45,036,382.02 | - | - | 234,766,222.33 | 0,4% | 31,8% |
| RAIZEN CENTRO-SUL PAULISTA S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | PPE SMBC – LT – FEV/2028 – ROF TB104631 | USD | 70,169,760.14 | - | - | 365,820,302.60 | 0,6% | 32,3% |
| RAIZEN ENERGIA S.A. | THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED | Sim | PPE HSBC – LT – FEV2028 – ROF TB100524 | USD | 85,849,555.41 | - | - | 447,509,467.22 | 0,7% | 33,0% |
| RAIZEN S.A. | JPMORGAN CHASE BANK, N.A. | Sim | PPE LF JPMORGAN USD30M 28.04.25 - ROF TB106966 | USD | 51,006,694.33 | - | - | 265,814,032.72 | 0,4% | 33,4% |
| RAIZEN S.A. | MUFG BANK, LTD. | Sim | PPE LF MUFG USD100M 28.04.25 - ROF TB106146 | USD | 105,618,537.78 | - | - | 550,519,643.08 | 0,8% | 34,2% |
| RAIZEN S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE LF RABOBANK USD30M 28.04.25 - ROF TB106926 | USD | 30,617,842.10 | - | - | 159,618,942.14 | 0,2% | 34,5% |
| RAIZEN S.A. | MUFG BANK, LTD. | Sim | PPE LF MUFG USD70M 30.10.25 | USD | 75,444,160.76 | - | - | 393,313,147.20 | 0,6% | 35,1% |
| RAIZEN S.A. | THE BANK OF NOVA SCOTIA | Sim | PPE LF SCOTIABANK USD300M 30.10.25 | USD | 305,185,419.87 | - | - | 1,591,022,132.71 | 2,4% | 37,5% |
| RAIZEN CENTRO-SUL PAULISTA S.A. | JPMORGAN CHASE BANK, N.A. | Sim | PPE JPM – LT – FEV2030 – ROF TB104651 | USD | 100,283,222.78 | - | - | 523,856,525.32 | 0,8% | 38,3% |
| RAIZEN ENERGIA S.A. | BANCO CITIBANK S.A. | Sim | NCE CITI – LT – FEV30 – B5V1 | USD | 83,122,945.50 | - | - | 433,344,987.45 | 0,7% | 39,0% |
| RAIZEN S.A. | BANCO BILBAO VIZCAYA ARGENTARIA, S.A. NEW YORK BRANCH | Sim | PPE BBVA – LT – JAN2030 – ROF TB104524 | USD | 251,741,563.05 | - | - | 1,311,726,303.26 | 2,0% | 40,9% |
| RAIZEN S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE RABOBANK USD 50MM 2026 - ROF TB091059 | USD | 50,356,611.11 | - | - | 262,524,135.70 | 0,4% | 41,3% |
| RAIZEN S.A. | BANK OF AMERICA N.A. | Sim | PPE SBOF II BOFA 70MM - ROF TB101089 | USD | 70,826,621.03 | - | - | 369,241,887.41 | 0,6% | 41,9% |
| RAIZEN S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | Sim | PPE_CREDIT_USD50MM - ROF TB120866 | USD | 50,503,123.00 | - | - | 263,287,941.57 | 0,4% | 42,3% |
| RAIZEN S.A. | MUFG BANK, LTD. | Sim | PPE LF MUFG USD30M 12.06.25 | USD | 53,166,419.17 | - | - | 281,688,062.04 | 0,4% | 42,4% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | 20,000,000.00 | - | - | 104,290,000.00 | 0,2% | 42,6% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | 20,000,000.00 | - | - | 104,290,000.00 | 0,2% | 42,7% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | 10,000,000.00 | - | - | 52,133,000.00 | 0,1% | 42,8% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | 15,000,000.00 | - | - | 78,199,500.00 | 0,1% | 42,9% |
| RAIZEN S.A. / RAIZEN ENERGIA S.A. | BNP PARIBAS S.A. | Sim | AVAL ECA | USD | 30,999,937.97 | - | - | 159,433,905.73 | 0,2% | 43,2% |
| RAIZEN S.A./RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 32943247 | BRL | 292,239,664.00 | - | - | 292,239,664.00 | 0,4% | 43,6% |
| RAIZEN S.A./RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO N°36404060/2020 E 364041762222 | BRL | 300,521,410.00 | - | - | 300,521,410.00 | 0,5% | 44,1% |
| RAIZEN S.A./RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 32610133 | BRL | 385,658,828.00 | - | - | 385,658,828.00 | 0,6% | 44,7% |
| RAIZEN FUELS FINANCE S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | Sim | REVOLVING LOAN FACILITY AGREEMENT | USD | 1,396,750.00 | - | - | 7,286,970,38 | 0,0% | 44,7% |
| RAIZEN S.A./RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 130-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,7% |
| RAIZEN S.A./RAIZEN ENERGIA S.A. | Banco Morgan Stanley S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | 584,080,460.00 | - | - | 584,080,460.00 | 0,9% | 45,6% |
| RAIZEN S.A./RAIZEN ENERGIA S.A. | Banco BNP Paribas Brasil S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | 605,914,515.00 | - | - | 605,914,515.00 | 0,9% | 46,5% |
| RAIZEN S.A. | BANCO CITIBANK S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 130-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 46,5% |
| RAIZEN S.A. | BANK OF AMERICA MERRILL LYNCH BANCO MÚLTIPLO S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | 388,645,349.41 | - | - | 388,645,349.41 | 0,6% | 47,1% |
| RAIZEN S.A./RAIZEN ENERGIA S.A. | BANCO CRÉDIT AGRICOLE BRASIL S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 130-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 47,1% |
| RAIZEN S.A./RAIZEN ENERGIA S.A. | BANCO DO BRASIL S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 130-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 47,1% |
| RAIZEN S.A. | Scotiabank Brasil S.A. Banco Múltiplo | Sim | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 130-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 47,1% |
| RAIZEN S.A. | Banco MUFG Brasil S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 130-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 47,1% |
| RAIZEN S.A. / BLUEWAY TRADING IMPORTAÇÃO E EXPORT / RAIZEN CENTRO-SUL S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | 38,948,196.02 | - | - | 38,948,196.02 | 0,1% | 47,2% |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| RAÍZEN ENERGIA S.A / RAÍZEN CENTRO-SUL S.A. | COOPERATIEVE RABOBANK U.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | 11.410.878,17 | - | - | 11.410.878,17 | 0,0% | 47,2% |
| RAÍZEN S.A | BANCO HSBC S.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 159-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 47,2% |
| RAÍZEN ENERGIA S.A | JP Morgan Chase Bank, NA | Sim | OPERAÇÕES DERIVATIVOS | USD | - | 9.880.078,79 | - | 51.403.946,70 | 0,1% | 47,2% |
| RAÍZEN TRADING S.A. | CITIBANK N.A. | Sim | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 159-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 47,2% |
| **Subtotal Créditos Aderentes** | - | - | | | **9.182.445.988,07** | **3.747.478.975,42** | **599.192.300,09** | **30.770.209.527,08** | **47,2%** | **47,2%** |
| | | | | | | | | | | |
| RAÍZEN FUELS FINANCE S.A. | U.S. BANK NATIONAL ASSOCIATION | Não | US BOND (226MN 20.01.2027 | USD | - | 172.938.042,50 | - | 961.562.297,07 | 1,4% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2032 | USD | - | 408.674.432,39 | - | 2.391.207.497,96 | 3,7% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2054 | USD | - | 710.989.962,54 | - | 3.704.414.468,96 | 5,7% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2035 | USD | - | 725.194.858,57 | - | 3.780.501.693,91 | 5,8% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2054 | USD | - | 407.311.483,15 | - | 2.122.919.877,24 | 3,3% | - |
| RAÍZEN ENERGIA S.A | TRUE SECURITIZADORA S.A. | Não | CRA VII 228.190_3ªS RAÍZEN 1ªPS_CRA01800303 | BRL | 233.762.892,92 | - | - | 233.762.892,92 | 0,4% | - |
| RAÍZEN ENERGIA S.A | OPEA SECURITIZADORA S.A. | Não | CRA VI 0PCA 600MM CRA.2.C/A.2 CRA01800307 | BRL | 905.715.403,49 | - | - | 905.715.403,49 | 1,4% | - |
| RAÍZEN ENERGIA S.A | TRUE SECURITIZADORA S.A. | Não | CRA IX 1.060.000.000_3ªE RAÍZEN 1ªPS_CRA02200990 | BRL | 1.262.940.117,90 | - | - | 1.262.940.117,90 | 2,0% | - |
| RAÍZEN ENERGIA S.A | TRUE SECURITIZADORA S.A. | Não | CRA IX 940.000.000_3ªE RAÍZEN 2ªJ_CRA02200990 | BRL | 1.139.608.159,36 | - | - | 1.139.608.159,36 | 1,7% | - |
| RAÍZEN ENERGIA S.A | TRUE SECURITIZADORA S.A. | Não | CRA VI 787.000_2ªS RAÍZEN 1ªPS_CRA01900301 | BRL | 1.153.262.972,90 | - | - | 1.153.262.972,90 | 1,8% | - |
| RAÍZEN ENERGIA S.A | TRUE SECURITIZADORA S.A. | Não | CRA VIII 002.426_1ªPS RAÍZEN 1ªPS_CRA02000YFT | BRL | 501.233.718,45 | - | - | 501.233.718,45 | 0,8% | - |
| RAÍZEN ENERGIA S.A | TRUE SECURITIZADORA S.A. | Não | CRA VII 728.090_1ªPS RAÍZEN 2ªPS_CRA02000YFR | BRL | 1.036.294.576,25 | - | - | 1.036.294.576,25 | 1,6% | - |
| RAÍZEN ENERGIA S.A | TRUE SECURITIZADORA S.A. | Não | CRA DOCTOR X - 3ªSÉRIE - 10/2033_CRA02300URT | BRL | 567.943.988,36 | - | - | 567.943.988,36 | 0,9% | - |
| RAÍZEN ENERGIA S.A | TRUE SECURITIZADORA S.A. | Não | CRA DOCTOR X - 1ªSÉRIE - 10/2033_CRA02300URO | BRL | 218.430.067,03 | - | - | 218.430.067,03 | 0,3% | - |
| RAÍZEN ENERGIA S.A | TRUE SECURITIZADORA S.A. | Não | CRA DOCTOR X - 2ªSÉRIE - 10/2033_CRA02300URR | BRL | 301.264.380,88 | - | - | 301.264.380,88 | 0,5% | - |
| RAÍZEN ENERGIA S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA 4ª SÉRIE ÚNICA RESH A | BRL | 1.008.259.858,67 | - | - | 1.008.259.858,67 | 1,5% | - |
| RAÍZEN ENERGIA S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA 1ª EMISSÃO - RESH5 | BRL | 241.287.186,87 | - | - | 241.287.186,87 | 0,4% | - |
| RAÍZEN ENERGIA S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA - RESA7 | BRL | 536.888.542,23 | - | - | 536.888.542,23 | 0,8% | - |
| RAÍZEN ENERGIA S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA - RESA17 | BRL | 861.756.542,95 | - | - | 861.756.542,95 | 1,3% | - |
| RAÍZEN ENERGIA S.A | BANK OF CHINA LIMITED, GRAND CAYMAN BRANCH | Não | PPE BANK OF CHINA USD 150 MILHÕES ROF TB123067 | USD | - | 152.475.933,25 | - | 794.902.261,46 | 1,2% | - |
| RAÍZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURES INCENTIVADA - 3ª EMISSÃO - 1ª SÉRIE RAIZ13 | BRL | 908.673.055,24 | - | - | 908.673.055,24 | 1,5% | - |
| RAÍZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA – 3ª EMISSÃO R06 – 3ª SÉRIE RAIZ23 | BRL | 692.287.301,90 | - | - | 692.287.301,90 | 1,1% | - |
| RAÍZEN S.A / RAÍZEN ENERGIA S.A | CITIBANK N.A | Não | AVAL FIDEIMPO | USD | - | 6.270.798,16 | - | 32.691.202,05 | 0,1% | - |
| RAÍZEN FUELS FINANCE S.A | THE BANK OF NEW YORK MELLON | Não | RETAP BOND 2054 | USD | - | 615.917.238,72 | - | 3.194.373.515,83 | 4,9% | - |
| RAÍZEN FUELS FINANCE S.A | THE BANK OF NEW YORK MELLON | Não | BOND 2037 | USD | - | 689.078.467,01 | - | 3.592.372.676,35 | 5,5% | - |
| RAÍZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBÊNTURES - 3ª EMISSÃO R9A RAIZ12 | BRL | 1.061.106.706,73 | - | - | 1.061.106.706,73 | 1,7% | - |
| RAÍZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBÊNTURES - 3ª EMISSÃO R9A RAIZ14 | BRL | 868.635.172,83 | - | - | 868.635.172,83 | 1,3% | - |
| RAÍZEN S.A / RAÍZEN ENERGIA S.A | XP COMERCIALIZADORA DE ENERGIA S.A | Não | AVAL CONTRATO DE COMPRA E VENDA DE ENERGIA ELÉTRICA LP 25.2023 | BRL | 170.000.000,00 | - | - | 170.000.000,00 | 0,3% | - |
| RAÍZEN S.A / RAÍZEN ENERGIA S.A | XP INVESTIMENTOS CORRETORA DE CÂMBIO, TÍTULOS E VALORES MOBILIÁRIOS S.A. | Não | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 159-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A | Deutsche Bank S.A | Não | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 159-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A | Banco Mizuho do Brasil S.A | Não | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 159-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A | BTG PACTUAL SA | Não | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 159-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A | Macquarie Bank LTD | Não | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 159-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A / BLUEWAY TRADING IMPORTAÇÃO E EXPORT / RAÍZEN ENERGIA S.A | Goldman Sachs do Brasil Banco Múltiplo S.A | Não | OPERAÇÕES DERIVATIVOS | BRL | - | - | - | Nos termos do artigo 159-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| **Subtotal Créditos Não Aderentes** | - | - | | | **13.687.368.630,22** | **3.933.190.114,79** | **-** | **34.382.316.552,05** | **52,8%** | **-** |
| | | | | | | | | | | |
| **Total** | - | - | | | **22.839.774.608,29** | **7.680.670.990,21** | **599.192.300,09** | **65.145.520.079,65** | **100,0%** | **47,2%** |

RAÍZEN S.A.

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Ac. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.300% Notes due 2027 | Sim | US BOND 2250MM 20.01.2027 | USD | - | 16.200.038,19 | - | 84.455.606,96 | 0,1% | 0,1% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.350% Notes due 2032 | Sim | BOND 2032 | USD | - | 299.398.485,20 | - | 1.560.854.128,52 | 2,5% | 2,6% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.45% Green Notes due 2034 | Sim | BOND 2034 | USD | - | 290.220.850,79 | - | 1.513.550.757,92 | 2,4% | 5,1% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.700% Green Notes due 2035 | Sim | BOND 2035 | USD | - | 280.228.858,60 | - | 1.476.546.581,94 | 2,4% | 7,4% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.950% Green Notes due 2054 | Sim | BOND 2054 | USD | - | 93.271.145,74 | - | 486.250.464,09 | 0,8% | 8,2% |
| RAÍZEN S.A. | THE BANK OF NEW YORK MELLON | Sim | AVAL RETAP BOND 2054 | USD | - | 139.509.718,61 | - | 729.375.696,13 | 1,2% | 9,4% |
| RAÍZEN S.A. | Grupo Ad Hoc de Bondholders das 6.700% Notes due 2037 | Sim | 313.713.176,66 | USD | - | 313.713.176,66 | - | 1.635.480.919,52 | 2,6% | 12,0% |
| RAÍZEN ENERGIA S.A. | ITAÚ UNIBANCO S.A. | Sim | DEBENTURE INCENTIVADA 4ª SERIE ÚNICA RESA14 | BRL | 288.432.592,93 | - | - | 288.432.592,93 | 0,5% | 12,5% |
| RAÍZEN S.A. | BNP PARIBAS | Sim | AVAL LOAN SACE 300MM | EUR | - | - | 305.278.433,33 | 1.844.889.156,14 | 3,0% | 15,4% |
| RAÍZEN S.A. | BNP PARIBAS | Sim | AVAL LOAN SACE II 200MM | EUR | - | - | 200.913.866,67 | 1.214.192.770,45 | 1,9% | 17,4% |
| RAÍZEN S.A. | BANK OF AMERICA S.A. | Sim | AVAL PPE BOFA - L7 - JAN/2028 - ROF TB182698 - BSV1 | USD | - | 100.560.471,67 | - | 524.423.945,84 | 0,8% | 18,2% |
| RAÍZEN S.A. | BANCO BRADESCO S.A. | Sim | AVAL CPR-F 750MM | BRL | 760.228.402,50 | - | - | 760.228.402,50 | 1,3% | 19,5% |
| RAÍZEN S.A. | BANCO BRADESCO S.A. | Sim | AVAL CPR-F 250MM | BRL | 261.175.737,50 | - | - | 261.175.737,50 | 0,4% | 19,9% |
| RAÍZEN S.A. | BANCO SANTANDER (BRASIL) S/A | Sim | AVAL CPRF SANTANDER - LP - JUN/2026 | BRL | 607.177.032,00 | - | - | 607.177.032,00 | 1,1% | 21,0% |
| RAÍZEN S.A. | BANCO SANTANDER (BRASIL) S/A | Sim | AVAL CPRF SANTANDER - LP - AGO/2029 | BRL | 257.803.048,00 | - | - | 257.803.048,00 | 0,4% | 21,4% |
| RAÍZEN S.A. | BANCO DO BRASIL S.A. | Sim | AVAL NCE BB NR 20/00100-2 | BRL | 1.033.507.006,00 | - | - | 1.033.507.006,00 | 1,7% | 23,1% |
| RAÍZEN S.A. | BNP PARIBAS | Sim | AVAL PPE_BNP_USD125MLN - ROF TB130571 | USD | - | 70.154.791,47 | - | 391.804.317,97 | 0,6% | 23,7% |
| RAÍZEN S.A. | COOPERATIEVE RABOBANK U.A. | Sim | AVAL PPE CP RABOBANK USD 100M 09.05.22 ROF TB130491 | USD | - | 102.960.998,57 | - | 536.243.513,53 | 0,9% | 24,5% |
| RAÍZEN S.A. | COOPERATIEVE RABOBANK U.A. | Sim | AVAL PPE LP RABOBANK USD 200M 12.05.22 (VCTO 11.05.27) ROF TB164020 | USD | - | 200.732.500,00 | - | 1.046.483.955,55 | 1,7% | 26,2% |
| RAÍZEN S.A. | BANK OF AMERICA, N.A. | Sim | AVAL PPE LP BOFA USD 50M MAI/23 (VENCTO 28.05.27) ROF TB106959 | USD | - | 50.061.304,11 | - | 260.984.598,72 | 0,4% | 26,6% |
| RAÍZEN S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | AVAL PPE LP SMBC USD 200M JUN.23 (VENCTO 14.06.27) ROF TB107946 | USD | - | 200.220.166,66 | - | 1.054.130.129,85 | 1,7% | 28,3% |
| RAÍZEN S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | AVAL_PPE SMBC - ST - MAR/25 - ROF TB186313 | USD | - | 102.598.116,85 | - | 534.874.762,78 | 0,9% | 29,2% |
| RAÍZEN S.A. | COOPERATIEVE RABOBANK U.A. | Sim | AVAL PPE LP BSV1 RABOBANK USD44M 10.04.25 - ROF TB167264 | USD | - | 45.036.392,02 | - | 234.788.222,53 | 0,4% | 29,6% |
| RAÍZEN S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | AVAL_PPE SMBC - L7 - FEV/2028 - ROF TB164651 | USD | - | 70.189.765,14 | - | 365.920.302,60 | 0,6% | 30,2% |
| RAÍZEN S.A. | THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED | Sim | PPE HSBC - L7 - FEV/2028 - ROF TB163924 | USD | - | 85.849.555,41 | - | 447.559.487,22 | 0,7% | 30,9% |
| RAÍZEN S.A. | JPMORGAN CHASE BANK, N.A. | Sim | PPE LP JPMORGAN USD50M 28.04.25 - ROF TB168066 | USD | - | 51.006.854,33 | - | 265.914.033,70 | 0,4% | 31,3% |
| RAÍZEN S.A. | MUFG BANK, LTD. | Sim | PPE LP MUFG USD100M 29.04.25 - ROF TB168146 | USD | - | 100.618.537,78 | - | 524.554.623,00 | 0,8% | 32,1% |
| RAÍZEN S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE LP RABOBANK USD30M 29.04.25 - ROF TB168055 | USD | - | 30.617.840,10 | - | 159.619.943,14 | 0,3% | 32,4% |
| RAÍZEN S.A. | MUFG BANK, LTD. | Sim | PPE LP MUFG USD75M 30.10.25 | USD | - | 75.444.180,75 | - | 393.313.147,50 | 0,6% | 33,0% |
| RAÍZEN S.A. | THE BANK OF NOVA SCOTIA | Sim | PPE LP SCOTIABANK USD300M 30.10.25 | USD | - | 305.185.418,67 | - | 1.591.023.132,71 | 2,6% | 35,6% |
| RAÍZEN S.A. | JPMORGAN CHASE BANK, N.A. | Sim | AVAL PPE JPM - L7 - FEV/2030 - ROF TB164089 | USD | - | 100.283.222,78 | - | 522.808.525,32 | 0,8% | 36,4% |
| RAÍZEN S.A. | BANCO CITIBANK S.A. | Sim | AVAL NCE CITI - L7 - FEV/30 - BSV1 | USD | - | 83.122.948,50 | - | 433.344.887,40 | 0,7% | 37,1% |
| RAÍZEN S.A. | BANCO BILBAO VIZCAYA ARGENTARIA, S.A. NEW YORK BRANCH | Sim | PPE BBVA - L7 - JAN/2028 - ROF TB182304 | USD | - | 201.741.560,55 | - | 1.051.739.293,26 | 1,7% | 38,8% |
| RAÍZEN S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE RABOBANK USD 50MM 2026 - ROF TB091059 | USD | - | 50.366.611,11 | - | 262.524.120,70 | 0,4% | 39,2% |
| RAÍZEN S.A. | BANK OF AMERICA, N.A. | Sim | PPE SBOF.II BOFA 70MM - ROF TB131086 | USD | - | 70.826.921,00 | - | 369.241.987,41 | 0,6% | 39,8% |
| RAÍZEN S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | Sim | PPE_CREDIT_USD50MM - ROF TB130986 | USD | - | 50.503.125,00 | - | 263.287.941,57 | 0,4% | 40,2% |
| RAÍZEN S.A. | MUFG BANK, LTD. | Sim | PPE LP MUFG USD50M 12.08.25 | USD | - | 50.196.419,17 | - | 261.688.992,64 | 0,4% | 40,7% |
| RAÍZEN S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 20.000.000,00 | - | 104.266.000,00 | 0,2% | 40,8% |
| RAÍZEN S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 20.000.000,00 | - | 104.266.000,00 | 0,2% | 41,0% |
| RAÍZEN S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 10.000.000,00 | - | 52.133.000,00 | 0,1% | 41,1% |
| RAÍZEN S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 15.000.000,00 | - | 78.199.500,00 | 0,1% | 41,2% |
| RAÍZEN S.A. | BNP PARIBAS S.A. | Sim | AVAL ECA | USD | - | 30.008.637,97 | - | 156.433.805,73 | 0,3% | 41,5% |
| RAÍZEN S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 32843267 | BRL | 260.239.664,00 | - | - | 260.239.664,00 | 0,5% | 41,9% |
| RAÍZEN S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO Nº36404095/2003 E 36404174/2023 | BRL | 300.521.410,00 | - | - | 300.521.410,00 | 0,5% | 42,4% |
| RAÍZEN S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 32810121 | BRL | 395.656.626,00 | - | - | 395.656.626,00 | 0,6% | 43,0% |
| RAÍZEN S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | Sim | AVAL REVOLVING LOAN FACILITY AGREEMENT | USD | - | 1.388.750,00 | - | 7.239.670,38 | 0,0% | 43,0% |
| RAÍZEN S.A. | BANCO BRADESCO S.A. | Sim | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 160-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 43,0% |
| RAÍZEN S.A. | Banco Morgan Stanley S.A. | Sim | Operações Derivativas | BRL | 194.215.153,81 | - | - | 194.215.153,81 | 0,3% | 43,3% |
| RAÍZEN S.A. | Banco BNP Paribas Brasil S.A | Sim | Operações Derivativas | BRL | 632.983.716,37 | - | - | 632.983.716,37 | 0,9% | 44,2% |
| RAÍZEN S.A. | BANCO CITIBANK S.A. | Sim | Operações Derivativas | BRL | - | - | - | Nos termos do artigo 160-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,2% |
| RAÍZEN S.A. | BANK OF AMERICA MERRILL LYNCH BANCO MÚLTIPLO S.A. | Sim | Operações Derivativas | BRL | 388.945.345,41 | - | - | 388.945.345,41 | 0,6% | 44,8% |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN S.A. | BANCO CRÉDIT AGRICOLE BRASIL S.A. | Sim | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 183-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,9% |
| RAÍZEN S.A. | BANCO DO BRASIL, S.A. | Sim | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 183-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,9% |
| RAÍZEN S.A. | Scotiabank Brasil S.A. Banco Múltiplo | Sim | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 183-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,9% |
| RAÍZEN S.A. | Banco MUFG Brasil S.A. | Sim | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 183-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,9% |
| RAÍZEN S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | Operações Derivativos | BRL | 31.804.945,02 | - | - | 31.804.945,02 | 0,1% | 44,9% |
| RAÍZEN S.A. | BANCO HSBC S.A. | Sim | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 183-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,9% |
| **Subtotal Créditos Adversos** | | - | - | - | **5.415.401.940,34** | **3.737.618.756,64** | **886.192.300,00** | **27.959.881.939,43** | **44,9%** | **44,9%** |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN S.A. | U.S. BANK NATIONAL ASSOCIATION | Não | AVAL US BOND 2250MM 20.01.2027 | USD | - | 172.935.042,50 | - | 901.562.257,07 | 1,4% | - |
| RAÍZEN S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2032 | USD | - | 458.674.430,39 | - | 2.391.207.407,95 | 3,8% | - |
| RAÍZEN S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2054 | USD | - | 710.599.982,54 | - | 3.704.414.469,98 | 5,9% | - |
| RAÍZEN S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2035 | USD | - | 725.194.608,07 | - | 3.780.501.663,91 | 6,1% | - |
| RAÍZEN S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2054 | USD | - | 407.211.493,15 | - | 2.122.915.677,24 | 3,4% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA VII 228.18E,1PE RAÍZEN 1'1PS_CRA019003/3 | BRL | 232.792.882,92 | - | - | 232.792.882,92 | 0,4% | - |
| RAÍZEN S.A. | OPEA SECURITIZADORA S.A. | Não | AVAL CRA VI IPCA 806MM CRA.2.CIA 2 CRA019000/7 | BRL | 905.715.403,49 | - | - | 905.715.403,49 | 1,5% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA VI 1.560.000.000_1P E RAÍZEN 1'1S_CRA022008NB | BRL | 1.262.945.117,90 | - | - | 1.262.945.117,90 | 2,1% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA IX 940.000.000_1PE RAÍZEN 2'S_CRA022009ND | BRL | 1.138.606.159,36 | - | - | 1.138.606.159,36 | 1,8% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA VII 787.65E,1PE RAÍZEN 1'2'S_CRA019003/3 | BRL | 1.153.262.672,56 | - | - | 1.153.262.672,56 | 1,9% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA VIII 302.42E_1PE RAÍZEN 1'PS_CRA020001P7 | BRL | 501.203.718,45 | - | - | 501.203.718,45 | 0,8% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA VIII 728.05E_1PE RAÍZEN 1'PS_CRA020001P9 | BRL | 1.036.294.576,25 | - | - | 1.036.294.576,25 | 1,7% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA DOCTOR X - 1' SÉRIE - 10/2033_CRA023003R7 | BRL | 587.943.906,36 | - | - | 587.943.906,36 | 0,9% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA DOCTOR X - 1' SÉRIE - 10/2030_CRA023005R6 | BRL | 218.430.067,03 | - | - | 218.430.067,03 | 0,4% | - |
| RAÍZEN S.A. | TRUE SECURITIZADORA S.A. | Não | AVAL CRA DOCTOR X - 2' SÉRIE - 10/2033_CRA023005R6 | BRL | 301.264.360,68 | - | - | 301.264.360,68 | 0,5% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURE INCENTIVADA 4' SERIE ÚNICA RES414 | BRL | 1.008.259.859,67 | - | - | 1.008.259.859,67 | 1,6% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURE INCENTIVADA 9' EMISSÃO - RES415 | BRL | 241.267.186,67 | - | - | 241.267.186,67 | 0,4% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURE INCENTIVADA - RES427 | BRL | 536.888.542,23 | - | - | 536.888.542,23 | 0,9% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURE INCENTIVADA - RES417 | BRL | 861.766.942,95 | - | - | 861.766.942,95 | 1,3% | - |
| RAÍZEN S.A. | BANK OF CHINA LIMITED, GRAND CAYMAN BRANCH | Não | AVAL PPE BANK OF CHINA USD 150 MILHÕES ROF TB103957 | USD | - | 162.475.653,35 | - | 794.002.261,48 | 1,3% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURES INCENTIVADA - 3' EMISSÃO - 1' SÉRIE RAIZ13 | BRL | 958.673.055,24 | - | - | 958.673.055,24 | 1,5% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA - 3' EMISSÃO RSA - 2' SÉRIE RAIZ23 | BRL | 692.267.301,90 | - | - | 692.267.301,90 | 1,1% | - |
| RAÍZEN S.A. | CITIBANK N.A | Não | AVAL FIDEIMPO | USD | - | 6.270.798,16 | - | 32.691.552,25 | 0,1% | - |
| RAÍZEN S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL RETAP BOND 2054 | USD | - | 610.817.239,72 | - | 3.184.373.515,83 | 5,1% | - |
| RAÍZEN S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2037 | USD | - | 686.078.467,01 | - | 3.582.372.876,33 | 5,8% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURES - 2' EMISSÃO RSA RAIZ12 | BRL | 1.081.109.790,73 | - | - | 1.081.109.790,73 | 1,7% | - |
| RAÍZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURES - 4' EMISSÃO RSA RAIZ14 | BRL | 868.635.172,83 | - | - | 868.635.172,83 | 1,4% | - |
| RAÍZEN S.A. | XP COMERCIALIZADORA DE ENERGIA S.A. | Não | AVAL CONTRATO DE COMPRA E VENDA DE ENERGIA ELÉTRICA LP 35.2023 | BRL | 170.000.000,00 | - | - | 170.000.000,00 | 0,3% | - |
| RAÍZEN S.A. | XP INVESTIMENTOS CORRETORA DE CÂMBIO, TÍTULOS E VALORES MOBILIÁRIOS S.A. | Não | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 183-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. | Deutsche Bank S.A | Não | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 183-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. | Banco Mizuho do Brasil S.A. | Não | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 183-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. | BTG PACTUAL S.A. | Não | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 183-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. | Macquarie Bank LTD | Não | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 183-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN S.A. | Goldman Sachs do Brasil Banco Múltiplo S.A | Não | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 183-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| **Subtotal Créditos Não Adversos** | | - | - | - | **13.607.364.626,22** | **3.932.166.114,79** | **-** | **34.363.316.502,06** | **55,1%** | **-** |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Total** | | - | - | - | **19.272.776.760,56** | **7.870.916.911,43** | **886.192.300,00** | **62.323.112.491,50** | **100,0%** | **44,9%** |

