CLEARY GOTTLIEB STEEN & HAMILTON LLP
Luke A. Barefoot
David Z. Schwartz
Richard C. Minott
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999
*Attorneys for Raízen S.A.,*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) ) Case No. 26-10528 (LGB) |
| Raízen S.A.,[1] | ) Chapter 15 |
| Debtor in a Foreign Proceeding. | ) ) (Jointly Administered) ) |

**PETITIONER'S BRIEF**
**IN SUPPORT OF THE VERIFIED PETITION FOR RECOGNITION**
**OF THE BRAZILIAN PROCEEDING AND MOTION FOR ORDER GRANTING**
**RELATED RELIEF PURSUANT TO 11 U.S.C. §§ 105(a), 1515, 1517, 1520, AND 1521**

---

[1]     The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Raízen S.A. (01-23–Brazil); Raízen Energia S.A. (01-78–Brazil); Raízen Centro-Sul Paulista S.A. (18-28–Brazil); Raízen Fuels Finance S.A. (0903–Luxembourg); Blueway Trading Importação e Exportação S.A. (01-57–Brazil); Raízen Caarapó Açúcar e Álcool Ltda. (01-66–Brazil); Raízen North America, Inc. (7198–U.S.); Raízen Centro-Sul S.A. (01-36–Brazil); and Raízen Trading S.A. (3.167–Switzerland).

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ........................................................................................................................... 4

JURISDICTION AND VENUE ................................................................................................... 4

ARGUMENT ................................................................................................................................ 5

I.  The COMI of the Debtors, including Raízen Fuels Finance, Raízen North America, and Raízen Trading, is Brazil.......................................................................... 5

    A.  The COMI of Raízen Fuels Finance is Brazil............................................ 6

    B.  The COMI of Raízen North America is Brazil......................................... 10

    C.  The COMI of Raízen Trading is Brazil .................................................... 14

    D.  The Raízen Group's 'Nerve Center' is Brazil.......................................... 17

II.  Alternatively, Raízen Fuels Finance, Raízen North America and Raízen Trading each have an Establishment in Brazil for Non-Main Recognition and the Court Should Grant Discretionary Relief........................................................................... 18

    A.  The Financing & Trading Debtors at Minimum Have an Establishment in Brazil................................................................................................... 18

    B.  The Court Should Grant Discretionary Relief Under Section 1521. ........ 24

CONCLUSION............................................................................................................................ 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*,
482 B.R. 96 (Bankr. S.D.N.Y. 2012) .................................................................................. 24

*In re Americanas S.A.*,
No. 23-10092 (MEW) (Bankr. S.D.N.Y. 2023) .................................................................. 10

*In re Bd of Dirs. of Hopewell Intern. Ins. Ltd.*,
238 B.R. 25 (Bankr. S.D.N.Y. 1999) .............................................................................. 9, 10

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
374 B.R. 122 (Bankr. S.D.N.Y. 2007) ............................................................................19, 20

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
389 B.R. 325 (S.D.N.Y. 2008) ........................................................................................... 19

*In re British Am. Ins. Co. Ltd.*,
425 B.R. 884 (Bankr. S.D. Fla. 2010) .................................................................... 15, 19, 20

*In re Creative Fin., Ltd.*,
543 B.R. 498 (Bankr. S.D.N.Y. 2016) ........................................................................... 20, 23

*In re Culligan Ltd.*,
2021 Bankr. LEXIS 1783 (Bankr. S.D.N.Y. 2021) ........................................................... 18

*In re Gerova Fin. Grp., Ltd.*,
482 B.R. 86 (Bankr. S.D.N.Y. 2012) .................................................................................. 19

*In re Giftcraft Ltd.*,
No. 25-11030 (MG), 2025 WL 1583480 (Bankr. S.D.N.Y. June 4, 2025) .......................... 17

*In re InterCement Brasil S.A.*,
668 B.R. 802 (Bankr. S.D.N.Y. 2025) .....................................................................7, 8, 10, 17

*In re Iovate Health Scis. Int'l Inc.*,
673 B.R. 516 (Bankr. S.D.N.Y. 2025) ................................................................................. 14

*In re Mega Newco Ltd.*,
No. 24-12031 (MEW), 2025 WL 601463 (Bankr. S.D.N.Y. Feb. 24, 2025) ....................... 17

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
458 B.R. 63 (Bankr. S.D.N.Y. 2011), *aff'd* 474 B.R. 88 (S.D.N.Y. 2012) ...................... 19, 20, 22

*In re Modern Land (China) Co., Ltd.*,
641 B.R. 768 (Bankr. S.D.N.Y. 2022) ................................................................. 8, 17, 20

*In re Mood Media Corp.*,
569 B.R. 556 (Bankr. S.D.N.Y. 2017) .......................................................................... 20

*In re OAS S.A.*,
533 B.R. 83 (Bankr. S.D.N.Y. 2015) ..................................................................... *passim*

*In re Odebrecht, S.A.*,
No. 19-12731 (SMB) (Bankr. S.D.N.Y. 2019) ...................................................... 10, 11

*In re Oi Brasil Holdings Coöperatief U.A.*,
578 B.R. 169 (Bankr. S.D.N.Y. 2017) ............................................................................ 8

*In re Oi S.A.*,
No. 23-10193 (JPM) (Bankr. S.D.N.Y. 2023) ............................................................. 10

*In re Olinda Star Ltd.*,
614 B.R. 28 (Bankr. S.D.N.Y. 2020) .............................................................................. 5

*In re Serviços de Petróleo Constellation S.A.*,
600 B.R. 237 (Bankr. S.D.N.Y. 2019) ................................................... 11, 16, 20, 24

*In re Serviços de Petróleo Constellation S.A.*,
613 B.R. 497 (Bankr. S.D.N.Y. 2020) .......................................................................... 21

*In re SPhinX, Ltd.*,
351 B.R. 103 (Bankr. S.D.N.Y. 2006) ............................................................... 5, 6, 7, 14

*In re Standing Order of Reference Re: Title 11*,
12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) ........................................................................ 4

*In re Suntech Power Holdings Co.*,
520 B.R. 399 (Bankr. S.D.N.Y. 2014) ...................................................................... 7, 18

*In re Toft*,
453 B.R. 186 (Bankr. S.D.N.Y. 2011) .......................................................................... 24

*In re Washington, Perito & Dubuc*,
154 B.R. 853 (Bankr. S.D.N.Y. 1993) ...................................................................... 9, 21

*In re Winsway Enterprises Holdings Ltd.*,
No. 16-10833 (MG) (Bankr. S.D.N.Y. 2016) .......................................................................... 25

*Kelly v. United States Steel Corp.*,
284 F.2d 850 (3d Cir. 1960) .................................................................................................... 11

*Lavie v. Ran (In re Ran)*,
607 F.3d 1017 (5th Cir. 2010) ................................................................................................ 19

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*,
714 F.3d 127 (2d Cir. 2013) ........................................................................................5, 6, 11, 13

*Phoenix Four, Inc. v. Strategic Res. Corp.*,
446 F.Supp.2d. 205 (S.D.N.Y. 2006) ..................................................................................... 11

## Rules and Statutes

11 U.S.C. § 362(d) ................................................................................................................... 26

11 U.S.C. § 1502(2) ................................................................................................................. 19

11 U.S.C. § 1502(4) ................................................................................................................... 5

11 U.S.C. § 1502(5) ............................................................................................................ 18, 19

11 U.S.C. § 1516(c) .................................................................................................................2, 5

11 U.S.C. § 1517(b)(2) ............................................................................................................ 19

11 U.S.C. § 1521(a) ................................................................................................................. 19

11 U.S.C. § 1522(a) ................................................................................................................. 24

28 U.S.C. §§ 157 ........................................................................................................................ 4

28 U.S.C. § 157(b)(2)(P) ........................................................................................................... 4

28 U.S.C. § 1409(a) ................................................................................................................... 4

28 U.S.C. § 1410 ........................................................................................................................ 4

28 U.S.C. § 1746 ...................................................................................................................... 25

**<u>Other Authorities</u>**

H. Rep. No. 109-31, Pt. 1 (2005) .......................................................................................... 5, 24

Raízen S.A. (the "Petitioner" or "Foreign Representative"), the duly-authorized foreign representative of Raízen S.A., Raízen Energia S.A., Raízen Centro-Sul S.A., Raízen Centro-Sul Paulista S.A., Blueway Trading Importação e Exportação S.A., Raízen Caarapó Açúcar e Álcool Ltda., Raízen North America, Inc. ("Raízen North America"), Raízen Fuels Finance S.A. ("Raízen Fuels Finance") and Raízen Trading S.A. ("Raízen Trading") (collectively, the "Debtors") in the Brazilian court-supervised extrajudicial reorganization proceeding (*recuperação extrajudicial*) of the Debtors (the "Brazilian Proceeding"), which was accepted by the 3rd Bankruptcy and Judicial Reorganization Court – Central Civil Courthouse (the "Brazilian Court") on March 12, 2026, pursuant to Federal Law No. 11.101 of February 9, 2005 (as modified, the "Brazilian Bankruptcy Law"), of the laws of the Federative Republic of Brazil ("Brazil"),[2] by and through its undersigned counsel, respectfully submits this *Petitioner's Brief in Support of the Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1515, 1517, 1520, and 1521* (the "Brief"). This Brief is filed in support of (a) each voluntary petition [ECF No. 1] (collectively, the "Voluntary Petitions") filed by each of the Debtors on March 12, 2026, and (b) the *Declaration of Lorival Nogueira Luz, Junior, and Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(A), 1515, 1517, 1520, and 1521* [ECF No. 3] (the "Declaration and Verified Petition" and, together with the Voluntary Petitions, the "Petitions").

## **PRELIMINARY STATEMENT**

1.    The Raízen Group[3] is an economically and operationally integrated group—Brazil's leading sugarcane processor and ethanol producer, the country's second largest energy

---

[2]    The case number for the Brazilian Proceeding before the Brazilian Court is 4037759-13.2026.8.26.0100/SP.

[3]    Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Declaration and Verified Petition.

and fuel distributor, and its third largest company by net revenue (excluding financial institutions). The Raízen Group's operations are managed centrally from its headquarters and "nerve center" in São Paulo, Brazil. While each company in the Raízen Group performs a specific function within the group, the activities of the group as a whole are ultimately managed, directed, and monitored from Brazil.

2.    No responses or objections were timely filed to the relief sought by the Verified Petition and Declaration in accordance with the Court's *Order Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 Scheduling Hearing and Specifying Form and Manner of Service and Notice* [ECF No. 22]. A single clarification to the form of proposed order has been made to address concerns raised by the Ad Hoc Group of Financing Creditors, such that recognition of the Brazilian Proceeding is proceeding on an uncontested basis. Moreover, with respect to the majority of the Debtors who are incorporated in Brazil, because no creditor or party-in-interest has adduced any evidence to the contrary, they are entitled to a presumption that their COMI is in Brazil pursuant to Section 1516(c) and thus to an order granting recognition as foreign main proceedings pursuant to Section 1517(a)(1).

