Luke A. Barefoot
David Z. Schwartz
Richard C. Minott
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for Raízen S.A., as*
*Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) ) Case No. 26-10528 (LGB) |
| Raízen S.A.,[1] | ) Chapter 15 |
| Debtor in a Foreign Proceeding. | ) ) (Jointly Administered) ) |

**STATEMENT PURSUANT TO 11 U.S.C. § 1518 OF**
**THE FOREIGN REPRESENTATIVE REGARDING**
**THE STATUS OF THE BRAZILIAN PROCEEDING**

I, Lorival Nogueira Luz, Junior, being duly authorized by each of the Debtors, pursuant to

28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of

America as follows:

1.      I am the Chief Financial Officer and Officer of Investor Relations of the Raízen

Group.  I am generally familiar with the operations and affairs of the Debtors in the above-

captioned Chapter 15 Cases.

---

[1]      The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number
in their applicable jurisdiction of incorporation, are as follows: Raízen S.A. (01-23–Brazil); Raízen Energia S.A. (01-
78–Brazil); Raízen Centro-Sul Paulista S.A. (18-28–Brazil); Raízen Fuels Finance S.A. (0903–Luxembourg);
Blueway Trading Importação e Exportação S.A. (01-57–Brazil); Raízen Caarapó Açúcar e Álcool Ltda. (01-66–
Brazil); Raízen North America, Inc. (7198–U.S.); Raízen Centro-Sul S.A. (01-36–Brazil); and Raízen Trading S.A.
(3.167–Switzerland).

2.      In my capacity as Chief Financial Officer of the Raízen Group, I am authorized to submit this statement on behalf of the duly-appointed foreign representative in the extrajudicial reorganization proceeding (the "Brazilian Proceeding") of Raízen S.A. ("Raízen" or the "Company") and certain of its affiliates (the "Debtors"), which was accepted by the 3rd Bankruptcy and Judicial Reorganization Court – Central Civil Courthouse (the "Brazilian Court") on March 12, 2026, pursuant to Brazilian Federal Law No. 11.101 of February 9, 2005, as modified (the "Brazilian Bankruptcy Law"), of the laws of the Federative Republic of Brazil ("Brazil").  I respectfully submit this statement (the "Statement") to inform the Court of recent developments regarding the EJ Plan[2] and Brazilian Proceeding.

3.      I am over the age of 18, and I make this declaration on the basis of documentation I have reviewed and facts known to me through my work as Chief Financial Officer and Officer of Investor Relations of the Raízen Group.  Where relevant information has been provided to me by others, the information is true to the best of my knowledge and belief.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.

### Update Regarding the EJ Plan

4.      On June 5, 2026, the Debtors publicly announced that they had reached agreement on an Updated Plan with holders of 75.45% of Subject Claims, representing a majority of the financial creditors of the Company as required for confirmation of the Updated Plan by the Brazilian Court under Brazilian Bankruptcy Law.

---

[2]      Capitalized terms not otherwise defined in this Statement shall have the meanings given to such terms in the *Declaration of Lorival Nogueira Luz, Junior, and Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1515, 1517, 1520, and 1521* (ECF No. 3) (the "Declaration and Verified Petition").

2

5.    Following the filing of the Updated Plan and effectuation of publication notice, creditors had thirty (30) days (i.e., until July 17, 2026) to file objections to confirmation of the Updated Plan in the Brazilian Court.

6.    No timely objections to confirmation of the Updated Plan were received prior to the expiration of the objection deadline.  On July 17, 2026, the Debtors filed an updated supporting creditors list in the Brazilian Proceeding, reflecting that support for the Updated Plan had increased to 81.6% of holders of Subject Claims.

7.    On July 30, 2026, the Brazilian Court entered an order confirming the Updated Plan, a copy of which is attached hereto as **Exhibit A**, together with an accompanying certified English translation as **Exhibit B**.

8.    Upon the expiration of the period to file any motion for clarification with the Brazilian Court, the Foreign Representative intends to file a motion with this Court seeking to give full force and effect to the Updated Plan and the confirmation order within the territorial jurisdiction of the United States.  The Foreign Representative will continue to keep the Court apprised of developments in the Brazilian Proceeding in accordance with section 1518 of the Bankruptcy Code or as otherwise requested by the Court.