RAÍZEN ENERGIA S.A.

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.300% Notes due 2027 | Sim | US BOND 2254NM 20.01.3027 | USD | - | 16.200.028,19 | - | 84.455.606,96 | 0,1% | 0,1% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.250% Notes due 2032 | Sim | BOND 2032 | USD | - | 299.388.486,28 | - | 1.560.854.128,52 | 2,5% | 2,6% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.450% Green Notes due 2054 | Sim | BOND 2054 | USD | - | 290.125.593,79 | - | 1.513.555.757,92 | 2,4% | 5,0% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.700% Green Notes due 2035 | Sim | BOND 2035 | USD | - | 283.228.858,60 | - | 1.476.546.581,94 | 2,3% | 7,4% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.500% Green Notes due 2054 | Sim | BOND 2054 | USD | - | 93.271.145,74 | - | 486.250.464,08 | 0,8% | 8,1% |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | Sim | AVAL RETIAP BOND 2054 | USD | - | 138.956.718,61 | - | 729.373.696,13 | 1,2% | 9,3% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.700% Notes due 2037 | Sim | BOND 2037 | USD | - | 313.713.175,66 | - | 1.635.460.919,52 | 2,6% | 11,9% |
| RAÍZEN ENERGIA S.A. | ITAÚ UNIBANCO S.A. | Sim | DEBENTURE INCENTIVADA 4ª SERIE ÚNICA RESA14 | BRL | 286.432.592,93 | - | - | 286.432.592,93 | 0,5% | 12,3% |
| RAÍZEN ENERGIA S.A. | BNP PARIBAS | Sim | AVAL LOAN SACE 300MM | EUR | - | - | 303.278.433,33 | 1.844.869.158,14 | 2,9% | 15,3% |
| RAÍZEN ENERGIA S.A. | BNP PARIBAS | Sim | AVAL LOAN SACE X200MM | EUR | - | - | 200.913.866,67 | 1.214.182.770,46 | 1,9% | 17,2% |
| RAÍZEN ENERGIA S.A. | BANK OF AMERICA, N.A. | Sim | PPE BOFA - LT - JAN/2026 - ROF TB165586 - B5V1 | USD | - | 100.563.471,67 | - | 524.423.945,94 | 0,8% | 18,0% |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CPR-F 750MM | BRL | 783.228.402,50 | - | - | 783.228.402,50 | 1,2% | 19,3% |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CPR-F 250MM | BRL | 261.175.737,50 | - | - | 261.175.737,50 | 0,4% | 19,7% |
| RAÍZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | CPRF 856A - LP - ABR/2030 | BRL | 203.233.347,05 | - | - | 203.233.347,05 | 0,3% | 20,0% |
| RAÍZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | CPRF 856A - LP - JUN/2030 | BRL | 310.007.330,70 | - | - | 310.007.330,70 | 0,5% | 20,5% |
| RAÍZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | CPRF 856A - LP - JUN/2027 | BRL | 722.710.157,56 | - | - | 722.710.157,56 | 1,1% | 21,7% |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) SA | Sim | CPRF SANTANDER - LP - JUN/2028 | BRL | 667.177.032,00 | - | - | 667.177.032,00 | 1,1% | 22,7% |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) SA | Sim | CPRF SANTANDER - LP - AGO/2028 | BRL | 267.803.049,00 | - | - | 267.803.049,00 | 0,4% | 23,2% |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CPRF BRADESCO - LP - JUL/2030 | BRL | 766.904.647,50 | - | - | 766.904.647,50 | 1,2% | 24,4% |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sim | CREDITO RURAL LIVRE BRL 293MM - LT JUL/28 | BRL | 273.848.561,00 | - | - | 273.848.561,00 | 0,4% | 24,8% |
| RAÍZEN ENERGIA S.A. | BANCO DO BRASIL S.A. | Sim | NCE BB NR.20/00100-2 | BRL | 1.033.507.558,00 | - | - | 1.033.507.558,00 | 1,6% | 26,4% |
| RAÍZEN ENERGIA S.A. | BNP PARIBAS | Sim | PPE_BNP_USD125MLN - ROF TB159571 | USD | - | 75.154.781,47 | - | 391.854.317,97 | 0,6% | 27,1% |
| RAÍZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE CP RABOBANK USD 100M 09.05.22 ROF TB130481 | USD | - | 102.960.666,57 | - | 536.243.513,33 | 0,9% | 27,9% |
| RAÍZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE LP RABOBANK USD 200M 12.05.22 (VCTO 11.05.27) ROF TB184503 | USD | - | 200.733.500,00 | - | 1.046.483.955,55 | 1,7% | 29,6% |
| RAÍZEN ENERGIA S.A. | BANK OF AMERICA, N.A. | Sim | PPE LP BOFA USD 50M MAI.22 (VENCTO 26.05.27) ROF TB190559 | USD | - | 50.061.304,11 | - | 260.984.596,72 | 0,4% | 30,0% |
| RAÍZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | PPE LP SMBC USD 200M JUN.22 (VENCTO 14.06.27) ROF TB197846 | USD | - | 202.200.166,66 | - | 1.054.132.128,05 | 1,7% | 31,7% |
| RAÍZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | PPE SMBC - ST - MAR/26 - ROF TB165513 | USD | - | 102.598.116,86 | - | 534.874.762,78 | 0,8% | 32,5% |
| RAÍZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | PPE LP BSV1 RABOBANK USD44M 10.04.25 - ROF TB161284 | USD | - | 45.036.392,92 | - | 234.788.202,55 | 0,4% | 32,9% |
| RAÍZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | AVAL PPE SMBC - LT - FEV/2026 - ROF TB164631 | USD | - | 70.189.765,14 | - | 365.920.302,60 | 0,6% | 33,5% |
| RAÍZEN ENERGIA S.A. | THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED | Sim | AVAL PPE HSBC - LT - FEV/2026 - ROF TB163924 | USD | - | 85.849.593,41 | - | 447.559.497,22 | 0,7% | 34,2% |
| RAÍZEN ENERGIA S.A. | JPMORGAN CHASE BANK, N.A. | Sim | AVAL PPE LP JPMORGAN USD30M 28.04.25 - ROF TB166066 | USD | - | 51.006.854,33 | - | 265.914.033,70 | 0,4% | 34,6% |
| RAÍZEN ENERGIA S.A. | MUFG BANK, LTD | Sim | AVAL PPE LP MUFG USD100M 29.04.25 - ROF TB166146 | USD | - | 100.618.537,78 | - | 524.554.823,00 | 0,8% | 35,4% |
| RAÍZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | AVAL PPE LP RABOBANK USD30M 29.04.25 - ROF TB166055 | USD | - | 30.617.942,10 | - | 159.618.943,14 | 0,3% | 35,7% |
| RAÍZEN ENERGIA S.A. | MUFG BANK, LTD | Sim | AVAL PPE LP MUFG USD70M 30.10.25 | USD | - | 75.444.190,75 | - | 393.312.147,30 | 0,6% | 36,3% |
| RAÍZEN ENERGIA S.A. | THE BANK OF NOVA SCOTIA | Sim | AVAL PPE LP SCOTIABANK USD300M 30.10.25 | USD | - | 305.195.416,67 | - | 1.591.023.132,71 | 2,5% | 38,8% |
| RAÍZEN ENERGIA S.A. | JPMORGAN CHASE BANK, N.A. | Sim | AVAL PPE JPM - LT - FEV/2030 - ROF TB164589 | USD | - | 100.283.222,78 | - | 522.856.526,32 | 0,8% | 39,7% |
| RAÍZEN ENERGIA S.A. | BANCO CITIBANK S.A. | Sim | NCE CITI - LT - FEV/26 - B5V1 | USD | - | 83.122.648,92 | - | 433.344.867,40 | 0,7% | 40,4% |
| RAÍZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | Sim | AVAL PPE RABOBANK USD 50MM 2026 - ROF TB681931 | USD | - | 50.358.611,11 | - | 262.524.120,70 | 0,4% | 40,8% |
| RAÍZEN ENERGIA S.A. | BANK OF AMERICA, N.A. | Sim | AVAL PPE SBOP II BOFA 70MM - ROF TB131086 | USD | - | 70.826.921,03 | - | 369.241.987,41 | 0,6% | 41,4% |
| RAÍZEN ENERGIA S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | Sim | AVAL PPE_CREDIT_USD50MM - ROF TB130986 | USD | - | 50.503.125,00 | - | 263.267.941,57 | 0,4% | 41,8% |
| RAÍZEN ENERGIA S.A. | MUFG BANK, LTD | Sim | AVAL PPE LP MUFG USD50M 12.08.25 | USD | - | 50.196.416,17 | - | 261.688.982,04 | 0,4% | 42,2% |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 20.000.000,00 | - | 104.266.000,00 | 0,2% | 42,4% |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 20.000.000,00 | - | 104.266.000,00 | 0,2% | 42,5% |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 10.000.000,00 | - | 52.133.000,00 | 0,1% | 42,6% |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER S.A. | Sim | AVAL EXPORT PRE-FINANCING | USD | - | 15.000.000,00 | - | 78.199.500,00 | 0,1% | 42,7% |
| RAÍZEN ENERGIA S.A. | BNP PARIBAS S.A. | Sim | AVAL ECA | USD | - | 30.008.637,97 | - | 156.433.805,73 | 0,2% | 43,0% |
| RAÍZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVICOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 329420B7 | BRL | 262.238.864,00 | - | - | 262.238.864,00 | 0,5% | 43,0% |
| RAÍZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVICOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO Nº364048650323 E 364041743D23 | BRL | 300.521.410,00 | - | - | 300.521.410,00 | 0,5% | 43,6% |
| RAÍZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVICOS S.A. | Sim | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 326191123 | BRL | 365.656.826,00 | - | - | 365.656.826,00 | 0,6% | 44,5% |
| RAÍZEN ENERGIA S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | Sim | AVAL REVOLVING LOAN FACILITY AGREEMENT | USD | - | 1.386.750,00 | - | 7.229.975,36 | 0,0% | 44,6% |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | Sm | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 163-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 44,6% |
| RAÍZEN ENERGIA S.A. | Banco Morgan Stanley S.A. | Sm | Operações Derivativos | BRL | 399.874.329,47 | - | - | 399.874.329,47 | 0,6% | 45,2% |
| RAÍZEN ENERGIA S.A. | Banco BNP Paribas Brasil S.A | Sm | Operações Derivativos | BRL | 72.920.287,19 | - | - | 72.920.287,19 | 0,1% | 45,3% |
| RAÍZEN ENERGIA S.A. | BANCO CITIBANK S.A. | Sm | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 163-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 45,3% |
| RAÍZEN ENERGIA S.A. | BANCO CRÉDIT AGRICOLE BRASIL S.A. | Sm | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 163-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 45,3% |
| RAÍZEN ENERGIA S.A. | BANCO DO BRASIL S.A. | Sm | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 163-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 45,3% |
| RAÍZEN ENERGIA S.A. | COOPERATIVE RABOBANK U.A. | Sm | Operações Derivativos | BRL | 10.350.978,17 | - | - | 10.350.978,17 | 0,0% | 45,3% |
| Raízen Energia S.A. | JP Morgan Chase Bank, NA | Sm | Operações Derivativos | USD | 9.860.078,78 | - | - | 51.403.546,70 | 0,1% | 45,4% |
| **Subtotal Créditos Aderentes** | **-** | **-** | **-** | **-** | **7.037.442.602,06** | **3.545.737.311,07** | **566.192.300,00** | **28.591.986.897,21** | **45,4%** | **45,4%** |
| | | | | | | | | | | |
| RAÍZEN ENERGIA S.A. | U.S. BANK NATIONAL ASSOCIATION | Não | AVAL US BOND 22SMM/20.01.2027 | USD | 172.055.542,50 | - | - | 951.562.257,07 | 1,4% | - |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2032 | USD | 458.674.430,39 | - | - | 2.591.257.407,95 | 3,8% | - |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2034 | USD | 710.909.992,54 | - | - | 3.784.414.488,98 | 5,9% | - |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2035 | USD | 725.164.808,07 | - | - | 3.780.531.693,91 | 6,3% | - |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2054 | USD | 407.211.493,15 | - | - | 2.122.915.677,34 | 3,4% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA VII 228.190_1PE RAÍZEN 1°PS_CRA01900XV2 | BRL | 232.762.862,92 | - | - | 232.762.862,92 | 0,4% | - |
| RAÍZEN ENERGIA S.A. | OPEA SECURITIZADORA S.A. | Não | CRA VI PCA 600MM CRA.2.CIA.2.CRA01900XGT | BRL | 955.715.403,49 | - | - | 955.715.403,49 | 1,4% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA IX 1.060.000.000_1P.E RAÍZEN 1°S_CRA02200IN8 | BRL | 1.262.945.117,90 | - | - | 1.262.945.117,90 | 2,0% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA IX 940.000.000_1PE RAÍZEN 2°S_CRA02200IMO | BRL | 1.138.608.159,36 | - | - | 1.138.608.159,36 | 1,8% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA VII 787.658_1PE RAÍZEN 1°PS_CRA01900IV3 | BRL | 1.153.262.672,98 | - | - | 1.153.262.672,98 | 1,8% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA VIII 352.426_1CPE RAÍZEN 1°PS_CRA02000IP7 | BRL | 501.203.718,45 | - | - | 501.203.718,45 | 0,8% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA VIII 728.056_1CPE RAÍZEN 2°PS_CRA02000IYR | BRL | 1.036.294.578,25 | - | - | 1.036.294.578,25 | 1,6% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA DOCTOR X - 3ª SÉRIE - 10/2033_CRA02000JR7 | BRL | 567.943.999,36 | - | - | 567.943.999,36 | 0,9% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA DOCTOR X - 1ª SÉRIE - 10/2033_CRA02000JR5 | BRL | 218.430.067,00 | - | - | 218.430.067,00 | 0,3% | - |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | Não | CRA DOCTOR X - 2ª SÉRIE - 10/2033_CRA02000JR6 | BRL | 301.264.360,68 | - | - | 301.264.360,68 | 0,5% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA 4ª SÉRIE ÚNICA RESI14 | BRL | 1.008.259.859,87 | - | - | 1.008.259.859,87 | 1,6% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA 6ª EMISSÃO - RESI15 | BRL | 241.267.186,67 | - | - | 241.267.186,67 | 0,4% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA - RESI47 | BRL | 536.888.542,23 | - | - | 536.888.542,23 | 0,9% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | DEBENTURE INCENTIVADA - RESI417 | BRL | 961.798.942,95 | - | - | 961.798.942,95 | 1,5% | - |
| RAÍZEN ENERGIA S.A. | BANK OF CHINA LIMITED, GRAND CAYMAN BRANCH | Não | PPE BANK OF CHINA USD 150 MILHÕES ROF TB133967 | USD | 152.475.833,26 | - | - | 794.902.261,46 | 1,3% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURES INCENTIVADA - 3ª EMISSÃO - 1ª SÉRIE RAIZ13 | BRL | 958.673.955,24 | - | - | 958.673.955,24 | 1,5% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURE INCENTIVADA - 3ª EMISSÃO RDA - 2ª SÉRIE RAIZ23 | BRL | 652.287.301,90 | - | - | 652.287.301,90 | 1,1% | - |
| RAÍZEN ENERGIA S.A. | CITIBANK N.A | Não | AVAL FIDEIMPO | USD | 6.270.788,16 | - | - | 32.691.502,05 | 0,1% | - |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL RETAP BOND 2054 | USD | 610.817.230,72 | - | - | 3.184.373.515,88 | 5,3% | - |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | Não | AVAL BOND 2037 | USD | 689.078.467,01 | - | - | 3.592.372.878,33 | 5,7% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURES - 2ª EMISSÃO RDA RAIZ12 | BRL | 1.061.109.790,73 | - | - | 1.061.109.790,73 | 1,7% | - |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | Não | AVAL DEBENTURES - 4ª EMISSÃO RDA RAIZ14 | BRL | 868.635.172,63 | - | - | 868.635.172,63 | 1,4% | - |
| RAÍZEN ENERGIA S.A. | XP COMERCIALIZADORA DE ENERGIA S.A. | Não | AVAL CONTRATO DE COMPRA E VENDA DE ENERGIA ELÉTRICA LP.35.2023 | BRL | 170.000.000,00 | - | - | 170.000.000,00 | 0,3% | - |
| RAÍZEN ENERGIA S.A. | XP INVESTIMENTOS CORRETORA DE CÂMBIO, TÍTULOS E VALORES MOBILIÁRIOS S.A | Não | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 163-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| RAÍZEN ENERGIA S.A. | Goldman Sachs do Brasil Banco Múltiplo S.A | Não | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 163-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | - |
| **Subtotal Créditos Não Aderentes** | **-** | **-** | **-** | **-** | **13.807.368.020,22** | **3.933.199.114,79** | **-** | **34.362.319.082,55** | **54,6%** | **-** |
| | | | | | | | | | | |
| **Total** | **-** | **-** | **-** | **-** | **20.894.811.422,08** | **7.478.935.426,86** | **566.192.300,00** | **62.943.017.459,27** | **100,0%** | **45,4%** |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 64

**RAÍZEN CENTRO-SUL PAULISTA S.A.**

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN CENTRO-SUL PAULISTA S.A. | SUMITOMO MITSUI BANKING CORPORATION | Sim | PPE SMBC - LT - FEV/2028 - ROF TB164631 | USD | - | 70.199.765,14 | - | 365.920.302,60 | 41,2% | 41,2% |
| RAÍZEN CENTRO-SUL PAULISTA S.A. | JPMORGAN CHASE BANK, N.A. | Sim | PPE JPM - LT - FEV/2030 - ROF TB164589 | USD | - | 100.283.222,78 | - | 522.806.525,32 | 58,8% | 100,0% |
| Subtotal Créditos Aderentes | - | | - | - | | 170.472.987,92 | - | 888.726.827,92 | 100,0% | 100,0% |
| Total | - | - | - | - | - | 170.472.987,92 | - | 888.726.827,92 | 100,0% | 100,0% |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 65