3.    Consistent with the Court's comments at the hearing on March 16, 2026, the Petitioner submits this Brief, together with the Luz Declaration (as defined herein) attached hereto, as further evidence in support of finding that the COMI of each of Raízen Fuels Finance, Raízen North America, and Raízen Trading (the "Financing & Trading Debtors") is in Brazil, or, alternatively, that each of these Debtors at minimum has an establishment in Brazil and that in such case relief on a non-main basis should be granted in the Court's discretion.

4.    As described in the Declaration and Verified Petition and the Luz Declaration, substantially all of the Debtors' operations, including those of the Financing & Trading Debtors,

are managed and/or directed from Brazil, making Brazil easily ascertainable by third parties as the

Finance and Trading Debtors' COMI.  The uncontroverted evidence demonstrates the following:

i. *Raízen Fuels Finance*, a Luxembourg SPV with no operations, employees, accounts or any other assets in Luxembourg, exists solely to provide financing for the Raízen Group's Brazilian operations.  Its debts are guaranteed by two Brazilian Debtors, its sole material assets are its intercompany claims against its Brazilian affiliates, and its offering documents direct all investor inquiries to the Raízen Group's "principal executive office" in Brazil.  Moreover, under its bylaws, no corporate actions can be duly authorized by its board without the assent of at least one of its Brazilian directors.

ii. *Raízen North America*, incorporated in Delaware, operates as an outpost facilitating ethanol and oil trading on behalf of and at the direction of the Raízen Group's headquarters in São Paulo.  It has no standalone operations outside of those conducted for the benefit of the group as directed from Brazil, operates on a cost-plus model at the direction of other entities in the Raízen Group, and carries out its affairs in alignment with the directives and central coordination from Brazil.  A majority of its employees are Portuguese-speaking Brazilian nationals, and it is centrally supported from São Paulo for all financial, tax, accounting, IT, and other management and support functions.

iii. *Raízen Trading*, with its registered office in Switzerland, similarly operates as a trading hub for the Raízen Group's global trading activities, with its procurement and trading strategy aligned at all times with the global business objectives established by the headquarters in Brazil.  Over the six months prior to the Petition Date, 73% of its oil purchases were sourced from Brazil, over 77% of its oil sales were directed to Brazil, and over 40% of its ethanol trading was sourced from and directed to Brazil.  Raízen Trading also leases real property and equipment at Brazilian ports—all under contracts providing for the exclusive jurisdiction of Brazilian courts.

5.    Furthermore, since before the filing of these Chapter 15 Cases, all of the Debtors,

including the Financing & Trading Debtors, have been involved in restructuring negotiations with

creditors in Brazil, including since March 12, 2026, through the Brazilian Court-supervised

extrajudicial reorganization process, further supporting a determination that the Debtors' COMI is

in the jurisdiction of the foreign proceeding and that their proceedings should be recognized as

foreign main proceedings.

6.      In the alternative, there is ample evidence that each of the Financing & Trading Debtors have at least an establishment in Brazil, such that if the Court finds any of their COMIs are not in Brazil, the Petitioner respectfully requests that the Court grant discretionary relief, specifically the application of the section 362 stay with respect to such Debtor and its property within the territorial jurisdiction of the United States.

## BACKGROUND

7.      The relevant factual background with respect to the relief sought is set forth in the Declaration and Verified Petition and the Brazilian Counsel Declaration.  Further factual support is set forth in the *Declaration of Lorival Nogueira Luz, Junior in Support of the Petitioner's Brief in Further Support of the Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(A), 1515, 1517, 1520, and 1521* (the "Luz Declaration") attached hereto as **Exhibit A**.  The Court may find therein a description of the Brazilian Proceeding of the Debtors, the Debtors' businesses, corporate, and capital structures, and the circumstances leading to the commencement of the Brazilian Proceeding and these Chapter 15 Cases.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction to consider this Brief and the Petitions pursuant to 28 U.S.C. §§ 157, 1334, as well as the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1409(a) and 1410.

## ARGUMENT

### I.    THE COMI OF THE DEBTORS, INCLUDING RAÍZEN FUELS FINANCE, RAÍZEN NORTH AMERICA, AND RAÍZEN TRADING, IS BRAZIL

9.    The Brazilian Proceeding is a "foreign main proceeding" for each of the Debtors as it is a "foreign proceeding pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1502(4).  While the Bankruptcy Code does not define center of main interests ("COMI"), section 1516(c) provides that, in the absence of evidence to the contrary, a debtor's registered office or habitual residence "is presumed to be the center of the debtor's main interests."  11 U.S.C. § 1516(c); *see also In re Olinda Star Ltd.*, 614 B.R. 28, 40 (Bankr. S.D.N.Y. 2020) ("Courts have found that a debtor's registered jurisdiction is its COMI where no objection was raised or evidence presented rebutting the section 1516 presumption.").  The legislative history indicates that this rebuttable presumption was "designed to make recognition as simple and expedient as possible" in cases where the COMI of a debtor is not controversial.  H. Rep. No. 109-31, pt. 1, at 112-113 (2005).  Given this presumption and the lack of evidence to the contrary for any of the Brazilian Debtors, there is no question that the COMI for each of the Brazilian Debtors is Brazil.  *See also* Decl. and Verified Pet. ¶¶ 58–60.

10.    As to the Financing & Trading Debtors, the facts demonstrate that each of these Debtors' COMI is Brazil as well.  In assessing where a debtor's COMI lies, courts in this Circuit have developed a non-exclusive list of factors for determining COMI.  *See In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006); *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137–38 (2d Cir. 2013).  Those factors include the following: (a) "the location of the debtor's headquarters;" (b) "the location of those who actually manage the debtor" (which, conceivably could be the headquarters of a holding company); (c) "the location of the debtor's primary assets;" (d) "the location of the majority of the debtor's creditors or a majority of the

5

creditors who would be affected by the case;" and (e) "the jurisdiction whose law would apply to most disputes." *See In re SPhinX*, 351 B.R. at 117; *In re Fairfield Sentry*, 714 F.3d at 137.

11.     Courts may also consider a debtor's "principal place of business" as part of their COMI analysis, which looks at the location of a corporation's "nerve center," *i.e.*, "where a corporation's officers direct, control, and coordinate the corporation's activities." *See In re Fairfield Sentry*, 714 F.3d at 138 n.10 (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 91 (2010)). Given Congress's choice to use "COMI" instead of "principal place of business" in chapter 15, the "nerve center" concept does not control, "[b]ut to the extent that the concepts are similar, a court may certainly consider a debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI." *Id.*   In addition, courts have also considered the need for the debtor's COMI to be readily ascertainable by third parties. *See In re Fairfield Sentry*, 714 F.3d at 130.

12.     The Raízen Group's main assets—i.e., its sugarcane, ethanol, energy and fuel commodities—are located in Brazil, and the core functions of the Debtors, including the Financing & Trading Debtors, are to support the global operations of the business, which are ultimately managed, directed, and/or monitored from the Company's headquarters and "nerve center" in São Paulo, Brazil.  *See* Decl. and Verified Pet. ¶¶ 58-59; *see* also Luz Decl. ¶¶ 6, 10, 15.

**A.      The COMI of Raízen Fuels Finance is Brazil**

13.     Raízen Fuels Finance, a Luxembourg special-purpose vehicle ("SPV"), is a wholly-owned subsidiary of Brazilian Debtor Raízen Energia S.A. and was formed solely to provide access to international financing markets in support of the Raízen Group's funding needs.  *See* Decl. and Verified Pet. ¶ 17(d); *see also* Luz Decl. ¶ 6.  Courts in this district have routinely held that the COMI of an SPV "with no operations other than managing relationships with creditors and paying off operations on behalf of a larger corporate parent . . . should be determined by the

6

location of the corporate 'nerve center.'" *See, e.g., In re InterCement Brasil S.A.*, 668 B.R. 802, 822 (Bankr. S.D.N.Y. 2025) (quoting *In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169, 222–30 (Bankr. S.D.N.Y. 2017)); *In re OAS S.A.*, 533 B.R. 83, 102 (Bankr. S.D.N.Y. 2015) (finding COMI of a foreign SPV in the jurisdiction of its corporate group largely because its "principal purpose [was] the financing of the operations of [the parent], its affiliates and direct and indirect subsidiaries"); *In re Suntech Power Holdings Co.*, 520 B.R. 399, 416–17 (Bankr. S.D.N.Y. 2014) (indicating that, at time of foreign filing, a holding company with no tangible assets or operations had its COMI in the functional nerve center of its corporate group, which was ascertainable to creditors); *see also In re SPhinX*, 351 B.R. at 117 (noting that a subsidiary's nerve center could very well sit with its parent company).

14.    As a financing vehicle, Raízen Fuels Finance has no operations of its own, does not develop or perform autonomous entrepreneurial activities, and was constituted by Raízen Energia S.A. for financing purposes to support the Raízen Group's activities in Brazil.  *See* Luz Decl. ¶ 6. It is the issuer of the Notes and the borrower under the 2023 SACE-Covered Facility and 2024 SACE-Covered Facility (the "SACE-Covered Facilities") and RCF, all of which are guaranteed by Raízen S.A. and Raízen Energia S.A., both of which are Brazilian Debtors, and the proceeds of which were on-lent to the Raízen Group.  *See* Decl. and Verified Pet. ¶¶ 17(d), 22(a)–(f), 22(n)– (p); *see also* Luz Decl. ¶ 7.  The very decision to issue the Notes and other debt borrowed by Raízen Fuels Finance was authorized and approved by the board of Raízen Energia S.A., its direct parent, from the Company's headquarters in São Paulo.  *See* Luz Decl. ¶ 7.

15.    As the Offering Memoranda for the Notes made clear, Raízen Fuels Finance (i) does not publish separate financial statements and its financial statements are only available to creditors as part of the Raízen Group's consolidated financial statements prepared in and published

7

in Brazil, (ii) is subject to the risks associated with the Company's operations in Brazil, (iii) has no means of repaying its obligations other than from revenue generated by the Raízen Group's operations, and (iv) does not have its own investor relations, and directs all investor inquiries to the "principal executive office" of the Raízen Group in Brazil. *See id.* Indeed, courts have found that creditor expectations—as evidenced by disclosures in the Raízen Group's debt documents, including references to risk factors in the parent company's jurisdiction—and financial dependence on the parent entities support a finding that, here, Raízen Fuels Finance's COMI is unquestionably in Brazil. *See In re Oi Brasil*, 578 B.R. at 228-230; *see also In re Intercement*, 668 B.R. at 822-23 (granting foreign main recognition of a Brazilian insolvency proceeding for an SPV domiciled outside of Brazil in part given the disclosures in the governing indentures that (i) the SPV had no operations or business other than issuing notes and other indebtedness and (ii) explained the SPV's dependence on the Brazilian parent to repay its obligations); *In re Modern Land (China) Co., Ltd.*, 641 B.R. 768, 788 (Bankr. S.D.N.Y. 2022) (discussing relevance of disclosures in offering memorandum to creditor expectations); *In re OAS S.A.*, 533 B.R. at 102 (discussing, *inter alia*, disclosures in offering memorandum about consolidated financial statements, business operations of group as a whole, and centralized investor relations through parent company in finding that SPV's COMI was in Brazil where parent company was located).