Executed in São Paulo, Brazil
on July 31, 2026

*/s/ Lorival Nogueira Luz, Junior*
Lorival Nogueira Luz, Junior

*Chief Financial Officer and Officer of
Investor Relations, Raízen Group*

3

**<u>Exhibit A</u>**
**Confirmation Order (in Portuguese)**



# Poder Judiciário
## JUSTIÇA ESTADUAL
## Cível - Tribunal de Justiça do Estado de São Paulo
## Juízo Titular I - 3ª Vara de Falências e Recuperações Judiciais - Foro Central Cível

Praça João Mendes, s/n, Salas 1823 - Bairro: Centro - CEP: 1501900 - Fone: 11 3538-9160 - Email: sp3falencias@tjsp.jus.br

**RECUPERAÇÃO EXTRAJUDICIAL Nº 4037759-13.2026.8.26.0100/SP**

**REQUERENTE**: BLUEWAY TRADING IMPORTACAO E EXPORTACAO S.A.

**REQUERENTE**: CREDORES

**REQUERENTE**: RAÍZEN NORTH AMERICA INC

**REQUERENTE**: RAIZEN CAARAPO ACUCAR E ALCOOL LTDA

**REQUERENTE**: RAIZEN CENTRO-SUL PAULISTA S.A

**REQUERENTE**: RAIZEN ENERGIA S.A

**REQUERENTE**: RAÍZEN FUELS FINANCE S.A.

**REQUERENTE**: RAIZEN S.A.

**REQUERENTE**: RAÍZEN TRADING S.A.

**REQUERENTE**: RAIZEN CENTRO-SUL S.A

**REQUERIDO**: ITAU UNIBANCO S.A.

# SENTENÇA

Vistos.

Trata-se de pedido de recuperação extrajudicial, com requerimento de suspensão de ações e execuções (*stay period*), formulado por RAÍZEN S.A., RAÍZEN ENERGIA S.A., RAÍZEN FUELS FINANCE S.A., RAÍZEN TRADING S.A., RAÍZEN NORTH AMERICA INC., RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA., RAÍZEN CENTRO-SUL PAULISTA S.A., RAÍZEN CENTRO-SUL S.A. e BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A. (em conjunto, "Grupo Raízen" ou "Requerentes"), com fundamento nos arts. 6º e 163, §8º, da Lei nº 11.101/2005 ("LFR").

Alegam as Requerentes, preliminarmente, integrar grupo econômico sob controle societário comum, atuante nos segmentos de produção e comercialização de açúcar, etanol e bioenergia, bem como de distribuição de combustíveis, biocombustíveis e lubrificantes, com operações em mais de 40 países e posição de destaque nos mercados brasileiro e argentino. Sustentam a legitimidade do litisconsórcio ativo facultativo, com base no art. 69-G da LFR, inclusive quanto às três sociedades estrangeiras integrantes do polo ativo (Raízen Trading S.A., Raízen North America Inc. e Raízen Fuels Finance S.A.), ao argumento de que o centro decisório de todo o grupo está localizado na cidade de São Paulo, onde também se situaria o principal estabelecimento das Requerentes para fins de fixação da competência, nos termos do art. 3º da LFR.

**4037759-13.2026.8.26.0100**                                                    **610014755250 .V2**



**Poder Judiciário**
**JUSTIÇA ESTADUAL**
**Cível - Tribunal de Justiça do Estado de São Paulo**
**Juízo Titular I - 3ª Vara de Falências e Recuperações Judiciais - Foro Central**
**Cível**

Quanto às causas da crise econômico-financeira, as Requerentes atribuem o quadro de endividamento a fatores exógenos supervenientes às decisões de expansão adotadas em ciclo de investimento anterior, notadamente a manutenção da taxa básica de juros em patamares superiores a 12% a.a. por período prolongado, a deterioração macroeconômica na Argentina, eventos climáticos adversos que impactaram a safra de cana-de-açúcar e a retração de preços de commodities, circunstâncias que, em conjunto, teriam provocado prejuízo acumulado de R$ 18,4 bilhões na Safra 2025/2026, consumo de R$ 7,2 bilhões de caixa entre abril e dezembro de 2025 e elevação da alavancagem ao maior patamar histórico do grupo (múltiplo de 5,3x). Relatam, ainda, sucessivos rebaixamentos de rating pelas agências Moody's, S&P e Fitch ao longo do período, culminando em classificação de nível especulativo, bem como questionamento formal da Comissão de Valores Mobiliários e desenquadramento das ações da Raízen S.A. (RAIZ4) da cotação mínima exigida pela B3, por negociação como *penny stock*.

Informam que a dívida bruta consolidada do grupo, na data do ajuizamento (10/03/2026), totaliza R$ 65,14 bilhões, e que o plano de recuperação extrajudicial ora apresentado restringe-se à reestruturação dos créditos financeiros de natureza quirografária ("Créditos Sujeitos"), sem afetar obrigações perante clientes, fornecedores, revendedores e demais parceiros comerciais. Do passivo total submetido ao pedido — R$ 98,63 bilhões, valor atribuído à causa —, R$ 65,14 bilhões corresponderiam a Créditos Sujeitos e R$ 33,49 bilhões a obrigações *intercompany*. Afirmam ter obtido a adesão de Credores Signatários titulares de aproximadamente 47% dos Créditos Sujeitos, quórum superior ao mínimo de 1/3 exigido pelo art. 163, §7º, da LFR para o processamento do pedido, comprometendo-se a alcançar a maioria absoluta no prazo legal de 90 dias.