**RAÍZEN CENTRO-SUL S.A.**

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN CENTRO-SUL S.A. | BANCO ITAÚ UNIBANCO S.A. | Sim | Operações Derivativos | BRL | 3.500.000,00 | - | - | 3.500.000,00 | 76,8% | 76,8% |
| RAÍZEN CENTRO-SUL S.A. | COOPERATIEVE RABOBANK U.A. | Sim | Operações Derivativos | BRL | 1.060.000,00 | - | - | 1.060.000,00 | 23,2% | 100,0% |
| Subtotal Créditos Aderentes | - | | - | - | 4.560.000,00 | - | - | 4.560.000,00 | 100,0% | 100,0% |
| Total | - | - | - | - | 4.560.000,00 | - | - | 4.560.000,00 | 100,0% | 100,0% |

**BLUEWAY TRADING IMPORTACAO E EXPORTACAO S.A.**

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| BLUEWAY TRADING IMPORTACAO E EXPORT | BANCO ITAÚ UNIBANCO S.A. | Sim | Operações Derivativos | BRL | 2.744.211,48 | - | - | 2.744.211,48 | 100,0% | 100,0% |
| Subtotal Créditos Aderentes | - | | - | | 2.744.211,48 | - | - | 2.744.211,48 | 100,0% | 100,0% |
| | | | | | | | | | | |
| BLUEWAY TRADING IMPORTACAO E EXPORT | Goldman Sachs do Brasil Banco Múltiplo S.A | Não | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 0,0% | 0,0% |
| Subtotal Créditos Não Aderentes | - | | - | | - | - | - | | 0,0% | 0,0% |
| | | | | | | | | | | |
| Total | - | | - | - | 2.744.211,48 | - | - | 2.744.211,48 | 100,0% | 100,0% |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 67

**RAÍZEN TRADING S.A.**

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN TRADING S.A. | CITIBANK N.A. | Sim | Operações Derivativos | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano | 100,0% | 100,0% |
| Subtotal Créditos Aderentes | - | | - | - | - | - | - | - | 100,0% | 100,0% |
| Total | - | - | - | - | - | - | - | - | 100,0% | 100,0% |

RAÍZEN FUELS FINANCE S.A.

| Devedora Principal ou Garantidora | Credor | Signatário? | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.300% Notes due 2027 | Sim | US BOND 225MM 20.01.2027 | USD | - | 16.200.028,19 | - | 84.455.606,96 | 0,3% | 0,3% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.250% Notes due 2032 | Sim | BOND 2032 | USD | - | 299.398.486,28 | - | 1.560.854.128,52 | 5,2% | 5,4% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.450% Green Notes due 2034 | Sim | BOND 2034 | USD | - | 290.325.850,79 | - | 1.513.555.757,92 | 5,0% | 10,4% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 5.700% Green Notes due 2035 | Sim | BOND 2035 | USD | - | 283.228.858,60 | - | 1.476.546.581,94 | 4,9% | 15,3% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.950% Green Notes due 2054 | Sim | BOND 2054 | USD | - | 93.271.145,74 | - | 486.250.464,09 | 1,6% | 16,9% |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Sim | RETAP BOND 2054 | USD | - | 139.906.718,61 | - | 729.373.696,13 | 2,4% | 19,4% |
| RAÍZEN FUELS FINANCE S.A. | Grupo Ad Hoc de Bondholders das 6.700% Notes due 2037 | Sim | BOND 2037 | USD | - | 313.713.179,66 | - | 1.635.480.919,52 | 5,4% | 24,8% |
| RAÍZEN FUELS FINANCE S.A. | BNP PARIBAS | Sim | LOAN SACE 300MM | EUR | - | - | 305.278.433,33 | 1.844.889.156,14 | 6,1% | 30,9% |
| RAÍZEN FUELS FINANCE S.A. | BNP PARIBAS | Sim | LOAN SACE II 200MM | EUR | - | - | 200.913.866,67 | 1.214.182.770,45 | 4,0% | 34,9% |
| RAÍZEN FUELS FINANCE S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | Sim | REVOLVING LOAN FACILITY AGREEMENT | USD | - | 1.388.750,00 | - | 7.239.970,38 | 0,0% | 34,9% |
| Subtotal Créditos Aderentes | - | - | - | - | - | 1.437.431.017,87 | 506.192.300,00 | 10.552.831.652,05 | 34,9% | 34,9% |
| | | | | | | | | | | |
| RAÍZEN FUELS FINANCE S.A. | U.S. BANK NATIONAL ASSOCIATION | Não | US BOND 225MM 20.01.2027 | USD | - | 172.935.042,50 | - | 901.562.257,07 | 3,0% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2032 | USD | - | 458.674.430,39 | - | 2.391.207.407,95 | 7,9% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2034 | USD | - | 710.569.982,54 | - | 3.704.414.489,98 | 12,3% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2035 | USD | - | 725.164.808,07 | - | 3.780.501.693,91 | 12,5% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2054 | USD | - | 407.211.493,15 | - | 2.122.915.677,24 | 7,0% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | RETAP BOND 2054 | USD | - | 610.817.239,72 | - | 3.184.373.515,83 | 10,5% | - |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | Não | BOND 2037 | USD | - | 689.078.487,01 | - | 3.592.372.876,33 | 11,9% | - |
| Subtotal Créditos Não Aderentes | - | - | - | - | - | 3.774.451.483,38 | - | 19.677.347.918,31 | 65,1% | - |
| | | | | | | | | | | |
| Total | - | - | - | - | - | 5.211.882.501,25 | 506.192.300,00 | 30.230.179.570,36 | 100,0% | 34,9% |

RAIZEN CAARAPO ACUCAR E ALCOOL LTDA

| Devedora Principal ou Garantidora | Credor | Tipo Credor | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN CAARAPO ACUCAR E ALCOOL LTDA | BANK OF AMERICA MERRILL LYNCH BANCO MÚLTIPLO S.A. | Sim | Aval Operações Derivativos | BRL | 388.645.349,41 | - | - | 388.645.349,41 | 100,0% | 100,0% |
| Subtotal Créditos Aderentes | - | - | - | | 388.645.349,41 | - | - | 388.645.349,41 | 100,0% | 100,0% |
| Total | - | - | - | | 388.645.349,41 | - | - | 388.645.349,41 | 100,0% | 100,0% |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 70

**RAÍZEN NORTH AMERICA INC**

| Devedora Principal ou Garantidora | Credor | Tipo Credor | Contrato | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO | % Crédito Sujeito | % Crédito Aderente Acc. |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN NORTH AMERICA INC | RAIZEN TRADING S.A. | Não | - | USD | - | 68.178.597,27 | - | 355.435.481,15 | N/A | N/A |
| Total | | - | - | | - | 68.178.597,27 | - | 355.435.481,15 | N/A | N/A |

**Anexo D**

USD Ptax Compra (09/03/26)      5,2120
EUR Ptax Compra (09/03/26)      6,0423

Consolidado

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN FUELS FINANCE S.A. | U.S. BANK NATIONAL ASSOCIATION | NÃO APLICÁVEL | US BOND 225MM 30.01.2027 | 20/01/2027 | 100 WALL STREET, 16TH FLOOR, NEW YORK, NEW YORK 10005, USA | PIERRE.DESAULNIERS@USBANK.COM; LOGAN.GIESEKE@USBANK.COM; TUAN.PHAN1@USBANK.COM; MICHELLE.MENA@USBANK.COM | USD | - | 169.135.070,69 | - | 998.017.864,03 |
| RAIZEN FUELS FINANCE S.A. | BNP PARIBAS | NÃO APLICÁVEL | LOAN SACE 300MM | 21/09/2035 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MANA@BR.BNPPARIBAS.COM; FELIPE.IRANI@BR.BNPPARIBAS.COM | EUR | - | - | 305.278.433,33 | 1.844.888.156,14 |
| RAIZEN FUELS FINANCE S.A. | BNP PARIBAS | NÃO APLICÁVEL | LOAN SACE X 200MM | 23/07/2036 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MANA@BR.BNPPARIBAS.COM; FELIPE.IRANI@BR.BNPPARIBAS.COM | EUR | - | - | 200.913.866,67 | 1.214.182.770,45 |
| RAIZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2032 | 08/07/2032 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITO@BNY.COM; CENTRAL2EDBILLINGTEAM@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | - | 758.072.916,67 | - | 3.952.361.536,48 |
| RAIZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITO@BNY.COM; CENTRAL2EDBILLINGTEAM@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.000.895.833,33 | - | 5.217.870.347,90 |
| RAIZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2035 | 17/01/2035 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITO@BNY.COM; CENTRAL2EDBILLINGTEAM@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.008.301.666,67 | - | 5.257.348.275,85 |
| RAIZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITO@BNY.COM; CENTRAL2EDBILLINGTEAM@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | - | 500.482.638,89 | - | 2.609.168.141,33 |
| RAIZEN S.A. | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | PPE BOFA – L7 – JAN2028 - RCF TB18396 - BSV1 | 27/01/2028 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG.CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | - | 100.563.471,67 | - | 524.423.945,84 |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CPR-F 750MM | 28/11/2029 | NÚCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANSO@BRADESCO.COM.BR; RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | 780.229.402,50 | - | - | 780.229.402,50 |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CPR-F 250MM | 28/11/2029 | NÚCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANSO@BRADESCO.COM.BR; RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | 261.175.737,50 | - | - | 261.175.737,50 |
| RAIZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/4816-09 | CPRF IBBA – LP – ABR2030 | 28/04/2030 | AVENIDA BRIGADEIRO FARIA LIMA 3500, 1 2 3 PARTE, 4 E 5 ANDARES, ITAIM BIBI, SÃO PAULO, SP, BRASIL, 04538132 | ITAULJUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 203.233.347,05 | - | - | 203.233.347,05 |
| RAIZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/4816-09 | CPRF IBBA – LP – JUN2030 | 13/06/2030 | AVENIDA BRIGADEIRO FARIA LIMA 3500, 1 2 3 PARTE, 4 E 5 ANDARES, ITAIM BIBI, SÃO PAULO, SP, BRASIL, 04538132 | ITAULJUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 310.057.530,79 | - | - | 310.057.530,79 |
| RAIZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/4816-09 | CPRF IBBA – LP – JUN2027 | 14/06/2027 | AVENIDA BRIGADEIRO FARIA LIMA 3500, 1 2 3 PARTE, 4 E 5 ANDARES, ITAIM BIBI, SÃO PAULO, SP, BRASIL, 04538132 | ITAULJUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 722.710.137,56 | - | - | 722.710.137,56 |
| RAIZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) S.A. | 90.400.888/0001-42 | CPRF SANTANDER - LP – JAN2028 | 20/06/2028 | AV. PRES JUSCELINO KUBITSCHEK 2041, VILA NOVA CONCEIÇAO, SAO PAULO, SP, BRASIL, 04543011 | CIVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | BRL | 667.177.032,00 | - | - | 667.177.032,00 |
| RAIZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) S.A. | 90.400.888/0001-42 | CPRF SANTANDER - LP – AGO2028 | 21/08/2028 | AV. PRES JUSCELINO KUBITSCHEK 2041, VILA NOVA CONCEIÇAO, SAO PAULO, SP, BRASIL, 04543011 | CIVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | BRL | 267.803.049,00 | - | - | 267.803.049,00 |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CPRF BRADESCO - LP – JUL2030 | 10/07/2030 | NÚCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANSO@BRADESCO.COM.BR; RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | 796.904.847,50 | - | - | 796.904.847,50 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VII 228,150_1PE RAIZEN 1_PE_CRA01900V2 | 18/07/2029 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 232.782.882,92 | - | - | 232.782.882,92 |
| RAIZEN ENERGIA S.A. | OPEA SECURITIZADORA S.A. | 02.773.542/0001-22 | CRA VI IPCA 600MM CRA.2.CIA.2 CRA01900SG7 | 18/07/2029 | R GERÁSIO, 555, ANEXO TORRE C-PARTE - VILA MADALENA, SÃO PAULO - SP - 05.433-001 | FINANCEIRO@OPEA.COM.BR | BRL | 909.715.403,49 | - | - | 909.715.403,49 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA IX 1.060.000.000_6°E RAIZEN 1°E_CRA02200WB | 17/08/2032 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.262.945.117,00 | - | - | 1.262.945.117,00 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA IX 940.000.000_5°E RAIZEN 2°E_CRA02200WD | 17/08/2027 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.138.658.159,36 | - | - | 1.138.658.159,36 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VII 787.658_6°E RAIZEN 1°E_CRA01900V3 | 18/07/2029 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.153.262.672,56 | - | - | 1.153.262.672,56 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VIII 302,426_1PE RAIZEN 1°E_CRA02000YP7 | 15/08/2027 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 501.203.718,45 | - | - | 501.203.718,45 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VIII 728,556_1PE RAIZEN 2°E_CRA02000YP8 | 17/08/2030 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.036.294.576,25 | - | - | 1.036.294.576,25 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA DOCT7ER A - 3°SÉRIE – 102033_CRA02300JR7 | 17/10/2033 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 567.943.998,36 | - | - | 567.943.998,36 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA DOCT7ER X - 3°SÉRIE – 102033_CRA02300JR6 | 15/10/2030 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 218.430.587,03 | - | - | 218.430.587,03 |
| RAIZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA DOCT7ER X - 2°SÉRIE – 102033_CRA02300JR6 | 17/10/2033 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 301.264.360,68 | - | - | 301.264.360,68 |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CREDITO RURAL LIVRE BRL 250MM – L7 JUL/30 | 11/07/2026 | NÚCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANSO@BRADESCO.COM.BR; RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | 273.648.561,20 | - | - | 273.648.561,20 |
| RAIZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA 4° SÉRIE ÚNICA RESA14 | 16/11/2026 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 E 303 E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 1.294.692.452,80 | - | - | 1.294.692.452,80 |
| RAIZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA 6° EMISSÃO - RESA15 | 15/06/2030 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 E 303 E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 241.287.196,07 | - | - | 241.287.196,07 |
| RAIZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA – RESA17 | 15/03/2032 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 E 303 E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 536.888.542,23 | - | - | 536.888.542,23 |
| RAIZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA – RESA17 | 15/03/2029 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 E 303 E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 861.798.942,95 | - | - | 861.798.942,95 |
| RAIZEN ENERGIA S.A. | BANCO DO BRASIL S.A. | 00.000.000/0001-91 | NCE BB NR.200010S-2 | 20/12/2029 | QUADRA QUADRA 5 BLOCO B TORRE I, II, III, ANDAR T I SL S101 A S1602 T II SL C101 A C1602 T III SL N101 A N1602, ASA NORTE, BRASILIA, DF, BRASIL, 70040912 | SECEX@BB.COM.BR | BRL | 1.033.507.056,00 | - | - | 1.033.507.056,00 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN ENERGIA S.A. | BNP PARIBAS | NÃO APLICÁVEL | PPE_BNP_USD12BMLN - ROF T8130571 | 27/03/2029 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MAIA@BR.BNPPARIBAS.COM; FELIPE.RIANI@BR.BNPPARIBAS.COM | USD | - | 75.154.781,47 | 391.804.317,37 |
| RAIZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE CP RABOBANK USD 100M 06.05.22 ROF T8130461 | 23/03/2029 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240 N° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SÃO FRANCISCO, SÃO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSISTANTWM@CORAZIL@RABOBANK.COM | USD | - | 102.980.666,67 | 536.343.513,53 |
| RAIZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE LP RABOBANK USD 200M 12.05.22 (VCTO 11.05.27) ROF T8194608 | 11/05/2027 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240 N° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SÃO FRANCISCO, SÃO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSISTANTWM@CORAZIL@RABOBANK.COM | USD | - | 200.732.500,00 | 1.046.482.955,55 |
| RAIZEN ENERGIA S.A. | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | PPE LP BOFA USD 50M MAI.22 (VENCTO 28.05.27) ROF T8106559 | 28/05/2027 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG_CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | - | 50.061.304,11 | 260.984.596,72 |
| RAIZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | PPE LP SMBC USD 200M JUN.22 (VENCTO 14.06.27) ROF T8107946 | 14/06/2027 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIANI.COUTINHO@SMBCGROUP.COM; JOAQUIM.MARQUES@SMBCGROUP.COM.BR; RODRIGO_TORRES@SMBCGROUP.COM.BR; CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | - | 202.200.166,66 | 1.054.130.126,85 |
| RAIZEN ENERGIA S.A. | BANK OF CHINA LIMITED, GRAND CAYMAN BRANCH | NÃO APLICÁVEL | PPE LP BANK OF CHINA USD 150 MILHÕES ROF T8133937 | 09/05/2029 | GRAND PAVILION COMMERCIAL CENTER 802 WEST BAY ROAD – P.O BOX 30995, GRAND CAYMAN KY1-1204 – CAYMAN ISLANDS / AVENIDA PAULISTA, 901, 14TH FLOOR – ZIP CODE: 01311-100, SÃO PAULO, SP, BRASIL | XU.LEI@BOC.BRAZIL.COM; RICARDO.MANGIONE@BOCBRASIL.COM.BR; BAI.YUN@BOC-BRAZIL.COM; AUGUSTO.PASSONI@BOCBRASIL.COM.BR / JHHY.BRITO@BOCBRASIL.COM.BR; VICTOR.GUEDES@BOC-BRAZIL.COM; FREDERICO.LIMA@BOCBRASIL.COM.BR; DANIEL.BALMANN@BOC-BRAZIL.COM | USD | - | 152.475.833,25 | 794.902.361,48 |
| RAIZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | PPE SMBC - 5T - MAR/25 - ROF T8165513 | 14/03/2028 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIANI.COUTINHO@SMBCGROUP.COM; JOAQUIM.MARQUES@SMBCGROUP.COM.BR; RODRIGO_TORRES@SMBCGROUP.COM.BR; CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | - | 102.598.116,89 | 534.674.762,78 |
| RAIZEN ENERGIA S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE LP BSV1 RABOBANK USD44M 10.04.25 - ROF T8167284 | 10/04/2030 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240 N° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SÃO FRANCISCO, SÃO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSISTANTWM@CORAZIL@RABOBANK.COM | USD | - | 45.036.392,02 | 234.798.222,53 |
| RAIZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | T7.343.682/0001-38 | DEBENTURES INCENTIVADA - 3ª EMISSÃO - 1ª SÉRIE RAIZ13 | 15/09/2034 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 E 303 E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 959.673.055,24 | - | 959.673.055,24 |
| RAIZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | T7.343.682/0001-38 | DEBENTURE INCENTIVADA - 3ª EMISSÃO ROSA - 2ª SÉRIE RAIZ23 | 15/09/2039 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 E 303 E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 682.387.301,90 | - | 682.387.301,90 |
| RAIZEN CENTRO-SUL PAULISTA S.A. | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | PPE SMBC - LT - FEV/2028 - ROF T8164631 | 18/02/2028 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIANI.COUTINHO@SMBCGROUP.COM; JOAQUIM.MARQUES@SMBCGROUP.COM.BR; RODRIGO_TORRES@SMBCGROUP.COM.BR; CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | - | 70.189.760,14 | 365.920.302,60 |
| RAIZEN S.A. | THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED | NÃO APLICÁVEL | PPE HSBC - LT - FEV/2028 - ROF T8163024 | 04/02/2028 | LEVEL 3, HSBC BUILDING MONGKOK, 673 NATHAN ROAD, KOWLOON, HONG KONG | SPECIAL.TS.BKM.GTS.ABN@HSBC.COM.HK | USD | - | 85.849.550,41 | 447.559.487,23 |
| RAIZEN S.A. | JPMORGAN CHASE BANK, N.A. | NÃO APLICÁVEL | PPE LP JPMORGAN USD50M 28.04.25 - ROF T8168066 | 28/04/2030 | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM; NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | - | 51.099.064,33 | 266.914.033,70 |
| RAIZEN S.A. | MUFG BANK, LTD. | NÃO APLICÁVEL | PPE LP MUFG USD100M 29.04.25 - ROF T8169146 | 29/04/2030 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | RARKALIN@US.MUFG.JP | USD | - | 100.618.557,78 | 524.554.823,00 |
| RAIZEN S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE LP RABOBANK USD30M 29.04.25 - ROF T8169055 | 29/04/2030 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240 N° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SÃO FRANCISCO, SÃO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSISTANTWM@CORAZIL@RABOBANK.COM | USD | - | 30.617.840,10 | 159.619.943,14 |
| RAIZEN S.A. | MUFG BANK, LTD. | NÃO APLICÁVEL | PPE LP MUFG USD75M 30.10.25 | 30/10/2029 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | RARKALIN@US.MUFG.JP | USD | - | 75.444.180,75 | 393.312.147,50 |
| RAIZEN S.A. | THE BANK OF NOVA SCOTIA | NÃO APLICÁVEL | PPE LP SCOTIABANK USD300M 30.10.25 | 30/10/2029 | 720 KING STREET WEST, 2ND FLOOR, TORONTO, ONTARIO, CANADA, M5V 2T3 | GMSLOANOPS.INTL@SCOTIABANK.COM | USD | - | 305.189.416,67 | 1.591.023.132,71 |
| RAIZEN CENTRO-SUL PAULISTA S.A. | JPMORGAN CHASE BANK, N.A. | NÃO APLICÁVEL | PPE JPM - LT - FEV/2030 - ROF T8164589 | 18/02/2030 | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM; NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | - | 100.280.222,78 | 522.806.525,32 |
| RAIZEN ENERGIA S.A. | BANCO CITIBANK S.A. | 33.479.023/0001-80 | NCE CITI - LT - FEV/30 - BSV1 | 15/02/2030 | AVENIDA PAULISTA 1111, ANDAR 2 PARTE, BELA VISTA, SÃO PAULO, SP, BRASIL, 01311928 | CONTATODCM@CITI.COM | USD | - | 83.122.946,50 | 433.344.867,40 |
| RAIZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | RETAP BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NY10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITTO@BNY.COM; CENTRAL25DBILLNGTEAM@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | - | 760.723.958,33 | 3.913.749.211,96 |
| RAIZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2037 | 25/02/2037 | 240 GREENWICH STREET – 7E, NEW YORK, NY10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITTO@BNY.COM; CENTRAL25DBILLNGTEAM@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.002.791.666,67 | 5.227.803.795,85 |
| RAIZEN S.A. | BANCO BILBAO VIZCAYA ARGENTARIA, S.A. NEW YORK BRANCH | NÃO APLICÁVEL | PPE BBVA - LT - JAN/2030 - ROF T8163264 | 17/01/2030 | BANCO BILBAO VIZCAYA ARGENTARIA, S.A. NEW YORK BRANCH – TWO, MANHATTAN WEST - 375 9TH AVE - 8TH FLOOR, NEW YORK 10001 | ANDRE.FERRARI@BBVA.COM; CARINA.ZAPPAROLLI@BBVA.COM | USD | - | 201.741.563,55 | 1.051.739.283,26 |
| RAIZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | T7.343.682/0001-38 | DEBÊNTURES - 2ª EMISSÃO RSA RAIZ'2 | 24/06/2031 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 1.081.109.790,73 | - | 1.081.109.790,73 |
| RAIZEN S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | T7.343.682/0001-38 | DEBÊNTURES - 4ª EMISSÃO RSA RAIZ'4 | 15/07/2030 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 868.635.172,63 | - | 868.635.172,63 |
| RAIZEN S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE RABOBANK USD 50MM 2025 - ROF T8091359 | 02/12/2026 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240 N° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SÃO FRANCISCO, SÃO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSISTANTWM@CORAZIL@RABOBANK.COM | USD | - | 50.356.611,11 | 262.524.120,70 |
| RAIZEN S.A. | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | PPE 5BOF X BOFA 70MM - ROF T8131098 | 29/09/2028 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG_CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | - | 70.826.921,03 | 369.241.967,41 |
| RAIZEN S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | NÃO APLICÁVEL | PPE_CREDIT_USD50MM - ROF T8130886 | 29/03/2030 | 1301 AVENUE OF THE AMERICAS, 8TH FLOOR, NEW YORK, NY 10019-6022, UNITED STATES OF AMERICA | JEAN.GOETHALS@CA-CIB.COM; FERNANDO.SALAZAR@CA-CIB.COM | USD | - | 50.503.125,00 | 263.287.941,57 |
| RAIZEN S.A. | MUFG BANK, LTD. | NÃO APLICÁVEL | PPE LP MUFG USD50M 12.08.25 | 10/08/2029 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | RARKALIN@US.MUFG.JP | USD | - | 50.196.416,17 | 261.688.982,94 |
| RAIZEN S.A. / RAIZEN ENERGIA S.A | CITIBANK N.A | NÃO APLICÁVEL | AVAL FIDEIMPO | 12/03/2026 | AV. PAULISTA, Nº 1.111, (LOJA 1, 3 E SOBRELOJA) | JORGE.LIMA@CITI.COM; ROBERTO.GAITAUS@CITI.COM; ALEXANDRE.CASTANHEIRA@CITI.COM | USD | - | 6.270.786,16 | 32.691.502,05 |
| RAIZEN S.A. / RAIZEN ENERGIA S.A | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 21/08/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLÍMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | - | 20.000.000,00 | 104.266.000,00 |
| RAIZEN S.A. / RAIZEN ENERGIA S.A | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 09/07/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLÍMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | - | 20.000.000,00 | 104.266.000,00 |
| RAIZEN S.A. / RAIZEN ENERGIA S.A | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 08/09/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLÍMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | - | 10.000.000,00 | 52.133.000,00 |
| RAIZEN S.A. / RAIZEN ENERGIA S.A | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 17/09/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLÍMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | - | 15.000.000,00 | 78.199.500,00 |
| RAIZEN S.A. / RAIZEN ENERGIA S.A | BNP PARIBAS S.A. | NÃO APLICÁVEL | AVAL ECA | 31/10/2030 | 16 BOULEVARD DES ITALIENS PARIS, 75008 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MAIA@BR.BNPPARIBAS.COM; FELIPE_RIANI@BR.BNPPARIBAS.COM | USD | - | 30.006.637,97 | 156.433.605,73 |