16. Raízen Fuels Finance's payment obligations in the six months prior to the Petition Date fall within two categories: (i) debt service for the Notes, SACE-Covered Facilities and RCF, and other payments related to those obligations, and (ii) corporate services, including with Vistra (Luxembourg) S.à.r.l. ("Vistra"), Raízen Fuels Finance's registered agent who provides corporate services in Luxembourg. *See* Luz Decl. ¶ 8. Raízen Fuels Finance also engages with and makes payments to numerous Brazilian counterparties, including Ernst & Young Auditores

Independentes S/S Ltda., Fitch Ratings Brasil Ltda., and the São Paulo offices of several international firms providing auditing, legal, and other corporate services. *See id.* Under these contracts and a number of other professional service contracts, Raízen Fuels Finance has paid nearly US $1 million since July 2025 to the Brazilian bank accounts of such professionals. With respect to debt servicing and related transfers, since July 2025, nearly 70% (approximately US $734 million) of Raízen Fuels Finance's payments have gone to counterparties in Brazil, with 99% (US $733 million) of that being proceeds of the Notes on-lent to Raízen S.A. in Brazil. *See id.* Of payments made to counterparties located outside of Brazil, 99% (approximately US $333.6 million) were payments related to Raízen Fuels Finance's debt obligations. *Id.*

17.    As an SPV, Raízen Fuels Finance maintains only the minimum connections to Luxembourg necessary to satisfy statutory and tax requirements under local Luxembourg law. It does not own any real estate in Luxembourg (or elsewhere), has no employees in Luxembourg (or elsewhere), maintains no bank accounts in Luxembourg, and is reliant on the central office functions and strategic decision-making from the Raízen Group's São Paulo headquarters. *See* Luz Decl. ¶ 9. Its intercompany claims against Brazilian Debtors Raízen S.A. and Raízen Energia S.A. on account of its on-lending of the Notes proceeds are its sole material assets. *Id.* These claims against the Brazilian Debtors are, as a matter of black-letter law, located in Brazil. *See In re Washington, Perito & Dubuc*, 154 B.R. 853, 860 (Bankr. S.D.N.Y. 1993) (accounts receivables are located where the debtor of such assets is located); *see also In re Bd of Dirs. of Hopewell Intern. Ins. Ltd.*, 238 B.R. 25, 48 (Bankr. S.D.N.Y. 1999) ("The location of intangible personal property interests such as accounts receivable is the situs of the account debtor other party whose obligation it is to perform under the contract.").

9

18.      Raízen Fuels Finance has two classes of statutory directors—three are located in Luxembourg (Class A) and are contracted through corporate services provider, Vistra, and two are located in Brazil (Class B) and are Company employees.  *See* Luz Decl. ¶ 9.  No action of the board can be taken without the consent of at least one Brazil-based Class B director, and the Brazilian directors generally carry out their board functions from Brazil.  *Id.*  In any event, prior to the commencement of the EJ Proceedings, there were no physical board meetings for Raízen Fuels Finance in Luxembourg or otherwise, and all board decisions proceeded by written consent. *Id.*

19.      Given that Raízen Fuels Finance has no operations, employees, or physical assets located in Luxembourg, and, as an SPV, its sole purpose and function is to provide financing for the Brazilian operations of its parent and the Raízen Group, the COMI of Raízen Fuels Finance is the same as its parent, Raízen Energia S.A.—Brazil.  This conclusion is supported by numerous cases on similar facts in this district.  *See In re InterCement*, 668 B.R. at 823 (granting foreign main recognition of a Brazilian insolvency proceeding for an SPV domiciled outside of Brazil); *In re Oi S.A.*, No. 23-10193 (JPM) (Bankr. S.D.N.Y. Mar. 29, 2023) [ECF No. 30] (same); *In re Americanas S.A.*, No. 23-10092 (MEW) (Bankr. S.D.N.Y. Mar. 3, 2023) [ECF No. 32] (same); *In re Odebrecht, S.A.*, No. 19-12731 (SMB) (Bankr. S.D.N.Y. Oct. 4, 2019) [ECF No. 27] (same).

**B.      The COMI of Raízen North America is Brazil**

20.      Raízen North America, incorporated under the laws of Delaware, is a company maintained in the U.S. to sell and procure ethanol on behalf and for the benefit of the Raízen Group's operations in Brazil and globally.  *See* Luz Decl. ¶ 10.  Although not itself an SPV like Raízen Fuels Finance, Raízen North America performs discrete functions as an outpost for the broader group's main commercial hub in Brazil and operates on a "cost-plus" model where every

cost is passed through to its Raízen affiliates after a margin is applied.  In this way, the entity effectively acts as for and at the direction of other entities within the Raízen Group.  *Id.*

21.     While there are certain limited transactions that are traded under Raízen North America's name as required by law (e.g., carbon credits in the U.S.), its business functions are dictated by customer contracts with other Raízen entities, most notably Raízen Energia S.A. in Brazil, and its trading book is handled in the aggregate and formalized under internal procedures set by the Raízen Group's finance and tax teams in São Paulo.  *See* Luz Decl. ¶ 10.  Courts have found that the location where certain policy decisions are made and main operations of the corporation are conducted is indicative of where the corporation's business was centered.  *See Kelly v. United States Steel Corp.*, 284 F.2d 850, 854 (3d Cir. 1960); *see also Phoenix Four, Inc. v. Strategic Res. Corp.*, 446 F.Supp.2d. 205, 215 (S.D.N.Y. 2006); *cf In re Fairfield Sentry*, 714 F.3d at 138 n.10 (courts may consider a debtor's principal place of business in determining the debtor's COMI).

22.     Furthermore, while individual trading decisions may be made by traders in the Raízen North America office, those traders receive strategic direction from and ultimately carry out directions from the Global Trading Director, based in São Paulo, who oversees all decisions on ethanol and oil in order to optimize the ethanol supply process.  *See* Luz Decl. ¶ 11; *see In re Serviços de Petróleo Constellation S.A. ("Constellation I"),* 600 B.R. 237, 288 (Bankr. S.D.N.Y. 2019) (location of staff in charge of operations and management relevant factor for COMI analysis); *see also In re OAS S.A.*, 533 B.R. at 101-12 (location of group operations and of parent entity led to finding of COMI in the jurisdiction of the group, not that of the individual debtor's registered office).  As one piece of the Raízen Group's overall trading and supply network, Raízen North America has no standalone operations or activity, as it does not carry out any purchase or

sale activities for its own benefit but does so for the benefit of the Raízen Group as directed from Brazil. Instead, as an extension of the "nerve center" operations in Brazil, it operates analogous to a hub-and-spoke model, facilitating sales and purchases between the U.S. and other markets in service of its Brazilian parent and co-debtor, Raízen Energia S.A. *See* Luz Decl. ¶ 11.

23.    All of the traders employed by Raízen North America perform functions that are directly tied to the Raízen Group's Brazilian operations. One of the traders provides trading services related to oil procurement for and on behalf of Raízen North America's direct Brazilian parent entity, Raízen Trading, for the ultimate benefit of the Raízen Group as directed from Brazil. *See* Luz Decl. ¶ 12. The remaining traders are focused on procuring and selling ethanol that originates in the U.S. market across the Raízen Group's network. While Brazil is the world's second largest ethanol producer, the U.S. is the leading ethanol producer. Given that, and given the global reach of the Raízen Group's customer network, having traders who can procure ethanol from the U.S. for the Raízen Group's ethanol supply chain is critical for the group to capitalize on the relative proximity of the U.S. to key markets outside of the Americas, like Asia and Europe, in a cost-efficient manner, and helps facilitate the movement of these commodities between the U.S. and Brazil and onwards to the rest of the world. *Id.*

24.    As one of the Company's conduits to the global markets, at any given time, Raízen North America's buy and sell activity may appear to be focused in any one market around the world—Asia, Europe or the Americas—but regardless of the focus of that activity, the strategic direction guiding that activity is always provided by the Company's headquarters in São Paulo for the purpose of optimizing the Raízen Group's network and maximizing profitability for the Company. *See* Luz Decl. ¶ 13. At times, this means that Raízen North America will buy oil or ethanol from the U.S. market and ship to customers in Japan, for example, but its decision (at the

direction of the headquarters in São Paulo) to buy oil or ethanol from the U.S. market to fulfill a customer's request is solely necessitated by competing demands for the same commodity in Brazil. *Id.* In these instances, the decisions about (i) which markets to buy oil and ethanol products from, (ii) which customers and in which markets to sell those products to, (iii) what prices to charge, and (iv) which logistical and operational contracts to utilize to deliver those products, are made by Raízen North America personnel under the directives and parameters centrally coordinated from the Company's São Paulo headquarters. *Id.*; *see also In re Fairfield Sentry Ltd.*, 714 F.3d at 138 n.10 (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 91 (2010)) ("[A] court may certainly consider a debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI."). In aggregate, over the six months prior to the Petition Date, roughly a quarter of Raízen North America's trading activity was directed towards or sourced from the Brazilian market, while the remaining trading activities are in aid of the Company's operations in other markets (though still at the behest of the business objectives dictated from the headquarters in Brazil). *See* Luz Decl. ¶ 13.

25.     Raízen North America employs a relatively small staff of eight employees in the U.S., a majority of which are Portuguese-speaking Brazilian nationals. *See* Luz Decl. ¶ 14. The entity has two statutory directors: one located in the U.S. who is a dual citizen of Brazil and the U.S., and the other is a Company employee and Brazilian citizen located in Brazil. As much of Raízen North America's business is conducted with the group's headquarters in São Paulo and a majority of Raízen North America's employees are Brazilian, business in the office is routinely conducted in Portuguese. Raízen North America is centrally supported from the Raízen Group's São Paulo headquarters, which provides its financial, tax, accounting, IT, insurance, internal auditing and other central management, operational, and strategic services and functions. *See*

13

Decl. and Verified Pet. ¶ 59; *see also* Luz Decl. ¶ 14; *In re Iovate Health Scis. Int'l Inc.*, 673 B.R. 516, 533 (Bankr. S.D.N.Y. 2025) (finding that a U.S. debtor's COMI was likely in Canada given that the debtor's operations were "all highly integrated and shared management, headquarters, and accounting/finance/HR functions," in spite of having eleven employees in the U.S. and its principal assets in the U.S.). Raízen North America's financial statements are only available to creditors as part of the Raízen Group's consolidated financial statements prepared in and published in Brazil. *See* Luz Decl. ¶ 14.

26. Given the extent of centralized support, management, strategic direction and operational nexus with the Raízen Group's Brazilian operations, the COMI of Raízen North America is Brazil.

### C.    The COMI of Raízen Trading is Brazil

27. Similar to Raízen North America, Raízen Trading operates as a trading hub for the Raízen Group's trading activities globally. Raízen Trading follows a global sourcing strategy, combining intra-group procurements from Brazil and the U.S. with procurements from third parties in Europe, Asia, and the Americas. *See* Luz Decl. ¶ 15. As is the case with Raízen North America, Raízen Trading's procurement and trading strategy is designed to optimize the Raízen Group's network and maximize the group's profitability, and at all times aligns with the global business objectives established by the headquarters in Brazil. *Id.*; *see In re SPhinX, LTD.*, 351 B.R. at 117 (a subsidiary's nerve center could sit with its parent). Its position in European markets facilitates this by allowing it to procure from different geographic regions based on supply and customer demand in order to efficiently buy and sell ethanol and sugar in Europe and elsewhere.