Requerem (i) o processamento da recuperação extrajudicial com prazo de 90 dias para obtenção do quórum de maioria; (ii) a ratificação da suspensão de 180 dias nos termos acima; (iii) a futura publicação de edital de convocação de credores, para eventual impugnação ao plano, nos termos do art. 164, §3º, da LFR; e (iv) a nomeação do Sr. Lorival Nogueira Luz Junior, ou alternativamente da própria Raízen S.A., como representante estrangeiro (*foreign representative*), para fins de cooperação em processos ancilares no exterior, nos termos do art. 167-B, IV, da LFR.

Deferido o processamento (evento 9), oportunidade em que reconhecida a consolidação processual e deferido o *stay period*.

A decisão do evento 44 determinou publicação do edital após apresentação do plano.

Plano de Recuperação apresentado (evento 91).

Edital do art. 164 da Lei n. 11.101/2005 publicado (evento 139,1).

Novos termos da adesão juntados pela parte autora (evento 135 e evento 179). Na última oportunidade, afirmam que o plano tem o apoio de 81,6% dos Créditos Sujeitos, requerendo a homologação do Plano.

**4037759-13.2026.8.26.0100**                                                                 **610014755250 .V2**



## Poder Judiciário
## JUSTIÇA ESTADUAL
### Cível - Tribunal de Justiça do Estado de São Paulo
### Juízo Titular I - 3ª Vara de Falências e Recuperações Judiciais - Foro Central Cível

Decorrido prazo do edital sem notícia de impugnações.

**É o relatório. DECIDO**.

A recuperação extrajudicial, disciplinada pelos arts. 161 a 167 da Lei nº 11.101/2005, corresponde, na essência, a negócio jurídico privado — a novação de créditos, nos termos dos arts. 59 e 163, §6º, III, da LFR — que a lei submete à homologação judicial para que produza efeitos erga omnes em relação à totalidade dos credores sujeitos, inclusive os que a ele não aderiram, na observância dos requisitos legais (art. 165, *caput*).

Dessa natureza decorre a primeira e mais relevante delimitação da cognição judicial nesta fase: **não compete ao Juízo, na homologação, formular juízo de mérito sobre a conveniência econômica, a razoabilidade comercial ou o mérito negocial das condições pactuadas entre as Devedoras e os Credores Signatários**. Os termos de pagamento, os deságios aplicados, a escolha entre instrumentos de dívida ou capitalização, os prazos de carência e amortização — todo esse conteúdo econômico-financeiro do ajuste é matéria de exclusiva disposição das partes contratantes, que, no exercício de sua autonomia privada, avaliaram os riscos e benefícios da negociação. Ao Juízo não cabe substituir-se à vontade dos credores que livremente aderiram ao Plano, tampouco impor condições mais ou menos favoráveis do que as por eles pactuadas.

A atuação jurisdicional, na homologação de plano de recuperação extrajudicial, restringe-se, portanto, ao **controle de legalidade e de regularidade formal** do pedido, compreendendo, essencialmente:

(i) a verificação dos **pressupostos subjetivos e formais** de admissibilidade, previstos no art. 48 da LFR (regularidade do exercício da atividade empresarial há mais de dois anos, ausência de falência decretada ou de recuperação judicial/extrajudicial concedida nos últimos cinco anos, inexistência de condenação por crimes falimentares dos administradores e controladores);

(ii) a comprovação do **quórum de adesão** exigido pelo art. 163, *caput* — ou, quando for o caso, do quórum mínimo do art. 163, §7º, cumulado com a comprovação de que o quórum de maioria foi efetivamente atingido dentro do prazo legal de 90 dias —, aferindo-se se os credores signatários e aderentes efetivamente representam mais da metade dos créditos de cada espécie abrangidos pelo plano, com exclusão dos créditos de pessoas relacionadas nos termos do art. 43;

(iii) a verificação de que o plano reestrutura **grupo de credores de mesma natureza e sujeitos a condições de pagamento semelhantes** (art. 163, §1º), não havendo tratamento discriminatório arbitrário entre credores em situação equivalente — o que não se confunde com a oferta de opções alternativas de pagamento à livre escolha do próprio credor, prática que a jurisprudência do Superior Tribunal de Justiça e dos Tribunais estaduais tem reiteradamente admitido como compatível com o princípio da *par conditio creditorum*, justamente por preservar a igualdade na oportunidade de escolha, ainda que os resultados econômicos de cada opção sejam distintos;

**4037759-13.2026.8.26.0100**                                        **610014755250 .V2**



## Poder Judiciário
## JUSTIÇA ESTADUAL
### Cível - Tribunal de Justiça do Estado de São Paulo
### Juízo Titular I - 3ª Vara de Falências e Recuperações Judiciais - Foro Central Cível