| Razão S.A. / Razão Energia S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVICOS S.A. | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 3284G267 | 31/01/2031 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 292.239.664.00 | - | - | 292.239.664.00 |
| Razão S.A. / Razão Energia S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVICOS S.A. | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO N°964040652022 E 396K41742023 | 31/01/2031 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 300.521.410,00 | - | - | 300.521.410,00 |
| Razão S.A. / Razão Energia S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVICOS S.A. | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 3381Y123 | 31/01/2028 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 385.656.826,00 | - | - | 385.656.826,00 |
| Razão S.A. / Razão Energia S.A. | IP COMERCIALIZADORA DE ENERGIA S.A. | AVAL CONTRATO DE COMPRA E VENDA DE ENERGIA ELÉTRICA LP.35.2023 | 31/01/2031 | AV IPIRES JUSCELINO KUBITSCHEK, 1909 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543807 | CAROLINA.MONTENEGRO@IP.COM.BR, ENERGIA.ESTRUTURADAS@IP.COM.BR | BRL | 170.000.000,00 | - | - | 170.000.000,00 |
| Razão Fuels Finance S.A. | CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK | REVOLVING LOAN FACILITY AGREEMENT | 07/11/2030 | 1301 AVENUE OF THE AMERICAS, NEW YORK CITY, NY 10019 | DANIELA.ALVARADO@CA-CIB.COM / JAIME.FRONTERA@CA-CIB.COM | USD | - | 1.398.750,00 | - | 7.239.970,38 |
| Razão S.A. / Razão Energia S.A. | BANCO BRADESCO S.A. | OPERAÇÕES DERIVATIVOS | 65.746.948/0001-12 | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MARIO@BRADESCO.COM.BR, RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | - | - | - | Nos termos do artigo 155-A do LFR e da Cláusula 2.2.1 do Plano |
| Razão S.A. / Razão Energia S.A. | Banco Morgan Stanley S.A. | OPERAÇÕES DERIVATIVOS | 02.801.938/0001-36 | AVENIDA BRIGADEIRO FARIA LIMA, 3600, 7 ANDAR, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | FERNANDO.MELLO@MORGANSTANLEY.COM, GUSTAVO.SIQUEIRA@MORGANSTANLEY.COM JOAO.CAMAROTA@MORGANSTANLEY.COM, CRISTIANE.QUITERIO@MORGANSTANLEY.COM | BRL | 584.089.463,08 | - | - | 584.089.463,08 |
| Razão S.A. / Razão Energia S.A. | Banco BNP Paribas Brasil S.A. | OPERAÇÕES DERIVATIVOS | 01.522.368/0001-82 | AVENIDA PRESIDENTE JUSCELINO KUBITSCHEK 1909, CONJ 91 - 101 - 111, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543011 | FINANCEIRO@BR.BNPPARIBAS.COM | BRL | 605.914.515,56 | - | - | 605.914.515,56 |
| Razão S.A. / Razão Energia S.A. | BANCO CITIBANK S.A. | 33.479.023/0001-80 | OPERAÇÕES DERIVATIVOS | AVENIDA PAULISTA 1111, ANDAR 2 PARTE, BELA VISTA, SAO PAULO, SP, BRASIL, 01311920 | CONTATOCM@CITI.COM | BRL | - | - | - | Nos termos do artigo 155-A do LFR e da Cláusula 2.2.1 do Plano |
| Razão S.A. | BANK OF AMERICA MERRILL LYNCH BANCO MULTIPLO S.A. | 62.073.200/0001-21 | OPERAÇÕES DERIVATIVOS | AV. BRIGADEIRO FARIA LIMA, 3400, 18O ANDAR 04538-132, SAO PAULO, SP, BRASIL. | DG.TAX_LITIGATION@BOFA.COM | BRL | 388.645.348,41 | - | - | 388.645.348,41 |
| Razão S.A. | BANCO CREDIT AGRICOLE BRASIL S.A. | 75.647.891/0001-71 | OPERAÇÕES DERIVATIVOS | AV BRIG FARIA LIMA, 3900 - ITAIM BIBI, SAO PAULO - 04538132 | CONTABIL.FINANCE@CA-CIB.COM | BRL | - | - | - | Nos termos do artigo 155-A do LFR e da Cláusula 2.2.1 do Plano |
| Razão S.A. / Razão Energia S.A. | BANCO DO BRASIL S.A. | 00.000.000/0001-91 | OPERAÇÕES DERIVATIVOS | QUADRA SAUN QUADRA 5 BLOCO B TORRE I, II, III ANDAR 7 I SL 0101 A S1602 T II SL C101 A C1602 TII SL N101 A N1602, ASA NORTE, BRASILIA, DF, BRASIL, 70040912 | DECEX@BB.COM.BR | BRL | - | - | - | Nos termos do artigo 155-A do LFR e da Cláusula 2.2.1 do Plano |
| Razão S.A. / Razão Energia S.A. | IP INVESTIMENTOS CORRETORA DE CAMBIO, TITULOS E VALORES MOBILIÁRIOS S.A. | 32.332.666/0001-04 | OPERAÇÕES DERIVATIVOS | PRAIA BOTAFOGO 00001, BLC I SAL 901, BOTAFOGO, RIO DE JANEIRO, RJ, BRASIL, 22250911 | CONTROLADORA@IP.COM.BR | BRL | - | - | - | Nos termos do artigo 155-A do LFR e da Cláusula 2.2.1 do Plano |
| Razão S.A. | Scotiabank Brasil S.A. Banco Múltiplo | 29.030.467/0001-66 | OPERAÇÕES DERIVATIVOS | AVENIDA BRIGADEIRO FARIA LIMA 2277, 7 ANDAR, JARDIM PAULISTANO, SAO PAULO, SP, BRASIL, 01452000 | ADMINISTRATION.SP@BR.SCOTIABANK.COM | BRL | - | - | - | Nos termos do artigo 155-A do LFR e da Cláusula 2.2.1 do Plano |
| Razão S.A. | Banco MUFG Brasil S.A. | 60.498.557/0001-26 | OPERAÇÕES DERIVATIVOS | AVENIDA PAULISTA 1274, BELA VISTA, SAO PAULO, SP, BRASIL, 01310925 | Processamento.deOperacoes@us.mufg.jp; br-3-Sales@br.mufg.jp; 0-Mobile.Office@br.mufg.jp | BRL | - | - | - | Nos termos do artigo 155-A do LFR e da Cláusula 2.2.1 do Plano |
| Razão S.A. | Deutsche Bank S.A. | 62.331.228/0001-11 | OPERAÇÕES DERIVATIVOS | AVENIDA BRIG FARIA LIMA 3900, ANDAR 13, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | BRTAX@LIST.DB.COM | BRL | - | - | - | Nos termos do artigo 155-A do LFR e da Cláusula 2.2.1 do Plano |
| Razão S.A. | Banco Mizuho do Brasil S.A. | 61.088.183/0001-09 | OPERAÇÕES DERIVATIVOS | AVENIDA PRESIDENTE JUSCELINO KUBITSCHEK 2041, ANDAR 7 TORRE E, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543011 | ROBERTO.VERANO@MIZUHOGROUP.COM, KATIA.HEYDENREICH@MIZUHOGROUP.COM | BRL | - | - | - | Nos termos do artigo 155-A do LFR e da Cláusula 2.2.1 do Plano |
| Razão S.A. / (B)LERWAY TRADING IMPORTACAO E EXPORT / Razão CENTRO-SUL S.A. | BANCO ITAU UNIBANCO S.A. | 60.701.190/0016-09 | OPERAÇÕES DERIVATIVOS | AVENIDA BRIGADEIRO FARIA LIMA 3900, 1 2 3 PARTE, 4 E 5 ANDARES, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | ITAUJUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 38.049.156,02 | - | - | 38.049.156,02 |
| Razão S.A. | BTG PACTUAL S.A. | 30.306.294/0001-45 | OPERAÇÕES DERIVATIVOS | PRAIA BOTAFOGO 00001, BLOCOH SALAO 501 BLC II SAL 601, BOTAFOGO, RIO DE JANEIRO, RJ, BRASIL, 22250911 | JOFFRE.SALES@BTGPACTUAL.COM, DANIEL.VAZ@BTGPACTUAL.COM | BRL | - | - | - | Nos termos do artigo 155-A do LFR e da Cláusula 2.2.1 do Plano |
| Razão Energia S.A. / Razão CENTRO-SUL S.A. | COOPERATIVE RABOBANK U.A. | | OPERAÇÕES DERIVATIVOS | CROESELAAN 18, UTRECHT, PAISES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | L.BR.SACPAULO.ASSISTANT@RMG.COBRAZIL@RABOBANK.COM | BRL | 11.410.976,17 | - | - | 11.410.976,17 |
| Razão S.A. | BANCO HSBC S.A. | 53.518.684/0001-84 | OPERAÇÕES DERIVATIVOS | AVENIDA PRES JUSCELINO KUBITSCHEK 1909, BLOCO NORTE ANDAR 19, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543807 | SPECIAL.TS.SKM.GTB.AM@HSBC.COM.HK | BRL | - | - | - | Nos termos do artigo 155-A do LFR e da Cláusula 2.2.1 do Plano |
| Razão S.A. | Macquarie Bank LTD | | OPERAÇÕES DERIVATIVOS | 50 MARTIN PLACE, SYDNEY, NSW 2000, AUSTRALIA. | FEEDBACK@MACQUARIE.COM | BRL | - | - | - | Nos termos do artigo 155-A do LFR e da Cláusula 2.2.1 do Plano |
| Razão S.A. / (B)LERWAY TRADING IMPORTACAO E EXPORT / Razão ENERGIA S.A. | Goldman Sachs do Brasil Banco Múltiplo S.A. | 04.332.281/0001-30 | OPERAÇÕES DERIVATIVOS | R LEOPOLDO COUTO DE MAGALHAES JUNIOR, 700 - ITAIM BIBI, SAO PAULO - 04542000 | GS-TAX-BRAZIL@GS.COM | BRL | - | - | - | Nos termos do artigo 155-A do LFR e da Cláusula 2.2.1 do Plano |
| Razão Energia S.A. | JP Morgan Chase Bank, NA | NÃO APLICÁVEL | OPERAÇÕES DERIVATIVOS | 15420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33810 | RODRIGO.CARMO@JPMORGAN.COM, NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | - | 9.860.070,78 | - | 51.453.546,75 |
| Razão TRADING S.A. | CITIBANK N.A | NÃO APLICÁVEL | OPERAÇÕES DERIVATIVOS | AV. PAULISTA, N° 1.111, (LOJA 1, 2 E SOBRELOJA) | JORGE.LIMA@CITI.COM, ROBERTO.GASTAUD@CITI.COM, ALEXANDRE.CASTANHEIRA@CITI.COM | BRL | - | - | - | Nos termos do artigo 155-A do LFR e da Cláusula 2.2.1 do Plano |
| **Total** | | | | | | | **32.039.774.605,29** | **7.805.579.996,21** | **906.102.358,05** | **63.145.528.078,93** |

Intercompany

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE B50/0-BARZ X 2017 SACE 1 - ROF T8184466 | 23/07/2036 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 209.916.977,78 | 1.214.213.658,42 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE B50/2-BARZ X 2017 1BI USD - ROF T8184734 | 17/01/2035 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 1.006.393.138,89 | - | 5.257.050.950,96 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ X CCLF SACE - TRANCHE 01 - ROF T8165097 | 22/09/2026 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.784.285,59 | 90.449.809,05 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 2 CCLF SACE - TRANCHE 01 - ROF T8165097 | 22/03/2027 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.773.093,44 | 90.321.535,57 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ X CCLF SACE - TRANCHE 04 - ROF T8165097 | 22/09/2027 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.772.259,39 | 90.316.495,15 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ X CCLF SACE - TRANCHE 04 - ROF T8165097 | 22/03/2028 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.762.700,44 | 90.258.727,57 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 9 CCLF SACE - TRANCHE 05 - ROF TB165387 | 22/09/2029 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.762.751,21 | 95.259.034,37 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 1 CCLF SACE - TRANCHE 06 - ROF TB165387 | 22/03/2029 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.756.165,83 | 95.219.236,98 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 2 CCLF SACE - TRANCHE 07 - ROF TB165387 | 24/06/2029 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.758.746,04 | 95.222.743,36 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 3 CCLF SACE - TRANCHE 08 - ROF TB165387 | 22/03/2030 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.751.669,21 | 95.162.952,55 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 4 CCLF SACE - TRANCHE 09 - ROF TB165387 | 22/09/2030 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.752.510,51 | 95.197.146,79 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 8 CCLF SACE - TRANCHE 10 - ROF TB165387 | 24/03/2031 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.748.378,52 | 95.172.163,95 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 1 CCLF SACE - TRANCHE 11 - ROF TB165387 | 22/09/2031 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.749.348,37 | 95.178.037,03 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 2 CCLF SACE - TRANCHE 12 - ROF TB165387 | 22/03/2032 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.745.674,37 | 95.157.042,59 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 3 CCLF SACE - TRANCHE 13 - ROF TB165387 | 22/09/2032 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.746.975,23 | 95.163.091,09 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 9 CCLF SACE - TRANCHE 14 - ROF TB165387 | 22/03/2033 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.743.916,17 | 95.145.208,56 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 2 CCLF SACE - TRANCHE 15 - ROF TB165387 | 22/09/2033 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.744.924,28 | 95.151.300,90 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 2 CCLF SACE - TRANCHE 16 - ROF TB165387 | 22/03/2034 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.742.346,60 | 95.135.741,34 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 3 CCLF SACE - TRANCHE 17 - ROF TB165387 | 22/09/2034 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.743.335,96 | 95.141.702,18 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 6 CCLF SACE - TRANCHE 18 - ROF TB165387 | 22/03/2035 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.741.058,64 | 95.127.939,65 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ 6 CCLF SACE - TRANCHE 19 - ROF TB165387 | 21/09/2035 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.742.023,23 | 95.133.769,00 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BSV1- BARZ X 2017 1B USD 2037 - ROF TB165163 | 25/02/2037 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 1.002.792.583,33 | - | 5.227.855.998,04 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BSV1-BARZ X 2017 750MM USD 2054 - ROF TB165170 | 05/03/2054 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 708.579.250,00 | - | 3.912.994.804,03 |
| RAÍZEN ENERGIA S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BARZ X 2017 233MM 20.01.27 - ROF TB165404 | 20/01/2027 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 163.687.620,66 | - | 957.818.674,38 |
| RAÍZEN S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBOF X 2017 488MM - ROF TB165489 | 05/03/2054 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 469.055.298,36 | - | 2.549.331.259,38 |
| RAÍZEN S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBOF X 2017 638MM - 2054 - ROF TB165467 | 05/03/2054 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 640.119.382,55 | - | 3.337.133.751,44 |
| RAÍZEN S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBOF X 2017 750MM - 2032 - ROF TB170809 | 09/07/2032 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 708.074.208,33 | - | 3.952.568.270,30 |
| RAÍZEN S.A. | RAÍZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBOF X CCLF 300MM 2054 - ROF TB165494 | 05/03/2034 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 300.271.327,79 | - | 1.926.069.513,10 |
| RAÍZEN ENERGIA S.A. | RAÍZEN TRADING S.A. | NÃO APLICÁVEL | - | - | RUE DE JARGONNANT 2, 1207 GENÈVE | DIVIDA@RAIZEN.COM | BRL | 3.448.595.041,13 | - | - | 3.448.595.041,13 |
| **Total** | | | | | | - | | 3.448.595.041,13 | 8.162.932.178,31 | 555.346.241,81 | 33.491.079.475,77 |

USD Ptax Compra (09/01).2133
EUR Ptax Compra (09/01).9433

**RAÍZEN S.A**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN S.A | U.S. BANK NATIONAL ASSOCIATION | NÃO APLICÁVEL | AVAL US BOND 2206M 20.01.2027 | 20/01/2027 | 100 WALL STREET, 16TH FLOOR, NEW YORK, NEW YORK 10005, USA | PIERRE.DESAULNIERS@USBANK.COM, LOGAN.GIESEKE@USBANK.COM, TUAN.PHAN@USBANK.COM, MICHELLE.MENA@USBANK.COM | USD | - | 185.135.070,69 | - | 986.017.864,03 |
| RAÍZEN S.A | BNP PARIBAS | NÃO APLICÁVEL | AVAL LOAN SACE 300MM | 21/06/2030 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM, JULIANA.MANN@BR.BNPPARIBAS.COM, FELIPE.IRANI@BR.BNPPARIBAS.COM | EUR | - | - | 305.278.422,33 | 1.844.869.156,14 |
| RAÍZEN S.A | BNP PARIBAS | NÃO APLICÁVEL | AVAL LOAN SACE X 200MM | 23/07/2036 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM, JULIANA.MANN@BR.BNPPARIBAS.COM, FELIPE.IRANI@BR.BNPPARIBAS.COM | EUR | - | - | 200.913.888,87 | 1.214.162.770,45 |
| RAÍZEN S.A | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2032 | 08/07/2032 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLUTT2@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 758.072.916,67 | - | 3.952.381.536,48 |
| RAÍZEN S.A | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2034 | 05/03/2034 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLUTT2@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.000.895.833,33 | - | 5.217.970.247,50 |
| RAÍZEN S.A | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2035 | 17/01/2035 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLUTT2@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.008.391.666,67 | - | 5.257.040.275,85 |
| RAÍZEN S.A | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLUTT2@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 500.482.638,89 | - | 2.608.180.141,33 |
| RAÍZEN S.A | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | AVAL PPE BOFA - LT - JAN/2028 - ROF TB165590 - BSV1 | 27/01/2028 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG.CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | - | 100.560.471,67 | - | 524.423.945,84 |
| RAÍZEN S.A | BANCO BRADESCO S.A. | 60.746.948/0001-12 | AVAL CPR-F 750MM | 26/11/2026 | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANSO@BRADESCO.COM.BR, RODRIGO.PAVELLI@BRADESCO.COM.BR | BRL | 783.229.402,50 | - | - | 783.229.402,50 |
| RAÍZEN S.A | BANCO BRADESCO S.A. | 60.746.948/0001-12 | AVAL CPR-F 250MM | 26/11/2026 | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANSO@BRADESCO.COM.BR, RODRIGO.PAVELLI@BRADESCO.COM.BR | BRL | 261.175.737,50 | - | - | 261.175.737,50 |
| RAÍZEN S.A | BANCO SANTANDER (BRASIL) S/A | 90.400.888/0001-42 | AVAL CPRF SANTANDER - LP - JUN/2028 | 20/06/2028 | AV. PRES. JUSCELINO KUBITSCHEK 2041, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543011 | GVALLONE@SANTANDER.COM.BR, KOSILVA@SANTANDER.COM.BR | BRL | 667.177.032,00 | - | - | 667.177.032,00 |
| RAÍZEN S.A | BANCO SANTANDER (BRASIL) S/A | 90.400.888/0001-42 | AVAL CPRF SANTANDER - LP - AGO/2028 | 21/08/2028 | AV. PRES. JUSCELINO KUBITSCHEK 2041, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543011 | GVALLONE@SANTANDER.COM.BR, KOSILVA@SANTANDER.COM.BR | BRL | 267.803.049,00 | - | - | 267.803.049,00 |
| RAÍZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA VII 228.156_1PE RAÍZEN 1°5_CRA01900315 | 16/07/2029 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 232.762.892,92 | - | - | 232.762.892,92 |
| RAÍZEN S.A | OPEA SECURITIZADORA S.A. | 02.773.542/0001-22 | AVAL CRA VI IPCA 600MM CRA 2.C/A 2 CRA01900GV7 | 16/03/2026 | R GRASSICL, 555, ANDO10 TORRE C-PARTE - VILA MADALENA, SÃO PAULO - SP - 05.425-001 | FINANCEIRO@OPEA.COM.BR | BRL | 905.715.403,49 | - | - | 905.715.403,49 |
| RAÍZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA IX 1.080.000.000_IPE RAÍZEN 1°5_CRA02200WB6 | 17/08/2032 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.282.945.117,60 | - | - | 1.282.945.117,60 |
| RAÍZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA IX 940.000.000_IPE RAÍZEN 2°5_CRA02200WD2 | 17/08/2037 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.136.606.159,36 | - | - | 1.136.606.159,36 |
| RAÍZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA VII 187.658_IPE RAÍZEN 2°5_CRA01900315 | 16/07/2029 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.153.262.672,56 | - | - | 1.153.262.672,56 |
| RAÍZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA VIII 352.426_1PE RAÍZEN 1°5_CRA02001F7 | 15/06/2027 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 501.203.718,45 | - | - | 501.203.718,45 |
| RAÍZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA VIII 728.056_1PE RAÍZEN 2°5_CRA02001F98 | 17/06/2030 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.036.294.576,25 | - | - | 1.036.294.576,25 |
| RAÍZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA DOCTOR X - 3° SÉRIE - 102033_CRA0230ILR7 | 17/10/2033 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 567.943.999,36 | - | - | 567.943.999,36 |
| RAÍZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA DOCTOR X - 1° SÉRIE - 102033_CRA0230ILR5 | 15/10/2030 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 218.430.067,03 | - | - | 218.430.067,03 |
| RAÍZEN S.A | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | AVAL CRA DOCTOR X - 2° SÉRIE - 102033_CRA0230ILR6 | 17/10/2033 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 301.264.360,68 | - | - | 301.264.360,68 |
| RAÍZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | AVAL DEBENTURE INCENTIVADA 4° SÉRIE UNICA RESI414 | 16/11/2029 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 1.294.692.402,80 | - | - | 1.294.692.402,80 |
| RAÍZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | AVAL DEBENTURE INCENTIVADA 7° EMISSÃO - RESI415 | 15/06/2030 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 241.287.186,67 | - | - | 241.287.186,67 |
| RAÍZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | AVAL DEBENTURE INCENTIVADA - RESI417 | 15/03/2032 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 538.888.542,23 | - | - | 538.888.542,23 |
| RAÍZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | AVAL DEBENTURE INCENTIVADA - RESI417 | 15/03/2029 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 961.798.942,95 | - | - | 961.798.942,95 |
| RAÍZEN S.A | BANCO DO BRASIL S.A. | 00.000.000/0001-91 | AVAL NCE BB NR.230001063 | 20/12/2029 | QUADRA SAUN QUADRA 5,BLOCO B TORRE I, II, III, ANDAR T I SL 0101 A 01602 T II SL C101 A C1602 T III SL N101 A N1602, ASA NORTE, BRASILIA, DF, BRASIL, 70040912 | SECEX@BB.COM.BR | BRL | 1.033.507.058,00 | - | - | 1.033.507.058,00 |
| RAÍZEN S.A | BNP PARIBAS | NÃO APLICÁVEL | AVAL PPE_BNP_USD120MLN - ROF TB132571 | 27/03/2026 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM, JULIANA.MANN@BR.BNPPARIBAS.COM, FELIPE.IRANI@BR.BNPPARIBAS.COM | USD | - | 75.154.781,47 | - | 391.804.317,97 |
| RAÍZEN S.A | COOPERATIEVE RABOBANK U.A | NÃO APLICÁVEL | AVAL PPE CP RABOBANK USD 100M 06.03.22 ROF TBF35481 | 23/03/2029 | CROESELAAN 18, UTRECHT, PAISES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | LBR.SAOPAULO.ASSISTANTSRM@CCORP.RABOBANK.COM | USD | - | 102.860.698,67 | - | 536.343.513,53 |
| RAÍZEN S.A | COOPERATIEVE RABOBANK U.A | NÃO APLICÁVEL | AVAL PPE LP RABOBANK USD 200M 12.05.22 (VCTO 11.05.27) ROF TB104603 | 11/05/2027 | CROESELAAN 18, UTRECHT, PAISES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | LBR.SAOPAULO.ASSISTANTSRM@CCORP.RABOBANK.COM | USD | - | 200.733.500,00 | - | 1.046.483.955,55 |