28. As discussed in the Declaration and Verified Petition, Raízen Trading buys and exports sugar, oil, and ethanol from its Brazilian parent, Raízen S.A., among other parties. *See* Decl. and Verified Pet. ¶ 65; *see also* Luz Decl. ¶ 16. Raízen Trading then on-sells those products

to counterparties around the world, but like Raízen North America, the parameters of those sales are directed by Raízen Trading's executive committee, which was formed by its shareholder, Raízen Energia S.A. Over the six months prior to the Petition Date, 73% of Raízen Trading's oil purchases are sourced from Brazil while over 77% of its oil sales are to Brazil.[4] Nearly 40% of its ethanol purchases and sales are sourced from and sent to Brazil. *See* Luz Decl. ¶ 16.

29. To enable it to export sugar from Brazil, Raízen Trading contracts with port operators at the Copersucar Sugar Terminal in the port of Santos, Brazil, and the Solid Bulk Terminal at the port of Imbituba/Santa Catarina, Brazil, for the receipt, weighing, unloading, storage, handling, and loading onto ships of its sugar. *See* Luz Decl. ¶ 17. Pursuant to these contracts, Raízen Trading leases real property and equipment at these ports in Brazil. Raízen Trading also contracts with Brazilian port elevator and logistics providers as well as for railway transportation services in Brazil. All of these contracts include consent to jurisdiction provisions providing for the exclusive jurisdiction of Brazilian courts, and half of the agreements include explicit governing law provisions selecting Brazilian law. These contracts support Raízen Trading's operations in Brazil, which require a complex network of transportation, logistics, and port services, and directly support a determination that Brazil is readily ascertainable to creditors and third parties as the nerve center of the entity's operations. *Id*; *see In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 912 (Bankr. S.D. Fla. 2010) ("The location of a debtor's COMI should be readily ascertainable by third parties.").

---

[4] The Raízen Group's import supply and trading planning for Latin America follows an integrated cargo planning approach, which is managed centrally by Raízen's planning team in Brazil. As such, these figures include amounts from Raízen Argentina and Raízen Paraguay, and include supplies and sales from both third parties and Raízen entities and affiliates.

30.     In contrast to these material contracts with Brazilian counterparties, Raízen Trading has no comparable contracts with Swiss counterparties.  Furthermore, Raízen Trading maintains a total of 14 bank accounts around the world—only two of those are in Switzerland and those accounts together contain less than 0.1% of its cash.  *See*  Decl. and Verified Pet. ¶ 65; *see also* Luz Decl. ¶ 18.  Moreover, these Swiss accounts are maintained solely to satisfy Raízen Trading's local salary and employee-related obligations.  *See* Luz Decl. ¶ 18.

31.     Like Raízen Fuels Finance and Raízen North America, Raízen Trading maintains a statutory director structure to ensure its compliance with local regulatory and tax requirements in Switzerland.  *See* Luz Decl. ¶ 19.  Raízen Trading has an executive committee formed by its shareholder Raízen Energia S.A., comprised of two directors located in Geneva and two directors located in Brazil.  Three of the four directors are Brazilian nationals.  The four officers of the entity are also Brazilian nationals.  Looking at Raízen Trading's employees reveals no more connection to Switzerland than it does Brazil—four of its current employees are Brazilian, while four are Swiss.  As courts in this district have found, even where foreign companies maintain registered offices in, have directors living in, and carry activities out from their jurisdiction, courts have still considered the entity's corporate reality as a part in a larger, more complex organization.  *See, e.g., Constellation I*, 600 B.R. at 237 (finding that the COMI for several entities incorporated outside of Brazil was Brazil considering different factors and ties between such entities); *In re OAS S.A.*, 533 B.R. at 95 (recognizing the Brazilian insolvency proceeding as the foreign main proceeding for a group of chapter 15 debtors, including debtors that were incorporated outside of Brazil, noting that the COMI for each of them was in Brazil based on the activities of the entities).  As such, given Raízen Trading's function as another trading outpost for the Brazilian operations in the

16

European markets, whereby the vast majority of purchase and sale operations are directed to or sourced from Brazil, the facts support a determination that Raízen Trading's COMI is in Brazil.

**D.      The Raízen Group's 'Nerve Center' is Brazil**

32.     The Raízen Group's principal place of business is in Brazil.  Raízen S.A. and Raízen Energia S.A., the Brazilian ultimate and intermediate parent, respectively, operate as the nerve center of the entire Raízen Group, while the Financing & Trading Debtors function solely for the purpose of supporting the business objectives formulated in Brazil.  Indeed, each of the Financing & Trading Debtors are wholly-owned subsidiaries of Brazilian entities and perform business activities in or directed at Brazil or on behalf of the Brazilian entities.

33.     Furthermore, in advance of and since the time of filing these Chapter 15 Cases, all of the Debtors, including the Financing & Trading Debtors, have been involved in restructuring negotiations with creditors in Brazil through the Brazilian Court-supervised EJ process.  *See* Luz Decl. ¶ 5.  These restructuring activities alone provide a basis for finding that each of the Financing & Trading Debtors' COMI is in Brazil.  *See In re InterCement*, 668 B.R. at 823 (finding that restructuring activities occurring in Brazil as part of a mediation and extrajudicial proceeding "establish[ed] conclusively" that the COMI of a Dutch entity was Brazil); *In re Giftcraft Ltd.*, No. 25-11030 (MG), 2025 WL 1583480, *10 (Bankr. S.D.N.Y. June 4, 2025) (considering pre-filing restructuring efforts in determining a debtor's COMI was in Canada); *In re Mega Newco Ltd.*, No. 24-12031 (MEW), 2025 WL 601463, *4 (Bankr. S.D.N.Y. Feb. 24, 2025) (granting foreign main recognition, considering that no creditors had objected to recognition of a Scheme demonstrating that creditors had acquiesced in or supported the proposed COMI); *see also In re Modern Land (China) Co., Ltd.*, 641 B.R. 768 at 783, 789 (Bankr. S.D.N.Y. 2022) ("Cayman court's supervision of the [scheme proceeding], in light of the other factors present here, is enough for the Court to conclude that the Debtor's COMI for the proceeding involving the single class of [existing

noteholders] was in the Cayman Islands."); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. at 417 (finding COMI shifted to Cayman Islands from China as a result of Cayman scheme restructuring proceeding); *In re Culligan Ltd.*, 2021 Bankr. LEXIS 1783 at 36, 38 (Bankr. S.D.N.Y. 2021) (finding Bermuda COMI because Bermuda restructuring proceeding made Bermuda law "applicable with respect to any disputes arising with respect to [that proceeding]").

34.     Here, the ongoing Brazilian Proceeding and application of Brazilian law to companies under that proceeding further support finding COMI of those companies in Brazil. Accordingly, the COMI for the Debtors, including the Financing & Trading Debtors, is in Brazil, and therefore, the Brazilian Proceeding is, and should be recognized, as the foreign main proceeding for each of the Debtors, pursuant to section 1517(b)(1) of the Bankruptcy Code.

## II.  ALTERNATIVELY, RAÍZEN FUELS FINANCE, RAÍZEN NORTH AMERICA AND RAÍZEN TRADING EACH HAVE AN ESTABLISHMENT IN BRAZIL FOR NON-MAIN RECOGNITION AND THE COURT SHOULD GRANT DISCRETIONARY RELIEF

### A.   The Financing & Trading Debtors at Minimum Have an Establishment in Brazil.

35.     As demonstrated in the Declaration and Verified Petition and as supplemented by this Brief and the Luz Declaration, the Brazilian Proceeding should be recognized as the "foreign main proceeding" for each of the Debtors.  Should this Court conclude, however, that the Brazilian Proceeding does not qualify as the foreign main proceeding for any of the Financing & Trading Debtors, the Foreign Representative submits that, in the alternative, the Brazilian Proceeding should be recognized as a "foreign nonmain proceeding" within the meaning of section 1502(5) for any of those Debtors pursuant to section 1517(b)(2) of the Bankruptcy Code, and that discretionary relief, namely, the application of a protective stay to the full extent set forth in section

362, should be granted with respect to such Debtor and their U.S.-located property.  11 U.S.C. §§ 1517(b)(2), 1521(a).

36.    A "foreign nonmain proceeding" is defined as a "foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment."  11 U.S.C. § 1502(5).  Section 1502 of the Bankruptcy Code defines an "establishment" as "any place of operations where the debtor carries out a non-transitory economic activity." 11 U.S.C. § 1502(2). Whether a debtor has an establishment in a particular location is "essentially a factual question," *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 338 (S.D.N.Y. 2008) ("*Bear Stearns II*"), and the petitioner bears the burden of proof.  *See In re British Am. Ins. Co.*, 425 B.R. 884, 915 (Bankr. S.D. Fla. 2010).  The Bankruptcy Code does not define "non-transitory economic activity," and, as this Court has noted, "[t]here is relatively little U.S. authority construing the term 'establishment' as it is used in chapter 15."  *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 84 (Bankr. S.D.N.Y. 2011), *aff'd* 474 B.R. 88 (S.D.N.Y. 2012).  Indeed, "[n]either Chapter 15 nor its legislative history explain what it means for a debtor to have 'any place of operations' or to have 'been carrying on a non-transitory economic activity' in a location." *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1027 (5th Cir. 2010) (citing H. Rep. No. 109-31, pt. 1, at 107).

37.    Accordingly, U.S. courts have interpreted the meaning of "establishment" in the context of the purpose of chapter 15 and the Model Law and by looking to the meaning ascribed to such term by foreign courts.  *See, e.g.*, *In re Millennium Glob.*, 458 B.R. at 84 n.49; *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd. ("Bear Stearns I")*, 374 B.R. 122, 131 n.12 (Bankr. S.D.N.Y. 2007).  The limited number of U.S. courts to consider the question have determined a debtor has an "establishment" in a place where it has operations, conducts

19

business, or otherwise carries out a non-transitory economic activity in that jurisdiction. *See, e.g.*, *In re Gerova Fin. Grp., Ltd.*, 482 B.R. 86, 92 n.8 (Bankr. S.D.N.Y. 2012); *Bear Stearns I*, 374 B.R. at 131; *In re Creative Fin., Ltd.*, 543 B.R. 498, 520 (Bankr. S.D.N.Y. 2016); *In re British Am.*, 425 B.R. at 916. Several factors "contribute to identifying an establishment: the economic impact of the debtor's operations on the market, the maintenance of a 'minimum level of organization' for a period of time, and the objective appearance to creditors whether the debtor has a local presence." *In re Millennium Glob.*, 458 B.R. at 85; *see In re Modern Land (China) Co.*, 641 B.R. at 784. A showing of economic impact of the debtor's activities on the local market involves a "showing of a local effect on the marketplace," *In re Creative Fin.*, 543 B.R. at 520; *British Am.*, 425 B.R. at 915 (same), evidenced by, among other things, "fees paid to retain local counsel and commitment of capital to local banks." *In re Millennium Glob.*, 458 B.R. at 85.