(iv) a ausência de **vícios de vontade** na manifestação de adesão dos credores signatários e a regularidade da representação de quem subscreveu o plano em nome de cada um deles (art. 163, §6º, III);

(v) a compatibilidade do plano com **normas cogentes** do ordenamento jurídico, notadamente as que definem os créditos insuscetíveis de novação por recuperação extrajudicial (art. 161, §1º, e art. 49, §3º, da LFR), as regras de compensação e liquidação financeira dos arts. 193 e 193-A, e os limites à disposição sobre direitos de terceiros estranhos à relação obrigacional sujeita à reestruturação;

(vi) a regularidade da **documentação obrigatória** exigida pelos arts. 162 e 163, §6º, da LFR.

Apenas dentro desse perímetro é que se posiciona a atuação homologatória do Juízo. Não se cuida, pois, de reexaminar as premissas do negócio de reestruturação, de aferir se as condições oferecidas aos credores são as "melhores" possíveis, ou de ponderar sobre a suficiência do deságio ou dos prazos concedidos — jurisdição que a lei não conferiu ao magistrado na recuperação extrajudicial e que, se exercida, importaria indevida ingerência do Poder Judiciário sobre matéria de natureza eminentemente contratual e negocial, em contrariedade à própria ratio do instituto, concebido justamente para conferir agilidade e menor grau de intervenção judicial à reestruturação de passivos, em contraposição ao modelo da recuperação judicial.

É dentro dessas balizas, portanto, que passa o Juízo a examinar, nos itens seguintes, (i) o preenchimento do quórum legal de adesão e (ii) a compatibilidade do conteúdo do Plano com as normas cogentes aplicáveis, sem adentrar o mérito econômico das condições nele livremente pactuadas pelas Devedoras e pelos Credores Signatários.

Quanto ao primeiro ponto, há uma limitação evidente do Juízo neste caso: além dos créditos sujeitos serem bilionários, a dificultar qualquer fiscalização aprofundada de ofício, inexistiu qualquer impugnação. Daí é que não há outro caminho que não confiar na documentação e declarações apresentadas no sentido de que (i) a lista de credores dos créditos sujeitos é fidedigna; (ii) a partir dela, o *quorum* majoritário foi atingido.

Note-se que de nada adiantaria imiscuirmo-nos na análise detalhada de cada adesão que veio aos autos se não temos como confirmar a premissa quanto à lista de credores, na medida em que não está nos autos não é passível de conferência, sendo impossível ao Juízo, na ausência de qualquer oposição de credores, aferir se a seletividade do universo dos créditos sujeitos foi adequada.

Evidente que o fato de inexistir qualquer impugnação apenas reforça que tanto a lista de credores quanto de aderentes é resultante de um trabalho único de negociação feito por todos os envolvidos, em precedente histórico, principalmente considerando a extensão dos créditos sujeitos. Esse procedimento, ademais, foi amplamente divulgado em mídia nacional e estrangeira, viabilizando com mais razão a insurgência de qualquer interessado, o que deixou de ocorrer.

**4037759-13.2026.8.26.0100**                                                      **610014755250 .V2**



## Poder Judiciário
## JUSTIÇA ESTADUAL
## Cível - Tribunal de Justiça do Estado de São Paulo
## Juízo Titular I - 3ª Vara de Falências e Recuperações Judiciais - Foro Central Cível

Nesse cenário, preenchidos os requisitos atinentes ao *quorum* dos créditos sujeitos, viabilizando a imposição do plano inclusive àqueles credores sujeitos e não aderentes.

Quanto ao Plano e sua legalidade, a documentação apresentada é extensa e com negociações complexas.

De toda sorte, foi possível averiguar que as opções de pagamento são legítimas, em tratamento igualitário entre credores, e que mesmo aquela mais prejudicial aplicável aos credores inertes pressupõe ampla divulgação e com prazo razoável para manifestação (Cláusulas 3.2 a 3.4).

Os créditos entre as próprias Devedoras (R$ 33,49 bilhões) são expressamente subordinados a todos os Créditos Sujeitos (cláusula 3.6), sem direito a qualquer pagamento antes da quitação integral destes — reforça, e não fragiliza, a proteção dos credores externos. Consistente com a exclusão desses créditos do cômputo do quórum (art. 43 c/c art. 163, §3º, II, LFR).

Enfim, não identificados outros pontos de atenção a atrair qualquer controle de legalidade de ofício.