| Entity | Counterparty | | Description | Ref/Date | Address | Contact | Cur. | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN S.A | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | AVAL PPE LP BOFA USD 50M MAI-22 (VENCTO 28.05.27) ROF TB106593 | 28/05/2027 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG.CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | 50.081.304,11 | - | 260.984.596,72 |
| RAIZEN S.A | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | AVAL PPE LP SMBC USD 200M JUN.22 (VENCTO 14.06.27) ROF TB107046 | 14/06/2027 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIAN.COUTINHO@SMBCGROUP.COM; JOAQUIM_MARQUES@SMBCGROUP.COM.BR; RODRIGO_TORRES@SMBCGROUP.COM.BR; CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | 202.200.186,66 | - | 1.054.100.126,85 |
| RAIZEN S.A | BANK OF CHINA LIMITED, GRAND CAYMAN BRANCH | NÃO APLICÁVEL | AVAL PPE BANK OF CHINA USD 150 MILHÕES ROF TB133957 | 08/05/2029 | GRAND PAVILION COMMERCIAL CENTER 802 WEST BAY ROAD – P.O BOX 30986, GRAND CAYMAN KY1–1204 – CAYMAN ISLANDS / AVENIDA PAULISTA, 901, 14TH FLOOR – ZIP CODE: 01311-100, SÃO PAULO, SP, BRASIL | XLI.LD@BOC-BRAZIL.COM; RICARDO.MANGIONE@BOCBRASIL.COM.BR; BAI.YUN@BOC-BRAZIL.COM; AUGUSTO.PASSON@BOCBRASIL.COM.BR; JOAV.BRITO@BOCBRASIL.COM.BR; VICTOR.GUEDES@BOC-BRAZIL.COM; FREDERICO.LIMA@BOCBRASIL.COM.BR; DANIEL.BAUMANN@BOC-BRAZIL.COM | USD | 152.475.830,25 | - | 794.902.281,48 |
| RAIZEN S.A | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | AVAL PPE SMBC - ST - MAR/25 - ROF TB169513 | 14/03/2028 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIAN.COUTINHO@SMBCGROUP.COM; JOAQUIM_MARQUES@SMBCGROUP.COM.BR; RODRIGO_TORRES@SMBCGROUP.COM.BR; CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | 102.596.116,89 | - | 534.874.762,78 |
| RAIZEN S.A | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | AVAL PPE LP BSV1 RABOBANK USD440M 10.04.25 - ROF TB167294 | 10/04/2030 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SÃO FRANCISCO, SÃO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSISTANTSRMGCORBANKING@RABOBANK.COM | USD | 48.036.362,02 | - | 254.788.222,53 |
| RAIZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURES INCENTIVADA - 3° EMISSÃO - 1° SÉRIE RAIZ13 | 15/09/2034 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 958.673.055,24 | - | 958.673.055,24 |
| RAIZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA - 3° EMISSÃO RISA - 2°SÉRIE RAIZ23 | 15/09/2039 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 692.207.301,90 | - | 692.207.301,90 |
| RAIZEN S.A | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | AVAL PPE SMBC - LT - FEV/2028 - ROF TB169463 | 18/02/2028 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIAN.COUTINHO@SMBCGROUP.COM; JOAQUIM_MARQUES@SMBCGROUP.COM.BR; RODRIGO_TORRES@SMBCGROUP.COM.BR; CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | 70.189.766,14 | - | 365.920.302,60 |
| RAIZEN S.A | THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED | NÃO APLICÁVEL | PPE HSBC - LT - FEV/2028 - ROF TB163924 | 04/02/2028 | LEVEL 5, HSBC BUILDING MONGKOK, 673 NATHAN ROAD, KOWLOON, HONG KONG | SPECIAL.TS.5KM.GTS.ANH@HSBC.COM.HK | USD | 85.845.055,41 | - | 447.359.487,22 |
| RAIZEN S.A | JPMORGAN CHASE BANK, N.A. | NÃO APLICÁVEL | PPE LP JPMORGAN USD50M 28.04.25 - ROF TB166066 | 28/04/2030 | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM; NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | 51.008.854,33 | - | 269.914.033,70 |
| RAIZEN S.A | MUFG BANK, LTD. | NÃO APLICÁVEL | PPE LP MUFG USD100M 29.04.25 - ROF TB166148 | 29/04/2030 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | IWIRALW@US.MUFG.JP | USD | 100.618.537,78 | - | 524.554.623,00 |
| RAIZEN S.A | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE LP RABOBANK USD30M 29.04.25 - ROF TB166553 | 29/04/2030 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SÃO FRANCISCO, SÃO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSISTANTSRMGCORBANKING@RABOBANK.COM | USD | 30.617.840,13 | - | 159.819.843,14 |
| RAIZEN S.A | MUFG BANK, LTD. | NÃO APLICÁVEL | PPE LP MUFG USD75M 30.10.25 | 30/10/2029 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | IWIRALW@US.MUFG.JP | USD | 75.444.160,75 | - | 393.313.147,50 |
| RAIZEN S.A | THE BANK OF NOVA SCOTIA | NÃO APLICÁVEL | PPE LP SCOTIABANK USD300M 30.10.25 | 30/10/2030 | 720 KING STREET WEST, 2ND FLOOR, TORONTO, ONTARIO, CANADA, M5V 2T3 | GWIS.GNHOPS.INTL@SCOTIABANK.COM | USD | 305.165.419,67 | - | 1.591.023.132,71 |
| RAIZEN S.A | JPMORGAN CHASE BANK, N.A. | NÃO APLICÁVEL | AVAL PPE JPM - LT - FEV/2030 - ROF TB164589 | 14/02/2030 | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM; NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | 100.283.222,78 | - | 522.806.525,32 |
| RAIZEN S.A | BANCO CITIBANK S.A. | 33.479.023/0001-80 | AVAL NCE CITI - LT - FEV/30 - BSV1 | 15/02/2030 | AVENIDA PAULISTA 1111, ANDAR 2 PARTE, BELA VISTA, SAO PAULO, SP, BRASIL, 01311920 | CONTATOFOAF@CITI.COM | USD | 83.122.940,50 | - | 433.344.867,40 |
| RAIZEN S.A | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL RETAP BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITT@BNY.COM; CENTRALIZEDBILLINGTEAM@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | 750.723.558,33 | - | 3.913.749.211,98 |
| RAIZEN S.A | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2037 | 25/02/2037 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM; LISA.SOLLITT@BNY.COM; CENTRALIZEDBILLINGTEAM@BNYMELLON.COM; JOSEPH.COSTANTINO@BNY.COM | USD | 1.002.791.666,67 | - | 5.227.853.795,85 |
| RAIZEN S.A | BANCO BILBAO VIZCAYA ARGENTARIA, S.A. NEW YORK BRANCH | NÃO APLICÁVEL | PPE BBVA - LT - JAN/2030 - ROF TB162024 | 17/01/2030 | BANCO BILBAO VIZCAYA ARGENTARIA, S.A. NEW YORK BRANCH - TWO, MANHATTAN WEST - 375 9TH AVE - 6TH FLOOR, NY - NEW YORK 10001 | ANDRE.FERRARI@BBVA.COM; CARINA.ZAPPAROLI@BBVA.COM | USD | 201.741.563,55 | - | 1.051.739.265,26 |
| RAIZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBÊNTURES - 3° EMISSÃO RISA RAIZ12 | 24/06/2031 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 1.081.109.760,73 | - | 1.081.109.760,73 |
| RAIZEN S.A | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBÊNTURES - 4° EMISSÃO RISA RAIZ22 | 15/07/2030 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 868.635.172,63 | - | 868.635.172,63 |
| RAIZEN S.A | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | PPE RABOBANK USD 55MM 2026 - ROF TB091050 | 02/12/2026 | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFÍCIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SÃO FRANCISCO, SÃO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSISTANTSRMGCORBANKING@RABOBANK.COM | USD | 50.356.611,11 | - | 262.524.120,70 |
| RAIZEN S.A | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | PPE BBOF X BOFA 70MM - ROF TB131066 | 29/09/2028 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG.CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | 70.636.921,03 | - | 369.241.967,41 |
| RAIZEN S.A | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | NÃO APLICÁVEL | PPE_CREDIT_USD300MM - ROF TB133986 | 29/03/2030 | 1301 AVENUE OF THE AMERICAS, 8TH FLOOR, NEW YORK, NY 10019-6022, UNITED STATES OF AMERICA | JEAN.GOETHALS@CA-CIB.COM; FERNANDO.SALAZAR@CA-CIB.COM | USD | 50.923.125,00 | - | 263.267.941,57 |
| RAIZEN S.A | MUFG BANK, LTD. | NÃO APLICÁVEL | PPE LP MUFG USD50M 12.08.25 | 10/08/2029 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | IWIRALW@US.MUFG.JP | USD | 50.196.419,17 | - | 261.888.992,94 |
| RAIZEN S.A | CITIBANK N.A. | NÃO APLICÁVEL | AVAL FIDEIMPO | 12/03/2026 | AV. PAULISTA, N° 1.111, (LOJA-1, 3 E SOBRELOJA) | JORGE.LIMA@CITI.COM; ROBERTO.GASTALDI@CITI.COM; ALEXANDRE.CASTANHA@CITI.COM | USD | 6.370.758,16 | - | 32.691.952,05 |
| RAIZEN S.A | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 21/06/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLIMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | 20.000.000,00 | - | 104.266.000,00 |
| RAIZEN S.A | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 06/07/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLIMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | 20.000.000,00 | - | 104.266.000,00 |
| RAIZEN S.A | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 08/09/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLIMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | 10.000.000,00 | - | 52.133.000,00 |
| RAIZEN S.A | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 17/09/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLIMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | 15.000.000,00 | - | 78.199.500,00 |
| RAIZEN S.A | BNP PARIBAS S.A | NÃO APLICÁVEL | AVAL ECA | 01/10/2030 | 16 BOULEVARD DES ITALIENS PARIS, 75009 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MANAS@BR.BNPPARIBAS.COM; FELIPE.IRANI@BR.BNPPARIBAS.COM | USD | 30.006.837,97 | - | 156.433.605,73 |
| RAIZEN S.A | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVICOS S.A. | 04.376.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 32643267 | 31/01/2030 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEIÇAO, SAO PAULO - SP - 04543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 292.239.664,00 | - | 292.239.664,00 |
| RAIZEN S.A | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVICOS S.A. | 04.376.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO N°364040802521E 364041742023 | 31/01/2031 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEIÇAO, SAO PAULO - SP - 04543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 300.521.410,00 | - | 300.521.410,00 |

| Devedor | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN S.A | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTO E SERVIÇOS S.A. | 04.270.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 32610123 | 31/01/2028 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543311 | HOMEBROKER@SANTANDER.COM.BR | BRL | 395.656.828,00 | - | - | 395.656.828,00 |
| RAIZEN S.A | XP COMERCIALIZADORA DE ENERGIA S.A. | 34.470.313/0001-30 | AVAL CONTRATO DE COMPRA E VENDA DE ENERGIA ELÉTRICA LP.35.2023 | 31/01/2031 | AV PRES JUSCELINO KUBITSCHEK, 1909 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543907 | CAROLINA.MONTENEGRO@XPI.COM.BR; ENERGIA.ESTRUTURADAS@XPI.COM.BR | BRL | 170.000.000,00 | - | - | 170.000.000,00 |
| RAIZEN S.A | CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK | NÃO APLICÁVEL | AVAL REVOLVING LOAN FACILITY AGREEMENT | 07/11/2030 | 1301 AVENUE OF THE AMERICAS, NEW YORK CITY, NY 10019 | DANIELA.ALVARADO@CA-CIB.COM / JAIME.FRONTERA@CA-CIB.COM | USD | - | 1.389.750,00 | - | 7.230.970,38 |
| RAIZEN S.A | BANCO BRADESCO S.A. | 60.746.948/0001-12 | Operações Derivativas | - | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANIO@BRADESCO.COM.BR; RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | Banco Morgan Stanley S.A. | 02.801.938/0001-36 | Operações Derivativas | - | AVENIDA BRIGADEIRO FARIA, 3600, 7 ANDAR, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | FERNANDO.MELLO@MORGANSTANLEY.COM; GUSTAVO.SIQUEIRA@MORGANSTANLEY.COM; JOAO.CAMAROTA@MORGANSTANLEY.COM; CRISTIANE.GUTERIO@MORGANSTANLEY.COM | BRL | 194.215.153,61 | - | - | 194.215.153,61 |
| RAIZEN S.A | Banco BNP Paribas Brasil S.A. | 01.522.368/0001-82 | Operações Derivativas | - | AVENIDA PRESIDENTE JUSCELINO KUBITSCHEK 1909, CONJ 91 - 101 - 111, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL | FINANCERO@BR.BNPPARIBAS.COM | BRL | 532.900.718,37 | - | - | 532.900.718,37 |
| RAIZEN S.A | BANCO CITIBANK S.A. | 33.479.023/0001-80 | Operações Derivativas | - | AVENIDA PAULISTA 1111, ANDAR 2 PARTE, BELA VISTA, SAO PAULO, SP, BRASIL, 01311920 | CONTATOCI@CITI.COM | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | BANK OF AMERICA MERRILL LYNCH BANCO MULTIPLO S.A. | 62.073.200/0001-21 | Operações Derivativas | - | AV. BRIGADEIRO FARIA LIMA, 3400, 18O ANDAR 04538-132, SÃO PAULO, SP, BRAZIL | DG.TAX_LITIGATION@BOFA.COM | BRL | 398.645.345,41 | - | - | 398.645.345,41 |
| RAIZEN S.A | BANCO CREDIT AGRICOLE BRASIL S.A. | 75.647.891/0001-71 | Operações Derivativas | - | AV BRIG FARIA LIMA, 3900 - ITAIM BIBI, SAO PAULO - 04538132 | CONTABIL.FINANCE@CA-CIB.COM | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | BANCO DO BRASIL S.A. | 00.000.000/0001-91 | Operações Derivativas | - | QUADRA SAUN QUADRA 5 BLOCO B TORRE I, II, III N, ANDAR T I SL 5101 A 5102 T II SL C101 A C1602 TM SL N101 A N1602, ASA NORTE, BRASILIA, DF, BRASIL, 70340912 | SECEX@BB.COM.BR | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | XP INVESTIMENTOS CORRETORA DE CÂMBIO, TÍTULOS E VALORES MOBILIÁRIOS S.A. | 02.332.886/0001-04 | Operações Derivativas | - | PRAIA BOTAFOGO 00501, BLC I SAL 501, BOTAFOGO, RIO DE JANEIRO, RJ, BRASIL, 22250911 | CONTROLADORIA@XPI.COM.BR | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | Scotiabank Brasil S.A. Banco Múltiplo | 29.030.467/0001-66 | Operações Derivativas | - | AVENIDA BRIGADEIRO FARIA 3277, 7 ANDAR, JARDIM PAULISTANO, SAO PAULO, SP, BRASIL, 01452000 | ADMINISTRATION.SP@BR.SCOTIABANK.COM | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | Banco MUFG Brasil S.A. | 60.498.557/0001-26 | Operações Derivativas | - | AVENIDA PAULISTA 1274, BELA VISTA, SAO PAULO, SP, BRASIL, 01310925 | ProcessamentodeOperacoes@us.mufg.jp; br-3-Sales@br.mufg.jp; 3-MiddleOffice@br.mufg.jp | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | Deutsche Bank S.A. | 62.331.228/0001-11 | Operações Derivativas | - | AVENIDA BRIG FARIA LIMA 3900, ANDAR 13, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | BRTAX@LIST.DB.COM | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | Banco Mizuho do Brasil S.A. | 61.088.183/0001-33 | Operações Derivativas | - | AVENIDA PRESIDENTE JUSCELINO KUBITSCHEK 2041, ANDAR 7 TORRE E, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543011 | ROBERTO.VIERANO@MIZUHOGROUP.COM; KATIA.HEYDENREICH@MIZUHOGROUP.COM | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | BANCO ITAU UNIBANCO S.A. | 60.701.190/4816-59 | Operações Derivativas | - | AVENIDA BRIGADEIRO FARIA LIMA 3500, 1 2 3 PARTE, 4 E 5 ANDARES, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | ITAUJUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 31.804.945,02 | - | - | 31.804.945,02 |
| RAIZEN S.A | BTG PACTUAL S.A. | 30.306.294/0001-45 | Operações Derivativas | - | PRAIA BOTAFOGO 00501, BLOCO3 SAL 4O 501 BLC II SAL 601, BOTAFOGO, RIO DE JANEIRO, RJ, BRASIL, 22250911 | JOFFRE.SALES@BTGPACTUAL.COM; DANIEL.VAZ@BTGPACTUAL.COM | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | BANCO HSBC S.A. | 53.518.684/0001-84 | Operações Derivativas | - | AVENIDA PRES JUSCELINO KUBITSCHEK 1909, BLOCO2 NORTE ANDAR 19, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543907 | SPECIAL.TS.SHM.GTS.AMH@HSBC.COM.HK | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | Macquarie Bank LTD | NÃO APLICÁVEL | Operações Derivativas | - | 50 MARTIN PLACE, SYDNEY, NSW 2000, AUSTRALIA | FEEDBACK@MACQUARIE.COM | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| RAIZEN S.A | Goldman Sachs do Brasil Banco Múltiplo S.A. | 04.332.281/0001-30 | Operações Derivativas | - | R LEOPOLDO COUTO DE MAGALHAES JUNIOR, 700 - ITAIM BIBI, SAO PAULO - 04542000 | GS-TAX-BRAZIL@GS.COM | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| **Total** | | | | | | | | 19.272.770.760,56 | 7.070.816.911,43 | 556.150.300,00 | 82.322.112.491,50 |

**Intercompany**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN S.A | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBCP X 2517 488MM - RCF TB165499 | 05/03/2024 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 488.000.286,36 | - | 2.548.331.259,38 |
| RAIZEN S.A | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBCP X 2517 639MM - 2024 - RCF TB165497 | 05/03/2024 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 640.119.262,55 | - | 3.337.120.751,44 |
| RAIZEN S.A | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBCP X 2517 750MM - 2032 - RCF TB170809 | 08/07/2032 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 709.074.206,33 | - | 3.702.088.270,30 |
| RAIZEN S.A | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE SBCP X CCLF 350MM 2034 - RCF TB165494 | 05/03/2024 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 350.271.327,78 | - | 1.826.069.513,10 |
| **Total** | | | | | | | | - | 2.237.470.955,62 | - | 11.664.492.794,24 |

USD Ptax Compra (09/01) 2133
EUR Ptax Compra (09/01) 5433

**RAÍZEN ENERGIA S.A.**

| Devedora Principal/ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN ENERGIA S.A. | U.S. BANK NATIONAL ASSOCIATION | NÃO APLICÁVEL | AVAL US BOND 2256M | 20/01/2027 | 100 WALL STREET, 16TH FLOOR, NEW YORK, NEW YORK 10005, USA | PIERRE.DESAULNIERS@USBANK.COM, LOGAN.GIESEKE@USBANK.COM, TUAN.PHAN1@USBANK.COM, MICHELLE.MENA@USBANK.COM | USD | - | 185.135.070,99 | - | 398.317.864,03 |
| RAÍZEN ENERGIA S.A. | BNP PARIBAS | NÃO APLICÁVEL | AVAL LOAN SACE 300MM | 21/09/2030 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM, JULIANA.MANI@BR.BNPPARIBAS.COM, FELIPE.IRANI@BR.BNPPARIBAS.COM | EUR | - | 300.270.633,33 | 1.844.069.196,14 |
| RAÍZEN ENERGIA S.A. | BNP PARIBAS | NÃO APLICÁVEL | AVAL LOAN SACE II 200MM | 23/07/2030 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM, JULIANA.MANI@BR.BNPPARIBAS.COM, FELIPE.IRANI@BR.BNPPARIBAS.COM | EUR | - | 200.913.088,61 | 1.214.192.770,45 |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2032 | 08/07/2032 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLUTTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 758.072.916,67 | 3.002.061.536,48 |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2054 | 05/03/2034 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLUTTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.000.895.833,33 | 5.217.970.247,90 |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2035 | 17/01/2035 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLUTTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.008.381.666,67 | 5.257.048.275,85 |
| RAÍZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLUTTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 500.482.638,89 | 2.609.168.141,33 |
| RAÍZEN ENERGIA S.A. | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | PPE BOFA - L7 - JAN2028 - ROF TB163585 - BSV1 | 27/01/2028 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28255, ESTADOS UNIDOS | DG.CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | - | 100.563.471,67 | 524.623.945,84 |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CPR-F 750MM | 26/11/2029 | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANSO@BRADESCO.COM.BR, RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | 783.226.402,50 | - | - | 783.226.402,50 |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CPR-F 250MM | 26/11/2029 | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANSO@BRADESCO.COM.BR, RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | 261.175.737,50 | - | - | 261.175.737,50 |
| RAÍZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/0416-09 | CPRF IBBA - LP - ABRI2030 | 28/04/2030 | AVENIDA BRIGADEIRO FARIA LIMA 3500, - 1,2,3 PARTE, - 4 E 5 ANDARES, - ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | ITAULJUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 205.220.347,05 | - | - | 205.220.347,05 |
| RAÍZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/0416-09 | CPRF IBBA - LP - JUN/2030 | 13/06/2030 | AVENIDA BRIGADEIRO FARIA LIMA 3500, - 1,2,3 PARTE, - 4 E 5 ANDARES, - ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | ITAULJUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 310.057.530,79 | - | - | 310.057.530,79 |
| RAÍZEN ENERGIA S.A. | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/0416-09 | CPRF IBBA - LP - JUN/2027 | 14/06/2027 | AVENIDA BRIGADEIRO FARIA LIMA 4300, - 1,2,3 PARTE, - 4 E 5 ANDARES, SAO PAULO, SP, BRASIL, 04538132 | ITAULJUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 722.710.137,56 | - | - | 722.710.137,56 |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) S.A. | 90.400.888/0001-42 | CPRF SANTANDER - LP - JUN/2029 | 20/06/2029 | AV. PRES. JUSCELINO KUBITSCHEK 2041, VILA NOVA CONCEIÇAO, SAO PAULO, SP, BRASIL, 04543011 | GVALLONE@SANTANDER.COM.BR, KOSILVA@SANTANDER.COM.BR | BRL | 667.177.032,00 | - | - | 667.177.032,00 |
| RAÍZEN ENERGIA S.A. | BANCO SANTANDER (BRASIL) S.A. | 90.400.888/0001-42 | CPRF SANTANDER - LP - AGO/2028 | 21/08/2028 | AV. PRES. JUSCELINO KUBITSCHEK 2041, VILA NOVA CONCEIÇAO, SAO PAULO, SP, BRASIL, 04543011 | GVALLONE@SANTANDER.COM.BR, KOSILVA@SANTANDER.COM.BR | BRL | 357.803.046,00 | - | - | 357.803.046,00 |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CPRF BRADESCO - LP - JUL/2030 | 10/07/2030 | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANSO@BRADESCO.COM.BR, RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | 786.904.647,50 | - | - | 786.904.647,50 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VII 226.192_1ºE RAÍZEN 1ºS_CRA01000302 | 16/07/2029 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 232.782.892,92 | - | - | 232.782.892,92 |
| RAÍZEN ENERGIA S.A. | OPEA SECURITIZADORA S.A. | 02.773.542/0001-22 | CRA VI IPCA 600MM CRA 2.CIA 2.CRA01800SCT | 16/03/2028 | R. GIRASSOL, 555, ANEXO TORRE C-PARTE, - VILA MADALENA, SÃO PAULO - SP - 05 433-001 | FINANCEIRO@OPEA.COM.BR | BRL | 905.715.403,49 | - | - | 905.715.403,49 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA IX 1.060.000.000_9ºE RAÍZEN 1ºS_CRA02200RNB | 17/06/2032 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.282.945.117,30 | - | - | 1.282.945.117,30 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA IX 940.000.000_9ºE RAÍZEN 2ºS_CRA02200RNB | 17/06/2037 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.138.606.156,36 | - | - | 1.138.606.156,36 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VII 787.658_6ºE RAÍZEN 1ºS_CRA01800CR3 | 16/07/2029 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.153.282.672,06 | - | - | 1.153.282.672,06 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VII 352.426_5ºE RAÍZEN 1ºS_CRA02200 1P7 | 15/06/2027 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 501.203.718,45 | - | - | 501.203.718,45 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA VIII 726.036_10ºE RAÍZEN 2ºS_CRA02200 1P6 | 17/06/2030 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 1.036.294.576,25 | - | - | 1.036.294.576,25 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA DOCTOR X - 3ºSÉRIE - 102033_CRA02300JR7 | 17/10/2033 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 567.943.999,36 | - | - | 567.943.999,36 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA DOCTOR X - 1ºSÉRIE - 102033_CRA02300JR5 | 15/10/2030 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 218.430.587,03 | - | - | 218.430.587,03 |
| RAÍZEN ENERGIA S.A. | TRUE SECURITIZADORA S.A. | 12.130.744/0001-00 | CRA DOCTOR X - 2ºSÉRIE - 102033_CRA02300JR6 | 17/10/2033 | AVENIDA SANTO AMARO 48, ANDAR 2 CONJ 21 E 22, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04506000 | ATENDIMENTO@TRUESECURITIZADORA.COM.BR | BRL | 301.294.360,68 | - | - | 301.294.360,68 |
| RAÍZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | CREDITO RURAL CPR_RURAL 250MM LT JUL/28 | 11/07/2028 | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.MANSO@BRADESCO.COM.BR, RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | 273.648.581,00 | - | - | 273.648.581,00 |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA 4ª SÉRIE ÚNICA RESH14 | 16/11/2029 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 1.264.692.452,80 | - | - | 1.264.692.452,80 |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA 5ª EMISSÃO - RESH15 | 15/06/2030 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 241.287.186,67 | - | - | 241.287.186,67 |
| RAÍZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | DEBENTURE INCENTIVADA - RESA27 | 15/03/2032 | AVENIDA DAS AMÉRICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 536.688.542,23 | - | - | 536.688.542,23 |