38.   Courts in this district have emphasized that the threshold for proving an "establishment" is not high. *See In re Mood Media Corp.*, 569 B.R. 556, 563 (Bankr. S.D.N.Y. 2017) (stating that "not much is needed" to demonstrate that an establishment exists); *see also Constellation I*, 600 B.R. at 277 (recognizing an establishment were the debtor maintained at least "a base level of connection").

39.   As discussed herein, each of the Financing & Trading Debtors has such a "base level of connection" to Brazil, as detailed in the Declaration and Verified Petition and the foregoing evidence in support of finding that the COMI of each of the Financing & Trading Debtors is in Brazil. Each of the Financing & Trading Debtors has an impact on the Brazilian marketplace as it transacts business with, holds property in, is managed from, and/or operates at the direction of decisionmakers in Brazil. Here, the Raízen Group (of which the Financing & Trading Debtors are a part) is an integrated corporate group ultimately managed from Brazil and doing business

20

principally at the overall direction of the parent entities in Brazil. *See* Decl. and Verified Pet. ¶¶ 58-59; *see* also Luz Decl. ¶¶ 6, 10, 15.

40.    Raízen Fuels Finance. Raízen Fuels Finance is an SPV that exists to finance the operations of its Brazilian parent and affiliates, its material debts are all guaranteed by its two Brazilian parent companies, and its ability to repay its obligations is entirely reliant on the Company's operations in Brazil through repayment of intercompany loans to Brazilian Debtors. *See* Luz Decl. ¶ 9. It has no operations of its own and is the issuer of Notes and the Borrower under the SACE-Covered Facilities and RCF, all of which are guaranteed by Raízen S.A. and Raízen Energia S.A. (both of which are Brazilian Debtors), and the proceeds of which were on-lent to Brazilian entities within the Raízen Group. Raízen Fuels Finance is reliant on the central office functions and strategic decision-making from the Raízen Group's São Paulo headquarters. Its intercompany claims against Brazilian Debtors Raízen S.A. and Raízen Energia S.A. on account of the Notes proceeds are its sole material assets. *Id.*; *In re Serviços de Petróleo Constellation S.A. ("Constellation II")*, 613 B.R. 497, 512 (Bankr. S.D.N.Y. 2020) (finding that an investment vehicle had an establishment in Brazil where its only indirect assets, equity interest in joint ventures, were located). Those intercompany claims are indisputably located in Brazil. *See In re Washington, Perito & Dubuc*, 154 B.R. at 860 (accounts receivables are located where the debtor of such assets is located). No action of the board can be taken without the consent of at least one Brazil-based Class B director, and the Brazilian directors generally carry out their board functions from Brazil. *See* Luz Decl. ¶ 9. Moreover, prior to authorizing the commencement of the Brazilian Proceeding, no board meetings of Raízen Fuels Finance were held in Luxembourg or otherwise and all decisions were taken by written consent. *Id.* Further, Raízen Fuels Finance engages with and makes payments to numerous Brazilian counterparties. With respect to debt servicing and

21

related obligations, since July 2025, nearly 70% (approximately US $734 million) of Raízen Fuels Finance's payments have gone to counterparties in Brazil, with 99% (US $733 million) of that being proceeds of the Notes on-lent to Raízen S.A. in Brazil. *See* Luz Decl. ¶ 8. Of payments made to counterparties located outside of Brazil, 99% (approximately US $333.6 million) were payments related to Raízen Fuels Finance's debt obligations. Additionally, Raízen Fuels Finance engages and makes payments to numerous Brazilian counterparties for corporate and legal services including Ernst & Young Auditores Independentes S/S Ltda., Fitch Ratings Brasil Ltda., and the São Paulo offices of several international firm. *Id.*

41.    <u>Raízen North America</u>. Raízen North America forms part of a global trading network which has at its center the Company's São Paulo headquarters. *See* Luz Decl. ¶ 10. The company's business functions are dictated by customer contracts with other Raízen entities, most notably Raízen Energia S.A. in Brazil, and its book is handled in the aggregate and formalized under internal procedures set by the Raízen Group's finance and tax teams in São Paulo. *Id.* Raízen North America has no standalone operations or activity, as it does not carry out any purchase or sale activities for its own benefit but does so for the benefit of the Raizen group as directed from Brazil. *Id.* at ¶ 11; *see In re Millennium Glob.*, 458 B.R. at 85 (finding that a debtor had an establishment in Bermuda when they had some property located pre-filing, kept "some or all of their books of account in Bermuda, and were subject to the control of directors, a majority of whom were located in Bermuda"). Raízen North America facilitates sales and purchases between the U.S. market and other markets in service of its ultimate Brazilian parent company, Raízen Energia S.A. *See* Luz Decl. ¶ 10. Raízen North America's operations, while performed by Raízen North America personnel, are carried out pursuant to the directives and parameter centrally coordinated by the Raízen Group's São Paulo headquarters. *Id.* at 13. Moreover, Raízen

North America financial statements are only available to creditors as part of the Raízen Group's consolidated financial statements prepared in and published in Brazil. *Id.* at ¶ 14. In the aggregate, over the six month period prior to the Petition Date, roughly a quarter of Raízen North America's purchases and sales directly came from to or went to the Brazilian market, with the remaining trading activity conducted in aid of operations in that market. *Id.* at ¶ 13.

42.     <u>Raízen Trading</u>. Like Raízen North America, Raízen Trading forms part of a global trading network and uses its position in European markets to procure commodities from different geographic regions based on supply and customer demand in order to efficiently buy and sell ethanol and sugar in Europe and elsewhere. *See* Luz Decl. ¶ 15. Raízen Trading buys and exports sugar, oil, and ethanol from its Brazilian parent, Raízen S.A., among other parties, then on-sells those products to other counterparties. Over the six months prior to the Petition Date, 73% of Raízen Trading's oil purchases were sourced from Brazil while over 77% of its oil sales were to Brazil. Over that same time period, nearly 40% of its ethanol purchases and sales were sourced from and sent to Brazil. *Id.* at 16. In order to carry out its objectives, Raízen Trading leases real property and equipment at ports in Brazil, and contracts with Brazilian port elevator and logistics providers as well as for railway transportation services in Brazil. *Id.* at 16. *Contra In re Creative Fin. Ltd.*, 543 B.R. 498, 521 (Bankr. S.D.N.Y. 2016) (holding no establishment where local activity was "mere incorporation and record-keeping" and minimal maintenance of property). Lastly, the import of Raízen Trading's connection to Brazil is evident, whereby three of the four statutory directors are Brazilian nationals, the four officers of the entity are also Brazilian nationals, and the business currently employs at least an equal amount of Brazilian and Swiss employees. *See* Luz Decl. ¶ 19.

43.     While certain offices may make operational and trading decisions, these all filter up to the Raízen Group's headquarters, where centralized strategic direction is provided to maximize the Company's profitability and operational efficiency. *See* Luz Decl. ¶ 6-13, 16-19. Thus, for each of these Debtors, their connections to Brazil exceed the "base level" and are integral to the functions and successful operations of each Financing & Trading Debtor, which each have an establishment in Brazil.

### B.     The Court Should Grant Discretionary Relief Under Section 1521.

44.     Regardless of whether the Court finds that the Brazilian Proceeding is a main proceeding or nonmain proceeding with respect to the Financing & Trading Debtors, the Petitioner requests that the Court grant discretionary relief with respect to each Debtor and their U.S.-located property pursuant to section 1521 of the Bankruptcy Code. To exercise its discretionary powers under section 1521, the Court must ensure that "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a) (adopting Article 22 of the Model Law). Relief under section 1521 will not be permitted if "it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." H. Rep. No. 109-31, Pt. 1, at 116. A determination of sufficient protection requires a balancing of the respective parties' interests. *CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); *see In re Toft*, 453 B.R. 186, 196 n.11 (Bankr. S.D.N.Y. 2011) ("[A] court should tailor relief balancing the interest of the foreign representative and those affected by the relief."). Courts in this district routinely exercise its discretionary powers under section 1521 to protect chapter 15 debtors where the court has otherwise determined the foreign proceeding is a foreign nonmain proceeding. *See, e.g., Constellation I*, 600 B.R. at 280, 294 (the bankruptcy court found that the COMI of the parent company, Constellation, was in Luxembourg, but recognized the Brazilian proceeding as a foreign nonmain proceeding for the company. The court stated that the

24

parent company "although currently recognized as operating in a foreign nonmain proceeding, may receive nearly identical relief as the relief afforded to the Chapter 15 Debtors whose COMI was determined to be in Brazil" and extended the stay to the parent company); *In re Winsway Enterprises Holdings Ltd.*, No. 16-10833 (MG) (Bankr. S.D.N.Y. 2016) (the bankruptcy court used its discretionary authority to grant a permanent injunction over suits, actions or proceedings, after the court granted nonmain recognition for a scheme under Hong Kong law).

45.    Here, the balance of interests weighs in favor of granting the relief requested. Recognition and the application of the stay will allow for the efficient and orderly administration of the Debtors' assets and affairs in a court-supervised restructuring process (*i.e.*, the Brazilian Proceeding), thus protecting the interests of all creditors and maximizing the value of assets by preventing certain opportunistic creditors from circumventing the Brazilian Proceeding and commencing actions in the United States at the expense of the broader process.  This is particularly the case where no creditors or parties in interest have opposed the relief requested by the Verified Petition and Declaration.

46.    As set forth in the *Declaration of Giuliano Colombo Pursuant to 28 U.S.C. § 1746 in Support of the Declaration of Lorival Nogueira Luz, Junior, and Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1515, 1517, 1520, and 1521* [ECF No. 4] (the "Brazilian Counsel Declaration"), the Brazilian Proceeding provides creditors and stakeholders with many of the same procedural safeguards present in chapter 11 of the Bankruptcy Code thereby ensuring a fair and equitable process.  *See* Brazil. Counsel Decl. ¶¶ 19, 25.  The stay will not bar or otherwise disenfranchise parties from participating in the Brazilian Proceeding, where each creditor maintains its right to be heard.  *Id.*  Nor will the requested stay preclude a creditor that feels unduly

burdened by the Court's grant of the requested relief to seek to lift the stay for "cause." *See, generally*, 11 U.S.C. § 362(d). Instead, the Petitioner merely seeks to prevent creditors from attempting to end-run the Brazilian Proceeding at the expense of all creditors. Furthermore, the Debtors served the Petitions and related filings on their U.S. creditors and none have timely objected to the relief sought. *See* Certificate of Service [ECF No. 27]. Accordingly, any prejudice to creditors caused by the discretionary relief requested is extremely limited.

47.    In contrast, failure to grant the discretionary relief requested will cause tremendous harm to the Debtors and their stakeholders. As detailed more fully in the Provisional Relief Motion, the Debtors are at risk of adverse creditor action that could threaten their ability to continue as a going concern. *See* Provisional Relief Mot. ¶¶ 22–31. While the provisional relief granted by this Court temporarily forestalled these actions, the relief sought pursuant to the Revised Proposed Order[5] attached hereto as **Exhibit B** will ensure that such actions are enjoined for the duration of the Brazilian Proceeding. Accordingly, the balance between the minimal harm to those seeking to bring adverse actions against the Debtors, and the significant harm to the Debtors and the orderly administration of the Debtors' assets that would be caused by such actions, weighs in favor of granting the discretionary relief requested.