Ante o exposto, e por tudo mais que dos autos consta, JULGO PROCEDENTE o pedido para HOMOLOGAR o Plano de Recuperação Extrajudicial apresentado pelas Requerentes RAÍZEN S.A., RAÍZEN ENERGIA S.A., RAÍZEN FUELS FINANCE S.A., RAÍZEN TRADING S.A., RAÍZEN NORTH AMERICA INC., RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA., RAÍZEN CENTRO-SUL PAULISTA S.A., RAÍZEN CENTRO-SUL S.A. e BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A., com fundamento nos arts. 163, caput e §6º, III, e 164, §5º, da LFR, para que produza seus regulares efeitos jurídicos e econômicos, nos exatos termos e condições nele pactuados entre as Devedoras e os Credores Signatários; e assim DECLARAR, nos termos do art. 165, caput, da LFR, que o Plano ora homologado vincula a totalidade dos Créditos Sujeitos e de seus respectivos titulares, sejam Credores Signatários, Credores Aderentes ou credores que a ele não aderiram expressamente, observadas as opções de pagamento e os prazos de eleição nele estabelecidos.

Não há que se falar em condenação em verba de sucumbência, cada parte arcando com os honorários de seus respectivos advogados e com as custas que despenderam.

A presente serve como ofício para as comunicações de praxe.

P.R.I.

**4037759-13.2026.8.26.0100**                                              **610014755250 .V2**



# Poder Judiciário
## JUSTIÇA ESTADUAL
### Cível - Tribunal de Justiça do Estado de São Paulo
### Juízo Titular I - 3ª Vara de Falências e Recuperações Judiciais - Foro Central Cível

Documento eletrônico assinado por **LARISSA GASPAR TUNALA**, na forma do artigo 1º, inciso III, da Lei 11.419, de 19 de dezembro de 2006. A conferência da **autenticidade do documento** está disponível no endereço eletrônico https://eproc1g.tjsp.jus.br/eproc/externo_controlador.php?acao=consulta_autenticidade_documentos, mediante o preenchimento do código verificador **610014755250v2** e do código CRC **c2880a9c**.

Informações adicionais da assinatura:
Signatário (a): LARISSA GASPAR TUNALA
Data e Hora: 30/07/2026, às 15:28:56

4037759-13.2026.8.26.0100                                   610014755250 .V2

**<u>Exhibit B</u>**
**Confirmation Order (in English)**



**P A U L O   H I D E O   T A K A K I**

Rua Rosa Broseghini, 358 - Parque dos Príncipes - Osasco - CEP 06030-350 - SP - Brazil
Telephone: +55-11-99511-0977  E-mail: phtakaki@gmail.com
PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER – PORTUGUESE - ENGLISH
JUCESP No 1550        CPF No 101.361.438-06        CCM No 59655

| TRANSLATION No: 13070 | BOOK: 124 | FOLIO: 340 |
|---|---|---|

*Certified translation of an Official Transcript from Portuguese into English as requested by the interested party. Completed by the undersigned Certified Translator duly qualified and sworn in by the Board of Trade of the State of São Paulo.*

July 30, 2026, 3:31 pm                    :: 610014755250 – eproc ::

[Coat of Arms of the Court of Appeals of the State of São Paulo]

**Judiciary**
**STATE JUSTICE**
**Civil - Court of Appeals of the State of São Paulo**
**Court I - 3rd Bankruptcy and Judicial Reorganization Court - Central Civil Court**
Praça João Mendes, s/n, Salas 1823 - Bairro: Centro - CEP: 1501900 - Phone: 11 3538-9160 - Email:
sp3falencias@tjsp.jus.br

**OUT-OF-COURT REORGANIZATION No. 4037759-13.2026.8.26.0100/SP**
**CLAIMANT:** BLUEWAY TRADING IMPORTACAO E EXPORTACAO S.A.
**CLAIMANT:** CREDITORS
**CLAIMANT:** RAÍZEN NORTH AMERICA INC
**CLAIMANT:** RAIZEN CAARAPO ACUCAR E ALCOOL LTDA
**CLAIMANT:** RAIZEN CENTRO-SUL PAULISTA S.A
**CLAIMANT:** RAIZEN ENERGIA S.A
**CLAIMANT:** RAÍZEN FUELS FINANCE S.A.
**CLAIMANT:** RAIZEN S.A.
**CLAIMANT:** RAÍZEN TRADING S.A.
**CLAIMANT:** RAIZEN CENTRO-SUL S.A
**RESPONDENT:** ITAU UNIBANCO S.A.

**DECISION**

Case records seen and analyzed.

This is a request for out-of-court reorganization, with a request for suspension of actions and executions (stay period), made by RAÍZEN S.A., RAÍZEN ENERGIA S.A., RAÍZEN FUELS FINANCE S.A., RAÍZEN TRADING S.A., RAÍZEN NORTH AMERICA INC., RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA., RAÍZEN CENTRO-SUL PAULISTA S.A., RAÍZEN CENTRO-SUL S.A., and BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A. (together, "Raízen Group" or "Claimants"), based on arts. 6 and 163, paragraph 8, of Law No. 11.101/2005 ("Brazilian Bankruptcy and Reorganization Law").