| Entity | Agent / Description | Applicable | Instrument | Date | Address | Contact | Currency | Amount | | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | DEBENTURE INCENTIVADA - RESH17 | 17.343.682/0001-38 | 15/03/2029 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 961.796.942,95 | - | 961.796.942,95 |
| RAIZEN ENERGIA S.A. | BANCO DO BRASIL S.A | | NCE BB NR 200/00100-2 | 20/12/2029 | QUADRA SAUN QUADRA 5 BLOCO B TORRE I, II, III, ANDAR T I SL S101 A S1602 T II SL C101 A C1602 TIII SL N101 A N1602, ASA NORTE, BRASILIA, DF, BRASIL, 7054001-2 | SECEX@BB.COM.BR | BRL | 1.033.507.058,00 | - | 1.033.507.058,00 |
| RAIZEN ENERGIA S.A. | BNP PARIBAS | NÃO APLICÁVEL | PPE_BNP_USD12NMLN - ROF TB133571 | 27/03/2029 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE 7 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM, JULIANA.MANI@BR.BNPPARIBAS.COM, FELIPE.IRANI@BR.BNPPARIBAS.COM | USD | 75.154.781,47 | - | 391.604.317,97 |
| RAIZEN ENERGIA S.A. | COOPERATIVE RABOBANK U.A | NÃO APLICÁVEL | PPE OP RABOBANK USD 100M 09.05.22 ROF TB100491 | 23/03/2029 | CROESELAAN 18, UTRECHT, PAISES BAIXOS / AU DOUTOR CHILON ZAIDAN, 1240, 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | LBR.SAOPAULO.ASSISTANT@RMG.COBRAZIL@RABOBANK.COM | USD | 102.980.666,67 | - | 538.243.513,53 |
| RAIZEN ENERGIA S.A. | COOPERATIVE RABOBANK U.A | NÃO APLICÁVEL | PPE LP RABOBANK USD 200M 12.08.22 (VCTO 11.05.27) ROF TB104020 | 11/05/2027 | CROESELAAN 18, UTRECHT, PAISES BAIXOS / AU DOUTOR CHILON ZAIDAN, 1240, 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | LBR.SAOPAULO.ASSISTANT@RMG.COBRAZIL@RABOBANK.COM | USD | 200.733.500,00 | - | 1.046.483.950,95 |
| RAIZEN ENERGIA S.A. | BANK OF AMERICA N.A. | NÃO APLICÁVEL | PPE LP BOFA USD 50M MAI.22 (VENCTO 28.05.27) ROF TB108559 | 28/05/2027 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28205, ESTADOS UNIDOS | DG.CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | 50.061.304,11 | - | 260.864.596,72 |
| RAIZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | PPE LF SMBC USD 200M JUN.22 (VENCTO 14.06.27) ROF TB107946 | 14/06/2027 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIAN.COUTINHO@SMBCGROUP.COM, JOAQUIM_MARQUES@SMBCGROUP.COM.BR, RODRIGO_TORRES@SMBCGROUP.COM.BR, CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | 202.200.166,66 | - | 1.054.135.128,85 |
| RAIZEN ENERGIA S.A. | BANK OF CHINA LIMITED, GRAND CAYMAN BRANCH | NÃO APLICÁVEL | PPE BANK OF CHINA USD 150 ML/USD50 ROF TB133957 | 08/05/2029 | GRAND PAVILION, COMMERCIAL CENTER 802 WEST BAY ROAD - P.O BOX 30985, GRAND CAYMAN KY1-1204 - CAYMAN ISLANDS / AVENIDA PAULISTA, 901, 14TH FLOOR - ZIP CODE: 01311-100, SÃO PAULO, SP, BRASIL | RLI.LD@BOC-BRAZIL.COM, RICARDO.MANGIONE@BOCBRASIL.COM.BR, BAI.YUN@BOC-BRAZIL.COM, AUGUSTO.PAIXAO@BANCOBRASIL.COM.BR, JONY.BRITO@BOCBRASIL.COM.BR, VICTOR.GUEDES@BOC-BRAZIL.COM, FREDERICO.LIMA@BOCBRASIL.COM.BR, DANIEL.BAUMANN@BOC-BRAZIL.COM | USD | 152.475.833,25 | - | 794.502.261,46 |
| RAIZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | PPE SMBC - BT - MAR/29 - ROF TB193513 | 14/03/2029 | 277 PARK AVENUE, NEW YORK, NY, 10172 | RODRIGO_TORRES@SMBCGROUP.COM.BR, CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | 102.588.116,89 | - | 534.674.762,70 |
| RAIZEN ENERGIA S.A. | COOPERATIVE RABOBANK U.A | NÃO APLICÁVEL | PPE LP B5/1 RABOBANK USD44M 10.04.23 - ROF TB107294 | 10/04/2030 | CROESELAAN 18, UTRECHT, PAISES BAIXOS / AU DOUTOR CHILON ZAIDAN, 1240, 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | LBR.SAOPAULO.ASSISTANT@RMG.COBRAZIL@RABOBANK.COM | USD | 45.036.500,02 | - | 234.798.222,53 |
| RAIZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | NÃO APLICÁVEL | AVAL DEBENTURES INCENTIVADA - 3ª EMISSÃO - 1ª SÉRIE RAIZ13 | 15/09/2034 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 958.673.055,34 | - | 958.673.055,34 |
| RAIZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | AVAL DEBENTURE INCENTIVADA - 2ª EMISSÃO RSA - 2ª SÉRIE RAIZ22 | 15/09/2039 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 692.287.301,90 | - | 692.287.301,90 |
| RAIZEN ENERGIA S.A. | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | AVAL PPE SMBC - LT - FEV/2026 - ROF TB194831 | 18/02/2026 | 277 PARK AVENUE, NEW YORK, NY, 10172 | RODRIGO_TORRES@SMBCGROUP.COM.BR, CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | 70.180.780,14 | - | 366.500.302,60 |
| RAIZEN ENERGIA S.A. | THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED | NÃO APLICÁVEL | AVAL PPE HSBC - LT - FEV/2026 - ROF TB192924 | 04/02/2026 | LEVEL 3, HSBC BUILDING MONGKOK, 673 NATHAN ROAD, KOWLOON, HONG KONG | SPECIAL.TS.9KM.GTS.HHN@HSBC.COM.HK | USD | 85.849.550,41 | - | 447.556.487,22 |
| RAIZEN ENERGIA S.A. | JPMORGAN CHASE BANK, N.A. | NÃO APLICÁVEL | AVAL PPE LP JPMORGAN USD50M 28.04.25 - ROF TB168068 | 28/04/2030 | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM, NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | 51.056.654,33 | - | 265.914.033,70 |
| RAIZEN ENERGIA S.A. | MUFG BANK, LTD. | NÃO APLICÁVEL | AVAL PPE LP MUFG USD100M 29.04.25 - ROF TB168146 | 28/04/2030 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | PARIA.W@US.MUFG.JP | USD | 100.619.537,78 | - | 524.554.622,00 |
| RAIZEN ENERGIA S.A. | COOPERATIVE RABOBANK U.A | NÃO APLICÁVEL | AVAL PPE LP RABOBANK USD50M 29.04.25 - ROF TB168055 | 28/04/2030 | CROESELAAN 18, UTRECHT, PAISES BAIXOS / AU DOUTOR CHILON ZAIDAN, 1240, 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | LBR.SAOPAULO.ASSISTANT@RMG.COBRAZIL@RABOBANK.COM | USD | 30.617.840,10 | - | 159.618.943,14 |
| RAIZEN ENERGIA S.A. | MUFG BANK, LTD. | NÃO APLICÁVEL | AVAL PPE LP MUFG USD75M 30.10.25 | 30/10/2029 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | PARIA.W@US.MUFG.JP | USD | 75.464.180,75 | - | 393.313.147,50 |
| RAIZEN ENERGIA S.A. | THE BANK OF NOVA SCOTIA | NÃO APLICÁVEL | AVAL PPE LP SCOTIABANK USD300M 30.10.25 | 30/10/2030 | 720 KING STREET WEST, 2ND FLOOR, TORONTO, ONTARIO, CANADA, M5V 2T3 | GWIS.DANOPS.INTL@SCOTIABANK.COM | USD | 305.185.416,67 | - | 1.591.023.132,71 |
| RAIZEN ENERGIA S.A. | JPMORGAN CHASE BANK, N.A. | NÃO APLICÁVEL | AVAL PPE JPM - LT - FEV/2030 - ROF TB194350 | 14/02/2030 | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM, NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | 100.263.222,78 | - | 522.666.526,32 |
| RAIZEN ENERGIA S.A. | BANCO CITIBANK S.A | 33.479.023/0001-80 | NCE CITI - LT - FEV/26 - B5V1 | 15/02/2030 | AVENIDA PAULISTA 1111, ANDAR 2 PARTE, BELA VISTA, SAO PAULO, SP, BRASIL, 01311020 | CONTATO@CITI.COM | BRL | 83.122.946,50 | - | 433.244.967,40 |
| RAIZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL RETAP BOND 2054 | 05/03/2054 | 240 GREENWICH STREET - 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRAL.IZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | 750.723.958,33 | - | 3.913.749.211,96 |
| RAIZEN ENERGIA S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | AVAL BOND 2037 | 25/02/2037 | 240 GREENWICH STREET - 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, CENTRAL.IZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | 1.002.791.666,67 | - | 5.227.953.795,85 |
| RAIZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | AVAL DEBÊNTURES - 3ª EMISSÃO RSA RAIZ12 | 24/09/2031 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 1.081.109.790,73 | - | 1.081.109.790,73 |
| RAIZEN ENERGIA S.A. | PENTÁGONO S.A DISTRIBUIDORA DE TÍTULOS E VALORES MOBILIÁRIOS | 17.343.682/0001-38 | AVAL DEBÊNTURES - 4ª EMISSÃO RSA RAIZ14 | 15/07/2030 | AVENIDA DAS AMERICAS 4200, BLOCO 08 SALA 302 B 303 B E 304 B, BARRA DA TIJUCA, RIO DE JANEIRO, RJ, BRASIL, 22640102 | ASSEMBLEIAS@PENTAGONOTRUSTEE.COM.BR | BRL | 868.635.172,63 | - | 868.635.172,63 |
| RAIZEN ENERGIA S.A. | COOPERATIVE RABOBANK U.A | NÃO APLICÁVEL | AVAL PPE RABOBANK USD 50MM 2026 - ROF TB191059 | 02/12/2026 | CROESELAAN 18, UTRECHT, PAISES BAIXOS / AU DOUTOR CHILON ZAIDAN, 1240, 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | LBR.SAOPAULO.ASSISTANT@RMG.COBRAZIL@RABOBANK.COM | USD | 50.356.611,11 | - | 262.524.120,70 |
| RAIZEN ENERGIA S.A. | BANK OF AMERICA, N.A. | NÃO APLICÁVEL | AVAL PPE SBOF II BOFA 70MM - ROF TB193095 | 29/09/2028 | 100 NORTH TRYON STREET, CHARLOTTE, NORTH CAROLINA 28205, ESTADOS UNIDOS | DG.CREDIT_OPS_BRAZIL@BANKOFAMERICA.COM | USD | 70.836.921,03 | - | 369.241.957,41 |
| RAIZEN ENERGIA S.A. | CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK | NÃO APLICÁVEL | AVAL PPE_CREDIT_USD50MM - ROF TB150965 | 29/03/2030 | 1301 AVENUE OF THE AMERICAS, 8TH FLOOR, NEW YORK, NY 10019-6022, UNITED STATES OF AMERICA | JEAN.GOETHALS@CA-CIB.COM, FERNANDO.SALAZAR@CA-CIB.COM | USD | 50.303.125,00 | - | 263.287.941,57 |
| RAIZEN ENERGIA S.A. | MUFG BANK, LTD. | NÃO APLICÁVEL | AVAL PPE LP MUFG USD50M 12.08.25 | 10/08/2029 | 1221 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10020-1104 | PARIA.W@US.MUFG.JP | USD | 50.196.410,17 | - | 261.688.862,34 |
| RAIZEN ENERGIA S.A. | CITIBANK N.A | NÃO APLICÁVEL | AVAL FIDEIMPO | 12/03/2028 | AV. PAULISTA, N° 1.111, (LOJA 1, 3 E SOBRELOJA) | JORGE.LIMA@CITI.COM, ROBERTO.GASTAUD@CITI.COM, ALEXANDRE.CASTANHEIRA@CITI.COM | USD | 6.270.798,16 | - | 32.681.552,05 |
| RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 21/08/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLIMPIA, SÃO PAULO/SP | GVALLONE@SANTANDER.COM.BR, KOSILVA@SANTANDER.COM.BR | USD | 20.000.000,00 | - | 104.266.000,00 |
| RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 06/07/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLIMPIA, SÃO PAULO/SP | GVALLONE@SANTANDER.COM.BR, KOSILVA@SANTANDER.COM.BR | USD | 20.000.000,00 | - | 104.266.000,00 |
| RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 08/09/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLIMPIA, SÃO PAULO/SP | GVALLONE@SANTANDER.COM.BR, KOSILVA@SANTANDER.COM.BR | USD | 10.000.000,00 | - | 52.133.000,00 |

| Devedor | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR |
|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN ENERGIA S.A. | BANCO SANTANDER S.A. | NÃO APLICÁVEL | AVAL EXPORT PRE-FINANCING | 17/09/2026 | AVENIDA JUSCELINO KUBITSCHEK, 2235 E 2241, VILA OLIMPIA, SÃO PAULO/SP. | GVALLONE@SANTANDER.COM.BR; KOSILVA@SANTANDER.COM.BR | USD | - | 15.000.000,00 | 78.199.500,00 |
| RAIZEN ENERGIA S.A. | BNP PARIBAS S.A | NÃO APLICÁVEL | AVAL ECA | 31/10/2030 | 16 BOULEVARD DES ITALIENS PARIS, 75009 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MAIA@BR.BNPPARIBAS.COM; FELIPE.IRWIN@BR.BNPPARIBAS.COM | USD | - | 30.008.637,97 | 196.433.805,73 |
| RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | 04.270.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 3284/2027 | 31/01/2033 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 292.239.884,00 | - | 292.239.884,00 |
| RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | 04.270.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO Nº3845/4026/2023 E 3845/4174/2023 | 31/01/2031 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 300.521.410,00 | - | 300.521.410,00 |
| RAIZEN ENERGIA S.A. | SANTANDER CORRETORA DE SEGUROS, INVESTIMENTOS E SERVIÇOS S.A. | 04.270.778/0001-71 | AVAL COMERCIALIZAÇÃO DE ENERGIA ELÉTRICA CONTRATO 3281/0123 | 31/01/2028 | AV PRESIDENTE JUSCELINO KUBITSCHEK, 2041 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543011 | HOMEBROKER@SANTANDER.COM.BR | BRL | 385.656.628,00 | - | 385.656.628,00 |
| RAIZEN ENERGIA S.A. | XP COMERCIALIZADORA DE ENERGIA | 34.475.373/0001-30 | AVAL CONTRATO DE COMPRA E VENDA DE ENERGIA ELÉTRICA | 31/01/2031 | AV PRES JUSCELINO KUBITSCHEK, 1909 - VILA NOVA CONCEICAO, SAO PAULO - SP - 04543907 | CAROLINA.MONTENEGRO@XPI.COM.BR; ENERGIA.ESTRUTURADAS@XPI.COM.BR | BRL | 170.000.000,00 | - | 170.000.000,00 |
| RAIZEN ENERGIA S.A. | CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK | NÃO APLICÁVEL | AVAL REVOLVING LOAN FACILITY AGREEMENT | 07/11/2030 | 1301 AVENUE OF THE AMERICAS, NEW YORK CITY, NY 10019 | DANIELA.ALVARADO@CA-CIB.COM; JAIME.FRONTERA@CA-CIB.COM | USD | - | 1.388.750,00 | 7.239.970,38 |
| RAIZEN ENERGIA S.A. | BANCO BRADESCO S.A. | 60.746.948/0001-12 | Operações Derivativos | - | NUCLEO CIDADE DE DEUS S/N, VILA YARA, OSASCO, SP, BRASIL, 06029900 | JOAO.NARISO@BRADESCO.COM.BR; RODRIGO.PAVEL@BRADESCO.COM.BR | BRL | - | - | Nos termos do artigo 193-A da LFR e la Cláusula 2.2.1 do Plano |
| RAIZEN ENERGIA S.A. | Banco Morgan Stanley S.A. | 02.801.093/0001-36 | Operações Derivativos | - | AVENIDA BRIGADEIRO FARIA LIMA, 3600, 7 ANDAR, ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | FERNANDO.MELLO@MORGANSTANLEY.COM; GUSTAVO.SIQUEIRA@MORGANSTANLEY.COM; JOAO.CAVAROTTA@MORGANSTANLEY.COM; CRISTIANE.OUTERO@MORGANSTANLEY.COM | BRL | 399.874.329,47 | - | 399.874.329,47 |
| RAIZEN ENERGIA S.A. | Banco BNP Paribas Brasil S.A | 01.522.368/0001-82 | Operações Derivativos | - | AVENIDA PRESIDENTE, JUSCELINO KUBITSCHEK, 1909, CONJ 91 - 101 - 111, VILA NOVA CONCEICAO, SAO PAULO, SP, BRASIL, 04543011 | FINANCEIRO@BR.BNPPARIBAS.COM | BRL | 72.920.297,19 | - | 72.920.297,19 |
| RAIZEN ENERGIA S.A. | BANCO CITIBANK S.A. | 33.479.023/0001-80 | Operações Derivativos | - | AVENIDA PAULISTA 1111, ANDAR 2 PARTE, BELA VISTA, SAO PAULO, SP, BRASIL, 01311920 | CONTATOCONF@CITI.COM | BRL | - | - | Nos termos do artigo 193-A da LFR e la Cláusula 2.2.1 do Plano |
| RAIZEN ENERGIA S.A. | BANCO CRÉDIT AGRICOLE BRASIL S.A. | 75.647.891/0001-71 | Operações Derivativos | - | AV BRIG FARIA LIMA, 3900 - ITAIM BIBI, SAO PAULO - 04538132 | CONTABIL.FINANCE@CA-CIB.COM | BRL | - | - | Nos termos do artigo 193-A da LFR e la Cláusula 2.2.1 do Plano |
| RAIZEN ENERGIA S.A. | BANCO DO BRASIL S.A. | 00.000.000/0001-91 | Operações Derivativos | - | QUADRA SAUN QUADRA 5 BLOCO B TORRE I, II, III S/N, ANDAR T I SL S101 A S1602 T II SL C101 A C1602 TIII SL N101 A N1602, ASA NORTE, BRASILIA, DF, BRASIL, 70040912 | SECEX@BB.COM.BR | BRL | - | - | Nos termos do artigo 193-A da LFR e la Cláusula 2.2.1 do Plano |
| RAIZEN ENERGIA S.A. | XP INVESTIMENTOS CORRETORA DE CÂMBIO, TÍTULOS E VALORES MOBILIÁRIOS S.A. | 02.332.886/0001-04 | Operações Derivativos | - | PRAIA BOTAFOGO 00001, BLC I SAL 501, BOTAFOGO, RIO DE JANEIRO, RJ, BRASIL, 22250911 | CONTROLADORIA@XPI.COM.BR | BRL | - | - | Nos termos do artigo 193-A da LFR e la Cláusula 2.2.1 do Plano |
| RAIZEN ENERGIA S.A. | COOPERATIVE RABOBANK U.A | NÃO APLICÁVEL | Operações Derivativos | - | CROESELAAN 18, UTRECHT, PAISES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | LIBR.SAOPAULO.ASSISTANTSRMGCCBRAZIL@RABOBANK.COM | BRL | 10.350.978,17 | - | 10.350.978,17 |
| RAIZEN ENERGIA S.A. | Goldman Sachs do Brasil Banco Múltiplo S.A. | 04.332.281/0001-30 | Operações Derivativos | - | R LEOPOLDO COUTO DE MAGALHAES JUNIOR, 700 - ITAIM BIBI, SAO PAULO - 04542000 | GS-TAX-BRAZIL@GS.COM | BRL | - | - | Nos termos do artigo 193-A da LFR e la Cláusula 2.2.1 do Plano |
| Raizen Energia S.A. | JP Morgan Chase Bank, NA | NÃO APLICÁVEL | Operações Derivativos | - | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM; NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | - | 9.860.076,78 | 51.403.548,70 |
| **Total** | | | | | | | | 39.094.011.432,88 | 7.474.935.426,86 | 908.192.369,89 | 62.943.977.409,27 |

## Intercompany

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE B30 U BARD X 2017 SACE 3 - RDF TB15A455 | 23/07/2036 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 200.918.977,78 | 1.214.212.659,42 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE B30 U BARD X 2017 78I USD - RDF TB15C734 | 17/01/2035 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 1.008.393.138,89 | - | 5.257.055.992,98 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 01 - RDF TB16S367 | 22/09/2026 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.794.285,58 | 95.448.806,20 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 02 - RDF TB16S367 | 22/03/2027 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.773.093,44 | 95.320.535,57 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 03 - RDF TB16S367 | 22/09/2027 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.772.258,38 | 95.316.495,15 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 04 - RDF TB16S367 | 22/03/2028 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.760.700,44 | 95.256.727,57 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 05 - RDF TB16S367 | 22/09/2028 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.762.751,21 | 95.258.034,37 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 06 - RDF TB16S367 | 22/03/2029 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.766.165,83 | 95.219.236,98 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 07 - RDF TB16S367 | 24/09/2029 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.766.746,04 | 95.222.743,36 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 08 - RDF TB16S367 | 22/03/2030 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.701.669,21 | 95.160.062,55 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 09 - RDF TB16S367 | 22/09/2030 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.762.510,51 | 95.197.146,79 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 10 - RDF TB16S367 | 24/03/2031 | 16, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.748.378,52 | 95.172.163,85 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 11 - RCF TB160367 | 22/09/2031 | 19, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.749.548,37 | 95.178.037,03 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 12 - RCF TB160367 | 22/03/2032 | 19, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.749.874,37 | 95.157.042,56 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 13 - RCF TB160367 | 22/09/2032 | 19, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.748.875,23 | 95.163.091,09 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 14 - RCF TB160367 | 22/03/2033 | 19, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.743.916,17 | 95.145.208,56 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 15 - RCF TB160367 | 22/09/2033 | 19, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.744.924,28 | 95.151.330,90 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 16 - RCF TB160367 | 22/03/2034 | 19, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.742.345,60 | 95.135.741,34 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 17 - RCF TB160367 | 22/09/2034 | 19, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.743.335,96 | 95.141.702,18 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 18 - RCF TB160367 | 22/03/2035 | 19, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.741.058,64 | 95.127.939,85 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X CCLF SACE - TRANCHE 19 - RCF TB160367 | 21/09/2035 | 19, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | EUR | - | - | 15.742.523,23 | 95.133.769,00 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BSV1- BAR2 X 2017 1BI USD 2037 - RCF TB160163 | 25/02/2037 | 19, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 1.002.792.083,33 | - | 5.227.893.968,04 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BSV1-BAR2 X 2017 750MM USD 2054 - RCF TB160170 | 05/03/2054 | 19, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 750.979.250,00 | - | 3.912.884.884,23 |
| RAIZEN ENERGIA S.A. | RAIZEN FUELS FINANCE S.A. | NÃO APLICÁVEL | PPE BAR2 X 2517 233MM 2031 27 - RCF TB165404 | 20/01/2027 | 19, RUE EUGÈNE RUPPERT, L-2453 LUXEMBOURG | DIVIDA@RAIZEN.COM | USD | - | 183.887.620,96 | - | 957.818.674,36 |
| RAIZEN ENERGIA S.A. | RAIZEN TRADING S.A. | NÃO APLICÁVEL | - | - | RUE DE JARGONNANT 2, 1207 GENÈVE | DIVIDA@RAIZEN.COM | BRL | 3.448.595.041,13 | - | - | 3.448.595.041,13 |
| Total | - | - | - | - | | | | 3.448.595.041,13 | 2.645.482.093,18 | 500.249.241,81 | 21.827.279.691,54 |