## CONCLUSION

The Petitioner respectfully requests that this Court grant the relief sought in the Declaration and Verified Petition, recognizing the Brazilian Proceeding as the foreign main proceeding for each of the Debtors, including the Financing & Trading Debtors, and enter the Revised Proposed Order attached hereto as **Exhibit B**. Alternatively, should the Court be inclined to find the COMI

---

[5]    The Petitioner received informal comments to the Proposed Order and have attached hereto as **Exhibit B** a revised proposed order (the "Revised Proposed Order"), resolving the creditor group's comments, and, as **Exhibit B-1**, a blackline against the Proposed Order.

26

of any of the Financing & Trading Debtors is outside of Brazil, there is ample evidence that the Financing & Trading Debtors at minimum have establishments in Brazil, such that the Court may recognize the Brazilian Proceeding as a foreign non-main proceeding as to such Financing & Trading Debtors.

*[Remainder of Page Intentionally Left Blank]*

Dated: April 3, 2026
New York, New York

Respectfully submitted

By: */s/ Luke A. Barefoot*
Luke A. Barefoot

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, New York 10006
(212) 225-2000
Luke A. Barefoot
David Z. Schwartz
Richard C. Minott
lbarefoot@cgsh.com
dschwartz@cgsh.com
rminott@cgsh.com

*Attorneys for Raízen S.A.,*
*as Petitioner and Foreign Representative*

**Exhibit A**
**Declaration of Lorival Nogueira Luz, Junior**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 26-10528 (LGB) |
| Raízen S.A.,[1] | ) |
| | ) Chapter 15 |
| Debtor in a Foreign Proceeding. | ) |
| | ) (Jointly Administered) |
| | ) |

**DECLARATION OF LORIVAL NOGUEIRA LUZ,**
**JUNIOR, IN SUPPORT OF THE PETITIONER'S BRIEF IN**
**SUPPORT OF THE VERIFIED PETITION FOR RECOGNITION OF**
**THE BRAZILIAN PROCEEDING AND MOTION FOR ORDER GRANTING**
**RELATED RELIEF PURSUANT TO 11 U.S.C. §§ 105(a), 1515, 1517, 1520, AND 1521**

I, Lorival Nogueira Luz, Junior, being duly authorized by each of the Debtors, hereby

declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746 and state as follows:

**BACKGROUND**

1.      I am the Chief Financial Officer and Officer of Investor Relations of the Raízen

Group.  I am generally familiar with the operations and affairs of the Debtors in the above-

captioned Chapter 15 Cases.

2.      In my capacity as Chief Financial Officer of the Raízen Group, I am authorized to

submit this Declaration in support of the *Petitioner's Brief in Support of the Verified Petition for*

*Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant*

---

[1]      The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Raízen S.A. (01-23–Brazil); Raízen Energia S.A. (01-78–Brazil); Raízen Centro-Sul Paulista S.A. (18-28–Brazil); Raízen Fuels Finance S.A. (0903–Luxembourg); Blueway Trading Importação e Exportação S.A. (01-57–Brazil); Raízen Caarapó Açúcar e Álcool Ltda. (01-66–Brazil); Raízen North America, Inc. (7198–U.S.); Raízen Centro-Sul S.A. (01-36–Brazil); and Raízen Trading S.A. (3.167–Switzerland).

1

to 11 U.S.C. §§ 105(a), 1515, 1517, 1520, and 1521 (the "Brief") and the Declaration and Verified Petition. [2]

3.    Except as otherwise indicated herein, all facts set forth in this Declaration are based upon the following: (a) my personal knowledge of the Debtors' operations and finances, (b) my review of relevant information, data, and documents (including oral information) furnished to me by the Debtors and its legal advisors; (c) information supplied to me by the Debtors' officers, directors, employees, and professionals; or (d) my analyses of the information I have received on the Debtors' operations and financial condition. I have also been kept abreast of major discussions with stakeholders, including the Debtors' primary financial creditors. To the extent that the Debtors learn that any information provided herein is materially inaccurate, the Foreign Representative will act promptly to notify the Court and other parties; however, I believe all information herein to be true to the best of my knowledge, information and belief. I am authorized to submit the Declaration on behalf of the Debtors and Foreign Representative, and if called upon to testify, I could and would testify competently to the facts set forth herein.

**<u>SUPPLEMENTAL FACTUAL BASIS FOR RECOGNITION OF THE EJ PROCEEDINGS OF RAÍZEN FUELS FINANCE, RAÍZEN NORTH AMERICA AND RAÍZEN TRADING S.A.</u>**

4.    This Declaration incorporates by reference and hereby supplements the facts set forth in the *Declaration of Lorival Nogueira Luz, Junior, and the Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1515, 1517, 1520 and 1521* [ECF No. 3] (the "<u>Declaration and Verified Petition</u>").

**A.    Negotiations with Creditors**

5.    Prior to filing the Petitions on March 12, 2026 (the "<u>Petition Date</u>"), the Debtors

---

[2]    Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in the Brief.

2

negotiated with many of their unsecured financial creditors in Brazil, including creditors located in Brazil or creditors with local Brazilian offices. Since the Petition Date, the Company has continued to engage in negotiations with creditors and their advisors, including a meeting of advisors held on March 16, 2026, at the offices of the Company's counsel, Pinheiro Neto Advogados, in São Paulo.

**B.    Raízen Fuels Finance**

6.    Raízen Fuels Finance is a wholly-owned subsidiary of Raízen Energia S.A., the intermediate Brazilian holding company for the Company's renewable segment, and was formed as a special purpose vehicle ("SPV") under the laws of Luxembourg, solely to provide access to international financing markets in support of the Raízen Group's funding needs.

7.    Raízen Fuels Finance has no operations of its own and serves no function other than to finance the operations of the Raízen Group in Brazil. It is the issuer of the Notes and the borrower under the 2023 SACE-Covered Facility and 2024 SACE-Covered Facility (the "SACE-Covered Facilities") and RCF, all of which are guaranteed by Raízen S.A. and Raízen Energia S.A. (both of which are Brazilian Debtors), and the proceeds of which were on-lent to Brazilian entities within the Raízen Group. The decision to issue the Notes and other debt borrowed by Raízen Fuels Finance was authorized and approved by the board of Raízen Energia S.A., its direct parent, from the Company's headquarters in São Paulo. As the Offering Memoranda for the Notes made clear, Raízen Fuels Finance (i) does not maintain separate published financial statements and its financial statements are only available to creditors as part of the Raízen Group's consolidated financial statements prepared in and published in Brazil, (ii) is subject to the risks associated with the Company's operations in Brazil, (iii) has no means of repaying its obligations other than from revenue generated by the Raízen Group's operations and (iv) does not have its

3

own investor relations, and directs all investor inquiries to the "principal executive office" of the Raízen Group in Brazil.

8.    Raízen Fuels Finance's payment obligations fall within two categories: (i) debt service for the Notes, SACE-Covered Facilities and RCF, and other payments related to those obligations, and (ii) corporate services. With respect to debt servicing and related obligations, since July 2025, nearly 70% (approximately US $734 million) of Raízen Fuels Finance's payments have gone to counterparties in Brazil, with 99% (US $733 million) of that being proceeds of the Notes on-lent to Raízen S.A. Of payments made to counterparties located outside of Brazil, 99% (approximately US $333.6 million) were payments related to Raízen Fuels Finance's debt obligations. With respect to corporate services, Raízen Fuels Finance engages and makes payments to (1) Vistra (Luxembourg) S.à.r.l. ("Vistra"), its registered agent who provides corporate services in Luxembourg, and (2) Brazilian counterparties for corporate and legal services, including Ernst & Young Auditores Independentes S/S Ltda,, Fitch Ratings Brasil Ltda., and the São Paulo offices of several international firms. Under these contracts and a number of other professional service contracts, Raízen Fuels Finance has paid nearly US $1 million since July 2025 to the Brazilian bank accounts of such professionals. A far smaller amount—less than $250,000—has been paid to counterparties located in Luxembourg.

9.    As an SPV, Raízen Fuels Finance maintains only the connections to Luxembourg necessary to satisfy statutory and tax requirements under local Luxembourg law. It does not own any real estate in Luxembourg (or elsewhere), has no employees in Luxembourg (or elsewhere), maintains no bank accounts in Luxembourg, and is reliant on the central office functions and strategic decision-making from the Raízen Group's São Paulo headquarters. Its intercompany claims against its ultimate parent and Brazilian Debtor, Raízen S.A., on account of the Notes

4

proceeds are its sole material assets. For compliance purposes, Raízen Fuels Finance has two classes of statutory directors—three are located in Luxembourg (Class A) and are Vistra employees, and two are located in Brazil (Class B) and are Company employees. However, no action of the board can be taken without the consent of at least one Brazil-based Class B director, and the Brazilian directors generally carry out their board functions from Brazil. In any event, prior to the commencement of the EJ Proceedings, there were no physical board meetings for Raizen Fuels Finance in Luxembourg or otherwise and all board decisions proceeded by written consent.

### C.    Raízen North America

10.    Raízen North America is a company in the U.S. maintained to sell and procure ethanol on behalf and for the benefit of the Raízen Group's operations in Brazil, Europe and Asia. Essentially acting as an outpost for the broader group's main commercial hub in Brazil, Raízen North America operates on a "cost-plus" model where every cost is passed through to its Raízen affiliates after a margin is applied. In this way, Raizen North America effectively acts for and at the direction of other entities within the Raizen Group. While there are certain limited transactions that are traded under Raízen North America's name as required by law (e.g., carbon credits in the U.S.), its business functions are dictated by customer contracts with other Raízen entities, most notably Raízen Energia S.A. in Brazil, and its book is handled in the aggregate and formalized under internal procedures set by the Raízen Group's finance and tax teams in São Paulo.

11.    Furthermore, while individual trading decisions may be made by traders in the Raízen North America office, those traders receive strategic direction from and ultimately carry out directions from the Global Trading Director, based in São Paulo, who oversees all decisions on ethanol in order to optimize the ethanol supply process. As one piece of the Raízen Group's

5

overall trading and supply network, Raízen North America has no standalone operations or activity and does not carry out any purchase or sale activities for its own benefit. Raízen North America's relationship to the Brazilian operations of the Company are analogous to a hub-and-spoke model, whereby Raízen North America facilitates sales and purchases between the U.S. market and other markets in service of its ultimate Brazilian parent company, Raízen Energia S.A.

12.    Furthermore, all of the traders employed by Raízen North America perform functions that are directly tied to the Raízen Group's Brazilian operations. One of the traders provides trading services related to oil procurement for and on behalf of Raízen North America's direct parent entity, Raízen Trading S.A., for the ultimate benefit of the Raízen Group as directed from Brazil. The remaining traders are focused on procuring and selling ethanol that originates in the U.S. market across the Raízen Group's network. While Brazil is the second largest ethanol producer, the U.S. is the leading ethanol producer in the world. Given that, and given the global reach of the Raízen Group's customer network, having traders who can procure ethanol from the U.S. for the Raízen Group's ethanol supply chain is critical for the group to capitalize on the relative proximity of the U.S. to key markets outside of the Americas, like Asia and Europe, in a cost-efficient manner, and helps facilitate the movement of these commodities between the U.S. and Brazil and then onwards to the rest of the world.