Claimants preliminarily claim to be part of a business group under common corporate control, active in the sugar, ethanol, and bioenergy production and sale segments, as well as the distribution of fuels, biofuels, and lubricants, with operations in more than 40 countries and a prominent position in the Brazilian and Argentine markets. They allege the legitimacy of the permissive joinder of claimants, based on art. 69-G of the Brazilian Bankruptcy and Reorganization Law, including the three foreign companies that make up the active hub (Raízen Trading S.A., Raízen North America Inc., and Raízen Fuels Finance S.A.), on the grounds that the decision-making center of the entire group is located in the city of São Paulo, where the main establishment of Claimants would also be located for the purpose of establishing jurisdiction, pursuant to art. 3 of the Brazilian Bankruptcy and Reorganization Law.



**P A U L O   H I D E O   T A K A K I**
Rua Rosa Broseghini, 358 - Parque dos Príncipes - Osasco - CEP 06030-350 - SP - Brazil
Telephone: +55-11-99511-0977  E-mail: phtakaki@gmail.com
PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER – PORTUGUESE - ENGLISH
JUCESP No 1550        CPF No 101.361.438-06        CCM No 59655

| TRANSLATION No: 13070 | BOOK: 124 | FOLIO: 341 |
|---|---|---|

Regarding the causes of the economic and financial crisis, Claimants attribute the indebtedness framework to exogenous factors resulting from the expansion decisions adopted in the previous investment cycle, notably the maintenance of the basic interest rate at levels above 12% p.a. for an extended period, the macroeconomic deterioration in Argentina, adverse weather events that impacted the sugarcane harvest, and the reduction in commodity prices, circumstances that, together, have allegedly caused a cumulative loss of BRL 18.4 billion in the 2025/2026 Crop, consumption of BRL 7.2 billion in cash between April and December 2025, and the increase in leverage to the group's highest historical level (multiple of 5.3x). They also report successive rating downgrades by Moody's, S&P, and Fitch agencies over the period, culminating in a speculative rating, as well as formal questioning by the Brazilian Securities and Exchange Commission and the removal of the shares of Raízen S.A. (RAIZ4) because of the minimum price required by B3, per trade, as a penny stock.

They report that the group's consolidated gross debt, at the filing date (March 10, 2026), totals BRL 65.14 billion, and that the out-of-court reorganization plan presented here is restricted to the restructuring of unsecured financial claims ("Subject Claims"), without affecting obligations to customers, suppliers, resellers, and other business partners. Of the total liabilities submitted to the claim — BRL 98.63 billion, amount in dispute — BRL 65.14 billion would correspond to Subject Claims and BRL 33.49 billion to intercompany bonds. They claim to have obtained the support of Signatory Creditors holding approximately 47% of the Subject Claims, a quorum greater than the minimum of 1/3 required by art. 163, paragraph 7, of the Brazilian Bankruptcy and Reorganization Law for the processing of the request, undertaking to achieve an absolute majority within the legal period of 90 days.

They request (i) the processing of the out-of-court reorganization with a period of 90 days to obtain a majority quorum; (ii) the ratification of the 180-day suspension under the terms above; (iii) the future publication of a notice calling for creditors, for possible challenge to the plan, pursuant to art. 164, paragraph 3, of the Brazilian Bankruptcy and Reorganization Law; and (iv) the appointment of Mr. Lorival Nogueira Luz Junior, or alternatively Raízen S.A. itself, as a foreign representative for the purpose of cooperating in ancillary proceedings abroad, pursuant to art. 167-B, IV, of the Brazilian Bankruptcy and Reorganization Law.

The processing has been granted (event 9), an opportunity in which the procedural consolidation is recognized and the stay period is also granted.

The decision of event 44 determined the publication of the notice after the presentation of the plan.

Reorganization Plan presented (event 91).

Notice of art. 164 of Law No. 11.101/2005 published (event 139.1).

New adhesion terms added by claimant (event 135 and event 179). At the last opportunity, they state that the plan is supported by 81.6% of the Subject Claims, requiring approval of the Plan.

The notice period has elapsed without notice of challenges.

**This is the report. I DECIDE.**

The out-of-court reorganization, governed by arts. 161 to 167 of Law No. 11.101/2005, corresponds, in essence, to a private legal transaction — the novation of claims, pursuant to art. 59 and 163, paragraphs 6, III, of the Brazilian Bankruptcy and Reorganization Law — that the law requires judicial approval to produce *erga omnes*



**PAULO   HIDEO   TAKAKI**

Rua Rosa Broseghini, 358 - Parque dos Príncipes - Osasco - CEP 06030-350 - SP - Brazil
Telephone: +55-11-99511-0977  E-mail: phtakaki@gmail.com
PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER – PORTUGUESE - ENGLISH
JUCESP No 1550        CPF No 101.361.438-06        CCM No 59655

| TRANSLATION No: 13070 | BOOK: 124 | FOLIO: 342 |
| --- | --- | --- |

effects in relation to all subject creditors, including those who did not adhere to it, in compliance with the legal requirements (art. 165, head provision).