USD Ptax Compra (09/15,2133)
EUR Ptax Compra (09/16,0433)

**RAÍZEN FUELS FINANCE S.A.**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN FUELS FINANCE S.A. | U.S. BANK NATIONAL ASSOCIATION | NÃO APLICÁVEL | US BOND 225MM 20.01.2027 | 20/01/2027 | 100 WALL STREET, 16TH FLOOR, NEW YORK, NEW YORK 10005, USA | PIERRE.DESAULNIERS@USBANK.COM; LOGAN.GIESEKE@USBANK.COM; TUAN.PHAN1@USBANK.COM; MICHELLE.MENA@USBANK.COM | USD | - | 189.135.070,69 | - | 986.017.864,03 |
| RAÍZEN FUELS FINANCE S.A. | BNP PARIBAS | NÃO APLICÁVEL | LOAN SACE 300MM | 21/09/2035 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MAN@BR.BNPPARIBAS.COM; FELIPE.IRAN@BR.BNPPARIBAS.COM | EUR | - | - | 305.278.433,33 | 1.844.889.156,14 |
| RAÍZEN FUELS FINANCE S.A. | BNP PARIBAS | NÃO APLICÁVEL | LOAN SACE II 200MM | 23/07/2036 | 16 BOULEVARD DES ITALIENS, 75009 PARIS, FRANCE / 787 SEVENTH AVENUE, NEW YORK, NY 10019 | RODRIGO.JABUR@BR.BNPPARIBAS.COM; JULIANA.MAN@BR.BNPPARIBAS.COM; FELIPE.IRAN@BR.BNPPARIBAS.COM | EUR | - | - | 200.913.866,67 | 1.214.182.770,45 |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2032 | 08/07/2032 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 758.072.916,67 | - | 3.952.061.536,48 |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2034 | 05/03/2034 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.000.895.833,33 | - | 5.217.870.247,90 |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2035 | 17/01/2035 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.008.391.666,67 | - | 5.257.048.275,85 |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 500.482.638,89 | - | 2.609.166.141,33 |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | RETAP BOND 2054 | 05/03/2054 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 750.723.958,33 | - | 3.913.749.211,96 |
| RAÍZEN FUELS FINANCE S.A. | THE BANK OF NEW YORK MELLON | NÃO APLICÁVEL | BOND 2037 | 25/02/2037 | 240 GREENWICH STREET – 7E, NEW YORK, NEW YORK 10286, USA | CARLOS.COSTA@BNY.COM, LISA.SOLLITTO@BNY.COM, CENTRALIZEDBILLINGTEAM@BNYMELLON.COM, JOSEPH.COSTANTINO@BNY.COM | USD | - | 1.002.791.666,67 | - | 5.227.853.795,85 |
| RAÍZEN FUELS FINANCE S.A. | CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK | NÃO APLICÁVEL | REVOLVING LOAN FACILITY AGREEMENT | 07/11/2030 | 1301 AVENUE OF THE AMERICAS, NEW YORK CITY, NY 10019 | DANIELA.ALVARADO@CA-CIB.COM / JAIME.FRONTERA@CA-CIB.COM | USD | - | 1.388.750,00 | - | 7.239.970,38 |
| Total | - | - | - | - | - | - | | - | 5.211.882.501,25 | 506.192.300,00 | 30.230.178.970,36 |

USD Ptax Compra (09/C5,2133
EUR Ptax Compra (09/C6,0433

**RAÍZEN TRADING S.A.**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN TRADING S.A. | CITIBANK N.A | NÃO APLICÁVEL | Operações Derivativos | - | AV. PAULISTA, Nº 1.111, (LOJA 1, 3 E SOBRELOJA) | JORGE.LIMA@CITI.COM; ROBERTO.GASTAUD@CITI.COM; ALEXANDRE.CASTANHEIRA@CITI.COM | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| Total | - | - | - | - | - | - | | - | - | - | - |

USD Ptax Compra (09/03/26)   5,2133
EUR Ptax Compra (09/03/26)   6,0433

**RAÍZEN NORTH AMERICA INC**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN NORTH AMERICA INC | RAIZEN TRADING S.A. | NÃO APLICÁVEL | - | - | RUE DE JARGONNANT 2, 1207 GENÈVE | DIVIDA@RAIZEN.COM | BRL | - | 68.178.597,27 | - | 355.435.481,15 |
| Total | - | - | - | - | - | - | | - | 68.178.597,27 | - | 355.435.481,15 |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 86

USD Ptax Compra (09/03/26)    5,2133
EUR Ptax Compra (09/03/26)    6,0433

**RAIZEN CAARAPO ACUCAR E ALCOOL LTDA**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAIZEN CAARAPO ACUCAR E ALCOOL LTDA | BANK OF AMERICA MERRILL LYNCH BANCO MÚLTIPLO S.A. | 62.073.200/0001-21 | Aval Operações Derivativos | - | AV. BRIGADEIRO FARIA LIMA, 3400, 18O ANDAR 04538-132, SÃO PAULO, SP, BRAZIL | DG.TAX_LITIGATION@BOFA.COM | BRL | 388.645.349,41 | - | - | 388.645.349,41 |
| Total | - | - | - | - | - | - | | 388.645.349,41 | - | - | 388.645.349,41 |

USD Ptax Compra (09/15,2133)
EUR Ptax Compra (09/16,0433)

**RAÍZEN CENTRO-SUL PAULISTA S.A.**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN CENTRO-SUL PAULISTA S.A. | SUMITOMO MITSUI BANKING CORPORATION | NÃO APLICÁVEL | PPE SMBC - LT - FEV/2028 - ROF TB164831 | 18/02/2028 | 277 PARK AVENUE, NEW YORK, NY, 10172 | LILIAN.COUTINHO@SMBCGROUP.COM; JOAQUIM_MARQUES@SMBCGROUP.COM.BR; RODRIGO_TORRES@SMBCGROUP.COM.BR, CAIO_OLIVEIRA@SMBCGROUP.COM.BR | USD | - | 70.189.765,14 | - | 365.920.302,60 |
| RAÍZEN CENTRO-SUL PAULISTA S.A. | JPMORGAN CHASE BANK, N.A. | NÃO APLICÁVEL | PPE JPM - LT - FEV/2030 - ROF TB164589 | 14/02/2030 | 10420 HIGHLAND MANOR DRIVE, 4TH FLOOR, TAMPA, FLORIDA, 33610 | RODRIGO.CARMO@JPMORGAN.COM; NICOLAS.A.GUEVARA@JPMORGAN.COM | USD | - | 100.283.222,78 | - | 522.806.525,32 |
| Total | - | - | - | - | - | - | - | - | 170.472.987,92 | - | 888.726.827,92 |

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 88

USD Ptax Compra (0$ 5,2133
EUR Ptax Compra (0$ 6,0433

**RAÍZEN CENTRO-SUL S.A.**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RAÍZEN CENTRO-SUL S.A. | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/4 816-09 | Operações Derivativos | - | AVENIDA BRIGADEIRO FARIA LIMA 3500, : 1 2 3 PARTE; : 4 E 5 ANDARES, ITAIM BIBI, SAO PAULO, SP, BRASIL, 0458132 | ITAUJUDICIAL@ITAU-UNIBANCO.COM.BR | BRL | 3.500.000,00 | - | - | 3.500.000,00 |
| RAÍZEN CENTRO-SUL S.A. | COOPERATIEVE RABOBANK U.A. | NÃO APLICÁVEL | Operações Derivativos | - | CROESELAAN 18, UTRECHT, PAÍSES BAIXOS / AV. DOUTOR CHUCRI ZAIDAN, 1240, 14° E 15° ANDARES, EDIFICIO MORUMBI CORPORATE - DIAMOND TOWER, BAIRRO VILA SAO FRANCISCO, SAO PAULO, SP, BRASIL | L.BR.SAOPAULO.ASSIS TANTSRMGCCBRAZIL@ RABOBANK.COM | BRL | 1.060.000,00 | - | - | 1.060.000,00 |
| Total | - | - | - | - | - | - | - | 4.560.000,00 | - | - | 4.560.000,00 |

USD Ptax Compra (09/0 5,2133
EUR Ptax Compra (09/0 6,0433

**BLUEWAY TRADING IMPORTACAO E EXPORT**

| Devedora Principal ou Garantidora | Credor | CNPJ | Contrato | Vencimento | Endereço | Email | Moeda Original | BRL | USD | EUR | TOTAL BRL CONVERTIDO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BLUEWAY TRADING IMPORTACAO E EXPORT | BANCO ITAÚ UNIBANCO S.A. | 60.701.190/4 816-09 | Operações Derivativos | - | AVENIDA BRIGADEIRO FARIA LIMA 3500, : 1 2 3 PARTE,: 4 E 5 ANDARES,; ITAIM BIBI, SAO PAULO, SP, BRASIL, 04538132 | ITAUJUDICIAL@ITAU-UNIBANCO.COM.BR. | BRL | 2.744.211,48 | - | - | 2.744.211,48 |
| BLUEWAY TRADING IMPORTACAO E EXPORT | Goldman Sachs do Brasil Banco Múltiplo S.A | 04.332.281/0 001-30 | Operações Derivativos | - | R LEOPOLDO COUTO DE MAGALHAES JUNIOR, 700 - ITAIM BIBI, SAO PAULO - 04542000 | GS-TAX-BRAZIL@GS.COM | BRL | - | - | - | Nos termos do artigo 193-A da LFR e da Cláusula 2.2.1 do Plano |
| Total | - | - | - | - | - | - | - | 2.744.211,48 | - | - | 2.744.211,48 |

**ANEXO 2.4 | SCHEDULE 2.4**

| | |
|---|---|
| **TERMO DE ADESÃO AO PLANO DE RECUPERAÇÃO EXTRAJUDICIAL DO GRUPO RAÍZEN** | **ADHESION FORM TO THE EXTRAJUDICIAL REORGANIZATION PLAN OF THE RAÍZEN GROUP** |

| | |
|---|---|
| São Paulo, [●] de março de 2026 | São Paulo, March [●], 2026 |

| | |
|---|---|
| **Credor ou Grupo de Credores:** | **Creditor or Group of Creditors:** |
| [●] | [●] |
| **Valor do Crédito:**   [●] | **Claim Amount:**   [●] |

O Credor ou Grupo de Credor, acima indicado, vem, por seu representante autorizado, por meio do presente termo de adesão, no âmbito da recuperação extrajudicial do Grupo Raízen, na qualidade de titular de Créditos Sujeitos, **manifestar sua expressa adesão ao plano de recuperação extrajudicial datado de 10/03/2026 ("Plano"), nos termos e para todos os fins do artigo 161 e seguintes da LFR**. Para que não restem dúvidas, a adesão manifestada pelo Credor ou Grupo de Credores ao Plano está sujeita aos termos e condições dispostos no Plano, inclusive aos Eventos de Resolução nele dispostos

O presente termo de adesão foi assinado por subscritor devidamente autorizado e com poderes para tanto, conforme documentação a ele anexada.

O Credor autoriza e concorda, neste ato, com a juntada deste termo de adesão nos autos da Recuperação Extrajudicial.

Os termos iniciados em letra maiúscula e não definidos neste termo estão definidos no Plano.

The Creditor, identified above, hereby represented by its authorized representative, by means of this adhesion form, in the context of the extrajudicial reorganization of the Raízen Group, in its capacity as beneficial owner of Subject Claims, hereby **expresses its adhesion to the extrajudicial reorganization plan dated March 10th, 2026 ("Plan"), pursuant to, and for all purposes of, Section 161 et. seq. of the Brazilian Bankruptcy Law.** For the avoidance of doubts, the adherence by the Creditor or Group of Creditors is subject to the terms and conditions of the Plan, including the Termination Events thereof.

This adhesion form was signed by a signatory duly authorized and with powers to perform such act, pursuant to the documents attached hereto.

The Creditor hereby authorizes and agrees that this adhesion form be filed in the Extrajudicial Reorganization.

The terms initiated in capital letters not defined hereto are defined in the Plan.

[Denominação social do Credor ou referência ao Grupo de Credores / Legal name of the Creditor or reference to the Group of Creditors]

[Nome por extenso do signatário/ Print name of the signatory]

Processo 4037759-13.2026.8.26.0100/SP, Evento 1, DOCUMENTACAO2, Página 92

**ANEXO 2.4.1 | SCHEDULE 2.4.1**

**DECLARAÇÃO DE PROPRIEDADE | CERTIFICATE OF HOLDER**

| DECLARAÇÃO DE CREDOR INVESTIDOR | INVESTOR CREDITOR STATEMENT |
|---|---|
| O subscritor declara e garante, conforme aplicável, que é **(i)** proprietário/beneficiário dos títulos de dívida abaixo *e/ou* **(ii)** gestor, agente, corretor, representante ou consultor de credor(es) investidor(es) proprietário(s)/beneficiário(s) de títulos de dívida abaixo descritos, de acordo com screenshot(s) ou certificado(s)/declarações de custodiante(s), refletindo a propriedade de tais títulos, bem como declara estar devidamente autorizado a entregar esta declaração. | The undersigned declares and warrants, as applicable, that I am **(i)** the holder of debt securities described below *and/or* **(ii)** manager, agent, broker, adviser representative or consultant of the investor creditor indicated below, which holds the debt securities described below, in accordance with the screenshot(s) or broker(s)/custodian(s) certificate(s)/declaration(s), which indicates the proof of ownership of said securities, and that I am duly authorized to deliver this Statement. |
| **Nome completo do Credor Investidor ou do Gestor, Agente, Corretor, Representante ou Consultor**: | **Holder's full name or Manager's, broker's, agent's or consultant's full name:** |
| **Endereço:** | **Address:** |
| **E-mail:** | **E-mail:** |
| **Natureza do Título:** | **Nature of the Security:** |
| **ISIN (caso aplicável):** | **ISIN (if applicable):** |
| **Escritura(s) de Emissão:** | **Indenture(s):** |
| **Trustee(s):** | **Trustee(s):** |
| **Valor histórico/principal total dos títulos detidos:** (informar o valor de face dos títulos, ao tempo da emissão. Para os fins desta declaração, não será levado em conta o valor de compra, nem o valor de mercado do título): | **Aggregate face value of bonds held by investor(s):** (state the value of the securities at the time of issuance. For the purposes of this statement, neither the purchasing price nor the market value of the security will be taken into account): |

**Nome da(s) corretora(s)/custodiante(s) do título:**

_____

**Assinatura:**

_____

**Local/Data:**_____

**Name of the security broker(s)/custodian(s):**

_____

**Signature:**

_____

**Place/Date:** _____

## EXHIBIT C

**Press Release**

**RAÍZEN S.A.**
Publicly Held Company
Corporate Taxpayer ID (CNPJ/MF): 33.453.598/0001-23
Company Registry (NIRE): 33.300.298.673

## MATERIAL FACT

**RAÍZEN S.A. (B3: RAIZ4) ("Raízen" or the "Company")**, together with certain of its subsidiaries (collectively, the "Raízen Group"),  in compliance with Brazilian Securities and Exchange Commission ("CVM") Resolution No. 44, dated August 23, 2021, and Article 157, paragraph 4, of Brazilian Corporate Law (Law No. 6,404/76), hereby informs its shareholders and the market in general that, on this date, it has filed a request for an Out-of-Court Reorganization proceeding (*Recuperação Extrajudicial*), before the São Paulo State Court, Capital District, pursuant to Brazilian Law No. 11,101/05.

The Out-of-Court Reorganization has been consensually structured between the Raízen Group and its main unsecured financial creditors that are parties to the Out-of-Court Reorganization Plan (the "Consenting Creditors" and the "Plan", respectively), with the objective of providing a stable and protected legal framework to finalize negotiations and implement the restructuring of the Raízen Group's unsecured financial indebtedness, in an aggregate amount of approximately R$65.1 billion, as well as other intercompany claims (the "Covered Claims").

As of the date hereof, the Company has obtained the express support of Consenting Creditors holding more than 47% of the unsecured financial indebtedness, a level sufficient to file the Out-of-Court Reorganization proceeding and which evidence substantial support for the proposed restructuring. In accordance with applicable law, the Raízen Group will have a period of 90 days from the court's acceptance of the filing to reach the minimum threshold required for court ratification of the Plan, upon which 100% of the Covered Claims will be bound by the amended terms and conditions set forth therein.

Pursuant to the Plan, and as previously disclosed in the Material Fact published on March 4, 2026, the Plan may include, among other measures: (i) capital contributions by the Company's shareholders; (ii) the conversion of a portion of the Covered Claims into equity interests in the Company; (iii) the replacement of certain Covered Claims with new indebtedness; (iv) corporate reorganizations aimed at the segregation of specific business segments currently conducted by the Raízen Group; and (v) divestment of assets of the Raízen Group.

The Company clarifies that the Out-of-Court Reorganization has a limited and strictly financial scope and does not affect the Raízen Group's obligations toward customers, suppliers, distributors, or other commercial partners that are essential to its operations. All such obligations remain in full force and effect and will continue to be performed in the ordinary course of business.



The Raízen Group's operations continue to run normally, with no impact on business continuity, customer service, supplier relationships, or the execution of its business plans.

The Company will keep its shareholders and the market duly informed of any further material developments related to this matter.

São Paulo, March 11, 2026.

**Lorival Nogueira Luz Jr.**

Chief Financial and Investor Relations Officer

## __EXHIBIT D__

**Initial Court Order**

**Poder Judiciário**
**JUSTIÇA ESTADUAL**
**Cível - Tribunal de Justiça do Estado de São Paulo**
**Juízo Titular I - 3ª Vara de Falências e Recuperações Judiciais - Foro Central**
**Cível**

Praça João Mendes, s/n, Salas 1823 - Bairro: Centro - CEP: 1501900 - Fone: 11 3538-9160 - Email:
sp3falencias@tjsp.jus.br

**RECUPERAÇÃO EXTRAJUDICIAL Nº 4037759-13.2026.8.26.0100/SP**

**REQUERENTE**: RAÍZEN NORTH AMERICA INC E OUTROS

**REQUERIDO**: ITAU UNIBANCO S.A.

# DESPACHO/DECISÃO

Trata-se de pedido de homologação de recuperação extrajudicial formulado por **Raízen S/A e outras** objetivando abranger dívida (art. 83, VI, LRF) no valor total de R$ 98,63 bilhões, dos quais R$ 33,49 bilhões decorrem de obrigações existentes entre Requerentes (créditos intercompany)

É admissível a consolidação processual na recuperação extrajudicial. Apesar de prevista no art. 69-G para a recuperação judicial, nada obsta o litisconsórcio facultativo também na recuperação extrajudicial, notadamente em um contexto de integração de esforços de diversas empresas de um mesmo grupo para superação do estado de crise.

Verifico que as requerentes integram grupo societário com atuação comum, de modo que presentes os requisitos do art. 69-G da Lei 11.101/2005.

Por se tratar de consolidação processual, a análise dos pressupostos para o deferimento do processamento da recuperação extrajudicial deve ocorrer de forma individualizada em relação a cada uma das requerentes. É o que se passa a fazer.

Anoto as procurações relativas a:

*(i) Raízen S/A (3.7, assinada pelo Diretor Presidente Nelson Roseira Gomes e pelo Diretor Jurídico Frederico Pacheco de Araújo, com a deliberação do conselho de administração 3.8);*

*(ii) Raízen Energia S/A (3.7, assinada pelo Diretor Presidente Geovane Dilkin Consul, com a deliberação do conselho de administração 3.8);*

*(iii) Raízen Fuels Finance S/A (3.7, assinada pelas Diretoras Nicoletta Leone e Marina Dalben, com a deliberação do conselho de administração 3.8);*

*(iv) Raízen Tradings S/A (3.7, assinada pelos Diretores Celso Henrique Martins Silva e João Bruno Figueiredo Livramento);*

*(v) Raízen North America Inc (3.7, assinadas pelo Vice-Presidente Celso Henrique Martins Silva);*

**Poder Judiciário**
**JUSTIÇA ESTADUAL**
**Cível - Tribunal de Justiça do Estado de São Paulo**
**Juízo Titular I - 3ª Vara de Falências e Recuperações Judiciais - Foro Central**
**Cível**

*(vi) Raízen Caarapo Açúcar e Alcool Ltda (3.7, assinada pelo Diretor Presidente Silvio Cesar Rosa Redigolo, com a deliberação do conselho de administração 3.8);*

*(vii) Raízen Centro-Sul Paulista S/A (3.7, assinada pelo Diretor Presidente Silvio Cesar Rosa Redigolo, com a deliberação do conselho de administração 3.8);*

*(viii) Raízen Centro-Sul S/A (3.7, assinada pelo Diretor Presidente Silvio Cesar Rosa Redigolo, com a deliberação do conselho de administração 3.8);*

*(ix) Blueway Trading Importação e Exportação S/A (3.7, assinada pelo Diretor Presidente Juliano Tamaso, com a deliberação do conselho de administração 3.8).*

A parte juntou os documentos exigidos nos artigos 48 e 163 da LRF, a saber:

*(i) Exposição, na petição inicial (1.1), das causas concretas da situação patrimonial do devedor e das razões da crise econômico-financeira;*

*(ii) demonstrações contábeis relativas ao último exercício social e as levantadas especialmente para instruir o pedido, balanço patrimonial relativas a (ii.a) Raízen S/A (4.2, 4.3, 4.4, 4.15); (ii.b) Raízen Energia S/A (4.2, 4.5); (ii.c) Raízen Fuels Finance S/A (4.2, 4.5); (ii.d) Raízen Tradings S/A (4.2, 4.5); (ii.e) Raízen North America Inc (4.2); (ii.f) Raízen Caarapo Açúcar e Alcool Ltda (4.2, 4.5); (ii.g) Raízen Centro-Sul Paulista S/A (4.2, 4.5, 4.6); (ii.h) Raízen Centro-Sul S/A (4.2, 4.6); (ii.i) Blueway Trading Importação e Exportação S/A (4.2, 4.6).*

*(iii) termos de adesão e documentos que comprovem poderes dos subscritores para transigir (3.10, 3.11, 3.12, 3.13, 3.14, 3.15, 3.16, 3.17, 3.18, 3.19, 3.20, 3.21, 3.22, 3.23, 3.24, 3.25, 3.26)*

*(iv) relação nominal dos credores relativas a (iv.a) Raízen S/A (3.9); (iv.b) Raízen Energia S/A (3.9); (iv.c) Raízen Fuels Finance S/A (3.9); (iv.d) Raízen Tradings S/A (3.9); (iv.e) Raízen North America Inc (3.9); (iv.f) Raízen Caarapo Açúcar e Alcool Ltda (3.9); (iv.g) Raízen Centro-Sul Paulista S/A (3.9) (iv.h) Raízen Centro-Sul S/A (3.9); (iv.i) Blueway Trading Importação e Exportação S/A (3.9);*

*(v) certidão de distribuição de ações falimentares, concordatas e recuperação em nome da requerente, do que se extrai não ter sido falida e não ter obtido concessão de recuperação judicial há menos de 2 anos, seja no rito normal, seja no rito especial para microempresas e empresas de pequeno porte relativas a (v.a) Raízen S/A (4.9); (v.b) Raízen Energia S/A (4.9); (v.c) Raízen Fuels Finance S/A (4.9); (v.d) Raízen Tradings S/A (4.9); (v.e) Raízen North America Inc (4.9); (v.f) Raízen Caarapo Açúcar e Alcool Ltda (4.9); (v.g) Raízen Centro-Sul Paulista S/A (4.9); (v.h) Raízen Centro-Sul S/A (4.9); (v.i) Blueway Trading Importação e Exportação S/A (4.9);*

*(vi) certidões de distribuição criminal em nome das requerentes, administradores e acionistas controladores (4.14), do que se extrai não terem sido condenados por crime falimentar relativas a (vi.a) Raízen S/A (4.10, 4.11); (vi.b) Raízen Energia S/A (4.10, 4.12); (vi.c) Raízen Fuels Finance S/A (4.10, 4.12); (vi.d) Raízen Tradings S/A (4.10, 4.12); (vi.e) Raízen North America Inc (4.10, 4.12); (vi.f) Raízen Caarapo Açúcar e*

**Poder Judiciário**
**JUSTIÇA ESTADUAL**
**Cível - Tribunal de Justiça do Estado de São Paulo**
**Juízo Titular I - 3ª Vara de Falências e Recuperações Judiciais - Foro Central**
**Cível**

*Alcool Ltda (4.10, 4.12); (vi.g) Raízen Centro-Sul Paulista S/A (4.10, 4.13); (vi.h) Raízen Centro-Sul S/A (4.10, 4.12); (vi.i) Blueway Trading Importação e Exportação S/A (4.10, 4.13);*

*(vii) comprovação de exercício regular de atividade empresarial há mais de dois anos relativas a (vii.a) Raízen S/A (3.2,4.8); (vii.b) Raízen Energia S/A (3.2, 4.8); (vii.c) Raízen Fuels Finance S/A (3.3, 4.8); (vii.d) Raízen Tradings S/A (3.3, 4.8); (vii.e) Raízen North America Inc (3.3, 4.8); (vii.f) Raízen Caarapo Açúcar e Alcool Ltda (3.3, 4.8); (vii.g) Raízen Centro-Sul Paulista S/A (3.3, 4.8); (vii.h) Raízen Centro-Sul S/A (3.4, 4.8); (vii.i) Blueway Trading Importação e Exportação S/A (3.4, 4.8);*

*(viii) Relação de processos (4.18).*

Em exame preliminar, verifico a regularidade da documentação apresentada.