13.    In any given time period Raízen North America's buy and sell activity may appear to be focused in any one market around the world—Asia, Europe or the Americas—but regardless of the focus of that activity, the strategic direction guiding that activity is always provided by the Company's headquarters in São Paulo for the purpose of optimizing the Raízen Group's network and maximizing profitability for the Company. At times, this means that Raízen North America will buy ethanol from the U.S. market and ship to customers in Japan, for example, but its decision

6

(at the direction of the headquarters in São Paulo) to buy ethanol from the U.S. market to fulfill a customer's request is solely necessitated by competing demands for the same commodity in Brazil. In these instances, the decisions about (i) which markets to buy ethanol products from, (ii) which customers and in which markets to sell those products to, (iii) what prices to charge, and (iv) which logistical and operational contracts to utilize to deliver those products, are made by Raízen North America personnel under the directives and parameters centrally coordinated from the Company's São Paulo headquarters. In the aggregate, over the six months prior to the Petition Date, roughly a quarter of Raízen North America's purchases and sales directly come from to or go to the Brazilian market, with the remaining trading activity conducted in aid of operations in that market.

14.     Raízen North America employs a relatively small staff of eight employees in the U.S. [3] A majority (five) of Raízen North America's current employees are Brazilian and speak Portuguese. Raízen North America has two statutory directors: one is located in the U.S. and is a dual citizen of Brazil and the U.S., the other is a Company employee and Brazilian citizen located in Brazil. Because much of Raízen North America's business is conducted with the group's headquarters in São Paulo and a majority of Raízen North America's employees are Brazilian, business in the office is routinely conducted in Portuguese. Raízen North America is centrally supported from the Raízen Group's São Paulo headquarters, which provides its financial, tax, accounting, IT, insurance, internal auditing and other central management, operational, and strategic services and functions. Raizen North America's financial statements are only available to creditors as part of the Raízen Group's consolidated financial statements prepared in and published in Brazil.

---

[3]     Since filing the Declaration and Verified Petition, there has been personnel movement at Raízen North America, and as a result, Raízen North America currently employs eight employees.

7

**D.      Raízen Trading S.A.**

15.      Similar to Raízen North America, Raízen Trading S.A. operates as a trading hub for the Raízen Group's trading activities globally.  Raízen Trading S.A. follows a global sourcing strategy, combining intra-group procurements from Brazil and the U.S. with procurements from third parties in Europe, Asia, and the Americas.  As is the case with Raízen North America, Raízen Trading S.A.'s procurement and trading strategy is designed to optimize the Raízen Group's network and maximize the group's profitability.  Its position in European markets facilitates this by allowing it to procure from different geographic regions based on supply and customer demand in order to efficiently buy and sell ethanol and sugar in Europe and elsewhere.

16.      Raízen Trading S.A. buys and exports sugar, oil and ethanol from its Brazilian parent, Raízen S.A., among other parties.  Raízen Trading S.A. then on-sells those products to counterparties around the world, but like Raízen North America, the parameters of those sales are directed by Raízen Trading S.A.'s executive committee (discussed further below), which was formed by its shareholder (e.g., its Brazilian parent company).  Over the six months prior to the Petition Date, 73% of Raízen Trading S.A.'s oil purchases are sourced from Brazil while over 77% of its oil sales are to Brazil.[4]  Nearly 40% of its ethanol purchases and sales are sourced from and sent to Brazil.

17.      To enable it to export sugar from Brazil, Raízen Trading S.A. contracts with port operators at the Copersucar Sugar Terminal in the port of Santos, Brazil, and the Solid Bulk Terminal at the port of Imbituba/Santa Catarina, Brazil, for the receipt, weighing, unloading,

---

[4]      The Raízen Group's import supply and trading planning for Latin America follows an integrated cargo planning approach, which is managed centrally by Raízen's planning team in Brazil.  As such, these figures include amounts from Raízen Argentina and Raízen Paraguay, and include supplies and sales from both third parties and Raízen entities and affiliates.

storage, handling, and loading onto ships of its sugar.  Pursuant to these contracts, Raizen Trading S.A. leases real property and equipment at these ports.  Raízen Trading S.A. also contracts with Brazilian port elevator and logistics providers as well as for railway transportation services in Brazil.  All of these contracts include consent to jurisdiction provisions providing for the exclusive jurisdiction of Brazilian courts, and half of the agreements include explicit governing law provisions selecting Brazilian law.  These contracts support Raízen Trading S.A.'s operations in Brazil, which require a complex network of transportation, logistics and port services.

18.    In contrast to these material contracts with Brazilian counterparties, Raízen Trading S.A. has no comparable contracts with Swiss counterparties.  Furthermore, Raízen Trading S.A. maintains a total of 14 bank accounts around the world—only two of those are in Switzerland and those accounts together contain less than 0.1% of its cash.  Moreover, these Swiss accounts are maintained solely to satisfy Raízen Trading S.A.'s local salary and employee-related obligations.

19.    Like Raízen Fuels Finance and Raízen North America, Raízen Trading S.A. maintains a statutory director structure to ensure its compliance with local regulatory and tax requirements in Switzerland.  Raízen Trading S.A. has an executive committee formed by its shareholder, Raízen Energia S.A., comprised of two directors located in Geneva and two directors located in Brazil.  Three of these directors are Brazilian nationals.  The four officers of the entity are also Brazilian nationals.  Looking at Raízen Trading S.A.'s employees reveals no more connection to Switzerland than it does Brazil—four of its current employees are Brazilian, while four are Swiss.[5]

---

[5]    Since filing the Declaration and Verified Petition, the number of employees at Raízen Trading S.A. has changed such that the number of Swiss employees has decreased from six to four.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on April 3, 2026
São Paolo, Brazil

Lorival Nogueira Luz, Junior
*Chief Financial Officer and Officer of Investor Relations of the Raizen Group*

10

**<u>Exhibit B</u>**
**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 26-10528 (LGB) |
| Raízen S.A., *et al.*,[1] | ) |
| | ) Chapter 15 |
| Debtors in a Foreign Proceeding. | ) (Jointly Administered) |
| | ) |

**ORDER GRANTING RECOGNITION OF FOREIGN**
**MAIN PROCEEDING AND CERTAIN RELATED RELIEF**

Upon the *Declaration of Lorival Nogueira Luz, Junior, and Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief pursuant to 11 U.S.C. §§ 105, 1515, 1517, 1520, and 1521* (the "Declaration and Verified Petition")[2] dated March 12, 2026, Raízen S.A. (the "Petitioner" or the "Foreign Representative"), in its capacity as the duly-appointed foreign representative of the above-captioned debtors (collectively, the "Debtors") in the Brazilian court-supervised extrajudicial reorganization proceeding (*recuperação extrajudicial*) of the Debtors (the "Brazilian Proceeding"), which was accepted by the 3rd Bankruptcy and Judicial Reorganization Court – Central Civil Courthouse (the "Brazilian Bankruptcy Court") on March 12, 2026, pursuant to Federal Law No. 11.101 of February 9, 2005 (the "Brazilian Bankruptcy Law") of the laws of the Federative Republic of Brazil ("Brazil"), requesting this Order (the "Order") (a) granting the Declaration and Verified Petition and recognizing the Brazilian Proceeding as the foreign main proceeding for the Debtors pursuant to

---

[1]    The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Raízen S.A. (01-23–Brazil); Raízen Energia S.A. (01-78–Brazil); Raízen Centro-Sul Paulista S.A. (18-28–Brazil); Raízen Fuels Finance S.A. (0903–Luxembourg); Blueway Trading Importação e Exportação S.A. (01-57–Brazil); Raízen Caarapó Açúcar e Álcool Ltda. (01-66–Brazil); Raízen North America, Inc. (7198–U.S.); Raízen Centro-Sul S.A. (01-36–Brazil); and Raízen Trading S.A. (3.167–Switzerland).

[2]    Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in the Declaration and Verified Petition.

section 1517 of title 11 of the United States Code (the "Bankruptcy Code"), and all relief included

therewith as provided in section 1520 of the Bankruptcy Code; (b) finding that the Petitioner is the

duly-appointed foreign representative, as defined in section 101(24) of the Bankruptcy Code, of

the Brazilian Proceeding for each of the Debtors for purposes of these proceedings; and (c)

granting such other and further relief as the Court deems just and proper; and this Court having

reviewed (i) the Forms of Voluntary Petition, (ii) the Declaration and Verified Petition, along with

the exhibits annexed thereto [ECF No. 3], (iii) the *Declaration of Giuliano Colombo Pursuant to*

*28 U.S.C. § 1746 In Support of the Declaration of Lorival Nogueira Luz, Junior, and Verified*

*Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief*

*Pursuant to 11 U.S.C. §§ 105(A), 1515, 1517, 1520, and 1521* (the "Brazilian Counsel

Declaration") [ECF No. 4], (iv) the *Petitioner's Brief in Support of the Verified Petition for*

*Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant*

*to 11 U.S.C. §§ 105(a), 1515, 1517, 1520, and 1521* and accompanying *Declaration of Lorival*

*Nogueira, Luz, Junior, in Support of the Petitioner's Brief in Support of the Verified Petition for*

*Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant*

*to 11 U.S.C. §§ 105(a), 1515, 1517, 1520, and 1521* [ECF No. •] (the "Brief and Supplemental

Declaration"), and (v) the statements of counsel with respect to the Declaration and Verified

Petition at a hearing before this Court (the "Hearing"); and appropriate and timely notice of the

filing of the Declaration and Verified Petition and the Hearing having been given in accordance

with the *Order Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 Scheduling*

*Hearing and Specifying Form and Manner of Service and Notice* (the "Notice Order") [ECF No.

22]; and no objections having been filed or asserted as set forth on the record of the Hearing; and

no other or further notice being necessary or required; and this Court having determined that the

2

legal and factual bases set forth in the evidence admitted by the Court at the Hearing including the Declaration and Verified Petition, the Brazilian Counsel Declaration, the Brief and Supplemental Declaration, and all other pleadings and papers in these chapter 15 cases (the "Chapter 15 Cases") establish just cause to grant the relief ordered herein; and after due deliberation thereon;

**THIS COURT HEREBY FINDS AND DETERMINES THAT:**

A.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over this matter pursuant to sections 157 and 1334 of title 28 of the United States Code, and the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.).

C.      This is a core proceeding pursuant to section 157(b)(2)(P) of title 28 of the United States Code.

D.      Venue for this proceeding is proper before this Court pursuant to section 1410 of title 28 of the United States Code.

E.      The Petitioner has been (i) duly appointed to act as the "foreign representative," within the meaning of section 101(24) of the Bankruptcy Code, of the Brazilian Proceeding with respect to the Debtors and (ii) authorized to commence and prosecute these Chapter 15 Cases.

3

F.      These Chapter 15 Cases were properly commenced on March 12, 2026 by the Foreign Representative pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

G.      The Petitioner has satisfied the requirements of section 1515 of the Bankruptcy Code, Bankruptcy Rules 1007(a)(4), 2002(q) and 7007.1, and Rules 2002-4 and 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

H.      The Brazilian Proceeding is a "foreign proceeding" pursuant to section 101(23) of the Bankruptcy Code.

I.      The Brazilian Proceeding is entitled to recognition by this Court pursuant to section 1517 of the Bankruptcy Code.