This nature gives rise to the first and most relevant delimitation of judicial cognizance at this stage: **it is not up to the Court, upon approval, to make a judgment on the merits of economic convenience, commercial reasonableness, or the negotiating merit of the conditions agreed upon between the Debtors and the Signatory Creditors**. The payment terms, the rebates applied, the choice between debt instruments or capitalization, the grace periods, and amortization — all this economic-financial content of the agreement is a matter under the exclusive criteria of the contracting parties, who, in the exercise of their private autonomy, evaluated the risks and benefits of the negotiation. The Court cannot replace the will of the creditors who freely adhered to the Plan, nor can it impose more or less favorable conditions than those agreed upon by them.

Judicial action, in the approval of an out-of-court reorganization plan, is therefore restricted to the **control of the legality and formal regularity** of the request, essentially comprising:

(i)      the verification of the **subjective and formal assumptions** of admissibility, provided for in art. 48 of the Brazilian Bankruptcy and Reorganization Law (regular business activity for more than two years, absence of bankruptcy or judicial/out-of-court reorganization granted in the last five years, absence of convictions of directors and controllers for bankruptcy crimes);

(ii)      proof of the **participation quorum** required by art. 163, head provision — or, where applicable, the minimum quorum required by art. 163, paragraph 7, combined with proof that the majority quorum was effectively reached within the legal period of 90 days—verifying whether the signatory and adhering creditors effectively represent more than half of the claims of each type covered by the plan, excluding claims of persons related under the terms of art. 43;

(iii)      inspection that the plan restructures a **group of creditors of the same nature and subject to similar payment conditions** (art. 163, paragraph 1), there being no arbitrary discriminatory treatment intercreditors in equivalent situations — which is not to be confused with the offer of alternative payment options at the creditor's own free choice, a practice that the precedents of the Superior Court of Justice and the State Courts has repeatedly admitted as compatible with the principle of equal credit condition (*par conditio creditorum*), precisely because it preserves equality in the opportunity to choose, even if the economic results of each option are different;

(iv)      no defects of will in the expression of adhesion by the signatory creditors and the legal standing of the representation of whoever subscribed to the plan on behalf of each of them (art. 163, paragraph 6, III);

(v)      the compatibility of the plan with compelling rules of the legal system, in particular those that define the claims that cannot be novated by out-of-court reorganization (art. 161, paragraph 1, and art. 49, paragraph 3, of the Brazilian Bankruptcy and Reorganization Law), the rules for financial clearing and settlement of arts. 193 and 193-A, and the limits on provisions regarding the rights of third parties unrelated to the contractual relationship subject to restructuring;

(vi)      the legal standing of the mandatory documentation required by arts. 162 and 163, paragraph 6, of the Brazilian Bankruptcy and Reorganization Law.

The Court's ratifying function is positioned only within this perimeter. Therefore, this is not a matter of re-examining the restructuring agreement assumptions, of assessing whether the conditions offered to creditors are the "best"



**P A U L O   H I D E O   T A K A K I**
Rua Rosa Broseghini, 358 - Parque dos Príncipes - Osasco - CEP 06030-350 - SP - Brazil
Telephone: +55-11-99511-0977  E-mail: phtakaki@gmail.com
PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER – PORTUGUESE - ENGLISH
JUCESP No 1550       CPF No 101.361.438-06       CCM No 59655
TRANSLATION No: 13070                    BOOK: 124                    FOLIO: 343

---

possible, or of considering the sufficiency of the negative goodwill or the deadlines assigned — a jurisdiction that the law did not grant on the judge in an out-of-court reorganization and which, if exercised, would imply undue interference by the Judiciary in a matter of an eminently contractual and business nature, contrary to the very ratio of the institute, conceived precisely to provide agility and a lower degree of court intervention to the restructuring of liabilities, in contrast to the judicial reorganization model.

Thus, within these parameters, the Court proceeds to inspect, in the following items, (i) the fulfillment of the legal participation quorum, and (ii) the compatibility of the Plan's content with the applicable compelling rules, without entering into the economic merits of the conditions freely agreed upon therein by the Debtors and the Signatory Creditors.

Regarding the first point, there is a clear limitation on the part of the Court in this case: in addition to the claims in question being worth billions, making any in-depth *ex officio* inspection difficult, there was no objection whatsoever. Hence, there is no other way than to trust the documentation and statements submitted to the effect that (i) the list of creditors of the subject claims is reliable; (ii) based on it, the majority quorum was reached.

Please note that it would be pointless to delve into a detailed analysis of each adhesion that came to the record if we cannot confirm the assumption regarding the list of creditors, provided it is not in the proceedings and cannot be verified, making it impossible for the Court, in case of no objection from creditors, to ascertain whether the selectivity of the type of claims subject to review was adequate.