As custas  foram recolhidas (7.1).

Foi apresentada documentação comprobatória de aprovação do plano por créditos que representam 47,2% dos Créditos Sujeitos (3.9), representando (i) 44,9% de Raízen S/A (3.9); (ii) 45,4% de Raízen Energia S/A (3.9); (iii) 100% de Raízen Centro-Sul Paulista S/A (3.9); (iv) 100% de Raízen Centro-Sul S/A (3.9); (v) 100% de Blueway Trading Importação e Exportação S/A (3.9); (vi) 100% de Raízen Trading S/A (3.9); (vii) 34,9% de Raízen Fuels Finance S/A (3.9); (viii) 100% de Raízen Caarapo Açúcar e Álcool Ltda (3.9)  – ou seja, superior ao quórum mínimo de 1/3 do art. 163, §7º da Lei 11.101/2005.

 Observo que contra Raízen North America Inc (3.9) há um único crédito, em que figura como credora empresa do mesmo grupo econômico, também autora neste processo. Por essa razão, dispensável a apresentação de adesão de 1/3 dos créditos, tendo em vista que o único credor figura também como requerente/devedor.

Este fato não obsta que a devedora ocupe o polo ativo deste processo ou seja parte no plano de recuperação. Primeiro, porque sua dívida está sujeita aos efeitos do plano, conforme cláusula 4.5. Segundo, porque o plano prevê a possibilidade de reorganização societária, da qual poderá fazer parte a requerente. Terceiro, porque não há outros credores sujeitos, de modo que inexiste prejuízo em sua manutenção como parte no processo e no plano de recuperação extrajudicial.

O plano de recuperação extrajudicial se encontra no evento 1.2.

Apesar de confessadamente incompleto (conforme cláusula 2.1), o plano apresentado oferece disposições e parâmetros mínimos, a possibilitar as negociações que são naturais no curso do procedimento.

Sem prejuízo, considerando a incompletude do plano juntado aos autos, a apresentação de plano atualizado acarretará renovação do prazo para impugnação pelos credores, nos termos do art. 164, § 3º, da Lei 11.101/2005.

**Poder Judiciário**
**JUSTIÇA ESTADUAL**
**Cível - Tribunal de Justiça do Estado de São Paulo**
**Juízo Titular I - 3ª Vara de Falências e Recuperações Judiciais - Foro Central**
**Cível**

A consolidação processual e a exigência de meios de recuperação independentes e específicos (art. 69-I, § 1º, Lei 11.101/2005) não impedem a apresentação de plano único, com regimes semelhantes para os diferentes devedores e comunhão de esforços para a superação do estado de crise. É o que ensina Pedro Rebello Bortolini:

> *"A exigência de especificidade, ademais, não implica que os planos deverão ser necessariamente distintos para cada um dos devedores. É certo que eles poderão ser diferentes, mas não vislumbra impedimento a que os planos de cada devedor contenham exatamente as mesmas disposições quanto à forma de pagamento de seus próprios credores.*
>
> *[...]*
>
> *Por outro lado, a previsão de que os devedores proporão meios de recuperação independentes acaba produzindo a falsa ideia de que, fora das hipóteses de consolidação substancial, os devedores estariam obrigados a elaborar os seus planos de recuperação sem nenhuma consideração aos demais devedores e seriam impedidos de combinar esforços entre si, como se a própria crise de cada um deles estivesse completamente dissociada da dos demais, ou como se não fizessem parte de um grupo econômico.*
>
> *[...]*
>
> *Para além dos ganhos de eficiência e recursos, a consolidação processual permite justamente isto: a coordenação de esforços entre os múltiplos devedores e a negociação conjugada com os seus respectivos credores, não se vislumbrando justificativa razoável a que esse tipo de solução fique restrito aos casos de disfunção estrutural do grupo, somente quando autorizada a consolidação substancial." (BORTOLINI, Pedro Rebello. Recuperação judicial dos grupos de empresas: aspectos teóricos e práticos da consolidação processual e substancial. Indaiatuba: Editora Foco, 2023, p. 192 - 194)*

Por tudo quanto exposto, estão presentes os pressupostos de admissibilidade do procedimento.

Assim, **DEFIRO o processamento do pedido, em consolidação processual, com suspensão, exclusivamente em relação aos créditos abrangidos pelo plano de recuperação ora apresentado pelo prazo de 180 (cento e oitenta) dias,** em dias corridos (art.189, §1º, LRF), do quanto se segue:

(i) da prescrição das obrigações da recuperanda;

(ii) execuções ajuizadas contra a recuperanda;

(iii) das ordens de retenção, arresto, penhora, sequestro, busca e apreensão e constrição judicial ou extrajudicial sobre os bens, na forma do §8º do art. 163 c.c. com o art. 6º, ambos da Lei nº 11.101/05.

**Poder Judiciário**
**JUSTIÇA ESTADUAL**
**Cível - Tribunal de Justiça do Estado de São Paulo**
**Juízo Titular I - 3ª Vara de Falências e Recuperações Judiciais - Foro Central**
**Cível**

Por força dos efeitos do art. 163, § 8º, da Lei 11.101/2005 e da suspensão da exigibilidade dos créditos decorrentes desta decisão, ficam vedadas as compensações de créditos sujeitos, com exceção das hipóteses previstas nos arts. 193 e 193-A da Lei 11.101/2005.

Em tempo, considerando o caráter transnacional e a previsão de implementação do plano no exterior (1.2), nomeio como representante estrangeiro **Lourival Nogueira Luiz Junior** nos termos requeridos na inicial (1.1).

As recuperandas deverão diligenciar perante os respectivos juízos no âmbito do qual tramitem execuções ou ordens de contrição patrimonial, para o fim de noticiar o processamento da presente recuperação, preservar a competência do juízo e garantir a efetividade da ordem de suspensão pelo prazo determinado.

Para tanto, servirá a presente decisão, por cópia a ser obtida no site do Tribunal de Justiça em que conste a assinatura digital, como ofício do Juízo a ser apresentado pelas recuperandas a quem de direito, obrigando terceiros, desde logo, ao cumprimento da medida ora deferida.

Constato que alguns documentos estrangeiros que constam dos autos não estão traduzidos. As requerentes devem, no prazo de 15 dias, providenciar a juntada da tradução.

**EXPEÇA-SE** edital eletrônico de intimação aos credores para, no prazo de 30 (trinta) dias, apresentarem impugnação ao plano, na forma do art. 164 da lei nº 11.101/05, providenciando a recuperanda, em 48 horas, a remessa da minuta ao e-mail sp3falencias@tjsp.jus.br.

No mesmo prazo, as recuperandas deverão comprovar o envio de carta a todos os credores sujeitos ao plano, domiciliados ou sediados no país, informando a distribuição do pedido, as condições do plano e prazo para impugnação, na forma do §1º do art. 164 da lei nº 11.101/05.

Por oportuno, em caso de credores estrangeiros sem representação ou domicílio no Brasil, a fim de garantir a paridade entre estes e os credores nacionais, conforme preveem os §§ 2º e 3º do art. 167-G da lei nº 11.101/05, as recuperandas deverão, no mesmo prazo, comprovar que lhes remeteu por correspondência eletrônica os documentos de que trata o §1º do art. 164, acompanhados de tradução juramentada, no prazo de 30 dias.

Na forma do § 4º do art. 167-G, as recuperandas deverão observar que a correspondência eletrônica deverá conter as informações sobre providências necessárias para que o credor estrangeiro possa fazer valer seu direito, inclusive quanto ao prazo para apresentação de habilitação ou de divergência, à necessidade de os credores garantidos habilitarem seus créditos e de impugnarem o plano ora apresentado.

**Poder Judiciário**
**JUSTIÇA ESTADUAL**
**Cível - Tribunal de Justiça do Estado de São Paulo**
**Juízo Titular I - 3ª Vara de Falências e Recuperações Judiciais - Foro Central
Cível**

Por fim, nos termos do art. 163, § 7º, da Lei nº 11.101/2005, no prazo improrrogável de 90 (noventa) dias, contado da data do pedido, as recuperandas deverão juntar aos autos documentação que comprove o alcance do quórum previsto no caput do referido dispositivo, por meio de adesão expressa dos credores.

**PROVIDENCIE** a z. Serventia a intimação da Fazenda Nacional, bem como as da sede, da matriz e da filial das recuperandas, para ciência do pedido e do plano de recuperação ora apresentados e para, havendo interesse, apresentarem impugnação no prazo de 30 (trinta) dias.

Ciência ao Ministério Público.

---

Documento eletrônico assinado por **GUILHERME CAVALCANTI LAMÊGO, Juiz de Direito**, na forma do artigo 1º, inciso III, da Lei 11.419, de 19 de dezembro de 2006. A conferência da **autenticidade do documento** está disponível no endereço eletrônico https://eproc1g.tjsp.jus.br/eproc/externo_controlador.php?acao=consulta_autenticidade_documentos, mediante o preenchimento do código verificador **610006260069v46** e do código CRC **56e72a8e**.

Informações adicionais da assinatura:
Signatário (a): GUILHERME CAVALCANTI LAMÊGO
Data e Hora: 12/03/2026, às 17:49:33

---

**4037759-13.2026.8.26.0100**                                  **610006260069 .V46**

## EXHIBIT E

**Certified Translation of Initial Court Order**

*This is to certify that the foregoing translation is, to the best of my knowledge and belief, a true and accurate rendition into English of the original document entitled "610006260069 - eproc" which was written in Portuguese.*

*I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

*Executed on March 12, 2026.*

Documento assinado digitalmente

**gov.br**  **ANA CECILIA WERNECK DE ALBUQUERQUE MAR**
Data: 12/03/2026 21:04:32-0300
Verifique em https://validar.iti.gov.br

_____

*Ana Cecilia Maranhão*
*Email: anaceciliamaranhao@gmail.com*

[letterhead of Judiciary Branch - State Justice – Civil Courts - Court of Justice of the State of São Paulo - Seating Judge I - 3rd Court of Bankruptcy and Judicial Reorganization - Central Civil Courthouse]

**EXTRAJUDICIAL REORGANIZATION No. 4037759-13.2026.8.26.0100/SP**

**APPLICANT**: RAÍZEN NORTH AMERICA INC AND OTHERS

**RESPONDENT**: ITAU UNIBANCO S.A.

**ORDER/DECISION**

This is a request for approval of out-of-court reorganization filed by **Raízen S/A and others** aiming to cover debt (article 83, VI, LRF) in the total amount of R$ 98.63 billion, of which R$ 33.49 billion arise from obligations between Applicants(intercompany credits)

Procedural consolidation is admissible in out-of-court reorganization. Although provided for in article 69-G for judicial reorganization cases, nothing prevents optional joinder also in extrajudicial reorganization, notably in a context of integration of efforts of several companies of the same group to overcome a state of crisis.

I find that the applicants are part of a corporate group with common operations, such that the requirements of Article 69-G of Law No. 11,101/2005 are satisfied.

As this is a case of procedural consolidation, the analysis of the requirements for granting the processing of the extrajudicial reorganization must be carried out individually with respect to each of the applicants. That is what is being done at this time.

I note the presence, in the case records, of powers of attorney granted by:

*(i) Raízen S/A (3.7, signed by Chief Executive Officer Nelson Roseira Gomes and Chief Legal Counsel Frederico Pacheco de Araújo, with the resolution of the board of directors 3.8);*

*(ii) Raízen Energia S/A (3.7, signed by Chief Executive Officer Geovane Dilkin Consul, with the resolution of the board of directors 3.8);*

*(iii) Raízen Fuels Finance S/A (3.7, signed by Officers Nicoletta Leone and Marina Dalben, with a resolution of the board of directors 3.8);*

*(iv) Raízen Tradings S/A (3.7, signed by Officers Celso Henrique Martins Silva and João Bruno Figueiredo Livramento);*

*(v) Raízen North America Inc (3.7, signed by Vice President Celso Henrique Martins Silva);*

*(vi) Raízen Caarapo Açúcar e Alcool Ltda (3.7, signed by Chief Executive Officer Silvio Cesar Rosa Redigolo, with the resolution of the board of directors 3.8);*

*(vii) Raízen Centro-Sul Paulista S/A (3.7, signed by Chief Executive Officer Silvio Cesar Rosa Redigolo, with the resolution of the board of directors 3.8);*

*(viii) Raízen Centro-Sul S/A (3.7, signed by Chief Executive Officer Silvio Cesar Rosa Redigolo, with the resolution of the board of directors 3.8);*

*(ix) Blueway Trading Importação e Exportação S/A (3.7, signed by Chief Executive Officer Juliano Tamaso, with the resolution of the board of directors 3.8).*

The party submitted the documents required in articles 48 and 163 of the LRF, namely:

*(i) Statement, in the initial petition (1.1), of the concrete causes of the debtor's financial condition and the reasons for the economic and financial crisis;*

*(ii) financial statements for the last fiscal year and those drawn up especially to support the application, balance sheet for (ii.a) Raízen S/A (4.2, 4.3, 4.4, 4.15); (ii.b) Raízen Energia S/A (4.2, 4.5); (ii.c) Raízen Fuels Finance S/A (4.2, 4.5); (ii.d) Raízen Tradings S/A (4.2, 4.5); (ii.e) Raizen North America Inc (4.2); (ii.f) Raízen Caarapo Açúcar e Alcool Ltda (4.2, 4.5); (ii.g) Raízen Centro-Sul Paulista S/A (4.2, 4.5, 4.6); (ii.h) Raízen Centro-Sul S/A (4.2, 4.6); (ii.i) Blueway Trading Importação e Exportação S/A (4.2, 4.6).*

*(iii) terms of adhesion and documents proving the authority of the signatories to enter into a settlement (3.10, 3.11, 3.12, 3.13, 3.14, 3.15, 3.16, 3.17, 3.18, 3.19, 3.20, 3.21, 3.22, 3.23, 3.24, 3.25, 3.26)*

*(iv) nominal list of creditors related to (iv.a) Raízen S/A (3.9); (iv.b) Raízen Energia S/A (3.9); (iv.c) Raízen Fuels Finance S/A (3.9); (iv.d) Raízen Tradings S/A (3.9); (iv.e) Raízen North America Inc (3.9); (iv.f) Raízen Caarapo Açúcar e Alcool Ltda (3.9); (iv.g) Raízen Centro-Sul Paulista S/A (3.9) (iv.h) Raízen Centro-Sul S/A (3.9); (iv.i) Blueway Trading Importação e Exportação S/A (3.9);*

*(v) certificate of distribution of bankruptcy actions, settlements and reorganizations in the name of the applicant, from which it is possible to conclude that it has not been bankrupt and has not been granted judicial reorganization in the last 2 years, either under the regular rite, or under the special rite for micro and small companies related to (v.a) Raízen S/A (4.9); (v.b) Raízen Energia S/A (4.9); (v.c) Raízen Fuels Finance S/A (4.9); (v.d) Raízen Tradings S/A (4.9); (e.g.) Raízen North America Inc (4.9); (v.f) Raízen Caarapo Açúcar e Alcool Ltda (4.9); (e.g.) Raízen Centro-Sul Paulista S/A (4.9); (v.h) Raízen Centro-Sul S/A (4.9); (v.i) Blueway Trading Importação e Exportação S/A (4.9);*

*(vi) certificates of distribution of criminal actions in the name of the applicants, officers and controlling shareholders (4.14), from which it is possible to conclude that they have not been convicted of bankruptcy crimes relating to (vi.a) Raízen S/A (4.10, 4.11); (vi.b) Raízen Energia S/A (4.10, 4.12); (vi.c) Raízen Fuels Finance S/A (4.10, 4.12); (vi.d) Raízen Tradings S/A (4.10, 4.12); (vi.e) Raizen North America Inc (4.10, 4.12); (vi.f) Raízen Caarapo Açúcar e Alcool Ltda (4.10, 4.12); (vi.g) Raízen Centro-Sul Paulista S/A (4.10, 4.13); (vi.h) Raízen Centro-Sul S/A (4.10, 4.12); (vi.i) Blueway Trading Importação e Exportação S/A (4.10, 4.13);*

*(vii) proof of sustained exercise of business activity for more than two years related to (vii.a) Raízen S/A (3.2,4.8); (vii.b) Raízen Energia S/A (3.2, 4.8); (vii.c) Raízen Fuels Finance S/A (3.3, 4.8); (vii.d) Raízen Tradings S/A (3.3, 4.8); (vii.e) Raízen North America Inc (3.3, 4.8); (vii.f) Raízen Caarapo Açúcar e Alcool Ltda (3.3, 4.8); (vii.g) Raízen Centro-Sul Paulista S/A (3.3, 4.8); (vii.h) Raízen Centro-Sul S/A (3.4, 4.8); (vii.i) Blueway Trading Importação e Exportação S/A (3.4, 4.8);*

*(viii) List of cases (4.18).*

In a preliminary examination, I find the documentation submitted to be in order. The costs have been paid (7.1).

Documentation proving the approval of the plan was presented for credits representing 47.2% of the Subject Credits (3.9), representing (i) 44.9% of Raízen S/A (3.9); (ii) 45.4% of Raízen Energia S/A (3.9); (iii) 100% of Raízen Centro-Sul Paulista S/A (3.9); (iv) 100% of Raízen Centro-Sul S/A (3.9); (v) 100% of Blueway Trading Importação e Exportação S/A (3.9); (vi) 100% of Raízen Trading S/A (3.9); (vii) 34.9% of Raízen Fuels Finance S/A (3.9); (viii) 100% of Raízen Caarapo Açúcar e Álcool Ltda (3.9) – that is, higher than the minimum quorum of 1/3 required by article 163, paragraph 7 of Law 11,101/2005.

I note that against Raízen North America Inc (3.9) there is only one claim, in which a company from the same economic group, also an applicant in this case, appears as a creditor. For this reason, the presentation of adhesion of 1/3 of the credits is dispensable, considering that the only creditor is also listed as an applicant/debtor.

This fact does not prevent the debtor from being listed as a co-applicant in this proceeding or being a party to the reorganization plan. First, because its debt is subject to the effects of the plan, according to clause 4.5. Second, because the plan provides for the possibility of corporate reorganization, to which the applicant may be a party. Third, because there are no other subject creditors, so that there is no detrimental effects as a result of its maintenance as a party to the proceedings and to the out-of-court reorganization plan.

The out-of-court reorganization plan can be found in event 1.2.

Although admittedly incomplete (according to clause 2.1), the plan presented offers minimum provisions and parameters, to enable the negotiations that are expected to take place in the course of the procedure.

Without prejudice, considering the incompleteness of the plan attached

to the records, the submission of an updated plan will result in the renewal of the deadline for creditors to file challenges, pursuant to article 164, paragraph 3, of Law 11,101/2005.

The procedural consolidation and the requirement of independent and specific means of reorganization (Article 69-I, § 1, of Law No. 11,101/2005) do not prevent the submission of a single plan, with similar regimes for the different debtors and a pooling of efforts to overcome the state of crisis. This is what Pedro Rebello Bortolini teaches:

> *"The requirement of specificity, moreover, does not mean that the plans must necessarily differ for each of the debtors. They may indeed be different, but there is no impediment to each debtor's plan containing exactly the same provisions regarding the form of payment of its own creditors.*
>
> *[...]*
>
> *On the other hand, the provision that debtors must propose independent means of recovery ultimately gives rise to the mistaken impression that, except in cases of substantial consolidation, debtors would be required to prepare their recovery plans without any consideration for the other debtors and would be prevented from coordinating their efforts, as if the crisis faced by each of them were entirely dissociated from that of the others, or as if they did not form part of the same economic group.*
>
> *[...]*
>
> *In addition to gains in efficiency and resource allocation, procedural consolidation allows precisely this: the coordination of efforts among multiple debtors and the joint negotiation with their respective creditors. There is no reasonable justification for restricting this type of solution to cases of structural dysfunction within the group, that is, only when substantial consolidation is authorized." (BORTOLINI, Pedro Rebello. Recuperação judicial dos grupos de empresas: aspectos teóricos e práticos da consolidação processual e substancial. Indaiatuba: Editora Foco, 2023, p. 192 - 194)*

For all the above, the conditions for admissibility of the application have been met.

Thus, **I hereby GRANT the processing of the request, in procedural consolidation, with suspension, exclusively with respect to the claims covered by the reorganization plan herein submitted, for a period of one hundred and eighty (180) calendar days** (article 189, §1, LRF), applicable to:

(i) the running of the statute of limitations on the obligations of the debtor;

(ii) executions filed against the debtor;

(iii) of orders of retention, attachment, seizure, sequestration, search and seizure, and judicial or extrajudicial constraint over assets, pursuant to §8 of Article 163,

in conjunction with Article 6, both of Law No. 11,101/2005.

By virtue of the effects of article 163, paragraph 8, of Law 11,101/2005 and the suspension of the enforceability of the claims arising from this decision, the offsetting of subject credits is prohibited, except in the cases provided for in articles 193 and 193-A of Law 11,101/2005.

In time, considering the transnational nature and the expected implementation of the plan abroad (1.2), I hereby appoint **Lourival Nogueira Luiz Junior** as foreign representative under the terms required in the initial petition (1.1).

The debtors must take steps before the respective courts in which executions or orders of asset constraint are being processed, in order to notify the processing of this reorganization, preserve the jurisdiction of the court and ensure the effectiveness of the suspension order for the determined period.

To this end, this decision, a copy of which may be obtained from the website of the Court of Justice and which contains the digital signature, shall serve as a letter from the Court to be presented by the debtors to the parties to whom it is addressed, requiring third parties, from the outset, to comply with the measure hereby granted.

I note that certain foreign documents in the case file are not translated. Applicants must, within 15 days, arrange for the translation to be attached to these records.

An electronic notice to creditors shall be issued so that, within thirty (30) days, they may present an objection to the plan, pursuant to Article 164 of Law No. 11,101/2005, and the debtor shall, within forty-eight (48) hours, provide the court clerk with the draft of the notice to be sent by e-mail sp3falencias@tjsp.jus.br.

Within the same period, the debtors must demonstrate that they have sent a letter to all creditors subject to the plan, domiciled or headquartered in the country, informing them of this application, the terms of the plan, and the deadline for objections, pursuant to paragraph 1 of Article 164 of Law No. 11,101/2005.

Furthermore, in the case of foreign creditors without representation or domicile in Brazil, in order to ensure parity between them and domestic creditors, as provided in §§ 2 and 3 of Article 167-G of Law No. 11,101/2005, the debtors must, within the same period, demonstrate that they have sent, by electronic correspondence, the documents referred to in §1 of Article 164, accompanied by a sworn translation, within 30 days.

Pursuant to § 4 of Article 167-G, the debtors must ensure that the electronic correspondence contains information on the measures necessary for the foreign creditor to assert its rights, including the deadline for filing a proof of claim or objection, the requirement for secured creditors to file their claims, and the need to challenge the plan hereby submitted.

Finally, pursuant to Article 163, §7, of Law No. 11,101/2005, within the non-extendable period of ninety (90) days, counted from the date of the request, the debtors must submit to the records documentation demonstrating that the quorum provided for in the main section of said provision has been reached, through the express adhesion of the creditors.

The Clerk's Office shall serve notice upon the National Treasury, as well as upon the tax authorities of the jurisdictions of the headquarters, principal place of business, and branch offices of the debtors, to inform them of the request and the reorganization plan hereby submitted and, if they so wish, to allow them to file an objection within thirty (30) days.

Notice of this decision shall be served upon the Public Prosecutor's Office.

Electronic document signed by **GUILHERME CAVALCANTI LAMÊGO, Judge**, pursuant to article 1, item III, of Law 11.419, of December 19, 2006. The verification of the **authenticity of the document** is available at the electronic address https://eproc1g.tjsp.jus.br/eproc/externo_controlador.php?acao=consulta_autenticidade_documentos, by filling in the verification code **610006260069v46** and the CRC code **56e72a8e**.

Additional Information on the signature:
Signatory: GUILHERME CAVALCANTI LAMÊGO
Date and Time: March 12, 2026, at 17:49:33

**4037759-13.2026.8.26.0100     610006260069 . V46**