J.      The COMI of each of the Debtors is in Brazil.  Accordingly, the Brazilian Proceeding is the "foreign main proceeding" of each of the Debtors, as that term is defined in section 1502(4) of the Bankruptcy Code, and is entitled to recognition as such pursuant to section 1517(b)(1) of the Bankruptcy Code.

K.      The relief granted hereby is necessary and appropriate to effectuate the purposes and objectives of chapter 15 and to protect the Debtors, their creditors and other parties in interest.

L.      Appropriate notice of the filing of and the Hearing on the Declaration and Verified Petition was given, which notice is deemed adequate for all purposes, and no other or further notice need be given.

For all of the foregoing reasons, and for the reasons stated by the Court at the Hearing and reflected in the record thereof, and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Declaration and Verified Petition is GRANTED as set forth herein.

4

2.      The Petitioner is the duly appointed foreign representative of the Brazilian Proceeding with respect to the Debtors, within the meaning of section 101(24) of the Bankruptcy Code, and is authorized to act on behalf of each of the Debtors in these Chapter 15 Cases.

3.      The Brazilian Proceeding is granted recognition as the foreign main proceeding of each of the Debtors pursuant to section 1517 of the Bankruptcy Code.

4.      All relief and protection afforded to foreign main proceedings under section 1520 of the Bankruptcy Code are hereby granted to the Brazilian Proceeding, the Petitioner, the Debtors and the property of the Debtors that is within the territorial jurisdiction of the United States, as applicable, including application of section 362 of the Bankruptcy Code with respect to each of the Debtors and the property of the Debtors that is within the territorial jurisdiction of the United States, subject to the exceptions to section 362 that are set forth in the Bankruptcy Code.

5.      For the avoidance of doubt, pursuant to sections 362(b), 546(e), 546(f), 546(g), 546(j), 555, 556, 559, 560, 561, and 562 of the Bankruptcy Code, and subject to the terms of the applicable contracts, the EJ Plan (as amended from time to time) and the Brazilian Bankruptcy Code, nothing in this Order affects or stays the exercise of acceleration (early termination) and set-off rights under a securities contract, commodity contract, forward contract, repurchase agreement, swap agreement, or master netting agreement (each as defined in sections 101, 741, and 761 of the Bankruptcy Code).

6.      Notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary, (a) this Order shall be effective immediately and enforceable upon entry; (b) the Petitioner is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Petitioner is authorized and empowered and may in its discretion

and without further delay take any action and perform any act necessary to implement and effectuate the terms of this Order.

7.      A copy of this Order shall be served by the Petitioner within seven business days of entry of this Order by email, first class mail, or overnight courier on the Notice Parties (as defined in the Notice Order), and such service shall be good and sufficient service and adequate notice for all purposes.

8.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, enforcement, amendment or modification of this Order.

Dated: New York, New York
        _____, 2026

_____
HONORABLE LISA G. BECKERMAN
UNITED STATES BANKRUPTCY JUDGE

6

**<u>Exhibit B-1</u>**
**Blackline of Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Case No. 26-10528 (LGB) |
| Raízen S.A., *et al.*,[1] | ) |
| | ) Chapter 15 |
| Debtors in a Foreign Proceeding. | ) (Jointly Administered) |
| | ) |

**ORDER GRANTING RECOGNITION OF FOREIGN**
**MAIN PROCEEDING AND CERTAIN RELATED RELIEF**

Upon the *Declaration of Lorival Nogueira Luz, Junior, and Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief pursuant to 11 U.S.C. §§ 105, 1515, 1517, 1520, and 1521* (the "Declaration and Verified Petition")[2] dated March 12, 2026, Raízen S.A. (the "Petitioner" or the "Foreign Representative"), in its capacity as the duly-appointed foreign representative of the above-captioned debtors (collectively, the "Debtors") in the Brazilian court-supervised extrajudicial reorganization proceeding (*recuperação extrajudicial*) of the Debtors (the "Brazilian Proceeding"), which was accepted by the 3rd Bankruptcy and Judicial Reorganization Court – Central Civil Courthouse (the "Brazilian Bankruptcy Court") on March 12, 2026, pursuant to Federal Law No. 11.101 of February 9, 2005 (the "Brazilian Bankruptcy Law") of the laws of the Federative Republic of Brazil ("Brazil"), requesting this Order (the "Order") (a) granting the Declaration and Verified Petition and

---

[1]     The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: Raízen S.A. (01-23–Brazil); Raízen Energia S.A. (01-78–Brazil); Raízen Centro-Sul Paulista S.A. (18-28–Brazil); Raízen Fuels Finance S.A. (0903–Luxembourg); Blueway Trading Importação e Exportação S.A. (01-57–Brazil); Raízen Caarapó Açúcar e Álcool Ltda. (01-66–Brazil); Raízen North America, Inc. (7198–U.S.); Raízen Centro-Sul S.A. (01-36–Brazil); and Raízen Trading S.A. (3.167–Switzerland).

[2]     Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in the Declaration and Verified Petition.

recognizing the Brazilian Proceeding as the foreign main proceeding for the Debtors pursuant to section 1517 of title 11 of the United States Code (the "Bankruptcy Code"), and all relief included therewith as provided in section 1520 of the Bankruptcy Code; (b) finding that the Petitioner is the duly-appointed foreign representative, as defined in section 101(24) of the Bankruptcy Code, of the Brazilian Proceeding for each of the Debtors for purposes of these proceedings; and (c) granting such other and further relief as the Court deems just and proper; and this Court having reviewed (i) the Forms of Voluntary Petition, (ii) the Declaration and Verified Petition, along with the exhibits annexed thereto [ECF No. 3], (iii) the *Declaration of Giuliano Colombo Pursuant to 28 U.S.C. § 1746 In Support of the Declaration of Lorival Nogueira Luz, Junior, and Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(A), 1515, 1517, 1520, and 1521* (the "Brazilian Counsel Declaration") ~~filed contemporaneously therewith~~[ECF No. 4], (iv) the *Petitioner's Brief in Support of the Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1515, 1517, 1520, and 1521* and accompanying *Declaration of Lorival Nogueira, Luz, Junior, in Support of the Petitioner's Brief in Support of the Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1515, 1517, 1520, and 1521* [ECF No. •] (the "Brief and Supplemental Declaration"), and (~~iv~~v) the statements of counsel with respect to the Declaration and Verified Petition at a hearing before this Court (the "Hearing"); and appropriate and timely notice of the filing of the Declaration and Verified Petition and the Hearing having been given in accordance with the *Order Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 ~~for Order~~ Scheduling Hearing and Specifying Form and Manner of Service ~~of~~and Notice~~, and Granting Related Relief~~*

2

(the "Notice Order") ([ECF No. •)22]; and no objections having been filed or asserted as set forth on the record of the Hearing; and no other or further notice being necessary or required; and this Court having determined that the legal and factual bases set forth in the evidence admitted by the Court at the Hearing including the Declaration and Verified Petition, the Brazilian Counsel Declaration, the Brief and Supplemental Declaration, and all other pleadings and papers in these chapter 15 cases (the "Chapter 15 Cases") establish just cause to grant the relief ordered herein; and after due deliberation thereon;

### THIS COURT HEREBY FINDS AND DETERMINES THAT:

A.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over this matter pursuant to sections 157 and 1334 of title 28 of the United States Code, and the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.).

C.      This is a core proceeding pursuant to section 157(b)(2)(P) of title 28 of the United States Code.

D.      Venue for this proceeding is proper before this Court pursuant to section 1410 of title 28 of the United States Code.

E.      The Petitioner has been (i) duly appointed to act as the "foreign representative," within the meaning of section 101(24) of the Bankruptcy Code, of the Brazilian Proceeding with respect to the Debtors and (ii) authorized to commence and prosecute these Chapter 15 Cases.

F.      These Chapter 15 Cases were properly commenced on March 12, 2026 by the Foreign Representative pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

G.      The Petitioner has satisfied the requirements of section 1515 of the Bankruptcy Code, Bankruptcy Rules 1007(a)(4), 2002(q) and 7007.1, and Rules 2002-4 and 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

H.      The Brazilian Proceeding is a "foreign proceeding" pursuant to section 101(23) of the Bankruptcy Code.

I.      The Brazilian Proceeding is entitled to recognition by this Court pursuant to section 1517 of the Bankruptcy Code.

J.      The COMI of each of the Debtors is in Brazil.  Accordingly, the Brazilian Proceeding is the "foreign main proceeding" of each of the Debtors, as that term is defined in section 1502(4) of the Bankruptcy Code, and is entitled to recognition as such pursuant to section 1517(b)(1) of the Bankruptcy Code.

K.      The relief granted hereby is necessary and appropriate to effectuate the purposes and objectives of chapter 15 and to protect the Debtors, their creditors and other parties in interest.

L.      Appropriate notice of the filing of and the Hearing on the Declaration and Verified Petition was given, which notice is deemed adequate for all purposes, and no other or further notice need be given.

4

For all of the foregoing reasons, and for the reasons stated by the Court at the Hearing and reflected in the record thereof, and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Declaration and Verified Petition is GRANTED as set forth herein.

2.      The Petitioner is the duly appointed foreign representative of the Brazilian Proceeding with respect to the Debtors, within the meaning of section 101(24) of the Bankruptcy Code, and is authorized to act on behalf of each of the Debtors in these Chapter 15 Cases.

3.      The Brazilian Proceeding is granted recognition as the foreign main proceeding of each of the Debtors pursuant to section 1517 of the Bankruptcy Code.

4.      All relief and protection afforded to foreign main proceedings under section 1520 of the Bankruptcy Code are hereby granted to the Brazilian Proceeding, the Petitioner, the Debtors and the property of the Debtors that is within the territorial jurisdiction of the United States, as applicable, including application of section 362 of the Bankruptcy Code with respect to each of the Debtors and the property of the Debtors that is within the territorial jurisdiction of the United States, subject to the exceptions to section 362 that are set forth in the Bankruptcy Code.

5.      For the avoidance of doubt, pursuant to sections 362(b), 546(e), 546(f), 546(g), 546(j), 555, 556, 559, 560, 561, and 562 of the Bankruptcy Code, and subject to the terms of the applicable contracts, the EJ Plan (as amended from time to time) and the Brazilian Bankruptcy Code, nothing in this Order affects or stays the exercise of acceleration (early termination) and set-off rights under a securities contract, commodity

contract, forward contract, repurchase agreement, swap agreement, or master netting agreement (each as defined in sections 101, 741, and 761 of the Bankruptcy Code).

6. 5. Notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary, (a) this Order shall be effective immediately and enforceable upon entry; (b) the Petitioner is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Petitioner is authorized and empowered and may in its discretion and without further delay take any action and perform any act necessary to implement and effectuate the terms of this Order.

7. 6. A copy of this Order shall be served by the Petitioner within seven business days of entry of this Order by email, first class mail, or overnight courier on the Notice Parties (as defined in the Notice Order), and such service shall be good and sufficient service and adequate notice for all purposes.

8. 7. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, enforcement, amendment or modification of this Order.

Dated: New York, New York
_____, 2026

HONORABLE LISA G. BECKERMAN
UNITED STATES BANKRUPTCY JUDGE

6