Clearly, the fact that there are no objections only reinforces that both the list of creditors and adherents is the result of a unique negotiation effort carried out by all parties involved, in a historical precedent, especially considering the extent of the claims involved. Furthermore, this procedure was widely publicized in Brazilian and foreign media, making it all the more reasonable for any interested party to disagree with it, which did not happen.

In this scenario, once the requirements regarding the quorum of eligible claims are met, imposing the plan even on those eligible but non-adherent creditors becomes possible.

Regarding the Plan and its lawfulness, the documentation submitted is extensive and involves complex negotiations.

In any case, ascertaining that the payment options are legitimate, with equal treatment among creditors, was possible, and even the most detrimental option applicable to inactive creditors assumes broad disclosure and a reasonable period for response (Sections 3.2 to 3.4).

Claims between the Debtors themselves (BRL 33.49 billion) are expressly subordinated to all Subject Claims (Section 3.6), without the right to any payment before the full settlement of these — reinforcing, and not weakening, the protection of external creditors. Consistent with the exclusion of these claims from the quorum calculation (art. 43, coupled with art. 163, paragraph 3, II, Brazilian Bankruptcy and Reorganization Law).

Finally, no other points for attention were identified that would warrant any *de oficio* lawfulness control.

In light of the foregoing, and for all other reasons contained in the record, I HEREBY GRANT the request to APPROVE the Out-of-Court Reorganization Plan submitted by the Claimants RAÍZEN S.A., RAÍZEN ENERGIA S.A., RAÍZEN FUELS FINANCE S.A., RAÍZEN TRADING S.A., RAÍZEN NORTH AMERICA INC., RAÍZEN CAARAPO AÇÚCAR E ALCOOL LTDA., RAÍZEN CENTRO-SUL PAULISTA S.A., RAÍZEN CENTRO-SUL S.A.,



**P A U L O   H I D E O   T A K A K I**
Rua Rosa Broseghini, 358 - Parque dos Príncipes - Osasco - CEP 06030-350 - SP - Brazil
Telephone: +55-11-99511-0977  E-mail: phtakaki@gmail.com
PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER – PORTUGUESE - ENGLISH
JUCESP No 1550       CPF No 101.361.438-06       CCM No 59655

| TRANSLATION No: 13070 | BOOK: 124 | FOLIO: 344 |
| --- | --- | --- |

and BLUEWAY TRADING IMPORTAÇÃO E EXPORTAÇÃO S.A., pursuant to arts. 163, head provision, and paragraph 6, III, and 164, paragraph 5, of the Brazilian Bankruptcy and Reorganization Law, so that it may produce its regular legal and economic effects, in the exact terms and conditions agreed upon therein between the Debtors and the Signatory Creditors; and thus DECLARE, pursuant to art. 165, head provision, of the Brazilian Bankruptcy and Reorganization Law, that the Plan approved hereto binds all Subject Claims and their respective holders, whether they are Signatory Creditors, Adherent Creditors, or creditors who did not expressly adhere to it, subject to the payment options and the election terms established therein.

There is no need to discuss awarding loss of suit costs, with each party bearing the fees of their respective lawyers and the costs they incurred.

This document is an official letter for standard procedures.

Publish it, register it, and notify the parties.

Electronic document signed by LARISSA GASPAR TUNALA, Judge, pursuant to Article 1, item III, of Law No. 11.419, of December 19, 2006. To check the authenticity of the document, please visit http://eproc1g.tjsp.jus.br/eproc/externo_controlador.php?acao=consulta_autenticidade_documentos, by entering the verification code 610014755250v2 and the CRC code c2880a9c.

Additional signature information:
Signed by: LARISSA GASPAR TUNALA
Date and Time: July 30, 2026, at 03:28:56 PM

4037759-13.2026.8.26.0100                                        610014755250 .V2

https://eproc1g.tjsp.jus.br/eproc/controlador.php?acao=minuta_imprimir&acao_origem=acessar_documento&hash=dbbab93d6081d1e5bf727eda… 6/6

*There is nothing further in the above document which I am returning together with this translation, which I have checked, acknowledged and to which I attest and sign.*
**São Paulo, July 30th, 2026.**                              **Fees Paid.**

PAULO HIDEO TAKAKI:10136143806

Digitally signed by PAULO HIDEO TAKAKI:10136143806
DN: C=BR, O=ICP-Brasil, OU=AC SOLUTI Multipla v5 G2, OU=18799897000120, OU=Videoconferencia, OU=Certificado PF A3, CN=PAULO HIDEO TAKAKI:10136143806
Reason: I am the author of this document
Location:
Date: 2026.07.30 18:06:02-03'00'
Foxit PDF Reader Version: 2024.4.0